UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :

DANIEL B. GRAVES,

                                       :

                Plaintiff,                  07 Civ. 5471 (BSJ)

                                       :

             - against -

                                       :

DEUTSCHE BANK SECURITIES INC.,

                                       :

                Defendant.

                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT AND TO STRIKE PORTIONS OF THE COMPLAINT

SIDLEY AUSTIN LLP

ATTORNEYS FOR  Defendant
                  DEUTSCHE BANK SECURITIES INC.

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................... 1

THE COMPLAINT ...................................................................................................... 3

ARGUMENT ................................................................................................................ 5

I.    THE COURT SHOULD DISMISS THE TIME-BARRED AND
INACTIONABLE CLAIMS IN THE COMPLAINT UNDER RULE
12(b)(6). ............................................................................................................ 5

    A.    STANDARD OF REVIEW ....................................................................... 5

    B.    GRAVES'S FEDERAL CLAIMS ARISING BEFORE
SEPTEMBER 26, 2003 SHOULD BE DISMISSED AS TIME
BARRED. ................................................................................................. 6

    C.    GRAVES'S RETALIATION CLAIMS SHOULD BE
DISMISSED BECAUSE HE CANNOT SET FORTH A CLAIM
UNDER EITHER THE ADEA OR THE NYCHRL. .................................. 8

        1.    The Decision to Terminate Graves's Employment Was
Communicated to Him Before His Alleged Complaint. ................. 9

        2.    The DBSI Actions Allegedly Taken After Graves's
Complaint Do Not Constitute "Adverse Employment
Actions" Under the Law. .............................................................. 10

    D.    GRAVES FAILS TO SET FORTH FACTS SUPPORTING AN
FLSA RETALIATION CLAIM. ............................................................. 12

    E.    GRAVES'S CLAIM OF FRAUDULENT CONCEALMENT
SHOULD BE DISMISSED. ................................................................... 13

        1.    Graves Has Failed to Plead Fraud With the Specificity
Required Under Fed. R. Civ. P. 9(b)............................................ 13

        2.    Graves, an At-Will Employee, Cannot State a Claim for
Fraudulent Concealment Under the Law. ...................................... 15

            a.    There Is No Duty to Disclose an Intent to Terminate
an At-Will Employment Relationship. .............................. 16

        b.     An At-Will Employee Cannot Set Forth the Element of Reasonable Reliance. .......................................17

   F.    GRAVES'S CLAIM OF BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IS NOT COGNIZABLE IN AN AT-WILL EMPLOYMENT CONTEXT. ..................................................18

II.    GRAVES'S CLAIMS ARISING UNDER THE NYCHRL SHOULD BE DISMISSED UNDER THE ELECTION OF REMEDIES PROVISION OF THE STATUTE PURSUANT TO RULE 12(b)(1)........................................20

III.   THE IRRELEVANT AND INFLAMMATORY PORTIONS OF GRAVES'S COMPLAINT SHOULD BE STRICKEN........................................22

CONCLUSION..........................................................................................................................26

## TABLE OF AUTHORITIES

### CASES

Abbad v. Amman,
    285 F. Supp. 411 (S.D.N.Y. 2003) ...................................................................13

American-European Art Associates v. Trend Galleries, Inc.,
    227 A.D.2d 170 (N.Y. App. Div. 1st Dep't 1996)................................................ 18-19

Aquino v. Prudential Life and Casualty Insurance Co.,
    419 F. Supp. 2d 259 (E.D.N.Y. 2005) ......................................................................21

Ari & Co., Inc. v. Regent International Corp.,
    273 F. Supp. 2d 518 (S.D.N.Y. 2003)......................................................................18

Arias v. Women in Need, Inc.,
    274 A.D.2d 353, 712 N.Y.S.2d 103 (N.Y. App. Div. 1st Dep't 2000)........................17

Avillan v. Potter,
    No. 04 Civ. 9019, 2006 WL 3103309 (S.D.N.Y. Nov. 1, 2006) .................................10

Banque Arabe et International D'Investissement v. Md. Nat'l Bank,
    57 F.3d 146 (2d Cir. 1995).......................................................................................15

Bell Atlantic Corp. v. Twombly,
    No. 05 Civ. 1126, 2007 U.S. LEXIS 5901 (May 21, 2007) ......................................5, 6

Beiter v. Runyon
    50 Fed. Appx. 32 (2d Cir. 2002).................................................................................9

Brady v. Calyon Securities (USA),
    406 F. Supp. 2d 307 (S.D.N.Y. 2005)............................................................. 15-16, 17

Brown v. United States Postal Service,
    95 Civ. 1442, 1996 U.S. Dist. LEXIS 19753 (S.D.N.Y. Oct. 28, 1996) ............... 12-13

Budet v. Tiffany & Co.,
    155 A.D.2d 408 (N.Y. App. Div. 2d Dep't 1989) .......................................................16

Burlington Northern & Santa Fe Railway Co. v. White,
    126 S. Ct. 2405 (2006)........................................................................................10, 11

Butts v. New York City Department of Housing Preservation & Development,
    No. 00 Civ 6307, 2007 WL 259937 (S.D.N.Y. Jan. 29, 2007)..............................10, 11

Chimarev v. TD Waterhouse Investor Services,
    280 F. Supp. 2d 208 (S.D.N.Y. 2003)..........................................................................17

Clifton v. Vista Computer Services, LLC,
    No. 01 Civ. 10206, 2002 WL 1585550 (S.D.N.Y. July 16, 2002) ..............................16

Conley v. Gibson,
    355 U.S. 41 (1957)................................................................................................... 5-6

Conners v. Miller Adver. Agency, Inc.,
    No. 96 Civ. 6992, 1997 WL 1102028 (S.D.N.Y. Dec. 18, 1997).................................19

Cyber Media Group, Inc. v. Island Mortgage Network, Inc.,
    183 F. Supp. 2d 559 (E.D.N.Y. 2002) .........................................................................18

Delaware State College v. Ricks,
    449 U.S. 250 (1980)......................................................................................................7

Dwerk Law Firm v. Mann,
    No. 02 Civ. 8481, 2003 U.S. Dist. LEXIS 19535 (S.D.N.Y. Oct. 30, 2003) ..............24

Ferguson v. Lion Holding, Inc.,
    312 F. Supp. 2d 484 (S.D.N.Y. 2004).........................................................................15

G-I Holdings, Inc. v. Baron & Budd,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002).........................................................................23

G&R Moojestic Treats, Inc. v. Maggiemoo's International, LLC,
    No. 03 Civ. 10027, 2004 U.S. Dist. LEXIS 8806 (S.D.N.Y. May 19, 2004)..............18

Garrett v. Garden City Hotel, Inc.,
    No. 05 Civ. 0962, 2007 U.S. Dist. LEXIS 31106 (E.D.N.Y. Apr. 19, 2007)..............21

Graff v. Enodis Corp.,
    No. 02 Civ. 5922, 2003 WL 1702026 (S.D.N.Y. Mar. 28, 2003) ................................19

Grasso v. Chase Manhattan Bank,
    No. 01 Civ. 4371, 2002 WL 575667 (S.D.N.Y. Apr. 17, 2002)................................6, 7

Guillaume v. International Service System Inc.,
    No. 99 Civ. 9403, 2000 U.S. Dist. LEXIS 507 (S.D.N.Y. Jan. 18, 2000)................. 6-7

Harrell v. Primedia, Inc.,
    No. 02 Civ. 2893, 2003 U.S. Dist. LEXIS 13595 (S.D.N.Y. Aug. 5, 2003) ...............14

