b.    **December 2002 YTD Franchise Revenues**

115.    When the double-counts of December 2002 YTD Franchise Revenues are taken into account by assigning the revenue from each deal to the senior banker involved, as the only neutral means of allocation available within the four corners of defendant's Position Statement to the EEOC, Exhibit C would show the following:

| Banker | 2002 Franchise Revenues in Euros, Shown in Exhibit C | 2002 Franchise Revenues, Corrected to Exclude Multiple Counts of Same Transactions, and Reflecting Plaintiff's Actual Revenues | Rank from Data Shown on Exhibit C | True Rank if Corrections Had Been Made |
|---|---|---|---|---|
| Amling, Jeffrey | 34,582,000 | 34,582,000 | 1 | 1 |
| Carey, Charles | 19,276,000 | 8,761,000 | 2 | 4 |
| Graves, Daniel (age 42) | 13,544,000 | 10,971,000 | 5 | 3 |
| Morris, JL Malcolm | 14,600,000 | 3,160,000 | 4 | 6 |
| Paul, Gregory | 15,117,000 | 15,116,000 | 3 | 2 |
| Silver, Ellen | 3,117,000 | 0 | Last | Last |
| **Triffo, Dyan** (age 36) | 7,492,000 | 7,493,000 | 7 | 5 |
| Yung, Sun | 11,223,000 | 2,529,000 | 6 | 7 |

116.    The net effect of the tricks, devices, and stratagems used by defendant on the December 2002 YTD Franchise Revenues entries in Exhibit C to its Position Statement was to conceal the fact that plaintiff had out-earned every banker except Mr. Amling and Mr. Paul.

117.    Defendant could have avoided the double- and triple-counting of December 2002 YTD Franchise Revenues and the 2003 Franchise Pipeline Revenues by allocating such revenues according to any neutral means, including allocations in proportion to work done on the deals. Upon information and belief, any such neutral means would have substantially undercut defendant's argument that plaintiff was the least productive banker in the Media Investment Banking Group.

118.    In a statement filed with the EEOC, plaintiff attempted to use a different neutral means of allocating revenues to avoid multiple-counting of the December 2002 YTD Franchise Revenues, by relying on his personal knowledge of responsibilities for some of the transactions. Plaintiff informed the EEOC that the December 2002 YTD Franchise Revenues could be calculated at 8,762,000 Euros for Charles Carey, 3,160,000 Euros for J.L. Malcolm Morris, zero for Ellen Silver, 7,554,000 Euros for Sun Yung, and unchanged for the others. Except for the figure for Ms. Yung, which is a lower reduction than stated above, these are virtually identical to those stated in ¶ 46 above. However, plaintiff does not have the same knowledge for all of the deals in question.

### 6.    The Significance of Defendant's Intentional Errors and Omissions

119.    Defendant is a global financial institution that well knows how to prepare accurate statements of financial facts.

120.    It is not probable that defendant would submit financial information to a Federal investigative agency without care.

121.    Defendant did not put any credence in its own inflated evaluations of the other employees in its Media Investment Banking Group, but fired a number of these employees, or took actions leading to their transfer out of the Media Investment Banking Group or separation from employment, some time after it fired plaintiff.

- 52 -

122.    In filing its statement, defendant was under a statutory duty not to knowingly and willfully falsify, conceal, or cover up a material fact by any trick, scheme, or device, and was under a duty not to make a false, fictitious, or fraudulent statement or representation, or to use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry.  18 U.S.C. § 1001.

123.    By making the false statements detailed in ¶¶ 52–65 at pp. 15–22, ¶¶ 95–106 at pp. 30–45, and ¶¶ 108–117 at pp. 45–52 above, defendant knowingly and willfully attempted to falsify, conceal, or cover up material facts by tricks, schemes, or devices, as to plaintiff's discharge, in order to conceal defendant's age discrimination and retaliation.  Defendant made false, fictitious, or fraudulent statements or representations, and used false writings and documents, knowing the same to contain false, fictitious, and fraudulent statements and entries, to conceal defendant's age discrimination and retaliation.

124.    Defendant may have succeeded in part of its goal in submitting these false statements, in that the EEOC's investigation was prolonged for more than two years after the submission of the statements, and the EEOC did not bring suit on Mr. Graves' behalf.

