**Westlaw.**

Slip Copy

Page 1

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

C

Avillan v. Potter
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Anibal AVILLAN, Plaintiff,
v.
John E. POTTER, Postmaster General, Defendant.
**No. 04 Civ. 9019(PKC)(FM).**

Nov. 1, 2006.

Anibal Avillan, Bronx, NY, pro se.
Melanie Robin Hallums, U.S. Attorney's Office,
SDNY, New York, NY, for Defendant.

MEMORANDUM AND ORDER
P. KEVIN CASTEL, U.S.D.J.
**\*1** Plaintiff Anibal Avillan, proceeding *pro se*,
brings this action pursuant to Title VII of the Civil
Rights Act of 1964, 42 U.S .C. §§ 2000e *et seq.* ("
Title VII"), and the Age Discrimination in
Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (
"ADEA"), against John E. Potter, the Postmaster
General of the United States Postal Service.[FN1]
Plaintiff alleges that various Postal Service
employees discriminated against him on the basis of
his race, national origin, and age, and also retaliated
against him for engaging in protected activity.

> FN1. On its face, plaintiff's complaint-a
> form complaint provided to plaintiff by
> this Court's *Pro Se* Office-indicates only a
> desire to proceed under the Title VII;
> however, his pleadings, briefs, and
> deposition indicate a belief that he has
> invoked the ADEA with respect to some of
> his claims. In light of plaintiff's *pro se*
> status, and the command that *pro se*
> pleadings are to be given liberal
> construction, *see e.g., Green v. United
> States,* 260 F.3d 78, 83 (2d Cir.2001), I

read the complaint as alleging age
discrimination.

Defendant has moved for summary judgment on
various grounds, alleging that some of plaintiff's
claims are barred by *res judicata* and his election of
remedies, and that plaintiff's remaining claims fail
to establish a prima facie case of discrimination
and/or retaliation. Defendant further contends that
even if plaintiff has established a prima facie case,
defendant has offered legitimate, nondiscriminatory,
and nonretaliatory reasons for the purported adverse
employment actions and plaintiff, in response to the
motion, has failed to come forward with evidence
that the reasons are pretextual.

Plaintiff was afforded an opportunity to conduct
discovery, and the discovery period is now closed.
Defendant has served the requisite Notice to *Pro Se*
Litigant Opposing Motion for Summary Judgment.
In addressing defendant's motion, I have considered
only plaintiff's version of the facts and such other
facts as are not disputed by the plaintiff.[FN2] Where
multiple inferences may be drawn from the facts, I
have considered only the inference most favorable
to plaintiff, the non-movant.

> FN2. While plaintiff did not include with
> his opposition papers a statement of
> material facts in dispute as required under
> Local Rule 56. 1, he did submit a "
> Memorandum of Law Opposing
> Defendant's Motion for Summary
> Judgment Pursuant to Local Rule 56," in
> which he presents a different account of
> certain facts as set forth in defendant's
> Rule 56.1 statement. In light of plaintiff's
> *pro se* status, I will excuse his failure to
> comply with the rules, and treat his
> opposition papers as though they contained
> a counterstatement under Rule 56.1. *See,
> e.g., Holtz v. Rockefeller & Co.,* 258 F.3d
> 62, 72-73 (2d Cir.2001) ("A district court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 2

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

has broad discretion to determine whether to overlook a party's failure to comply with local court rules.").

For the reasons set forth below, defendant's motion is granted.

## I. BACKGROUND

### A. The Postal Service Hiring Process

Plaintiff-who identifies himself as a Hispanic man born in Puerto Rico on January 24, 1944 (Compl. ¶ 7; Avillan Dep. 11)-has had a long, tumultuous, and litigious history with his employer, the United States Postal Service ("Postal Service"). Although he has been on the Postal Service's payroll as a custodial laborer since June 1999, plaintiff spent many years and much effort seeking his present position. Plaintiff first took the Postal Service " Cleaner/Custodian" entrance exam in September 1994, and was repeatedly contacted by the Postal Service personnel department for drug-tests and interviews in the ensuing years. (Avillan Dep. 25) Throughout that time, personnel department employees, most frequently a woman named Christine Patterson, repeatedly informed plaintiff that he had not scored well enough on his entrance exam to qualify for employment, and plaintiff was eventually told that his eligibility for employment had expired. (Avillan Dep. 77; Pl. Mem. Opp. Ex. F)

Frustrated by his failure to obtain employment, in August 1998 plaintiff filed an EEO complaint (" 1998 EEO Complaint") with the Postal Service alleging unlawful age discrimination in the Postal Service's hiring process. (Friedman Decl. Ex. A; Pl. Mem. Opp. Ex. H) While not entirely clear from the record, it appears that plaintiff believed that the personnel department reduced his score on the basis of a discriminatory age factor. (Hallums Decl. Ex. CC at 4) In October 1998, the Postal Service dismissed the complaint as untimely filed. (Friedman Decl. Ex. B) In November 1998 plaintiff appealed the Postal Service's ruling to the United States Equal Employment Opportunity Commission ("EEOC"), which affirmed the agency's dismissal in

December 1999. (Friedman Decl. Ex. C)

**\*2** While awaiting a decision on his first EEOC appeal, plaintiff sought equal employment opportunity ("EEO") counseling with the Postal Service for a second time in April 1999 on the grounds that the continued failure to hire him was retaliatory for his first EEO complaint. (Pl.Mem.Opp.Ex.K) Shortly thereafter, in June 1999, plaintiff was hired by the Postal Service into the position that he presently holds. (Avillan Dep. 26) Notwithstanding this development, plaintiff proceeded to file his second formal EEO complaint ( "1999 EEO Complaint") with the Postal Service in July 1999, claiming discrimination and retaliation in the Postal Service's hiring process, and seeking back pay to the time of his first interview in 1995. (Pl.Mem.Opp.Ex.L) In November 1999, the Postal Service dismissed the 1999 EEO Complaint as untimely filed. (Friedman Decl. Ex. E) This result was affirmed by the EEOC on appeal (on a date that is unavailable in the record), and plaintiff's request for reconsideration was denied by the EEOC in October 2000. (Friedman Decl. Ex. F)

In January 2001, plaintiff brought his claims from the 1999 EEO Complaint to federal court and commenced an action against the Postmaster General in this district. Plaintiff alleged discrimination and retaliation in the Postal Service's hiring process, as well as discriminatory and retaliatory treatment in the terms and conditions of his employment. (Hallums Decl. Ex. CC) On February 21, 2002, Judge Stein granted the defendant's motion for summary judgment on the grounds that plaintiff's 1999 EEO Complaint was untimely filed with the Postal Service's EEO Office. See Avillan v. Potter, No. 01-Civ-1648 (SHS), 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002) ("Avillan I"). Plaintiff never appealed that judgment.

### B. Plaintiff's Suspension

While plaintiff was marshaling his "failure to hire" claims through agency adjudication and federal court, he began encountering problems with his supervisors. Plaintiff identifies James Hardy as his principle antagonist. Hardy originally worked with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

plaintiff as his direct supervisor from June 1999 to September 1999. (Avillan Dep. 36). After September 1999, Richard Rivera directly supervised plaintiff, and was succeeded by Julio Amaro in 2002. (Avillan Dep. 42, 49) However, it appears that plaintiff's direct supervisors were at all relevant times subject to Hardy's supervision, and plaintiff alleges that most of the adverse employment actions taken against him were either perpetrated by Hardy, or done with Hardy's encouragement.

