Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

c

Conners v. Miller Advertising Agency, Inc.
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Harry CONNERS, Plaintiff,
v.
MILLER ADVERTISING AGENCY, INC.,
Defendant.
**No. 96 CIV. 6992(PKL).**

Dec. 18, 1997.

Mr. Harry Conners, New York.
Ellen T. Vagelos, Esq., Hughes Hubbard & Reed
LLP, New York.
The Honorable Sharon E. Grubin, United States
Magistrate Judge, Pro Se Office.

### ORDER

LEISURE, District J.
*1 Plaintiff, *pro se,* brought this action alleging that
defendant, his former employer, violated the Age
Discrimination in Employment Act, as amended, 29
U.S.C. §§ 621 *et seq.;* New York Labor Law § 740;
New York Human Rights Law, as amended, N.Y.
Exec. Law §§ 290 *et seq.;* New York City Human
Rights Law, as amended, NYC Admin. Code §§
8-101 *et seq.;* and "breached its implied covenant of
good faith and fair dealing with regard to plaintiff"
by terminating plaintiff. Defendant moved for
partial summary judgment with respect to the
federal age discrimination claim and moved to
dismiss the remaining claims pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure.
This Court referred the matter to the Honorable
Sharon E. Grubin, United States Magistrate Judge.

On September 18, 1997, Judge Grubin issued a
Report and Recommendation ("the Report")
advising that the Court deny the motion for
summary judgment on the federal age
discrimination claim, deny the motion to dismiss

plaintiff's claims for age discrimination under state
and city law (which Judge Grubin construed as a
motion for summary judgment), and grant the
motion to dismiss the remaining claims. Both
parties have submitted objections to the Report.The
Court has reviewed Judge Grubin's Report and the
objections thereto and has made a *de novo*
determination, as required by 28 U.S.C. § 636(b) (1)
, that the Report is legally correct and proper. See
*United States v. Raddatz,* 447 U.S. 667, 676 (1980)
("[Section 636 (b) (1)] permit[s] whatever reliance
a district judge, in the exercise of sound judicial
discretion, [chooses] to place on a magistrate's
proposed findings and recommendations.") The
Court therefore adopts the Report in its entirety.

### CONCLUSION

For the reasons stated in the Report, defendant's
motion for partial summary judgment is DENIED,
and defendant's motion to dismiss is GRANTED in
part and DENIED in part.

SO ORDERED.
GRUBIN, Magistrate J.
In this action plaintiff *pro se* alleges that defendant,
a family-owned advertising agency, violated the
Age Discrimination in Employment Act, as
amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), New
York Labor Law § 740, New York Human Rights
Law, as amended (N.Y. Exec. Law §§ 290 *et seq.*),
New York City Human Rights Law, as amended
(N.Y.C Admin. Code §§ 8-101 *et seq.*), and "
breached its implied covenant of good faith and fair
dealing with regard to plaintiff" by terminating
plaintiff from the position of Credit Manager.
Pending are defendant's motion for partial summary
judgment with respect to the federal age
discrimination claim and defendant's motion to
dismiss the remaining claims pursuant to
Fed.R.Civ.P. 12(b)(6). For the reasons set forth
below, I respectfully recommend that defendant's
motion for partial summary judgment be denied, but

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

that defendant's motion to dismiss be granted as to all other claims except the age discrimination claims brought under state and city laws.

## FACTS

### The Complaint

The following are the allegations of the complaint. Plaintiff was 52 years old and had held the position of Credit Manager for over six years when he was terminated following a September 3, 1995 incident in which he killed a man who was attempting to rob him. He was incarcerated until released on bail on September 15, 1995. That day, James T. Curry, defendant's Chief Financial Officer, visited plaintiff at his home and, despite previously assuring plaintiff that "everyone at Miller knows that you are innocent of all charges" and that his job was secure, told plaintiff that he had been terminated. Complaint ¶ XII.

The next business day, September 18, 1995, plaintiff met with Robert and Leonard Miller, defendant's President and Chairman of the Board, respectively. Robert Miller expressed "profound belief" in plaintiff's innocence and claimed that his arrest had nothing to do with his discharge, stating instead "that he thought plaintiff was getting 'too old to be in the hot seat' ' as Credit Manager. Complaint ¶ XI. Plaintiff further alleges that although Robert Miller said his job would not be filled, defendant hired a 42-year-old man as Credit Manager in November or December 1995 at a salary $15,000 per year less than plaintiff had received. Complaint ¶ XII.

**\*2** While plaintiff claims that his termination was primarily due to age discrimination, he also alleges that defendant acted in retaliation for his having complained to the Millers about certain unethical and unlawful practices, stating that he repeatedly implored Robert and Leonard Miller to stop these practices but was "told to mind his own business," that he was "getting soft in his old age," and that defendant would not tolerate his resistance to these practices. Complaint ¶ XX.[FN1]

FN1. According to plaintiff, defendant stole rebates which were intended for the agency's clients; failed to notify clients when it received payment twice on a single invoice; repeatedly charged clients rates far in excess of the rates that were charged by the media with whom their ads were placed; overstated the number of lines in ads and overcharged the clients accordingly; engaged in fraudulent practices which bilked the Mazda Corporation out of at least $100,000; and paid kickbacks to the Executive Vice President of a large real estate firm.

On June 13, 1996 the criminal charges against plaintiff were dismissed. The following day plaintiff called Robert Miller and asked if there was any chance of his being rehired. Miller responded that plaintiff's chances were "slim and none." Complaint ¶ XII. Although "it is the position of plaintiff that [his arrest] had nothing to do with his termination," he claims that he was not rehired because of the arrest. Id.

On June 18, 1996 plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Complaint, Ex. A. The Charge stated simply that plaintiff had been terminated and replaced with a "lower paid younger person," and that plaintiff believed he had been "discriminated against because of my age, 52, in violation of the [ADEA]." Id. At plaintiff's request, the EEOC issued a Notice of Right to Sue on July 2, 1996, thus terminating the EEOC proceedings without reaching a decision. On September 12, 1996 plaintiff timely filed the complaint herein.

### The Motion to Dismiss the Complaint

On October 24, 1996 defendant filed its motion to dismiss the complaint for failure to state a claim, arguing: (1) New York law does not recognize an " implied covenant of good faith" as a limitation on an employer's right to discharge an at-will employee; (2) plaintiff's retaliatory discharge claim, apparently alleging a violation of New York Labor

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Law § 740, is not supported by the plaintiff's allegations; (3) plaintiff's claim that defendant violated state law, presumably New York Human Rights Law § 296(16), in refusing to rehire plaintiff following the dismissal of the criminal charges is also not supported by the facts alleged; and (4) plaintiff's claims of age discrimination under New York State and New York City law are barred by a release which plaintiff executed on September 22, 1995. In support of the fourth point, defendant submits a copy of the release and an affidavit from its in-house counsel stating that plaintiff signed the release in exchange for "a substantial severance payment." Affidavit of Michael A. Porcello, Esq. dated October 23, 1996, ¶ 2.

In response to the motion to dismiss plaintiff submits an affidavit which, *inter alia*, gives plaintiff's version of events surrounding his execution of the release, stating that "the signing of the release was anything but 'knowing and voluntary.' " Plaintiff's Affidavit in Opposition to Defendant's Motion to Dismiss dated December 27, 1996, p. 2. He alleges that when he went to pick up three-month's severance pay at defendant's offices on September 22, 1995, Curry informed him that he had to sign the release in order to receive his check. Plaintiff states that he was "under both enormous stress and duress" at the time because he was facing murder charges, had lost his job and apartment and was in financial difficulty and, having no time to digest the release or to speak with counsel, did not understand the consequences of it. *Id.*

*3 In reply defendant submits, *inter alia*, an affidavit from Curry stating that plaintiff visited defendant's offices on September 21 to discuss severance pay, at which time he was informed that he would be asked to sign a release and said "that signing a release was no problem." Affidavit of James T. Curry dated January 9, 1997, ¶ 4. Curry states that plaintiff executed the release the next day in exchange for a separation payment of $13,750.02, less applicable withholdings, and has never attempted to return the money. *Id.* ¶ 5.

In its memorandum in support of the motion, defendant states that it did not move to dismiss the ADEA claim because it "recognizes that the release

executed by Plaintiff on September 22, 1995 does not meet the requirements for waiver of an ADEA claim. 29 U.S.C. § 626(f)." Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, p. 8 n. 4.

### *The Motion for Partial Summary Judgment*

On January 14, 1997 defendant moved for partial summary judgment on the ADEA claim, arguing that while the release did not meet the requirements for waiver of an ADEA claim, this deficiency made the release voidable, not void. Relying primarily on *Hodge v. New York College of Podiatric Medicine,* 940 F.Supp. 579 (S.D.N.Y.1996), defendant claims that plaintiff ratified the agreement by accepting the severance pay. In support of the motion, defendant submits a second affidavit from Curry, in which Curry repeats that plaintiff has never offered or attempted to return the separation payment which he received in exchange for executing the general release on September 22, 1995. Affidavit of James T. Curry dated January 31, 1997, ¶ 4.

Plaintiff responds to Curry's allegations by stating that he offered repayment on June 14, 1996, when he spoke to Robert Miller about being reinstated, but Miller "declined to reemploy plaintiff and also declined the offer of repayment..., claiming he knew plaintiff was financially strapped." Affidavit in Opposition to Defendant's Motion for Partial Summary Judgment dated February 21, 1997, ¶ 5. In reply defendant submits an affidavit from Miller, denying that plaintiff ever offered to repay the severance during their June 14 conversation. Affidavit of Robert Miller dated March 7, 1997, ¶ 3.

