LEXSEE



Caution
As of: Jun 26, 2007

**JEPHTE GUILLAUME, Plaintiff, v. INTERNATIONAL SERVICE SYSTEM, INC., PRITCHARD INDUSTRIES, and LOCAL 32B-32J, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Defendant.**

**99 Civ. 9403(BSJ)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2000 U.S. Dist. LEXIS 507; 163 L.R.R.M. 2470**

**January 18, 2000, Decided
January 19, 2000, Filed**

**DISPOSITION:** [*1] Defendants' motions to dismiss pursuant to Rule 12(b)(6) granted in part and denied in part.

**COUNSEL:** For JEPHTE GUILLAUME, plaintiff: Sherilyn R. Dandridge, New York, NY.

For PRITCHARD INDUSTRIES, defendant: Jerrold F. Goldberg, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York, NY.

For LOCAL 32B-32J, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, defendant: Ira A. Sturm, Raab & Sturm, New York, NY.

For LOCAL 32B-32J, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, counter-claimant: Ira A. Sturm, Raab & Sturm, New York, NY.

For JEPHTE GUILLAUME, counter-defendant: Sherilyn R. Dandridge, New York, NY.

**JUDGES:** Barbara S. Jones, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Barbara S. Jones

**OPINION**

**OPINION & ORDER**

**BARBARA S. JONES**

**UNITED STATES DISTRICT JUDGE**

Plaintiff brings this action against his employers alleging wrongful discharge and against his union alleging breach of the duty of fair representation. Pending before the Court are defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motions are granted in part and denied in part.

I.

On a motion to dismiss, the allegations [*2] in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). In deciding the motion, the Court may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059,

Case 1:07-cv-05471-BSJ-KNF    Document 7-11    Filed 07/03/2007    Page 2 of 23

2000 U.S. Dist. LEXIS 507, *; 163 L.R.R.M. 2470

1067 (2d Cir. 1985). Therefore, the defendants' present motions should only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to [*3] relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir. 1999). Accordingly, the Court accepts the following facts alleged in the plaintiff's complaint as true for purposes of this motion.

II.

Defendant OneSource is named in the complaint as International Service System, or ISS, and for the sake of clarity, I will refer to OneSource by its former name, ISS. ISS is a building services contractor. Prior to October 1, 1996, the plaintiff, Mr. Guillaume, was employed by ISS as a porter at 625 Madison Avenue.

The plaintiff was also a member of Local 32B-32J, Service Employees International Union, AFL-CIO, the collective bargaining agent of employees who worked for ISS at 625 Madison Avenue. ISS and the Union were parties to a collective bargaining agreement that set forth the terms and conditions of employment for certain employees of ISS who were in the collective bargaining unit at 625 Madison Avenue.

Effective October 1, 1996, ISS lost its contract to clean and service the building located at 625 Madison Avenue. Defendant Pritchard Industries [*4] was awarded the cleaning service account for 625 Madison Avenue. There is no allegation that ISS and Priority are legally related entities.

Pursuant to the collective bargaining agreement with the Union, Pritchard became the employer of individuals in the collective bargaining unit at 625 Madison Avenue, including the plaintiff. However, Pritchard refused to employ the plaintiff on or after October 1, 1996.

Thereafter, on October 2, 1996, the plaintiff filed a grievance with the Union, alleging that he was wrongfully discharged in violation of the collective bargaining agreement. In addition, plaintiff submits as Exhibit C to the complaint a letter from ISS to the Union, dated September 26, 1996, noting that Pritchard had not given the plaintiff an application for employment and adding that Pritchard's failure to hire the plaintiff should result in a Union grievance.

The plaintiff's union grievance stalled for the next twenty-plus months. Finally, on August 4, 1998, the plaintiff retained private counsel who sent a letter to the Union inquiring as to the status of the plaintiff's grievance. An arbitration hearing was conducted on August 24, 1998, and resulted in an Interim Arbitration [*5] Award on August 28, 1998, reinstating the plaintiff to "a day floater position with full seniority" at 625 Madison Avenue. The Plaintiff returned to work at 625 Madison in September 1998.

Finally, on March 26, 1999, a final arbitration order and award was issued in the plaintiff's union grievance, denying the plaintiff any back pay for the 23 month period between plaintiff's discharge and his reinstatement. The arbitrator found that the plaintiff had not met his duty to mitigate his damages during this period by seeking to obtain other employment. In fact, the arbitrator found "a degree of incredibility regarding the [plaintiff's] testimony of his seeking and being unable to find a job during the period in question." (Compl., Ex. I, at 3)

On June 21, 1999, the plaintiff filed a charge of discrimination with the EEOC, alleging that ISS wrongfully discharged the plaintiff on or about October 1, *1996*, on the basis of race, color and age. (Pl.'s Mem. of Law, Ex. 1, the "EEOC Complaint," at P 6). The plaintiff's EEOC Complaint further alleges that ISS, Pritchard and the Union "knowingly and purposefully subjected the Complainant to disparate treatment because of his race, color [*6] and age . . . including, but not limited to, racial innuendos, lewd and profane remarks, and a hostile working environment." (*Id.* P 11)

On July 6, 1999, the EEOC issued three Dismissal and Notice of Rights letters regarding plaintiff's EEOC Complaint. The EEOC closed its file on the plaintiff's charge against ISS, Pritchard and the Union. With respect to the charge against the ISS, the EEOC stated, "We cannot investigate your charge because it was not filed within the time limit required by law." (Compl., Ex. A) With respect to the charges against Pritchard and the Union, the EEOC stated, "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes." (*Id.*)

The plaintiff then commenced this action on September 2, 1999.

Defendants One Source, sued here as International Service System, and Pritchard Industries move to dismiss the complaint pursuant to Rule 12(b)(6). The defendants make two arguments:

> 1. That plaintiff's Title VII and ADEA claims must be dismissed because Mr. Guillaume failed to exhaust his administrative [*7] remedies; and

> 2. That plaintiff's § 301 claim is time-barred by the six-month statute of limitations.

Case 1:07-cv-05471-BSJ-KNF   Document 7-11   Filed 07/03/2007   Page 3 of 23

2000 U.S. Dist. LEXIS 507, *; 163 L.R.R.M. 2470

III.

Though pending before me are motions to dismiss from defendants ISS and Pritchard, I begin by noting that plaintiff may not bring either a Title VII claim or an ADEA claim against his Union. And, if fact, the Complaint is not clear with regard to whether the plaintiff alleges Title VII and/or ADEA claims against the Union. However, for the sake of clarity, I dismiss *sua sponte* the Title VII claims and the ADEA claims against the defendant Union.

Now, as to the Title VII and ADEA claims against defendants ISS and Pritchard, having carefully considered the arguments presented in the parties' submissions and at last week's oral argument, the motions to dismiss the complaint are granted with respect to the Title VII and ADEA claims against ISS and Pritchard.

Plaintiff's Title VII and ADEA claims must be dismissed because plaintiff did not first assert these claims by timely filing charges of discrimination with the EEOC, a necessary prerequisite to commencing a judicial action alleging employment discrimination. Under both Title VII and the ADEA, the law in this Circuit [*8] requires a litigant to exhaust available administrative remedies in a timely fashion before filing a civil action in federal court. *See Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996).

With respect to both Title VII and the ADEA, this requirement means that a litigant must file his administrative charges with the EEOC within the 300 day statute of limitations. *See Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir. 1993) (Title VII); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir. 1985), *cert. denied*, 474 U.S. 851, 88 L. Ed. 2d 122, 106 S. Ct. 148 (1985) (ADEA). When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred and should be dismissed either for failure to exhaust administrative remedies, *see Gomes v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir. 1992), or as time-barred. *See Butts*, 990 F.2d at 1401 (Title VII); *Miller*, 755 F.2d at 23 (ADEA).

In this case, the plaintiff alleges that his employment was terminated on or about October 1, 1996. (Compl. P 9). However, [*9] the plaintiff did not file his charge of race and age discrimination with the EEOC until June 21, 1999, far more than 300 days after the alleged act of discrimination. The charge was therefore untimely, as the EEOC noted in one of the Dismissal letters issued to plaintiff. Thus, I must dismiss the Title VII and ADEA

claims because of plaintiff's failure to exhaust administrative remedies.

