LEXSEE



Positive
As of: Jun 26, 2007

**THEMETRIS KENNEBREW, Plaintiff, -against- NEW YORK CITY HOUSING AUTHORITY, Defendant.**

**01 Civ. 1654 (JSR)(AJP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2002 U.S. Dist. LEXIS 3038; 8 Wage & Hour Cas. 2d (BNA) 348**

**February 26, 2002, Decided**

**DISPOSITION:** [*1] Recommended that Defendant's summary judgment motion should be GRANTED on all claims except DENIED on Plaintiff's Title VII (and related NYSHRL and NYCHRL) pregnancy discriminatory discharge claim.

**COUNSEL:** For THEMETRIS KENNEBREW, plaintiff: Themetris Kennebrew, Bronx, NY.

For NEW YORK CITY HOUSING AUTHORITY, defendant: Jeffrey Niederhoffer, Robert L. Doan, New York, NY.

**JUDGES:** ANDREW J. PECK, United States Magistrate Judge. Honorable Jed S. Rakoff, United States District Judge.

**OPINION BY:** ANDREW J. PECK

**OPINION**

*REPORT AND RECOMMENDATION*

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Jed S. Rakoff, United States District Judge:**

Pro se plaintiff Themetris Kennebrew brought this action against her former employer, the New York City Housing Authority, under Title VII, the Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA") and the New York State and New York City human rights laws. (Dkt. No. 7: Am. Compl.) Kennebrew claimed that the Housing Authority harassed her, discriminated against her by terminating her employment because of her sex and by not accommodating her disability (pregnancy and gestational diabetes), [*2] and retaliated against her. (Am. Compl. PP 4, 7, 8.) Presently before the Court is the Housing Authority's summary judgment motion. (Dkt. Nos. 19-26.)

For the reasons set forth below, the Housing Authority's summary judgment motion should be GRANTED on all claims except *DENIED* on Kennebrew's Title VII (and related NYSHRL and NYCHRL) pregnancy discriminatory discharge claim.

*FACTS*

*Kennebrew's Position at the Housing Authority*

On September 21, 1998, Kennebrew was hired, subject to a one-year probationary period, as a secretary for Millbrook Houses, a Housing Authority development in the Bronx. (Dkt. No. 20: Housing Auth. 56.1 Stmt. P 1; [1] Dkt. No. 23: Pitruzzella 1/8/02 Aff. P 3; Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. A: Kennebrew Notification of Appointment.) Kennebrew's direct supervisor was Ismael Roman, the development's Superintendent. (Dkt. No. 28: Kennebrew Aff. P 2). In Roman's absence (which was fairly frequent due to health-related reasons), Shirley Fonseca, an Assistant Superintendent, assumed Roman's duties. (Kennebrew Aff. P 2; Pitruzzella 1/8/02 Aff. PP 4, 5; Dkt. No. 25: Fonseca Aff. PP 2-3.) Fonesca and Roman were supervised by Salvatore Pitruzzella, [*3] the Manager of Millbrook Houses; Kennebrew al-

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 2 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

leges that Pitruzzella was not *her* direct supervisor. (Dkt. No. 28: Kennebrew 56.1 Stmt. P 3; Kennebrew Aff. P 2; *see also* Pitruzzella 1/8/02 Aff. P 5; Fonseca Aff. P 3.) Pitruzzella's supervisor was Leslie Peterson, the Bronx Borough Administrator. (Kennebrew Aff. P 2; Dkt. No. 26: Peterson Aff. PP 1-2.)

> 1 Kennebrew's Rule 56.1 Statement (Dkt. No. 28) responded only to those paragraphs of the Housing Authority's 56.1 Statement to which she objected or sought to clarify/modify. Thus, where this Report & Recommendation refers to the Housing Authority's 56.1 Statement without also referring to Kennebrew's 56.1 Statement, it means Kennebrew agreed to the Housing Authority's factual contention.

### Kennebrew's Pregnancy and Alleged "Pregnancy-Based" Comments

In July 1999, Kennebrew learned that she was pregnant and immediately informed Roman and Pitruzzella. (Kennebrew & Housing Auth. 56.1 Stmts. P 16; Dkt. No. 28: Kennebrew Aff. P 4; Dkt. No. 28: [*4*] Kennebrew 56.1 Stmt. P C.) Kennebrew alleges that after learning of her need to take time off for pre-natal care beginning in August 1999, "Fonseca told [Kennebrew] outright that [her] frequent absences for prenatal care would lead to [her] discharge and [she] should go out on maternity leave." (Kennebrew Aff. P 5.) In addition, Kennebrew claims that in September 1999, after Fonseca learned that Kennebrew had developed gestational diabetes, a pregnancy complication, Fonseca, who was diabetic herself, told Kennebrew "that [she] was taking too much time off for maternal fetal assessment to monitor the possible development of diabetes [in her] baby." (Kennebrew Aff. P 5; Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew EEOC Charge of Discrimination.)

Kennebrew alleges that in August 1999 she was treated differently from another female probationary employee when she and Dekeyia Ward, who was not pregnant, were both issued "counseling memos" for lateness and Ward's "counseling memo was rescinded" while Kennebrew's was not. (Kennebrew Aff. P 6.) Kennebrew does not state the basis for her knowledge (or allegation) that Ward's counseling memo was rescinded. Pitruzzella [*5*] responds that he issued the counseling memo to Ward and that "contrary to plaintiff's assertions otherwise in her affidavit in opposition to defendant's motion for summary judgment, I never rescinded this counseling memo." (Dkt. No. 31: Pitruzzella 1/29/02 Aff. P 2 & Ex. A.) Pitruzzella added that in October 1999 he issued a second counseling memo to Ward for additional lateness, and that the second counseling memo (which also was never rescinded) specifically referred to the August counseling memo to Ward. (Pitruzzella 1/29/02 Aff. P 3

& Ex. B.) Ward's present Housing Authority supervisor at the Garfield Houses (another housing development) has reviewed Ward's personnel file and confirmed that both the August 1999 and October 1999 counseling memos were in Ward's file and that there was no indication either counseling memo was ever rescinded. (Dkt. No. 30: Winocur Aff. PP 1-4 & Exs. A-B.)

### Kennebrew's Leave of Absence Requests

In her Amended Complaint, Kennebrew alleged that she "was diabetic in pregnancy and was never allowed time off for necessary [medical] appointments." (Dkt. No. 7: Am. Compl. P 8; *see also* Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew [*6*] EEOC Charge of Discrimination: "Fonseca would not allow me time off to make doctor's appointments. . . .") In her affidavit, Kennebrew asserts that when "Roman was present, he gave [her] permission [to take medical leave] without objection; when Mr. Roman was not present, Mr. Pitruzzella was always difficult" (Kennebrew Aff. P 4) and that while Roman was supportive of Kennebrew taking time off for pre-natal care, Pitruzzella and Fonseca were not (Kennebrew Aff. P 5).

In fact, during her pregnancy, between June 1999 and February 2000, Kennebrew submitted twenty-five Leave of Absence Requests for doctors' appointments and personal matters, which Pitruzzella and Fonseca approved. (Neiderhoffer 1/10/02 Aff. Ex. C: Leave of Absence Requests; Pitruzzella 1/8/02 Aff. P 15 & Exs. P-Q; Fonseca Aff. P 12 & Ex. D.) One leave of absence request, however, seeking four days leave to take care of her son who had an asthma attack, was denied due to a staff shortage. (*Id.*) Kennebrew nonetheless took off from work and, as a result, was docked three days pay. (Neiderhoffer 1/10/02 Aff. Ex. C: Leave of Absence Requests; Pitruzzella 1/8/02 Aff. P 15 & Exs. P-R Action on Paycheck.)

### Kennebrew's [*7*] Work Performance and Evaluations

Kennebrew's Initial Quarterly Evaluation Report, prepared by Roman in December 1998, before Kennebrew was pregnant, rated her overall performance as "satisfactory." (Dkt. No. 28: Kennebrew 56.1 Stmt. P B; Dkt. No. 23: Pitruzzella 1/8/02 Aff. P 6 & Ex. A: Initial Quarterly Evaluation Report.) According to Kennebrew, prior to August 9, 1999 and before becoming pregnant, she had not received any complaints from Roman or Pitruzzella regarding her work performance. (Kennebrew Aff. P 3; Kennebrew 56.1 Stmt. P D.) "In the ten (10) months [Kennebrew] worked in the Mill Brook Houses Department before [she became] pregnant, [she] did not receive a single counseling memo," but on August 9, 1999, she received the first of three counseling memos that she would receive" in the one (1) month after [she]

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 3 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

informed [her] supervisors that she was pregnant." (Kennebrew Aff. P 7(d).)

On August 9, 1999, Bronx Borough Administrator Leslie Peterson visited the management office at Millbrook Houses seeking some documents. (Dkt. No. 26: Peterson Aff. P 3.) Peterson asked Kennebrew to locate the documents, and when Kennebrew was unable to do so due to the disorganized [*8] state of the office, Peterson spoke to Pitruzzella and Fonseca about Kennebrew's work performance. (Peterson Aff. PP 3, 4; see also Dkt. No. 25: Fonseca Aff. P 4.) Kennebrew contends that the search for the documents on August 9, 1999 itself caused the disarray in the office, but she received unwarranted blame for it particularly since she "had been told by Mr. Roman not to touch his things, which were spread about the office." (Kennebrew Aff. P 3.)

As a result of Peterson's visit, Pitruzzella prepared the Second and Third Quarterly Evaluation Reports of Kennebrew's performance on August 9, 1999, indicating her overall work performance as "unsatisfactory." [2] (Pitruzzella 1/8/02 Aff. PP 6-8 & Exs. B & C: Second & Third Quarterly Evaluation Reports; see Housing Auth. & Kennebrew 56.1 Stmts. P 3; Fonseca Aff. PP 6-7.) Peterson indicated on the Third Quarterly Evaluation Report that "[Kennebrew] has been counseled on her work performance and has shown no improvement. Does not take the initiative to get the job done." (Peterson Aff. P 4 & Ex. A: Third Quarterly Evaluation Report; Pitruzzella 1/8/02 Aff. P 7 & Ex. C.) Pitruzzella also issued a counseling memo to Kennebrew on [*9] August 9, 1999 detailing the reasons for her unsatisfactory rating, including her failure to file work tickets, failure to update employee folders, repeating the same mistakes on employee overtime reports, maintaining her office in "complete disarray," and tardiness. (Housing Auth. & Kennebrew 56.1 Stmts. P 3; Pitruzzella 1/8/02 Aff. P 8 & Ex. D: 8/9/99 Counseling Memo.) Kennebrew signed the Second and Third Quarterly Evaluation Reports on August 9, 1999, with the notation of "I do not agree" (Pitruzzella 1/8/02 Aff. Exs. B & C, last page), but she refused to sign the August 9, 1999 counseling memo (Pitruzzella 1/8/02 Aff. Ex. D).

> 2   The Second and Third Quarterly Evaluation Reports should have been issued on March 20, 1999 and June 20, 1999, but were not completed in a timely manner because Roman, who was responsible for preparing them, was on a leave of absence for health-related reasons. (Fonseca Aff. P 7.)

Pitruzzella issued two additional counseling memos to Kennebrew on August 20 and August 25, 1999, claiming [*10] deficiencies in her work. (Housing Auth. & Kennebrew 56.1 Stmts. P 4; Pitruzzella 1/8/02 Aff. P 9 &

Ex. E 8/20/99 Counseling Memo, & Ex. F: 8/25/99 Counseling Memo.) The August 20, 1999 memo stated that Kennebrew misfiled and misidentified several papers in the "Law Department 1999" file. (Pitruzzella 1/8/02 Aff. Ex. E) In her recent affidavit, Kennebrew responds that "Pitruzzella seems to forget that my direct supervisor was Mr. Roman and that files which I kept including 'Law Department 1999' were made, named, and maintained by me as per Mr. Roman's instructions, not [Pitruzzella's]." (Kennebrew Aff. P 7(c).) The August 25, 1999 memo stated that after Pitruzzella reviewed two employee folders, he noticed that memos where missing from both, and when Kennebrew told him that Fonseca asked for one of the memos, Fonseca advised him that she had requested a copy of the memo, not the original. (Pitruzzella 1/8/02 Aff. Ex. F.) Kennebrew's recent affidavit explains: "I did not think [Fonseca] would take [the original memo] from the office. After she took [the original memo], I repeatedly requested from Ms. Fonseca. . . that she return the counseling memo to me; while she kept saying [*11] she would do so, she never did. As to the second [missing] counseling memo, I always filed those which I received." (Kennebrew Aff. P 7(b).)

On September 17, 1999, Pitruzzella gave Kennebrew an unsatisfactory rating on her Final Quarterly Evaluation Report, stating that she "has not made any significant improvement." (Housing Auth. & Kennebrew 56.1 Stmts. P 5; Pitruzzella 1/8/02 Aff. P 10 & Ex. G: Final Quarterly Evaluation Report.) Pitruzzella nevertheless requested that Kennebrew's probationary period be extended six additional months to allow her time to improve. (Housing Auth. 56.1 Stmt. P 6; Pitruzzella 1/8/02 Aff. P 10 & Ex. H: Probation Extension Request Letter; see also Fonseca Aff. P 9.) The Housing Department's more senior management agreed to extend her probationary period and Kennebrew agreed in writing to a six-month extension of her probation. (Housing Auth. 56.1 Stmt. PP 7, 8; Pitruzzella 1/8/02 Aff. P 10 & Ex. I: Signed Probationary Period Extension Letter.)

On January 26, 2000, during the extended probationary period, Fonseca gave Kennebrew a fourth counseling memo, because of her failure to complete the "Paint and Shade Book," [3] a project that Fonseca contends [*12] was not difficult and should have taken Kennebrew a few hours to complete. (Housing Auth. & Kennebrew 56.1 Stmts. P 9; Fonseca Aff. P 10 & Ex. A: 1/25/00 Counseling Memo; see also Pitruzzella Aff. P 11 & Ex. J.) The counseling memo stated that Kennebrew gave "no explanation as to why this task has not been completed" and as a result Fonseca had "no alternative but to request further disciplinary action from the manager." (Fonseca Aff. Ex. A.) Kennebrew's recent affidavit asserts that she had only three days to complete the

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 4 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

project and that she obtained the available information from Pitruzzella, "who should have been giving [her] this information regularly if it was to be done. However, Mr. Roman had previously told [her] it was not necessary for [her] to do this." (Kennebrew Aff. P 7(a).) After she "brought the book up to date as far back as possible," Kennebrew alleges that she informed both Pitruzzella and Fonseca that the work was completed. (*Id.*) Kennebrew alleges that she again told Pitruzzella and Fonseca that she had completed the work when she was given the counseling memo on January 25, 2000, and that she refused to sign the memo for this reason. (*Id.*)

> 3   The Paint and Shade Book is used by Millbrook Houses to keep track of the painting of each tenant's apartment. It was to be brought up to date in preparation for an upcoming inspection by the U.S. Department of Housing and Urban Development. (Fonseca Aff. P 10; *see also* Pitruzzella Aff. P 11.)

[*13]   ***The Housing Authority Decides to Terminate Kennebrew***

In a memo to Peterson dated February 1, 2000, Pitruzzella requested approval to terminate Kennebrew's employment because of "her poor work performance;" the letter stated that although Kennebrew was given four counseling memos, "she has not improved and seems unable to comprehend basic instructions. Ms. Kennebrew must be constantly monitored. She has shown no initiative to master her job and repeatedly makes the same errors." (Housing Auth. & Kennebrew 56.1 Stmts. P 10; Pitruzzella 1/8/02 Aff. P 12 & Ex. K: 2/1/00 Request for Termination Memo; Peterson Aff. P 6.) On February 7, 2000, Peterson and Robert Torres, Deputy Director of the Bronx Management Department, agreed with Pitruzzella's request for Kennebrew's termination. (Housing Auth. & Kennebrew 56.1 Stmts. P 11; Peterson Aff. P 7 & Ex. B: Peterson & Torres Approval of Termination Letter; *see also* Pitruzzella 1/8/02 Aff. P 12 & Ex. L.) It is undisputed that Kennebrew was not given copies of or contemporaneously advised of these memos.