Hourahan v. Ecuadorian Line, Inc.,
    No. 95 Civ. 10698, 1997 WL 2518 (S.D.N.Y. Jan. 3, 1997)......................................6-7

I.S. Sahni, Inc. v. Scirocco Finance Group, Inc.,
    No. 04 Civ. 9251, 2005 WL 2414762 (S.D.N.Y. Sept. 28, 2005)................................19

Jelks v. Citibank, N.A.,
    No. 99 Civ. 2955, 2001 U.S. Dist. LEXIS 381 (S.D.N.Y. Jan. 19, 2001)...................16

Kemp v. Metro-North Railroad,
    No. 04 Civ. 9926, 2007 U.S. Dist. LEXIS 43568 (S.D.N.Y. June 12, 2007)............8, 9

Kendall v. Fisse,
    No. 00 Civ. 5154, 2004 WL 1196811 (E.D.N.Y. May 25, 2004) ................................19

Kennebrew v. New York City Housing Authority,
    No. 01 Civ. 1654, 2002 U.S. Dist. LEXIS 3038 (S.D.N.Y. Feb. 26, 2002) .................9

Kent v. AVCO Corp.,
    815 F. Supp. 67 (D. Conn. 1992)..............................................................................24

Lam v. American Express Co.,
    265 F. Supp. 2d 225 (S.D.N.Y. 2003).......................................................................16

Lambert v. Genesee Hospital,
    10 F.3d 46 (2d Cir. 1993).....................................................................................12-13

Ledford v. Rapid-America Corp.,
    No. 86 Civ. 9116, 1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988)................24-25

Lifrak v. N.Y.C. Council,
    389 F. Supp. 2d 500 (S.D.N.Y. 2005).......................................................................20

Lipsky v. Commowealth United Corp.,
    551 F.2d 887 (2d Cir. 1976).....................................................................................24

Madera v. Metropolitan Life Insurance Co.,
    No. 99 Civ. 4005, 2002 WL 1453827 (S.D.N.Y. July 3, 2002) ................................19

Marino v. Oakwood Care Ctr.,
    5 A.D.3d. 740 (N.Y. App. Div. 2nd Dep't 2004) .......................................................17

Mason v. America Tobacco Co.,
    346 F.3d 36 (2d Cir. 2003)..........................................................................................3

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,
    218 F.R.D. 76 (S.D.N.Y. 2003) ...........................................................................23, 24

Meyercord v. Curry,
    38 A.D.3d 315 (N.Y. App. Div. 1st Dep't 2007).......................................................17

Miller v. International Telegraph & Telegraph Corp.,
    755 F.2d 20 (2d Cir. 1985), cert. denied, 474 U.S. 851 (1985) ....................................7

Mitchell v. Bendix Corp.,
    603 F. Supp. 920 (N.D. Ill. 1985) ..............................................................................25

Moore v. ConEd,
    No. 00 Civ. 7384, 2007 WL 831807 (S.D.N.Y. Mar. 20, 2007) .................................11

Morse v. Weingarten,
    777 F. Supp. 312 (S.D.N.Y. 1991) .............................................................................24

Moss v. Port Authority of N.Y. & N.J.,
    No. 04 Civ. 9631, 2006 WL 3392693 (S.D.N.Y. Nov. 20, 2006) ...............................11

Nicholls v. Brookdale University Hospital Medical Center,
    No. 03 Civ. 6233, 2004 U.S. Dist. LEXIS 12816 (E.D.N.Y. July 9, 2004) .......... 12-13

O'Brien v. National Property Analyst Partners,
    936 F.2d 674 (2d Cir. 1991).......................................................................................14

Ouaknine v. MacFarlane,
    897 F.2d 75 (2d Cir. 1990).........................................................................................14

Pugh v. Memorial Sloan Kettering Cancer Center,
    No. 97 Civ. 8594, 1998 U.S. Dist. LEXIS 4451 (S.D.N.Y. Apr. 1, 1998) ............21, 22

Quinn v. Green Tree Credit Corp.,
    159 F.3d 759 (2d Cir. 1998).........................................................................................7

Robinson v. Government of Malaysia,
    269 F.3d 133 (2d Cir. 2001).......................................................................................20

Rohlehr v. Brookdale University Hospital & Medical Ctr.,
    390 F. Supp. 2d 207 (E.D.N.Y. 2005) .................................................................. 11-12

Sabetay v. Sterling Drugs, Inc.,
    69 N.Y.2d 329, 506 N.E.2d 919 (N.Y. 1987).............................................................16

Sargent v. Columbia Forest Products, Inc.,
  75 F.3d 86 (2d Cir. 1996)..................................................................19

Serow v. Xerox Corp.,
  166 A.D.2d 917 (N.Y. App. Div. 4th Dep't 1990) ......................................16

Shields v. Citytrust Bancorp, Inc.,
  25 F.3d 1124 (2d Cir. 1994).......................................................... 13-14

Smith v. AVSC International, Inc.,
  148 F. Supp. 2d 302 (S.D.N.Y. 2001)................................................ 23-24

Solomon v. Uniondale Union Free School District,
  No. 03 Civ. 2415 (E.D.N.Y. Feb. 16, 2007) ............................................11

Spilky v. Helphand,
  No. 91 Civ. 3045, 1993 U.S. Dist. LEXIS 6196 (S.D.N.Y. May 10, 1993)................14

United Magazine Co. v. Murdoch Magazines Distributing, Inc.,
  146 F. Supp. 2d 385 (S.D.N.Y. 2001).............................................. 18-19

Wexner v. First Manhattan Co.,
  902 F.2d 169 (2d Cir. 1990)..........................................................14

Williams v. City of New York,
  No. 04 Civ. 1993, 2005 U.S. Dist. LEXIS 6083 (S.D.N.Y. Apr. 12, 2005).................9

Witchard v. Montefiore Medical Center,
  No. 05 Civ. 5957, 2006 U.S. Dist. LEXIS 72811 (S.D.N.Y. July 19, 2006) ..............25

Wolff v. Rare Medium, Inc.,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002)..................................................14

York v. Association of the Bar of the City of New York,
  286 F.3d 122 (2d Cir. 2002)..........................................................21

## STATUTES

18 U.S.C. § 1001.............................................................3, 22, 24

29 U.S.C. § 215..................................................................12

29 U.S.C. § 626...................................................................6

New York City Administrative Code § 8-502 .........................................20

## PRELIMINARY STATEMENT

In his Complaint, Plaintiff Daniel Graves ("Graves"), a former employee of Defendant Deutsche Bank Securities Inc. ("DBSI" or the "Bank"), alleges that, over the course of an approximate two year period, DBSI engaged in a number of actions that discriminated against him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York §§ 8-101 et seq. ("NYCHRL"), that DBSI retaliated against him in violation of these statutes as well as the Fair Labor Standards Act, 29 U.S.C. § 215(2)(3) ("FLSA"), and that DBSI fraudulently concealed its purported intent to terminate him and terminated him in breach of the covenant of good faith and fair dealing. As explained more fully below, the Court should exercise its authority under Rule 12 of the Federal Rules of Civil Procedure ("Rule 12") to dismiss or strike a number of Graves's claims.

*First*, the Court should dismiss the following claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted:

ADEA Discrimination Claim: A large number of the purportedly discriminatory acts Graves alleges are time-barred under the ADEA, which mandates that a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the allegedly discriminatory act. As Graves did not file such a charge until July 22, 2004, any allegations of discrimination based on acts occurring before September 26, 2003 are time-barred under the ADEA.