**L.    Administrative Exhaustion**

125.    Plaintiff filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") on July 22, 2004, alleging that defendant Deutsche Bank Securities, Inc., had engaged in age discrimination and retaliation in violation of the ADEA, the New York State Human Rights Law (hereinafter, "State Human Rights Law"), and the City Human Rights Law.  The charge specified that it was to be filed with the New York State Division of Human Rights as well as with the EEOC.  The charge was sworn to, and notarized.  A copy of the charge is attached hereto as Attachment A.

126.   Plaintiff intended that his charge of discrimination be processed by the New York State Division of Human Rights with respect to his rights under the State Human Rights Law, as well as being processed by the EEOC with respect to his rights under the ADEA.

127.   On August 6, 2004, the EEOC notified plaintiff that his charge of age discrimination and retaliation was being sent to the New York State Division of Human Rights, and continued in part: "If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official.  Then the agency will investigate and resolve the charge under their statute."  A copy of the letter and its attachment is attached hereto as Attachment B.

128.   Plaintiff did not expect the New York State Division of Human Rights to ask to re-execute his charge because it had already been sworn and notarized, and both intended and expected that the New York State Division of Human Rights would investigate and process his charge under the State Human Rights Law.

129.   The New York City Commission on Human Rights is barred by the City Human Rights Law, § 8–109(f)(ii) and (iii) of the Administrative Code, from processing any complaint that has been filed with the New York State Division of Human Rights.

130.   The New York State Division of Human Rights never communicated with plaintiff, and on May 29, 2007, plaintiff informed the Division that he was planning on filing suit, and requested by facsimile transmission and by mail that the Division dismiss his charge for administrative convenience.

131.   Pursuant to the City Human Rights Law, § 8–502(d) of the Administrative Code, plaintiff's time for filing suit under the City Human Rights Law was tolled during the time his complaint was before the New York State Division of Human Rights, i.e., from August 6, 2004,

- 54 -

through plaintiff's May 29, 2007, request for dismissal of that complaint for administrative convenience.

132.    On March 9, 2007, the EEOC issued a Notice of Right to Sue to plaintiff, at his request. A copy of the Notice is attached hereto as Attachment C.

133.    Plaintiff received the Notice on March 10, 2007, or a subsequent day. This lawsuit was timely filed ninety or fewer days from his receipt of the Notice of Right to Sue.

**J.      Plaintiff's First Cause of Action: Discrimination Under the Age Discrimination in Employment Act**

134.    The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 27–94 at pp. 10–30 above, incorporated herein by reference, violated the ADEA by discriminating against plaintiff because of his age.

**K.      Plaintiff's Second Cause of Action: Discrimination Under the City Human Rights Law**

135.    The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 27–94 at pp. 10–30 above, incorporated herein by reference, violated the City Human Rights Law by discriminating against plaintiff because of his age.

**L.      Plaintiff's Third Cause of Action: Retaliation Under the Age Discrimination in Employment Act**

136.    The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the ADEA by retaliating against plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

**M.      Plaintiff's Fourth Cause of Action: Retaliation Under the Fair Labor Standards Act**

137.    The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the FLSA by retaliating against

plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

**N.**     **Plaintiff's Fifth Cause of Action: Retaliation Under the City Human Rights Law**

138.     The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the City Human Rights Law, § 8–107(7) of the Administrative Code, by retaliating against plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

**O.**     **Plaintiff's Sixth Cause of Action: Fraudulent Concealment in Denying Plaintiff His Incentive Bonus for 2003**

139.     The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 78–86 at pp. 24–28 above, incorporated herein by reference, constituted the tort of fraudulent concealment of its intent not to pay plaintiff his incentive bonus for 2003, defendant knowingly induced plaintiff to continue working for it in reliance on receiving his 2003 incentive bonus, knew that plaintiff was continuing to work for defendant in reliance on the bonus, knew that plaintiff's expectation of the bonus was reasonable, had decided at some time materially before January 14, 2004, not to pay plaintiff's bonus to him, had a duty based on its special knowledge to communicate that change of position to plaintiff, and instead concealed and did not communicate this change of position to plaintiff before January 14, 2004, so that plaintiff would continue working for it until defendant was ready to fire him, and succeeded in that plaintiff continued working for defendant throughout 2003.