Plaintiff's difficulties with Hardy began on May 10, 2000, when plaintiff lost two Postal Service keys. (Avillan Dep. 100-01) Hardy informed plaintiff that the loss of the keys "meant termination and that [plaintiff] ha[d] to pay for the lock[s]." *(Id.)* A second series of altercations began to unfold the next day on May 11, 2000, when Hardy reprimanded plaintiff for failing to properly clean some of the garbage cans for which plaintiff was responsible. *(Id.* at 202) Other custodial laborers were present at the time, and Hardy began to review proper maintenance procedures for the area in question. *(Id.)* Plaintiff-apparently under the impression that the area was no longer on his custodial route-left the area, which Hardy interpreted as plaintiff's abandonment of an assignment. *(Id.* at 202-03) Hardy initiated disciplinary actions against plaintiff, and at a "pre-disciplinary interview" on May 16, 2000, plaintiff claims that Hardy misinterpreted plaintiff's demeanor as disruptive and insubordinate, which prompted Hardy to place plaintiff on "emergency off-duty status" without pay. *(Id.* at 203-04) Plaintiff was threatened with forcible removal from the building, and a picture of plaintiff was posted in the employee's entrance together with a sign that read "DO NOT LET IN BUILDING." (Pl.Mem.Opp.Ex.N)

*3 On May 21, 2000, the Postal Service issued a " Notice of 14 Day Suspension" to plaintiff which was based on charges arising out of the three events that took place earlier in that month. (Friedman Decl. Ex. G). Specifically, the charges were (1) " Creating an Unsafe Condition" by losing the keys; (2) "[Failure to] Give a Full Day Labor for a Full Day Pay" for walking away from his assignment; and (3) "Disrupting the Postal Service Day [to] Day

Operation" for his conduct at the May 16 pre-disciplinary interview. *(Id.)* While plaintiff never actually served the proposed suspension beyond the one day's placement on emergency off-duty status, plaintiff requested EEO counseling in June 26, 2000. (Friedman Decl. Ex. I) His third formal EEO complaint followed on November 21, 2000 ("2000 EEO Complaint"). (Friedman Decl. Ex. J). While not perfectly clear from the face of the 2000 EEO Complaint, plaintiff now alleges that the behavior of his supervisors was retaliatory and discriminatory. As evidence, plaintiff states that his African-American coworkers have lost Postal Service keys without any disciplinary repercussions. (Avillan Dep. 103-05) Plaintiff also alleges that Hardy and other supervisors mischaracterized both the abandonment charge and the disruption charge in order to retaliate against plaintiff for prior EEO activity. (Avillan Dep. 106)

*C. Plaintiff's Termination*

As plaintiff was pursuing his administrative remedies with the EEO office, his relationship with his supervisors deteriorated further. On October 2, 2000, plaintiff received a Notice of Proposed Removal from his supervisors, which was based on three new charges that: (1) plaintiff had been " Absent Without Official Leave (AWOL)" on September 1, 2000; (2) plaintiff failed to follow instructions in seeking emergency leave on September 1, 2000; and (3) plaintiff was disrespectful to a supervisor at a pre-disciplinary interview on September 11, 2000. (Friedman Decl. Ex. K) The Notice also stated that plaintiff's record and the charges raised in the Notice of 14 Day Suspension were considered in the proposed removal. *(Id.)* On November 29, 2000, the Postal Service maintenance manager, Wayne Griffith, issued a Letter of Decision in which he found that the charges were substantiated by the evidence and justified removal. (Friedman Decl. Ex. L) Plaintiff's removal was made effective on January 12, 2001. (Friedman Decl. Ex. M)

Plaintiff appealed his removal to the Merit Systems Protection Board ("MSPB") in January 2001, alleging discrimination and retaliation. (Friedman

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Decl. Ex. N) In that appeal, plaintiff claimed that the Notice of Proposed Removal contained one " false allegation[ ]," as plaintiff denies that a September 11 pre-disciplinary meeting ever took place. (Friedman Decl. Ex. N; Avillan Dep. 180) He also claims that he took the unauthorized emergency leave on September 1, 2000 because he was repeatedly denied his annual leave, and that in any event, he complied with the procedures for taking emergency leave as he understood them. (Avillan Dep. 178-79)

**\*4** Plaintiff's MSPB appeal never reached a decision on the merits because on March 21, 2001, while the matter was pending, the Postal Service rescinded both the Notice of Proposed Removal and the Letter of Decision. (Friedman Decl. Ex. O) The MSPB field office dismissed the appeal as moot, but advised plaintiff of his right to appeal the disposition to the MSPB review board and the Court of Appeals for the Federal Circuit. (Friedman Decl. Ex. P) On March 26, 2001, plaintiff resumed his position with the Postal Service and received his back pay between six and eight months later. (Avillan Dep. 189) Plaintiff never further appealed the MSPB decision.

### D. Harassment Following Reinstatement

In April 2002, plaintiff initiated his fourth EEO counseling session, again alleging that the Postal Service unlawfully discriminated and retaliated against him in the terms and conditions of his employment. (Pl.Mem.Opp.Ex.T) In the formal complaint that followed in August 2002 ("2002 EEO Complaint"), plaintiff raised new allegations of harassment by his supervisors, including (1) the falsification of documents in his personnel file and the failure to purge his record of prior employment actions; (2) assignment of additional routes, one of which required plaintiff to "dust down" a potentially hazardous area during an anthrax scare in December 2002; and (3) denial of a uniform allowance for the years 2001 and 2002. (Pl.Mem.Opp.Ex.V) The Postal Service consolidated the 2002 EEO Complaint with the pending 2000 EEO Complaint, and denied all claims of discrimination and retaliation on the

merits on July 22, 2004. (Friedman Decl. Ex. U)

### E. The Complaint

On November 16, 2004, plaintiff filed the instant complaint. Plaintiff alleges discrimination and retaliation in the Postal Service's hiring process. (Compl.¶ 8) He further alleges that after obtaining employment he was discriminated against and retaliated against for his EEO activity. Specifically, plaintiff alleges violations in: (1) the events surrounding his suspension and placement on off-duty status in May 2000 (Compl.Attach.A); (2) the events surrounding his termination from September 2000 to January 2001 (Compl.¶ 8, Attach.A); (3) the denial of his requests for annual leave (Compl.¶ 8); (4) the denial of an attendance award in 2000 (Compl.¶ 8); (5) the denial of a uniform allowance in 2001 and 2002 (Compl.¶ 8); (6) instructions from his supervisors to his coworkers to dissociate from him (Compl.¶ 8); (7) his receipt of additional and hazardous work assignments (Compl.Attachs.A, A-1); (8) the existence of false documents in his personnel file (Compl.Attach.A-1); and, (9) the Postal Service's failure to pay him for all of the hours he has worked. (Compl. Attach A) [FN3]

> FN3. At plaintiff's deposition, conducted on January 5, 2006 (Hallums Decl. Ex. BB), plaintiff discussed his failure to receive promotions at the Postal Service, as well as the one instance in which he declined to accept a promotion. (Avillan Dep. 61-70) In his submissions in opposition to summary judgment, plaintiff attached a copy of a letter denying his application for the job of Technical Security Specialist with the Postal Service (Pl.Mem.Opp.Ex.S), and the government addressed the lawfulness of plaintiff's failure to be promoted in its reply brief. (Def. Reply Mem. 7) Since plaintiff did not mention his failure to obtain a promotion in his complaint, never raised the issue in his EEO complaints, and has not brought the issue to the Court's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
(Cite as: Slip Copy)

attention except to annex a letter to his opposition papers (without discussion or explanation), I do not construe the complaint as alleging failure to promote claims.