### DISCUSSION

### *1. The Motion to Dismiss*

### *A. Standards under Fed.R.Civ.P. 12(b)(6)*

In determining whether to grant a motion to dismiss

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993) *and* 507 U.S. 972, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993); *Ad-Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). "[C]onsideration is limited to the factual allegations in [the] complaint, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993) . A complaint should not be dismissed unless, "after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d at 298 (quotation omitted). *See Sheppard v.. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994); *Ad-Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d at 982. Moreover, *pro se* complaints are to be liberally construed and given even greater latitude than complaints drafted by lawyers. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)(per curiam); *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986). Although normally material outside the complaint is not to be taken into consideration, the policy reasons favoring liberal construction of *pro se* complaints do permit a court to consider allegations of a *pro se* plaintiff in opposition papers on the motion, at least where those allegations are consistent with the complaint. *Donahue v. U.S. Dept. of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990) ; *see Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987); *Shen v. Japan Airlines,* 918 F.Supp. 686,

690 (S.D.N.Y.1994); *Lucas v. New York City,* 842 F.Supp. 101, 104 n. 2 (S.D.N.Y.1994).

*B. Breach of an implied covenant of good faith and fair dealing*

**\*4** It is "settled law in New York that, absent an agreement establishing a fixed duration [of employment], an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801 (2d Cir.1992)(citing *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987)); *see Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. 1358, 1366-67 (S.D.N.Y.1995). An employer has a "nearly unfettered right" to discharge an at-will employee, *Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 21 (2d Cir.1994)(citing *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d at 333, 514 N.Y.S.2d at 211, 506 N.E.2d 919; *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86 (1983)), and may do so at any time, with or without cause. *Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. at 1366-67; *Allen v. City of Yonkers,* 803 F.Supp. 679, 709 (S.D.N.Y.1992). Accordingly, an obligation of good faith and fair dealing will not be read into a contract for employment at will. *Nunez v. A-T Financial Information, Inc.,* 957 F.Supp. 438, 443 (S.D.N.Y.1997); *see Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. at 1367; *Sabetay v.. Sterling Drug, Inc.,* 69 N.Y.2d at 335, 514 N.Y.S.2d at 212, 506 N.E.2d 919; *Murphy v. American Home Products Corp.,* 58 N.Y.2d at 304, 461 N.Y.S.2d at 237, 448 N.E.2d 86). As there is no dispute here that there was any agreement between the parties establishing a fixed duration of plaintiff's employment, this claim must be dismissed.

*C. New York Labor Law § 740*

New York Labor Law § 740 (McKinney 1988), known as the "whistleblower" law, provides, in relevant part:
2. Prohibitions. An employer shall not take any retaliatory personnel action against an employee

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 5

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

because such employee does any of the following:
(a) discloses, or threatens to disclose to a supervisor
or to a public body an activity, policy or practice of
the employer that is in violation of law, rule or
regulation which violation creates and presents a
substantial and specific danger to the public health
or safety;
...
(c) objects to, or refuses to participate in any such
activity, policy or practice in violation of a rule of
law, rule or regulation.

Sections 740(2)(a) and (c) are "triggered only by a
violation of a law, rule or regulation that creates and
presents a substantial and specific danger to the
public health and safety." *Remba v. Federation
Employment and Guidance Svc.,* 76 N.Y.2d 801,
802, 559 N.Y.S.2d 961, 961, 559 N.E.2d 655 (1990)
. Fraudulent billing and other financial irregularities
are not the sorts of violations which create a danger
to public health and safety. *Id.; see, e.g., Leibowitz
v. Bank Leumi Trust Co.,* 152 A.D.2d 169, 175-77,
548 N.Y.S.2d 513, 516-20 (2d Dept.1989)
(fraudulent banking practices); *Vella v. United
Cerebral Palsy,* 141 Misc.2d 976, 535 N.Y.S.2d
292, 294 (Sup.Ct.N.Y.Co.1988) (overpayments for
plumbing fixtures).

Since the practices about which plaintiff
complained to his supervisors were financial
irregularities that did not pose any health or safety
dangers necessary to trigger the statute, his claim of
retaliatory discharge must be dismissed.

### D. New York Human Rights Law § 296(16)

**\*5** Although plaintiff does not allege any statutory
or common law basis for his claim that the failure to
rehire him allegedly because of his arrest violated
the law, I construe it as a claim under New York
Human Rights Law § 296(16)(N.Y. Exec. Law §
296(16)(McKinney 1993)), as the only possible
basis of which I am aware.[FN2] That statute
provides, in relevant part:

> FN2. Defendant has so interpreted the
> claim, and plaintiff does not controvert that

interpretation or suggest any alternative
basis.

It shall be an unlawful discriminatory practice...for
any person, agency, bureau, corporation or
association...to make any inquiry about, whether in
any form of application or otherwise, or to act upon
adversely to the individual involved, any arrest or
criminal accusation of such individual not then
pending against that individual which was followed
by a termination of that criminal action or
proceeding in favor of such individual...in
connection with... employment....
A similar provision is contained in New York City
Administrative Code § 8-107(11).

Neither the complaint nor plaintiff's papers in
opposition to defendant's motion allege any facts to
support the claim that defendant violated this
provision. Indeed, the claim is antithetical to
plaintiff's own theory of what motivated defendant.
The complaint unequivocally states, "it is the
position of plaintiff that [his arrest] had nothing to
do with his termination." Complaint ¶ XII. He
quite clearly maintains that defendant terminated
him because of his age and because of his resistance
to improper financial practices. He alleges he was
told he was "too old to be in the hot seat" and that
he was "getting soft in his old age." If the arrest did
not motivate defendant's decision to terminate him
at a time when his innocence was still in doubt, he
cannot reasonably argue that it motivated defendant
to refuse to rehire him at a time when his innocence
had been established. Simply to assert it did in
conclusory fashion without alleging any facts
whatsoever that could support such a claim at all is
insufficient.

### E. State and City Discrimination Laws

Defendant's argument in its moving memorandum
for dismissal of plaintiff's claims under New York
Human Rights Law § 296 (N.Y. Exec. Law § 296)
and New York City Administrative Code § 8-107,
which prohibit age discrimination, consisted of four
lines. Memorandum of Law in Support of
Defendant's Motion to Dismiss the Complaint, p. 8.
Defendant argued simply that plaintiff's execution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

of the release "for good and valuable consideration" barred these claims. The release itself is the preprinted Blumberg general release form. In his affidavit in opposition, which, as noted above, may be considered as part of the complaint for purposes of this motion in light of plaintiff's *pro se* status, plaintiff clearly alleged that he signed the release under duress, not knowingly and voluntarily, and did not understand its consequences. Defendant in reply suggested that if the court is to consider the affidavit of plaintiff for these purposes, the motion be converted to one for summary judgment and submitted the Curry affidavit for these purposes, stating that it is Curry's opinion that plaintiff fully understood the consequences of the release and has never attempted to return the $13,750.02 severance payment. In fairness to defendant, I will consider the motion as one for summary judgment and accept the Curry affidavit (as well as the Porcello affidavit). [FN3] The motion, in any event, must be denied because whether plaintiff signed the release knowingly and voluntarily, as would be necessary for its enforcement, *see, e.g., Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 733 (S.D.N.Y.1996); *Skluth v. United Merchants & Mfrs., Inc.,* 163 A.D.2d 104, 559 N.Y.S.2d 280, 282 (1st Dept.1990), and whether he thereafter ratified it or offered his severance payment back are clearly issues of material fact in stark dispute in the affidavits that preclude summary judgment.

> FN3. While the court normally is to inform the parties that it will be treating a motion to dismiss as one for summary judgment in order to allow response, given that it is defendant who asks that it be treated as such and asks that we take what it presents outside the pleadings into consideration, it is obviously in order at this time.

*2. The Motion for Partial Summary Judgment*

*A. Standards under Fed.R.Civ.P. 56*

**\*6** Under Fed.R.Civ.P. 56(c) a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion," *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), and extend extra consideration to a *pro se* plaintiff who is to be given "special latitude on summary judgment motions." *McDonald v. Doe,* 650 F.Supp. 858, 861 (S.D.N.Y.1986). *See also Haines v. Kerner,* 404 U .S. at 520-21. But the court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is irrelevant or merely colorable, conclusory, speculative or not significantly probative. *Id.,* 477 U.S. at 249-50; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

*B. Age Discrimination in Employment Act*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Section 626(f), added to the ADEA by the Older Workers Benefit Protection Act ("OWBPA"), provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary," and that "a waiver may not be considered knowing and voluntary unless at a minimum" the waiver contains the items specified in § 626(f)(1)(A)-(H). Defendant acknowledges, as it must given the simple form release herein, that it does not meet the requirements of 29 U.S.C. § 626(f).[FN4] Defendant argues, however, that this failure rendered the release voidable, not void, and that by retaining the severance benefits provided for in the release plaintiff ratified the agreement and is therefore barred from asserting this claim.

> FN4. Most of the items required by the statute were not provided here, including specific reference to rights arising under the ADEA, advice to consult with an attorney prior to executing the agreement, 21 days to consider the agreement and a provision allowing plaintiff to revoke the agreement for any reason within 7 days of its execution.

*7 There is a clear split in the circuits as to whether a release or other document containing a "waiver" of rights under the ADEA which fails to meet the requirements of § 626(f)(1)(A)-(H) can, nevertheless, prevent the employee executing the release from bringing an action under the ADEA.[FN5] The Fourth and Fifth Circuits have held that waivers failing to meet the § 626(f) requirements are voidable, not void, and that a plaintiff who " ratifies" the waiver agreement by performing under it and retaining the benefits provided under it is barred from suing under the ADEA. See Blistein v. St. John's College, 74 F.3d 1459 (4th Cir.1996); Blakeney v. Lomas Information Systems, Inc., 65 F.3d 482 (5th Cir.1995), cert. denied, 516 U.S. 1158, 116 S.Ct. 1042, 134 L.Ed.2d 189 (1996); Wamsley v. Champlin Refining and Chemicals, Inc., 11 F.3d 534 (5th Cir.1993), cert. denied, 514 U.S. 1037, 115 S.Ct. 1403, 131 L.Ed.2d 290 (1995). The Seventh and Eleventh Circuits, on the other hand, rely on the plain meaning of the statutory language in holding that waivers not containing the required

items are void and thus cannot be ratified by the employee's continuing to accept the agreement's benefits. See Oberg v. Allied Van Lines, Inc., 11 F.3d 679, 683 (7th Cir.1993), cert. denied, 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994); Forbus v. Sears Roebuck & Co., 958 F.2d 1036 (11th Cir.), cert. denied, 506 U.S. 955, 113 S.Ct. 412, 121 L.Ed.2d 336 (1992).