The plaintiff resists this conclusion by muddling two arguments. First, plaintiff argues in his Memorandum of Law that "for nearly two (2) years, or until August 28, 1998, the date the contract arbitrator finally issued an Interim Award, Plaintiff was unaware of the Defendants [sic] motivation in [sic] his October 1, 1996 termination." Pl.'s Mem. of Law, at 3. Presumably, plaintiff offers this argument in favor of an equitable tolling of the timeliness requirement for the filing of an EEOC discrimination charge. This argument is a nonstarter. It is simply disingenuous of the plaintiff, on the one hand, to argue to this Court that he was "unaware" until *1998* of the defendants' allegedly discriminatory motive at the time of his *1996* termination, when the plaintiff's own EEOC Complaint contained [*10] allegations of racial discrimination dating back to *1993*, including allegations of a hostile work environment. In short, to toll the timeliness requirement on equity grounds, I would have to determine that plaintiff worked in a hostile work environment from 1993 through 1996 but just did not realize it at the time. Accordingly, I decline the plaintiff's invitation to equitably toll the timeliness requirement for filing his EEOC charge.

Second, plaintiff argues that he suffered a "continuing violation" of his civil rights throughout the lengthy arbitration process, as a result of the defendants' "pattern and practice of discrimination." Pl.'s Mem. of Law, at 4-5. This second argument is equally unavailing. There are simply no facts alleged in the complaint supporting the allegation of continuous unlawful discrimination by ISS and/or Pritchard during the arbitration process.

As an aside, I note that the plaintiff alleges one fact relating to his arbitration in support of his discrimination claims: that he was at times denied the use of a Creole Patoir translator during the arbitration. This fact, however, does not support claims against ISS and Pritchard, the *employers*. Rather, [*11] this fact, at most, supports a claim that the plaintiff's Union did not adequately represent him.

Which leads me to my next point: I cannot even determine which defendant the plaintiff alleges caused this "continuing violation." Suppose for the moment that ISS *had* unlawfully discriminated against the plaintiff on or about October 1, 1996. Nonetheless, because ISS lost the contract on 625 Madison Avenue, it was Pritchard who refused to employ the plaintiff from October 1996 until September 1998. Therefore, it was impossible for ISS to "continue" its alleged discrimination against the plaintiff after October 1996. And as for Pritchard, even assuming that Pritchard's failure to employ the plaintiff was due to unlawful discrimination, I find that decision was a dis-

Case 1:07-cv-05471-BSJ-KNF    Document 7-11    Filed 07/03/2007    Page 4 of 23

2000 U.S. Dist. LEXIS 507, *; 163 L.R.R.M. 2470

crete event that triggered the 300 day limitations period, because there simply are no facts supporting the "continuing violation" allegation against Pritchard. Therefore, because I find that the plaintiff has not pled facts sufficient to support a "continuing violation" allegation, I will not apply the "continuing violation" exception to the 300 day timeliness requirement.

## IV.

The plaintiff also sues the defendants under [*12] Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Plaintiff alleges that ISS and Pritchard breached the collective bargaining agreement and that the Union breached its duty of fair representation, creating a "hybrid" § 301 claim. *See DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983); *White v. White Rose Food*, 128 F.3d 110, 113-114 (2d Cir. 1997).

The plaintiff's hybrid cause of action is governed by a six-month statute of limitations. *See DelCostello*, 462 U.S. at 169; *White*, 128 F.3d at 114. The parties do not dispute the application of this six-month period, but disagree on when the clock began to run.

The determinative question I must answer then is did the cause of action accrue more than six months before suit was brought. *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989). The plaintiff contends that his cause of action accrued no earlier than March 26, 1999, the day of the final arbitration order and award. Thus, he argues, his filing of the complaint on September 2, 1999, was [*13] within the six month limitations period. The defendants' position, on the other hand, is that by the plaintiff's own account of the facts in the Complaint, the plaintiff was in fact *aware* of the Union's alleged breach of its duty of fair representation no later than August 4, 1998, when the plaintiff hired private counsel because, in his view, "continuing to date, plaintiff's LABOR UNION handled the grievance in a perfunctory, unreasonable and unfair manner in fulfilling its statutory duty of representation." (Compl. P 12)

"In this circuit, it is well settled that the cause of action 'accrue[s] on the date the employee knew or reasonably should have known that the alleged breach of the duty of fair representation occurred.'" *Cohen v. Flushing Hosp. and Medical Center.*, 68 F.3d 64, 67 (2d Cir. 1995) (citations omitted). The defendants argue that the plaintiff manifested actual knowledge of the alleged breach in August 1998, and hence that the cause of action accrued at that time.

The defendants further argue that the instant case is analogous to two cases in which the Second Circuit held that the limitations period began to run *prior to* a final determination [*14] of the grievance process: *Cohen v.*

*Flushing Hosp. and Medical Center.*, 68 F.3d 64 (2d Cir. 1995) and *Buttry v. General Signal Corp.*, 68 F.3d 1488 (2d Cir. 1995). However, I find those two cases distinguishable.

First, in *Cohen*, the litigant's union was not in fact representing him at all, and the issue for the Court was the date by which the litigant should have reasonably known that fact. *See Cohen*, 68 F.3d at 66-68. In fact, the litigant in *Cohen* did not avail himself of the formal grievance procedure available to him under the collective bargaining agreement. The instant action presents quite different facts. Mr. Guillaume, unlike the *Cohen* plaintiff, *was* represented by his Union, albeit in rather a lethargic fashion. And, obviously, Mr. Guillaume *did* invoke the formal grievance procedure. In short, the *Cohen* facts bear little resemblance to those alleged in this action, and *Cohen* does not control my decision in this case.

Likewise, *Buttry*, the second case relied on by the defendants, does not control with respect to the date of accrual. In *Buttry*, the Circuit held that a breach of fair representation [*15] claim accrued not upon entry of an unfavorable arbitrator's award but, rather, on the date of the union meeting at which union representatives stated unequivocally that the plaintiffs had no rights and that the union would do nothing for them. *See Buttry*, 68 F.3d at 1492. Again, those facts are a far cry from the facts alleged by Mr. Guillaume. In the context presented by *Buttry*, it makes perfect sense to say that the plaintiffs knew of the breach of fair representation when told by their very own union that the union would not represent them. However, Mr. Guillaume was never so informed, and in fact the union did represent him in arbitration. Accordingly, my decision is not governed by *Buttry*.

In fact the Circuit acknowledged in *Cohen* that, in an action like the instant case where the union has represented an employee in arbitration but been less than cooperative, pinpointing an accrual date can be difficult. *See Cohen*, 68 F.3d at 68. Having carefully considered the arguments presented in the parties' submissions and at last week's oral argument, I am persuaded that Circuit's holding in *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160 (1989), [*16] is controlling authority here, in spite of the failure of all parties to brief this case, and that the date of accrual in this context was the date of the final arbitration order and award.

I deal here with a situation, like that in *Ghartey*, in which a union represented an employee throughout an arbitration hearing, through to its termination by the arbitrator's issuance of an award. Under such circumstances, the Circuit held that a hybrid suit challenging the adequacy of that union representation, if filed by the employee before the issuance of an award in that arbitration,

Case 1:07-cv-05471-BSJ-KNF     Document 7-11     Filed 07/03/2007     Page 5 of 23

2000 U.S. Dist. LEXIS 507, *; 163 L.R.R.M. 2470

would be "inefficient and premature" and nearly impossible to prove. *Ghartey*, 869 F.2d at 163-63.

At oral argument, counsel for defendant Pritchard argued that the Court should find that the plaintiff had notice of the alleged breach of the duty of fair representation by the final arbitration hearing in January 1999 at the latest. Thus, the defendant's argument goes, the filing of this Complaint in September is beyond the six-month limitations period. However, *Ghartey* explicitly rejects this argument. The *Ghartey* court explained that while a plaintiff might know by some date prior [*17] to the final arbitration award about a union's lack of preparation, he is entitled to rely on the skill of his union attorney and to focus his energies on the matter at hand in arbitration rather than having to assess a possible lawsuit against his union. *See id.* at 164. Here, as in *Ghartey*, there is nothing in the record indicating that the plaintiff was informed that the Union had completed its representation of him on the final hearing day. *See id.* As the *Ghartey* court stated, "While awaiting a decision from the arbitrator, [the plaintiff] had every reason to assume that the Union still represented [him], and that it was prepared to take further action on his behalf if necessary." *Id.* Furthermore, nothing in this analysis is changed by the mere fact that Guillaume had the good sense to hire a lawyer in August of 1998 to inquire into the status of his union grievance.