***Kennebrew's Request for a Six-Month Medical Leave of Absence and Termination of Her Employment***

In February [*14]  2000, Kennebrew's doctor recommended that she take medical leave from work because he felt that the stress she experienced at work might further complicate her pregnancy. (Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew EEOC Charge of Discrimination.) On February 9, 2000, before Kennebrew was told that she would be terminated (but after the decision to do so was made and approved), she requested a six-month maternity leave to begin on February 14, 2000. (Kennebrew Aff. P 8; Housing Auth.

56.1 Stmt. P 12; Pitruzzella 1/8/02 Aff. P 13 & Ex. M: Request for Leave of Absence, Ex. N: Doctor's Note.) Pitruzzella denied Kennebrew's requested leave of absence, noting on her request form that "employment [is] to be terminated." (Housing Auth. 56.1 Stmt. P 13; Pitruzzella 1/8/02 Aff. P 13 & Ex. O: Denied Request for Leave of Absence.) According to Kennebrew, when she asked Pitruzzella why she was going to be fired, he replied that she could be fired "for any reason." (Kennebrew Aff. P 8.)

Kennebrew's last date of work was February 11, 2000; her termination was effective as of February 16, 2000. (Pitruzzella 1/8/02 Aff. P 14.) In a letter dated February 16, 2000, Kennebrew was informed [*15]  that her employment was terminated; the letter gave no reason for her termination. (Kennebrew Aff. P 8; Housing Auth. 56.1 Stmt. P 14; Neiderhoffer 1/10/02 Aff. Ex. E Employment Termination Letter.) Kennebrew gave birth two weeks later and, as a result of being fired by the Housing Authority, alleges that she had no medical coverage and paid over $ 14,000 for medical costs associated with the birth. (Kennebrew Aff. P 8; Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew EEOC Charge of Discrimination, p. 2.)

Kennebrew's position was filled on October 19, 2000 by a female of approximately the same age (who is not claimed to have been pregnant at the time). (Housing Auth. & Kennebrew 56.1 Stmts. P 15; Fonseca Aff. P 13.)

Both Peterson and Pitruzzella deny that Kennebrew was fired because of her pregnancy. Peterson's affidavit states

> I have been informed by NYCHA's counsel that Ms. Kennebrew claims that she was terminated because of her pregnancy. This is not true. Ms. Kennebrew was terminated solely because of her unsatisfactory work performance. During my tenure as Borough Administrator, several women in the office became pregnant, took maternity leave and returned to work. Additionally, [*16]  between 1992 and 1997, when I was the Manager of the Edenwald Houses, another NYCHA housing development, several women became pregnant; none of whom were terminated from employment.

(Peterson Aff. P 8; *see also* Pitruzzella 1/8/02 Aff. P 16: "Ms. Kennebrew was dismissed solely for her unsatisfactory service and not because of her gender or her pregnancy. . . .")

Case 1:07-cv-05471-BSJ-KNF   Document 7-13   Filed 07/03/2007   Page 5 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

### Kennebrew's EEOC Complaint

Kennebrew filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on July 17, 2000, claiming discrimination based on sex and disability. (Dkt. No. 23: Housing Auth. 56.1 Stmt. P 20; Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew EEOC Charge of Discrimination.) In the charge, Kennebrew alleged that "shortly after notifying the [Housing Authority] about [her] pregnancy . . . [she] began to receive harassment which included, but was not limited to, unwarranted criticism of [her] work." (Neiderhoffer Aff. Ex. F.) In addition, Kennebrew alleged that after she learned that she developed gestational diabetes, she "notified the [Housing Authority] of [her] condition and provided [her] managers with doctor's notes. Nevertheless, [*17] Fonseca would not allow [Kennebrew] time off to make doctor's appointments -- even though [she] had accumulated leave." (Id.) Kennebrew alleged that she was "harassed and, ultimately, terminated because [she] was pregnant, in violation of Title VII . . . [and that her] rights under the Americans with Disabilities Act have been violated." (Id.)

### Kennebrew's Present Federal Lawsuit

After she received a Right to Sue letter from the EEOC, Kennebrew brought suit in this Court. Kennebrew's pro se Amended Complaint alleges that when she became pregnant, she "began to receive harassment and unwarranted criticism of [her] work . . . was never allowed time off for necessary appointments . . . went through a stressful period because of [her] supervisors. . . . [and] was informed to leave the job or. . . be fired." (Dkt. No. 7: Am. Compl. P 8.) As a result of her termination, she alleges that she lost medical coverage and suffered and continues to suffer "stress and illness from the harassment and discrimination." (Id.) Kennebrew asserted claims under Title VII, the ADA, the FMLA, and the New York State and New York City human rights laws. (Am. Compl.)

In [*18] her deposition, Kennebrew clarified that when she refers to the failure to accommodate her disability, the disability she is referring to is her pregnancy. (Neiderhoffer 1/10/02 Aff. Ex. 1: Kennebrew Dep. at 34-35, 45.) She also clarified that her "retaliation" claim is based on retaliation for her pregnancy. (Kennebrew Dep. at 39-40.)

Presently before the Court is the Housing Authority's summary judgment motion. (Dkt. Nos. 19-26.)

### ANALYSIS

### I. SUMMARY JUDGMENT STANDARDS IN EMPLOYMENT DISCRIMINATION CASES [4]

4  For additional cases authored by this judge discussing the summary judgment standards in employment discrimination cases in language substantially similar to that in this entire section of this Opinion, see, e.g., Williams v. NYC Dep't of Sanitation, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at * 8-9 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); Gonzalez v. New York City Transit Auth., 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *6 (S.D.N.Y. May 9, 2001) (Peck, M.J.); Economou v. Caldera, 2000 U.S. Dist. LEXIS 18231, 99 Civ. 12117, 2000 WL 1844773 at *12 (S.D.N.Y. Dec. 18, 2000) (Peck, M.J.); Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *7 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), aff'd, 23 Fed. Appx. 82, 2001 U.S. App. LEXIS 27399, 2002 WL 4594 at *1 (2d Cir. 2001); Austin v. Ford Models, Inc., 2000 U.S. Dist. LEXIS 17174, 95 Civ. 3731, 2000 WL 1752966 at *6 (S.D.N.Y. Nov. 29, 2000)(Peck, M.J.), aff'd, 22 Fed. Appx. 76, 2001 U.S. App. LEXIS 26165, 2001 WL 1562070 at *1 (2d Cir. 2001); Johns-Davila v. City of New York, 2000 U.S. Dist. LEXIS 17012, 99 Civ. 1885, 2000 WL 1725418 at *3 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.); Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 352 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 387 (S.D.N.Y. 1998) (Stein, D.J. & Peck, M.J.); Hernandez v. New York City Law Dep't Corp. Counsel, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *6 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.).

[*19] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment -- here, defendant. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residen-

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 6 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

*tial Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994). [*20] The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S. Ct. at 1356; *see also, e.g., Weinstock v. Columbia Univ.*, 224 F.3d at 41 (at summary judgment, "the time has come . . . 'to put up or shut up'") (citation omitted).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be [*21] drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513. [5] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S. Ct. 489, 98 L. Ed. 2d 487 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM*, 43 F.3d at 37.

5    *See also, e.g., Chambers v. TRM*, 43 F.3d at 36; *Gallo v. Prudential*, 22 F.3d at 1223.

"The Court recognizes that it must 'extend extra consideration' to pro se plaintiffs" such as Kennebrew, and that "pro se parties are 'to be given "special latitude on summary judgment motions. [*22] """ *Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.). [6] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 U.S. Dist. LEXIS 16832, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases). [7]

6    *Accord, e.g., Fulmore v. Mamis*, 2001 U.S. Dist. LEXIS 4869, 00 Civ. 2831, 2001 WL 417119 at *6 (S.D.N.Y. Apr. 23, 2001) (Peck, M.J.); *Freeman v. Strack*, 2000 U.S. Dist. LEXIS 14245, 99 Civ. 9878, 2000 WL 1459782 at *5 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.); *Culp v. Koenigsmann*, 2000 U.S. Dist. LEXIS 10168, 99 Civ. 9557, 2000 WL 995495 at *5 (S.D.N.Y. July 19, 2000) (Peck, M.J.); *Carbonell v. Goord*, 2000 U.S. Dist. LEXIS 8227, 99 Civ. 3208, 2000 WL 760751 at *5 (S.D.N.Y. June 13, 2000) (Peck, M.J.); *Watson v. McGinnis*, 981 F. Supp. 815, 818 (Kaplan, D.J. & Peck, M.J.); *see also, e.g., McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").

[*23]

7    *See also, e.g., Fulmore v. Mamis*, 2001 U.S. Dist. LEXIS 4869, 2001 WL 417119 at *6; *Freeman v. Strack*, 2000 U.S. Dist. LEXIS 14245, 2000 WL 1459782 at *5; *Culp v. Koenigsmann*, 2000 U.S. Dist. LEXIS 10168, 2000 WL 995495 at *5; *Carbonell v. Goord*, 2000 U.S. Dist. LEXIS 8227, 2000 WL 760751 at *5.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] factual disputes [*24] that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510 (citation omitted); *see also, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11-12.

When a case turns on the intent of one party, as employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential*, 22 F.3d at 1224. [8] Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. *Eg., Gallo v. Prudential*, 22 F.3d at 1224. "Summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 7 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). [*25] Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer. *Eg., Budde v. H&K Distrib. Co.*, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. 2000); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ.*, 131 F.3d at 312; *see, e.g., Schnabel v. Abramson*, 232 F.3d 83, 90-91 (2d Cir. 2000); *Weinstock v. Columbia Univ.*, 224 F.3d at 42 (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational [*26] inference of discrimination. To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.") (internal quotations & alterations omitted); *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'"). [9] Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" *Weinstock v. Columbia Univ.*, 224 F.3d at 41.

> [8]  *Accord, e.g., Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); *Cardozo v. Healthfirst Inc.*, 1999 U.S. Dist. LEXIS 15364, 98 Civ. 3050, 1999 WL 782546 at *1-2 (S.D.N.Y. Sept. 30, 1999); *see also, e.g., Chambers v. TRM*, 43 F.3d at 40.

[*27]

> 9  *See also, e.g., Budde v. H&K Distrib. Co.*, 216 F.3d 1071, 2000 U.S. App. LEXIS 20561, 2000 WL 900204 at *1; *Scaria v. Rubin*, 1996 U.S. Dist. LEXIS 9659, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996)(Peck, M.J.), *aff'd*, 117 F.3d 652, 654 (2d Cir. 1997).

## II. *THE HOUSING AUTHORITY'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS TO KENNEBREW'S TITLE VII PREGNANCY DISCRIMINATION CLAIM*

### A. *Legal Principles Governing Title VII Actions* [10]

> 10  For additional cases authored by this Judge discussing the legal principles governing employment discrimination actions, in language substantially similar to that in this entire section of this Report & Recommendation, *see, e.g., Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *9-12 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *10 (S.D.N.Y. May 9, 2001) (Peck, M.J.); *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *11 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), *aff'd*, 23 Fed. Appx. 82, 2002 WL 4594 at *1 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 98 Civ. 3731, 2000 WL 1752966 at *8 (S.D.N.Y. Nov. 29, 2000)(Peck, M.J.), *aff'd*, 22 Fed. Appx. 76, 2001 U.S. App. LEXIS 26165, 2001 WL 1562070 at *1 (2d Cir. 2001); *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 354 (S.D.N.Y. 1999)(Wood, D.J. & Peck, M.J.); *Lediju v. New York City Dep't of Sanitation*, 173 F.R.D. 105, 113-14 (S.D.N.Y. 1997) (Leisure, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't*, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *12 (S.D.N.Y. Jan. 23, 1997)(Peck, M.J.); *Burger v. Litton*, 1996 U.S. Dist. LEXIS 5560, 91 Civ. 0918, 1996 WL 421449 at *8 (S.D.N.Y. Apr. 25, 1996) (Peck, M.J.), *report & rec. adopted*, 1996 U.S. Dist. LEXIS 15602, 1996 WL 609421 (S.D.N.Y. Oct. 22, 1996) (Knapp, D.J.).

[*28]  Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1). Kennebrew alleges that the Housing Authority violated Title VII by discriminating

Case 1:07-cv-05471-BSJ-KNF   Document 7-13   Filed 07/03/2007   Page 8 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

against her based on her sex, and by retaliating against her. (Dkt. No. 7: Am. Compl. PP 4, 7.)

Under the familiar *McDonnell Douglas* burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *see, e.g., Reeves v. Sanderson Plumbing*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S. Ct. 1307, 1309, 134 L. Ed. 2d 433 (1996); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47, 125 L. Ed. 2d 407 (1993); [*29] *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). [11] Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's v. Hicks*, 509 U.S. at 506, 113 S. Ct. at 2747 (quoting *Texas v. Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094). [12]

> 11  *See also, e.g., Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

> 12  *See also, e.g., Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997); *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998).

Once a plaintiff claiming employment discrimination establishes a prima facie case, [*30] the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision. *Eg., Reeves v. Sanderson Plumbing*, 530 U.S. at 142-43, 120 S. Ct. at 2106; *O'Connor v. Consolidated Coin*, 517 U.S. at 310, 116 S. Ct. at 1309; *St. Mary's v. Hicks*, 509 U.S. at 506-07, 113 S. Ct. at 2747; *Texas v. Burdine*, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; *McDonnell Douglas v. Green*, 411 U.S. at 802, 93 S. Ct. at 1824. [13] The burden on the defendant at this phase is one of production rather than persuasion. *Eg., Reeves v. Sanderson Plumbing*, 530 U.S. at 142, 120 S. Ct. at 2106; *St. Mary's v. Hicks*, 509 U.S. at 507, 113 S. Ct. at 2747; *Texas v. Burdine*, 450 U.S. at 257, 101 S. Ct. at 1096. [14]

> 13  *See also, e.g., Schnabel v. Abramson*, 232 F.3d at 88; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *Austin v. Ford Models, Inc.*, 149 F.3d at 152; *Stern v. Trustees of Co-*

*lumbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Scaria v. Rubin*, 117 F.3d at 654; *Fisher v. Vassar College*, 114 F.3d at 1335; *Chambers v. TRM*, 43 F.3d at 38.

[*31]

> 14  *See also, e.g., Austin v. Ford Models, Inc.*, 149 F.3d at 153; *Scaria v. Rubin*, 117 F.3d at 654; *Fisher v. Vassar College*, 114 F.3d at 1335.

"Any legitimate, non-discriminatory reason will rebut the presumption triggered by the prima facie case." *Fisher v. Vassar College*, 114 F.3d at 1335-36. "'It is important to note . . . that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."'" *Fisher v. Vassar College*, 114 F.3d at 1335 (quoting *St. Mary's v. Hicks*, 509 U.S. at 507, 113 S. Ct. at 2747); *accord, e.g., Reeves v. Sanderson Plumbing*, 530 U.S. at 142-43, 120 S. Ct. at 2106.