Retaliation Claims Under the ADEA and the NYCHRL: Graves's retaliation claims should be dismissed because he cannot show any causal connection between any protected activity in which he engaged and any retaliatory adverse action that was taken by DBSI in response. Graves claims that DBSI retaliated against him for supposedly complaining to his

supervisor about discrimination on January 20, 2004; however, he was terminated **before**, not after, this complaint, so this protected activity could not logically be the cause of his termination. Moreover, while Graves alleges that DBSI took certain retaliatory action against him after he made his internal complaint, these other actions essentially involve Graves's requests that DBSI change the terms of the termination decision it had already made. DBSI's refusal to accede to these requests cannot, by their nature or severity, be an adverse employment action under the law.

Retaliation Claims Under the FLSA: Graves's FLSA retaliation claim should be dismissed because he does not set forth any fact evidencing a formal complaint to the Department of Labor (or even an informal complaint to DBSI) regarding violations of the FLSA, as required under the statute.

Fraudulent Concealment: Graves's claim for fraudulent concealment fails because he does not set forth the details of the purported fraud with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedures ("Rule 9(b)"). In addition, as an at-will employee, Graves cannot establish that DBSI owed him a duty to give him advance notice of his termination or that he could have a reasonable expectation that he would be employed by DBSI for a determinate period of time.

Breach of the Duty of Good Faith and Fair Dealing: Graves's claim for breach of the duty of good faith and fair dealing should be dismissed because New York law does not recognize such a claim absent evidence of a valid contract between the parties, and, as an at-will employee, Graves has not and cannot allege that any such contract exists.

Accordingly, all of the claims set forth in Graves's Complaint, with the exception of the few timely ADEA discrimination claims, should be dismissed under Rule 12(b)(6).

*Second*, the Court should dismiss Graves's discrimination and retaliation claims under the NYCHRL for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). These claims are still pending before the New York State Division of Human Rights (the "State Division"), and therefore the Court lacks subject matter jurisdiction over them.  While Graves claims that he has requested a dismissal from the State Division, he has failed to state that the dismissal has been granted.  As such, all of his claims under the NYCHRL must be dismissed under Rule 12(b)(1).

*Third*, DBSI also requests that the Court strike Paragraphs 14 and 95-124 of Graves's Complaint under Rule 12(f).  In these paragraphs, Graves alleges that DBSI and its counsel intentionally misled the EEOC by submitting a fraudulent position statement in violation of 18 U.S.C. § 1001.  These allegations have nothing to do with Graves's legal claims and have been included in the Complaint for the sole purposes of prejudicing DBSI before the eyes of the general public and the Court, and, as such, should be struck from the Complaint.

## THE COMPLAINT[1]

For purposes of this motion only, DBSI will assume the truth of the allegations contained in the Complaint, except to the extent that they are contradicted by, or inconsistent with, the documents referenced in the Complaint, or consist of legal conclusions couched as factual allegations.  Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003).

On March 31, 1999, when he was 37 years old, Graves was hired by Bankers Trust to work in its Media Investment Banking Group under the direction of Jeffrey Amling. (Complaint, ¶¶ 6 & 25.)  On June 14, 1999, as a result of the merger between Bankers Trust and

---

[1] A copy of the complaint, filed on June 8, 2007, is attached as Exhibit "A" to the Affirmation of Cliff Fonstein in Support of Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (the "Fonstein Aff.").

Deutsche Bank, the Media Investment Banking Group became part of DBSI.  (Complaint, ¶ 25.)

Graves continued to report to Mr. Amling and was promoted to Managing Director at the end of

1999 or the beginning of 2000.  (Complaint, ¶ 25.)  According to Graves's Complaint, three

years later, just as he turned 40, DBSI began to discriminate against him on the basis of his age.

(Complaint, ¶¶ 27 et seq.)  Graves describes the following discriminatory actions:

| Date | Alleged Act |
|---|---|
| Spring 2002 | DBSI transferred the Cox Enterprises account to JL Malcolm Morris. (Complaint, ¶ 45.) |
| End of 2002, beginning of 2003 | DBSI promoted four young VPs to Director positions in the Media Investment Banking Group. (Complaint, ¶ 27.) |
| On or before May 27, 2003 | DBSI transferred the Adelphia account to Dyan Triffo, who was 36 years old at the time. (Complaint, ¶ 34.) |
| During 2003 | Two employees, Elizabeth Blair and Blair Faulstich, both 33 years old, approached Graves and informed him that Jeffrey Amling, his manager, had asked them to talk to Graves about transferring his clients over to them. (Complaint, ¶¶ 39-40.) |
| January 2003 | DBSI treated the funds received from the Albritton Communications deal as 2002 revenues, not 2003 revenues, taking that money out of Graves's Franchise Revenues Pipeline for 2003.  (Complaint, ¶¶ 52-54.) |
| June 2003 | DBSI orally assigned Cox Radio as a client to Graves, but did not set up Graves as a Senior Investment Banker for the client for months after the assignment. (Complaint, ¶ 72.) |
| Undated | DBSI failed to include Graves's transactions, which closed fourth quarter of 2003 into his 2004 Franchise Revenue Pipeline (Complaint, ¶ 63.) |
| Undated | DBSI removed Gannett Corporation from the Client Management system thereby making it impossible for Graves to receive credit for any transaction he brought into the firm involving Gannett. (Complaint, ¶ 67.) |
| Undated | DBSI's internal controls barred Graves from being recognized for developing business with potential clients set up for him on DBSI Client Management system. (Complaint, ¶ 71.) |

| **Date** | **Alleged Act** |
|----------|------------------|
| December 2003 | DBSI transferred the Charter Communications account to Graves's co-worker Sun Yung. (Complaint, ¶ 47.) |
| January 14, 2004 | DBSI notified Graves that he was being fired effective January 31, 2004. (Complaint, ¶ 74.) |
| February 4, 2004 | DBSI failed to pay Graves his 2003 bonus. (Complaint, ¶ 79.) |

On July 22, 2004, Graves filed a Charge of Discrimination with the EEOC, which, after refusing to pursue Graves's claim on his behalf, issued a Notice of Right to Sue on March 10, 2007.[2] When he filed the EEOC Charge, Graves purportedly requested that the charge be filed with the State Division as well so that he could pursue a claim under the NYCHRL. (Complaint, ¶¶ 126-27.)  On May 29, 2007, Graves informed the State Division that he was planning to file suit and requested that it dismiss his charge for administrative convenience. (Complaint, ¶ 130.)  Graves, however, does not allege that the State Division has dismissed his charge.

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE TIME-BARRED AND INACTIONABLE CLAIMS IN THE COMPLAINT UNDER RULE 12(b)(6).**

### A.    STANDARD OF REVIEW

In Bell Atlantic Corporation v. Twombly, No. 05-1126, 2007 U.S. LEXIS 5901 (May 21, 2007)[3], the Supreme Court recently announced a new standard for determining Rule 12(b)(6) motions.  Reversing the Second Circuit's denial of a Rule 12(b)(6) motion, the

---

[2] A copy of Plaintiff's Charge of Discrimination, filed on July 22, 2004, is attached to the Fonstein Aff. as Exhibit "B".

[3] Copies of unpublished opinions cited in this memorandum are contained in the Appendix of Cases submitted with this motion.