**P.**     **Plaintiff's Seventh Cause of Action: Breach of the Duty of Good Faith and Fair Dealing in Denying Plaintiff His Incentive Bonus for 2003**

140.     The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 78–86 at pp. 24–28 above, incorporated herein by reference, breached defendant's duty of good faith and

fair dealing with respect to its decision not to pay plaintiff his incentive bonus for 2003, in that defendant knowingly induced plaintiff to continue working for it in reliance on receiving his 2003 incentive bonus, knew that plaintiff was continuing to work for defendant in reliance on the bonus, knew that plaintiff's expectation of the bonus was reasonable, had decided at some time materially before January 14, 2004, not to pay plaintiff's bonus to him, had a duty based on its special knowledge to communicate that change of position to plaintiff, and instead concealed and did not communicate this change of position to plaintiff before January 14, 2004, so that plaintiff would continue working for it until defendant was ready to fire him, and succeeded in that plaintiff continued working for defendant throughout 2003.

**Q.    Prayer**

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

1.   Declare that defendant's termination of plaintiff's employment, its insistence that his employment end so soon after notification, and its denial of his bonus for 2003, to have violated the prohibitions of discrimination and retaliation in the ADEA and the City Human Rights Law, and the prohibition of retaliation in the FLSA;

2.   Declare that defendant knowingly made false and misleading representations of material fact to the EEOC, and knowingly provided a backdated document to the EEOC where the date of the document was material and of critical importance, in its November 5, 2004, Position Statement, for the purpose of attempting to persuade plaintiff and the EEOC that there was no merit in plaintiff's charge of discrimination, and for the purpose of persuading the EEOC not to file suit to enforce plaintiff's rights under the ADEA;

3.   Order defendant to reinstate plaintiff in the position of Managing Director, with salary, benefits, and incentive bonuses comparable to those of other Managing Directors but in no event lower than the salary, benefits, and incentive bonuses for any Managing Director in the

Media Investment Banking Group, and with length of service and seniority for all purposes as if

plaintiff had never been terminated and had continued to work for defendant from January 31,

2004, through the date of reinstatement;

    4.  In the event reinstatement is granted, order defendant Deutsche Bank Securities, Inc.,

its senior officials, and Mr. Amling:

        a.    not to take or omit any action, wholly or partially, in

retaliation against plaintiff for having complained of client reassignments, and/or

of age discrimination, from 2002 to 2004, for filing his charge of discrimination

with the EEOC, or for having filed this lawsuit, and

        b.    in making future decisions on promotions, assignments,

training, and compensation, not to consider plaintiff's absence from work since

January 31, 2004, or his having complained of client reassignments and of age

discrimination from 2002 to 2004, or his charge of discrimination with the EEOC,

or this lawsuit;

    5.  In the event reinstatement is granted, order defendant to facilitate the service required

in this paragraph, and order the Marshal to make personal service of an Order entered pursuant to

¶ 3 of this Prayer on Mr. Amling if still employed by defendant at that time, on the new head of

the Media Investment Banking Group if this is not Mr. Amling, on each of Mr. Amling's or the

new head's superiors in the direct line of command in the United States, on defendant's Human

Relations Director (or similar title) for the United States, and on the Human Relations official

chiefly responsible for servicing the Media Investment Banking Group.

    6.  Award back pay to plaintiff for his 2003 incentive bonus, calculated in the same

manner as the incentive bonuses for other for other Managing Directors but in no event lower

than the salary, benefits, and incentive bonuses for any Managing Director in the Media

Investment Banking Group;

    7.  Award back pay to plaintiff for the salary and incentive bonuses, less interim

earnings, he would have received if he had not been fired, for the period from January 31, 2004,

to the date of the verdict, with salary, benefits, and incentive bonuses calculated in the same

manner as the salary, benefits, and incentive bonuses for other Managing Directors but in no

event lower than the salary, benefits, and incentive bonuses for any Managing Director in the

Media Investment Banking Group, and with length of service and seniority for all purposes as if

plaintiff had never been terminated and had continued to work for defendant from January 31,

2004, through the date of reinstatement;

    8.  To the extent that the back pay award includes awards of stock that plaintiff would

have received if he had been employed in the year in question, the stock should be awarded at

the same price in effect at the time other employees were awarded the stock, not its present

value, and any period of restriction should be considered as satisfied by the passage of time;

    9.  Award back pay to plaintiff for any employment benefits he lost because of his

termination including, but not limited to, 401K, Pension Plan and gift matching as well as for the

amount of health, dental and disability insurance paid by plaintiff for his coverage of his family

since his termination;

    10. Award back pay to plaintiff for the value of the appreciation of defendant's stock

previously awarded to him that he could not enjoy because he sold the stock to meet his expenses

and support his family;