While the complaint alleges discrimination and retaliation, the pleading does not furnish any basis for assessing which acts were motivated by retaliation, which were motivated by racial or national origin discrimination, and which were motivated by age discrimination.[FN4] In the form complaint provided to plaintiff by this Court's *Pro Se* Office, plaintiff checked the box on the front page of the complaint indicating a desire to bring his suit under Title VII. He did not check the box for ADEA claims, despite the instruction on the form to "check only those that apply." Plaintiff also did not indicate his age or date of birth in the required field at paragraph 7 (although he did do so in his first federal complaint in *Avillan I* ). Plaintiff did, however, answer one question, number 11, that pertained only to age discrimination claims. Subsequent to the filing of the complaint, plaintiff has indicated his belief that he alleged age discrimination in this action. (Avillan Dep. 82-83) I will therefore construe plaintiff's complaint as alleging discrimination on the basis of age, race, and national origin, and retaliation for engaging in protected activities.

> FN4. I note that while plaintiff is proceeding *pro se,* he has considerable prior exposure to employment discrimination litigation in this district. *See Avillan v. Ditigal Equip. Corp.,* No. 91-Civ.-8594(LBS), 1994 WL 2225458 (S.D.N.Y. May 26, 1994) (represented by counsel, obtained settlement prior to trial (Avillan Dep. 22); *Avillan v. Potter,* No. 01-Civ.-1648(SHS), 2002 WL 252479 (S.D.N.Y. Feb. 21, 2002) (proceeded *pro se,* dismissed on summary judgment).

## II. DISCUSSION

### A. Summary Judgment Standard

**\*5** Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.' " *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004) (quoting *Aslandis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 6

record, and grant or deny summary judgment as the record warrants. Fed.R.Civ.P. 56(c). In the absence of any disputed material fact, summary judgment is appropriate. *Id.* Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 587) ); *see also Anderson,* 477 U.S. at 249-50 (noting that summary judgment should be granted if the evidence is "merely colorable" or "not significantly probative").

Although discrimination and retaliation claims usually involve issues of intent, which are often ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (2d Cir.1994)), *cert. denied,* 540 U.S. 811 (2003). *See also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000) ("[T]rial courts should not treat discrimination differently from other ultimate questions of fact." (internal quotations omitted)).

## B. *Res Judicata*

**\*6** Defendant argues that plaintiff's claims of discrimination and retaliation in the Postal Service's hiring process are barred by *res judicata.* In *Avillan I,* plaintiff commenced an action in federal court after the EEOC dismissed his 1999 EEO Complaint. In his complaint in *Avillan I,* plaintiff raised all of the same "failure to hire" claims that he alleges in this action, and thus, as elaborated more fully below, plaintiff's claims of discrimination and retaliation in the Postal Service's hiring process are barred by *res judicata.*

The doctrine of *res judicata,* or claim preclusion, instructs that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj v. Bankamerica*

*Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 294, 398 (1981)). This rule gives rise to four prerequisites that must be satisfied in order to apply the doctrine: (1) there must be a final judgment on the merits; (2) the judgment must have been rendered by a court of competent jurisdiction; (3) the cases must involve the same parties or their privies; and (4) the cases must involve the same cause of action. *See Corbett v. MacDonald Moving Servs., Inc.,* 124 F.3d 82, 87-88 (2d Cir.1997) (citing *In re Teltronic Servs., Inc.,* 762 F.2d 185, 190 (2d Cir.1985)). In determining whether a second suit involves the same cause of action as the first, "the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive. Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit...." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 400 F.3d 139, 141 (2d Cir.2005) *(per curiam)* (quoting *Marahaj,* 400 F.3d at 141). Typically, the two suits concern the same transactions when "the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj,* 128 F.3d at 97.

With regard to the first requirement, *Avillan I* rejected plaintiff's claims on timeliness grounds, which operated as a decision on the merits. *See Avillan I,* 2002 WL 252479, at \*2-4. "The timeliness requirement of Title VII is analogous to a statute of limitations," *McPherson v. New York City Dep't of Educ.,* 457 F.3d 211, 214 (2d Cir.2006) (internal quotations omitted), and it is well established in the Second Circuit that "a dismissal for failure to comply with the statute of limitations will operate as an adjudication on the merits, unless it is specifically stated to be without prejudice." *PRC Harris, Inc. v. Boeing Co.,* 700 F.2d 894, 896 (2d Cir.), *cert. denied,* 464 U.S. 936 (1983).

The second requirement is also met, as the district court was a court of competent jurisdiction to hear and decide *Avillan I.* Title VII's jurisdictional statute states that "[e]ach United States district court ... shall have jurisdiction of actions brought

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 7

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

under this subchapter," 42 U.S.C. § 2000e-5(f)(3), and permits actions to be brought in, *inter alia,* " any judicial district in the State in which the unlawful employment practice is alleged to have been committed...." *Id.* The ADEA is less specific, but provides that "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction...." 29 U.S.C. § 663a(c). In *Avillan I,* plaintiff alleged violations of Title VII and the ADEA, and all of the claimed violations occurred in New York. The district court for this District was therefore competent to render judgment in the case.

**\*7** The third requirement-that both actions involve the same parties or their privies-is satisfied, as *Avillan I* and this action feature the same plaintiff and the same defendant, John E. Potter, in his capacity as the Postmaster General of the United States.[FN5] Moving beyond the named defendants in the two actions, the discriminatory and retaliatory acts alleged by plaintiff appear to have been perpetrated by the same Postal Service employees. Plaintiff's complaint in this action states that "my test score [to enter the Postal Service] was 103[;] Christine Patterson and Luciano Rivera persisted that I needed a test score [of] 110 to be hired.... After the EEO complaint I was offered a job and hired by June of 1999." (Compl.¶ 8). The *Avillan I* complaint stated, "[m]y test score (103.10) I was informed that I needed a test score of 110 to be hired." *(Avillan I* Compl. ¶ 8, *attached* as Hallums Decl. Ex. CC) There is thus sufficient commonality of parties to apply the doctrine in this case.

> FN5. Plaintiff's initial complaint in *Avillan I* named Postmaster General William J. Henderson as the sole defendant; however, by the time the district court reached a decision in *Avillan I,* Potter had been substituted for Henderson, as his successor as Postmaster General.