> FN5. The ADEA does not preempt plaintiff's age discrimination claims under state and city law (see part 1(E) of this report, supra ), under which the waiver question is to be assessed under general contractual principles.

The Second Circuit has not yet addressed the issue. The only case in this circuit which has is Hodge v. New York College of Podiatric Medicine, 940 F.Supp. 579 (S.D.N.Y.1996), in which the Honorable Barbara S. Jones found such a waiver voidable and barred the plaintiff therein from suit, following the rationale and rule set forth in Wamsley v. Champlin Refining & Chemicals, Inc. in the Fifth Circuit and Blistein v. St. John's College in the Fourth. In those cases, the courts relied upon the common law of contract and the doctrine of contractual ratification, the legislative history going to the purpose of the OWBPA and the absence in the statute and legislative history of any language indicating that a waiver which failed to meet the enumerated requirements would be void of legal effect and incapable of ratification. It was reasoned that "[u]pon learning that the agreement is voidable, the employee, like the party who acted under duress, can either avoid performance of the contract or accept its benefits and thereby ratify the contract. " Blistein v. St. John's College, 74 F.3d at 1466. In rejecting the analysis of the Seventh and Eleventh Circuits which found the plain language of the statute-"[a]n individual may not waive"-mandatory and thus held "[n]o matter how many times parties may try to ratify such a contract, the language of the OWBPA...forbids any waiver," Oberg v. Allied Van Lines, Inc., 11 F.3d at 683, Judge Jones reasoned that "[t]he opposite rule-that a contract is legally void when it fails to meet one of the OWBPA requirements-would allow plaintiffs 'to have it "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

both ways," to retain the benefits that they receive pursuant to their retirement agreements, yet to challenge, through suits against their unsuspecting employers, the very agreements under which those benefits were extended." *Hodge v. New York College of Podiatric Medicine,* 940 F.Supp. at 584 (quoting *Blistein v. St. John's College,* 74 F.3d at 1466).

**8** Since Judge Jones' decision in *Hodge,* the Sixth Circuit has weighed in with the opposite conclusion, following the rationale of the Fourth and Fifth Circuits. *Howlett v. Holiday Inns, Inc.,* 120F.3d598, 120 F.3d 598, 1997 WL 450827 (6th Cir. Aug.5, 1997). The Third Circuit has also now decided the question, holding that a waiver must meet the explicit statutory requirements to be effective, but has done so, interestingly, in refusing to apply the contract analyses of the other circuits. In *Long v. Sears Roebuck & Co.,* 105 F.3d 1529 (3d Cir.1997) , the Third Circuit declined to address the void/voidable issue which other courts considered central to the issue, instead finding on the basis of careful analysis of statutory intent that Congress " intended to occupy the area of ADEA releases and, in doing so, to supplant the common law [of contract]." *Id.,* 105 F.3d at 1539. The court noted that prior to the OWBPA, employees could agree to waive their ADEA rights provided that the waiver was "knowing and voluntary." However, there had been a conflict within the courts over the standard to be applied in assessing whether a waiver was knowing and voluntary. The *Long* court looked to the legislative history and found clear Congressional intent to reject the various courts' approaches and to make waiver contingent on the presence of the items listed in § 626(f). The court concluded:

Given the clear and specific goals of the OWBPA, we cannot accept that Congress intended that the common law doctrine of ratification be applied to releases invalid under the OWBPA. The common law fiction of a "new promise" forged from retention of benefits has no place in this statutory scheme. To conclude otherwise would be to say that Congress only intended that the OWBPA requirements apply to the "first" waiver. Such a result is inconsistent with the aims of the Act and works a hardship on employees who could not have

known that by retaining severance pay they were, in effect, declining the protection of the OWBPA. This conclusion applies as well to the common law concept of tender back of benefits as a pre-requisite to suit under the ADEA.

*Id.,* 105 F.3d at 1539-40 (footnotes omitted). The court noted that requiring plaintiff to tender back the consideration received for executing the waiver before filing an ADEA claim might "initially seem ' appealing under common law notions of fairness," ' but found that legal precedents and the legislative history of the OWBPA compelled a different result. *Id.,* 105 F.3d at 1540 (quoting *Oberg v. Allied Van Lines, Inc.,* 11 F.3d at 683). First, the court noted that other courts, including the Supreme Court in *Hogue v. Southern R.R. Co.,* 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968), have rejected tender back requirements in lawsuits brought under other federal remedial statutes. *Id.,* 105 F.3d at 1541. Second, the court found that Congress intended the OWBPA to provide protections unavailable at common law, including the protection of employees from waiving their rights before they were aware of any potential or actual pattern of discrimination, and that imposing a tender back requirement where a release is deficient would eviscerate the OWBPA. *Id.* Finding that Congress clearly intended to protect older workers who " 'could not afford' to do without separation benefits," *id.,* 105 F.3d at 1542 (quoting *Age Discrimination in Employment Waiver Protection Act of 1989: Hearing on 5.54 Before the Subcomm. on Labor of the Senate Comm. on Labor and Human Resources, 101st Cong.,* 1st Sess. 61 (1989)(Testimony of Robert Patterson)), the court held that applying ratification principles to releases that do not meet the requirements set forth in the statute "have rendered the OWBPA meaningless," since it upholds flawed releases to block discrimination claims rather than requiring employers to comply fully with the law.

**9** The court then directly addressed the "windfall" argument that courts which have barred plaintiffs from proceeding based on contractual ratification principles, including Judge Jones in *Hodge v. New York College of Podiatric Medicine,* have found persuasive:

Neither will rejecting ratification and tender back

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

principles mean that employees will receive a "double recovery" by first accepting a severance payment and later winning a judgment. An employer found liable will be entitled to a set-off of any severance benefits paid. *Oberg,* 11 F.3d at 684. In any event, the windfall argument cuts two ways. Presumably, employers offer severance packages, in part, in exchange for the employees' release of claims. Where an employee must tender severance benefits prior to suit, it is very difficult to return that employee to his pre-release position. He is not restored to employment, the employer may still assert the release as an affirmative defense, *and* there is no guarantee that the employee will receive the information to which he was entitled under the OWBPA. "Such an exchange would arguably unjustly enrich the employer." *Isaacs* [*v. Caterpillar, Inc.*], 765 F.Supp. 1359,]...1367 [C.D.Ill.1991].

...[T]he OWBPA was designed to protect employees negotiating with employers, not to protect employers from overreaching plaintiffs. Employers are, by far, in a better position to protect their own interests than are older employees. Employers should not need the ratification doctrine in order to ensure that their releases are effective; they need to comply with the OWBPA. Most OWBPA requirements are clear and specific, and, once these requirements are met, waivers executed by employees will be valid and enforceable. If prodded by necessity into following the mandates of the OWBPA, employers will have purchased a valid affirmative defense against suit.

*Id.,* 105 F.3d at 1543 (emphasis in original).

Based on my review of the OWBPA, its legislative history, and the cases in this area, I endorse the careful reasoning of the Third Circuit in *Long v. Sears Roebuck & Co.* and recommend that it be adopted here. To put it quite simply, employers need only include in releases proffered to workers each of the items enumerated in section 626(f)(1)(A)(H) to effect a valid waiver. Given Congressional intent and the equities on both sides of the issue, it is hardly an onerous burden. Accordingly, I recommend that defendant's motion for partial summary judgment be denied and that plaintiff be permitted to proceed with his ADEA

claim.

### CONCLUSION

For the reasons set forth above, I recommend that defendant's motion for partial summary judgment with respect to the ADEA claim and defendant's motion for dismissal or summary judgment on the age discrimination claims under New York Human Rights Law § 296 (N.Y. Exec. Law § 296) and New York City Administrative Code § 8-107 be denied, and that defendant's motion to dismiss all other claims in the complaint be granted.[FN6]

> FN6. Discovery herein is scheduled for completion on September 30, 1997, and the proposed pretrial order, memorandum, *voir dire* and requests to charge are to be submitted by October 31, 1997.

S.D.N.Y.,1997.
Conners v. Miller Advertising Agency, Inc.
Not Reported in F.Supp., 1997 WL 1102028 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE



Analysis
As of: Jun 26, 2007

**THE DWECK LAW FIRM, L.L.P., Plaintiff, - against - CYNTHIA ALLEN MANN, Defendant.**

**02 Civ. 8481 (SAS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2003 U.S. Dist. LEXIS 19535**

**October 30, 2003, Decided**
**November 3, 2003, Filed**

**SUBSEQUENT HISTORY:** Related proceeding at Dweck Law Firm, L.L.P. v. Mann, 2004 U.S. Dist. LEXIS 7630 (S.D.N.Y., May 3, 2004)

**PRIOR HISTORY:** Dweck Law Firm, LLP v. Mann, 283 A.D.2d 292, 727 N.Y.S.2d 58, 2001 N.Y. App. Div. LEXIS 5372 (N.Y. App. Div. 1st Dep't, 2001)

**DISPOSITION:**    [*1] Defendant's motion to dismiss granted and plaintiff's motion for summary judgment denied.

**COUNSEL:** For Plaintiff: Jack S. Dweck, Esq., Robert W. Phelan, Esq., The Dweck Law Firm, L.L.P., New York, NY.

For Defendant: David B. Newman, Esq., Stephen L. Brodsky, Esq., Sonnenschein Nath & Rosenthal, New York, NY.

**JUDGES:** SHIRA A. SCHEINDLIN, U.S.D.J.

**OPINION BY:** SHIRA A. SCHEINDLIN

**OPINION**

*OPINION AND ORDER*

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

The Dweck Law Firm, L.L.P. [1] ("Dweck") filed this diversity action against Cynthia Allen Mann ("Mann"),

alleging breach of contract and damage to reputation. [2] Mann now moves to dismiss the complaint or, in the alternative, stay the action pending resolution of an earlier filed state court action. Dweck cross moves for summary judgment.