Following *Ghartey*, I determine that plaintiff's cause of action did not accrue until the arbitrator awarded the adverse decision on March 26, 1999. Hence, the statute of limitations began to run on that date. Therefore, so long as plaintiff filed the claim before September 26, 1999, -- [*18] and the plaintiff in fact commenced this action on September 2, 1999 -- it is not time-barred. Accordingly, the defendants' motions to dismiss are denied with respect to the plaintiff's hybrid § 301 claim.

CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted in part and denied in part. The Title VII and ADEA claims are dismissed. However, the motions are denied with respect to the plaintiff's hybrid 301 claim against all defendants. The parties remain bound by the dates in the case management plan.

By separate Order, this case is referred to Magistrate Judge James C. Francis for settlement conference only.

**SO ORDERED:**

Barbara S. Jones

UNITED STATES DISTRICT JUDGE

New York, New York

January 18, 2000

LEXSEE



Cited
As of: Jun 26, 2007

**GRANT HARRELL, et al., Plaintiffs, -v.- PRIMEDIA, INC., et. al., Defendants.**

**02 CV 2893 (JSM) 7**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2003 U.S. Dist. LEXIS 13595**

**August 5, 2003, Decided
August 6, 2003, Filed**

**DISPOSITION:**    [*1]  Plaintiffs' amended complaint
dismissed with prejudice.

**COUNSEL:** For Plaintiffs: Daniel Hume, Esq., New
York, NY.

For Plaintiffs: Todd W. Bonder, Rosenfeld, Meyer &
Susman, LLP, Beverly Hills, CA.

For Defendants: Robert Whitman, Orrick, Herrington &
Sutcliffe LLP, New York, New York.

**JUDGES:** JOHN S. MARTIN, JR., U.S.D.J.

**OPINION BY:** JOHN S. MARTIN, JR.

**OPINION**

OPINION & ORDER

JOHN S. MARTIN, Jr., District Judge:

This is another instance of counsel taking a straight-
forward breach of contract case and through tortured
pleading attempting to turn it into a RICO claim, with
callous disregard of the damage done to the reputations
of the Defendants by broad claims of fraud and conspir-
acy that are not supported by the facts alleged.

In essence, the Amended Complaint [1] alleges that
Primedia, Inc., and some of its subsidiaries and their of-
ficers, violated the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq.,
by inducing the Plaintiffs to become employees or to

continue their employment by fraudulently promising to
pay them stock options and bonuses. These allegedly
fraudulent misrepresentations were incorporated in mail
and wire communications [*2]  thereby violating the
mail and wire fraud statutes and constituting predicate
offenses under the RICO statute.

> 1  Prior to the time this action was transferred to
> this Court from the Central District of California,
> the original Complaint was dismissed and Plain-
> tiffs were given leave to replead. The Amended
> Complaint will sometimes be referred to herein
> simply as the Complaint.

While the Complaint charges the Defendants with
serious criminal conduct in furtherance of a massive con-
spiracy, it is bereft of any specific factual allegation that
would lead a reasonable reader to conclude that the De-
fendants knowingly engaged in any fraudulent conduct.
This Complaint is a perfect example of the importance of
the requirement of Federal Rule of Civil Procedure 9(b)
that "in all averments of fraud or mistake, the circum-
stances constituting fraud or mistake shall be stated with
particularity." As the Second Circuit has repeatedly
noted, Rule 9(b) is intended:

> to provide a defendant with fair notice
> of a plaintiff's [*3]  claim, to safeguard a
> defendant's reputation from 'improvident
> charges of wrongdoing,' and to protect a
> defendant against the institution of a
> strike suit ...

2003 U.S. Dist. LEXIS 13595, *

See, e.g., O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Each of the named Plaintiffs were employed by Primedia subsidiaries that were established in the midst of the dot.com boom. It is alleged that, in order to retain these individuals or to induce them to become employees, the Defendants, beginning in August 1999, promised them that they would receive stock options entitling them to purchase shares in the particular subsidiary for 50 cents a share. While it is alleged that the Defendants never intended to issue the options to the Plaintiffs, each of them received written communications acknowledging that they had been awarded options on a specific number of shares. [2] It is further alleged that beginning in October 2000, Plaintiffs were told that they would receive options for Primedia stock rather than [*4] stock in their particular internet subsidiary company. Statements that at least some of the Plaintiffs would receive Primedia stock options continued to be made until July 2001. However, the Plaintiffs never received their stock options.

> 2   There are letters to four of the Plaintiffs confirming the stock options, annexed to the Amended Complaint. There is no letter for the fifth Plaintiff, Kristine Griscom, but the Complaint alleges that she received confirmation of her options by e-mail.

Analysis of the adequacy of these allegations of fraud must begin with the recognition that:

> we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a "license to base claims of fraud on speculation and conclusory allegations," Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990). Accordingly, plaintiffs must allege facts that give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, 25 F.3d 1124, 1128; accord Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176; [*5]  O'Brien, 936 F.2d at 676; Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir.1990). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehav-

ior or recklessness." Shields, 25 F.3d at 1128.

Acito v. IMCERA Group, Inc. 47 F.3d 47, 52 (2d Cir. 1995).

The allegations of the Amended Complaint totally fail to provide a "strong inference of fraudulent intent." Viewed solely on the canvas of the Amended Complaint, the allegations that options were promised and never delivered might provide some slight inference that the Defendants never intended to fulfill their promise. However, as Judge Batts of this Court observed in CSI Inv. Partners II, L.P. v. Cendant Corp., 180 F. Supp. 2d 444, 463 (S.D.N.Y. 2001):

> The simple fact of nonperformance of a promise is insufficient to raise an inference of fraud." Fisk v. SuperAnnuities, 927 F. Supp. 718, 726. "A contract may be breached for legitimate business reasons .  [*6]  ... Contractual breach, in and of itself, does not bespeak fraud .... Mills, 12 F.3d at 1176.

While the Court must accept the specific factual allegations of the Amended Complaint as true, in determining the inferences to be drawn from those facts, the Court need not blind itself to facts that can be judicially noticed. Ohio Bell Tel. Co. v. Public Utils. Comm'n of Ohio, 301 U.S. 292, 81 L. Ed. 1093, 57 S. Ct. 724, 729 (1937) ("Courts take judicial notice of matters of common knowledge.").

Viewed in the context of the well-publicized dot.com boom and bust that occurred during 1999 and 2000, the fact that Plaintiffs never received options for working in these dot.com companies does not support an inference that the Defendants engaged in the massive conspiracy to defraud which the Plaintiffs purport to allege.

Given what happened in the dot.com world in 1999 and 2000, there is no reason to suspect that the Defendants were not speaking truthfully in 1999 when they told Plaintiffs that they intended to take the individual dot.com subsidiaries public and that Plaintiffs would have options of the stock at 50 cents a share. Indeed, the Complaint alleges that other companies were [*7] attracting employees to dot.com companies by promising them stock options which would make them rich when the dot.com company succeeded. Since the options were confirmed in writing and would not vest for at least a year, there is nothing suspicious in the fact that the paper

work for the options was not completed during that period. However, a year later when the options would first vest, the internet bubble of 1999 had begun to burst and the prospect of taking a dot.com subsidiary public was no longer viable. It was at this point, according to the Complaint, that the Defendants began talking about providing the Defendants with options on Primedia rather than the particular dot.com subsidiary. Given the obvious difficulty of calculating the value in late 2000 of an option granted in 1999 for a dot.com subsidiary, it does not bespeak fraud that the Defendants did not resolve this issue before the Plaintiffs' employment terminated. This is particularly true since the stock of Primedia leaped to a record high in early 2001 from which it quickly plummeted and then continued to decrease for the next three years.