If the defendant articulates a non-discriminatory reason, the *McDonnell Douglas* burden-shifting framework drops out of the picture. *Eg, Reeves v. Sanderson Plumbing*, 530 U.S. at 142-43, 120 S. Ct. at 2106; [*32] *St. Mary's v. Hicks*, 509 U.S. at 510, 113 S. Ct. at 2749; *Texas v. Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093-94. [15] "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves v. Sanderson Plumbing*, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting *Texas v. Burdine*, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

> 15  *See also, e.g., Weinstock v. Columbia Univ.*, 224 F.3d at 42; *Scaria v. Rubin*, 117 F.3d at 654; *Fisher v. Vassar College*, 114 F.3d at 1336.

The Supreme Court clarified the standard at this stage of the *McDonnell Douglas* analysis:

> In *St. Mary's Honor Center* . . . . we held [*33] that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "it is not enough . . . to disbelieve

Case 1:07-cv-05471-BSJ-KNF     Document 7-13     Filed 07/03/2007     Page 9 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence [*34] law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, *a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.*

*This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.* Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the [*35] employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from

review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

*Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.*

*Reeves v. Sanderson Plumbing*, 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis added & citations omitted).

After *Reeves*, the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the *McDonnell Douglas* analysis will not preclude summary judgment in all cases; [*36] rather, a case-by-case analysis is necessary:

In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a *per se* rule requiring *in all instances* that a [Title VII] claimant offer more than a prima facie case and evidence of pretext. . . . But the converse is not true; following *Reeves*, we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

*Schnabel v. Abramson*, 232 F.3d at 90 (emphasis added).

[16]

16  *See also, e.g., Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 167-68 (2d Cir. 2001); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456,

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 10 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

469-70 (2d Cir.), *cert. denied*, 122 S. Ct. 460, 151 L. Ed. 2d 378 (2001); *James v. New York Racing Ass'n*, 233 F.3d 149, 156-57 (2d Cir. 2000); *Weinstock v. Columbia Univ.*, 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); *Weiser v. Forest Pharm., Inc.*, 2001 U.S. Dist. LEXIS 3266, 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); *Tanay v. Saint Barnabas Hosp.*, 2001 U.S. Dist. LEXIS 2661, 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); *Bennett v. Watson, Wyatt & Co.*, 136 F. Supp. 2d 236, 245 (S.D.N.Y.), *reconsideration denied*, 156 F. Supp. 2d 270 (S.D.N.Y. May 18, 2001); *Connell v. Consolidated Edison Co.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record -- whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence -- to support an inference of discrimination.").

[*37] Indeed, the Second Circuit and District Court decisions within the Circuit continue to grant summary judgment to defendants in appropriate cases at the final *McDonnell Douglas* step, even after *Reeves*. [17]

17   *E.g., Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d at 470; *James v. New York Racing Ass'n*, 233 F.3d at 157; *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *12-19; *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *12; *Weiser v. Forest Pharm., Inc.*, 2001 U.S. Dist. LEXIS 3266, 2001 WL 293951 at *8; *Tanay v. St. Barnabas Hosp.*, 2001 U.S. Dist. LEXIS 2661, 2001 WL 262695 at *9; *Bennett v. Watson, Wyatt & Co.*, 136 F. Supp. 2d at 249-50; *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 2000 WL 1782744 at *13; *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 2000 WL 1752966 at *12-15; *Trezza v. Dilenschneider Group*, 2000 U.S. Dist. LEXIS 16461, 99 Civ. 0185, 2000 WL 1702029 at *5-6 (S.D.N.Y. Nov. 14, 2000); *Faldetta v. Lockheed Martin Corp.*, 2000 U.S. Dist. LEXIS 16216, 98 Civ. 2614, 2000 WL 1682759 at *8-11 (S.D.N.Y. Nov. 9, 2000); *Chudnovsky v. Prudential Sec., Inc.*, 1999 U.S. Dist. LEXIS 144, 98 Civ. 7753, 2000 WL 1576876 at *8 (S.D.N.Y. Oct. 23, 2000); *Cousins v. Howell Corp.*, 113 F. Supp. 2d 262, 268-69 (D. Conn. 2000); *Ekweablu v. Central Parking Sys.*, 2000 U.S. Dist. LEXIS 13545, 97 Civ. 9477,

2000 WL 1371335 at *3-4 (S.D.N.Y. Sept. 22, 2000); *Connell v. Consolidated Edison Co.*, 109 F. Supp. 2d at 208-11; *Lenhoff v. Getty*, 2000 U.S. Dist. LEXIS 9835, 97 Civ. 9458, 2000 WL 977900 at *5-6 (S.D.N.Y. July 17, 2000); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 251 & n. 12 (S.D.N.Y. 2000).

[*38]   **B.** *Application of Those Principles to Kennebrew's Pregnancy Discrimination Claim* [18]

18   The parties have offered no separate analysis of Kennebrew's discrimination claims under the New York State and New York City Human Rights Laws. The only reference to those claims in the Housing Authority's brief is a footnote, stating that "if the [Title VII] claim based on federal law is dismissed, so to [sic] must any claim based on New York State or New York City law for the same incident." (Housing Auth. Br. at 8 n.1.) The Housing Authority is not entirely correct. As this Court has pointed out several times, "while the cases . . . employ the same 'federal' analysis to NYCHRL claims, the 'legislative history' of the NYCHRL makes clear that it is to be even more liberally construed than the federal and state anti-discrimination laws." *Burger v. Litton*, 1996 U.S. Dist. LEXIS 5560, 91 Civ. 0918, 1996 WL 421449 at *18-19 (S.D.N.Y. Oct. 22, 1996); *accord, e.g., Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 355 & n.5 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel*, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *13-19 & n.10 (S.D.N.Y. Jan. 23, 1997)(Peck, M.J.); *see also Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir.) (quoting *Burger*), *cert. denied*, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997). Because the parties have only analyzed the case under the federal Title VII standard, however, for purposes of this motion the Court also will consider only the applicable Title VII standard. *See also* page 51 n.33 below.

[*39] Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). As amended by the Pregnancy Discrimination Act, the "terms 'because of sex' or 'on the basis of sex' include . . . because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); *see California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 277 & n.6; 107 S. Ct. 683, 687 & n.6, 93 L. Ed. 2d 613 (1987) ("Congress passed the Pregnancy Discrimination Act of 1978 (PDA), 42 U.S.C. § 2000e(k) . . . [which] specifies

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 11 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

that sex discrimination [under Title VII] includes discrimination on the basis of pregnancy.").

Reading Kennebrew's pro se amended complaint liberally, as the Court must, she appears to allege that the Housing Authority discriminated against her because of her pregnancy in violation of Title VII by: (1) creating a hostile work environment by harassing and criticizing her, and (2) engaging in disparate treatment (discriminatory [*40] discharge).

### 1. *Hostile Work Environment*

To establish a hostile work environment claim, Kennebrew must allege that the Housing Authority's conduct was:

> . . . "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986))(internal brackets and quotation marks omitted). The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the workplace. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995). All of the circumstances must be considered; a reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it. *See Harris v. Forklift Sys.*, 510 U.S. 17, 21-23, 114 S. Ct. 367, 370-71, 126 L. Ed. 2d 295 (1993); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995).

*Gallagher v. Delaney*, 139 F.3d 338, 346-47 (2d Cir.1998). [*41] [19] "Conduct that is 'merely offensive' and 'not severe or pervasive enough to create an objectively hostile or abusive work environment'" is insufficient to establish a Title VII hostile work environment claim. *Torres v. Pisano*, 116 F.3d at 631. [20] "Isolated incidents of discriminatory comments or conduct is not sufficient to establish a hostile work environment." *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *13 (citing cases).

> 19    *Accord, e.g., Dayes v. Pace Univ.*, 2 Fed. Appx. 204, 2001 U.S. App. LEXIS 1693, 2001 WL 99831 at *1 (2d Cir. 2001); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69-71

(2d Cir. 2000); *Howley v. Town of Stratford*, 217 F.3d 141, 153-54 (2d Cir. 2000); *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437-40 (2d Cir. 1999); *see also, e.g., Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S. Ct. 563, 139 L. Ed. 2d 404 (1997); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1042 (2d Cir.1993), *cert. denied*, 522 U.S. 1004, 118 S. Ct. 578, 139 L. Ed. 2d 417 (1997); *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *12-13 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 421 (S.D.N.Y.) (Wood, D.J. & Peck M.J.), *aff'd*, 201 F.3d 430 (table), 1999 WL 1070027 (2d Cir. 1999).

[*42]

> 20    *See also, e.g., Dayes v. Pace Univ.*, 2 Fed. Appx. 204, 2001 WL 99831 at *1 (Defendant's "comments and behavior, although boorish and inappropriate, simply do not rise to the level of behavior necessary for a jury reasonably to conclude that they were sufficiently severe of pervasive to alter the condition of plaintiff's employment."); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir.1998) ("As a general matter, 'isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive.'"); *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *13.

Kennebrew alleges that she was harassed because she received "unwarranted criticism" of her work performance. (Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. F: Kennebrew EEOC Charge of Discrimination.) Her allegation of unwarranted criticism appears to come from the post-pregnancy unsatisfactory ratings that she received on her Quarterly Evaluation [*43] Reports and in counseling memos, compared to the period before becoming pregnant, when she did not receive a single counseling memo and her Evaluation Report reflected satisfactory performance. (*See* page 5 above.) However, allegations of "negative job evaluations" are not sufficient to establish a hostile work environment claim. *See, e.g., Majer v. Metropolitan Transp. Auth.*, 1990 U.S. Dist. LEXIS 16971, 00 Civ. 4608, 1990 WL 212928 at *6-7 (S.D.N.Y. Dec. 14, 1990); *see also, e.g., Boyd v. Presbyterian Hosp.*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) (negative evaluations did not cause "any material change in the conditions of her employment."); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247 (S.D.N.Y. 2001) ("courts have held that negative evaluations, standing

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 12 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

alone without any accompanying adverse results, are not cognizable.") (citing cases); *Nwanji v. City of New York*, 2000 U.S. Dist. LEXIS 13307, 98 Civ. 4263, 2000 WL 1341448 at *3, 5 (S.D.N.Y. Sept. 15, 2000) ("While [plaintiff] did present ample evidence that his supervisors were constantly reprimanding him and documenting his poor work performance, this evidence, absent a showing of discriminatory animus, [*44] does not support a hostile work environment claim. Moreover, even assuming arguendo that [plaintiff] could demonstrate that the write ups and verbal reprimands were motivated by . . . discrimination, it finds that a reasonable jury could have concluded that they were not severe or pervasive enough to support a hostile work environment claim."). [21]

21    Kennebrew's case is distinguishable from cases in which "unjustified criticism" was severe and persistent enough to defeat an employer's summary judgment motion in a Title VII context. *See, e.g., Fitzgerald v. Henderson*, 251 F.3d 345, 363 (2d Cir. 2001)(plaintiff was subject to an "'ongoing,' 'repeated' and 'continuing' . . . 'day to day,'" "constant stream of unjustified criticisms of her work," becoming increasingly abusive over a two-year period of time, and supervisor "unjustifiably berated her about her hours and productivity . . . attempted to force her to work overtime . . . criticized her when she worked scheduled overtime . . . [and] treated her more harshly than male employees and than two female employees with whom he had had or was having a sexual relationship"), *cert. denied*, 153 L. Ed. 2d 776, 122 S. Ct. 2586, 70 U.S.L.W. 3774 (U.S. 2002); *Poppo v. Aon Risk Serv. Co.*, 2001 U.S. Dist. LEXIS 4801, 00 Civ. 4165, 2001 WL 392543 at *1-2 (S.D.N.Y. Apr. 17, 2001) (employer denied summary judgment where plaintiff alleged that her boss "became increasingly verbally abusive and insulting to her and made derogatory comments about her pregnancy, some of which were [tape] recorded."); *Cahill v. Northeast Sav., F.A.*, 1993 U.S. Dist. LEXIS 11650, No. 91- CV-1278, 1993 WL 313633 at *1, 3, 8-9 (N.D.N.Y. Aug. 16, 1993) (employer's summary judgment motion denied where plaintiff testified that her boss "'adopted a cold and impersonal attitude' toward her, and would occasionally swear and shout directly at her and embarrass her in front of her colleagues" and "would scream at her and, later, refuse to speak with her unless she had an appointment", in total contrast to the "excellent" and "positive" evaluations her boss had given her throughout her fourteen years working for defendant before announcing she was pregnant).

[*45]   In addition to referring to her evaluations, Kennebrew testified at her deposition, in vague terms, that she was subjected to "picking and taunting":

Q: You said a lot of picking and taunting. What did that consist of?

A: First of all, Shirley [Fonseca] used to throw stuff. She wouldn't sign none of my leave of absence. We had one situation where she told me she wasn't gonna sign it. I was sent downstairs for her to sign it by [Pitruzzella]. She sent me back up, said she wasn't going to sign it. Had to be back up back down and back up, and then finally I think he signed it.

Q: He being?

A: Mr. Pitruzzella. What date it was I don't remember, but it did occur.

Q: This was one leave of absence request, more than one, two, three?

A: This was one particular incident. After that I think I was sent to her only one time after that for her to have to sign, and . . . again, she didn't sign it. I had to go back to him, and then I dealt with him the rest of the time. And most times I still wouldn't receive a signature. Now, I know you have some with signatures on it, but if you look at my time sheet, you would know that it was a lot more that wasn't signed. [*46]

Q: That's what you mean by the picking and taunting?

A: Okay, well, that was part of picking and taunting. Like I said, rolling of the, of the eyes, slamming stuff, couldn't --just very uncomfortable with going to ask any questions in relation to work because of the feedback that I would receive.

Q: And what feedback is that?

A: Most of the time I was answered nasty. I just told you, rolling eyes, slamming stuff. Just real uncomfortable situation.

Q: Anything else?

A: Well, a lot of the -- a lot of -- some of the uncomfortable situations would be dialogue that they had amongst

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 13 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

themselves Everybody knew what was going on with you before you knew what was going on with you.

Q: What do you mean?

A: If you was going to be written up or whatever was going on with your situation, everybody knew about it before you.

Q: Anything else regarding picking and taunting or uncomfortable situations that you've described before?

A: Not that I can think of right now.

(Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. I: Kennebrew Dep. at 43-45.) Kennebrew also alleges that Fonseca made two discriminatory comments about Kennebrew's frequent absences [*47] during her pregnancy. (*See* page 3 above.)

To determine whether an environment is sufficiently hostile or abusive, the Supreme Court has instructed courts to "look[] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998). "'Simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.*; *see also, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001); *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *12-13. Title VII is not a "general civility code" and if properly applied, these standards should "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language . . . and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. at 788, 118 S. Ct. at 2283-84; [*48] *see also, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d at 75 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 1003, 140 L. Ed. 2d 201 (1998)); *Dayes v. Pace Univ.*, 2 Fed. Appx. 204, 2001 U.S. App. LEXIS 1693, 2001 WL 99831 at *1 (defendant's "comments and behavior, although boorish and inappropriate, simply do not rise to the level of behavior necessary for a jury reasonably to conclude that they were sufficiently severe or pervasive to alter the condition of plaintiff's employment").

Kennebrew's vague allegations of "picking and taunting," being "answered nasty" with "eye rolling" in an "uncomfortable" environment, simply are not suffi-

ciently severe or pervasive to create a hostile work environment under Title VII. (*See* cases cited above.) "While Plaintiff's allegations may well establish that her supervisors were rude, 'Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place.'" *Delgado v. Puerto Rican Family Inst., Inc.*, 2001 U.S. Dist. LEXIS 12699, 2001 WL 964000 at *6 (S.D.N.Y. Aug. 23, 2001).

The Housing Authority's summary judgment motion should be granted with respect to Kennebrew's Title [*49] VII hostile work environment discrimination claim.