Court rejected its previous formulation set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), that

dismissal of a complaint under Rule 12(b)(6) is warranted only if "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

<u>Id.</u> at 45-46.  Instead, the Court stressed that, to survive a Rule 12(b)(6) motion, a plaintiff must

set forth factual allegations sufficient to "raise a right to relief above a speculative level."  <u>Bell</u>

<u>Atlantic Corp.</u>, 2007 U.S. LEXIS 5901, at *21 (quoting 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)).  The Court concluded:

> [W]hen the allegations in a complaint, however true, could not raise a
> claim of entitlement to relief, "this basic deficiency should . . . be exposed
> at a point of minimum expenditure of time and money by the parties and
> the court".

<u>Id.</u> at **26-27 (citations omitted).  Accordingly, Graves must demonstrate that his complaint sets

forth factual allegations that not only sufficiently state all the elements of each of his causes of

action, but also that they do so in a way that makes his right to relief more than just speculation –

a burden Graves cannot meet here.

**B.   GRAVES'S FEDERAL CLAIMS ARISING BEFORE SEPTEMBER 26, 2003 SHOULD BE DISMISSED AS TIME BARRED.**

All of Graves's ADEA claims arising out of events occurring before September

26, 2003 should be dismissed because he did not file a timely charge with the EEOC with respect

to those claims.   Under the ADEA, a charge must be filed within 180 days of the alleged

unlawful employment practice, or, if the charge was initially filed with a state or local agency,

within 300 days of the alleged unlawful employment practice or within 30 days after the plaintiff

receives notice of the termination of the state proceedings, whichever is earlier.   29 U.S.C.

§ 626(d).  <u>See also</u> <u>Grasso v. Chase Manhattan Bank</u>, No. 01 Civ. 4371, 2002 WL 575667, at *3

(S.D.N.Y. Apr. 17, 2002).  Filing a timely charge is a prerequisite to commencing an action in

federal court.   <u>Hourahan v. Ecuadorian Line, Inc.</u>, No. 95 Civ. 10698, 1997 WL 2518, at *3

(S.D.N.Y. Jan. 3, 1997) ("It is well established that when a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred.") (quotation omitted); Guillaume v. Int'l Serv. Sys. Inc., 99 Civ. 9403, 2000 U.S. Dist. LEXIS 507, at *8 (S.D.N.Y. Jan. 18, 2000). This requirement "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in the district court." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998) (citations omitted). On July 22, 2004, Graves filed a charge of age discrimination with the EEOC. Accordingly, all allegedly discriminatory incidents that occurred before September 26, 2003 (300 days before he filed his EEOC Charge) are time-barred.[4]

Graves's Complaint sets forth a number of alleged discriminatory acts by DBSI, but many of these acts occurred before September 26, 2003, and therefore, are time barred. Specifically, Graves claims that: (1) at the end of 2002/early 2003, DBSI promoted four young Vice Presidents to Director positions in the Media Investment Group (Complaint, ¶ 27); (2) on or before May 27, 2003, DBSI transferred the Adelphia account to a younger employee (Complaint, ¶ 27); (3) in the Spring of 2002, DBSI transferred the Cox Enterprises account to another employee (Complaint, ¶ 45); (4) in January 2003, DBSI treated the funds received from the Albritton Communications Deal as 2002 revenues, not 2003 revenues, taking money out of Graves's Franchise Pipeline for 2003 (Complaint, ¶ 57); and (5) in June 2003, DBSI assigned the Cox Radio account to Graves as a client, but did not set him up as the Senior Investment Banker for the client for months after the assignment (Complaint, ¶ 71). All of these acts, and Graves's

---

[4] The statute of limitations period in the case of employment discrimination generally begins when the allegedly discriminatory decision "was made and communicated" to the employee. Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980). See also Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 22-23 (2d Cir. 1985) (limitations period began running on the day the plaintiff received oral notice from his supervisor that "he would, absent exceptional circumstances, be removed from the payroll on April 1, 1979," and not on the date he was actually removed from payroll), cert. denied, 474 U.S. 851 (1985); Grasso, 2002 WL 575667, at *3 (limitations period began running when the decision to deny plaintiff employment was made and communicated to him).

awareness of these acts, arose before September 26, 2003, rendering them time barred under the ADEA.

Graves has remained purposefully vague about the timing of a number of other claims in his Complaint, including the date of the following alleged actions: (1) DBSI failed to include transactions in his 2004 Franchise Revenue Pipeline (Complaint, ¶ 63); (2) DBSI removed Gannett Corporation from the Client Management System (Complaint; ¶ 67); and (3) DBSI's internal controls barred Graves from being recognized for developing clients set up for him on the Client Management System (Complaint, ¶ 71).  Absent some affirmative showing that these claims are timely, they should be dismissed as well.

C.   **GRAVES'S RETALIATION CLAIMS SHOULD BE DISMISSED BECAUSE HE CANNOT SET FORTH A CLAIM UNDER EITHER THE ADEA OR THE NYCHRL.**

To establish a *prima facie* claim of retaliation under the ADEA and the NYCHRL, Graves must establish that: (1) he engaged in an activity protected by the ADEA or the NYCHRL, (2) DBSI was aware of the activity, (3) an employment action adverse to Graves occurred and (4) there was a causal connection between the protected activity and the adverse employment action.  See Kemp v. Metro-North RR, No. 04 Civ. 9926, 2007 U.S. Dist. LEXIS 43568, at *45 (S.D.N.Y. June 12, 2007).  Graves's claims of retaliation under both the ADEA and the NYCHRL should be dismissed for two reasons: (1) Graves's termination cannot be the result of Graves's protected activity since his termination preceded his internal complaints of discrimination by six days and (2) the few post-termination actions that Graves alleges cannot be the basis of a retaliation claim because, even if true, they could not even minimally rise to the level of severity needed to constitute an adverse employment action under the retaliation provisions of either the ADEA or the NYCHRL.

**1.    The Decision to Terminate Graves's Employment Was
Communicated to Him Before His Alleged Complaint.**

The only action taken by DBSI that could possibly constitute an adverse employment action for the purposes of establishing a *prima facie* claim of retaliation under the ADEA or the NYCHRL is the termination of Graves's employment. However, Graves learned of his termination on January 14, 2004, and the protected activity claimed by Graves – his alleged internal complaint to his supervisors – occurred six days *later*, on January 20, 2004. It is self-evident that, where an adverse action precedes a protected activity, it cannot possibly be the causal result of the protected activity. See Kemp, 2007 U.S. Dist. LEXIS 43568, at *49 (dismissing retaliation claim where a transfer decision was made before the plaintiff's EEOC charge, even though the actual transfer occurred after the charge); Williams v. City of N.Y., N0. 04 Civ. 1993, 2005 U.S. Dist. LEXIS 6083, at *42 (S.D.N.Y. Apr. 12, 2005) (finding no viable retaliation claim where the plaintiff filed his complaint with the New York City Commission on Human Rights after his termination); see also Beiter v. Runyon, 50 Fed. Appx. 32, 36 (2d Cir. 2002) (affirming dismissal of claim of retaliation where the plaintiff filed a charge with the EEOC after her two supervisors took harassing actions against her); Kennebrew v. N.Y.C. Hous. Auth., No. 01 Civ. 1654, 2002 U.S. Dist. LEXIS 3038, at *67 (S.D.N.Y. Feb. 26, 2002) (finding no causal connection where the plaintiff's termination preceded her filing a charge of discrimination by five months). Graves's termination, therefore, could not have been motivated by his alleged complaint of discrimination, since both the decision and its communication to Graves occurred six days before the meeting during which Graves allegedly complained of age discrimination.