    11. Award liquidated damages to plaintiff in an additional amount equal to the amount of

back pay awarded;

12. Award prejudgment interest to plaintiff, at the statutory New York rate of 9% per annum simple interest on State-law claims and such interest rate as the Court deems proper for claims under Federal law, from the date the payment should have been received to the date judgment is entered, for every element of his back pay award;

13. Award postjudgment interest to plaintiff;

14. In the event that the Court denies reinstatement, or in the event that reinstatement is delayed during the pendency of an appeal or for other reasons:

   a.    award plaintiff front pay for the period from the date of the verdict until such time as Plaintiff is reinstated or can be expected to have obtained comparable employment;

   b.    award plaintiff lost future earnings to compensate for the reduction in his lifetime earnings potential caused by defendant's actions, whether such lost future earnings are characterized as front pay or as compensatory damages;

15. Award punitive damages to plaintiff, in an amount sufficient to deter defendant from engaging in future actions similar to those giving rise to this lawsuit, and sufficient to deter other similar employers from doing the same;

16. Award plaintiff reasonable attorneys' fees and the reasonable expenses of his charge of discrimination and retaliation and of this action; and

17. Grant such other and further relief as may be necessary or appropriate.

**R.    <u>Jury Demand</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands trial by jury of all questions of fact, of all matters as to which the Seventh Amendment to the

Constitution of the United guarantees the right of trial by jury, and of all matters as to which

§ 7(c)(2) of the ADEA, 29 U.S.C. § 626(c)(2), provides a right of trial by jury.

Respectfully submitted,

Richard T. Seymour (RS 8094)
Adele Rapport (AR 0991)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C. 20036-4129
(202) 862-4320 – Telephone
(202) 549-1454 – Cell
(800) 805-1065 – Telecopier

Steven A. Berger (SB-2038)
Jonathan Rogin (JR-9800)
Thomas E. Hone (TH-7420)
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019
(212) 319-1900 – Telephone
(212) 319-2017 and -2018 – Telecopiers

By: _____

Thomas E. Hone (TH-7420)
Attorneys for Plaintiff

Dated: June 8, 2007

- 61 -

A

EOC Forms (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 160-2004-02829 |

New York State Division of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Date of Birth |
|---|---|
| Mr. Daniel B. Graves | 02/28/1962 |

| Street Address | City, State and ZIP Code |
|---|---|
| 71 Western Drive | Short Hills, New Jersey 07078 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others *(If more than two are named, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| Deutsche Bank Securities, Inc. | +500 | (212) 469-8000 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| 60 Wall Street | New York, New York 10006 | | |

| Name | | No. Employees, Members | Phone No. with Area Code |
|---|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

| DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ OTHER *(Specify below.)* | Earliest            Latest<br>01/31/2004<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

See attached Affidavit.

RECEIVED
JUL 2 2 2004
EEOC-NYDO-CRTIU

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| Yes | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 7/20/04    *[signature]*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 7/20/04<br>*[signature]*<br>JONATHAN ROGIN<br>Notary Public, State of New York<br>No. 02RO6036126<br>Qualified in New York County<br>Commission Expires 1/18/20 06 |

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

DANIEL B. GRAVES,

Plaintiff,

- against -

DEUTSCHE BANK SECURITIES, INC.,

Respondent.

**AFFIDAVIT OF
DANIEL B. GRAVES**

STATE OF NEW YORK    )

ss.:

COUNTY OF NEW YORK   )

DANIEL B. GRAVES, being duly sworn, deposes and says:

1.      I am a former managing director at respondent Deutsche Bank Securities,

Inc. ("Deutsche Bank"), and I make this affidavit in support of my charge of discrimination

being filed contemporaneously with the Equal Employment Opportunity Commission in New

York.   I am fully familiar with the facts and circumstances recited herein.  It is my contention

that I was wrongfully terminated on the basis of my age.  I am 42 years old.

2.      I reside at 71 Western Drive, Short Hills, New Jersey 07078.  My home telephone

number is (973) 467-9530.

3.      On January 31, 2004, after nearly five loyal and extremely successful years at

Deutsche Bank, I was unceremoniously terminated as a result of a claimed redundancy in my

position.  In reality, it appears that I was selected for termination on the basis of my age.