The fourth requirement-that the cases involve the same cause of action-is also fulfilled. In *Avillan I,* in filling out the form complaint provided to him by this Court's *Pro Se* Office, plaintiff checked a box indicating his desire to bring his claim under the

ADEA and not Title VII, although elsewhere in the complaint he raised race and national origin discrimination as well. *(Avillan I* Compl. ¶ 7) In this case, plaintiff used the same form complaint, but this time he checked the box indicating his desire to bring his claims under Title VII and not the ADEA. Similarly, here, plaintiff has elsewhere indicated a desire to claim age discrimination. (Compl.¶ 11). These differences are not material, however, as "[i]t is the identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame [the] complaint." *Woods v. Dunlop Tire Corp.,* 972 F.2d 36, 39 (2d Cir.1992), *cert. denied,* 506 U.S. 1053 (1993). While plaintiff's complaints are not rich with detail, as discussed above, his allegations in both pleadings reveal that he is not basing his new "failure to hire" claims on different facts, or conduct by different individuals. Therefore, all of plaintiff's claims that the Postal Service failed to hire him before June 1999 due to discrimination or retaliation are barred by *res judicata.*[FN6]

> FN6. I note that even if plaintiff were to allege new facts or different conduct in this action or any subsequent actions, his claims regarding the failure of the Postal Service to hire him in the mid to late 1990s would still be subject to timeliness and exhaustion requirements.

Accordingly, summary judgment is granted in favor of defendant with respect to all of plaintiff's claims of discrimination and retaliation in the Postal Service's hiring process.

### C. Election of Remedies

Defendant argues that summary judgment is appropriate with respect to plaintiff's claims of discrimination and retaliation in the temporary termination of his employment in 2001 because he elected to appeal that action through the MSPB process and not the EEO process. As explained more fully below, because the Postal Service rescinded the termination before the MSPB decided

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

the appeal, the MSPB was divested of jurisdiction over plaintiff's discrimination and retaliation claims. Therefore, the only effect that the MSPB appeal could have on plaintiff's access to the EEO process was to toll the limitations period for pursuing an EEO action. The defendant's motion for summary judgment on plaintiff's election of remedies will therefore be denied.

**\*8** The MSPB is a quasi-judicial government agency that adjudicates federal employees' appeals from certain types of personnel actions, including removal. 5 U.S.C. § 1204; 5 C.F.R. § 1201.3(a)(3). While the MSPB exercises both original and appellate jurisdiction, this case concerns only the MSPB's appellate jurisdiction. Discrimination and retaliation claims ordinarily cannot be appealed to the MSPB. 5 C.F.R. § 1201.3. There is an exception to this general rule when an employee believes that an appealable action such as removal was motivated by unlawful discrimination, in which case the employee has two options: (1) the employee can file a "mixed case appeal" with the MSPB, which is "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age," 29 C.F.R. § 1614.302(a)(2); or (2) the employee can file a "mixed case complaint" with the agency's EEO office, which is defined as a " complaint of employment discrimination ... based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the [MSPB]." 29 C.F .R. § 1614.302(a)(1).

While an employee may file either a mixed case appeal or a mixed case complaint, the employee is forced to choose between the two procedures: "An aggrieved person may initially file a mixed case complaint with an agency ..., or an appeal on the same matter with the MSPB ..., but not both." 29 C.F.R. § 1614.302(b); *see also Economou v. Caldera,* 286 F.3d 144, 149 (2d Cir.), *cert. denied sub nom. Economou v. White,* 537 U.S. 975 (2002). The aggrieved party is deemed to have made a " binding 'election' between the MSPB and EEO remedies ... as soon as a formal petition is filed in either forum." *Economou,* 286 F.3d at 149; *see also*

29 C.F.R. § 1614.302(b) ("[W]hichever is filed first shall be considered an election to proceed in that forum."). "Thus, according to the plain language of the governing regulations, the filing of the first formal petition determines the appropriate forum for agency review." *Economou,* 286 F.3d at 149.

Plaintiff did, in the first instance, elect to pursue his unlawful termination claim with the MSPB as a mixed case appeal when he petitioned for review of his final removal and asserted claims of unlawful discrimination and retaliation. (Friedman Decl. Ex. N) While ordinarily that act would bind plaintiff to exclusively pursue his claims in the MSPB process, plaintiff never obtained a decision on the merits from the MSPB, because the Postal Service rescinded the removal on March 19, 2001, and his appeal was dismissed as moot. (Friedman Decl. Ex. P)

In dismissing the appeal as moot, the MSPB determined that the rescission of the appealable action stripped the MSPB of jurisdiction over the appeal. *See, e.g., Muhammad v. City of New York Dep't of Corr.,* 126 F.3d 119, 122 (2d Cir.1997) (" [M]ootness ... is a jurisdictional question...."). As the ALJ noted in the decision, although MSPB jurisdiction is normally determined by the nature of an appeal when initially filed, a federal agency can unilaterally divest the MSPB of jurisdiction by " completely rescind[ing] the action being appealed." *Himmel,* 6 M.S.P.B. 408, 409 (1981); *see also Cooper v. Dep't of the Navy,* 108 F.3d 324, 326 (Fed.Cir.1997) ("If an appealable action is canceled or rescinded by an agency, any appeal from that action [to the MSPB] becomes moot."). Jurisdictional dismissals of mixed case appeals do not preclude the MSPB-appellant from pursuing the remaining discrimination and retaliation claims in the EEO process: "If a person files a mixed case appeal with the MSPB ... and the MSPB dismisses the appeal for jurisdictional reasons, the agency shall promptly notify the individual in writing of the right to contact an EEO counselor within 45 days of receipt of this notice and to file an EEO complaint.... " 29 C.F.R. § 1614.302(b). Thus, in this case, plaintiff's initial election to appeal his removal to the MSPB did not preclude a challenge to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

agency action through the EEO process.

**\*9** Subsequent to the dismissal of his MSPB appeal, plaintiff did not seek EEO counseling within 45 days, although he also did not receive any notice of his right to do so. Notwithstanding this oversight, discrimination and retaliation claims arising from plaintiff's removal are properly before this Court. While plaintiff never grieved his removal after it became final in the November 29, 2000 Letter of Decision, plaintiff's 2000 EEO Complaint, filed on November 21, 2000, alleged discrimination and retaliation in connection with the October 2, 2000 Notice of Proposed Removal. (Friedman Decl. Ex. J) Federal complaints under Title VII and the ADEA are not strictly limited to claims that were explicitly raised in the underlying EEO actions, as " claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) (per *curiam*) (internal quotations and citations omitted). The facts and circumstances alleged in connection with plaintiff's removal in this action are "reasonably related" to the conduct alleged in the 2000 EEO Complaint. Moreover, in any event, the final decision on removal and the Notice of Proposed Removal were addressed in the EEOC's opinion that preceded this action. Therefore, defendant's motion for summary judgment on the election of remedies grounds is denied.

### D. Disparate Treatment on Account of Race or National Origin

Title VII prohibits employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment on the basis of race or national origin. 42 U.S.C. § 2000e-2. Where direct evidence of discrimination is absent, a Title VII plaintiff can prevail on the basis of circumstantial evidence; such cases are analyzed under the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Joseph v. Leavitt,* 465 F.3d 87, 2006 WL 2615313, at * 2 (2d. Cir. Sept. 13, 2006); *Terry v. Ashcroft,* 336 F.3d 128,

138 (2d Cir.2003). Under the *McDonnell Douglas* framework, the plaintiff bears an initial burden of establishing a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). To meet this burden of production, a plaintiff must show "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Feingold v. New York,* 366 F.3d 138, 152 (2d Cir.2004); *see also Terry,* 336 F.3d at 138. "By making out this 'minimal' prima facie case ... the plaintiff creates a presumption that the employer unlawfully discriminated, and thus places the burden of production on the employer to proffer a nondiscriminatory reason for its action...." *Joseph,* 2006 WL 2615313, at *2 (quoting *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000) (alterations supplied)). Once the employer meets its burden of production, "the presumption completely drops out of the picture.... Thus, once the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Joseph,* 2006 WL 2615313, at *2 (quoting *James,* 233 F.3d at 154).