1 The Dweck Firm purports to be appearing before this Court pro se. However, it is firmly established that "a corporation, partnership, or association may appear in federal court only through licensed counsel," *Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 217, 121 L. Ed. 2d 656, 113 S. Ct. 716 (1993); *see also Pridgen v. Andresen,* 113 F.3d 391, 393 (2d. Cir. 1997). Because Jack S. Dweck, a member of The Dweck Firm and the signatory to Dweck's submissions to the Court, is admitted to the Bar of this Court and appears to have filed an appearance sheet in this action, I will assume, for purposes of the pending motions, that he is counsel to The Dweck Firm.

[*2]

2 New York law does not recognize a cause of action for damage to reputation. *See State v. General Elec. Co.,* 199 A.D.2d 595, 604 N.Y.S.2d 355, 357 (3d Dep't 1993) ("There is no independent action for 'damage to reputation.'"). Such a claim must be asserted through a "specific cause of action like libel, slander or malicious prosecution." *Id.* In its memorandum of law in opposition to defendant's motion to dismiss, plaintiff clari-

fied that its "damage to reputation" claim is actually a claim for libel.

## I. BACKGROUND

Dweck is a limited liability partnership organized under the laws of New York, with places of business in New York City and Westchester County. *See* Complaint ("Compl.") P 2. Dweck is a law firm that specializes in employment and discrimination law. *See id.* P 5. Defendant Mann is a citizen of Illinois. *See id.* P 3.

### B. The Retainer Agreement

In its amended complaint, Dweck alleges the following facts, all of which are deemed true for purposes of this motion. Prior to September 23, 1998, Mann engaged Dweck on an hourly basis to advise [*3] her with respect to various employment issues. *See id.* P 7. When she first retained the firm, Mann worked at Worthheim Schroder, a financial institution. Subsequently, she was employed by First Union National Bank. *See id.* P 6.

Mann eventually became concerned about her accumulating legal bills, and requested that her fee arrangement with the firm be changed from an hourly rate to a contingency agreement. *See id.* Thus, on September 23, 1998, the parties entered into a written retainer agreement, whereby the firm agreed to prosecute, negotiate, adjust or settle a claim for wrongful discharge, age and gender discrimination, harassment and mental anguish against First Union National Bank, on Mann's behalf. *See id.* P 8. Pursuant to the retainer agreement, [3] Mann was to pay $ 12,500 upon execution of the agreement, and, "should the action or proceeding result in a recovery, whether by suit, settlement or otherwise, [] thirty-three and one-third (33 1/3%) percent of all sums recovered against which [] shall be credited the Twelve Thousand Five Hundred ($ 12,500) Dollars advanced [*4] hereunder." *See* Retainer Agreement Between Cynthia Allen Mann and the Dweck Law F.L.L.P. ("Retainer Agreement"), Ex. 1 to the Affidavit of Jack S. Dweck, a member of the Dweck Firm, in support of plaintiff's cross-motion for summary judgment.

3  The retainer agreement is not attached to the complaint, but was provided to the Court as an exhibit to defendant's motion to dismiss. Because it is referenced in the complaint, the court may consider it in ruling on a motion made pursuant to Fed. R. Civ. P. 12(b). *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002) (for purposes of Rule 12(b), the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

In connection with its obligations under the Retainer Agreement, Dweck rendered legal services on Mann's behalf, negotiating and attempting to settle Mann's claims against First Union National Bank. *See* Compl. P 10. As a result of the firm's efforts, First Union made an initial settlement [*5] offer to Mann in the sum of $ 1,035,000.00, inclusive of out placement benefits. Mann accepted this offer on the condition that Dweck reduce its fee to $ 50,000. *See id.* P 10(k). Thereafter, First Union made a second settlement offer to Mann in the amount of $ 1,350,000.00. Mann again accepted the offer conditionally, but this time the condition was that the Dweck Firm receive no fee. *See id.* P 10(1). Subsequently, Mann informed Dweck that she no longer wished to pursue her negotiations with First Union, and discharged the firm. *See id.* P 11.

### C. The State Court Action

On November 5, 1999, the Dweck Firm commenced an action against Mann in New York Supreme Court, seeking (1) a declaratory judgment that the firm fully performed its obligations under the Retainer Agreement and that Mann discharged the firm without cause to avoid paying the firm's fee; and (2) a lien upon any settlement of any claims brought by Mann against First Union. *See id.* P 15. Mann asserted a counterclaim against Dweck, alleging that the firm (1) attempted to coerce her into accepting a settlement offer that was not in her best interests solely so the firm could recover a fee; (2) coerced [*6] Mann into releasing confidential information to First Union; (3) released inaccurate or unauthorized information to First Union; and (4) subsequently interfered with Mann's attempts to negotiate a settlement with First Union. [4] *See id.* P 16. The Appellate Division of the New York Supreme Court dismissed the counterclaim, and Mann has not appealed that dismissal. *See id.* P 19.

4  The Appellate Division of the New York Supreme Court interpreted the counterclaim to be an action for legal malpractice, *see The Dweck Law Firm, L.L.P. v. Mann,* 283 A.D.2d 292, 727 N.Y.S.2d 58 (1st Dep't 2001), and Dweck acknowledges that it was a malpractice claim, *see* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 3.

## II. APPLICABLE LAW

### A. Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted

only [*7] if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Weixel v. Board of Educ. of New York,* 287 F.3d 138, 145 (2d Cir. 2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (alterations omitted)). At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Phelps v. Kapnolas,* 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998)); *see also In re Initial Public Offering Securities Litig.,* 241 F. Supp. 2d 281, 322-24 (S.D.N.Y. 2003).

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Pierce v. Marano,* 2002 U.S. Dist. LEXIS 14870, No. 01 Civ. 3410, 2002 WL 1858772, [*8] at *3 (S.D.N.Y. Aug. 13, 2002) (quotation marks and citations omitted). When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor. *See Chambers,* 282 F.3d at 152. However, although the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief, or if the claim is not legally feasible. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.,* 322 F.3d 147, 158 (2d Cir. 2003); *Stamelman v. Fleishman-Hillard, Inc.,* 2003 U.S. Dist. LEXIS 13328, No. 02 Civ. 8318, 2003 WL 21782645, at *2 (S.D.N.Y. July 31, 2003).

## B. Attorney Compensation

Under New York Law, a client has an absolute right to terminate the attorney-client relationship at any time, with or without cause. *See Universal Acupuncture Pain Servs. v. State Farm Mut. Auto. Ins. Co.,* 232 F. Supp. 2d 127, 130 (S.D.N.Y. 2002) (citing *Cohen v. Grainger, Tesoriero & Bell,* 81 N.Y.2d 655, 658, 602 N.Y.S.2d 788, 622 N.E.2d 288 (1993)). [*9] "An attorney, however, is not left without recourse for terminations lacking cause." *Tops Mkts., Inc. v. Quality Mkts., Inc.,* No. 93 Civ. 0302, 2001 WL 392082, at *2 (W.D.N.Y. Apr. 4, 2001). If a client discharges an attorney after some services have been performed but prior to the completion of the services for which the fee was agreed upon, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the completed services. *See Universal Acupuncture,* 232 F. Supp. 2d at 130 (citing *Tops Mkts.,* 2001 WL 392082, at *2).

A discharged attorney has two methods of recourse. *First,* the attorney is statutorily entitled to a charging lien on any recoveries obtained by the former client in the proceedings in which the attorney rendered services. *See* N.Y. Judiciary Law § 475 (McKinney's 2003); *see also Universal Acupuncture,* 232 F. Supp. 2d at 131. *Second,* under New York common law, an attorney is entitled to a retaining lien on the client's papers and property that are in the attorney's possession until the attorney is reimbursed for expenses, [*10] the attorney's fee is determined under a quantum meruit theory, and it is either paid or secured. *See Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 (2d Cir. 1991); *Lai Ling Cheng v. Modansky Leasing Co.,* 73 N.Y.2d 454, 457-59, 541 N.Y.S.2d 742, 539 N.E.2d 570 (1989). In contingency fee cases, the court has discretion to defer the calculation of appropriate attorney's fees until the conclusion of the litigation because the amount of the recovery is an element in the determination. *See Universal Acupuncture,* 232 F. Supp. 2d at 131 (citing *Tops Mkts.,* 2001 WL 392082, at *3).

Where the attorney in a contingency fee case is discharged but the client makes no recovery in the underlying action, however, the attorney's fees are limited to disbursements, and the attorney has no right to recover for the reasonable value of her services under quantum meruit. *See Universal Acupuncture,* 232 F. Supp. 2d at 131-132 ("if there is no recovery, there will be no money from which to draw [the attorney]'s award and [the attorney] will be unable to recover attorney's fees") (citing *Steves v. Serlin,* 125 A.D.2d 780, 509 N.Y.S.2d 666, 667 [*11] (3d Dep't 1986) ("any amount owed [by the client] was limited to disbursements expended, since [the attorney] was retained on a contingency basis and no award had as yet been recovered by [the client]")); *Tuff & Rumble Mgmt., Inc. v. Landmark Distribs., Inc.,* 254 A.D.2d 15, 677 N.Y.S.2d 788, 788 (1st Dep't 1998) (holding that attorney's recovery is limited to disbursements because the client made no recovery in the underlying action, for which there was a contingent fee arrangement). In such circumstances, the attorney is limited to recovering disbursements and relying on the statutory charging lien pursuant to N.Y. Judiciary Law § 475.

## C. Libel

Under New York law, libel, which is written or printed defamation, is defined as a false statement, published *without privilege* or authorization to a third party, that either causes special harm or constitutes libel per se. *See Dillon v. City of New York,* 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1999); *Peters v. Baldwin Union Free School Dist.,* 320 F.3d 164, 169 (2d Cir. 2003). It is a long-standing principle of New York law that "a statement made in the course [*12] of judicial proceedings is

absolutely privileged so long as pertinent to the controversy," *55th Mgmt. Corp. v. Goldman*, N.Y. Slip Op. 23505, 2003 WL 1906744, at *1 (1st Dep't Apr. 9, 2003), and may not be the basis for a libel action.

> A counsel or party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved. Within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter having no materiality or pertinency to such questions.