Nothing about the facts alleged supports the inference that the Defendants' [*8] statements in 1999, that Plaintiffs would receive options on the stock of their dot.com subsidiary, were not made in complete good faith. Similarly, the fact that some of the Plaintiffs did not receive promised performance bonuses cannot sustain a claim of fraud absent some showing that a particular Plaintiff's subsidiary had achieved a level of success that would have justified the award of a bonus. Here, as in *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994):

> [Plaintiffs have] satisfied the Rule 9(b) pleading requirements concerning the "time, place, speaker, and sometimes even the content of the alleged misrepresentation." *See Ouaknine,* 897 F.2d at 79. What is lacking from all of [Plaintiffs'] allegations are particularized facts to support

the inference that the defendants acted recklessly or with fraudulent intent.

Nor does the Complaint allege any facts suggesting that the Defendants had any motive to commit the massive fraud alleged. The mere fact that Defendants had a desire to see the company succeed does not provide a motive to engage in serious fraud. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Comps., Inc.,* 75 F.3d 801, 813-14 (2d Cir. 1996). [*9]

Since Plaintiffs have failed to plead mail or wire fraud with the specificity required by Rule 9(b), Plaintiffs' RICO claims, which provide the only basis for federal jurisdiction, must be dismissed. There is no reason for the Court to exercise its discretion to retain jurisdiction over Plaintiffs' state law claims. Therefore, the Complaint will be dismissed.

There remains only the question whether Plaintiffs should be given another opportunity to replead. Since Plaintiffs have already had a Complaint dismissed and been permitted to file an Amended Complaint, there is no reason to permit an additional amendment. *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir. 1978). Given the blatant defects in the Amended Complaint, there is no reason to believe that the Plaintiffs could state a RICO claim were they given another chance.

It is therefore ordered that the Amended Complaint is dismissed with prejudice.

SO ORDERED.

Dated: August 5, 2003

JOHN S. MARTIN JR., U.S.D.J.

Westlaw.

Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

▷

Hourahan v. Ecuadorian Line, Inc.
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Nonilon S. HOURAHAN, Plaintiff,
v.
ECUADORIAN LINE, INC. and Pacific Fruit, Inc.,
Defendants.
**No. 95 Civ. 10698 (AGS).**

Jan. 3, 1997.

### OPINION AND ORDER

SCHWARTZ, District Judge.
**\*1** Plaintiff brings this civil rights action under the
1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("
Title VII") and the New York State Human Rights
Law, N.Y.Exec.L. §§ 290 *et seq.* ("NYSHRL"),
alleging employment discrimination based on race,
sex and national origin, as well as retaliatory
discharge. This matter is before the Court upon
defendants' motion for summary judgment. For the
reasons stated below, defendants' motion is granted.

### BACKGROUND

The following facts are undisputed or otherwise
reflected in the record.

Plaintiff Nonilon Hourahan is an Asian female of
Filipino national origin, who was employed by
defendant Ecuadorian Line, Inc. ("Ecuadorian")
from September 16, 1985 until February 14, 1990,
when she was terminated. Plaintiff was never
employed by defendant Pacific Fruit, Inc. ("Pacific
Fruit"). February 14, 1990 is the date of the last
act of discrimination alleged in the Verified
Complaint plaintiff filed with the New York City
Commission on Human Rights (the "City
Commission"). The Verified Complaint was
signed and dated by plaintiff on January 8, 1991

and received and file-stamped by the City
Commission on January 28, 1991.

The parties disagree as to when plaintiff first
approached the City Commission. Plaintiff claims
that she went to the City Commission on or about
September 11, 1990 and requested the City
Commission to file a complaint against Ecuadorian.
In support of this claim, plaintiff has submitted the
affidavit of Alvin N. Lindsay, dated September 28,
1993 ("Lindsay Aff."), formerly a Human Rights
Specialist with the City Commission and the person
who drafted the Verified Complaint. Lindsay
states that his personal records reflect that he "
commenced work on [Hourahan's] complaint no
later than September 11, 1990" and that "Hourahan
appeared and validly requested the [City
Commission] to file a complaint against Ecuadorian
Line, Inc ... no later than the September 11, 1990
date as mentioned." Lindsay Aff. ¶ 8.

Defendants claim that plaintiff first appeared at the
City Commission on October 16, 1990.
Defendants have submitted the City Commission's
Primary Case Tracking Form for plaintiff's case,
which indicates that plaintiff underwent an intake
interview with Alvin Lindsay on October 16, 1990.
In addition, an Intake Form was filled out for
plaintiff's case, which form is also dated October
16, 1990.

In the Verified Complaint, Hourahan states that in
1987, she "began to notice the use of racial and
sexually derrogatory [sic] language by supervisors
regarding minority workers," and she describes
several such incidents. Affidavit of Jeffrey C.
Slade, dated April 2, 1996 ("Slade Aff."), Ex. A ¶
¶ 9, 10-16. The Verified Complaint charges that
defendants violated Section 8-107(1)(a) of the
Administrative Code of the City of New York, as
well as Title VII, on the basis of plaintiff's race and
national origin.[FN1] The Verified Complaint ends
with the following statement: "I hereby authorize
the City Commission on Human Rights to accept

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

this verified complaint on behalf of the Equal Employment Opportunity Commission, subject to the statutory limitations [sic] contained in Title VII and in ADEA." *Id.* ¶ 28.

> FN1. The Verified Complaint also charges that defendants violated the Age Discrimination in Employment Act (" ADEA") by discriminating against plaintiff on the basis of her age; however, the Complaint in this action contains no ADEA claim.

**\*2** The City Commission did not file a Title VII charge with the Equal Employment Opportunity Commission ("EEOC") on Hourahan's behalf because the City Commission's staff concluded that by October 16, 1990, the statutory time within which she could have filed an EEOC charge of employment discrimination, sexual harassment and hostile work environment had already expired. The City Commission did not inform plaintiff of this determination.

Following an investigation, the Verified Complaint was dismissed on April 19, 1993 because the City Commission's law Enforcement Bureau determined that there was no probable cause to believe that defendants had engaged in an unlawful discriminatory practice. Specifically, the City Commission found that its investigation had revealed no connection between the termination of plaintiff and any discrimination on the basis of age, race or national origin.

Thereafter, plaintiff, represented by counsel, sought review of the City Commission's dismissal. In a Determination and Order After Review dated August 31, 1993, the Commissioner of the City Commission affirmed the initial finding of no probable cause with respect to plaintiff's claim of unlawful termination and remanded the case for further investigation as to the harassment and hostile work environment charges. Neither the Determination and Order After Investigation nor the Determination and Order After Review resolved the issue of retaliatory discharge.

In November 1993, plaintiff requested that the City Commission dismiss her Complaint for " administrative convenience" so that she could pursue her cause of action under the NYSHRL in federal court. On December 27, 1993, the City Commission issued an Order of Administrative Closure to plaintiff, closing plaintiff's case at the City Commission.

By letter dated September 11, 1995, plaintiff contacted the EEOC, stating that she had filed a complaint of discrimination with the City Commission on January 28, 1991 and that, according to normal City Commission procedure, the complaint would have been "double filed" with the EEOC shortly after the January 28, 1991 filing date. Plaintiff's letter requested a Right-to-Sue letter so that plaintiff could file an action in federal court. On October 30, 1995, an EEOC officer responded that the agency's records showed no charge pending on behalf of Hourahan. The EEOC did not issue a Right-to-Sue letter to plaintiff before she commenced this action.

The Complaint in this action alleges that defendants subjected plaintiff to racial and sexual harassment, discrimination on the basis of her sex, race and national origin, and retaliation for her having opposed defendants' unlawful discriminatory practices. Defendants move for summary judgment on the grounds that (i) plaintiff's Title VII claim is time-barred and the doctrine of equitable tolling should not be applied, and (ii) plaintiff's NYSHRL claim is barred under the election of remedies doctrine.

*DISCUSSION*

**\*3** Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The plain language of Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986). Rather, the opposing party must produce concrete evidence from which a reasonable juror could return a verdict in its favor. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

At the outset, the Court notes that plaintiff's claims against defendant Pacific Fruit cannot stand because it is undisputed that plaintiff was only employed by Ecuadorian, not Pacific Fruit. *See* Declaration of Edward Hickey, dated March 29, 1996, ¶ 2.

### I. *Title VII Claim*

It is well established that "when a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of New York Dep't of Housing Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Title VII provides that in states, such as New York, that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days. 42 U.S.C. § 2000e-5(e)(1). The statute further provides that, "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b).