### 2. Disparate Treatment on the Basis of Pregnancy

#### a. Prima Facie Case of Pregnancy Discrimination

"'A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee.' Alternatively, a plaintiff may establish the fourth element of a prima facie case by demonstrating that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 401 (2d Cir. 1998) (citations omitted, quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995)); *accord, e.g., Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 430 (S.D.N.Y. 2000); *Klausner v. Industrial Risk Insurers, Inc.*, 1999 U.S. Dist. LEXIS 10219, 98 Civ. 1267, 1999 WL 476285 at *4 (S.D.N.Y. July 8, 1999). [22]

> 22   The prima facie case for disparate treatment for discrimination on bases other than pregnancy under Title VII is substantially similar, in that "a plaintiff must show that: (1)he is a member of a protected class; (2) he satisfactorily performed the duties of his position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class." *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *16 & n.23 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.) (& cases cited therein).

[*50]   "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997); *accord, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47, 125 L. Ed. 2d 407 (1993); *Williams v. NYC Dep't of Sanitation*, 2001

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 14 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *16 & n.24 (& cases cited therein).

Kennebrew clearly satisfies the first, third and fourth prongs of her prima facie case because it is undisputed that she was pregnant, was fired, and was eventually replaced by a non-pregnant woman. As to the second prong of her prima facie case of pregnancy discrimination, looking at the evidence in the light most favorable to Kennebrew, and considering the "minimal" burden to establish a prima facie case, the Court will continue to the second step of the *McDonnell Douglas* burden shifting analysis.

**b. The Housing Authority's Legitimate Non-Discriminatory Reason for Kennebrew's Termination**

Because Kennebrew has met her minimal burden for establishing a prima facie case, the burden shifts to the Housing Authority to articulate a legitimate, non-discriminatory [*51] reason for Kennebrew's termination. (*See* cases cited at pages 21-22 above.) Of course, "this Court may not second-guess an employer's non-discriminatory business decisions, regardless of their wisdom." *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *18 & n.29 (SD.N.Y. Sept. 28, 2001) (Peck, M.J.) (& cases cited therein).

The Housing Authority offers Kennebrew's alleged poor work performance, including her unsatisfactory Quarterly Evaluation Reports and four counseling memos, as a legitimate non-discriminatory justification for Kennebrew's termination. Poor work performance is a legitimate non-discriminatory reason for termination. *Eg., Gregory v. Daly*, 243 F.3d 687, 696-97 & n.7 (2d Cir. 2001) ("An employer's dissatisfaction with even a qualified employee's performance may, of course, ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action. . . . Of course, there will also be circumstances in which a plaintiff's performance is so manifestly poor as to render her unqualified for continued employment and thereby defeat her prima facie case."); *Torbert v. Sony Elecs., Inc.*, 199 F.3d 1323 (table), 1999 WL 759024 [*52] at *1-2 (2d Cir. 1999) (affirming summary judgment for employer because "numerous documents from plaintiff's personnel file indicated that [her] performance on the job was unsatisfactory and that it was her continued poor work performance that was the reason that she was terminated."); *McLee v. Chrysler Corp.*, 109 F.3d 130, 135-37 (2d Cir. 1997) (given undisputably poor performance "no rational trier of fact could infer a discriminatory motivation from this sequence."); *Clarke v. One Source Facility Servs., Inc.*, 168 F. Supp. 2d 91, 97 (S.D.N.Y. 2001) (defendant met burden of production of showing legitimate non-discriminatory reason for plaintiff's termination by offer-

ing evidence that plaintiff had "poor work performance supported by evidence of negative performance evaluations by various supervisors and complaints from clients"); *Dais v. Lane Bryant, Inc.*, 168 F. Supp. 2d 62, 72 (S.D.N.Y. 2001) (defendant met burden of proffering a legitimate non-discriminatory reason for plaintiff's termination by contending that he had "poor managerial skills" that were "well documented in plaintiff's performance evaluation" and other [*53] written notes and complaints).

Thus, the Housing Authority's articulated reasons for Kennebrew's termination are sufficient to meet its burden of production at the second *McDonnell Douglas* step.

**c. Pretext for Pregnancy Discrimination**

Once the defendant carries its burden of production by articulating legitimate, non-discriminatory reasons for its actions, as the Housing Authority has done here, "the plaintiff then has 'the full and fair opportunity to demonstrate,' . . . 'that the proffered reason was not the true reason for the employment decision,'" but was in fact a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks* 509 U.S. 502, 507-08, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993)(citation omitted). [23] "The plaintiff, in order to defeat summary judgment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by . . . discrimination." *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied*, 119 S. Ct. 349 (1998). [24] "In short, the question becomes whether the evidence, taken as a whole, supports [*54] a sufficient rational inference of discrimination. To get to the jury, 'it is not enough . . . to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted, alterations in original). [25] In order to demonstrate a pretext, Kennebrew may rely, as she is entitled to do, on the same evidence used to support her prima facie case. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 402 (2d Cir. 1998) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d at 1225).

> 23  *Accord, e.g., Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *18 (S.D.N.Y. Sept. 28, 2001)(Peck, M.J.); *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *16 (S.D.N.Y. May 9, 2001) (Peck, M.J.); *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, 99 Civ. 12117, 2000 WL 1844773 at *26 (S.D.N.Y. Dec. 18, 2000)(Peck, M.J.); *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *12 (S.D.N.Y. Dec. 6,

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 15 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

2000)(Peck, M.J.), *aff'd*, 23 Fed. Appx. 82, 2002 WL 4594 at *1 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 95 Civ. 3731, 2000 WL 1752966 at *12 (S.D.N.Y. Nov. 29, 2000)(Peck, M.J.), *aff'd*, 22 Fed. Appx. 76, 2001 U.S. App. LEXIS 26165, 2001 WL 1562070 at *1 (2d Cir. 2001); *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 358 (S.D.N.Y. 1999) (Wood, D.J & Peck, M.J.); *Scaria v. Rubin*, 1996 U.S. Dist. LEXIS 9659, 94 Civ. 3333, 1996 WL 389250 at *9 (S.D.N.Y. July 11, 1996) (Peck, M.J.), *aff'd*, 117 F.3d 652, 653-54 (2d Cir. 1997).

[*55]

   24   *Accord, e.g., Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 54 (2d Cir. 1998); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.), *cert. denied*, 525 U.S. 1001, 119 S. Ct. 511, 142 L. Ed. 2d 424 (1998); *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *18; *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *16; *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 2000 WL 1752966 at *12; *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, 2000 WL 1844773 at *13; *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 2000 WL 1782744 at *8; *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d at 358; *see, e.g., St. Mary's v. Hicks*, 509 U.S. at 515, 113 S. Ct. at 2752 (a proffered "reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason"); *Scaria v. Rubin*, 117 F.3d at 654; *Fisher v. Vassar College*, 114 F.3d 1332, 1339 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1225 (2d Cir.1994); *see also* cases cited at pages 18-19 above.

[*56]

   25   *Accord, e.g., Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *18; *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 2000 WL 1752966 at *12.

Here, Kennebrew alleges three factors that she asserts suggest discriminatory intent: (1) she was treated differently than a similarly situated employee; (2) Fonseca made pregnancy-based comments; and (3) her unsatisfactory performance evaluations were unwarranted and were made only after she disclosed her pregnancy.

Kennebrew's assertion that she was treated differently than another similarly situated employee is based on her conclusory assertion that both she and Dekeyia Ward, another female probationary employee, were issued counseling memos for lateness, but that the memo given to Ward, who was not pregnant, was rescinded while Kennebrew's was not. (*See* page 3 above.) The Housing Authority has submitted two affidavits that clearly show that Ward's counseling memo was *not* rescinded, she was issued a second counseling memo (which refers to the first counseling memo), and her personnel file contained both counseling [*57] memos with no indication that either had been rescinded. (*See* pages 3-4 above.) This does not create a fact issue, however, because Kennebrew never stated the basis for her conclusory allegation and it does not appear that she has any personal knowledge about Ward's counseling memos. "Conclusory allegations made by the Plaintiff of (alleged) discriminatory conduct are insufficient to avoid summary judgment." *Cardozo v. Healthfirst*, 1999 U.S. Dist. LEXIS 15364, 98 Civ. 3050, 1999 WL 782546 at *8 (2d Cir. Mar. 29, 1999). [26]

   26   *Accord, e.g., Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *18; *see also, e.g., Budde v. H&K Distrib. Co.*, 216 F.3d 1071 (table), 2000 U.S. App. LEXIS 20561, 2000 WL 900204 at *1 (2d Cir. 2000); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.) ("Conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e). . . . To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases. Given the ease with which these suits may be brought and the energy and expense required to defend such actions, we believe the trial judge properly granted summary judgment."), *cert. denied*, 474 U.S. 829, 106 S. Ct. 91, 88 L. Ed. 2d 74, (1985); *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *16; *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 2000 WL 1752966 at *13; *Faldetta v. Lockheed Martin Corp.*, 2000 U.S. Dist. LEXIS 16216, 98 Civ. 2614, 2000 WL 1682759 at *11 (S.D.N.Y. Nov. 9, 2000); *Alston v. New York City Transit Auth.*, 1999 U.S. Dist. LEXIS 11376, 97 Civ. 1080, 1999 WL 540442 at *7 (S.D.N.Y. July 26, 1999) ("'The most probative means of proving pretextual discharge is to demonstrate that similarly situated . . . employees were treated differently' . . . . [but] mere conclusory allegations of discrimination are insufficient to meet this burden."), *aff'd*

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 16 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

*mem.*, 208 F.3d 202 (2d Cir. 2000); *Adeniji v. Administration for Children Servs*, 43 F. Supp. 2d at 423 (citing cases).

[*58] Kennebrew next relies on Fonseca's pregnancy-based discriminatory comments. (*See* page 3 above.) There is no evidence in the record, however, that Fonseca was involved in the recommendation or decision to terminate Kennebrew. (*See* pages 9-10 above.) "It is well settled that statements made by an individual who did not make the adverse employment decision at issue will not support a claim of discrimination. . . . Proof of pretext cannot rest on 'statements by nondecision-makers or statements by decisionmakers unrelated to the decisional process itself.'" *Smith v. Revival Home Health Care*, 2000 U.S. Dist. LEXIS 4105, No. 97 CV 4415, 2000 WL 335747 at *4 (E.D.N.Y. March 28, 2000) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S. Ct. 1775, 1805, 104 L. Ed. 2d 268 (1989); *see also, e.g., Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1102 (S.D.N.Y. 1997) (statements by supervisors not involved in the discharge cannot be the basis of a discrimination termination claim). However, "although it is true that discriminatory comments made by non-decision makers are generally not relevant in a discrimination case brought under a wrongful termination [*59] theory, the Second Circuit has found such comments relevant in certain factual contexts." *Dais v. Lane Bryant, Inc.*, 2001 U.S. Dist. LEXIS 17210, 97 Civ. 2011, 2001 WL 1285329 at *3 (S.D.N.Y. Oct. 22, 2001) (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55-56 (2d Cir. 1998) (comments made by non-decisionmaker constituted evidence of discrimination because a jury might determine the comments reflected a company policy of discrimination)); *see also, e.g., Rosen v. Thornburgh*, 928 F.2d 528, 534 (2d Cir. 1991)(concluding that finder of fact could determine that the plaintiff was wrongfully terminated due to religious bias, despite employer's claim that ultimate decisionmaker was unaware of plaintiff's religion, where other employees may have in formed the decisionmaker). Thus, while "offensive remarks in the workplace are insufficient by themselves to prove discrimination, if there is a nexus between the remarks and plaintiff's termination, there may be sufficient evidence of pretext to survive a motion for summary judgment. . . . Where offensive remarks [about pregnancy] are combined with other evidence of discriminatory intent, courts are reluctant to grant [*60] summary judgment for the defendant." *Koppenal v. Nepera, Inc.*, 74 F. Supp. 2d 409, 413-14 (S.D.N.Y. 1999) (citing *inter alia, Kerzer v. Kingly Mfg.*, 156 F.3d 396, 399 (2d Cir. 1998)).

The Court therefore considers Fonseca's alleged pregnancy-based comments along with the timing of the negative evaluations of Kennebrew and her termination.

Kennebrew alleges that the unwarranted criticism of her work performance she received after announcing that she was pregnant suggest a discriminatory pretext. (*See* pages 5-9 above.) Kennebrew's disagreements with her supervisor's perceptions of her work performance, alone, are not enough to show that the Housing Authority's proffered reason for terminating her was a pretext for discrimination. *Cruse v. G & J Publ'g*, 96 F. Supp. 2d 320, 330 (S.D.N.Y. 2000) (citing *Reilly v. Metro-North Commuter R.R*, 1996 U.S. Dist. LEXIS 17061, 93 Civ. 7317, 1996 WL 665620 at *9 (S.D.N.Y. Nov. 15, 1996)("An employee's opinion that a performance review was unfair, supported only be her own conclusory statements to that effect, cannot bootstrap her claims into a Title VII claim of discrimination.")).

Kennebrew, however, has [*61] shown that she did not receive any criticism of her work, counseling memos, or unsatisfactory performance evaluations in the ten months she worked for the Housing Authority prior to announcing that she was pregnant; in the one month after announcing that she was pregnant, she received three counseling memos and two unsatisfactory performance evaluations. (*See* page 5 above.) This raises a temporal causation issue. While timing may be sufficient to establish an inference of discrimination, *e.g., Timbol v. Commercial Bank of Kuwait*, 2000 U.S. Dist. LEXIS 2927, 99 Civ. 1891, 2000 WL 282886 at *7 (S.D.N.Y. Mar. 15, 2000) (timing of termination occurring two weeks after providing mental health diagnosis to employer is sufficient to raise an inference of discrimination based on disability); *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) ("timing or sequence of events leading to the plaintiff's termination" is a circumstance that may give rise to an inference of discriminatory motive), the close proximity of a termination to the plaintiff's announcement of her pregnancy alone is insufficient to demonstrate a pretext. *Aviles v. Chase Manhattan Bank*, [*62] 1997 U.S. Dist. LEXIS 16246, 94 Civ. 8544, 1998.

The Second Circuit has "held that the Supreme Court's decision in *Reeves* clearly mandates a case-by-case approach, with a [district] court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000); *see* cases cited at pages 25-26 above. Here, looking at the evidence as a whole, including the remarks allegedly made by Fonseca when combined with the timing of the Housing Authority's criticism of Kennebrew's work performance and ultimate termination after she disclosed her pregnancy -- Kenne-

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

brew has established that a material issue of fact exists as to whether the Housing Authority's proffered reason for terminating Kennebrew was a pretext for discrimination. It is fair to say that Kennebrew has barely survived summary judgment on this issue, and that the Court is not deciding whether Kennebrew will prevail [*63] at trial. "In light of the Second Circuit's indications that 'a trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue,'" *Koppenal v. Nepera, Inc.*, 74 F. Supp. 2d at 414 (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)), the Housing Authority's summary judgment motion on Kennebrew's pregnancy discrimination wrongful termination claim should be denied.