**2.    The DBSI Actions Allegedly Taken After Graves's Complaint Do Not Constitute "Adverse Employment Actions" Under the Law.**

As noted above, only acts that occurred after Graves supposedly complained of discrimination can be adverse employment actions that can form the basis of his retaliation claim.    While Graves alleges that certain DBSI actions occurred after he was told of his termination, they cannot, by their nature or severity, be adverse employment actions.  In essence, Graves argues that, after he was told that he was going to be terminated, he asked DBSI to change the terms of the termination decision and that DBSI's refusal to accede to these requests was retaliatory.  (Complaint, ¶¶ 87-94.) Specifically, Graves points to the following acts: (1) DBSI managers refused to grant Graves's request that he be allowed to stay on payroll for an additional six months after the date of his termination so he could seek outside employment (Complaint, ¶ 88); (2) DBSI managers refused Graves's request to be transferred to another (unspecified) part of Deutsche Bank in lieu of termination (Complaint, ¶ 90 (a)&(b)); (3) DBSI managers did not assist Graves in lining up other jobs within Deutsche Bank (Complaint, ¶ 90 (a)&(b)); and (4) a senior manager, Richard Byrne, cancelled the meeting he had scheduled with Graves prior to his complaint of discrimination (Complaint, ¶¶ 90 (f)-(h)).  As explained below, however, none of these acts rise to the level of an adverse employment action under applicable law.

In 2006, the Supreme Court clarified the standard for determining the existence of an adverse employment action in a retaliation case.  See Burlington Northern & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405 (2006).[5]  Under the new Burlington standard, to constitute an adverse

---

[5] Although Burlington was a case involving claims of discrimination under Title VII, its holding has been extended by New York courts to claims of age discrimination under the ADEA and the NYCHRL. See, e.g., Avillan v. Potter, No. 04 Civ. 9019, 2006 WL 3103309, at *17 (S.D.N.Y. Nov. 1, 2006); Butts v. NYC Dept' of Hous. Preservation & Dev., No. 00 Civ. 6307, 2007 WL 259937, at *16 (S.D.N.Y. Jan. 29, 2007).

action for a retaliation claim, the action must be "materially adverse," i.e. it must be the type of action that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S. Ct. at 2415 (applying objective reasonable worker standard). See also Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., No. 00 Civ 6307, 2007 WL 259937, at *16 (S.D.N.Y. Jan. 29, 2007).

New York courts, applying the new Burlington standard, have held that the denial of benefits to which an employee would not normally be entitled cannot constitute an adverse action under the law because, as they were not existing terms of an employee's employment, their denial could not dissuade a reasonable worker from complaining about discrimination. See Butts, 2007 WL 259937, at *16 (holding that the defendant's refusal to convert leave to compensatory time was not an adverse employment action for the purposes of the plaintiff's retaliation claim); Moss v. Port Auth. of N.Y. & N.J., No. 04 Civ. 9631, 2006 WL 3392693, at *8 (S.D.N.Y. Nov. 20, 2006) (dismissing retaliation claim because "[t]he threat or denial of travel subsidies for which one is otherwise ineligible is not an action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"); Solomon v. Uniondale Union Free Sch. Dist., No. 03 Civ. 2415, 2007 U.S. Dist. LEXIS 16103, at *7 (E.D.N.Y. Feb. 16, 2007) (finding no adverse employment action in an employer's failure to choose the plaintiff for attendance at discretionary seminars); Moore v. ConEd, No. 00 Civ. 7384, 2007 WL 831807, at *6 (S.D.N.Y. Mar. 20, 2007) (holding that the plaintiff's exclusion from meetings and opportunities for professional development would not have discouraged a reasonable person from complaining of discrimination). Neither a six month continuation of employment, assistance with a search for alternate employment nor a meeting with one of his supervisors were benefits or conditions of employment to which Graves was entitled. Under

Burlington's objective standards, therefore, the deprivation of these requested "perks" could not rise to the level of an adverse employment actions. Moreover, it is difficult to see how the Bank's refusal to revisit its earlier termination decision could be retaliatory. If that were the case, then every employment decision could be retaliatory by virtue of an employer's decision to carry through with the decision rather than change it. As such, Graves's retaliation claims should be dismissed.

### D.    GRAVES FAILS TO SET FORTH FACTS SUPPORTING AN FLSA RETALIATION CLAIM.

In purely conclusory fashion, Graves alleges in his Complaint that the actions of DBSI violated Section 215(a)(3) of the FLSA "by retaliating against plaintiff for having opposed age discrimination by complaining internally about age discrimination against him." (Complaint, ¶ 137.) As evidence to support his claim of retaliation under the FLSA, Graves cites the very same paragraphs of his Complaint that he cites in support of his retaliation claims under the ADEA and the NYCHRL.  (Compare Complaint, ¶ 137 and ¶¶ 136 &138.)  However, Graves's FLSA retaliation claim should be dismissed because he fails to allege a crucial prerequisite to such a claim – that he made a complaint of an FLSA violation to the Department of Labor.

Section 215(a)(3) states that it shall be unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceedings, or has served or is about to serve on an industry committee . . . ." 29 U.S.C. § 215(a)(3).  The plain language of this provision does not protect internal complaints of FLSA violations to a supervisor, but, rather, protects only those complaints formally made to the Department of Labor. Lambert v. Genesee Hosp., 10 F.3d

46, 55 (2d Cir. 1993). See also Rohlehr v. Brookdale Univ. Hosp & Med. Ctr., 390 F. Supp. 2d

207, 211 (E.D.N.Y. 2005); Nicholls v. Brookdale Univ. Hosp. Med. Ct., 03 Civ. 6233, 2004 U.S.

Dist. LEXIS 12816, at *28 (E.D.N.Y. July 9, 2004); Brown v. U.S. Postal Serv., 95 Civ. 1442,

1996 U.S. Dist. LEXIS 19753, at **8-9 (S.D.N.Y. Oct. 28, 1996).

   Here, Graves does not allege that he raised a formal complaint to the Department

of Labor, or, for that matter, an informal complaint to DBSI, relating to the FLSA. As such, his

FLSA retaliation claim should be dismissed.

> **E.**   **GRAVES'S CLAIM OF FRAUDULENT CONCEALMENT SHOULD BE DISMISSED.**

   Graves's claim of fraudulent concealment is based on the unsupported contention

that his supervisors knew they were going to terminate him but did not tell him, inducing Graves

to continue working through 2003 in reliance on receiving his 2003 bonus (due to be paid in

early 2004). (Complaint, ¶ 139.) In reliance on this expectation, Graves alleges that he "did not

pursue [unidentified] inquiries from those with potential jobs to offer, or follow up with leads

with respect to such companies, because he expected to continue working for [DBSI] until he

retired." (Complaint, ¶ 83.) Graves's fraudulent concealment claims fails for two reasons: (1)

Graves has failed to even marginally meet the specificity requirements for pleading fraud under

Rule 9(b) of the Federal Rules of Civil Procedures, and (2) he cannot, as an at-will employee,

maintain such a fraudulent concealment claim under New York law.

> **1.**   **Graves Has Failed to Plead Fraud With the Specificity Required Under Fed. R. Civ. P. 9(b).**

   Rule 9(b) requires that circumstances constituting fraud or mistake shall be stated

with specificity and particularity since general allegations of fraud are "thought to be too

amorphous to provide a defendant with sufficient notice to permit a response." Abbad v.