4.      In 2002, I became suspicious of possible discrimination when a significant

number of accounts that I had brought to Deutsche Bank and cultivated on my own were

transferred to younger bankers in my group.  This suspicion of discrimination was confirmed by

the outrageous statement made to me on January 14, 2004 by Jeff Amling, my direct supervisor, that I was being terminated because my accounts were needed for "younger bankers."

## Background

5.      In March 1999, Bankers Trust Alex. Brown ("BTAB") hired me after recruiting me from a position at Merrill Lynch.  (After the merger of BTAB and Deutsche Bank, I remained an employee of Deutsche Bank.)  I joined BTAB as a Director and was promoted to Managing Director in my first year.

6.      I worked in the Media Investment Banking Group for Mr. Amling during my entire tenure.

7.      During my approximately five years at Deutsche Bank and BTAB, I originated and executed transactions representing investment banking revenues to the bank of more than $50 million.  I was always one of the group's top producers, and all of the reviews I received were extremely positive.

## Deutsche Bank's Discrimination Against Me

8.      Beginning in 2002, Mr. Amling began slowly siphoning accounts away from me and giving them to other bankers in the group, the majority of whom are younger than me.  This made it increasingly difficult for me, through no fault of my own, to hit the firm's target for fees generated of $10 million.  The siphoned accounts were either brought from Merrill Lynch, or cultivated by me during my employment at Deutsche Bank.  When the firm raised the fee target to $15 million in 2003, these account transfers by Mr. Amling became even more harmful to me. Moreover, as a result of losing these accounts, the potential "wallet" size of my portfolio—a figure of some significance at Deutsche Bank—decreased drastically, as well.

9.    Specifically, I had taken from me the Cox, Charter and Adelphia accounts (among others), all of which represented a very significant percentage of my business and potential "wallet".

10.    Throughout this time frame, I repeatedly objected to Jim DeNaut, Jacques Brand (both of whom were the superiors of Mr. Amling), Mr. Amling and others as my accounts were transferred to other, less busy, and younger bankers. These objections fell on deaf ears.

11.    Account transfers notwithstanding, I continued to bring in substantial revenues despite the general downward spiral of the market, and Mr. Amling cited and praised me for this achievement during performance reviews.

12.    Accordingly, I was legitimately shocked to learn in January 2004 that I was being terminated because of a purported redundancy in my position. Redundancy did not ring true to me because I was the only senior banker on most of my accounts. I immediately suspected that I had been chosen because I was one of the oldest members of the group.

13.    Mr. Amling's motives were confirmed when he informed me that I was being fired because he needed my accounts for "younger bankers."

14.    When I informed Mssrs. DeNaut and Brand in person on January 20, 2004 of this statement by Mr. Amling, they were noticeably shocked and dismayed.

**My Damages**

15.    Deutsche Bank made me a severance offer of just over $300,000. In light of what has essentially been a misappropriation of my "brought over" and cultivated account relationships by Deutsche Bank for the benefit of itself and its "younger bankers," and my five year record of solid revenue contribution and performance evaluations, the offered severance of just over $300,000 is gross bottom fishing.

16.    This affront is compounded by the complete absence of a bonus for 2003, a year when I made significant contributions to the bank. Currently, all I have received from Deutsche Bank for my work in 2003 is my $200,000 base salary, despite averaging just under $1,400,000 per year in total compensation the prior four years (including restricted stock and other already earned performance incentives). All this gives me no option but to seek legal recourse, particularly given large fees that Deutsche Bank continues to receive from my "brought over" and cultivated relationships.

17.    Specifically, Deutsche Bank has garnered fees from at least Charter, Adelphia and Tribune in early 2004 and Salem Communications, an account I brought to BTAB in 1999, completed an equity transaction of more than $100 million, with Deutsche Bank as a joint book-running manager for this transaction.

18.    Add in the potential front pay that I will be entitled to in the event that I continue to be unable to obtain gainful employment, and all told, and the damages I will suffer as a result of Deutsche Bank's discriminatory actions are enormous, possibly in excess of $10 million.

19.    Deutsche Bank's actions described herein violated the Age Discrimination in Employment Act of 1967, as well as New York State and City laws.

20.    I have filed no charges with any state or local civil rights agency based on the discriminatory actions described herein.