#### 1. *Plaintiff's Prima Facie Case*

**\*10** Plaintiff complains of a multitude of employment actions taken against him by his supervisors at the Postal Service. Specifically, plaintiff alleges discriminatory treatment in: (1) his proposed suspension and placement on off-duty status in 2000; (2) his termination in 2001; (3) the denial of his requests for annual leave; (4) the denial of an attendance award in 2000; (5) the denial of a uniform allowance in 2001 and 2002; (6) the instruction from his supervisors to his coworkers to dissociate from him; (7) his receipt of additional and hazardous work assignments; (8) the existence of false documents in his personnel file; and (9) the Postal Service's failure to pay him for all of the hours he has worked. As explained below, plaintiff can only establish his prima facie case with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

respect to the first two claims enumerated above.

Plaintiff, as a Hispanic man born in Puerto Rico, belongs to a protected class, and can thus establish the first element of his prima facie case. While there is little in the record on the second element, it is sufficient for the purposes of deciding this motion to assume that since plaintiff remains in the employ of the Postal Service, he is qualified for his job as custodial laborer. The third and fourth elements of the prima facie case require more discussion.

### i. Adverse Employment Actions

In order to satisfy the third element of his prima facie case, plaintiff must demonstrate that he suffered "adverse employment actions," which requires evidence of "a materially adverse change in the terms and conditions of employment." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 609 (2d Cir.2006) (internal quotations and citations omitted); *see also Galabya v. New York City Bd. of Educ.,* 202 F.3d 636 (2d Cir.2000). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Schiano,* 445 F.3d at 609 (internal quotations and citations omitted). "To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.' " *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir.2004) (quoting *Terry,* 336 F.3d at 138).

Defendant concedes that plaintiff's suspension and termination were materially adverse employment actions, and thus satisfy the third element of plaintiff's prima facie case. (Def. Mem. at 11 & n. 1) For the purposes of this motion, I will assume without deciding that the denial of plaintiff's annual leave, the instruction from his supervisors to his coworkers to dissociate from him, the existence of allegedly false documents in his personnel file, the failure to provide him with his uniform allowance, and the failure to pay plaintiff for all of the hours he

has worked, all constitute materially adverse changes in the terms and conditions of his employment for the purposes of plaintiff's prima facie case.[FN7] I need only consider plaintiff's claim that he received more work than his colleagues, and his claim of a denial of an attendance award for the year 2000, to determine whether those actions were materially adverse.

> FN7. As will be seen, *infra,* plaintiff fails to allege facts sufficient to support an inference of discrimination as to these claims.

*11 With respect to the denial of an attendance award for the year 2000, the record shows that the award (or the failure to receive an award) carries no material benefits or detriments for Postal Service employees. (Avillan Dep. 109) The attendance award-which plaintiff has received for every other year of his employment with the Postal Service-is a paper certificate bearing the employee's name. *(Id.)* There is no financial reward, and there is no evidence to suggest that it affects an employee's standing or opportunities for career advancement in any way with the Postal Service. The withholding of an attendance award is unlike a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," *Schiano,* 445 F.3d at 609 (internal quotations and citations omitted), and is therefore not a materially adverse change in the terms and conditions of his employment.

Plaintiff's claim that he received additional work presents a closer question. The Second Circuit has confirmed that an employee's receipt of a " disproportionately heavy workload" may constitute a materially adverse employment action. *Feingold,* 366 F.3d at 152-53. In *Feingold,* a white administrative law judge ("ALJ") for the New York State Department of Motor Vehicles ("DMV") satisfied the third element of his prima facie case by offering testimonial evidence that in the white Chief ALJ's absence, the African-American ALJ who sat as acting Chief ALJ abused his powers in that capacity by "regularly reassign[ing] cases to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

white ALJs that had originally been allocated to the three African-American ALJs." *Id.* at 153. In addition, the African-American Chief Clerk who was responsible for adjusting the ALJs' workload " regularly reshuffled [cases] to give white ALJs more work than their African-American counterparts." *Id.*

Plaintiff in this case has offered testimonial evidence that he has been given a disproportionate amount of work as compared to the other custodial laborers. His testimony is that the custodial workers are each assigned a route, and that his supervisors give him additional areas on other laborers' routes, which results in more work for him and correspondingly less work for the benefited coworker. (Avillan Dep. 98-99) Plaintiff has represented that this happened "quite often." *(Id.* at 118) Thus, plaintiff has met his burden of producing evidence that his receipt of additional assignments was a "materially adverse" change in the terms and conditions of his employment.

### ii. *Inference of Discrimination*

Having satisfied the first three prongs of his prima facie case for all claims except for those relating to his attendance award, plaintiff must show that the adverse employment actions occurred under circumstances permitting an inference of discrimination. Plaintiff testified that he never once heard his supervisors or any other Postal Service agent or employee make reference to plaintiff's race or national origin in any context.[FN8] (Avillan Dep. 130-31) However, plaintiff may still satisfy the fourth element of his prima facie case if he can show that his employer "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000). "When considering whether a plaintiff has raised an inference of discrimination by showing ... disparate treatment, [the Second Circuit] has said that the plaintiff must show [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self." *Id.* (quoting *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.2000)). In assessing whether two employees are

similarly situated in all material respects, courts look to "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40. Although the question of whether two individuals are similarly situated often presents an issue of fact for the jury, "there should be an objectively identifiable basis for comparability. Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases...." *Id.* (internal quotations and citations omitted).

> FN8. Plaintiff had the following exchange with the Assistant United States Attorney at his deposition:
> Q: Did Mr. Hardy ever say anything to you about your race or national origin?
> A: No.
> Q: As far as you know, has Mr. Hardy ever said anything to anyone else about your race or national origin?
> A: Not in particular, no.
> Q: Did you ever hear Mr. Hardy say anything about the race or origin or any other employees?
> A: No.
> (Avillan Dep. 130-31)

**\*12** With the few exceptions discussed below, plaintiff fails to demonstrate that he was treated differently from similarly situated employees outside his protected class. The only support in the record for most of plaintiff's claims of discrimination is found in the following exchange in plaintiff's deposition:
Q: Do you believe that Mr. Hardy discriminated against you based on your being Hispanic?
A: Yes.
Q: And how do you know that?
A: Because what's happening to me and all what I wrote here hasn't happened to one of the African Americans.
Q: And what have you seen that leads you to claim that Mr. Hardy treated you any differently based on your race or national origin?

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

A: Based on what I explained so far is all the harassment that I received, it has not happened to any African American....

(Avillan Dep. 107). Elsewhere, plaintiff stated at his deposition that other employees were treated better than he was by the supervisors, "especially African Americans." *(Id.* at 95)

Conclusory assertions such as this fail to furnish any objective basis for comparing the treatment plaintiff received to more favorable treatment received by his African American coworkers, such that an inference of discrimination may be drawn. These statements represent the only evidence supporting his charge of discrimination with respect to his claims of discrimination in: (1) the denial of plaintiff's annual leave, (2) the instruction from his supervisors to his coworkers to dissociate from him, (3) the existence of allegedly false documents in his personnel file, (4) the failure to provide him with his uniform allowance, and (5) the failure to pay plaintiff for all of the hours he has worked. These allegations are not couched in any admissible evidence that arguably gives rise to an inference of discrimination. No reasonable jury could find in plaintiff's favor on these claims on the basis of the evidence in the record on the motion. Therefore, defendant's motion for summary judgment with respect to those claims must be granted.