*Youmans v. Smith*, 153 N.Y. 214, 219, 47 N.E. 265 (1897) (quoting *Gilbert v. People*, 1 Denio 41 (1845)); *see also Mosesson v. Jacob D. Fuchsberg Law Firm*, 257 A.D.2d 381, 683 N.Y.S.2d 88, 89 (1st Dep't 1999) ("The absolute privilege rule is broad and liberal in order to protect counsel, witnesses and the parties to a judicial action ... The privilege is broad enough to extend to all matters which would be libelous if not for [*13] their introduction into an action and which might become pertinent at any time during the proceedings.") (quotations and citations omitted); *Lipin v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 137 (S.D.N.Y. 2002) ("All that is required for a statement to be privileged is a minimal possibility of pertinence."); *Chimarev v. TD Warehouse Inv. Servs.*, 233 F. Supp. 2d 615, 618 (S.D.N.Y. 2002) (same). "The absolute privilege embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability. This test of pertinency is extremely liberal." *Grasso v. Mathew*, 164 A.D.2d 476, 564 N.Y.S.2d 576, 578 (3d Dep't 1991) (citation omitted); *see also Singh v. HSBC Bank U.S.A.*, 200 F. Supp. 2d 338, 340 (S.D.N.Y. 2002).

"The determination of the question of privilege is a question of law, and if it be determined that the language used was not impertinent, the privilege is absolute." *People ex rel. Bensky v. Warden of City Prison*, 258 N.Y. 55, 60, 179 N.E. 257 (1932); *see also 55th Mgmt. Corp.*, 2003 WL 1906744, [*14] at *1; *Chimarev*, 233 F. Supp. 2d at 618 (denying leave to amend complaint because the proposed defamation claim lacked merit as a matter of law where the purported defamation was made in the course of a legal proceeding); *Singh*, 200 F. Supp. 2d at 340 (same). Thus, where it is clear from the pleadings that the allegedly defamatory statement was made in the course of a legal proceeding, the court must determine whether the statement was pertinent to the proceeding. If the statements is plausibly or possibly pertinent to the legal proceeding in which it was made, no defamation action may lie as a matter of law. *Lipin*, 202 F. Supp. 2d at 138 (holding that complaint failed to state a cause of action for defamation where the allegedly defamatory statement was uttered in the course of a legal proceeding to which it was pertinent); *O'Brien v. Alexander*, 898 F. Supp. 162, 171-72 (S.D.N.Y. 1995) (dismissing cause of action where purportedly defamatory statements were made in course of legal proceedings and were plausibly pertinent to the proceeding).

### III. DISCUSSION

#### A. Breach of Contract Claim

The Retainer Agreement [*15] between Dweck and Mann provides that Dweck is not entitled to legal fees beyond the $ 12,500 advance payment if there is no "recovery" on Mann's claims against First Union National Bank. *See* Retainer Agreement. The Agreement, therefore, sets forth a typical contingency fee arrangement. Pursuant to N.Y. Judicary Law § 475, Dweck is entitled to a lien on any recoveries Mann obtains in her proceedings against First Union. And Dweck has already secured such a lien in its state court action against Mann. *See* Pl. Mem. at 4.

In addition to the statutory charging lien, Dweck is entitled to recover its disbursements from Mann. [5] *See Universal Acupuncture*, 232 F. Supp. 2d at 131-32; *Steves*, 509 N.Y.S.2d at 667; *Tuff & Rumble*, 677 N.Y.S.2d at 788. But because Mann and Dweck had a contingency fee agreement, Dweck is not entitled to recover for the reasonable value of its services unless and until Mann recovers in the underlying action against First Union. *See Universal Acupuncture*, 232 F. Supp. 2d at 131-32; *Steves*, 509 N.Y.S.2d at 667; *Tuff & Rumble*, 677 N.Y.S.2d at 788. [*16] In its complaint, Dweck pleads only that Mann *could* have recovered from First Union; it does not, and apparently cannot, plead that Mann actually *did* recover any money from First Union. As such, Dweck is not entitled to any fees for its services, and cannot recover on its breach of contract claim. That claim is therefore dismissed. [6]

> 5 Dweck does not seek to recover its disbursements in this action.

> 6 The fact that Dweck may not, as a matter of law, maintain a breach of contract action against Mann in connection with the Retainer Agreement may not preclude Dweck from bringing an action for breach of the covenant of good faith and fair dealing. New York law does not recognize a

separate cause of action for breach of the cove-
nant of good faith and fair dealing when a breach
of contract claim based on the same facts is also
pled, because the two claims are considered re-
dundant. *See Harris v. Provident Life and Acci-
dent Ins. Co.,* 310 F.3d 73, 81 (2d Cir. 2002).
However, given that Dweck cannot bring a claim
against Mann for breach of contract, *see infra,* it
is possible that Dweck could maintain an action
for breach of the covenant of good faith and fair
dealing because there is no risk of redundant
claims.

## [*17] B. Libel

Dweck alleges that Mann committed libel by alleg-
ing that Dweck engaged in improper and unethical con-
duct. *See* Compl. P 16. Specifically, in the New York
state court action, Dweck sought a declaratory judgment
that it was entitled to fees from Mann based on its repre-
sentation of her in connection with her dispute with First
Union National Bank. *See id.* P 15. Mann counter-
claimed, alleging that Dweck committed malpractice in
the course of the same transaction from which it was
seeking to recover fees from her. *See id.* P 16. Dweck
claims that Mann's counterclaim, and the facts alleged in
support thereof, constitute libel. Because it is clear from
the pleadings that the allegedly defamatory statement
was made in the course of a legal proceeding, I must
determine whether the statement was pertinent to the
proceeding.

There is no doubt that the facts alleged in Mann's
counterclaim against Dweck were "plausibly [] relevant
or pertinent," *see Grasso,* 564 N.Y.S.2d at 578; *Singh,*
200 F. Supp. 2d at 340, both to Mann's counterclaim and

Dweck's action for a declaratory judgment. Presumably,
Mann alleged that Dweck (1) attempted to [*18] coerce
her into accepting a settlement offer that was not in her
best interests solely so the firm could recover a fee; (2)
coerced her into releasing confidential information to
First Union; (3) released inaccurate or unauthorized in-
formation to First Union; and (4) subsequently interfered
with her attempts to negotiate a settlement with First
Union, *see* Compl. P 16, to explain why Dweck was not
entitled to fees from her, and to support her malpractice
claim against Dweck. Given the extremely liberal perti-
nency test, *see Grasso,* 564 N.Y.S.2d at 578, and the fact
that Mann's factual allegations were obviously related to
Dweck's action and Mann's own counterclaim, I con-
clude that the factual allegations contained in Mann's
counterclaim are privileged as a matter of law, and can-
not form the basis for a libel action. *See Bensky,* 258
N.Y. at 60; *55th Mgmt. Corp.,* 2003 WL 1906744 at *1;
*Chimarev,* 233 F. Supp. 2d at 618; *Singh,* 200 F. Supp.
2d at 340; *Lipin,* 202 F. Supp. 2d at 138; *O'Brien,* 898 F.
Supp. at 171-72. The libel claim is therefore dismissed.

## IV. CONCLUSION

[*19] For the foregoing reasons, Mann's motion to
dismiss is granted and Dweck's motion for summary
judgment is denied. The Clerk of the Court is directed to
close this motion and this case.

SO ORDERED:

Shira A. Scheindlin

U.S.D.J.

Dated: October 30, 2003

LEXSEE



Positive
As of: Jun 26, 2007

G&R MOOJESTIC TREATS INC., GEORGE LISI, ROSEMARIE LISI, WA-
TARU IWATA, JI INTERNATIONAL, LLC, and JUN IWATA, Plaintiffs, - against
- MAGGIEMOO'S INTERNATIONAL, LLC, Defendant.

03 Civ. 10027 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2004 U.S. Dist. LEXIS 8806; 2004-2 Trade Cas. (CCH) P74,485

May 19, 2004, Decided
May 19, 2004, Filed

**SUBSEQUENT HISTORY:** Motion denied by G&R
Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC, 2004
U.S. Dist. LEXIS 9480 (S.D.N.Y., May 27, 2004)

**DISPOSITION:**   MMI's motion to transfer claims of
Franchisee Plaintiffs to the United States District Court
for the District of Maryland was granted, except for the
common law fraud claim, each of Wataru Iwata's claims
were dismissed for failure to state a claim. MMI's motion
for attorney's fees against Wataru Iwata was denied.
Plaintiffs' motion to stay and order MMI to dismiss its
lawsuits in the District of Maryland was denied.

**COUNSEL:** [*1]  MITCHELL J. KASSOFF, ESQ.,
Attorney for Plaintiffs, South Orange, NJ.

NIXON PEABODY, Attorneys for Defendant, Boston,
MA, By: ARTHUR L. PRESSMAN, ESQ., GREGG A.
RUBENSTEIN, ESQ., Of Counsel.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

**Sweet, D.J.**

   Defendant  MaggieMoo's  International,  LLC
("MMI"), has moved to stay, dismiss and/or transfer the

claims  of  plaintiffs  G&R  Moojestic  Treats,  Inc.
("G&R"), George Lisi, Rosemarie Lisi, JI International,
LLC, Jun Iwata and Wataru Iwata (collectively, "Fran-
chisee Plaintiffs") and to dismiss the claims of plaintiff
Wataru Iwata for failure to state a claim upon which re-
lief may be granted pursuant to Fed. R. Civ. P. 12(b)(6),
and for attorney's fees. All plaintiffs have moved to stay
or dismiss the suit brought by MMI in the District of
Maryland.

*Parties*

   MMI is a Delaware limited liability company with
its principal offices in Columbia, Maryland. MMI is a
franchisor of specialty ice cream stores.

   G&R is a New York corporation with its principal
offices in Syracuse, New York. George Lisi and Rose-
marie Lisi are citizens of New York and are the sole
shareholders and [*2]  officers of G&R. On April 10,
2001, a Franchise Agreement was executed between
MMI and G&R (the "G&R Franchise Agreement").

   Jun Iwata resides in Pennsylvania and is a member
of JI International, LLC ("JI"), a Pennsylvania limited
liability company with its principal offices in Pennsyl-
vania. On March 25, 2002, a Franchise Agreement was
executed between MMI and Jun Iwata, on behalf of an
entity to be later named (the "JI Franchise Agreement").
The entity to be later named was JI. JI is an intended
beneficiary of the Franchise Agreement.