In this case, a complaint was filed only with the local agency, the City Commission, and no charges were ever filed with the EEOC. Where a plaintiff has presented a charge to the local agency and requested that the charge be presented to the EEOC, as in the instant action, the EEOC's regulations provide that
the charge will be deemed to be filed with the Commission upon expiration of 60 ... days after *a*

*written and signed statement of facts upon which the charge is based was sent to the FEP agency* [FN2] by registered mail or was otherwise received by the FEP agency, or upon the termination of FEP agency proceedings, or upon waiver of the FEP agency's right to exclusively process the charge, whichever is earliest. Such filing is timely if effected within 300 days from the date of the alleged violation.


FN2. Fair Employment Practices agency.

*4 29 C.F.R. 1601.13(b)(1) (emphasis added).

Plaintiff claims that she first visited the City Commission on September 11, 1990 and argues that an EEOC charge should be deemed filed on her behalf 60 days from the date of her first visit. As noted above, the EEOC officer who drafted plaintiff's Verified Complaint, Alvin Lindsay, has submitted an affidavit in support of plaintiff's claim that she went to the City Commission no later than September 11, 1990.

However, neither plaintiff nor Lindsay state that plaintiff submitted to the City Commission, on or about September 11, 1990, a written and signed statement of the facts upon which plaintiff's claim is based; and no such document, or any allusion thereto, is found in the record. Plaintiff's mere appearance and interview with Lindsay at the City Commission does not constitute the filing of a charge under Title VII. *See Park v. Howard Univ.,* 71 F.3d 904, 908-09 (D.C.Cir.1995), *cert. denied,* 117 S.Ct. 57 (1996) (Title VII charge not filed when plaintiff completed unsworn pre-complaint questionnaire at local Department of Human Rights, despite attachment of plaintiff's typed statement detailing specifics of alleged discrimination); *see also Hodges v. Northwest Airlines, Inc.,* 990 F.2d 1030, 1032 (8th Cir.1993) (intake questionnaire was not taken under oath and therefore was not valid charge under Title VII for purposes of the statute of limitations until signed under oath two months later); *Equal Employment Opportunity Comm'n v. Appalachian Power Co., Inc.,* 568 F.2d 354, 355 (4th Cir.1978) (timely charge filed directly with EEOC was not valid because it was not under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

oath or affirmation). Nor does plaintiff's appearance and interview with Lindsay provide the Court with a basis upon which to deem plaintiff's charge filed with the EEOC 60 days thereafter, since plaintiff did not submit a written and signed statement of the facts underlying her charge during her first visit to the City Commission. Thus, even if the Court resolves this ambiguity in favor of plaintiff, as it must on a summary judgment motion, and accepts as true plaintiff's claim that she first visited the City Commission on September 11, 1990, an EEOC charge on her behalf may not be deemed filed 60 days thereafter.

Rather, applying the relevant EEOC regulation to this case, plaintiff's Title VII EEOC charge may be deemed to have been filed on March 27, 1991, 60 days after the date she filed her Verified Complaint with the City Commission (January 28, 1991). But since there is no dispute that the last act of alleged discrimination occurred on February 14, 1990, the EEOC charge should have been filed by December 9, 1990, more than three months before the date on which it may be deemed filed. Therefore, plaintiff's Title VII claim is clearly time-barred.

Plaintiff argues that her time to file a charge with the EEOC should be equitably tolled from September 11, 1990 because she approached the [City Commission] well within the statutory period for the filing of an EEOC charge, and it is only through the dereliction of the [City Commission] that a timely charge was never forwarded to the EEOC. Further, the [City Commission] concealed this fact from Ms. Hourahan for over four years, from January 1991 to October 1995.

*5 Plaintiff's Mem. of L. at 10-11. In short, plaintiff submits that she did everything that she could do to file a timely EEOC charge, including going to the City Commission within 240 days of her termination date, and she should not be penalized for the failure of the City Commission.

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations,

is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132 (1982). Likewise, the possession of a right to sue letter is no longer considered a jurisdictional prerequisite to federal suit but is, instead, a statutory prerequisite subject to equitable modification by the court when appropriate. *Hladki v. Jeffrey's Consol., Ltd.,* 652 F.Supp. 388, 392 (E.D.N.Y.1987). However, plaintiff "bear[s] a heavy burden in establishing that equitable principles should permit the procedural requirements in question to be bypassed, as courts in this circuit are generally reluctant to hear claims that were not originally filed with the EEOC." *Crossman v. Crosson,* 905 F.Supp. 90, 93 (E.D.N.Y.1995).

Courts have allowed equitable modification of the procedural requirements of Title VII when (1) a claimant has received inadequate notice; (2) a motion for appointment of counsel is pending; (3) a court or agency has led a plaintiff to believe that he or she has done everything required; (4) affirmative misconduct by a defendant has lulled a plaintiff into inaction; (5) a plaintiff has in some extraordinary way been prevented from asserting his or her rights; (6) a plaintiff has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum; (7) a right to sue letter has been received subsequent to commencement of a Title VII action and while the action is still pending; and (8) the EEOC or Attorney General has incorrectly refused to issue a right to sue letter. *Hladki v. Jeffrey's Consolidated, Ltd.,* 652 F.Supp. at 393 and cases cited therein; *see also South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11 (2d Cir.1994). However, a plaintiff's failure to act diligently does not support the invocation of equitable tolling. *South v. Saab Cars USA, Inc.,* 28 F.3d at 12.

In the instant action, the Court finds that plaintiff has failed to satisfy her burden of showing that equitable tolling should be applied. Plaintiff does not allege that anyone at the City Commission made any statement that led her to believe she had done all that was required to file a timely EEOC charge. When she first visited the City Commission, whether this visit occurred on September 11 or October 16, 1990, plaintiff was not told that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 5

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

agency would ensure the timely filing of an EEOC charge. Rather, she merely "understood" that an EEOC complaint would be filed on her behalf. Affidavit of Nonilon S. Hourahan, dated April 18, 1996, ¶ 3. Nor did the City Commission make any procedural error such as the one made by the local agency in *Brown v. Crowe,* 963 F.2d 895 (6th Cir.1992), a case relied upon by plaintiff.

**\*6** Rather, plaintiff failed to act diligently, which clearly "is not a reason to invoke equitable tolling." *South v. Saab Cars USA, Inc., supra.* From the affidavits of plaintiff and Lindsay, it appears that for approximately four months following her September 11, 1990 visit to the City Commission, plaintiff did not contact Lindsay to inquire about her charge with the City Commission or with the EEOC. Nor did she contact the EEOC to determine whether any charge had been filed on her behalf. In fact, plaintiff made no effort to contact the EEOC until September of 1995, five years after she first appeared before the City Commission and nearly two years after the administrative proceedings were terminated. In short, the Court finds that the facts of this case do not support the application of equitable tolling.

## II. *New York State Human Rights Law Claim*

Defendants argue that plaintiff's claim under the NYSHRL is barred because she elected to pursue her remedies through administrative proceedings.

Section 297 of the New York Executive Law provides in relevant part:
[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder or with any local commission on human rights ..., provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

N.Y.Exec.L. § 297(9) (McKinney's 1993). Thus,

under the so-called election of remedies doctrine, " an aggrieved individual has the choice of instituting either judicial or administrative proceedings. [She] may not, however, resort to both forums; having invoked one procedure, [she] has elected [her] remedies." *Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1196 (S.D.N.Y.1985). The " single exception to the *mutually exclusive nature of the elective remedies* arises when a complaint is dismissed by the Division for 'administrative convenience.' " *Moodie v. Federal Reserve Bank of New York,* 58 F.3d 879, 883 (2d Cir.1995) (emphasis in original).

In *Emil v. Dewey,* 49 N.Y.2d 968, 428 N.Y.S.2d 887 (1990), the New York Court of Appeals held that when a party files a complaint with the Division of Human Rights regarding alleged discrimination, that party is thereafter barred from commencing an action in court regarding that discrimination, even after withdrawing the administrative complaint. The Court stated:
[t]he record indicates, and it is conceded, that prior to commencing this action the plaintiff had filed a complaint with the State Division of Human Rights. Although the plaintiff withdrew that complaint prior to any determination by the division; there is no showing this was done for administrative convenience. Under these circumstances [§ 297(9) ] precludes the plaintiff from commencing an action in court based on the same incident.