### III. THE HOUSING AUTHORITY'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED AS TO KENNEBREW'S TITLE VII RETALIATION CLAIM

Kennebrew also asserts a claim for retaliation. (Dkt. No. 7: Am. Compl. P 4.) Title VII retaliation claims also are governed by the *McDonnell Douglas* burden-shifting analysis. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79-81 (2d Cir. 2001); *Slattery v. Swiss Reins. America Corp.*, 248 F.3d 87, 94 (2d Cir.), *cert. denied*, 122 S. Ct. 348, 151 L. Ed. 2d 263 (2001); *Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001); *Sotolongo v. New York City T.A.*, 216 F.3d 1073 (table), 2000 WL 777958 [*64] at *2-3 (2d Cir. 2000); *Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *19-20 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.). [27]

> 27   *See also, e.g., Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *18 (S.D.N.Y. May 9, 2000) (Peck, M.J.); *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, 99 Civ. 12117, 2000 WL 1844773 at *25 (S.D.N.Y. Dec. 18, 2000) (Peck, M.J.); *Adeniji v. Administration for Children Servs*, 43 F. Supp. 2d 407, 428 (S.D.N.Y.) (Wood, D.J. & Peck, M.J.), *aff'd*, 201 F.3d 430 (table), 1999 WL 1070027 (2d Cir. 1999).

Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, [*65] proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). [28]

28   *See also, e.g., Minott v. Port Authority*, 116 F. Supp. 2d 513, 520, 524 (S.D.N.Y. 2000) ("Title VII defines protected activities as (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding."); *see also Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("The objective of [the section prohibiting retaliation] is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.").

"In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence (i) participation in a protected activity known to the defendant; (ii) an employment action disadvantaging the plaintiff; and (iii) a causal connection between the [*66] protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995). [29]

> 29   *Accord, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d at 79; *Slattery v. Swiss Reins. America Corp.*, 248 F.3d at 94; *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir.1998); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993), *cert. denied*, 522 U.S. 1004, 118 S. Ct. 578, 139 L. Ed. 2d 417 (1997); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 64 (2d Cir.1992); *see also, e.g., Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *18; *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *16 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.) (& cases cited therein), *aff'd*, 23 Fed. Appx. 82, 2002 WL 4594 at *1 (2d Cir. 2001); *Adeniji v. Administration for Children Servs*, 43 F. Supp. 2d at 419.

[*67]   Here, Kennebrew's EEOC Charge of Discrimination is, of course, a "protected activity." However, Kennebrew did not file her EEOC charge until July 17, 2000, some five months after she was fired. (Dkt. No. 23: Housing Auth. 56.1 Stmt. PP 14, 20; Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. E 2/16/00 Termination Letter, & Ex. F: 7/17/00 Kennebrew EEOC Charge of Discrimination.) Thus, her firing cannot be in retaliation for an EEOC complaint that had not yet been made. *E.g., Adeniji v. Administration for Children Servs*, 43 F. Supp. 2d at 428-29 (citing cases); *Taylor v. Polygram Records*, 1999 U.S. Dist. LEXIS 2583, 94 Civ. 7689, 1999 WL

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 18 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

124456 at *21 (S.D.N.Y. Mar. 8, 1999) (because plaintiffs "position was already demonstrably at risk *before* she hired [an attorney] or filed the [EEOC] charge, Plaintiff cannot show on the basis of temporal proximity alone that her termination resulted from that conduct."); *DuBois v. State of New York*, 966 F. Supp. 144, 148 (N.D.N.Y. 1997) ("The alleged [retaliation] necessarily preceded plaintiff's March 12, 1996 EEOC complaint since defendant terminated her on July 22, 1995. Thus, ostensibly there can be no factual connection [*68] between these two events."); *Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 943 (S.D.N.Y. 1996) (Parker, D.J.) ("Here, the majority of the discriminatory acts which Doria alleges were taken in response to her EEO complaint took place *prior* to [the filing of her EEO complaint], and therefore could not have been retaliatory."); *see also McLee v. Chrysler Corp.*, 109 F.3d 130, 136 (2d Cir. 1997) ("Since by [plaintiff's] own testimony [his employer] was preparing to discharge [plaintiff] before [he] contacted any of the civil rights offices, it is not a permissible inference that [plaintiff] was discharged because he contacted those offices.").

Indeed, Kennebrew conceded at her deposition that her "retaliation" claim was that the Housing Authority retaliated against her for being pregnant. (Neiderhoffer 1/10/02 Aff. Ex. I: Kennebrew Dep. at 39-40.) Pregnancy itself, as opposed to complaints to the employer or EEOC about the employer's practices, is not a "protected activity" that may serve as a basis for a retaliation claim. *Eg.*, *Bottge v. Suburban Propane*, 77 F. Supp. 2d 310, 313 (N.D.N.Y. 1999) ("Protected [*69] activity involves some form of objection, however informal] to discriminatory employment practices); *Speer v. Rand McNally & Co.*, 1996 U.S. Dist. LEXIS 17071, No. 95 C 6289, 1996 WL 667810 at *8 n.3 & 4 (N.D. Ill Nov. 15, 1996) ("There cannot be, any legally distinct [from discrimination] cause of action for retaliation based on pregnancy, which is a characteristic or condition, not a 'protected activity' as that term is used in the context of retaliation claims."), *aff'd*, 123 F.3d 658 (7th Cir. 1999).

The Court should grant the Housing Authority summary judgment on Kennebrew's retaliation claim.

## IV. THE HOUSING AUTHORITY'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED AS TO KENNEBREW'S ADA CLAIM

The Americans with Disabilities Act prohibits discrimination by covered employers "against a qualified individual with a disability." 42 U.S.C. § 12112(a). "To establish a prima facie case of discrimination under the ADA, plaintiff must show by a preponderance of the evidence that (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions [*70] of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). [30]

30 *Accord, e.g.*, *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001); *Reeves v. Johnson Controls World Servs, Inc.*, 140 F.3d 144, 149-50 (2d Cir. 1998); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998); *Johns-Davila v. City of New York*, 2000 U.S. Dist. LEXIS 17012, 99 Civ. 1885, 2000 WL 1725418 at *5 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.); *Pace v. Paris Maintenance Co.*, 107 F. Supp. 2d 251, 259 (S.D.N.Y. 2000), *aff'd*, 7 Fed. Appx. 94, 2001 U.S. App. LEXIS 5646, 2001 WL 327102 (2d Cir. 2001); *Williams v. Salvation Army*, 108 F. Supp. 2d 303, 311 (S.D.N.Y. 2000); *Shields v. Robinson-Van Vuren Assoc., Inc.*, 2000 U.S. Dist. LEXIS 6234, 98 Civ. 8785, 2000 WL 565191 at *3 (S.D.N.Y. May 8, 2000); *McLean-Nur v. Department of Transport.*, 2000 U.S. Dist. LEXIS 3495, 98 Civ. 819, 2000 WL 297176 at *5 (S.D.N.Y. Mar. 21, 2000).

As the Second Circuit has made clear, ADA claims, like Title VII claims, are analyzed using the *McDonnell Douglas* burden shifting analysis:

In analyzing a discriminatory discharge claim under the ADA, we apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under *McDonnell Douglas*, plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. Plaintiff then must show that the proffered reason was merely a pretext for discrimination, which "may be demonstrated either by the presen-

Case 1:07-cv-05471-BSJ-KNF    Document 7-13    Filed 07/03/2007    Page 19 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

tation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."

*Heyman v. Queens Village*, 198 F.3d at 72 (citations omitted).

[*71] The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see, e.g., Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 478, 119 S. Ct. 2139, 2144, 144 L. Ed. 2d 450 (1999). [31]

31 *See also, e.g., Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563, 119 S. Ct. 2162, 2167, 144 L. Ed. 2d 518 (1999); *Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir. 2000); *Heyman v. Queens Village*, 198 F.3d at 72; *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998), *cert. denied*, 526 U.S. 1018, 119 S. Ct. 1253, 143 L. Ed. 2d 350 (1999); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d at 150; *Ryan v. Grae & Rybicki*, 135 F.3d at 870; *Johns-Davila v. City of New York*, 2000 U.S. Dist. LEXIS 17012, 2000 WL 1725418 at *5; *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 390-91 (S.D.N.Y. 1998)(Stein, D.J. & Peck, M.J.); *Johnson v. St. Clare's Hosp. & Health Ctr.*, 1997 U.S. Dist. LEXIS 22492, 96 Civ. 1405, 1998 WL 236235 at *7 (S.D.N.Y. May 13, 1998) (Mukasey, D.J. & Peck, M.J.), *aff'd*, 175 F.3d 1008 (table), 1999 WL 97232 (2d Cir. 1999).

[*72] In her deposition, Kennebrew clarified that the disability she claims is her pregnancy. (Dkt. No. 24: Neiderhoffer 1/10/02 Aff. Ex. I: Kennebrew Dep. at 34-35, 45.) "EEOC regulations, which are entitled to substantial deference in construing the ADA, explicitly exclude 'conditions, such as pregnancy, that are not the result of a physiological disorder.'" *Martinez v. N.B.C. Inc.*, 49 F. Supp. 2d 305, 308-09 (S.D.N.Y. 1999) (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(h), at 347). "Every court to consider the question of whether a pregnancy in and of itself is a 'disability' within the meaning of the ADA has concluded that it is not." *Minott v. The Port Authority of New York & New Jersey*, 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000) (*citing Conley v. United Parcel Serv.*, 88 F. Supp. 2d 16, 19 (E.D.N.Y. 2000), & *Martinez v. N.B.C. Inc.*, 49 F. Supp. 2d at 308-09); *Leh-*

*muller v. Incorporated Village of Sag Harbor*, 944 F. Supp. 1087, 1093-94 (E.D.N.Y. 1996); *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 627 (S.D.N.Y. 1996) (Parker, D.J.). [32] Since Title VII, as amended by the Pregnancy Discrimination [*73] Act, 42 U.S.C. § 2000e(k), forbids discrimination on the basis of pregnancy, it would be redundant to interpret the ADA as covering mere pregnancy as well. *See, e.g., LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213, 228 n.17 (noting that pregnancy based discrimination, "while beyond the purview of the ADA, may nevertheless violate Title VII and the Pregnancy Discrimination Act.") (citing cases).

32 In addition, "pregnancy-related complications usually will not qualify a woman for ADA protection." *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213, 228 (S.D.N.Y. 1997); *accord, e.g., Conley v. United Parcel Serv.*, 88 F. Supp. 2d at 19. "Only in extremely rare cases" will courts find that pregnancy related conditions qualify as a disability under the ADA. *Conley v. United Parcel Serv.*, 88 F. Supp. 2d at 19-20 (citing cases). In order to qualify as a disability, the complication "as distinguished from the condition of pregnancy itself," must be "substantial enough to qualify as a 'disability,' regardless of the fact that the woman is pregnant." *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. at 227. "Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. Pt. 1630, App. § 1630.2(j) at 353 (2001). Even if the Court were to consider Kennebrew's gestational diabetes, she has not presented any evidence that it was other than a short-term condition or that it was substantial enough to constitute a disability for ADA purposes.

[*74] The Housing Authority's summary judgment motion should be granted on Kennebrew's ADA claim. [33]

33 While the State and City Human Rights Laws definition of "disability" is broader than under the ADA, cases interpreting them also hold that mere pregnancy is not a disability. *See, e.g., Wunning v. Johnson*, 114 A.D.2d 269, 272, 499 N.Y.S.2d 272, 273 (3d Dep't) (pregnancy without complications is not a disability under State law), *appeal denied*, 68 N.Y.2d 601, 505 N.Y.S.2d 1025 (1986); *Card v. Sielaff*, 154 Misc. 2d 239, 245, 586 N.Y.S.2d 191, 196 (Sup. Ct. N.Y. Co. 1992) ("The status of being pregnant does not qualify as a disability per se" under the NYSHRL).

Case 1:07-cv-05471-BSJ-KNF     Document 7-13     Filed 07/03/2007     Page 20 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

*V. THE HOUSING AUTHORITY'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED AS TO KENNEBREW'S FMLA CLAIM*

The Family and Medical Leave Act ("FMLA") entitles an eligible employee "to a total of 12 workweeks of leave during any 12-month period . . . because of the birth of a son or daughter of the [*75] employee and in order to care for such son or daughter . . . ." 29 U.S.C. § 2612(a)(1)(A). The FMLA prohibits employers from denying or interfering with an employee's rights provided under the Act and from discharging or discriminating against an employee who exercises these rights. 29 U.S.C. § 2615;[34] *see also, e.g., Hale v. Mann*, 219 F.3d 61, 68 (2d Cir. 2000); *Mann v. Mass. Correa Elec., J.V.*, 2002 U.S. Dist. LEXIS 949, 00 Civ. 3559, 2002 WL 88915 at *5 (S.D.N.Y. Jan. 23, 2002); *Miller v. Venator Group, Inc.*, 2000 U.S. Dist. LEXIS 6892, 00 Civ. 0454, 2000 WL 648186 at *1 (S.D.N.Y. May 18, 2000); *Santos v. Knitgoods Workers' Union, Local 155*, 1999 U.S. Dist. LEXIS 9036, 99 Civ. 1499, 1999 WL 397500 at *3 (S.D.N.Y. June 15, 1999).

> 34   Section 2615 states, in relevant part:
>
> > (1) Exercise of rights
> >
> > It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> >
> > (2) Discrimination
> >
> > It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
>
> 29 U.S.C. § 2615(a).

[*76]   To make out a prima facie case for a denial of benefits claim, Kennebrew must show: "(1) that she is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." *Santos v. Knitgoods Workers' Union*, 1999 U.S. Dist. LEXIS 9036, 1999 WL 397500 at *3; *see also, e.g., Bond v. Sterling, Inc.*, 77 F. Supp. 2d 300, 306 (N.D.N.Y. 1999); *Vicioso v. Pisa Bros., Inc.*, 1998 U.S. Dist. LEXIS 9729, 98 Civ. 2027,

1998 WL 355415 at *2 (S.D.N.Y. July 1, 1998); *Spurlock v. NYNEX*, 949 F. Supp. 1022, 1033 (W.D.N.Y. 1996); *see generally Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160-62 (2d Cir. 1999); *Miller v. Venator Group, Inc.*, 2000 U.S. Dist. LEXIS 6892, 00 Civ. 0454, 2000 WL 648186 at *1-3 (S.D.N.Y. May 18, 2000).

No FMLA violation occurs where an employer has already decided to terminate the employee before the employee requests FMLA leave. *See, e.g., Carrillo v. National Council of the Churches of Christ*, 976 F. Supp. 254, 256 (S.D.N.Y. 1997) [*77] (no FMLA violation where the employer had "announced its determination to terminate plaintiff before he went on medical leave but deferred doing so only to provide an opportunity for the parties to try to negotiate a resignation agreement"); *Beno v. United Tel. Co. of Fla.*, 969 F. Supp. 723, 726 (M.D. Fla. 1997) ("Before [plaintiff] requested medical leave, her supervisors had already . . . recommended her termination. Thus, [plaintiff's] allegation of pretext -- that she was terminated because of her request for medical leave -- is undermined by the undisputed fact that [the employer's] steps toward termination were already underway before [plaintiff] requested leave," and thus, she did not establish a prima facie case for an FMLA violation); *Tuberville v. Personal Fin. Corp.*, 1996 U.S. Dist. LEXIS 16775, No. 3:95 CV150, 1996 WL 407571 at *3 (N.D. Miss. June 5, 1996) ("In a case such as this, with a well-documented history of unsatisfactory performance, and where the wheels of termination were put in motion before the request for leave," the FMLA provision requiring employer to restore employee to prior job does not apply); *Patterson v. Alltel Info. Serv., Inc.*, 919 F. Supp. 500, 505 & n.9 (D. Me. 1996) [*78] (where employer had decided to replace plaintiff three weeks before he requested leave, "the fact that [the employer] *implemented* that decision during [the employee's] leave is irrelevant to his rights under the FMLA; only the timing of the *final decision* to replace him is relevant.") (emphasis in original).