Amman, 285 F. Supp. 411, 414-15 (S.D.N.Y. 2003) (citing Shields v. Citytrust Bancorp, Inc., 25

F.3d 1124, 1128 (2d Cir. 1994)).  The Second Circuit commented in Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990) that:

> [t]o pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. Although scienter need not be alleged with great specificity, there must be some factual basis for conclusory allegations of intent. Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent.

Id. at 79-80 (citations omitted).  See also Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002).  This specificity requirement serves to "provide a defendant with fair notice of a plaintiff's claim [and] to safeguard a defendant's reputation from 'improvident charges of wrongdoing. . . .'" Harrell v. Primedia, Inc., 02 Civ. 2893, 2003 U.S. Dist. LEXIS 13595, at **2-3 (S.D.N.Y. Aug. 5, 2003) (quoting O'Brien v. Nat'l Property Analyst Partners, 936 F.2d 674, 676 (2d Cir. 1991)).   Claims of fraudulent concealment, just like claims of fraudulent misrepresentation, must similarly specify the circumstances surrounding the omission of material information.  Spilky v. Helphand, No. 91 Civ. 3045, 1993 U.S. Dist. LEXIS 6196, at **40-41 (S.D.N.Y. May 10, 1993) (granting Rule 12(b)(6) motion for failure to plead fraudulent nondisclosure claim with sufficient specificity).  Although scienter need not be alleged with great specificity, a plaintiff is still required to plead the factual basis which gives rise to a strong inference of fraudulent intent.  Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (citations omitted).  "In sum, plaintiff's mere use of the word 'fraud' and 'fraudulent intent' to describe the defendants' conduct falls woefully short of satisfying the particularity requirements of Rule 9(b)." Id.

In support of his fraud claim, Graves merely sets forth business decisions taken from 2002 through 2004 upon which he says he "reasonably infer[s]" that DBSI was aware that it was going to fire him at some time "materially in advance" of notifying Graves of his

-14-

termination.  (Complaint, ¶ 80.)  Nothing in any of these events suggests, as Graves alleges, that

DBSI hatched some elaborate, two year plan to fire him.  (Complaint, ¶¶ 32-33.)  Furthermore,

nowhere in his Complaint does Graves indicate the timing or the specifics of any statement that

he could expect to spend a definite amount of time at DBSI, or the identity of the individual

manager or managers who purportedly made such statements, as minimally required under Rule

9(b).  Moreover, Graves does not even marginally plead any fact that gives rise to an inference

that any DBSI supervisor fraudulently concealed his or her intention to terminate Graves before

the payment date of his 2003 bonus.  Without any detail to support his claim, DBSI will be

reduced to "tilting at windmills" in defending itself against the serious claim of fraud.  Because

of this failure to plead fraud with sufficient specificity, Graves's fraudulent concealment claim

should be dismissed.

> ### 2.  <u>Graves, an At-Will Employee, Cannot State a Claim for Fraudulent Concealment Under the Law.</u>

Even if Graves pled fraud with the requisite specificity, his claim should still be

dismissed under New York law. To establish a claim of fraudulent concealment, a party must

prove five elements: (1) the opposing party has a duty to disclose material information, yet (2)

made a materially false representation, (3) intended to defraud, (4) upon which the party

reasonably relied and (5) suffered damages as a result.  <u>Ferguson v. Lion Holding, Inc.</u>, 312 F.

Supp. 2d 484, 496 (S.D.N.Y. 2004) (quoting <u>Banque Arabe et International D'Investissement v.</u>

<u>Md. Nat'l Bank</u>, 57 F.3d 146, 153 (2d Cir. 1995)).  As an at-will employee, Graves cannot

establish that DBSI owed him a duty of disclosure, or that he reasonably relied on a materially false representation that his employment would continue for a determinate period of time.[6]

### a.     There Is No Duty to Disclose an Intent to Terminate an At-Will Employment Relationship.

New York Courts have consistently held, as a matter of law, that no fiduciary duty, and hence no duty to disclose an intent to terminate employment, can exist between an employer and its at-will employee sufficient to sustain a claim of fraud or misrepresentation. See Lam v. Am. Express Co., 265 F. Supp. 2d 225, 230 (S.D.N.Y. 2003) (finding that an at-will employee does not have any claim of maintaining a fiduciary relationship with his employer); Clifton v. Vista Computer Servs., LLC, No. 01 Civ. 10206, 2002 WL 1585550, at *5 (S.D.N.Y. July 16, 2002) (granting motion to dismiss in favor of employer on negligent misrepresentation claim where employee alleged no facts to support fiduciary relationship); Serow v. Xerox Corp., 166 A.D.2d 917, 917 (N.Y. App. Div. 4th Dep't 1990) (finding that an employer owes no fiduciary duty to an at-will employee); Budet v. Tiffany & Co., 155 A.D.2d 408, 408 (N.Y. App. Div. 2d Dep't 1989) ("an employer owes an employee at will no fiduciary duty").

In Jelks v. Citibank, N.A., No. 99 Civ. 2955, 2001 U.S. Dist. LEXIS 381 (S.D.N.Y. Jan. 19, 2001), for example, the plaintiff brought a claim of fraudulent concealment against her former employer for allegedly concealing the fact that the information system she managed would soon be frozen and her job eliminated. In rejecting the plaintiff's claim, the court reasoned: "Because Plaintiff was employed at-will, Defendant had no duty, once a decision was made, to provide advance warning that Plaintiff's job might be terminated." Id. at *13.

---

[6] It is "settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Brady v. Calyon Securities (USA), 406 F. Supp. 2d 307, 314 (S.D.N.Y. 2005) (quoting Sabetay v. Sterling Drugs, Inc., 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920 (N.Y. 1987)). Here, Graves makes no allegation that he had a written contract specifying a set term for his employment, and thus is presumed to be an at-will employee.

Like the plaintiff in <u>Jelks</u>, Graves's employment relationship with DBSI was at-will. As such, no special duty could have been imposed on DBSI to give Graves any advance notice of its decision to terminate his employment.

### b.      An At-Will Employee Cannot Set Forth the Element of Reasonable Reliance.

In New York, claims of fraud based on future promises of continued employment made to an at-will employee are not cognizable. As an at-will employee, Graves could have been terminated at any time, for any (or no) reason. He could not, therefore, have reasonably believed, as he now claims in his Complaint, that he would continue working for DBSI for a set period of time. (Complaint, ¶ 84.) <u>See Brady v. Calyon Secs. (USA)</u>, 406 F. Supp. 2d 307, 316 (S.D.N.Y. 2005); <u>Chimarev v. TD Waterhouse Investor Servs.</u>, 280 F. Supp. 2d 208, 228 (S.D.N.Y. 2003) (dismissing fraud claim because the plaintiff could not establish the reasonable reliance element since his offered employment was at-will); <u>Meyercord v. Curry</u>, 38 A.D.3d 315, 316 (N.Y. App. Div. 1st Dep't 2007) (dismissing fraudulent inducement claim because, as an at-will employee, the plaintiff's reliance on representations of job security were unreasonable as a matter of law); <u>Marino v. Oakwood Care Ctr.</u>, 5 A.D.3d. 740, 741 (N.Y. App. Div. 2nd Dep't 2004) (dismissing fraud claim where plaintiff was unable to establish the reasonable reliance element of a fraudulent misrepresentation claim due to her status as an at-will employee); <u>Arias v. Women in Need, Inc.</u>, 274 A.D.2d 353, 354 (N.Y. App. Div. 1st Dep't 2000) (granting the defendant's motion to dismiss where the plaintiff could not have reasonably relied on at-will employment offer).