Daniel B. Graves

Sworn to before me
this 20th day of July, 2004

Notary Public

63484-1 (7/20/04)
01620-001

JONATHAN ROGIN
Notary Public, State of New York
No. 02RO6036126
Qualified in New York County
Commission Expires 1/18/2006

4

B



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625
1-800-669-4000

Respondent: DEUTSCHE BANK SECURITIES INC.
EEOC Charge No.: 160-2004-02829
FEPA Charge No.:

Aug 06, 2004

Daniel Graves
71 Western Drive
Short Hills, NJ 07078

Dear Mr. Graves:

This is to acknowledge receipt of the above-numbered charge of employment discrimination against the above-named respondent. Please use the "EEOC Charge No." listed above whenever you call us about this charge. The information provided indicates that the charge is subject to:

[ ]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ X ]    The Age Discrimination in Employment Act (ADEA)

[ ]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

You need do nothing further at this time. We will contact you when we need more information or assistance. A copy of the charge or notice of the charge will be sent to the respondent within 10 days of our receipt of the charge as required by our procedures.

[ X ]    Please be aware that we will send a copy of the charge to the agency listed below as required by our procedures. If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

New York State Division Of Human Rights
Federal Contract Unit
One Fordham Plaza, 4 Fl.
Bronx, NY 10458

Please notify this office of any change in address or of any prolonged absence from home.  Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

*EG*

Esther  Gutierrez
Investigator
(212) 336-3756

Office Hours: Monday - Friday, 8:30 a.m. - 5:00 p.m.
TDD: 1-800-669-6820
www.eeoc.gov

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 160-2004-02829 |

New York State Division of Human Rights _____ and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | | Date of Birth |
|---|---|---|
| Mr. Daniel B. Graves | | 02/28/1962 |

Street Address: 71 Western Drive     City, State and ZIP Code: Short Hills, New Jersey 07078

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others (If more than two are named, list under PARTICULARS below.)

| Name | No Employees, Members | Phone No. with Area Code |
|---|---|---|
| Deutsche Bank Securities, Inc. | +500 | (212) 469-8000 |

Street Address: 60 Wall Street     City, State and ZIP Code: New York, New York 10006

| Name | No Employees, Members | Phone No. with Area Code |
|---|---|---|

Street Address: _____     City, State and ZIP Code: _____

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest                Latest |

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒☒ RETALIATION   ☒☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

01/31/2004

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached Affidavit.

R E C E I V E D
JUL 2 2 2004
EEOC-NYDO-CRT1U

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Yes

1/20/04     [signature]
Date     Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT [signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 7/20/04

[signature]

JONATHAN ROGIN
Notary Public, State of New York
No. 02RO6036126
Qualified in New York County

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

DANIEL B. GRAVES,

                              Plaintiff,

        - against -

DEUTSCHE BANK SECURITIES, INC.,

                              Respondent.

**AFFIDAVIT OF
DANIEL B. GRAVES**

STATE OF NEW YORK       )
                                        ss.:
COUNTY OF NEW YORK  )

DANIEL B. GRAVES, being duly sworn, deposes and says:

1.      I am a former managing director at respondent Deutsche Bank Securities,

Inc. ("Deutsche Bank"), and I make this affidavit in support of my charge of discrimination

being filed contemporaneously with the Equal Employment Opportunity Commission in New

York.   I am fully familiar with the facts and circumstances recited herein.   It is my contention

that I was wrongfully terminated on the basis of my age.   I am 42 years old.

2.      I reside at 71 Western Drive, Short Hills, New Jersey 07078.   My home telephone

number is (973) 467-9530.

3.      On January 31, 2004, after nearly five loyal and extremely successful years at

Deutsche Bank, I was unceremoniously terminated as a result of a claimed redundancy in my

position.   In reality, it appears that I was selected for termination on the basis of my age.

4.      In 2002, I became suspicious of possible discrimination when a significant

number of accounts that I had brought to Deutsche Bank and cultivated on my own were

transferred to younger bankers in my group.   This suspicion of discrimination was confirmed by

the outrageous statement made to me on January 14, 2004 by Jeff Amling, my direct supervisor, that I was being terminated because my accounts were needed for "younger bankers."

**Background**

5.      In March 1999, Bankers Trust Alex. Brown ("BTAB") hired me after recruiting me from a position at Merrill Lynch. (After the merger of BTAB and Deutsche Bank, I remained an employee of Deutsche Bank.) I joined BTAB as a Director and was promoted to Managing Director in my first year.

6.      I worked in the Media Investment Banking Group for Mr. Amling during my entire tenure.

7.      During my approximately five years at Deutsche Bank and BTAB, I originated and executed transactions representing investment banking revenues to the bank of more than $50 million. I was always one of the group's top producers, and all of the reviews I received were extremely positive.