Plaintiff's deposition testimony provides slightly more detail in his allegations of race or national origin discrimination in connection with three alleged discriminatory acts: (1) the failure to provide him with an attendance award for the year 2000; (2) the assignment of additional routes; and (3) the punishment that plaintiff received in connection with his loss of the Postal Service keys, which led to his "emergency placement on off duty status," his proposed suspension, and his termination.

With respect to the attendance award, plaintiff testified that one of his African American coworkers, John Ocean, received an attendance award, and that Ocean began working with the Postal Service at the same time as plaintiff in 1999. (Avillan Dep. 108) As discussed above, the failure

to provide plaintiff with an attendance award was not materially adverse; but even if it was, plaintiff has failed to come forward with evidence that would permit the factfinder to conclude that plaintiff and Ocean are similarly situated in all material respects. All plaintiff has said is that he and Ocean began working at the same facility at the same time. *(Id.* at 108) The record fails to reflect whether plaintiff and Ocean had the same job titles, or if they had similar attendance records, or provide any other information that would bear on receiving an attendance award. Thus, the record fails to establish the fourth element of plaintiff's prima facie case as to the denial of an attendance award in 2000.

**\*13** In connection with the additional routes, plaintiff alleges that the only other coworker of his to be assigned additional work was Miguel Jostino, who is also Hispanic and also from Puerto Rico. (Avillan Dep. 127-28, 164) However, by plaintiff's own admission, Jostino was not the only other Hispanic or Puerto Rican employee at the Postal Service who shared plaintiff's job responsibilities and pay level. *(Id.* at 127) Plaintiff has not provided any information on how these other Puerto Rican and Hispanic employees were treated, or explained whether or how the African American employees were favored over them. It is also unclear whether the other Hispanic or Puerto Rican employees benefited from reassignment of work to plaintiff, or whether the reassignments only benefited African Americans.

At first blush, plaintiff's evidence on the forth prong of his prima facie case bears some resemblance to the evidence presented in *Feingold v. New York.* In that case, discussed above, the plaintiff survived summary judgment based on his testimony that the acting Chief ALJ and the Chief Clerk routinely assigned the white ALJs more work than the three African-American ALJs *Feingold,* 366 F.3d at 153. The evidence on the record in this case is different in a critical respect. Unlike *Feingold,* where the evidence showed that two African-American DMV employees routinely abused their position to assign work to the white employees for the benefit of all of the African-American employees, plaintiff in this case has alleged only that two of the several Hispanic and Puerto Rican employees received

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

extra work, without specifying where the reassigned work came from, or which employees benefited from the reassignment. Therefore, plaintiff, despite having had a full opportunity to conduct discovery, has failed to provide the Court with any evidence that furnishes an objective basis for comparing the way in which members of different racial groups were treated, such that an inference of discrimination may arise.

In contrast, plaintiff has provided a sufficiently objective basis for inferring that similarly situated employees received more favorable treatment when they lost Postal Service keys. After plaintiff lost the keys, he was placed on emergency off-duty status, served with a Notice of 14-Day Suspension, and later terminated. Plaintiff stated under oath that two of his African American coworkers, Mario Sealey and a person identified only as "Logan," lost Postal Service keys without any repercussions. (Avillan Dep. 102-05) Thus, with respect to the lost keys and the events that followed, plaintiff has met his burden of establishing a prima facie case under the *McDonnell Douglas* framework.

### 2. *Defendant's Legitimate, Nondiscriminatory Justification*

Since plaintiff carried his burden of production on the prima facie case on one claim-the punishment for losing the keys-the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the employment actions taken against plaintiff. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.' " *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993)). The Postal Service has come forward with documentary evidence that its actions in suspending plaintiff were premised upon a combination of the following three interrelated and nondiscriminatory reasons: that plaintiff (1) lost the Postal Service keys; (2) walked away from an assignment; and (3) was disruptive at a pre-disciplinary meeting prior to his placement on emergency off-duty status. (Friedman Decl. Exs. G, H) In addition, his Notice of Proposed Removal and subsequent termination were supported by his

failure to report to work or to comply with instructions on how to take emergency leave on September 1, 2000; his disrespect to a supervisor in pre-disciplinary meeting on September 11, 2000; and the previous loss of the keys. (Friedman Decl. Exs. K, L)

**\*14** Defendant has thus carried the burden under *McDonnell Douglas* by proffering a legitimate, nondiscriminatory basis for its adverse employment actions against plaintiff.

### 3. *Evidence of Pretext*

Once the defendant meets its burden of production, " the *McDonnell Douglas* framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] discrimination *vel non*." *Reeves,* 530 U.S. at 142-43 (internal quotations and citations omitted). Here, plaintiff offers little evidence to rebut defendant's proffered reasons for its employment actions. Plaintiff's evidence of pretext relies principally on the same evidence used to establish his prima facie case: that the disciplinary actions that followed the loss of the keys were not visited on the similarly situated African American employees. Plaintiff's only other evidence of pretext is his deposition testimony that Hardy mischaracterized or lied about several events leading up to his suspension and termination.

In the analogous context of a post-verdict motion for judgment as a matter of law, the Second Circuit has noted that "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Cross v. New York City Transit Auth.,* 417 F.3d 241, (2d Cir.2005) (internal quotations and citations omitted); *see also Schnabel v. Abramson,* 232 F.3d 83, 90 (2d Cir.2000) (noting that in the context of summary judgment motions on ADEA claims, the Second Circuit has "decline[d] to hold that *no* ADEA defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext" (emphasis in original)). On

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
(Cite as: Slip Copy)

summary judgment, the Court must "examin[e] the entire record to determine whether plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.' " *Schnabel,* 232 F.3d at 90 (quoting *Reeves,* 530 U.S. at 143).

In this case, plaintiff has provided a weak prima facie case, which consists only of his deposition testimony that two of his African American colleagues lost keys without similar repercussions. Beyond that, his only evidence of pretext is his testimony that his supervisor has exaggerated, misconstrued, or in one context, lied about underlying events and plaintiff's conduct. Plaintiff's quibbles with his supervisor's version of events, even when combined with his testimony that two African American employees were not punished for losing keys, are not sufficient to raise a material issue of fact requiring trial on whether plaintiff was the victim of race or national origin discrimination. Therefore, all of plaintiff's claims of disparate treatment on the basis of race and national origin discrimination must be dismissed.

### F. *Hostile Work Environment*

*15 A plaintiff who is unable to provide sufficient evidence of disparate treatment under Title VII may nonetheless prevail if he can show that he was subjected to a hostile work environment. *Feingold,* 366 F.3d at 149. A hostile work environment claim requires "evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir.2006) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) ). The plaintiff must show that he "subjectively perceived the environment to be abusive, [and] also that the environment was objectively hostile and abusive." *Id.* "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' " *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002) (quoting *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997)). Because "

[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability[,] and many bosses are harsh, unjust, and rude[, i]t is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will be become a court of personnel appeals." *Id.* at 377.