Case 1:07-cv-05471-BSJ-KNF    Document 7-9    Filed 07/03/2007    Page 18 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

Wataru Iwata, a citizen of New York, is the brother of Jun Iwata and is alleged by Plaintiffs to be the provider of funds for the purchase of the franchise by Jun Iwata and a "silent partner" in the franchise, although his name is not on the JI Franchise Agreement.

### Prior Proceedings

On December 11, 2003, Plaintiffs filed an action in this Court alleging that MMI breached both Franchise Agreements, committed fraud, breached an implicit covenant of good faith, caused Plaintiffs not to pursue other business opportunities, and violated the Federal Trade Commission Rule on Franchising, the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman [*3] Act and the Racketeer Influenced and Corrupt Organizations Act.

In addition, G&R, George Lisi, and Rosemarie Lisi allege that MMI violatedArticle 33 of the New York State General Business Laws. JI, Jun Iwata, and Wataru Iwata allege that MMI violated the Maryland Franchise Registration and Disclosure law.

On February 13, 2004, MMI commenced separate actions in the United States District Court for the District of Maryland to compel mediation pursuant to identical mediation clauses in the Franchise Agreements of both sets of Plaintiffs, captioned *Maggiemoo's International, LLC v. G&R Moojestic Treats Inc., et. al.*, WMN-04-392, and *Maggiemoo's International, LLC v. JI International, Inc., et. al.*, WMN-04-393, respectively. On March 8, 2004, the Honorable William M. Nickerson of the District of Maryland ordered that:

> In the interests of judicial economy, I will delay the scheduling of a hearing concerning MMI's Motion(s) to Compel Mediation until after Judge Robert Sweet of the Southern District of New York has had a chance to hear arguments and make rulings on related motions before him on March 31st, 2004.

On March 22, 2004, Judge Nickerson denied the motion [*4] of MMI to reconsider the March 8 Order.

On February 28, 2004, Plaintiffs filed an amended complaint. Following the filing of the amended complaint, MMI then filed amended versions of its briefs in support of its two motions. On March 26, 2004, MMI's interim motion to stay discovery pending the determination of the instant motions was denied.

Following the submission of briefs, oral argument on the motion was heard on March 31, 2004. On April 26, 2004, MMI's motion to supplement its memorandum of law in support of the motion to stay, dismiss or transfer the action was granted, at which time the motion was deemed fully submitted.

### Facts

The following facts are drawn from Plaintiffs' amended complaint (the "Amended Complaint") and accompanying exhibits and do not constitute findings of fact by the Court.

The Amended Complaint alleges that after G&R entered the Franchise Agreement with MMI, MMI rejected more than fifteen sites that were submitted by G&R, George Lisi and Rosemarie Lisi to open the franchise, effectively taking their money and refusing to allow an opening of a franchise. Because another ice cream specialty store subsequently signed a lease for one of the [*5] spots they had chosen, Plaintiffs claim that the competitive nature of the business was forever altered, damaging their ability to successfully introduce MMI's franchise system in the area.

The Amended Complaint also alleges that MMI intended to deceive Jun Iwata with a misleading Uniform Franchise Offering Circular ("UFOC"), and intended to deceive any lenders Jun Iwata would employ, such as Wataru Iwata. Further, the lack of support from MMI in granting approval for a site led to another specialty ice cream store signing a lease for the site chosen by JI, thereby damaging Plaintiffs' ability to successfully introduce MMI's franchise system in the area. Upon executing a lease at another location, JI claims that losses were incurred in the amount of rental payment made during months when construction of the store could not begin due to MMI's actions and that construction estimates were more than 51% higher than MMI's UFOC had disclosed, forcing them to terminate the lease.

Paragraph 24.2 of both the G&R and the JI Franchise Agreements provides that "all controversies, disputes, and claims arising out of or related to this Agreement (including any claim that the Agreement or any of [*6] its provisions is invalid, illegal, or otherwise voidable or void) . . . shall first be subject to non-binding mediation."

Paragraph 24.4 of both the G&R and the JI Franchise Agreements provide that, "Any legal action brought by Franchisee against Franchisor in any forum or court, whether federal or state, shall be brought exclusively in the federal district court covering the location at which Franchisor has its principal place of business at the time of the action."

### MMI's Motion to Stay, Dismiss and/or Transfer the Claims of G&R, George Lisi, Rosemarie Lisi, JI and Jun Iwata

Case 1:07-cv-05471-BSJ-KNF    Document 7-9    Filed 07/03/2007    Page 19 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

MMI has moved to stay the instant litigation or to dismiss the claims on the basis of the mediation clauses in both the G&R and the JI Franchise Agreements. However, because of the pending actions in the District of Maryland and the forum selection clause providing that all litigation between MMI and the Franchisee Plaintiffs must be brought in that District, MMI's motion to dismiss or transfer pursuant to the forum selection clause will be considered first.

### The Forum Selection Clause is Enforceable

Forum selection clauses are prima facie valid and should be enforced unless [*7] enforcement is shown by the resisting party to be unreasonable under the circumstances. *See The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972). This rule has been extended to diversity and other non-admiralty cases. *See Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990); *Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988). "The Second Circuit, moreover, has a 'strong policy' in favor of giving effect to such a clause." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380-81 (S.D.N.Y. 2001) (citing *Weiss v. Columbia Pictures Sys. of America*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992)).

Forum selection clauses are considered "unreasonable" (1) if their incorporation into the agreement was the result of fraud or overreaching, (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum, (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or (4) if the clauses contravene a strong public policy of the [*8] forum state. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1363 (2d Cir. 1993) (citations omitted).

The Franchisee Plaintiffs have not challenged the forum selection clause on the basis of hardship and contest only the first factor of the reasonableness test, claiming that they were fraudulently induced into accepting the forum selection clauses, that the forum selection clause is unconscionable and unenforceable, and that all plaintiffs were coerced into accepting the forum selection clause. Amended Complaint, PP 13-16, 90-93. In addition, the Franchisee Plaintiffs argue that the entire Franchise Agreement is a contract of adhesion.

A "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, n.14, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 18 L. Ed. 2d 1270, 87 S. Ct. 1801, (1967). In other words, "[a] claim of fraud in the inducement of a contract is insufficient to invalidate a

forum selection . . . clause found in that contract. Rather, it is the inclusion of [*9] those specific clauses plaintiffs seek to avoid that must have been induced by fraud." *Stamm v. Barclays Bank of New York*, 960 F. Supp. 724, 729 (S.D.N.Y. 1997). The party seeking to invalidate a forum selection clause on grounds of fraud or coercion "must specifically prove that but for the drafter's misconduct, it would not have been included in the agreement." *Sun Forest*, 152 F. Supp. 2d at 381.

The forum selection clause in both Franchise Agreements is labeled "Applicable Law," and is set apart in a separate numbered paragraph. The language of the clause itself provides that "any legal action . . . shall be brought exclusively in the federal district court covering the location at which Franchisor has its principal place of business at the time of the action." Plaintiffs have made no claim that they were not on notice as to the provision.

The Franchisee Plaintiffs have not made the "strong showing" required to prove that the forum selection clause was the result of fraud or coercion. *The Bremen*, 407 U.S. at 12. Rather, Plaintiffs have made conclusory allegations of fraud and coercion. Such bare bones allegations are insufficient [*10] to invalidate the forum selection clause. *See, e.g., National School Reporting Services, Inc. v. National Schools of California, Ltd.*, 924 F. Supp. 21, 24 (S.D.N.Y. 1996) ("conclusory statements of duress are insufficient to show fraud or overreaching in agreeing to the forum selection clause"); *Composite Holdings v. Westinghouse Elec. Corp.*, 992 F. Supp. 367, 371 (S.D.N.Y. 1988) (refusing to invalidate forum selection clause where allegation of fraud "is entirely conclusory . . . No facts are set forth that logically give rise to an inference of fraudulent intent, particularly given that the designated forum is [where defendant is] headquartered and thus a quite natural selection for entirely ordinary reasons.")).

The Franchisee Plaintiffs' arguments that the forum selection clause is unconscionable and that it is a contract of adhesion may be taken together. "An unconscionable bargain is one which no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *Doctor's Associates, Inc. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996) (quoting *Hume v. United States*, 132 U.S. 406, 411, 33 L. Ed. 393, 10 S. Ct. 134 (1889)). [*11] The fact that the Franchise Agreement was presented on a take it or leave it basis and was not subject to negotiation renders it neither a contract of adhesion nor unconscionable. *See, e.g., Novak v. Overture Services, Inc.*, 309 F. Supp. 2d 446, 2004 U.S. Dist. LEXIS 5277, CV 02-5164, 2004 WL 613001 (E.D.N.Y. Mar. 25, 2004) ("An 'agreement cannot be considered procedurally unconscionable, or a contract of adhesion, simply because it is a form contract.'") (quoting *Rosenfeld v. Port Authority of New York and*

Case 1:07-cv-05471-BSJ-KNF     Document 7-9     Filed 07/03/2007     Page 20 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

*New Jersey*, 108 F. Supp. 2d 156, 164 (E.D.N.Y. 2000)); *Stamm*, 960 F. Supp. at 733 (finding forum selection clause not unconscionable despite the fact that the clause is "now disadvantageous to Plaintiffs" and that it was presented to plaintiffs on a take it or leave it basis).

The Franchisee Plaintiffs also argue that even if the forum selection is enforceable, the clause does not cover their non-contractual claims. The clause states that "any legal action brought by Franchisee against Franchisor" is subject to the clause. Reading this broad clause to apply at least to actions arising from the Franchise Agreement, non-contractual claims are deemed to arise from the agreement [*12] for the purposes of the forum selection clause. *See Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (holding that plaintiff's action arises from the agreement "although the complaint was brought pursuant to federal antitrust law, the gist of [plaintiff's] claim is that [defendant] wrongfully terminated the agreement, thereby damaging [plaintiff]."). In *Young Women's Christian Ass'n of U.S., Nat. Bd. v. HMC Entertainment, Inc.*, 1992 U.S. Dist. LEXIS 14713, 91 Civ. 7943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992), the court found that plaintiff's claims for a declaratory judgment with respect to defendant's potential unfair competition, trademark infringement, misappropriation and implied contract claims arose pursuant to the contract, and were therefore within the scope of the forum selection clause because "any determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract." The Franchisee Plaintiffs have conceded that the causes of action in "the Amended Complaint that concern the defendant's breach of contract are inextricably woven with [*13] the other actions of defendant." Franchise Plaintiff's Mem. of Law in Opposition to Def.'s Motion to Stay, Dismiss and/or Transfer at 6. It is therefore determined that the forum selection clause agreed to by the Franchisee Plaintiffs (other than Waturu Iwata) is enforceable and that each of Plaintiffs' claims is within the scope of the clause.