**\*7** *Id.,* 49 N.Y.2d at 969, 428 N.Y.S.2d at 887; *see also Koster,* 609 F.Supp. at 1196-97.

In the instant action, plaintiff requested the City Commission to dismiss her Complaint for " administrative convenience" so that she could pursue her NYSHRL claim in federal court. In response, the City Commission issued a document entitled "Administrative Closure," which states the following grounds for the closure of plaintiff's case: "[t]he public interest will not be served by further prosecution of the complaint because Complainant has decided to pursue the case in Federal Court." Affirmation of Randolph E. Wills, dated April 1, 1996, Ex. F. The Administrative Closure order gives no indication that the dismissal of plaintiff's complaint was for "administrative convenience."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6

Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Plaintiff, however, urges the Court to deem the closure order a dismissal for administrative convenience so that the election of remedies doctrine will not apply.[FN3]

> FN3. Plaintiff concedes that the Administrative Closure applies only to her retaliatory discharge claim under the NYSHRL, and that the City Commission's Determination After Investigation bars her from bringing a claim of discrimination based on age, race or sex under the NYSHRL in federal court. *See* Plaintiff's Mem. of L. at 21-22.

In *Koster, supra,* the court noted that "it is unclear whether a complainant who is rightly dissatisfied with the administrative non-handling of his case has it open to him to request that the Commission dismiss his complaint for administrative convenience so that he can pursue his remedies in court." 609 F.Supp. at 1196; *see also Meschino v. Int'l Tel. & Tel. Corp.,* 563 F.Supp. 1066, 1074 (S.D.N.Y.1983) ("plaintiff has apparently requested that the HRD dismiss his claim 'for administrative convenience'.... [I]t is not clear that a dismissal in response to such a request would qualify as a dismissal for administrative convenience ..."). Indeed, if a complainant before the City Commission or the State Human Rights Division could, at any time, request a dismissal for administrative convenience and obtain a closure order deemed to be such a dismissal for purposes of § 297(9), regardless of whether the order closed the case on the ground of "administrative convenience," then the "mutually exclusive nature of the elective remedies," *Moodie,* 58 F.3d at 883, established by § 297(9) would be easily avoidable. It is doubtful that this was the intent of the state legislature in fashioning § 297.

Given that the Administrative Closure issued to plaintiff by the City Commission does not state that plaintiff's complaint was dismissed for administrative convenience, and that it is unclear whether plaintiff has a right to request a dismissal for administrative convenience to begin with, the Court finds that the Administrative Closure

obtained by plaintiff does not qualify as a dismissal for administrative convenience for purposes of § 297(9). Accordingly, plaintiff's NYSHRL claim must be dismissed under the election of remedies doctrine.

*CONCLUSION*

For the reasons stated above, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

S.D.N.Y.,1997.
Hourahan v. Ecuadorian Line, Inc.
Not Reported in F.Supp., 1997 WL 2518 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
    United States District Court,S.D. New York.
  I.S. SAHNI, INC. and Inderbir S. Sahni, a/k/a Rana
            Sahni, Plaintiffs,
                    v.
     SCIROCCO FINANCIAL GROUP, INC.
                Defendant.
        **No. 04 Civ. 9251 RMB RLE.**

                Sept. 28, 2005.

            *DECISION AND ORDER*
BERMAN, J.

                I. Introduction

**\*1** On or about February 9, 2005, I.S. Sahni, Inc. ("
Sahni, Inc.") and Inderbir Sahni (a/k/a Rana Sahni) (
"Sahni") (together, "Plaintiffs") filed an amended
complaint ("Amended Complaint") against
Scirocco Financial Group, Inc. ("Defendant")
asserting defamation, libel, libel *per se,* intentional
and/or tortious interference with business
relationships, and breach of the implied covenant of
good faith and fair dealing. (Amended Complaint ¶
¶ 21, 24, 48, 51.) Plaintiffs contend that Defendant
"commenced a campaign to impugn, smear, and
harm Plaintiffs' business and personal reputation in
Plaintiffs' clientele by informing Plaintiffs' clients
that [Defendant] no longer did business with
Plaintiffs as a result of Plaintiffs' alleged fraudulent
activities." (*Id.* ¶ 18.)

On or about March 15, 2005, Defendant filed a
motion to dismiss the Amended Complaint pursuant
to Rule 12(b)(6) of the Federal Rules of Civil
Procedure because (i) "documents recently
produced by plaintiff demonstrate the truth of
[Defendant's allegedly false and defamatory]
statements"; (ii) "no such cause of action exists

under New York law ... [for] 'Intentional and/or
Tortious Interference with Business Relations' ";
and (iii) "there is no derivative implied duty of
good faith arising from the oral agreement" between
the parties.[FN1] (*See* Defendant's Memorandum of
Law in Support of its Motion to Dismiss, dated
March 15, 2005 ("Defendant's Motion"), at 6, 10,
15.) On or about March 29, 2005, Plaintiffs
opposed the motion, arguing that (i) Defendant
accused Sahni of "commit[ting] 'fraudulent
activities' knowing such statement to be false"; (ii)
Plaintiffs "have met all four elements in pleading
the cause of action for tortious interference with
business relationships"; and (iii) "all contracts
contain an implied agreement that neither party will
engage in conduct which would interfere with the
other party's right to realize the benefit of the
bargain." (*See* Plaintiffs' Memorandum of Law in
Opposition of Defendant's Motion to Dismiss, dated
March 29, 2005 ("Plaintiffs' Opposition"), at 7,
13-15.) On or about April 4, 2005, Defendant filed
its reply. (*See* Defendant's Reply Memorandum of
Law in Further Support of its Motion to Dismiss,
dated April 4, 2005 ("Defendant's Reply").) For the
reasons stated below, Defendant's Motion to
Dismiss is granted and Plaintiffs' Amended
Complaint is dismissed.

> FN1. Defendant also argues that "sanctions
> [pursuant to Rule 11 of the Federal Rules
> of Civil Procedure] should be awarded"
> because there is "documentary evidence
> which belies plaintiffs' allegations, which
> plaintiffs were aware of at the time of the
> filing and service of the Amended
> Complaint." (*See* Defendant's Reply at
> 7-8.)

                II. Background

For the purposes of this motion, the allegations of
the Amended Complaint are taken as true unless
otherwise noted. *Cooper v. Parsky,* 140 F.3d 433,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

440 (2d Cir.1998).

Plaintiff Sahni is "an independent insurance broker" in New York, "primarily engaged in the sale of insurance policies for individual and business clientele." (Amended Complaint ¶¶ 2, 3.) Defendant is a New Jersey corporation "involved in providing insurance products and financial services. " (*Id.* ¶¶ 4, 5.) In or about September 2002, Plaintiffs and Defendant "entered into a verbal agreement, whereby, *inter alia,* Plaintiffs agreed to place some of their insurance business through [Defendant]" in exchange for half of "all commissions, fees, etc., realized on an account brought to [Defendant] via [Plaintiffs]" (" September 2002 Agreement"). (*Id.* ¶¶ 8, 10.) Plaintiffs allege that their business "is completely dependent upon Plaintiffs' reputation in the insurance industry and Plaintiffs generate their business based almost entirely through referrals from current and/or former clients ." (*Id.* ¶ 12.)

**\*2** On May 19, 2004, Deepak Khubchandani (" Khubchandani"), an insurance client of Plaintiffs', telephoned Defendant and notified Defendant that Sahni had falsified Khubchandani's name on a letter designating Defendant as Khubchandani's broker of record ("Broker of Record Letter"). (Defendant's Reply at 3.) That same day, Defendant faxed and mailed a letter to Sahni stating:
The circumstances surrounding Deepak Khubchandani have just been called to my attention. On April 15, 2004, you faxed to this office a signed Broker of Record letter.... I understand from Mr. Khubchandani that he, in fact, did not sign this BOR nor did he in any way authorize you to do so.... Falsifying a client's signature is unethical, prohibited by law and as such, not tolerated in this agency. Accordingly, we are immediately terminating your producer relationship with [Defendant].