Here, it is undisputed that when Kennebrew requested her leave of absence on February 9, 2000, the decision to terminate Kennebrew had already been made on February 7, 2000 by Peterson and Torresin response to Pitruzzella's February 1, 2000 memo requesting her termination because of her poor work performance. (*See* page 10 above.) Kennebrew thus was not entitled to FMLA leave because the "wheels of termination" had already been put into motion before she requested leave. It is irrelevant that she was not told of that decision until after she requested leave, or that she did not receive the official termination letter until February 16, 2000, because even though her termination had not been implemented, it is undisputed that the final decision to termi-

Case 1:07-cv-05471-BSJ-KNF   Document 7-13   Filed 07/03/2007   Page 21 of 39

2002 U.S. Dist. LEXIS 3038, *; 8 Wage & Hour Cas. 2d (BNA) 348

nate her employment was made before she requested leave.

The Court should grant the Housing Authority summary judgment [*79] on Kennebrew's FMLA claim.

## CONCLUSON

35

35   The Court expresses its thanks to intern Jamie Quigley from Northeastern University School of Law for her assistance in the preparation of this Report & Recommendation.

For the reasons set forth above, the Court should grant defendant Housing Authority's summary judgment motion on all claims, except deny it as to Kennebrew's Title VII and related NYSHRL and NYCHRL claims of pregnancy-related discriminatory termination.

The parties are to file their Proposed Pretrial Order, in conformance with the Federal Rules of Civil Procedure and Judge Rakoff's individual Rules, by March 25, 2002. Defense counsel is responsible for coordinating submission of the Pretrial Order.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. [*80] R Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993), *cert. denied*, 513 U.S. 822, 115 S. Ct. 86, 130 L. Ed. 2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S. Ct. 825, 121 L. Ed. 2d 696 (1992); *Small v. Secretary of Health& Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57-59 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636 [*81] (b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: New York, New York

February 26, 2002

Respectfully submitted,

**Andrew J. Peck**

United States Magistrate Judge

LEXSEE 1988 U.S. DIST. LEXIS 79


Caution
As of: Jul 02, 2007

**Kenneth Ledford, Plaintiff, v. Rapid-American Corporation and Schenley Industries, Inc., Defendants**

**No. 86 Civ. 9116 (JFK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1988 U.S. Dist. LEXIS 79; 47 Fair Empl. Prac. Cas. (BNA) 312*

**January 8, 1988, Decided and Filed**

**COUNSEL:** [*1] Edward T. Chase, Esq., for Plaintiff.

Rubin Baum Levin Constant & Friedman, Of Counsel: Jeffrey Mann, Esq., Leonard D. Steinman, Esq., for Defendants.

**OPINION BY:** KEENAN

**OPINION**

*OPINION and ORDER*

JOHN F. KEENAN, United States District Judge.

*Background*

This is an age discrimination case. Plaintiff Kenneth Ledford alleges in his Complaint that he was illegally terminated from his employment with Schenley Industries, Inc. ("Schenley") on the basis of his age, 52, when he was terminated. (Complaint, paras. 6, 9-11). At the time of his termination, Ledford held the title of Director General Accounting at Schenley. (Complaint, para. 6).

Defendants move (a) pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure* to strike paragraph 10 of the Complaint on the ground that the allegations therein concerning a prior finding of the New York State Division of Human Rights (the "Division") of probable cause to believe that age discrimination against plaintiff had occurred is irrelevant, immaterial and prejudicial to defendants, and pursuant to *Rule 12(b)(6)*, to dismiss the Complaint since it improperly relies on the immaterial

Division finding to state a cause of action; and (b) pursuant to *Rule 56*, [*2] granting summary judgment to Rapid-American Corporation ("Rapid"), on the ground that plaintiff cannot maintain an action for illegal termination of employment against Rapid since plaintiff was not an employee of Rapid and the only connection between Rapid and Schenley was that at the time of plaintiff's termination, Rapid was the parent corporation of defendant.

In February 1985, Ledford filed a complaint with the Division, charging that his employment had been terminated because of his age. A copy of Ledford's complaint was filed, on March 5, 1985, with the New York District Office of the Equal Employment Opportunity Commission.

Plaintiff has included in paragraph 10 of his Complaint allegations that the Division "conducted a full investigation into plaintiff's complaint" and that the Division found "there was probable cause to believe that the defendants had engaged in age discrimination against the plaintiff." (Complaint, para. 10). It is this allegation to which defendants object in the first prong of their motion.

Defendants further urge that because the Complaint also names Rapid as a defendant in this action, and since Rapid was only Schenley's parent corporation and was not [*3] plaintiff's employer, the Complaint should, as to Rapid, be dismissed as a matter of law under *Rule 56*.

*Discussion*

1988 U.S. Dist. LEXIS 79, *; 47 Fair Empl. Prac. Cas. (BNA) 312

A. *The Allegations of Paragragh 10 of the Complaint*

The Court is aware that *Rule 12(f)* motions are not favored. However, references in a complaint to proceedings which do not adjudicate underlying issues may be stricken, *see Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976)*. In *Lipsky*, the Second Circuit wrote that where there is no actual adjudication of issues in the other proceeding "it can not be used as evidence in subsequent litigation between that corporation and another party." *Id. at 893.*

Under the statutory format of New York's Human Rights Law (New York Executive Law Article 15), a determination by the Division of probable cause is an initial non-adjudicative step in the administrative process. No findings of fact are made until after the evidentiary hearing (*N.Y. Exec. Law § 297(4)(c)*). In the instant case, the proceedings before the Division did not progress beyond the preliminary investigative stage which led to the probable cause determination. Thus, *Lipsky* applies here.

In connection with this aspect of the motion, [*4] both sides rely on *Kremer v. Chemical Construction Corp., 456 U.S. 461 (1982)*. Plaintiff's reliance on *Kremer* is misplaced. The Supreme Court in footnote 7 of *Kremer* pointed out that it is not

plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review . . . .

*Id. at 470.*

The closest reported case to the instant one is *Mitchell v. Bendix Corp., 603 F. Supp. 920 (N.D. Ind. 1985)*. There, plaintiff brought an action for illegal termination of employment based on race. In the complaint, plaintiff referred to the results of a state administrative proceeding which found that plaintiff had been discharged "but not for proven just cause" within the meaning of the state statute in question. Defendant moved to strike the reference to the prior state administrative proceeding in the complaint. The court held that since the state's administrative findings had no preclusive effect, [*5] allegations in respect thereto were irrelevant to the action before the court and were thus stricken from the complaint pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure*. It is significant that plaintiff makes no effort to distinguish, criticize or analyze *Mitchell*. In fact,

plaintiff doesn't even mention it in his papers on this motion.

The cases which plaintiff cites in opposition to the effort to dismiss paragraph 10 are not on point. The references in many of those cases, *e.g., Chandler v. Roudebush, 425 U.S. 840, 863 n.39 (1976)*; *Theobald v. Botein, Hays, Sklar & Herzberg, 493 F. Supp. 1 (S.D.N.Y. 1979)*, are to *Rule 803(8)(c) of the Fed. R. Evid.* This Rule relates to hearsay exceptions and has nothing at all to do with *Rules 402* and *403* which are the governing evidentiary Rules, together with *Rule 12(f) of the Fed. R. Civ. P.*, the applicable pleading rule.

Other authorities to which plaintiff directs the Court, *Gillin v. Federal Paper Board Co., 479 F.2d 97 (2d Cir. 1973)*, and *Philbrook v. Ansonia Board of Education, 757 F.2d 476 (2d Cir. 1985)*, aff'd, 55 U.S.L.W. 4019 (1987), are inapposite also because they relate to non-jury proceedings. [*6] Here the Complaint, on the first page, has the clear words "Jury Demand."

Paragraph 10 of the Complaint is a bootstrapping allegation and evidence pertaining thereto would in this Court's view violate *Fed. R. Evid. 403*. Further, there is a real question as to whether the allegations in paragraph 10 of the Complaint even meet the tests of *Fed. R. Evid. 401* and *402*.

Paragraph 10 of the Complaint is dismissed.

Defendants' argument that the dismissal of paragraph 10 mandates a dismissal of the entire Complaint does not hold water. A fair reading of the Complaint, particularly paragraphs 5 through 11 with 10 stricken, supports a cause of action. The motion under *Rule 12(b)(6)* is denied.

B. *Rule 56 Motion as to Rapid-American Corp.*

In opposition to this motion, plaintiff has failed to comply with Rule 3(g) of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. This means that defendants' contentions that Rapid is separate and distinct from Schenley and that Rapid's operations are independent (para. 3 of Affidavit of Paul Weiner) of Schenley are admitted. Also in defendant's Rule 3(g) Statement they state "3. Rapid is and has always [*7] been a separate and distinct corporation from Schenley. 4. Rapid was never the employer of plaintiff, Kenneth Ledford." Nothing defendants put in their papers or numerous letters and other papers filed subsequent to the return date of this motion persuade the Court that there is a true, factual issue as to the second prong of defendants' motion.

The Complaint is dismissed as to Rapid-American Corporation under *Rule 56*.

1988 U.S. Dist. LEXIS 79, *; 47 Fair Empl. Prac. Cas. (BNA) 312

*Conclusion*

Paragraph 10 of the Complaint is dismissed. Summary judgment is granted dismissing the Complaint as to Rapid.

The remainder of the Complaint survives defendants' *Rule 12(b)(6)* motion. Discovery is to proceed and to be completed by June 8, 1988. The parties are to appear for a status conference on June 10, 1988 at 9:45 a.m.

SO ORDERED.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Madera v. Metropolitan Life Ins. Co.
S.D.N.Y.,2002.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
James MADERA, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE
COMPANY, Defendant.
**No. 99 CIV. 4005(MBM).**

July 3, 2002.

Puerto Rican former employee brought action against former employer, alleging race discrimination and retaliation under Title VII, § 1981, and New York State Human Rights Law (NYSHRL), as well as negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. On employer's motion to dismiss for failure to state claim, the District Court, Mukasey, J., held that: (1) continuing violations theory did not apply to employee's race discrimination and retaliation claims; (2) doctrine of estoppel did not apply to create exception to limitations period for employee's race discrimination and retaliation claims; (3) equitable tolling did not apply to limitations period for race discrimination and retaliation claims; (4) employee stated claim for retaliation under Title VII and NYSHRL; (5) employee stated claim for disparate treatment under Title VII, § 1981, and NYSHRL; and (6) employee failed to state negligent misrepresentation, breach of contract, and breach of implied covenant of good faith and fair dealing claims.

Motion granted in part, and denied in part.
West Headnotes
**[1] Civil Rights 78 ⇐1505(7)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
                78k1505(7) k. Continuing Violations; Serial, Ongoing, or Related Acts. Most Cited Cases
        (Formerly 255k38 Master and Servant, 78k342)

**Limitation of Actions 241 ⇐58(1)**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or Defense
            241k58 Liabilities Created by Statute
                241k58(1) k. In General. Most Cited Cases
Continuing violation exception did not apply to Puerto Rican employee's race discrimination and retaliation claims under Title VII, § 1981, and New York State Human Rights Law (NYSHRL); alleged discriminatory acts involved different conduct by different persons in diverse contexts, and were not repetitive or ongoing in nature, nor were they continuous in time with one another or with timely acts that were alleged. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981; McKinney's Executive Law § 296.

**[2] Civil Rights 78 ⇐1505(6)**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1503 Administrative Agencies and Proceedings
            78k1505 Time for Proceedings; Limitations
                78k1505(6) k. Tolling. Most Cited Cases
        (Formerly 255k38 Master and Servant, 78k342)

**Limitation of Actions 241 ⇐13**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

241 Limitation of Actions
 241I Statutes of Limitation
  241I(A) Nature, Validity, and Construction in General
   241k13 k. Estoppel to Rely on Limitation. Most Cited Cases
Doctrine of estoppel did not apply to create exception to limitations period for Puerto Rican employee's race discrimination and retaliation claims against employer under Title VII, § 1981, and New York State Human Rights Law (NYSHRL); employee's continued employment as highly paid executive until his termination was not fraudulent misrepresentation, which would support invoking estoppel, and employee did not allege that he was otherwise misled. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981; McKinney's Executive Law § 296.

**[3] Civil Rights 78 ⟞⟝1505(6)**

78 Civil Rights
 78IV Remedies Under Federal Employment Discrimination Statutes
  78k1503 Administrative Agencies and Proceedings
   78k1505 Time for Proceedings; Limitations
    78k1505(6) k. Tolling. Most Cited Cases
  (Formerly 255k38 Master and Servant, 78k342)

**Limitation of Actions 241 ⟞⟝104.5**

241 Limitation of Actions
 241II Computation of Period of Limitation
  241II(G) Pendency of Legal Proceedings, Injunction, Stay, or War
   241k104.5 k. Suspension or Stay in General; Equitable Tolling. Most Cited Cases
Limitations period for Puerto Rican employee's race discrimination and retaliation claims under Title VII, § 1981, and New York State Human Rights Law (NYSHRL) was not equitably tolled, as employee was aware of his claims at earliest possible moment and could have filed within period. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981; McKinney's Executive Law § 296.

**[4] Civil Rights 78 ⟞⟝1246**

78 Civil Rights
 78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
   78k1246 k. Particular Cases. Most Cited Cases
  (Formerly 255k30(6.10) Master and Servant)
Transfer of employee from west coast to east coast was not adverse employment action, as would support retaliation claim under Title VII and New York State Human Rights Law (NYSHRL), absent assertions that transfer constituted demotion or otherwise effected materially adverse change in employee's working conditions. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; McKinney's Executive Law § 296.

**[5] Civil Rights 78 ⟞⟝1246**

78 Civil Rights
 78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
   78k1246 k. Particular Cases. Most Cited Cases
  (Formerly 255k39(1) Master and Servant)
Allegations that employee was transferred to job with considerably less accountability in company, that employee was being set up for failure when he was assigned position without any support from superior, and that reorganization, in which employee was assigned to report to lower level supervisor resulted in demotion, sufficiently asserted adverse employment actions to support retaliation claims under Title VII and New York State Human Rights Law (NYSHRL). Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; McKinney's Executive Law § 296.

**[6] Civil Rights 78 ⟞⟝1246**

78 Civil Rights
 78II Employment Practices
  78k1241 Retaliation for Exercise of Rights
   78k1246 k. Particular Cases. Most Cited Cases
  (Formerly 255k39(1) Master and Servant)
Employee's allegations that he was denied allegedly deserved and sought-after salary increase

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

sufficiently asserted adverse employment action for retaliation claim under Title VII and New York State Human Rights Law (NYSHRL). Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; McKinney's Executive Law § 296.

**[7] Civil Rights 78 ☞1123**

78 Civil Rights
   78II Employment Practices
     78k1123  k.  Constructive  Discharge. Most Cited Cases
     (Formerly 255k39(1) Master and Servant)

**Civil Rights 78 ☞1247**

78 Civil Rights
   78II Employment Practices
     78k1241 Retaliation for Exercise of Rights
      78k1247  k.  Discharge or Layoff. Most Cited Cases
     (Formerly 255k39(1) Master and Servant)
Allegations suggesting that employee would have been fired had he not signed voluntary separation agreement sufficiently asserted that employee was constructively discharged, i.e., forced to resign, and thus sufficiently asserted adverse employment action, as would support retaliation claim under Title VII and New York State Human Rights Law (NYSHRL). Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; McKinney's Executive Law § 296.

**[8] Civil Rights 78 ☞1532**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
     78k1532 k. Pleading. Most Cited Cases

**Civil Rights 78 ☞1740**

78 Civil Rights
   78V State and Local Remedies
     78k1738 Pleading
      78k1740  k.  Employment Practices. Most Cited Cases
     (Formerly 255k39(1) Master and Servant)
Allegations that supervisor blamed employee for

co-worker's employment discrimination action, and threatened employee's job as result, that supervisor had influence over decisionmaker, who ultimately sought employee's resignation, and that supervisor had shared his negative opinion of employee with decisionmaker, sufficiently asserted causation element of retaliation claim under Title VII and New York State Human Rights Law (NYSHRL). Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; McKinney's Executive Law § 296.