In <u>Brady</u>, the plaintiff claimed that he was fraudulently induced to remain in his job with his employer. <u>Brady</u>, 406 F. Supp. 2d at 307. The plaintiff remained in his job, declining an offer from another employer, in reliance on his employer's representations that it

would change his reporting relationship to come into compliance with NYSE and NASD rules. Id. at 311. The plaintiff's employment was subsequently terminated after he complained about the reporting relationship to the defendant's Head of Compliance. Id. In rejecting the plaintiff's claim of fraudulent inducement, the Court noted that a key element of a fraudulent inducement claim is reasonable reliance. Id. The Court concluded: "Because an at-will employee may be terminated at any time, any reliance on any representations of future intentions, such as job security . . . is deemed unreasonable as a matter of law." Id.

Absent the element of reasonable reliance, Graves's fraud claims fails and should be dismissed.

**F.    GRAVES'S CLAIM OF BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING IS NOT COGNIZABLE IN AN AT-WILL EMPLOYMENT CONTEXT.**

Graves claims that DBSI breached its duty of good faith and fair dealing by failing to inform him that he would be terminated prior to his receipt of his 2003 bonus. (Complaint, ¶140.) Under New York law, however, absent a contract, no duty of good faith and fair dealing can arise in an employment relationship. As Graves does not allege that a valid contract existed between himself and DBSI, his claim is not cognizable under New York law and should be dismissed.

New York common law supports the proposition that no covenant of good faith and fair dealing arises in the absence of an enforceable contract. Cyber Media Group, Inc. v. Island Mortgage Network, Inc., 183 F. Supp 2d. 559, 582 (E.D.N.Y. 2002). See also G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC, No. 03 Civ. 10027, 2004 U.S. Dist. LEXIS 8806, at *22 (S.D.N.Y. May 19, 2004) (granting 12(b)(6) dismissal of a claim for breach of an implied covenant of good faith in the absence of a valid contract); Ari & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (same); United Magazine Co. v. Murdoch

Magazines Distrib., Inc., 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001) (holding that a claim for breach of the covenant of good faith and fair dealing is dependent on the existence of an enforceable contract); American-European Art Assocs. v. Trend Galleries, Inc., 227 A.D.2d 170, 171 (N.Y. App. Div. 1st Dep't 1996) (dismissing cause of action for breach of an implied duty of good faith and fair dealing for lack of a valid and binding contract from which such a duty would arise).

Applying this general premise, New York courts have refused to recognize this cause of action in an at-will employment context.  See, e.g., Sargent v. Columbia Forest Prods., Inc., 75 F.3d 86, 88 (2d Cir. 1996) (holding that an at-will employee could not assert a claim based on implied covenants of good faith and fair dealing); I.S. Sahni, Inc. v. Scirocco Fin. Group, Inc., No. 04 Civ. 9251, 2005 WL 2414762, at *6 (S.D.N.Y. Sept. 28, 2005) (granting Rule 12(b)(6) dismissal of a breach of duty claim because defendant was free to terminate the plaintiff at will); Kendall v. Fisse, No. 00 Civ. 5154, 2004 WL 1196811, at *6 (E.D.N.Y. May 25, 2004) ("No implied obligation of good faith and fair dealing exists with respect to an at-will employment contract."); Graff v. Enodis Corp., No. 02 Civ. 5922, 2003 WL 1702026, at *1 n.2 (S.D.N.Y. Mar. 28, 2003) (finding that no duty of good faith and fair dealing was owed the plaintiff as an at-will employee); Madera v. Metro. Life Ins. Co., No. 99 Civ. 4005, 2002 WL 1453827, at *9 (S.D.N.Y. July 3, 2002) (granting Rule 12(b)(6) dismissal of claim of breach of the implied covenant of good faith and fair dealing because "[i]t is well settled that New York law does not recognize this cause of action for at-will employees"); Conners v. Miller Adver. Agency, Inc., No. 96 Civ. 6992, 1997 WL 1102028, at *4 (S.D.N.Y. Dec. 18, 1997) ("[A]n obligation of good faith and fair dealing will not be read into a contract for employment at will.").

As set forth above, Graves's Complaint contains no reference to an enforceable contract between himself and DBSI. Absent such a contract, Graves's claim for breach of the duty of good faith and fair dealing is not actionable under New York law and should, therefore, be dismissed.

**II.    GRAVES'S CLAIMS ARISING UNDER THE NYCHRL SHOULD BE DISMISSED UNDER THE ELECTION OF REMEDIES PROVISION OF THE STATUTE PURSUANT TO RULE 12(b)(1).**

Graves's state law discrimination claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). In a motion to dismiss pursuant to Rule 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. Robinson v. Government of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). "The burden is on the party invoking the court's authority to establish that the court possesses subject matter jurisdiction over the action" by showing, by a preponderance of the evidence, that subject matter jurisdiction exists. Lifrak v. N.Y.C. Council, 389 F. Supp. 2d 500, 502 (S.D.N.Y. 2005). In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider material outside of the complaint. Id. (citations omitted). As explained below, Graves cannot meet his burden of establishing the Court's jurisdiction over his state law discrimination claims.

In his Complaint, Graves alleges that, when he filed his charge with the EEOC, he specified that it was to be filed with the State Division (Complaint, ¶ 125), that he elected to file his charge with the State Division (Complaint, ¶ 126), and that he later sent a request to the State Division that his charge be dismissed for administrative convenience on May 29, 2007. (Complaint, ¶ 130.) Graves, however, does not allege that the State Division has granted his request for dismissal. Until Graves receives a final determination from the State Division

relating to his claim, this Court has no jurisdiction over his causes of action under the election of remedies provision of the NYCHRL.

Title 8 of the New York City Administrative Code requires that an individual bringing forth a claim under the NYCHRL make a choice as to whether to bring the claim to the City Commission of Human Rights, the State Division or a court. The Code specifically provides:

> [A]ny person claiming to be aggrieved by an unlawful discriminatory practice . . . shall have a cause of action in any court of competent jurisdiction for damages . . . *unless such person has filed a complaint with the city commission of human rights or with the state division of human rights with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.*

N.Y. Code § 8-502(a) (emphasis added). The NYSHRL, governing claims under state law, similarly provides, in virtually identical language, that claims under the NYSHRL, once brought before the State Division may not be brought again as an action in another court. See N.Y. Exec. Law § 297(9) (McKinney 2007); York v. Assn. of the Bar of the City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002) (dismissing both state and city discrimination claims due to lack of subject matter jurisdiction because of the plaintiff's election to file the claims with the State Division). See also Garrett v. Garden City Hotel, Inc., No. 05 Civ. 0962, 2007 U.S. Dist. LEXIS 31106, at *24 (E.D.N.Y. Apr. 19, 2007) (same). This limitation on election of remedies applies equally to claims brought in state court and to those brought as pendant claims in federal court. Id.; Aquino v. Prudential Life and Casualty Ins. Co., 419 F. Supp. 2d 259, 272 (E.D.N.Y. 2005).

In Pugh v. Memorial Sloan Kettering Cancer Ctr., 97 Civ. 8594, 1998 U.S. Dist. LEXIS 4451 (S.D.N.Y. Apr. 1, 1998), the Court dismissed a claim under the NYSHRL for lack of subject matter jurisdiction in circumstances similar to the ones at issue here. The plaintiff dually filed his charge of discrimination with both the EEOC and the State Division. Id. at *2.