**Deutsche Bank's Discrimination Against Me**

8.      Beginning in 2002, Mr. Amling began slowly siphoning accounts away from me and giving them to other bankers in the group, the majority of whom are younger than me. This made it increasingly difficult for me, through no fault of my own, to hit the firm's target for fees generated of $10 million. The siphoned accounts were either brought from Merrill Lynch, or cultivated by me during my employment at Deutsche Bank. When the firm raised the fee target to $15 million in 2003, these account transfers by Mr. Amling became even more harmful to me. Moreover, as a result of losing these accounts, the potential "wallet" size of my portfolio—a figure of some significance at Deutsche Bank—decreased drastically, as well.

9.      Specifically, I had taken from me the Cox, Charter and Adelphia accounts (among others), all of which represented a very significant percentage of my business and potential "wallet".

10.     Throughout this time frame, I repeatedly objected to Jim DeNaut, Jacques Brand (both of whom were the superiors of Mr. Amling), Mr. Amling and others as my accounts were transferred to other, less busy, and younger bankers.  These objections fell on deaf ears.

11.     Account transfers notwithstanding, I continued to bring in substantial revenues despite the general downward spiral of the market, and Mr. Amling cited and praised me for this achievement during performance reviews.

12.     Accordingly, I was legitimately shocked to learn in January 2004 that I was being terminated because of a purported redundancy in my position.  Redundancy did not ring true to me because I was the only senior banker on most of my accounts.  I immediately suspected that I had been chosen because I was one of the oldest members of the group.

13.     Mr. Amling's motives were confirmed when he informed me that I was being fired because he needed my accounts for "younger bankers."

14.     When I informed Mssrs. DeNaut and Brand in person on January 20, 2004 of this statement by Mr. Amling, they were noticeably shocked and dismayed.

**My Damages**

15.     Deutsche Bank made me a severance offer of just over $300,000.  In light of what has essentially been a misappropriation of my "brought over" and cultivated account relationships by Deutsche Bank for the benefit of itself and its "younger bankers," and my five year record of solid revenue contribution and performance evaluations, the offered severance of just over $300,000 is gross bottom fishing.

16.     This affront is compounded by the complete absence of a bonus for 2003, a year when I made significant contributions to the bank.  Currently, all I have received from Deutsche Bank for my work in 2003 is my $200,000 base salary, despite averaging just under $1,400,000 per year in total compensation the prior four years (including restricted stock and other already earned performance incentives).   All this gives me no option but to seek legal recourse, particularly given large fees that Deutsche Bank continues to receive from my "brought over" and cultivated relationships.

17.     Specifically, Deutsche Bank has garnered fees from at least Charter, Adelphia and Tribune in early 2004 and Salem Communications, an account I brought to BTAB in 1999, completed an equity transaction of more than $100 million, with Deutsche Bank as a joint book-running manager for this transaction.

18.     Add in the potential front pay that I will be entitled to in the event that I continue to be unable to obtain gainful employment, and all told, and the damages I will suffer as a result of Deutsche Bank's discriminatory actions are enormous, possibly in excess of $10 million.

19.     Deutsche Bank's actions described herein violated the Age Discrimination in Employment Act of 1967, as well as New York State and City laws.

20.     I have filed no charges with any state or local civil rights agency based on the discriminatory actions described herein.

Daniel B. Graves

Sworn to before me
this 20th day of July, 2004

Notary Public

JONATHAN ROGIN
Notary Public, State of New York
No. 02RO6036126
Qualified in New York County
Commission Expires 1/18/2006

63484-1 (7/20/04)
01620-001

4

C

EEOC Form 161-B (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Daniel B. Graves<br>71 Western Drive<br>Short Hills, NJ 07078 | From:<br>Equal Employment Opportunity Commission<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 |
|---|---|

[    ]    *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2004-02829 | E. Yourke | 212 336 3751 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[   . ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[    ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[  x  ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for **any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____
Spencer H. Lewis, Jr., District Director

3-9-2007
*(Date Mailed)*

Enclosure(s)

cc:    Respondent(s): Joanne Selzer Esq.
           Sidley Austin LLP
           787 Seventh Ave.
           New York, NY 10019

           Jonathan Rogin Esq.
           Berger & Webb LLP
           1633 Broadway, 46th floor
           New York, NY 10019