As discussed above, plaintiff has failed to come forward with evidence to support his claims that the harassments he received were motivated by discriminatory animus. Besides plaintiff's deposition testimony that what happens to him does not happen to African-Americans, plaintiff's only evidence of discrimination is his claim that one African-American employee received an attendance award when he did not, that the only other employee to be assigned extra work was also Hispanic and from Puerto Rico, and that two African-American employees were unpunished when they lost Postal Service keys. These three events fail to raise a triable issue that his " workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter conditions of the victim's employment and create an abusive working environment." *Demoret,* 451 F.3d at 149. Thus, summary judgment must be granted in favor of the government on plaintiff's hostile work environment claim under Title VII.

### G. *Age Discrimination*

As with race and national origin discrimination, plaintiff presents no direct evidence of age discrimination. Therefore, plaintiff's age discrimination claims are evaluated under the *McDonnell Douglas* burden shifting framework, which places the initial burden on the plaintiff to establish a prima facie case of discrimination. *See Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 187 (2d Cir.2006). The prima facie case requires a showing that "[ 1 ] at the relevant time the plaintiff was a member of a protected class; [2] the plaintiff was qualified for the job; [3] the plaintiff suffered an adverse employment action; and [4] the adverse

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              Page 15

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* If the burden is met, the employer must present a nondiscriminatory justification. *Id.* If the employer is capable of meeting that burden, the plaintiff must show the justification to be pretextual. *Id.*

**\*16** While it is not disputed that plaintiff-born in 1944-was at all relevant times in a protected class, *see* 29 U.S.C. § 631 (extending ADEA protection to individuals over 40-years-old), the record now before the Court is utterly silent on the issue of age-related discrimination. The only factual allegation in the record of age-related discrimination is in plaintiff's original complaint in *Avillan I,* where plaintiff alleged that discriminatory "age factors" were used to calculate his Postal Service entrance exam score. *(Avillan I* Compl. ¶ 8) As discussed previously in this opinion, plaintiff's claims of discrimination in the hiring process are now barred under *res judicata.* The remainder of the record fails to show that plaintiff ever heard any coworkers or supervisors reference his age, or that any younger employees were given favorable treatment. In fact, the record does not disclose the age of any Postal Service employees other than plaintiff. Therefore, the record is devoid of facts that might permit an inference of age discrimination, and so summary judgment must be granted on plaintiff's ADEA claims.

### H. *Retaliation*

Both Title VII and the ADEA contain not only substantive antidiscrimination provisions, but also anti-retaliation provisions that protect employees from retaliation by employers for participation in proceedings to challenge discrimination. *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Retaliation claims are evaluated under the same *McDonnell Douglass* burden shifting analysis as discrimination claims. *See Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2005). A prima facie case of retaliation requires a plaintiff to "adduce 'evidence sufficient to permit a rational trier of fact to find [ 1 ] that [ ] he engaged in protected participation or opposition under Title VII [or the ADEA], [2] that the employer was aware

of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.' " *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 205-06 (2d Cir.2006) (alterations in original). Once the plaintiff establishes his prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate, nonretaliatory explanation for the activity, at which point the burden shifts back to the plaintiff to come forward with evidence that the justification is pretextual. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768-69 (2d Cir.1998), *abrogated* on *other grounds* by *Nat'l R.R. Passenger Corp. v.. Morgan,* 536 U.S. 101 (2002).

### 1. *Prima Facie Case*

#### i. *Protected Activity*

The record discloses that plaintiff has engaged in copious amounts of EEO activity. In order for that activity to be protected, plaintiff must have pursued it in good faith, and with a reasonable belief that he was opposing unlawful actions. *See McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d. Cir.2001) . He need not have been correct in his assessments. *Id.* In this case, plaintiff sought or filed EEO counseling or complaints in August and November of 1998; April and July of 1999; June, July, and November of 2000; January of 2001; and April and August of 2002. *See generally McGuire v. United States Postal Service,* 749 F.Supp. 1275, (S.D.N.Y.1990) (noting EEO counseling is protected activity under the retaliation provision of Title VII). Plaintiff satisfies the first element of his prima facie case because he had a good faith and reasonable belief that he was challenging actions that violated Title VII and the ADEA.

#### ii. *Employer Knowledge*

**\*17** The second requirement, that his employer had knowledge of the protected activity, is easily

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

satisfied under the corporate knowledge doctrine. *See Kessler,* 461 F.3d at 210; *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000) ( "Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in protected activity." ). Under this doctrine, a plaintiff need not show that the individuals who allegedly retaliated against him had actual knowledge of his prior protected activity. *Gordon,* 232 F.3d at 116. Rather, a plaintiff alleging retaliation need only show that the employer-the Postal Service-was aware of his complaints. *See id.* Since plaintiff sought counseling with the Postal Service's EEO Office, and filed his complaints with the Postal Service's EEO Office, the knowledge requirement is satisfied here.

### iii. *Adverse Employment Actions*

The Supreme Court has recently held that "adverse employment actions" in the retaliation context refers to a broader range of conduct than it does in the discrimination context. *Burlington Northern & Santa Fe Ry. Co. v. White,* ---U.S. ----, 126 S.Ct. 2405, 2415 (2006) ("*Burlington Northern* "); *see also Kessler,* 461 F.3d at 207-09. While a discrimination plaintiff must show a materially adverse change in the terms and conditions of employment in order to meet his prima facie burden, a retaliation plaintiff need only show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler,* 451 F.3d at 207 (quoting *Burlington Northern,* 126 S.Ct. at 2415). The use of the word "reasonableness" in the standard shows that the test is "an objective, rather than a subjective, one." *Id.* The *Burlington Northern* Court emphasized that the inclusion of the word " material" was significant in order to "separate significant from trivial harms." 126 S.Ct. at 2415.

As with plaintiff's discrimination claims, defendant does not dispute that plaintiff's suspension and termination were adverse within the meaning of the retaliation provisions. For the reasons discussed

below, it is unnecessary to decide whether any of the remaining claims of retaliation, with the exception of the claim that plaintiff was made to dust down a floor on which there was an anthrax scare, satisfy the third prong of plaintiff's prima facie case, and so it will be assumed for the purposes of this opinion that they do.

Plaintiff has alleged that in December 2002, he was assigned to dust down a floor in on which there had been an anthrax scare. (Avillan Dep. 240-44) While at first blush it appears that this assignment would be of a kind that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Kessler,* 451 F.3d at 207, plaintiff has failed to provide sufficient information to the Court such that the assignment might be objectively evaluated. For instance, plaintiff has said that he was assigned to work on the possibly contaminated floor, but plaintiff has admitted that he does not know if other employees were made to work on that floor. (Avillan Dep. 244) Moreover, plaintiff has not informed the Court as to whether other areas in his Postal Service facility were also possibly contaminated. Thus, plaintiff has failed to produce even the minimal evidence necessary to meet his burden that his assignment in December 2002 was an adverse employment action.