### The Franchisee Plaintiffs Claims are Transferred to the District of Maryland

Having found the forum selection clause enforceable as to Plaintiffs' claims, it remains to decide whether to dismiss the case pursuant to the forum selection clause or to transfer it pursuant to 28 U.S.C. § 1404(a). [1] "A district court may 'dismiss on the grounds that the parties have agreed in advance that some other forum is the more convenient location for resolution of the dispute.'" *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 405 (S.D.N.Y. 2001) (quoting *Licensed Practical Nurses, Technicians & Healthcare Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 393, 408 (S.D.N.Y. 2000)). Resolution of this issue shall be determined by "weighing in each case whether dismissal or transfer is the most efficient and just means of enforcing the clause." [*14] *Ulysses Cruises*, 131 F. Supp. 2d at 409. The forum selection clause in this case specifies that any litigation between franchisee and franchisor shall be brought in the "federal district court" where franchisor has its place of business, which is the District of Maryland. JI and G&R Franchise Agreements, P 24.2. Transfer of the claims of the Franchisee Plaintiffs to the District of Maryland is therefore the most "appropriate remedy for effectuating [the] forum-selection clause." *Ulysses Cruises*, 131 F. Supp. 2d. at 407.

> 1   Following the instructive discussion by the Honorable Gerard E. Lynch in Licensed Practical Nurses, Technicians and *Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 402-09 (S.D.N.Y. 2000), it is determined that "the presence of a forum-selection clause does not deprive the disfavored forum of jurisdiction or venue, where the conditions of subject matter and *in personam* jurisdiction are otherwise met." *Id.* at 409. Therefore, "dismissal may be based on either the court's inherent power to decline jurisdiction, by analogy to the traditional doctrine of forum non conveniens, or on the power under Rule 12(b)(6) for failure to state a claim." *Id.* Although MMI does not specify by what authority it seeks transfer as an alternative remedy, it is presumed to invoke the Court's power to transfer pursuant to § 1404(a). *Id.*

[*15] An enforceable forum selection clause is "*not dispositive as to transfer under § 1404(a)*", *Falconwood Financial Corp. v. Griffin*, 838 F. Supp. 836, 840 (S.D.N.Y. 1993) (citing *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)), and "the court must still 'take account of factors other than those that bear solely on the parties' private ordering of their affairs,' such as the convenience of the witnesses and . . . other factors . . ." *Mpower Communs. Corp. v. Voipld.com, Inc.*, 304 F. Supp. 2d 473, 475 (W.D.N.Y. 2004) (quoting *Stewart*, 487 U.S. at 30). However, "it is clear that such clauses are not lightly disregarded; a party opposing enforcement of a forum selection clause must "demonstrate exceptional facts explaining why he should be relieved from his contractual duty." *Id.* (quoting *Weiss*, 801 F. Supp. at 1278); *see also Stewart*, 487 U.S. at 33 ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases") (Kennedy, J., concurring)). The Franchisee Plaintiffs have not shown any exceptional [*16] facts, arguing only that the plaintiffs' choice of forum is entitled to deference. As the Franchise Agreements show, however, the Franchisee Plaintiffs'

Case 1:07-cv-05471-BSJ-KNF    Document 7-9    Filed 07/03/2007    Page 21 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

contractual choice of forum is the District of Maryland. Accordingly, the claims of the Franchisee Plaintiffs will be transferred there.

### MMI's Motion to Dismiss the Claims of Wataru Iwata

Because Waturu Iwata was not a party to a Franchise Agreement, his claims are not bound by the terms of the forum selection clause. MMI has not moved to transfer Waturu Iwata's claims to the District of Maryland and has instead moved to dismiss under Fed. R. Civ. P. 12(b)(6).

In reviewing a 12(b)(6) motion, courts must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (citing *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052 (2d Cir. 1993). However, "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeene de Banque v. La Republica de Venezuela*, 700 F. Supp. 114, 122 (S.D.N.Y. 1988). [*17] The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1956); *see also Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

Review must be limited to the complaint and documents attached or incorporated by reference thereto. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). In this context, the Second Circuit has held that a complaint is deemed to "include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

### Choice of Law

As an initial matter, it must be determined what law applies to Waturu Iwata's state law claims for breach of contract, breach of an implied contract of good faith and fair dealing, and fraud. MMI's briefs cite to New York law without addressing the issue. Waturu Iwata is a resident of New York. However, the parties to the contract, JI and MMI, are residents of Pennsylvania and Maryland, respectively, [*18] and the proposed franchise location is in Pennsylvania.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state, in this instance New York. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved. Where no [such] conflict exists . . . there is no reason to

engage in a choice of law analysis." *Smith v. Mitlof*, 148 F. Supp. 2d 279, 285 (S.D.N.Y. 2001) (quoting *Elson v. Defren*, 283 A.D.2d 109, 114, 726 N.Y.S.2d 407, 411 (1st Dep't 2001)). The elements of a contract claim are the same in Pennsylvania, New York and Maryland, *see Morgan Stanley High Yield Securities v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003); *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 2002 PA Super 39, 792 A.2d 1269, 1272 (Pa. Super. 2002); *Yousef v. Trustbank Sav., F.S.B.*, 81 Md. App. 527, 568 A.2d 1134, 1137 (Md. App. 1990), and in [*19] each jurisdiction a claim for breach of an implied duty of good faith cannot be brought in the absence of an underlying contract. *See Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74 (1st Dep't 2000); *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 280 (E.D. Pa. 2000); *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002). In the absence of a conflict, New York law will be applied to the contract claims.

Without comparing the substantive doctrine with respect to common law fraud claims in the various jurisdictions, New York law applies because

> "fraud claims are governed by the laws of the jurisdiction where the injury is deemed to have occurred which usually is where the plaintiff is located." Pinnacle Oil Co. v. Triumph Oklahoma, L.P., 1997 U.S. Dist. LEXIS 8985, 93 Civ. 3434, 1997 WL 362224, at *1 (S.D.N.Y. Jun. 27, 1997) (citing Sack v. Low, 478 F.2d 360, 366 (2d Cir. 1973) (Friendly, J.)); Cooney v. Osgood March., Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993) ("If conflict-regulating laws are at issue, the [*20] law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."). Indeed, "the traditional view has been that ... when a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent misrepresentations are made." Sack, 478 F.2d at 366 (citations omitted).

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*, 2003 U.S. Dist. LEXIS 16006, 99 Civ. 3794, 2003 WL 22118977, at *17 (S.D.N.Y. Sept. 11, 2003). Because Waturu Iwata is a New York resident, any alleged loss was sustained in New York, making New York law applicable.

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

### A. *Breach of Contract*

In order to recover on a claim for breach of contract, Waturu Iwata must allege, among other elements, the existence of a valid contract. *See Morgan Stanley High Yield Securities v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 213 (S.D.N.Y. 2003). The relevant contract is the JI Franchise Agreement. Although a copy of the Agreement was not attached to the Amended Complaint, it is clearly incorporated by reference, and may be considered on a motion to dismiss. [*21] *See Rothman*, 220 F.3d at 88. On March 25, 2002, MMI entered into the Franchise Agreement with Jun Iwata on behalf of an entity to be named later. *See* Declaration of Gregg Rubenstein, Exhibit 1. That entity is JI. Waturu Iwata is not a party to the JI Franchise Agreement, although he is alleged to be Jun Iwata's lender, and to have reviewed and relied upon the information in the UFOC. Amended Complaint P 99. The Amended Complaint alleges, however, that Waturu Iwata is a "silent partner," and "is more than simply a provider of funds for the purchase of the franchise." *Id.* at PP 100, 101. As a silent partner, Waturu Iwata is alleged to be "the equivalent of an owner of the franchise," and to have the "equivalent of a contractual relationship" with MMI and "the equivalent of a direct relationship" with MMI. *Id.* at PP 102-104.

The allegations in the Amended Complaint are insufficient to establish that there was a valid contract between Waturu Iwata and MMI. The term "silent partner" is not defined in the complaint, but there is no allegation that a contractual relationship was formed. Nor does the allegation that Waturu Iwata and MMI [*22] had the "equivalent of a contractual relationship" give rise to a legally recognizable relation. In his brief, Waturu Iwata argues that he "had the same possibility of loss due to an improper action or inaction on the part of" MMI as Jun Iwata. Memorandum of Waturu Iwata in Opposition to Defendant's Motion to Dismiss, at 3. Such a theory of contract liability would give standing to sue for breach of contract to every creditor to a party to a contract. Waturu Iwata has cited no caselaw to support his theory. Accordingly, the breach of contract claim is dismissed.

### B. *Breach of Implicit Covenant of Good Faith*

In the absence of a valid contract, Waturu Iwata's claim for a breach of an implied covenant of good faith must also be dismissed. *See Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74 (1st Dep't 2000) ("cause of action for breach of the implied covenant of good faith and fair dealing . . . may not be used as a substitute for a nonviable claim of breach of contract."); *Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*, 276 A.D.2d 673, 676, 714 N.Y.S.2d 338 (2d Dep't 2000) ("there can be no covenant of good faith and fair [*23] dealing implied where there is no contract").