(Letter from Cecilia Driza to Sahni, dated May 19, 2004, attached as Ex. A to Amended Complaint.) Also on May 19, 2004, Defendant wrote to the New York and New Jersey state departments of insurance ("Insurance Departments") stating that Defendant "ha[s] severed our relationship with the captioned independent producer [i.e., Sahni] after it

was brought to our attention that the signature on a Broker of Record Letter provided to us by Rana Sahni was falsified and in no way authorized by the client." (Letter from Defendant to the Insurance Departments, dated May 19, 2004, attached as Exhibit B to Amended Complaint.) [FN2]

> FN2. On July 8, 2004, Defendant resubmitted its May 19, 2004 letter to the New York Department of Insurance. (Defendant's Reply at 4; *see* Letter from Defendant to New York Insurance Department, dated July 8, 2004, attached as Ex. B to Amended Complaint.)
> On or about May 24, 2004, Defendant began to send letters to Plaintiffs' clients stating, in relevant part, that "[e]ffective immediately, Rana Sahni is no longer affiliated with [Defendant]. This does not, however, change our commitment to you, the client.... Our commitment to servicing your business remains a priority and we look forward to our continued business relationship." (Letter from Defendant to Chattar and Ranjit Sahni-Kahnpuri, dated May 24, 2004, attached as Ex. C to Amended Complaint.)

On May 20, 2004, Defendant received a letter from Khubchandani stating that "there was a misunderstanding between Rana Sahni and myself in our phone conversation. It seems that I did authorize [Sahni], after he reminded me of our conversation in April, to move the policy to [Defendant] and based on that information, he forwarded you the [Broker of Record Letter]...." (Letter from Khubchandani to Defendant, dated May 20, 2004 ("May 20, 2004 Letter").) The May 20, 2004 Letter has been attached by Plaintiffs as Ex. D to the Amended Complaint to support their claim of defamation. Remarkably, as shown below, Defendant has attached to its moving papers another, lengthier and, on its face, more complete version of the May 20, 2004 Letter, which Defendant asserts was obtained during discovery (" supplemented May 20, 2004 Letter"). The supplemented May 20, 2004 Letter includes the following language which is *not* included in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 3

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

version of the May 20, 2004 Letter attached to Plaintiffs' Amended Complaint:

I, Rana Sahni, understand that Deepak [Khubchandani] has written this letter to help me out of a serious situation with [Defendant]. Deepak actually did not authorize me to transfer the policy ... to [Defendant]. The BOR letter was signed by me. I, Rana Sahni absolve Deepak Khubchandani from any legal issues or lawsuits that might arise regarding this matter.

(Letter from Khubchandani to Defendant, dated May 20, 2004, attached as Ex. B to Defendant's Motion to Dismiss.)

### III. Legal Standard

*3 In reviewing a motion to dismiss, the court " must accept as true the factual allegations in the complaint and draw all inferences in favor of the plaintiff." *Hofmann v. Dist. Council 37,* No. 99 Civ. 8636, 2002 U.S. Dist. LEXIS 8703, at *6 (S.D.N.Y. May 9, 2002). Dismissal of the claim is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir.2002). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Dweck Law Firm, L.L.P. v. Mann,* No. 02 Civ. 8481, 2003 U.S. Dist. LEXIS 19535, at *7 (S.D.N.Y. Nov. 3, 2003). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Lewittes v. Cohen,* No. 03 Civ. 189, 2004 U.S. Dist. LEXIS 9697, at *2 (S.D.N.Y. May 26, 2004).

In deciding a motion to dismiss, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, and matters of which judicial notice may be taken. *See Henneberry v. Sumitomo Corp. of Am.,* No. 04 Civ. 2128, 2005 U.S. Dist. LEXIS 7475, at *12 (S.D.N.Y. Apr. 27, 2005).

### IV. Analysis

### Defamation and Libel Claims

Defendant argues that the May 20, 2004 Letter, in its complete form, contains "admissions [which] belie the [Plaintiffs'] claims herein and demonstrate what defendant is accused of 'falsely' reporting to the Insurance Department, was in fact true. It demonstrates that Sahni forged the signature [of Khubchandani] and falsified an insurance related document." (Defendant's Memorandum at 4.) Plaintiffs "vehemently dispute[ ] this allegation" and claim that "it is obvious that Sahni in no way intended [this portion of the supplemented May 20, 2004 Letter] to be an admission at all," but rather "a Release to Mr. Khubchandani from any liability that could arise in connection with Mr. Khubchandani's initial wrongful report of forgery to Defendant." (Plaintiff's Opposition at 8.)

A defamatory statement exposes an individual "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or ... induces an evil opinion of one in the minds of right-thinking persons, and ... deprives one of ... confidence and friendly intercourse in society." *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 177 (2d Cir.2000). Under New York law, a plaintiff must prove four elements to prevail on a defamation claim: "(1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party by the defendant; and, (4) resulting in injury to the plaintiff." *Treppel v. Biovail Corp.,* 2005 U.S. Dist. LEXIS 18511, at *22 (S .D.N.Y.2005); *see Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993); *Dellefave v. Access Temps., Inc.,* 2001 U.S. Dist. LEXIS 97, No. 99 Civ. 6098, 2001 WL 25745, at *4 (S.D.N.Y. Jan. 10, 2001). A claim for libel exists where a plaintiff establishes the elements of defamation and can prove that the allegedly false statement was made in writing. *See Meloff v. N .Y. Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir.2001).[FN3]

FN3. When a written statement "tends to disparage [plaintiff] in the way of his office, profession or trade," *Davis,* 754 F.2d at 82, it may constitute libel *per se,* "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

in which case plaintiff's compensable injury is presumed." *See Marek v. Old Navy (Apparel) Inc.,* 348 F.Supp.2d 275, 281 (S.D.N.Y.2004).

**\*4** Plaintiffs do not adequately plead the elements of defamation and libel. Although Defendant's (written) statements concerned Sahni, were published to third parties, and Plaintiffs allege that they were injured, (*See* Amended Complaint ¶ 40 ( "as a result of [Defendant's] malicious assertions, Sahni's reputation has been irreparably harmed"), Plaintiffs' allegations that Defendant's statements were false are flatly contradicted by the supplemented May 20, 2004 Letter which Defendant obtained during discovery.

Preliminarily, Defendant has properly submitted the supplemented May 20, 2004 Letter because " plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec,* 949 F.2d at 47; *see also I. Meyer Pincus & Assocs. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading") (citations omitted); *Phila. Parking Auth. v. Fed. Ins. Co.,* No. 03 Civ. 6748, 2005 U.S. Dist. LEXIS 460, at \*12 (S.D.N.Y. Jan. 14, 2005). "[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." *Sazerac Co. v. Falk,* 861 F.Supp. 253, 257 (S.D .N.Y.1994) (citing *Feick v. Fleener,* 653 F.2d 69, 75 & n. 4 (2d Cir.1981)). The supplemented May 20, 2004 Letter is central to this motion because it is signed by Sahni and it flatly contradicts the allegations in Plaintiffs' Amended Complaint. (*Compare* Amended Complaint ¶¶ 24, 25, 31, 32 *with* supplemented May 20, 2004 Letter (Khubchandani " actually did not authorize me to transfer the policy.... The BOR letter was signed by me.").) [FN4] (Supplemented Letter from Khubchandani to Defendant, dated May 20, 2004, attached as Ex. B to Defendant's Motion to Dismiss.) Truth is an absolute defense to a defamation claim. *See Leadertex v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 28 (2d Cir.1995).

FN4. Plaintiffs' claim that this language was intended "as a Release to Mr. Khubchandani from any liability that could arise in connection with Mr. Khubchandani's initial wrongful report of forgery to Defendant" is unpersuasive, (Plaintiffs' Opposition at 8), because "there can be no reasonable doubt that Sahni did in fact falsify a client's name, without the client's authority." (Defendant's Reply at 4.)

*Interference with Business Relationships Claim*

Defendant argues that "no such cause of action [for tortious/intentional interference with business relationships] exists under New York law," and that, in any event, Defendant's letters to Plaintiffs' clients make "no reference to anything critical or derogatory of plaintiffs." (Defendant's Memorandum at 9 .) Plaintiffs argue that Defendant "wrongfully and intentionally interfered with ... business relationships between Plaintiffs and its clients by unfairly and improperly defaming Plaintiffs to Plaintiffs' current and/or former clients," and that "but for the wrongful interference of [Defendant] in Plaintiffs' business relationships, Plaintiffs' clients would have continued to seek insurance related services from Plaintiffs, instead of directly going to [Defendant]." (Amended Complaint ¶¶ 44, 47.) And, "[i]n contacting Plaintiffs' clients prior to making a diligent inquiry into the allegations asserted by Mr. Khubchandani, the Defendant improperly and implicitly misrepresented Plaintiffs' business as one filled with dishonest practices." (Plaintiffs' Opposition at 14.)