**[9] Civil Rights 78 ☞1532**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
     78k1532 k. Pleading. Most Cited Cases
     (Formerly 255k39(1) Master and Servant)
To state retaliation claim under Title VII, employee was not required to provide specific facts establishing each element of prima facie case, including causation element, rather, complaint only had to comply with ordinary rules for notice pleading as set forth in federal rule. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[10] Civil Rights 78 ☞1120**

78 Civil Rights
   78II Employment Practices
     78k1120  k.  Particular  Cases. Most Cited Cases
     (Formerly 78k142)
Although discrimination based solely on national origin is not actionable under § 1981, Puerto Rican employee alleged also that he was subject to discrimination on basis of his Hispanic ethnicity, which was prohibited by § 1981. 42 U.S.C.A. § 1981.

**[11] Civil Rights 78 ☞1395(8)**

78 Civil Rights
   78III Federal Remedies in General
     78k1392 Pleading
      78k1395 Particular Causes of Action
       78k1395(8)  k.  Employment  Practices. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 4

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(Formerly 78k235(3))

**Civil Rights 78 ☜1532**

78 Civil Rights
    78IV Remedies Under Federal Employment
Discrimination Statutes
        78k1532 k. Pleading. Most Cited Cases
    (Formerly 78k375)

**Civil Rights 78 ☜1740**

78 Civil Rights
    78V State and Local Remedies
        78k1738 Pleading
            78k1740 k. Employment Practices. Most
Cited Cases
    (Formerly 78k452)
Puerto Rican employee sufficiently alleged
disparate treatment on account of his Hispanic race
and national origin to state claims under Title VII, §
1981, and New York State Human Rights Law
(NYSHRL), even though he did not provide
specific facts establishing each element of prima
facie case; in accordance with federal notice
pleading requirement, employee was only required
to, and did, allege that he was subject to
discrimination on account of his race and national
origin in violation of specified laws, detail events
alleged to be adverse, and include nationalities of at
least some of relevant persons involved in adverse
decisions. Civil Rights Act of 1964, § 701 et seq.,
42 U.S.C.A. § 2000e et seq.; 42 U.S.C.A. § 1981.;
Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.;
McKinney's Executive Law § 296.

**[12] Fraud 184 ☜12**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k8 Fraudulent Representations
            184k12 k. Existing Facts or Expectations
or Promises. Most Cited Cases

**Fraud 184 ☜13(3)**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k8 Fraudulent Representations
            184k13 Falsity and Knowledge Thereof
                184k13(3) k. Statements Recklessly
Made; Negligent Misrepresentation. Most Cited
Cases
Allegations that employer falsely represented to
Puerto Rican employee that promotions and salary
increases would be based on credentials and job
performance alone, and not on race, national origin,
or other factors and that employee reasonable relied
on these statements to his detriment, were
insufficient to state claim for negligent
misrepresentation under New York law; such
allegations did not assert that employer had duty,
based on special relationship with employee, to
impart correct information, or that employer's
promises of future conduct were made with present
intention not to perform promised acts.

**[13] Labor and Employment 231H ☜858**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(B) Actions
            231Hk858 k. Pleading. Most Cited Cases
    (Formerly 255k39(1) Master and Servant)
Although employee alleged that employer breached
its promises to promote and retain employees based
solely on ability and performance, to give plaintiff
8% merit increase, and to act on complaints under
its own grievance procedures, employee failed to
allege existence of employment agreement for fixed
duration or that any of the alleged promises were
part of such employment contract, as required to
state breach of contract claim under New York law.

**[14] Labor and Employment 231H ☜36**

231H Labor and Employment
    231HI In General
        231Hk31 Contracts
            231Hk36 k. Implied Contracts. Most Cited
Cases
    (Formerly 255k4 Master and Servant)
At-will employee could not rely on employer's
practice of giving salary increases, or existence of
company policy on grievance procedures to
establish implied contract under New York law.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

**[15] Labor and Employment 231H ⬅857**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(B) Actions
            231Hk857 k. Persons Protected, Persons
Liable, and Parties; Standing. Most Cited Cases
    (Formerly 255k39(1) Master and Servant)

**Labor and Employment 231H ⬅858**

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(B) Actions
            231Hk858 k. Pleading. Most Cited Cases
    (Formerly 255k39(1) Master and Servant)
Employee failed to allege that he was not "at will"
employee, as required for breach of the implied
covenant of good faith and fair dealing claim under
New York law.

Thomas E. Mangines, Esq., Mangines & Burke,
Bridgeport, CT, for Plaintiff.
Tanya L. Jachimiak, Esq., Michael J. Sheehan, Esq.
, Connelly Sheehan Moran, Chicago, IL, for
Defendant.

OPINION & ORDER
MUKASEY, D.J.
**\*1** James Madera sues Metropolitan Life Insurance
Company ("MetLife"), alleging unlawful retaliation
and racial discrimination in violation of Title VII of
the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et
seq.* ("Title VII"), 42 U.S.C. § 1981, and N.Y. State
Exec. Law § 296 *et seq.* Plaintiff asserts also New
York common law claims of negligent
misrepresentation, breach of contract, and breach of
the implied covenant of good faith and fair dealing.
Defendant moves to dismiss under Fed.R.Civ.P.
12(b)(6). For the reasons stated below, the motion
is granted in part and denied in part.

I.

The facts alleged in the second amended complaint,
accepted as true for the purposes of this motion, are
as follows: James Madera, a Puerto Rican, Hispanic

male, began working for MetLife as an Account
Representative in Stamford, Connecticut on
September 6, 1982. (Compl.¶ 10) After several
promotions, plaintiff became Branch Manager in
April 1986 and performed his duties in a "
competent and at least satisfactory manner." (*Id.* ¶
¶ 11-13)

In or about September 1988, plaintiff hired
Augustine Ofili, a black male, as an Account
Representative. In the fall of 1991, plaintiff and
Ofili approached Michael Irvine, plaintiff's
supervisor, to request that Ofili be considered for an
open management position for which he was
qualified. Irvine declined to promote Ofili. In
January 1992, Ofili, with plaintiff's support, filed a
complaint with the EEOC and state agency
challenging the decision as racially discriminatory
under Title VII and Connecticut law. Thereafter,
Irvine continuously suggested that Ofili's complaint
was plaintiff's fault, and at one point called plaintiff
at home to threaten that if Irvine was forced to
promote Ofili, he would give him plaintiff's job. (*Id.*
¶¶ 14-19)

In July 1993, John McMahon, a former Regional
Vice President, presented plaintiff with a " '
promotional" ' opportunity in Los Angeles and
advised him to accept it because Irvine was
planning to demote or terminate him. This transfer
removed plaintiff from his growing territory in
Connecticut, which had provided considerable
potential for advancement within the company. The
transfer resulted also in a huge reduction in
compensation, and precluded further career growth.
Having no other choice under the circumstances,
plaintiff accepted the position. (*Id.* ¶¶ 21-22)

In the fall of 1993, plaintiff provided an affidavit
and, under subpoena, deposition testimony in the
Ofili case, then pending in federal court. The
testimony was damaging to MetLife. Irvine then
wrote a letter to the Executive Vice President
objecting to plaintiff's " 'promotion" ' because
plaintiff was not a " 'team player" ' and was being
helpful to Ofili in his lawsuit; he referred to plaintiff
as a " 'disloyal illiterate." ' Irvine was
subsequently removed from his position and
reassigned, assuming a lesser role with the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 6

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

company; however, he has since been promoted to Vice President. (*Id.* at 23-24)

**\*2** In October 1996, plaintiff was transferred to the Home Office in New York as Vice President of Account Representative Training, a position of limited growth potential. (*Id.* ¶ 25)

In February 1997, plaintiff's superiors, McMahon and Orluck, were replaced by Peter Wilkins, Vice President, who became "tied to Irvine, and subject to his wishes." Upon his appointment, Wilkins reassigned plaintiff to Management Training, which had "considerably less accountability in the operation of the company." Wilkins told plaintiff that his management experience was more valuable there, but Wilkins told McMahon the real reason for the reassignment was that plaintiff was disliked by the Territorial Officers. Thereafter, Wilkins assigned plaintiff to lead the Pre-Management Identification and Selection Program. Despite promises to support plaintiff in this endeavor, Wilkins failed to support plaintiff, setting him up for failure and discharge. (*Id.* ¶¶ 26-29)

In March 1997, plaintiff met with MetLife's in-house counsel, Cliff Ryan, regarding the Olifi lawsuit and expressed concerns about being retaliated against by Wilkins and Irvine. Ryan agreed it was a legitimate concern, commenting, " ' I'm afraid I'd have to agree with you." ' Plaintiff later met with his former advisor, Orluck, and was informed that Irvine " 'was out to get" ' him, and that Irvine had " 'bad mouthed" ' plaintiff to Wilkins. In the spring of 1997, Met Life settled the Olifi case. At a company meeting, Irvine informed plaintiff that the lawsuit with " 'your boy" ' was settled. (*Id.* ¶¶ 30-33)

In June 1997, plaintiff met with Wilkins to discuss his salary increase and performance review, which, contrary to company policy, had been upheld for 18 months. Wilkins " 'promised' in bad faith" to process plaintiff's increase and assured him that he would get " 'something." ' From June through August 1997, plaintiff made inquiries to Wilkins regarding the promised salary increase, without success. (*Id.* ¶¶ 36-37)

In or about August 1997, plaintiff was reassigned to report to Mr. Sinni, the Vice President of Management Training who reported directly to Wilkins. Plaintiff was thereby demoted one level in the management hierarchy. Sinni recommended that plaintiff be given an 8% salary increase effective August 4, 1997, but on September 11, 1997, Wilkins reduced the pay increase to 4% and made it effective nearly three months later without retroactivity. Wilkins then rescinded the 4% increase in November. (*Id.* ¶¶ 38-39, 41-42)

On October 31, 1997, plaintiff was presented with a " 'Voluntary' Separation offer" which he did not ask for or want. When he met with Wilkins on November 5, 1997 to discuss the offer, plaintiff was told for the first time in his tenure at MetLife that his performance was in the lowest quintile, and that he had failed to " 'deliver" ' on the Pre-Management Conference Program. Wilkins told plaintiff that he did not closely supervise plaintiff because plaintiff was an officer of MetLife and therefore did not require supervision. Wilkins nonetheless had worked closely with some of the white officers in plaintiff's unit. Also at this meeting, plaintiff asked about remaining with MetLife until December 31, 1997, in order to seek new employment and to avoid negative tax consequences. Wilkins responded, " '[Y]our tax problem is of no concern to me. I'll let you go if and when I feel like it." ' Similarly situated non-Hispanics who were also leaving the company during the same period were allowed time to pursue other opportunities. (*Id.* ¶¶ 43-45, 47-48)

**\*3** Plaintiff then registered a complaint with MetLife's ombudsman regarding the treatment he had received, but, contrary to company policy, the ombudsman gave no support to plaintiff. Plaintiff then filed a complaint with the New York State Division on Human Rights ("SDHR") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a right-to-sue letter from the EEOC on March 8, 1999 and commenced this action on June 2, 1999. (*Id.* ¶¶ 2, 49)

II.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Defendant argues first that many of plaintiff's statutory claims are time-barred. Under Title VII, a plaintiff ordinarily must file his claim with the EEOC within 300 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1) (1994); *see also Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). Plaintiff's charge was filed with the EEOC on July 13, 1998. Defendant contends that the only alleged adverse employment actions timely filed under Title VII are the denial of a salary increase and his termination; all other events occurred before September 16, 1997 and are time-barred.

Plaintiff's remaining statutory claims, under § 1981 and N.Y. State Exec. Law § 296, are governed by a three-year statute of limitations, measured from the date the action was filed in court. *See* N.Y. C.P.L.R. § 214(2), (5); *see also Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996). This case was filed on June 2, 1999. Defendant thus argues that plaintiff's remaining statutory claims are time-barred to the extent they rely on events prior to June 2, 1996. The only event this time limitation excludes is plaintiff's July 1993 transfer to Los Angeles.

In response, plaintiff asserts that he was subject to a "continuing violation." Under the "continuing violation" exception to the Title VII limitations period, if a plaintiff brings a claim that is timely as to one incident in an ongoing course of discrimination, all claims of discriminatory acts that are part of that course of conduct will be timely even if they would be untimely standing alone. *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). Assertions of continuing violations, however, are difficult to maintain because the doctrine is "disfavored" in the Second Circuit. *See Nonnenmann v. City of New York,* 174 F.Supp.2d 121, 129 (S.D.N.Y.2001). Accordingly, "[t]o invoke the doctrine, a plaintiff must show either (1) specific ongoing discriminatory policies or practices, or (2) specific and related instances of discrimination that are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Weeks v. New York State Div. of Parole,* 273 F.3d 76, 82 (2d Cir.2001) (citations omitted); *see also VanZant,* 80 F.3d at 713 (citing seniority lists and employment tests as examples of ongoing discriminatory policies). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert,* 10 F.3d at 53.

*4 [1] Plaintiff alleges five discriminatory acts that occurred outside the Title VII limitations period: (1) the July 1993 promotion [FN1]; (2) the October 1996 transfer to New York; (3) the February 1997 assignment to management training; (4) the 1997 assignment to the Pre-Management Identification and Selection Program; and (5) the August 1997 demotion. Aside from plaintiff's conclusory allegations that these incidents constituted "continuing retaliation" or "continuing discriminatory activity," there is nothing in the Second Amended Complaint to suggest that the events pleaded were the result of a single discriminatory policy or mechanism that would justify tolling the statute of limitations. Rather, the allegations involve "different conduct by different persons in diverse contexts, and were not repetitive or ongoing in nature." *Swanston v. Pataki,* No. 97 Civ. 9406, 2000 WL 245871, at *2 (S.D.N.Y. Mar.3, 2000); *see also Miller v. Citicorp,* No. 95 Civ. 9728, 1997 WL 96569, at *7 (S.D.N.Y. Mar.4, 1997). Plaintiff's conclusory allegations that the acts amounted to a continuing violation are an insufficient substitute for an explanation of how these distinct acts are related. *See id.* Moreover, the acts "are not continuous in time with one another or with the timely acts that [he] has alleged." *Quinn,* 159 F.3d at 766. Significantly, there is a three-year gap between the first two alleged incidents of discriminatory activity. "Absent unusual circumstances, [such a] gap is a discontinuity that defeats use of the continuing violation exception." *Weeks,* 273 F.3d at 84.

FN1. As noted, this incident is also outside the applicable limitations period for the § 1981 claim and the state law discrimination claim.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                         Page 8

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

[2][3] Nor can plaintiff invoke the doctrines of equitable estoppel or equitable tolling to avoid the time bar. Estoppel applies when a plaintiff knows he has a claim, but fails to make a timely filing because he relies on defendant's fraudulent misrepresentations. *See Dillman v. Combustion Eng'g, Inc.,* 784 F.2d 57, 60-61 (2d Cir.1986). No such misrepresentations are alleged here. Plaintiff attempts to rely on the fact that he was retained as a highly paid executive until the end, but continued employment alone does not toll the limitations period, *see Delaware State Coll. v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and plaintiff does not claim that he was otherwise misled. Indeed, plaintiff himself admits that he was left to "hope against hope that MetLife would turn from its discriminatory and retaliatory ways ...." (Pl. Mem. at 9) This statement, as well as others in the complaint detailing the timing of plaintiff's knowledge about defendant's discriminatory and retaliatory activities, also show that equitable tolling is inappropriate. That doctrine is reserved for a plaintiff who is unaware of his claim, not for one who knows about it but hopes not to file it. *See Dillman,* 784 F.2d at 60. In this case, plaintiff was plainly aware of his rights from the earliest possible moment-the case begins with his assistance to a black employee in vindicating the same rights plaintiff now asserts (Compl.¶ 17), and as early as March 1997, plaintiff voiced concerns to MetLife's counsel over his own treatment by defendant (Compl.¶ 30). There is thus no inequity in placing the burden on the plaintiff to preserve his claim, or take the consequences of failing to do so.