-21-

When the case came before the Court, the EEOC had issued a notice of right to sue, but the complaint remained pending before the State Division. On the basis of this election of remedies, the Court rejected the plaintiff's contention that the State Division's dismissal for administrative convenience was imminent and dismissed the state claims for lack of subject matter jurisdiction stating:

> Because Plaintiff elected to pursue his state law claim before the DHR and has not received an administrative convenience dismissal, this Court is without jurisdiction to hear Plaintiff's Executive law claim. Accordingly, defendant's Motion to Dismiss Plaintiff's Executive Law claim is granted.

Id. at *8. Like the plaintiff in Pugh, Graves has failed to plead that he has received notice of a resolution of his claim before the State Division and, therefore, his claims under the NYCHRL should be dismissed.

## III.   THE IRRELEVANT AND INFLAMMATORY PORTIONS OF GRAVES'S COMPLAINT SHOULD BE STRICKEN.

Graves's Complaint is 61 pages long, and contains 157 paragraphs, many of which contain multiple sub-paragraphs. More than 23 pages of the Complaint consist of a section Graves dubs "Defendant's Cover-Up," which is entirely irrelevant to his discrimination and retaliation claims. Specifically, paragraphs 14, and 95-124 of the Complaint allege "upon information and belief" or "by [supposed] clear and necessary implication" that DBSI and its counsel knowingly made material misrepresentations in the text of its Position Statement to the EEOC in violation of 18 U.S.C. § 1001.[7] Specifically, these Paragraphs accuse DBSI of (1) purposely misstating facts in the text of its Position Statement (¶ 96 (a)-(cc)); (2) purposely backdating an exhibit (Complaint, ¶ 98 (a)-(i)); (3) double and triple counting achievements and

---

[7] 18 U.S.C. § 1001 provides fines and/or imprisonment for knowingly and willfully falsifying, concealing or covering up a material fact in any matter within the jurisdiction of the executive, legislative or judicial branch of the Government of the United States. See 18 U.S.C. § 1001(a).

pipeline revenues (Complaint, ¶ 99 (a)-(i); 102-107; 109 (a)-(h); 113-118); and (4) using "made-up" figures (Complaint, ¶ 100 (a)-(e); 110 (a)-(c); 111(a)-(b); 112 (a)-(b)), all intended to place Graves's performance in a "false light" to convince the EEOC not to bring suit on his behalf. (Complaint, ¶¶ 119-124.)  The Court should strike these paragraphs of the Complaint for two reasons:  (1) they are irrelevant to the claims brought by Graves and substantially prejudice DBSI in the eyes of the public and of the Court, and (2) they concern DBSI's submissions in an administrative proceeding which are per se immaterial under Rule 12(f).

Rule 12(f), which is "designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct," provides that the court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation, 218 F.R.D. 76, 78 (S.D.N.Y. 2003). Although motions to strike are generally disfavored, "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones."  G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (citations omitted).  Stated differently, a court may strike matter from a complaint where its material is prejudicial.  Id. (citing Wright Miller & Marcus, Fed. Prac. & Proc.: Civil 2d § 1382, at 714 (West 1994 & Supp. 2001)) ("Scandalous allegations . . . will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations.");  See also Smith v. AVSC Int'l., Inc., 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2001).

In Smith, the plaintiff brought claims under federal and state law alleging discrimination based on sex and age, as well as a claim for retaliatory discharge.  Id. at 306.  In his complaint, however, the plaintiff raised allegations of "various fraudulent and improper financial practices by [the defendant]," and the court struck those paragraphs, stating that the

"ethical obligations to report financial misconduct, and specific instances of such acts, are not relevant to the only remaining claims in the complaint, the discrimination claims." Id. at 317. Similarly, here, the allegations Graves makes in paragraphs 14 and 95-124 concerning allegedly false statements made by DBSI in its EEOC Position Statement and a violation by DBSI of 18 U.S.C. § 1001 have no bearing on any of the issues in dispute.  Graves's legal claims concern DBSI's purported discriminatory and retaliatory acts against him, but the allegations concerning the Position Statement do more than merely dispute its contents; they allege something separate and apart from Graves's legal claims – that DBSI (and its lawyers) defrauded the EEOC.  The obvious purpose for making these scandalous allegations on the public record is to influence the Court and to prejudice DBSI.  Such evidence is properly excluded.  Since there is no reason for paragraphs 14 and 95-124 to remain in the Complaint, DBSI's motion to strike them should be granted.  Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were "immaterial and impertinent to the case" because they served "no purpose except to inflame the reader"); Kent v. AVCO Corp., 815 F. Supp. 67, 71 (D. Conn. 1992) (striking immaterial allegations where the value of allowing the allegations "is outweighed by the prejudicial effect they would have").[8]

Moreover, Second Circuit law makes it clear that references to preliminary steps in litigation and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f).  In re Merrill Lynch, 218 F.R.D. at 78  (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 892-94 (2d Cir. 1976)).  In Ledford v. Rapid-Am. Corp., No. 86 Civ. 9116, 1988 U.S. Dist.

_____

[8] In addition to their scandalous nature, the allegations that DBSI and its lawyers submitted a fraudulent position statement are based on conjecture, as evidenced by Graves's liberal use, in most of these paragraphs, of the phrases "upon information and belief" or "by clear and necessary implication."

LEXIS 79 (S.D.N.Y. Jan. 8, 1988), a case alleging discriminatory termination on the basis of age, the defendant moved, pursuant to Rule 12(f), to strike paragraphs of the complaint that set forth findings in the State Division of probable cause to believe discrimination had occurred. Id. at *1. The Court held that since the State Division's administrative findings had no preclusive effect, allegations in respect to the findings were irrelevant to the action and were stricken from the complaint pursuant to Rule 12(f). See id. at *4. See also Mitchell v. Bendix Corp., 603 F. Supp. 920, 921 (N.D. Ill. 1985) (granting motion to strike paragraphs of the complaint alleging the determination of a state administrative review of the plaintiff's claim). Just as the Court in Ledford struck the State Division's findings from a complaint, the Court here should strike Graves's inflammatory mischaracterizations of DBSI's submission to a similar agency.[9]

---

[9] It is also well settled under New York law that statements or submissions to the EEOC are protected by an absolute privilege and cannot be the basis for imposing liability on a party. See Witchard v. Montefiore Med. Ctr., 05 Civ. 5957, 2006 U.S. Dist. LEXIS 72811, at *31 (S.D.N.Y. July 19, 2006) (citing cases); Dwerk Law Firm v. Mann, 02 Civ. 8481, 2003 U.S. Dist. LEXIS 19535, at *12 (S.D.N.Y. Oct. 30, 2003).

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that the Court grant its motion for partial dismissal of Graves's Complaint and dismiss all claims brought by Graves, other than his timely claims under the ADEA, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 3, 2007

                        SIDLEY AUSTIN LLP

                        By: _____
                           Cliff Fonstein
                           Joanne Seltzer
                           787 Seventh Avenue
                           New York, New York 10019
                           (212) 839-5300

                        Attorneys for Defendant
                        Deutsche Bank Securities Inc.

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on July 3, 2007, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion For Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint to be served upon the following:

> Richard T. Seymour
> Law Office of Richard T. Seymour, PLLC
> 1150 Connecticut Avenue, NW, Suite 900
> Washington, D.C. 20036-4129
> (via Federal Express overnight delivery)
>
> Steven A. Berger
> Berger & Webb, LLP
> 1633 Broadway, 46th Floor
> New York, New York 10019
> (via hand delivery)

_Joanne Seltzer_
Joanne Seltzer