### iv. *Causation*

**\*18** Even if it is assumed that all of plaintiff's remaining claims satisfy the first three elements of the prima facie case, all but one of his claims falters on the fourth prong, which requires plaintiff to show a causal connection between the protected activity and the adverse employment action. As with plaintiff's discrimination claims, there is no direct evidence of retaliation against him.[FN9] However, a retaliation plaintiff need not put forward direct evidence of causation; rather, an employee may rely on the fact that "the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir.2001); *see also Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 274 (2001) (collecting cases in which three and four-month periods between the protected activity and the adverse action were insufficient to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
(Cite as: Slip Copy)

establish a causal connection). In order to rely on
temporal proximity alone, the two events must be " 
very close." *Breeden,* 532 U.S. at 274. While close
proximity in time will suffice to establish causation,
"[w]here timing is the only basis for a claim of
retaliation, and gradual adverse job actions began
well before the plaintiff had ever engaged in any
protected activity, an inference of retaliation does
not arise." *Slattery v. Swiss Reinsurance Am. Corp.,*
248 F.3d 87, 95 (2d Cir.2001). Therefore, a
plaintiff cannot prevent the occurrence of an
adverse job action that has already been initiated by
interposing an EEO complaint before the
challenged action becomes final.

> FN9. Plaintiff testified at his deposition
> that he never heard Hardy make any
> comments about his EEO activity:
> Q: Did Mr. Hardy ever say anything to you
> about your prior EEO activities?
> A: No.
> Q: Did you ever hear that Mr. Hardy said
> anything to anybody else about your prior
> EEO activity?
> A: I'm not aware. Maybe he told Julio
> Amauro. I really don't know.
> Q: Did you ever hear Mr. Hardy say
> anything about the prior EEO activities of
> any other employees?
> A: No.
> (Avillan Dep. 131)

As noted previously, plaintiff either sought or filed
EEO counseling or complaints in August and
November of 1998; April and July of 1999; June,
July, and November of 2000; January of 2001; and
April and August of 2002. Therefore, plaintiff can
establish an inference of causation by showing that
the adverse employment actions he suffered
occurred in close proximity with these dates.

Although plaintiff has alleged many incidents of
harassment by his employers, plaintiff has failed to
provide the Court with dates or even time frames
for most of the allegedly retaliatory conduct. It is
therefore impossible for plaintiff to rely on temporal
proximity for most of his claims. The only dates
available in the record are those relating to (1) the

existence of false documents in his personnel file;
(2) the events surrounding his proposed suspension;
and (3) the events surrounding his termination.[FN10]
The record shows that the false documents
appeared in his folder in August of 2001
(Pl.Mem.Opp.Ex.S); that the events which lead to
his proposed suspension, beginning with his loss of
the keys, took place in May 2000 (Friedman Decl.
Exs. H, I); and that the events leading up to his
termination took place from September to
November 2000 (Friedman Decl. Exs. K, L, M).

> FN10. I note that plaintiff has provided the
> Court with a date for one of his additional
> assignments. His assignment to work on
> the site of an anthrax scare occurred in
> December 2002. However, since plaintiff
> has not presented sufficient evidence that
> this assignment was an adverse
> employment action, I need not address it
> here.

As of August 2001, plaintiff's most recent protected
act had occurred in January of 2001, which was the
month in which plaintiff both filed his MSPB
appeal and his first federal civil complaint against
the Post Service. Temporal proximity of over six
months, on its own, is insufficient to raise a
presumption of causation. *See Breeden,* 532 U.S. at
274; *Hollander v. American Cyanamid Co.,* 895
F.2d 80, 85-86 (2d Cir.1990) (finding four month
lag, without other evidence, insufficient to establish
causation in a prima facie case of retaliation).
Similarly, in May of 2000, when all of the events
relevant to plaintiff's suspension and placement on
off-duty status arose, plaintiff's most recent
protected activity had occurred in July 1999, when
he filed the 1999 EEO Complaint. Five months,
standing alone, is also not sufficiently close in time
to create a presumption of causation. *See Breeden,*
532 U.S. at 274; *Hollander,* 895 F.2d at 85-86.
Thus, plaintiff cannot make out a prima facie case
of retaliation on these claims.

**\*19** Plaintiff's termination presents a closer
question. On June 26, 2000, plaintiff sought EEO
counseling in connection with the Notice of 14-Day
Suspension, and it appears that plaintiff sent a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

pre-complaint form into the Postal Service EEO Office in mid July 2000. (Friedman Decl. Ex. I) The events that formed the basis for plaintiff's proposed removal occurred in early and mid-September, and plaintiff's Notice of Proposed Removal is dated October 2, 2000. (Friedman Decl. Ex. K) While there is no bright line rule for how much time must elapse between the protected activity and the adverse employment action, two months is likely sufficient to give rise to the presumption. *See Quinn,* 159 F.3d at 769 (finding that summary judgment was inappropriate on the element of causation when plaintiff was discharged less than two months after complaining to defendant's manager, and just ten days after plaintiff filed a complaint with the state division of human rights). I note, however, that the presumption of causation in plaintiff's termination draws no force from the fact that plaintiff's removal was made final on November 29, 2000, a mere eight days after he filed his formal 2000 EEO Complaint. That final decision was merely a part of a process that had begun in October when his supervisors proposed his removal, more than a month before the formal complaint was filed. *See Slattery,* 248 F.3d at 95.

### 2. Defendant's Legitimate, Nonretaliatory Justification

As plaintiff has satisfied his burden of establishing his prima facie case of retaliation in his termination, the burden shifts to the defendant to proffer a nonretaliatory reason for plaintiff's termination. Defendant is capable of carrying this burden on the same grounds that proved satisfactory in the discrimination context: (1) the Notice of Proposed Removal set forth three charges that motivated the proposal (Friedman Decl. Ex. K), and (2) the independent findings by plaintiff's manager that the charges were substantiated and that plaintiff's conduct justified removal. (Friedman Decl. Ex. L) The documentary evidence of these justifications suffices to satisfy defendant's burden.

### 3. Evidence of Pretext

Since the Postal Service met its burden to produce a

legitimate nonretaliatory justification for termination, the burden shifts back to plaintiff to present evidence of pretext. "To defeat [a defendant's] motion for summary judgment, [plaintiff is] obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation] was the real reason....' " *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994)), *abrogated* on *other grounds* by *Nat'l R.R. Passengers Corp. v. Morgan* 536 U.S. 101 (2002). Moreover, where, as here, the nonretaliatory justification is supported by an employer's conclusions following an investigation, a plaintiff cannot escape summary judgment by simply attacking the legitimacy of the employer's findings. In discrimination cases, including those premised on retaliation, courts "are decidedly not interested in the truth of the allegations against plaintiff. [They] are interested in what *'motivated* the employer'; the factual validity of the underlying imputation against the employee is not at issue." *McPherson v. New York City Dep't of Educ.,* 457 F.3d 211, 216 (2d. Cir.2006) (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711 (1983)) (emphasis in *McPherson*).

**\*20** Plaintiff's evidence of retaliation falls into two categories: (1) his prima facie case, and (2) plaintiff's testimony that the allegations in the Notice of Proposed Removal and the findings in the Letter of Decision were inaccurate or wrong. However, plaintiff's testimony challenges only the allegations and findings, and not his employer's motivation in firing him. *See McPherson,* 457 F.3d at 216. Thus, plaintiff has not presented evidence that his employer was "motivated" by retaliation when he was terminated. On the evidence presented on this motion and drawing all reasonable inferences in plaintiff's favor, no reasonable jury could find that the employer's actions were pretext for retaliation. Summary judgment in favor of the Postal Service is warranted.

### CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3103309 (S.D.N.Y.)
**(Cite as: Slip Copy)**

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk shall enter judgment in favor of the defendant.

SO ORDERED.

S.D.N.Y.,2006.
Avillan v. Potter
Slip Copy, 2006 WL 3103309 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.