### C. *Claim for Violation of the Maryland Franchise Registration and Disclosure Law*

Waturu Iwata has alleged that MMI violated the Maryland Franchise Registration and Disclosure Law ("MFRDL"). *See* Md. Bus. Reg. Code Ann. §§ 14-201 to 14-233. Section 14-227(a)(1) of the MFRDL provides that "A person who sells or grants a franchise is civilly liable to the person who buys or is granted a franchise if the person who sells or grants a franchise offers to sell or sells a franchise. . ." There is no allegation in the Amended Complaint that Waturu Iwata was sold or granted a franchise by MMI. Accordingly, this claim is dismissed for lack of standing. *See Matterhorn Group, Inc. v. SMH (U.S.) Inc. (In re Matterhorn Group)*, 2000 Bankr. LEXIS 915, 2000 WL 1174215 (Bankr. S.D.N.Y. Aug. 17, 2000) ("The plain language of the [MFRDL] grants a civil remedy only to purchasers and grantees . . . The 'purchase' requirement simply recognizes that a non-purchaser does not rely on an unregistered or fraudulent prospectus, and hence, does not suffer the type of injury that Maryland franchise law, and similar laws in other states, are designed to prevent."); [*24] *Flynn v. Everything Yogurt*, 1993 U.S. Dist. LEXIS 15722, C.A. No. HAR92-3421, 1993 WL 454355, at *4-5 (D. Md. Sept. 14, 1993) (dismissing MFRDL claim by plaintiff whose "only connection with the circumstances that gave rise to the matter at bar is his pledge of certain security in connection with the loan obtained by [franchisees] to purchase the franchise.").

### D. *Lost Opportunities*

Waturu Iwata has alleged a claim for lost opportunities. Waturu Iwata has not cited any caselaw supporting the existence of a distinct claim for lost opportunities. Accordingly, the claim for lost opportunities is dismissed.

### E. *Fraud*

MMI argues that the fraud claim can be dismissed because, under New York law, tort claim liability based solely on economic loss is limited to those in privity with the alleged tortfeasor. Because Waturu Iwata has no direct relationship to the defendant, MMI argues, he is not entitled to relief on his fraud claim. While "it is well-established under New York law that, where a plaintiff alleges only economic damage resulting from a defendant's alleged negligence, defendants owe no duty to plaintiffs with whom they are not in contractual privity," *The Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd*, 2003 U.S. Dist. LEXIS 5182, 00 Civ. 9214, 2003 WL 1751780, [*25] at *11 (S.D.N.Y. Apr. 1, 2003) (quoting *Land Mine Enters. v. Sylvester Builders, Inc.* 74 F. Supp. 2d 401, 407 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1262 (2d Cir. 2000)), the doctrine does not extend to tort claims for fraud. *See Metral v. Horn*, 213

Case 1:07-cv-05471-BSJ-KNF    Document 7-9    Filed 07/03/2007    Page 23 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

A.D.2d 524, 526, 624 N.Y.S.2d 177 (2d Dep't 1995) ("a cause of action sounding in fraud does not require the existence of a relationship of privity or something close to privity between the parties.") (citing *Credit Alliance Corp. v Andersen & Co.*, 65 N.Y.2d 536, 547, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985)); *Shafran v. Kule*, 159 A.D.2d 263, 552 N.Y.S.2d 263, 265 (1st Dep't 1990) ("Lack of privity is not a viable defense to fraud.").

MMI also argues that Waturu Iwata fails to allege a viable fraud claim. To state a claim for fraud under New York law, a plaintiff must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Flash Electronics, Inc. v. Universal Music & Distribution Corp.*, 312 F. Supp. 2d 379, 2004 U.S. Dist. LEXIS 6018, CV01-979, 2004 WL 764584, [*26] at *19 (E.D.N.Y. Mar. 31, 2004) (citing *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 208 (2d Cir. 2000). Under Fed. R. Civ. P. 9(b), "the circumstances constituting fraud . . . shall be stated with particularity." However, "malice, intent, knowledge, and other condition of mind may be averred generally." *Id.* "To satisfy Rule 9(b)'s particularity requirement, a plaintiff's complaint must: '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Flash Electronics*, 2004 U.S Dist. LEXIS 6018, [WL] at *20 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)).

Drawing all inferences in favor of Waturu Iwata, the Amended Complaint states a valid claim for fraud. The alleged fraudulent misrepresentation made by MMI was the inaccurate estimates of construction and equipment costs for the operation of the franchise, and was made in the UFOC provided to Jun Iwata on January 19, 2002 at MMI headquarters. Amended Complaint PP 145-48. The fact that [*27] the representation was not made directly to Waturu Iwata is not fatal to the claim because he has alleged "that he relied upon it to his detriment, and that the defendant[] intended the misrepresentation to be conveyed to him." *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998) (quoting *Rosen v. Spanierman*, 894 F.2d 28, 33 (2d Cir. 1990)); *see also Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31, 33-34 (1880) ("it is not essential that a representation should be addressed directly to the party who seeks a remedy for having been deceived and defrauded by means thereof."). The Amended Complaint also alleges that MMI knew that Jun Iwata was going to finance the purchase of the franchise and that the lender would review the information in the UFOC. Amended

Complaint PP 95, 97. It is also alleged that MMI knew the UFOC to be inaccurate, and intended to deceive any lenders reviewing the information. *Id.* at PP 96, 165-66. Finally, it is alleged that Waturu Iwata reviewed and relied on the information, and that he was injured as a result. *Id.* at PP 99, 168.

[*28]    **F. *Claim for Violation of Federal Trade Commission Rules***

Waturu Iwata alleges that MMI violated Federal Trade Commission ("FTC") regulations, in particular the "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventres," 16 C.F.R. §§ 436.1-438.10, promulgated pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 41-58, by failing to provide accurate information in the UFOC. The FTC disclosure requirements provide that "it is an unfair or deceptive act or practice" to fail to furnish any prospective franchisee with accurate information related to the terms of the franchise agreement and the financial condition of the franchisor. 16 C.F.R. § 436.1. However, there is no private right of action to enforce the Disclosure Requirements of § 436, or any other regulation promulgated under the Federal Trade Commission Act. *See Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) ("Nowhere does the [FTCA] bestow upon either competitors or consumers standing to enforce its provisions."); *Brill v. Catfish Shaks of America, Inc.*, 727 F. Supp. 1035, 1041 (E.D. La. 1989) [*29] ("there is no private right of action for violation of the FTC's franchise disclosure rules") (citing *Freedman v. Meldy's, Inc.*, 587 F. Supp. 658 (E.D. Pa. 1984)).

In the brief by the Franchisee Plaintiffs in opposition to MMI's motion to stay, dismiss and/or transfer, it is argued that plaintiffs are not alleging that they can sue for violation of FTC regulations, but the allegation is made to provide "information to the Court" to show that MMI committed fraud by failing to follow the rule's requirements. While the existence of the FTC regulations is hereby noted, Waturu Iwata's claim for violation of the rule is dismissed for failure to state a claim.

**G. *Claims for Violations of Antitrust Laws***

Waturu Iwata has alleged violations of the Section Two of the Sherman Act, 15 U.S.C. § 2, the Clayton Act, 15 U.S.C. §§ 14 and15, and the Robinson-Patman Act, 15 U.S.C. § 13. Waturu Iwata has alleged that he provided substantial funding to JI and that the damages sustained by JI "are the equivalent of losses sustained by . . . Waturu Iwata." Amended Complaint PP 108, 110.

The Second Circuit has held [*30] that "merely derivative injuries sustained by . . . creditors of an injured company do not constitute antitrust injury sufficient to

Case 1:07-cv-05471-BSJ-KNF    Document 7-9    Filed 07/03/2007    Page 24 of 24

2004 U.S. Dist. LEXIS 8806, *; 2004-2 Trade Cas. (CCH) P74,485

confer antitrust standing." *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 766-67 (2d Cir. 1995); *see also Schwimmer Corp. v. Sony Corp. of America*, 637 F.2d 41, 46-47 (2d Cir. 1980) ("it is recognized that treble damage actions, effective and attractive as they are in deterring violations of the federal antitrust laws, must have some boundaries. Consequently, the standing requirement is designed, in essence, to limit access to treble recovery to a target of the anticompetitive conduct. Thus, the standing rules exclude a non-target whose damages are more difficult to prove and, in all likelihood, highly speculative."). Each of Wataru Iwata's antitrust claims must be dismissed because he has failed to plead a direct injury or to show that he was a target of anticompetitive conduct, and therefore lacks standing under the antitrust laws.

### H. *RICO Claims*

Wataru Iwata has alleged that defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, [*31] *et seq.*

> To state a RICO claim under § 1962(b)and (c), a plaintiff must plead seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."

*The Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd*, 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Moreover, "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint. Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate." *Lesavoy v. Lane*, 304 F. Supp. 2d 520, 532 (S.D.N.Y. 2004) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991)).

Wataru Iwata's RICO allegations [*32] are insufficient to state a valid claim. No particularized allegation is made. Instead, the factual information is incorporated by reference from the previous paragraphs in the complaint, and the enumeration of the statutory elements are conclusorily alleged. The entities alleged to have conspired with MMI are not named, the predicate acts alleged to form the basis of the claim are not specified, and it is not alleged that "the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995). Accordingly, Wataru Iwata's RICO claim is dismissed.

### *MMI's Motion for Attorney's Fees is Denied*

MMI argues that it should be awarded attorney's fees for responding to Wataru Iwata's complaint. Federal Rule of Civil Procedure 11 has been violated, and sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). [*33] While several of Wataru Iwata's claims have been dismissed for failure to state a claim upon which relief can be granted, his fraud claim has been validly pleaded. MMI's motion for attorney's fees is therefore denied.

### *Plaintiffs' Motion to Stay or Order Defendant to Dismiss Suits Brought in the District of Maryland*

The plaintiffs argue that MMI may not institute new actions duplicating existing litigation and that the actions in federal court in Maryland should therefore be stayed and MMI should be ordered to dismiss the Maryland actions. No adequate basis for a stay has been submitted, and the request is accordingly denied.

### Conclusion

MMI's motion to transfer the claims of the Franchisee Plaintiffs to the United States District Court for the District of Maryland is granted. Except for the common law fraud claim, each of Wataru Iwata's claims are dismissed for failure to state a claim. MMI's motion for attorney's fees against Wataru Iwata is denied. Plaintiffs' motion to stay and order MMI to dismiss its lawsuits in the District of Maryland is denied.

It is so ordered.

**New York, NY**

**May 19, 2004**

**ROBERT W. SWEET**

**U.S.D.** [*34] **J.**