**\*5** Under New York law, Plaintiffs must show "(1) business relations with a third party, (2) the defendant's interference with those business relations, (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means, and (4) injury to the business relationship." *Excellus Health Plan, Inc. v. Tran,* 287 F.Supp.2d 167, 177 (W.D.N.Y.2003); *see also Nadel v. Play-By-Play Toys & Novelties, Inc.,* 208 F .3d 368, 382 (2d Cir.2000).

While Plaintiffs allege that they engaged in business relations with third parties contacted by Defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 5

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

and that Plaintiffs' "have lost business and clients" due to Defendant's contacts, (Amended Complaint ¶¶ 44, 48), they have not adequately plead the third element, i.e. that Defendant (i) acted with the sole purpose of harming Plaintiffs or (ii) used dishonest, unfair or improper means in contacting Plaintiffs' clients. First, Plaintiffs do not adequately plead that Defendant's "sole purpose" was to harm Plaintiffs as a matter of law. "A cause of action does not lie absent an allegation that the action complained of was motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations." *Kramer v. Pollock-Pollock Found.*, 890 F.Supp. 250, 258 (S.D.N.Y.1995) (dismissing claim where plaintiff did not plead that the refusal of auction houses to sell paintings without certified authenticity was not "intended to advance their own legitimate interests"); *see also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 82 (2d Cir.2004) (explaining that "a defendant acting in its economic interest is liable for tortious interference only if that defendant was acting with a malicious or illegal purpose" and dismissing claim where defendant oil consortium "had an economic interest in the decision whether to pay the amounts owed" to plaintiff after defaulting on a large Brazilian naval construction project); *see also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 191-92 (N.Y.2004) (explaining that tortious interference claims should be dismissed "as long as defendant is motivated by legitimate economic self-interest" and dismissing claim where franchisees complained that an ice cream maker should not be permitted to sell its products in supermarkets); *NBT Bancorp v. Fleet/Norstar Fin. Group*, 159 A.D.2d 902, 913-14 (N.Y.App.Div.1990) (dismissing shareholder claim of tortious interference where a director with "a sincere belief that his fellow directors in the majority were acting for their own self-interests" brought suit to defeat merger).

Second, Plaintiffs do not allege that Defendant used on improper means when contacting third parties. Under New York law, a competitor "will not be liable so long as the 'means employed are not wrongful.' " *Carvel*, 3 N.Y.3d at 191 (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y.1980)). " '

Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with a contract." *Guard-Life*, 50 N.Y.2d at 191. "[I]f one competitor succeeds in diverting business from his competitor by virtue of superiority in matters relating to their competition, he serves the purposes for which competition is encouraged," and no cause of action for tortious interference exists. *Scutti Enters. v. Park Place Entm't Corp.*, 322 F.3d 211, 216 (2d Cir.2003) (citations omitted); *see also Flash Elecs v. Universal Music*, 312 F.Supp.2d 379, 405 (E.D.N.Y.2004) (no evidence of wrongful means on motion to dismiss where third party could "freely choose to accept or reject [defendant's contact] as it wished."). In the instant case, Defendant " inform[ed] Plaintiffs' clients that [Defendant] no longer did business with Plaintiffs as a result of Plaintiffs' alleged fraudulent activities," (Amended Complaint ¶ 18), based upon truthful information. *See Treppel*, 2005 U.S. Dist. LEXIS, at * *14-15 (dismissing tortious interference claim because it " rest[ed] solely upon the allegations of non-defamatory conduct"); *Kirch v. Liberty Media Corp.*, No. 04 Civ. 667, 2004 U.S. Dist. LEXIS 19228, at *37 (S.D.N.Y. Sept. 27, 2004) (dismissing claim where, "to the extent that [Defendant's] statements caused such pressure, they did so merely as a result of their persuasive effect on third parties who, in the end, independently decided not to [enter or continue] various subsequent agreements with the [Plaintiff]."); *Excellus*, 287 F.Supp.2d at 177 (dismissing claim because evidence of "[p]ersuasion alone, even though knowingly directed at interference with the business relationship, is insufficient").

### Covenant of Good Faith Claim

**\*6** Defendant argues that the September 2002 Agreement pursuant to which Plaintiffs agreed to place some of their insurance business through Defendant "is void and unenforceable" under the New York Statute of Frauds, N.Y. Gen. Obl. Law § 5-701(a), because "there is no allegation that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 6

Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

oral agreement was to be performed, to be completed, within one year." (Defendant's Memorandum at 14.) Defendant also argues that " there can be no breach of an implied covenant of an unenforceable contract" and that "there is no breach with respect to a contract terminable at the will of either party." (*Id.*) Plaintiffs allege that Defendant " through its attempts to intentionally harm Plaintiffs' present and future business, breached its implied covenant of good faith and fair dealing to Plaintiffs," (Amended Complaint ¶¶ 8, 51), and that the September 2002 Agreement "did not have to be reduced to a writing." (Plaintiffs' Opposition at 17.)

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing" if the agreement "[b]y its terms is not to be performed within one year from the making thereof . .." N.Y. Gen. Oblig. Law § 5-701(a)(1). "An oral agreement is enforceable under New York law and not within the Statute of Frauds if it can be construed as being capable of performance within one year of its making." *Curtis v. Harry Winston, Inc.,* 653 F.Supp. 1504, 1510 (S.D.N.Y.1987); *see also Ohanian v. Avis Rent-a-Car Sys., Inc.,* 779 F.2d 101, 106 (2d Cir.1985) ("The one-year provision has been held not to preclude an oral contract unless there is 'not ... the slightest possibility that it can be fully performed within one year.' ") (citations omitted).

The September 2002 Agreement was capable of performance within one year because both parties had the right to terminate the contractual relationship at will. *See Curtis,* 653 F.Supp. at 1510 ("as an at-will employee, [plaintiff] could have been terminated by [defendant] at any time, including within the first year of what turned out to be an eight-year term of employment.") At the same time, Plaintiffs have not adequately pled that Defendant breached its duties of good faith and fair dealing by terminating its relationship with Plaintiffs. Because Defendant was free to terminate Plaintiffs at any time ("at will"), and for any or no reason, Defendant could not have breached duties of good faith and fair dealing by ending the relationship. *See Sargent v. Columbia Forest Prods., Inc.,* 75 F.3d 86, 88 (2d Cir.1995) ("[plaintiff] was an at-will employee and, therefore, could not assert a claim

based on implied covenants of good faith and fair dealing"); *Baron Assocs. v. RSKCO,* 2005 N.Y.App. Div. LEXIS 2325 (2d Dep't 2005); *Sebetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329 (1987). And, because Defendant's statements to the Insurance Departments dated May 19, 2004 and June 8, 2004 and to Plaintiffs' clients dated May 24, 2004 occurred *after* any contract between the parties had ended (i.e., after Defendant terminated its relationship with Plaintiffs by letter and facsimile dated May 19, 2004), Defendant did not breach duties of good faith and fair dealing. *See G & R Moojestic Treats Inc. v. Maggie Moo's Int'l,* No. 03 Civ. 10027, 2004 U.S. Dist. LEXIS 8806, at * *22-23 (S.D.N.Y. May 19, 2004) ("there can be no covenant of good faith and fair dealing implied where there is no contract") (citations omitted); *John F. Dillon & Co. LLC v. Foremost Mar. Corp.,* No. 02 Civ. 7803, 2004 U.S. Dist. LEXIS 11383, at * *18-20 (S.D.N.Y. June 21, 2004).


### V. Conclusion and Order

*7 For the reasons stated herein, Defendant's Motion [17] is granted and the Amended Complaint is dismissed. The Clerk of the Court is respectfully requested to close this case.

S.D.N.Y.,2005.
I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.
Not Reported in F.Supp.2d, 2005 WL 2414762 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.