**\*5** Absent any applicable exception to the limitations period, plaintiff's Title VII claims relating to conduct occurring before September 16, 1997 and plaintiff's § 1981 and state law claims relating to conduct occurring before June 2, 1996, are dismissed.

### III.

Defendant argues next that even the allegations that can be considered do not state retaliation or discrimination claims upon which relief could be granted under the federal and state civil rights laws.

Aside from their differing statutes of limitations, claims under Title VII and the parallel provisions of New York State Human Rights Law require the same analysis. *See Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996).

### A. Retaliation

To state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in protected activity; (2) defendant was aware of plaintiff's participation in such activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the adverse employment action and the protected activity. *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000). There is no dispute that plaintiff's participation in a black employee's discrimination suit against defendant constitutes protected activity; nor is there any dispute that defendant knew of plaintiff's participation. Rather, defendant disputes that plaintiff has sufficiently alleged the third and fourth elements of his claim.

An employment action is adverse if it results in a " materially adverse change" in the terms and conditions of the plaintiff's employment. *Galabaya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.* (citation and internal quotation marks omitted). The change must be " more disruptive than a mere inconvenience or an alteration in job responsibilities." *Id.*

[4] In this case, plaintiff alleges that his 1996 transfer, 1997 demotions, denied salary increase, and termination, all constituted adverse employment actions. Taking the incidents chronologically, the October 1996 transfer from the west coast to New York does not rise to the level of an adverse employment action. The mere fact that an employee has been transferred is not in itself sufficient to show an adverse change. *See Smith v. AVSC Int'l,*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 9

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

148 F.Supp.2d 302, 313 (S.D.N.Y.2001); *Little v. New York,* 96 Civ. 5132, 1998 WL 306545, at *5 (E.D.N.Y. June 8, 1998) ("The realities of the workplace dictate that employees do not always have the option to work in the location they desire. Employees must often go where the employer determines they are needed most."), *aff'd without opinion,* 173 F.3d 845 (2d Cir.1999). Plaintiff does not allege that the transfer constituted a demotion or otherwise effected a materially adverse change in his working conditions. Although he does state that the New York position had limited growth potential, he had previously alleged that his west coast position had no opportunity for career growth. (Compl.¶¶ 21, 25) Further, plaintiff's complaint and papers suggests that plaintiff preferred to work on the east coast, and that plaintiff's supporters within the company were responsible for bringing him back to the region. (Compl. ¶ 21; Pl. Mem. at 4 ("In October 1996, two Vice Presidents of the Company, McMahon and Orluck, transferred Madera back to New York because Irvine had 'lost his seat' in the corporation and in its pecking order." ')) That transfer can not give rise to a retaliation claim.

*6 [5] The series of reassignments in 1997, however, can be considered adverse employment actions. Plaintiff alleges that his February transfer to management training put him in a job with " considerably less accountability in the operation of the company." (Compl.¶ 27) He further alleges that he was set up for failure in being assigned to lead the Pre-Management Identification and Selection Program without any support from his superior. (*Id.* ¶ 29) Finally, plaintiff alleges that the August 1997 reorganization, in which he was assigned to report to Sinni, "demoted plaintiff's position by one level in the management hierarchy." (*Id.* ¶ 39) At this stage in the litigation, these allegations are sufficient to establish that plaintiff suffered adverse employment actions.

[6][7] In addition, the denial of a salary increase at the end of 1997, for which plaintiff was allegedly recommended and qualified, his ultimate firing, constituted further adverse employment actions. Defendant correctly points out that the denial of salary increases does not make out a "failure to promote" case under Title VII, *see Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709-710 (2d Cir.1998); however, that does not mean that the denial of an allegedly deserved and sought-after salary increase does not constitute an adverse employment action. Defendant argues also that plaintiff was not fired, but rather admittedly signed a voluntary separation agreement. However, it is reasonable to infer from the allegations in the complaint that the separation was not a matter of plaintiff's choice; the allegations suggest that had plaintiff not signed such an agreement, he would have been fired. (Compl.¶¶ 43-44) Thus, plaintiff answers that the termination was, at a minimum, a constructive discharge. Although a constructive discharge claim typically involves a resignation due to intolerable working conditions, *see Stetson v. NYNEX Serv. Co.,* 995 F.2d 355 (2d Cir.1993), the facts alleged here, if true, also would be sufficient to sustain a finding that plaintiff was forced to resign. *See Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1188-89 (2d Cir.1987) . As alleged, then, plaintiff's discharge constituted another adverse employment action.

[8] The only issue that remains is whether plaintiff has sufficiently alleged the fourth element of a retaliation claim-a causal connection between the protected activity and the adverse action. Historically, the Second Circuit has required that Title VII complaints contain specific facts establishing each element of a prima facie case of retaliation, including the causation element. This requires a plaintiff to allege: (1) direct evidence of retaliatory animus; (2) that the protected activity was followed closely by discriminatory treatment; or (3) other circumstantial evidence, such as disparate treatment of fellow employees who engaged in similar conduct. *See Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991). However, the Supreme Court's recent decision in a Title VII discrimination case, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) casts doubt on this requirement. There, the Court held that "the prima facie case ... is an evidentiary standard, not a pleading requirement," and required that a Title VII complaint comply only with the ordinary rules for notice pleading set forth in Fed.R.Civ.P. 8(a)(2). *Id.* at 997. That Rule provides that a complaint need include only "a short and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 10

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

plain statement of the claim showing that the pleader is entitled to relief." The Court then found that even a complaint that relies only on conclusory assertions of discrimination to establish the causation element can "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," and hence satisfies Rule 8. *Swierkiewicz,* 122 S.Ct. at 997-98 (citation omitted).

*7 [9] Logically, this simplified pleading standard would apply to retaliation as well,[FN2] and plaintiff's allegations of retaliation in connection with the events detailed in the complaint easily satisfy this standard. *See id.* Even if the old standard applied, plaintiff has set forth facts sufficient to satisfy the fourth element of a prima facie case. Plaintiff has alleged that Irvine explicitly blamed plaintiff for the Ofili lawsuit and threatened his job as a result. (Compl.¶ 19) Irvine also denigrated plaintiff before his other supervisors, sometimes explicitly referencing plaintiff's participation in the Ofili lawsuit (*id.* ¶¶ 21, 24, 28, 30, 31), and made a derogatory remark to plaintiff when the case settled (*id.* ¶ 33). Although Irvine was not plaintiff's supervisor at the time of the adverse decisions at issue here, plaintiff does allege that Irvine had influence over Wilkins, the relevant decision-maker here, and that Irvine had shared his thoughts about plaintiff with Wilkins. (*Id.* ¶¶ 26, 28, 31) Moreover, Irvine's comments and discussions with others are relevant to the extent they show corporate hostility towards plaintiff up to and until his termination. *See Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1210 (2d Cir.1993). These facts distinguish this case from the case defendant cites, *Boyle v. McCann Erickson,* 949 F.Supp. 1095 (S.D.N.Y.1997), in which the alleged discriminatory statements were made by people who were not in any way involved in plaintiff's firing and who were no longer in contact with plaintiff or even employed by defendant at the time of his termination. *Id.* at 1102. Here, Irvine's comments are some direct evidence of retaliatory animus towards plaintiff. In addition, although there is a significant time gap between the protected activity and the adverse actions under consideration here, a rational jury could consider the timing and nature of Irvine's remarks and the pattern of plaintiff's

treatment leading up to the timely allegations,[FN3] and conclude that the circumstances give rise to an inference of a retaliatory motive.

> FN2. Indeed, one of the bases for the Supreme Court's opinion is that Rule 8's pleading standard applies to all civil actions, with limited exceptions delineated in Rule 9(b). Just as Rule 9(b) does not refer to employment discrimination, neither does it mention retaliation. *See id.* at 998, 461 N.Y.S.2d 232, 448 N.E.2d 86.

> FN3. While claims relating to this treatment are time-barred, the treatment may still be admissible as relevant background evidence for the timely allegations. At this stage, the court considers all allegations in the complaint without regard to admissibility, and I reserve judgment on the issue of the admissibility of this evidence should this case proceed to trial. *See Malarkey,* 983 F.2d at 1211.

It may be that plaintiff will not ultimately be able to prove unlawful retaliation; at this stage of the litigation, however, plaintiff's burden is slight. I cannot say beyond doubt that plaintiff will be unable to prove facts that will entitle him to relief. Accordingly, defendant's motion to dismiss the Title VII and New York state retaliation claims on the pleadings is denied.

### B. Discrimination

[10][11] Plaintiff also claims disparate treatment on account of his race and national origin. The race-based claim is the predicate also for plaintiff's § 1981 claim,[FN4] which requires the same analysis as a Title VII claim. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 216-17 (2d Cir.1985). Under the standard explicitly held to apply in *Swierkiewicz,* all that is required of an employment discrimination complaint is that plaintiff allege that he was subject to discrimination on account of his race and national origin in violation of specified laws, detail

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 11

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

the events alleged to be adverse, and include the nationalities of at least some of the relevant persons involved in the adverse decisions. *Swierkiewicz,* 122 S.Ct. at 999. Plaintiff has done that here, and thus has given the defendant the requisite notice. Contrary to prior law in this Circuit, an employment discrimination complaint need not contain specific facts establishing a prima facie case of discrimination under the framework created by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[FN5] *Id.* Thus, defendant's argument that plaintiff fails to allege adequately a prima facie case in that he has not sufficiently alleged circumstances giving rise to a plausible inference of discriminatory intent, is inapposite. *See id.* Whether plaintiff can make a prima facie showing is a question for a later and evidentiary stage-that is, summary judgment or trial. Defendant's motion to dismiss plaintiff's Title VII, § 1981, and New York state law discrimination claims therefore is denied.

> FN4. Section 1981 guarantees equal rights to make and enforce private employment contracts. *See Lauture v. IBM,* 216 F.3d 258 (2d Cir.2000). It provides in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Discrimination based solely on national origin is not actionable under § 1981, but plaintiff alleges also that he was subject to discrimination on the basis of his Hispanic ethnicity, which § 1981 does prohibit. *See Lopez,* 831 F.2d at 1188.

> FN5. The prima facie case requires plaintiff to show: (1) membership in a protected class; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances giving rise to an inference of discrimination.

IV.

*8 Plaintiff alleges also three common-law claims: negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. Defendant's motion to dismiss each of these claims for failure to state a claim is granted.

A. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must allege that MetLife had a duty, based on a special relationship with plaintiff, to impart correct information; that MetLife provided plaintiff false information; and that plaintiff reasonably relied on such information. *See Ellis v. Provident Life & Accident Ins. Co.,* 3 F.Supp.2d 399, 411 (S.D.N.Y.1998). Such a claim must be plead in accordance with the particularity requirement of Fed.R.Civ.P. 9(b). *See id.*

[12] Plaintiff alleges that defendant falsely represented to him that promotions and salary increases would be based on credentials and job performance alone (and not on race, national origin, or the fact that he assisted another employee in a Title VII case), and that he reasonable relied on these statements to his detriment.

This allegation is insufficient to state a claim for two reasons. First, under New York law, the defendant must owe plaintiff a fiduciary duty in order to satisfy the special relationship. *See Stewart v. Jackson & Nash,* 976 F.2d 86, 90 (2d Cir.1992). The employer-employee relationship is not fiduciary in nature, *see Ellis,* 3 F.Supp.2d at 411, and plaintiff alleges no further facts from which to infer that such a relationship existed. Second, promises of future conduct cannot support a claim for negligent misrepresentation under New York law, unless plaintiff shows that the promises were made with a present intention not to perform the promised acts. *See Murray v. Xerox Corp.,* 811 F.2d 118, 123 (2d Cir.1987); *Ellis,* 3 F.Supp.2d at 411. Here, plaintiff alleges only that he was promised he "would be promoted" and that he " would be entitled to a pay increase" (Compl.¶¶ 57, 58). Thus, plaintiff complains of no more than breach of promises of future conduct, which are not actionable as negligent misrepresentations. *See id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 12

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

This claim therefore is dismissed.

### B. Breach of Contract

[13][14] The complaint also fails to state a claim for breach of contract. Plaintiff contends that defendant breached its promises to promote and retain employees based solely on ability and performance, to give plaintiff an 8% merit increase, and to act on complaints under its own grievance procedures. (Compl. ¶¶ 49, 60, 61; Pl. Mem. at 14-15) However, plaintiff does not identify in the complaint the terms of any contract upon which any liability could be predicated. In New York, employment for an indefinite term is "presumed to be a hiring at-will which may be freely terminated by either party at any time for any reason or even no reason." *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86 (1983); *see also Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987). New York courts are loath to infer terms in at-will contracts. *Id.* Plaintiff does not allege that an employment agreement for a fixed duration existed between himself and MetLife. Nor does he allege specifically that any of the alleged promises were part of his employment contract. Plaintiff cannot rely on a practice of giving salary increases, or the existence of a company policy on grievance procedures to establish an implied contract. See *Boyle,* 949 F.Supp. at 1108; *Porras v. Montefiore Med. Ctr.,* 185 A.D.2d 784, 785-86, 588 N.Y.S.2d 135, 137-38 (1st Dep't 1992). Even accepting as true that plaintiff had been promised merit-based raises, there is no allegation that the promises were given as an inducement at the time of hiring or in exchange for continued employment, or that plaintiff relied on them to his detriment. *See id.; see also Baron v. Port Authority,* 271 F.3d 81, 85 (2d Cir.2001); *Sherman v. HarperCollins,* No. 98 Civ. 2809, 1998 WL 437158 (S.D.N.Y. July 31, 1998) and cases cited therein; *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). The alleged promises are therefore unenforceable.

**\*9** Accordingly, the employment relationship at issue here was at will-*i.e.,* there was no *contractual*

limitation on MetLife's right to promote plaintiff, to raise his salary, or to terminate him without cause. Judge Koeltl's apt statement on this issue bears repeating:

> Employers do not have the right to fire their employees in violation of statutory or constitutional mandates. However, such violations give rise to claims under those laws ... themselves, they do not create a separate cause of action for breach of contract under New York law. Were it otherwise, any firing in violation of a statute or constitutional mandate would also give rise to a breach of contract claim.

*Fry v. McCall,* 945 F.Supp. 655, 667 (S.D.N.Y.1996), *quoted in Smith,* 148 F.Supp.2d at 316. Plaintiff may seek a remedy under the statutes he invokes; he cannot find one under common law breach of contract.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

[15] Nor does plaintiff state a cognizable claim for breach of the implied covenant of good faith and fair dealing. It is well settled that New York law does not recognize this cause of action for at-will employees. *See Murphy,* 58 N.Y.2d at 304-305, 461 N.Y.S.2d at 237, 448 N.E.2d 86 (1983), and its progeny. Because plaintiff has failed to allege that he was anything other than an at-will employee, his claim for breach of implied obligations cannot survive.

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint is granted with respect to plaintiff's common law claims and untimely statutory claims, and denied with respect to plaintiff's remaining statutory claims.

SO ORDERED.

S.D.N.Y.,2002.
Madera v. Metropolitan Life Ins. Co.
Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 1453827 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.