LEXSEE



Cited
As of: Jun 26, 2007

**KEVIN J. PUGH, Plaintiff, - against - MEMORIAL SLOAN KETTERING CAN-
CER CENTER, Defendant.**

**97 Civ. 8594 (DAB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**1998 U.S. Dist. LEXIS 4451**

**April 1, 1998, Decided
April 6, 1998, Filed**

**DISPOSITION:**    [*1] Defendant's Motion to Dismiss
Plaintiff's Executive Law claim GRANTED.

**COUNSEL:** For KEVIN J. PUGH, plaintiff: Robert J.
Valli, Leeds & Morelli, Esqs., Carle Place, NY.

For MEMORIAL SLOAN KETTERING CANCER
CENTER, defendant: Paul Alfred Salvatore, Proskauer
Rose LLP, New York, NY.

**JUDGES:** DEBORAH A. BATTS, United States Dis-
trict Judge.

**OPINION BY:** DEBORAH A. BATTS

**OPINION**

**MEMORANDUM ORDER**

   DEBORAH A. BATTS, United States District
Judge.

   Kevin J. Pugh ("Plaintiff") filed an action alleging
racial and gender discrimination pursuant to Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C. §§
2000e *et seq.* ("Title VII"), and New York State Human
Rights Law, Executive Law §§ 290 *et seq.* ("Executive
Law"). Defendant Memorial Sloan Kettering Cancer
Center ("Defendant") moves to dismiss Plaintiff's Execu-
tive Law claim pursuant to Rules 12(b)(1) and 12(b)(6)
of the Federal Rules of Civil Procedure. For the reasons

stated below, Defendant's motion to dismiss Count II of
the Complaint is granted.

I. BACKGROUND

   Plaintiff, a black male, was employed by Defendant
as a graduate nurse in Defendant's bone marrow trans-
plant unit from March 25, 1991 to May 6, 1991. (Compl.
PP 6-8, 36.)  [*2]  Plaintiff alleges that while he was em-
ployed by Defendant, Ms. Falls, a white, female supervi-
sor, verbally abused him and treated him differently than
other white, female trainees. (*Id.* PP 11-12.) Plaintiff
alleges that he was terminated as a result of disparaging
comments made by Ms. Fall about his performance as a
nurse. (*Id.* PP 30-31, 39-40.)

   On May 17, 1991, Plaintiff filed a complaint with
the Equal Employment Opportunity Commission
("EEOC") alleging race and sex discrimination under
Title VII and New York State Executive Law. The
EEOC referred the charge to the New York State Divi-
sion of Human Rights ("DHR") for initial processing
under their work sharing agreement. After an investiga-
tion, the DHR found that probable cause existed to be-
lieve that Defendant engaged in unlawful discrimination.
By letter dated February 18, 1992, Defendant moved for
reconsideration of the DHR finding of probable cause.

   The parties appeared before the DHR on March 15,
1996 for a pre-settlement conference, and when settle-
ment was not reached the matter was set down for hear-
ing. To date, Plaintiff's complaint remains pending be-
fore the DHR. On August 18, 1997, the EEOC issued

Plaintiff a Notice [*3] of Right to Sue. Plaintiff commenced the instant action in this Court on November 18, 1997. Defendant now moves to dismiss Plaintiff's state law claim on the ground that the claim is barred by Plaintiff's prior election of a state administrative remedy.

## II. DISCUSSION

Defendant moves to dismiss the Complaint, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively. In deciding a Rule 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all inferences in favor of the pleader. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). The District Court should grant such a motion only if after viewing Plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992), *cert. denied*, 507 U.S. 961, 122 L. Ed. 2d 762, 113 [*4] S. Ct. 1387; *see also, Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). Because a 12(b)(6) motion is used to assess the legal feasibility of a Complaint, a Court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (1984). Rather, the Court must limit its consideration to the facts that appear on the face of the complaint. *Id.*

In deciding a Rule 12(b)(1) motion, "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). Defects in subject matter jurisdiction cannot be waived and may be raised at any time during a proceeding. *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir. 1995); *Fox v. Board of Trustees of the State Univ.*, 42 F.3d 135, 140 (2d Cir. 1994), *cert. denied*, 515 U.S. 1169, 115 S. Ct. 2634, 132 L. Ed. 2d 873 (1995).

## A. Plaintiff Claims [*5] under New York State Executive Law

Plaintiff alleges that Defendant terminated his employment in violation of Executive Law §§ 290 *et seq.* Defendant argues that the Executive Law's election of remedies clause is a jurisdictional bar to the instant action. Executive Law § 297(9) provides that "any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . *unless* such person has filed a complaint hereunder or with any local commission on human rights . . . [unless] the division has dismissed such complaint on the grounds of administrative convenience." (emphasis added) Plaintiff argues that his state claim should not be dismissed because he has requested an administrative dismissal from the DHR and, if his request is granted, his claim will fall within the statutory exception. (Pl.'s Mem. Law at 3-4).

In *Scott v. Carter-Wallace*, 147 A.D.2d 33, 541 N.Y.S.2d 780 (N.Y. App. Div. 1st Dep't 1989), the court held that Executive Law § 297(9) prohibits a plaintiff who has filed a complaint with the DHR from pursuing a remedy in state court. [1] The prohibition against filing [*6] in state court after a complaint has been filed with the DHR has been extended to federal court as well. *Weisman v. Metropolitan Museum of Art*, 772 F. Supp. 817, 819 (S.D.N.Y. 1991) "The election required by the statute to proceed either judicially or administratively is strictly enforced[,] and . . . once a grievance is taken to the State Division, the election to do so cannot be undone through the simple expedient of dropping the proceedings before that agency and commencing an action in court." *Carter-Wallace*, 541 N.Y.S.2d at 781.

> 1  On July 15, 1991, the New York Legislature amended Executive Law § 297 and effectively overruled the decision in *Carter-Wallace. See* Ch. 342 of the Law of 1991. As amended, § 297 provides, in relevant part, that: "A complaint filed by the equal employment opportunity commission to comply with the requirements of 42 U.S.C. § 2000e-5(c) shall not constitute the filing of a complaint within the meaning of this subdivision." *Id.* The Legislature expressly stated, however, that the legislation "shall take effect immediately and shall apply to complaints filed with any federal commission on human rights on or after such a date." Because Plaintiff here filed his complaint with the DHR before July 15, 1991, Plaintiff's claim is unaffected by the amendment to § 297.

[*7] Here, Plaintiff concedes that he elected to proceed initially with his state claim before the DHR. (Pl.'s Mem. Law at 2.) Plaintiff argues, however, that his claim should not be dismissed in this Court because he expects to receive an administrative dismissal from the DHR within weeks. (*Id.* at 4.) In *Chachra v. Katharine Gibbs School, Inc.*, 828 F. Supp. 176, 178 (E.D.N.Y. 1993), the court held that a plaintiff may not seek an administrative convenience dismissal based solely on a change in litigation strategy. Noting that the purpose of providing a plaintiff with an administrative remedy was to reduce the burdens on state and federal courts, the court stated that

this purpose cannot be accomplished if parties are permitted to begin administrative proceedings and then voluntarily end them to commence law suits on identical claims. *Id.* "Dismissals for administrative convenience should be limited to cases where the dismissal is truly for the convenience of the agency rather than due to a change of litigation strategy by the complainant." *Id.*

While Plaintiff appears fairly confident that he will receive an administrative convenience dismissal from the DHR, the Court is [*8] uncertain whether such a dismissal, if issued, would be proper under these circumstances. Nevertheless, the Court need not decide this issue because, to date, Plaintiff has not received an administrative dismissal and, thus, his state claim is not properly before this Court. *See Wiesman*, 772 F. Supp. at 819; *Chachra*, 828 F. Supp. at 178. Because Plaintiff elected to pursue his state law claim before the DHR and

has not received an administrative convenience dismissal, this Court is without jurisdiction to hear Plaintiff's Executive Law claim. Accordingly, Defendant's Motion to Dismiss Plaintiff's Executive Law claim is granted.

III. CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Executive Law claim is GRANTED.

SO ORDERED

DATED: New York, New York

April 1, 1998

DEBORAH A. BATTS

U.S.D.J.

LEXSEE



Caution
As of: Jun 26, 2007

**WILLIAM SPILKY, Plaintiff, v. LEWIS HELPHAND, FRANK BREITBARTH, ROY HOFFMAN, RON RIES, and GOLDSTEIN GOLUB KESSLER & COMPANY, P.C., Defendants.**

**91 Civ. 3045 (PKL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1993 U.S. Dist. LEXIS 6196**

**May 10, 1993, Decided
May 11, 1993, Filed**

**COUNSEL:** [*1] William Spilky, 69-28 Exeter Street, Forest Hills, NY 11375, Plaintiff Pro Se.

CAPUDER & ASSOCIATES, P.C., 40 Wall Street, New York, NY 10005-2398, Douglas Capuder, Esq., of counsel, Elizabeth Henry Klampert, Esq., of counsel, Counsel for Defendants.

**JUDGES:** Leisure

**OPINION BY:** PETER K. LEISURE

**OPINION**

*OPINION AND ORDER*

LEISURE, *District Judge:*

This is an action arising out of defendants' alleged failure to withhold certain federal taxes, to disclose and distribute benefits under an ERISA plan, and to provide certain other employment benefits to plaintiff William Spilky. On May 8, 1991, this action was referred to the Honorable Barbara A. Lee, United States Magistrate Judge, Southern District of New York, for all purposes including dispositive motions. Defendants have moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint on various grounds. [1] Pursuant to 28 U.S.C. § 636 (b)(1)(B) and Fed. R. Civ. P. 72, Magistrate Judge Lee issued a Report and Recommendation, dated August 31, 1992 ("Report and Rec-

ommendation"), recommending that the entire Amended Complaint be dismissed for lack of subject matter jurisdiction. Plaintiff [*2] objected to the Report and Recommendation and, in response to his objections, this Court has undertaken a *de novo* review as required by 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72. For the reasons stated below, the defendants' motion to dismiss is granted in part and denied in part.

> 1    Following the submission of the motion, plaintiff amended his complaint. *See* Amended Complaint, dated October 14, 1991 ("Amended Complaint"). As a result, defendants' reply papers and the Report and Recommendation properly address the motion to dismiss in the context of the Amended Complaint.

**BACKGROUND**

According to the Amended Complaint, plaintiff is a tax accountant who was employed full-time by Lewis Helphand & Company from June 1, 1982 until June 30, 1989 when he was terminated by Goldstein Golub Kessler and Company (GGK), the successor in interest of Lewis Helphand & Company's business. Plaintiff has brought this action against GGK and certain partners of Lewis Helphand & Company [*3] -- namely, Lewis Helphand ("Helphand"), Frank Breitbarth ("Breitbarth"), Roy Hoffman ("Hoffman"), and Ron Ries ("Ries"). Defendants Helphand and Hoffman also are alleged to be

trustees of the Lewis Helphand & Company Defined Benefit Plan.

In the Amended Complaint, plaintiff alleges several causes of action. The gravamen of the Amended Complaint is that defendants improperly treated plaintiff as if he were an independent contractor, instead of an employee, and such treatment deprived plaintiff of certain benefits during his employment to which he would otherwise have been entitled. The first cause of action alleges that, from June 1, 1982 until October 31, 1988, defendants failed to withhold or pay certain taxes with respect to plaintiff's employment such as social security, unemployment and income taxes on the allegedly false grounds that plaintiff was an independent contractor, not an employee. Plaintiff seeks damages in the amount of $ 1,000,000 for these violations of the Internal Revenue Code. In causes of action two through seven, plaintiff alleges that defendants, with fraudulent intent, withheld employee manuals from him which contained information concerning the rights and [*4] responsibilities of employees, including the entitlement to certain benefits. It is alleged that, upon obtaining access to these documents through other employees, plaintiff discovered that he had been denied employee benefits such as certain paid holidays, vacation and sick pay, health insurance benefits, and annual compensation increases. The denial of such benefits allegedly resulted in damages in the aggregate amount of $ 205,000. In the seventh cause of action, plaintiff alleges that he did not receive a severance payment in the amount of $ 2,250 which GGK agreed to pay upon his termination. Finally, in the eighth cause of action, plaintiff alleges that defendants withheld information pertaining to an employee benefit plan maintained under the requirements of the Employee Retirement Insurance Security Act (ERISA) and, as a result, plaintiff was deprived of such benefits and suffered damages in the amount of $ 100,000.

## DISCUSSION

### I. CLAIM UNDER THE INTERNAL REVENUE CODE

Plaintiff's first cause of action is based on defendants' alleged violation of several provisions of the Internal Revenue Code (the "Code") including sections 3101, 3102 3111, 3301, and 3402. See [*5] Amended Complaint, at PP 1, 10. These sections require employers to do the following: (1) withhold income taxes from the employees' wages (26 U.S.C. § 3402); (2) withhold the old age, survivors, disability, and hospital insurance taxes under the Federal Insurance Contributions Act (FICA) from the employees' wages at rates set forth under section 3101 (26 U.S.C. §§ 3101, 3102); (3) pay an excise tax under FICA based upon a percentage of the total wages paid out by the employer; (26 U.S.C. §

3111); and (4) pay a federal unemployment excise tax based upon a percentage of the total wages paid out by the employer (26 U.S.C. § 3301).

In the Report and Recommendation, Magistrate Judge Lee found that there is no private right of action under these sections of the Internal Revenue Code and, thus, recommended that the first cause of action be dismissed, *sua sponte,* for lack of subject matter jurisdiction because it is patently without merit. While plaintiff objects to the conclusion of the Report and Recommendation, the Court has undertaken [*6] a *de novo* review of the issue and agrees that the first cause of action must be dismissed for lack of subject matter jurisdiction.

Although the parties did not question the Court's subject matter jurisdiction of this claim, it is well settled that the Court may consider that issue *sua sponte* at any stage of the proceedings, and indeed has an obligation to do so if it appears that jurisdiction may be lacking. [2] *See* Fed. R. Civ. P. 12(h)(3); *see also Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986); *Hughes v. Patrolmen's Benevolent Ass'n of the City of New York, Inc.,* 850 F.2d 876, 881 (2d Cir.), *cert. denied,* 488 U.S. 967 (1988). When determining whether there is a federal question that triggers subject matter jurisdiction over a claim, "the test is whether 'the cause of action alleged is *so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction.'" *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70 (1978) (quoting *Hagans v. Lavine,* 415 U.S. 528, 542-43 (1974) [*7] (quotation omitted)); *see also Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir. 1992) ("'the test is whether the complaint on its face, without resort to extraneous matter, is so plainly insubstantial as to be devoid of any merits and thus not presenting any issue worthy of adjudication'") (quoting *Giulini v. Blessing,* 654 F.2d 189, 192 (2d Cir. 1981); *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir. 1990) (same).

2    The defendants have moved to dismiss the first cause of action under Rule 12(b)(6) on the grounds of legal insufficiency. However, the Court finds that the claim is so patently without merit that it is properly dealt with under Rule 12(b)(1). *See Sadler v. Citibank, N.A.,* 947 F.2d 642, 643-44 (2d Cir. 1991) (dismissing complaint for lack of subject matter jurisdiction where complaint sought to imply a right of action for "breach of security" under the Bank Protection Act).

[*8] Since the plaintiff has attempted to invoke the federal question jurisdiction of this Court under 28 U.S.C. § 1331, plaintiff must allege a cause of action which is cognizable under a federal statute or the Consti-

1993 U.S. Dist. LEXIS 6196, *

tution to establish subject matter jurisdiction. While the plaintiff does allege violations of the Internal Revenue Code by defendants, none of the Code provisions expressly creates a private right of action for an employee against an employer who fails to make the required withholding deductions and contributions. [3]

    3  The Court also has looked to the enforcement provisions of the Code for the existence of a possible private right of action. However, Sections 7201 and 7202, the general criminal provisions which enforce the title, including the provisions in question (26 U.S.C. §§ 3101, 3102, 3111, 3301, 3402), make it a felony for failing to collect or pay a required tax, but do not explicitly provide for a private right of action. *See* 26 U.S.C. §§ 7201, 7202.

[*9]  When a civil suit is brought pursuant to a federal statute that does not expressly create a private right of action, the Court must apply the criteria set forth by the Supreme Court in *Cort v. Ash,* 422 U.S. 66 (1974) to determine whether the federal statute creates an implied private right of action. In *Cort v. Ash,* the Court identified the four factors which are relevant to this inquiry: (1) whether the plaintiff is one of the class for whose "especial benefit" the statute was enacted; (2) whether there is any indication of legislative intent to create such a remedy; (3) whether a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law, so that an implied right of action would be inappropriate. *Cort v. Ash,* 422 U.S. 66, 78 (1975); *see also Health Care Plan, Inc. v. Aetna Life Ins. Co.,* 966 F.2d 738, 740-42 (2d Cir. 1992) (applying the *Cort* factors); *Sadler v. Citibank, N.A.,* 947 F.2d 642, 643-44 (2d Cir. 1991) (same).

In the *post-Cort* era, [*10] the Supreme Court has emphasized that, in making this inquiry, "our focal point is Congress' intent in enacting the statute" and the *Cort* factors and other tools of statutory construction are "guides to discerning that intent." *Thompson v. Thompson,* 484 U.S. 174, 179 (1988). Thus, "'unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* (quoting *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94 (1981)).

Applying this legal standard to the withholding and payment provisions of the Internal Revenue Code, courts have refused to imply a cause of action for employees against employers who have violated these requirements under the Code. *Deleu v. Scaife,* 775 F. Supp. 712, 716-17 (S.D.N.Y. 1991); *DiGiovanni v. City of Rochester,* 680 F. Supp. 80, 82-83 (W.D.N.Y. 1988). In *DiGiovanni,*

the plaintiff, a firefighter for the City of Rochester, argued that the City of Rochester's improper [*11] withholding of FICA and federal income taxes from payments made to plaintiff violated sections 3402 and 3403 of the Internal Revenue Code. Thus, plaintiff asserted a cause of action based upon these alleged violations of the Code provisions. The Court, applying the *Cort* factors, held that no private remedy existed under these provisions:

    The language of §§ 3402 and 3403 does not suggest that these statutes were intended to create federal rights for the especial benefit of a class of employees, but rather that they were intended to benefit the Government through outlining a general scheme for the withholding of tax from wages. Nor is there any evidence that Congress anticipated the creation of a private remedy for employees suffering from incorrect withholding.

680 F. Supp. at 83. Thus, the Court found that the first two factors articulated in *Cort v. Ash* were dispositive and no cause of action existed under Sections 3402 or 3403. *Id.; see also Deleu v. Scaife,* 775 F. Supp. at 716-17 (the Court held, in *dicta,* that the Internal Revenue Code did not provide employee with a private right of action based on [*12] employer's alleged violation of 26 U.S.C. §§ 7201, 7202 and 7204 by failing to pay federal FICA and unemployment taxes on employee's behalf and by failing to withhold taxes due from employee); *Turner v. Unification Church,* 473 F. Supp. 367, 376-77 (D.R.I. 1978) (no implied civil cause of action under the criminal provision of the Code, 26 U.S.C. § 7202, with respect to defendant's alleged failure to make tax contributions on behalf of plaintiff as required under 26 U.S.C. §§ 3101, 3102), *aff'd,* 602 F.2d 458 (1st Cir. 1979).

The Court reaches the same conclusion in the instant case. There is no question that Section 3402, which requires employers to withhold income taxes, was enacted for the benefit of the federal government as a revenue collection measure. With respect to the withholding of other taxes, such as social security and unemployment taxes, the mere fact that these provisions undoubtedly provide benefits to certain individuals in the workforce does not create a private right of action for the enforcement [*13] of such provisions by these potential beneficiaries. As the Court noted in *DiGiovanni,* "the question is not simply whether [the plaintiff] would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." 680 F. Supp. at 83 (citing *California v. Sierra Club,* 451 U.S. 287 (1981)).

An application of the *Cort* factors to the instant case reveals that plaintiff's first cause of action is patently without merit. First, the withholding provisions cited by plaintiff were not enacted for the "especial benefit" of individuals in plaintiff's position, but rather were enacted to facilitate the government's collection of such taxes. Similarly, the provisions dealing with the employer's payment of taxes were not enacted to create a federal right in favor of a plaintiff who is a potential beneficiary of such taxes. Instead, such statutes were simply intended to implement the taxing power of the federal government and provide the government with an enforcement mechanism when individuals or entities failed to pay the required taxes. Second, there is absolutely no suggestion in the language [*14] of the provisions cited by plaintiff, or in the legislative history, that Congress intended to confer a private remedy for employees suffering from incorrect withholding or an employer's failure to pay certain taxes to the federal government. Thus, since the first two *Cort* factors clearly indicate that Congress did not intend to create a private right of action under the Internal Revenue Code with respect to the claim asserted by plaintiff in the first cause of action, the Court need not analyze the remaining two *Cort* factors. [4] *See California v. Sierra Club,* 451 U.S. at 298 ("it is unnecessary to inquire further to determine whether the purpose of the statute would be advanced by the judicial implication of a private action or whether such a remedy is within the federal domain of interest. These factors are only of relevance if the first two factors give indication of congressional intent to create the remedy."); *see also Health Care Plan, Inc.,* 966 F.2d at 742.

> 4    In any event, the third *Cort* factor further undermines plaintiff's position. The Court finds that a private cause of action under these provisions would be contrary to the legislative scheme of the tax statutes given the numerous administrative remedies available for civil complaints relating to the Internal Revenue Code. For example, Congress has enacted administrative procedures for individuals who contest the administration wage records used to determine old age, pension and disability benefits under FICA and provides for district court review of administrative decisions. *See, e.g.,* 42 U.S.C. § 405. Thus, Congress did not intend to enforce the tax laws by private attorneys general, but rather established administrative remedies for civil complaints as well as criminal penalties for enforcement by the government. The creation of a private right of action under the Internal Revenue Code in the instant case would undermine this framework and would be contrary to the legislative scheme established in this area.

Finally, the fourth *Cort* factor carries little, if any, weight under the circumstances of the instant case.

[*15] In sum, the Court finds that there is no evidence that Congress intended to provide a private cause of action under the Internal Revenue Code for an employee who alleges that his employer failed to make the required withholdings and contributions. Under such circumstances, the Court concludes that the plaintiff's alleged claim against defendants under the Internal Revenue Code is so patently without merit as to warrant dismissal of such claim for lack of subject matter jurisdiction. [5] Accordingly, the first cause of action is dismissed.

> 5    Even assuming that dismissal on jurisdictional grounds was unwarranted, the Court's reasoning would support dismissal of this claim under Rule 12(b)(6) without leave to replead because the defect is incurable.

## II. THE ERISA CLAIM

Plaintiff's eighth cause of action invokes the Court's jurisdiction under ERISA and alleges that defendants, through a "deliberate fraud," withheld information concerning an ERISA Plan from plaintiff, did not include him in such Plan, and deprived [*16] him of the distributions which took place upon termination of the Plan. Upon careful *de novo* review of the Amended Complaint, the Court finds that plaintiff has adequately invoked federal jurisdiction under ERISA and, furthermore, that plaintiff has stated a claim upon which relief can be based as to defendants Helphand and Hoffman. Hence, the Court declines to adopt Magistrate Judge Lee's recommendation to dismiss this claim for lack of subject matter jurisdiction. Moreover, the Court denies defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure except as to defendants GGK, Ries, and Breitbarth.

### A. SUBJECT MATTER JURISDICTION

Pursuant to 29 U.S.C. § 1132, ERISA provides for a private cause of action "by a participant or beneficiary" of a qualified plan to obtain various forms of relief, including the recovery of benefits due under the terms of the plan. The Report and Recommendation concluded that plaintiff's cause of action "on its face" was not under this ERISA section, but was "one for common law fraud" without an independent basis of federal jurisdiction. Report and Recommendation, at 7. Upon review, [*17] the Court finds that, despite plaintiff's failure to cite the precise ERISA section under which the claim arises, plaintiff has adequately invoked the subject matter jurisdiction of this Court under ERISA.

The civil enforcement provision of ERISA, section 1132, allows for civil actions "by a participant or beneficiary" when a plan administrator fails to supply certain requested plan information, 29 U.S.C. § 1132(a)(1)(A), and allows the plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In addition, section 1132 also allows suits "by a participant, beneficiary or fiduciary" for breach of fiduciary duty, for injunctive or other equitable relief from any practice which violates the provisions of ERISA or the plan, or for any violation of the reporting requirements under 29 U.S.C. § 1025(c). *See* 29 U.S.C. §§ 1132(a)(2)-(a)(4); *see generally Lee v. Burkhart,* 1993 U.S. App. LEXIS 8687, No. 92-7944, slip op. 2681, at 2689 (2d Cir. April 19, 1993) [*18] (summarizing the various remedies available under ERISA and related federal law). Exclusive jurisdiction of these claims is granted to the district courts of the United States except for actions under section 1132(a)(1)(B) over which state courts have concurrent jurisdiction. 29 U.S.C. § 1132(e).

The term "participant" is defined under these provisions as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the Supreme Court provided further clarification of the term "participant" in the ERISA context:

> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2d Cir. 1985), [*19] or former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits, *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.) (per curiam), *cert. denied,* 479 U.S. 916 (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees

> in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" *Saladino v. I.L.G.W.U. National Retirement Fund, supra,* at 476.

489 U.S. at 117-18. Thus, in order to meet the requirements of subject matter jurisdiction granted to "participants" under [*20] section 1132, a plaintiff who is a former employee, and has no expectation of returning to covered employment, must plead facts which support a "colorable claim to vested benefits."

The threshold requirement of pleading a "colorable claim to vested benefits" prevents a plaintiff who files an ERISA lawsuit from automatically becoming a "participant" for jurisdictional purposes. The Court finds that, in the instant case, the Amended Complaint meets this threshold requirement. Plaintiff alleges that he was an employee of Lewis Helphand & Company and that the Company maintained a qualified benefit plan -- the Lewis Helphand & Co. Defined Benefit Plan (the "Plan") -- under ERISA for the benefit of employees. *See* Amended Complaint, at PP 3, 8, 36. It is further alleged that "through a deliberate fraud, all information concerning this Plan was withheld from the plaintiff during the entire period of his employment" and that "all notices concerning the Plan were distributed among employees while very carefully avoiding the plaintiff." Amended Complaint, at P 37. Plaintiff claims that he did not discover the existence of the Plan until after he had left the employment of GGK in 1989 and, [*21] by that time, the Plan had been terminated and participants had received their vested interest distributions. Amended Complaint, at P 39. Plaintiff alleges that he was not included in the Plan or its distribution and thereby was damaged in the sum of $ 100,000. Amended Complaint, at PP 39-41.

Thus, plaintiff alleges (1) employee status; (2) the establishment of an ERISA Plan while he was employed by defendants; and (3) during the time of the Plan's existence, some level of benefits became vested. Based upon the allegations set forth in the Amended Complaint, the Court finds that plaintiff has sufficiently set forth a colorable claim for the recovery of benefits under the Plan and such a claim confers subject matter jurisdiction on this Court pursuant to ERISA. Moreover, as noted *infra,* the allegations contained in the Amended Complaint also

overcome the Rule 12(b)(6) challenges as to defendants Helphand and Hoffman.

The Court disagrees with the Report and Recommendation's conclusion that plaintiff is not suing under ERISA in the eighth cause of action, but rather is suing under common law fraud. While plaintiff alleges that defendants engaged in a "deliberate fraud" in withholding [*22] information about the Plan, the Court finds that plaintiff is still suing under ERISA in the eighth cause of action. As a threshold matter, the Court notes that the first paragraph of the Amended Complaint clearly states that the action is based, *inter alia*, upon violations of ERISA. Amended Complaint, at P 1. More specifically, the eighth cause of action refers to the Plan at issue as being one "under ERISA for the benefit of employees" (Amended Complaint, at P 36) and, as noted above, the cause of action contains all of the necessary components of a colorable claim under ERISA. The mere fact that plaintiff uses the term "fraud" to describe defendants' conduct does not transform an ERISA claim into one for common law fraud. The gravamen of the eighth cause of action is that plaintiff was denied benefits under an ERISA Plan in place during the relevant time of his employment because defendants improperly classified him as an independent contractor, rather than an employee. Thus, the Court finds that the cause of action must be read as a cause of action under ERISA, rather than as a common law fraud claim. [6] Moreover, the plaintiff's failure to state the specific section of ERISA [*23] under which he is suing -- 29 U.S.C. § 1132 -- does not warrant dismissal of an otherwise colorable ERISA claim.

> 6 To the extent that plaintiff is also trying to use the conduct actionable under ERISA as the basis for an alternative theory of recovery under common law fraud, the fraud claim is preempted by ERISA. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 287-88 (2d Cir. 1992).

Having reached this decision, the Court emphasizes that it has not assessed the strength of plaintiff's claim. The parties clearly disagree as to plaintiff's employment status and his eligibility under the Plan at issue. [7] However, the Court's consideration of such issues at this juncture is inappropriate. As the Seventh Circuit has noted, "subject-matter jurisdiction depends on an arguable claim, not on success." *Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991). Thus, in the instant case, the [*24] Court simply has determined that, regardless of the ultimate outcome, plaintiff has presented a colorable claim under ERISA within the confines of *Firestone* and, thus, the Court has subject matter jurisdiction over such claim.

> 7 The precise definition of an "employee" in the ERISA context is a common litigation issue. *See, e.g., Nationwide Mutual Ins. Co. v. Darden*, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992) (discussing the phrase "employee" as used in ERISA); *Penn v. Howe-Baker Engineers, Inc.*, 898 F.2d 1096, 1101-03 (5th Cir. 1990) (addressing whether individual was an employee or an independent contractor under ERISA); *Holt v. Winpisinger*, 258 U.S. App. D.C. 343, 811 F.2d 1532, 1538-41 (D.C. Cir. 1987) (same).

## B. DEFENDANTS' RULE 12(b)(6) MOTION

Defendants urge dismissal of plaintiff's ERISA claim against all named defendants on grounds that the claim is barred by the applicable statute of limitations. Additionally, defendants argue that the ERISA [*25] claim against defendants Breitbarth, Ries and GGK must be dismissed for failure to allege that they were trustees of the Plan or that GGK was a fiduciary with respect to the Plan. The Court finds that dismissal of plaintiff's ERISA claim as to defendants Breitbarth, Ries, and GGK is appropriate. However, plaintiff has stated a claim against defendants Helphand and Hoffman which survives a Rule 12(b)(6) challenge.

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

Thus, a motion to dismiss must be denied "'unless it appears [*26] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992), *cert. denied*, 122 L. Ed. 2d 762, 113 S. Ct. 1387 (1993); *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir. 1991). In deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint, *see Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991), and must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in plaintiff's favor. *See Walker*, 974 F.2d at 298; *Frazier v. Coughlin*, 850 F.2d 129, 129 (2d Cir. 1988)

### (1) Statute of Limitations

Plaintiff's eighth cause of action, which alleges that Plan benefits were withheld from him through a "deliberate fraud," arises most directly [*27] under section 1132(a)(1)(B) which allows suits to recover benefits under the terms of the Plan. However, ERISA provides no express time limit for claims arising under this section.

When Congress fails to provide a statute of limitations for a cause of action under a federal statute, courts must "'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 158 (1983). Courts usually apply the most analogous state limitations statute. *See Wilson v. Garcia,* 471 U.S. 261, 266-68 (1985); *Board of Regents v. Tomanio,* 446 U.S. 478, 483-84 (1980). The Second Circuit has held that the six-year limitations period prescribed by New York C.P.L.R. § 213 controls ERISA claims under section 1132. [8] *See Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.), *cert. denied,* 464 U.S. 829 (1983); *see also Larsen v. NMU Pension Trust,* 902 F.2d 1069, 1073-74 (2d Cir. 1990). [*28] The ERISA cause of action accrues, and the six-year limitations period begins to run, "'when there has been 'a repudiation by the fiduciary which is *clear* and made known to the beneficiaries.'" *Id.* (quoting *Valle v. Joint Plumbing Indus. Bd.,* 623 F.2d 196, 202 n.10 (2d Cir. 1980) (quotation omitted)).

8    This rule does not apply to claims for breach of fiduciary duty under 29 U.S.C. §§ 1101-1114 of ERISA because such claims are governed by the express statute of limitations set forth in 29 U.S.C. § 1113. However, this exception is not applicable in the instant case.

In the instant case, the plaintiff alleges that he did not discover the existence of the Plan until the summer of 1989, after he had been terminated, when a co-worker informed him of the existence of the Plan and provided him with a copy of the Plan. Amended Complaint, at P 38. Furthermore, plaintiff alleges that any information or notices [*29] provided to other employees concerning the Plan were deliberately withheld from plaintiff. Amended Complaint, at P 37.

Defendants contend that, since the plaintiff's ERISA cause of action contains an allegation of fraud, the claim accrues when plaintiff discovered the alleged ERISA violations or, upon reasonable inquiry, should have discovered such violations. It is defendants' contention that plaintiff, as a tax professional, was on "constructive notice" of the denial of benefits when defendants filed the plan with the IRS for approval in late 1984 or early 1985. *See* Reply Memorandum in Support of Rule 12 Motion by the Defendants, dated November 4, 1991, at 33-34.

Furthermore, defendants argue that plaintiff admits knowing that defendants were "fraudulently" treating him as an independent contractor prior to the establishment of the Plan, and that knowledge alone should have triggered the accrual of the ERISA cause of action at that moment since his "suspicions had to have been aroused." *Id.* at 34. Based upon plaintiff's alleged constructive notice on these earlier dates, defendants conclude that the ERISA claim is time barred.

The Court recognizes that, under certain circumstances, [*30] deliberate ignorance by the plaintiff as to the defendants' denial of benefits may justify applying an earlier accrual date to an ERISA cause of action. *See Smith v. Rochester Telephone Business Marketing Corp.,* 786 F. Supp. 293, 306-07 (W.D.N.Y. 1992) (discussing whether defendants' position was "clear and made known" to plaintiff through information provided to employees). In other words, the question of whether the defendants' repudiation of benefits was "clear and made known" must be examined in light of, *inter alia,* the information provided, directly or indirectly, by the defendants to the plaintiff concerning the Plan. The Court emphasizes, however, that defendants' contention on this issue must fail in the context of this motion to dismiss. On a motion to dismiss, the Court must limit its inquiry to the four corners of the complaint and take the allegations in the complaint as true. Moreover, all reasonable inferences from the allegations in the complaint are drawn in plaintiff's favor. The Amended Complaint clearly alleges that plaintiff did not discover the existence of the ERISA plan until the summer of 1989. The Court finds that defendants [*31] have failed to demonstrate that, on the face of the Amended Complaint, the ERISA claim is time barred as a matter of law. The question of whether plaintiff discovered the alleged ERISA violation at an earlier time, or could have discovered such violation with reasonable diligence at an earlier time, cannot be resolved on this motion to dismiss where the factual issues raised by defendants with respect to this question go well beyond the confines of the allegations contained in the plaintiff's Amended Complaint.

Accordingly, the defendants' motion to dismiss the ERISA claim as time barred is denied.

### (2) Claim as to Ron Ries, Frank Breitbarth and GGK

Defendants also contend that the ERISA claim must be dismissed against Ron Ries, Frank Breitbarth, and GGK because they are not proper defendants in this cause of action. It is well settled that "in a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir. 1989). Employers assume fiduciary status "only

when and to the extent that they function in their capacity as [*32] plan administrators, not when they conduct business that is not regulated by ERISA.'" *Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1416-17 (2d Cir. 1985) (quotation omitted), *cert. dismissed,* 474 U.S. 1113 (1986). In the Amended Complaint, defendants Helphand and Hoffman are alleged to be trustees of the Plan at issue. However, defendants Ries and Breitbarth are not alleged to have been Plan trustees or administrators. Instead, it is merely alleged that Ries and Breitbarth were partners in Lewis Helphand & Company. Therefore, plaintiff has failed to state a claim under ERISA upon which relief can be granted as to defendants Ries and Breitbarth.

Similarly, with respect to GGK, there is no allegation that GGK was a plan administrator or trustee. Moreover, plaintiff does not allege that GGK exercised any control over the decision to apply the Plan to certain employees, but not to plaintiff. Plaintiff simply alleges that GGK became the successor in interest of all of the business of Lewis Helphand & Company on or about July 1, 1988 through a merger. Amended Complaint, at P 7. Such an allegation is insufficient to state [*33] a claim against GGK under ERISA. [9]

> 9    Defendants also contend that GGK did not succeed the interests of Lewis Helphand & Company until after the termination of the ERISA Plan and, thus, cannot be held liable for ERISA damages. The Court notes that the complaint alleges that GGK became the successor in interest of the business on or about July 1, 1988. However, while the original complaint alleged upon information and belief that the Plan terminated on December 31, 1987, the Amended Complaint does not allege when the Plan terminated other than to state that, by the summer of 1989, the Plan had been terminated and the participants had received vested interest distributions. Therefore, upon the face of the complaint, the Court is unable to conclude that GGK did not become the successor in interest of the business of Lewis Helphand & Company until after the termination of the Plan. Accordingly, at this juncture, this alternative argument set forth by defendants cannot be used as an additional basis for granting the motion to dismiss under Rule 12(b)(6) as to GGK.

[*34] Accordingly, the motion to dismiss is granted as to defendants Ries, Breitbarth, and GGK. However, the Court grants leave to replead as to these defendants. The motion is denied as to defendants Helphand and Hoffman.

### III. STATE LAW CLAIMS

### A. CAUSES OF ACTION BASED UPON EMPLOYEE MANUALS

Plaintiff's second through sixth causes of action are based upon terms allegedly contained in the employee manuals issued on May 15, 1982, September 1, 1983, and January 1, 1985 by Lewis Helphand & Company addressing certain employee benefits. Plaintiff alleges that he was denied benefits enumerated in these manuals including certain paid national holidays, a certain number of paid vacation days, compensation or disability insurance coverage for an injury he sustained in September 1985, major medical and hospital insurance, and annual performance-based pay increases. [10]

> 10    Since plaintiff alleges that these manuals were withheld from him with "fraudulent intent," it is unclear to the Court whether plaintiff is asserting an alleged breach of employment contract claim based upon the implied incorporation of the terms of the manuals into such contract or simply a fraud claim arising out of defendants' alleged nondisclosure of these manuals. Thus, the Court will address the pleading defects in plaintiff's state claims under both contract law and common law fraud.

[*35] In the Report and Recommendation, Magistrate Judge Lee dismissed these claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a) or, alternatively, under 28 U.S.C. § 1367(c)(3). *See* Report and Recommendation, at 7-8. In reaching this decision, the Report and Recommendation briefly addressed the sufficiency of plaintiff's pleading and concluded that plaintiff had failed to state a claim upon which relief could be granted under state law. *Id.* at 10.

Since the Court has determined that plaintiff's ERISA claim survives a Rule 12(b)(6) challenge as to defendants Helphand and Hoffman, the state law claims arising out of plaintiff's employment with the defendants would be pendent to plaintiff's ERISA claim. However, the Court finds that the state law claims must be dismissed under Rule 12(b)(6) because plaintiff has failed to state a claim upon which relief can be granted for breach of an employment contract or fraud.

### (1) Breach of Employment Contract

With respect to breach of employment contract claims, New York courts have, under limited circumstances, found that terms from employee handbooks [*36] or other documents can be incorporated into employment contracts. *See Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 304-05, 448 N.E.2d 86, 91-92, 461 N.Y.S.2d 232, 237-38 (1983); *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *see also Wright v. Cayan,* 817 F.2d

999, 1002-1005 (2d Cir.) (collecting New York cases), *cert. denied,* 484 U.S. 853 (1987). This issue usually arises in the context of the termination of an at-will employee where the employee argues that a limitation on the employer's right to discharge contained in an employee manual or policy handbook altered the employment at-will relationship between the parties. *See, e.g., Novinger v. Eden Park Health Services, Inc.,* 167 A.D.2d 590, 563 N.Y.S.2d 219 (3d Dep't 1990), *appeal dismissed,* 77 N.Y.2d 810, 575 N.E.2d 399, 571 N.Y.S.2d 913 (1991). However, "the Court of Appeals has declined to imply [*37] contract terms that are inconsistent with the basic nature of at-will employment." *Novinger v. Eden Park Health Services, Inc.,* 167 A.D.2d at 591, 563 N.Y.S.2d at 220 (citing *Murphy v. American Home Products Corp.,* 58 N.Y.2d at 304-05, 448 N.E.2d at 91-92, 461 N.Y.S.2d at 237-38). Thus, "only an express limitation relied on by an employee will create a cause of action for breach of an employment contract.'" *Novinger,* 167 A.D.2d at 591, 563 N.Y.S.2d at 220 (quoting *Marvin v. Kent Nursing Home,* 153 A.D.2d 553, 554, 544 N.Y.S.2d 210, 211 (2d Dep't 1989)). In other words, where an employee claims that a policy contained in an employee manual became incorporated into an employment contract, the employee must have had knowledge of the policy prior to entering into the employment relationship and have relied on the policy in accepting the position.

In the instant case, by his own allegations, plaintiff did not have knowledge of the statements contained in the employee manuals until sometime [*38] in 1987 when he obtained a copy of the revised manual, dated January 1, 1985, from a co-worker. *See* Amended Complaint, at P 16. In addition, plaintiff alleges that he was unable to obtain copies of prior manuals until after his termination in 1989. *Id.* at P 17. Thus, plaintiff expressly alleges that Lewis Helphand & Company "with fraudulent intent did withhold such manuals from the plaintiff during the course of plaintiff's employment." *Id.,* at P 15. Since plaintiff concedes that he was not aware of the manuals until at least five years after he accepted employment in June 1982, plaintiff does not, and cannot, allege detrimental reliance on the statements contained in these manuals with respect to his decision to accept employment with defendants. *See Novinger,* 167 A.D.2d at 592, 563 N.Y.S.2d at 221; *Marvin,* 153 A.D.2d at 555, 544 N.Y.S.2d at 212; *Rizzo v. International Bhd. of Teamsters, Local 237,* 109 A.D.2d 639, 641-42, 486 N.Y.S.2d 220, 221 (1st Dep't 1985); *see also Wright v. Cavan,* 817 F.2d at 1004 n.5. [*39] As the Report and Recommendation correctly noted, plaintiff cannot demonstrate that the parties had a "meeting of the minds" with respect to terms contained in the employment manual when plaintiff alleges that he did not see the manual until five years after the alleged commencement of the

employment relationship (when a co-worker provided him with a copy of the manual) and plaintiff clearly alleges that defendants deliberately withheld such information from him during the entire course of his employment. Under such circumstances, plaintiff's breach of employment contract claim, based upon terms contained in these employment manuals, must fail as a matter of law.

### (2) Common Law Fraud

To the extent that plaintiff attempts to transform his common law breach of employment contract claims into claims for "fraud" or "illegality" in his Amended Complaint, the Court finds that such claims also cannot survive a motion to dismiss. Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. [*40] 9(b); *see also DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) ("fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations"). Moreover, "although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990) (quoting *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied,* 484 U.S. 1005 (1988)).

In the instant case, plaintiff's Amended Complaint clearly fails to comply with the particularity requirements set forth in Rule 9(b). First, plaintiff does not provide any details as to the nature of the misrepresentations or identify the individual roles of the defendants in the alleged fraud. Second, plaintiff alleges no facts which would support an inference of scienter on the part of the defendants. In sum, plaintiff's mere use of the word "fraud" and "fraudulent intent" to describe [*41] defendants' conduct falls woefully short of satisfying the particularity requirements of Rule 9(b).

Moreover, the Court also finds that the purported fraud claims contain other pleading defects which require dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. To plead a cause of action for fraud, a plaintiff must allege a misrepresentation of material fact, falsity, scienter, deception *(i.e.* reliance) and injury. *Barclay Arms, Inc. v. Barclay Arms Assocs.,* 74 N.Y.2d 644, 646-47, 540 N.E.2d 707, 709, 542 N.Y.S.2d 512, 514 (1989); *Ministry of Christ Church v. Mallia,* 148 A.D.2d 784, 786, 538 N.Y.S.2d 367, 369 (3d Dep't 1989); *Atlantic Welding Services, Inc. v. Westchester Steel Fabricators Corp.,* 173 A.D.2d 1073, 1074, 570 N.Y.S.2d 410, 412 (3d Dep't 1991).

Plaintiff has failed to allege that defendants made any misrepresentations to him concerning these benefits contained in the manual or that he relied on such representations to his detriment. Instead, plaintiff simply alleges that [*42] defendants withheld the employment manuals from him during his employment. However, it is well settled that to state a claim for fraudulent nondisclosure of a material fact, not only must there be an allegation forming the basis of a fiduciary or confidential relationship between the parties, but there must also be an allegation that plaintiff was deceived by some act or conduct of the defendants. *See generally London v. Courduff*, 141 A.D.2d 803, 804, 529 N.Y.S.2d 874, 875 (2d Dep't), *appeal dismissed*, 73 N.Y.2d 809, 534 N.E.2d 332, 537 N.Y.S.2d 494 (1988); *Westchester County v. Welton Becket Assocs.*, 102 A.D.2d 34, 50-51, 478 N.Y.S.2d 305, 316 (2d Dep't), *appeal dismissed*, 64 N.Y.2d 734, 475 N.E.2d 123, 485 N.Y.S.2d 752 (1984). Any allegation as to how plaintiff was deceived in the instant case is conspicuously absent from the Amended Complaint. Therefore, since plaintiff has failed to allege the necessary elements of a claim for fraudulent misrepresentation or concealment, [*43] such claims must be dismissed without prejudice under Rule 12(b)(6). [11]

   11    The Court also notes that there may be a statute of limitations problem with respect to certain aspects of the fraud claims. Claims of fraud must be brought within two years from the time that plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence or within six years of the fraud itself, whichever is later. *See* N.Y. C.P.L.R. §§ 213(8), 203(f); *see also Lazzaro v. Kelly*, 87 A.D.2d 975, 976-77, 450 N.Y.S.2d 102, 104-05 (4th Dep't), *aff'd*, 57 N.Y.2d 630, 439 N.E.2d 868, 454 N.Y.S.2d 59 (1982). Because of the Rule 9(b) deficiencies in the Amended Complaint which are discussed above, the Court is unable to determine when the fraudulent conduct is alleged to have occurred. Therefore, the Court cannot make such a determination at this juncture. However, to the extent that the allegations in plaintiff's repleaded claims are based upon fraudulent conduct that took place prior to May 3, 1985 and were discovered in 1987 when plaintiff obtained a copy of the revised 1985 employee manual, such claims will time barred under the applicable statute of limitations period.

   [*44] Accordingly, the Court concludes that plaintiff's second through sixth causes of action must be dismissed under Rule 12(b)(6). However, the Court will grant leave to replead these claims.

### B.  CLAIM UNDER SEVERANCE AGREEMENT

   In the seventh cause of action, plaintiff alleges that at the time of his termination on June 30, 1989, defendant GGK agreed to make a severance payment to plaintiff in the amount of $ 2,250, but has failed to pay plaintiff any portion of that amount. The Court finds that plaintiff has properly pleaded a cause of action under contract law for breach of the alleged severance agreement and that claim is pendent to the ERISA claim. Therefore, the motion to dismiss the seventh cause of action is denied.

### IV. MOTION TO STRIKE UNDER RULE 12(f)

   Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, defendants requested in their moving papers that the Court strike paragraph 21 of the original complaint, concerning an alleged IRS determination of the employee status of the plaintiff, on the grounds that such information was immaterial and prejudicial. In the Amended Complaint, filed after the submission of defendants' moving papers, plaintiff has deleted [*45] the allegation contained in paragraph 21 of the original complaint. Therefore, the Court need not address this issue.

### CONCLUSION

   For the reasons stated above, the motion to dismiss the Amended Complaint is granted in part and denied in part. First, the Court dismisses the first cause of action for lack of jurisdiction. Second, the Court grants the motion to dismiss the ERISA claim as to defendants Ries, Breitbarth, and GGK, but denies such motion as to the defendants Helphand and Hoffman. Third, the Court dismisses the state law claims, contained in the second through sixth causes of action, with leave to replead. Finally, the Court denies the motion to dismiss the eighth cause of action.

   Plaintiff has 30 days from the date of this Opinion and Order to replead, if plaintiff wishes, the ERISA claim as to defendants GGK, Breitbarth, and Ries and the state law claims.

### SO ORDERED

Dated: May 10, 1993

New York, New York

Peter K. Leisure

U.S.D.J.

LEXSEE



Cited
As of: Jun 26, 2007

**RICHARD C. WILLIAMS, Plaintiff, -against- CITY OF NEW YORK, Defendant.**

**04 Civ. 1993 (AJP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2005 U.S. Dist. LEXIS 6083**

**April 12, 2005, Decided
April 14, 2005, Filed**

**COUNSEL:** [*1] Richard Williams, Plaintiff, Pro se, Bronx, NY.

For New York City, Defendant: Michael A. Cardozo, Corporation Counsel Office, City of New York, New York, NY; Holly Rachel Winefsky, New York City Law Department, New York, NY.

**JUDGES:** Andrew J. Peck, United States Chief Magistrate Judge.

**OPINION BY:** Andrew J. Peck

**OPINION**

### *OPINION AND ORDER*

**ANDREW J. PECK, United States Chief Magistrate Judge:**

Plaintiff Richard C. Williams brings this pro se Title VII and ADEA action against the City of New York claiming unequal terms and conditions of his employment, termination due to gender, race, and age discrimination, and retaliation. (Dkt. No. 2: Compl. PP 4, 7.) The parties have consented to disposition of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 18.) Presently before the Court is defendant's summary judgment motion. For the reasons stated below, the motion (Dkt. No. 28) is *GRANTED.*

*FACTS*

Richard Williams was hired by the New York Police Department ("NYPD") in May 2001 as a School Safety Agent Level I. (*See* Dkt. No. 29: City SJ Br. at 2; Dkt. No. 30: Winefsky Aff. Exs. B, C; Dkt. No. 30: Kam Aff. P 4.) Williams [*2] attended the Training Academy until August 2001 when he was assigned to the High School of Graphic Communication Arts in New York City. (Kam Aff. P 4; Winefsky Aff. Exs. B, C.) His immediate supervisor was Rosalyn Burns, a School Safety Agent Level III. (Dkt. No. 30: Burns Aff. PP 1-2; Kam Aff. P 3.) Burns supervised a total of nine employees including Williams, five females and four males. (Burns Aff. P 2; Kam Aff. P 3.)

Williams complains that Ms. Burns gave him two poor performance evaluations and that she did not treat similarly situated female employees in the same way. (Winefsky Aff. Ex. G: Williams NYCCHR Compl. P 5.) Williams asserts that Ms. Burns screamed at him in front of students and that she called him "out of . . . name like boy instead of calling [him] by Agent Williams." (Compl. Attached Handwritten pages; Dkt. No. 37: Williams SJ Opp. Ex. D: 11/23/04 Letter from Teacher Patricia Crespino: "I witnessed Sgt. Burns refer to Officer Williams as a 'boy' by saying 'Boy, where is your radio.'")

At the training academy, Williams received five demerits resulting in two Command Disciplines for which he as found guilty as charged. (Kam Aff. P 5; Winefsky Aff. Ex. A.) Williams [*3] asserts that the demerits were "baseless and ungrounded." (Williams SJ Opp. at 1.) Williams received a "Below Standards" formal written

evaluation from Burns for the May-September 2001 pe-
riod. (Kam Aff. P 6; Winefsky Aff. Ex. B.) Of the nine
male and female school safety agents supervised by
Burns, only Williams received a "'Below Standards'
evaluation." (Kam Aff. PP 6, 11.) Williams was investi-
gated by the Internal Affairs Bureau for "fraternization
with students," although the charges were found to be
unsubstantiated. (Williams SJ Opp. Att.: IAB Reports;
Winefsky Aff. Exs. C, H.)

While Burns submitted her evaluation of Williams,
she did not make a recommendation as to whether his
employment should be terminated or continued. (Burns
Aff. P 5.) Stephen Kam recommended Williams' termi-
nation, "based on his disciplinary history." (Kam Aff. P
7.) Executive Officer Samuel Willis reviewed and con-
curred in Kam's recommendation. (Kam Aff. P 8; Winef-
sky Aff. Ex. C: 10/23/01 Willis Memo.) That was en-
dorsed by Administrative School Safety Manager Gary
Armstead. (Kam Aff. P 9; Winefsky Aff. Ex. D.) Wil-
liams was terminated effective December 5, 2001. (Kam
Aff. P 10; Winefsky Aff. Ex. E: 12/5/01 Termination
[*4] Letter.) He was still a probationary employee at the
time. (Id.)

On March 26, 2002, Williams filed a complaint with
the New York City Commission on Human Rights
("NYCCHR"). (Winefsky Aff. Ex. G; see also id. Ex. H.)
Williams' complaint, under the City Human Rights Law
and Title VII, asserted only claims for gender/sex dis-
crimination. (Id.) The Commission "determined that
there is no probable cause to believe that the respondents
engaged in the unlawful discriminatory practices al-
leged." (Winefsky Aff. Ex. H at 1.) The NYCCHR
found:

> In order to remain a school safety offi-
> cer, [Williams] was required to receive a
> rating of "meets standards" on his per-
> formance evaluation form during his one-
> year probationary period. [Williams] was
> evaluated by respondent and was found to
> fall "below standard" in several catego-
> ries. . . .
>
> [Williams] fails to point to any inci-
> dents or fact or otherwise that would tend
> to support a conclusion that his termina-
> tion was the result of his gender and not
> the result of his "below standard" per-
> formance. . . . There is no evidence of
> preferential treatment toward similarly
> situated female school safety officers or
> unfair treatment to [*5] similarly situated
> male officers.

(Winefsky Aff. Ex. H: NYCCHR Decision at 2.)

The EEOC adopted the NYCCHR's findings. (Win-
efsky Aff. Ex. J: EEOC Dismissal and Notice of Rights.)

Williams' timely-filed pro se complaint in this Court
asserts claims under Title VII and the ADEA based on
race, gender/sex and age, and retaliation. (Dkt. No. 2:
Compl. page 1 & PP 4, 7.)

At his deposition, Williams explained that as to age,
he was older (44) than the other employees, and as a re-
sult he had children and needed to work overtime, and
other agents (not Burns) made fun of his age. (Winefsky
Aff. Ex. I: Williams Dep. at 87-91.) As to his claim of
race discrimination, when asked his basis for that claim,
he responded: "I don't have any answer." (Williams Dep.
at 91.) His basis for his retaliation claim is that when he
found a gun on a student, he should have been congratu-
lated but he was not, and instead was fired. (Williams
Dep. at 97: "I think they retaliated against me for the
findings of the gun, that's what I think.")

Most telling is Williams' summary judgment opposi-
tion filing, where he stated:

> Please note that for some reason un-
> known to me, Sergeant Burns, my imme-
> diate supervisor, [*6] has taken an irra-
> tional dislike to me, and that the problems
> have stemmed from that.

(Williams SJ Opp. at 2; see also Compl. Att.: Williams
handwritten statement that as to Burns, it "seems like we
had some kind of communication problem.")

### ANALYSIS

## I. LEGAL PRINCIPLES GOVERNING DISCRIMI-NATION CASES [1]

> 1    For additional cases authored by this Judge
> discussing the legal principles governing em-
> ployment discrimination cases in language sub-
> stantially similar to that in this entire section of
> this Opinion, see, e.g., Heskin v. Insite Adver.,
> Inc., 2005 U.S. Dist. LEXIS 2546, 03 Civ. 2598,
> 2005 WL 407646 at *10-16 (S.D.N.Y. Feb. 22,
> 2005) (Peck, M.J.); Taylor v. Potter, 2004 U.S.
> Dist. LEXIS 15992, 99 Civ. 4941, 2004 WL
> 1811423 at *9-14 (S.D.N.Y. Aug. 16, 2004)
> (Peck, M.J.); Dodson v. CBS Broad., Inc., 2004
> U.S. Dist. LEXIS 10787, 02 Civ. 9270, 2004 WL
> 1336231 at *15-21 (S.D.N.Y. June 15, 2004)
> (Peck, M.J.); Slaitane v. Sbarro, 2004 U.S. Dist.
> LEXIS 9839, 03 Civ. 5503, 03 Civ. 5504, 2004
> WL 1202315 at *7-12 (S.D.N.Y. June 2, 2004)

(Peck, M.J.); *Diaz v. Weill Med. College*, 2004 U.S. Dist. LEXIS 2054, 02 Civ. 7380, 2004 WL 285947 at *13-17 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.); *Viruet v. Citizen Advice Bureau*, 2002 U.S. Dist. LEXIS 15045, 01 Civ. 4594, 2002 WL 1880731 at *8-13 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); *Brown v. Cushman & Wakefield, Inc.*, 2002 U.S. Dist. LEXIS 13787, 01 Civ. 6637, 2002 WL 1751269 at *12-13, 20-22 (S.D.N.Y. July 29, 2002) (Peck, M.J.), *report & rec. adopted*, 235 F. Supp. 2d 291 (S.D.N.Y. 2002) (Berman, D.J.); *Kennebrew v. N.Y. City Hous. Auth.*, 2002 U.S. Dist. LEXIS 3038, 01 Civ. 1654, 2002 WL 265120 at *6-10 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.); *Williams v. N.Y.C. Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *8-12 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); *Gonzalez v. N.Y. City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *6, 10 (S.D.N.Y. May 9, 2001) (Peck, M.J.); *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, 99 Civ. 12117, 2000 WL 1844773 at *12 (S.D.N.Y. Dec. 18, 2000) (Peck, M.J.); *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *7, 11 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), *aff'd*, 23 Fed. Appx. 82, 2002 WL 4594 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 95 Civ. 3731, 2000 WL 1752966 at *6, 8 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.), *aff'd*,22 Fed. Appx. 76, 2001 WL 1562070 (2d Cir. 2001), *cert. denied*, 537 U.S. 848, 123 S. Ct. 189, 154 L. Ed. 2d 77 (2002); *Johns-Davila v. City of New York*, 2000 U.S. Dist. LEXIS 17012, 99 Civ. 1885, 2000 WL 1725418 at *3 (S.D.N.Y. Nov. 20, 2000) (Peck, M.J.); *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 352, 354 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 387 (S.D.N.Y. 1998) (Stein, D.J. & Peck, M.J.); *Hernandez v. New York City Law Dep't Corp. Counsel*, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *6, 12 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.).

[*7]   **A. *Summary Judgment Standards in Employment Discrimination Cases***

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

*also, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811, 124 S. Ct. 53, 157 L. Ed. 2d 24 (2003); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment - here, defendant. *See,* [*8] *e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994); *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, 106 S. Ct. at 1356; [*9] *see also, e.g., Weinstock v. Columbia Univ.*, 224 F.3d at 41 (at summary judgment, "the time has come . . . 'to put up or shut up'") (citation omitted).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S. Ct. at 2513. [2] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S. Ct. 489, 98 L. Ed. 2d 487 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d at 37.

2   *See also, e.g., Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004); *Chambers v. TRM Copy*

*Ctrs. Corp.,* 43 F.3d at 36; *Gallo v. Prudential Residential Servs., Ltd. P'Ship,* 22 F.3d at 1223.

[*10] In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. *See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S. Ct. at 2510 (citation omitted); *see also, e.g., Knight v. United States Fire Ins. Co.,* 804 F.2d at 11-12.

When a case turns on the intent of one party, as [*11] employment discrimination claims often do, a "trial court must be cautious about granting summary judgment." *Gallo v. Prudential Residential Servs., Ltd. P'Ship,* 22 F.3d at 1224. [3] Because the employer rarely leaves direct evidence of its discriminatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. *E.g., Gallo v. Prudential Residential Srvs., Ltd. P'Ship,* 22 F.3d at 1224. "Summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted). Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue [*12] of fact exists and it may grant summary judgment to the employer. *E.g., Budde v. H&K Distrib. Co.,* 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. 2000); *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1997); *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir. 1995). In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trustees of Columbia Univ.,* 131 F.3d at 312; *see, e.g., Schnabel v. Abramson,*

232 F.3d 83, 90-91 (2d Cir. 2000); *Weinstock v. Columbia Univ.,* 224 F.3d at 42 (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination. To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination. [*13] ") (internal quotations & alterations omitted); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'"). [4] Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" *Weinstock v. Columbia Univ.,* 224 F.3d at 41.

3  *Accord, e.g., Feingold v. New York,* 366 F.3d at 149; *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) ("in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment"); *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir. 1997) ("caution must be exercised in granting summary judgment where motive is genuinely in issue"); *Cardozo v. Healthfirst Inc.,* 210 F. Supp. 2d 224, 1999 WL 782546 at *1-2 (S.D.N.Y. 1999); *see also, e.g., Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d at 40.

[*14]

4  *See also, e.g., Budde v. H&K Distrib. Co.,* 216 F.3d 1071, 2000 WL 900204 at *1; *Scaria v. Rubin,* 1996 U.S. Dist. LEXIS 9659, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), *aff'd,* 117 F.3d 652, 654 (2d Cir. 1997).

## B. *Legal Principles Governing Title VII Actions*

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1).

Under the familiar *McDonnell Douglas* burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); *see, e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142,

120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000); [*15] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). [5] Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 at 506, 113 S. Ct. 2742 at 2747, 125 L. Ed. 2d 407 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094). [6]

> [5] *See also, e.g., Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3, 157 L. Ed. 2d 357 (2003); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S. Ct. 1307, 1309, 134 L. Ed. 2d 433 (1996); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47, 125 L. Ed. 2d 407 (1993); *Mandell v. County of Suffolk*, 316 F.3d 368, 377-78 (2d Cir. 2003); *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 767 (2d Cir. 2002); *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998), *abrogated on other grounds by Swierkiewicz v. Soreona N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

[*16]

> [6] *See also, e.g., Mandell v. County of Suffolk*, 316 F.3d at 380; *Mario v. P&C Food Mkts., Inc.*, 313 F.3d at 767; *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997).

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142-43, 120 S. Ct. at 2106; *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S. Ct. at 1824. [7] The burden on the defendant at this phase is one of production rather than persuasion. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142, 120 S. Ct. at 2106. [8]

> [7] *See also, e.g., Raytheon Co. v. Hernandez*, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. at 310, 116 S. Ct. at 1309; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506-07, 113 S. Ct. at 2747; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003); *Mandell v. County of Suffolk*, 316 F.3d at 380; *Mario*

*v. P&C Food Mkts., Inc.*, 313 F.3d at 767; *Schnabel v. Abramson*, 232 F.3d at 88; *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000); *Austin v. Ford Models, Inc.*, 149 F.3d at 152; *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997); *Scaria v. Rubin*, 117 F.3d at 654; *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d at 38.

[*17]

> [8] *See also, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507, 113 S. Ct. at 2747; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 257, 101 S. Ct. at 1096; *Terry v. Ashcroft*, 336 F.3d at 144 n.17; *Austin v. Ford Models, Inc.*, 149 F.3d at 153; *Scaria v. Rubin*, 117 F.3d at 654.

"Although intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143, 120 S. Ct. at 2106.

If the defendant articulates a non-discriminatory reason, the *McDonnell Douglas* burden-shifting framework drops out of the picture. *E.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 142-43, 120 S. Ct. at 2106. [9] "Moreover, although the presumption of discrimination 'drops out of the picture' [*18] once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

> [9] *See also, e.g., Raytheon Co. v. Hernandez*, 124 S. Ct. at 517 n.3; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 510, 113 S. Ct. at 2749; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253, 101 S. Ct. at 1093-94; *Feingold v. New York*, 366 F.3d at 152; *Mandell v. County of Suffolk*, 316 F.3d at 380-81; *Mario v. P&C Food Mkts., Inc.*, 313 F.3d at 767; *Weinstock v. Columbia Univ.*, 224 F.3d at 42; *Scaria v. Rubin*, 117 F.3d at 654.

[*19] The Supreme Court in 2000 clarified the standard at this stage of the *McDonnell Douglas* analysis:

> In *St. Mary's Honor Center* . . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel*

judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "it is not enough . . . to disbelieve the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity [*20] of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, *a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.*

*This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.* Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the [*21] record conclusively revealed some other, nondiscriminatory reason for the em-

ployer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

*Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.*

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis added & citations omitted).

After *Reeves*, the Second Circuit has made clear that merely [*22] proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the *McDonnell Douglas* analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:

In examining the impact of *Reeves* on our precedents, we conclude that *Reeves* prevents courts from imposing a *per se* rule requiring *in all instances* that a [Title VII] claimant offer more than a prima facie case and evidence of pretext. . . . But the converse is not true; following *Reeves*, *we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext. Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach*, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defen-

dant intentionally discriminated against the plaintiff."

Schnabel v. Abramson, 232 F.3d at 90 (emphasis added).
10

10    See also, e.g., Feingold v. New York, 366 F.3d at 152; Roge v. NYP Holdings, Inc., 257 F.3d 164, 167-68 (2d Cir. 2001); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469-70 (2d Cir.), cert. denied, 534 U.S. 993, 122 S. Ct. 460, 151 L. Ed. 2d 378 (2001); James v. New York Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); Aksamit v. 772 Park Ave. Corp., 2003 U.S. Dist. LEXIS 17499, 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2, 2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a nondiscriminatory reason for the adverse action do not save the plaintiff from summary judgment when there is insufficient evidence of discrimination."); Weiser v. Forest Pharms., Inc., 2001 U.S. Dist. LEXIS 3266, 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); Tanay v. St. Barnabas Hosp., 2001 U.S. Dist. LEXIS 2661, 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); Bennett v. Watson, Wyatt & Co., 136 F. Supp. 2d 236, 245 (S.D.N.Y.), reconsideration denied, 156 F. Supp. 2d 270 (S.D.N.Y. May 18, 2001), aff'd in part, appeal dismissed on other grounds, 51 Fed. Appx. 55, 2002 WL 31628399 (2d Cir. 2002); Connell v. Consolidated Edison Co., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record - whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence - to support an inference of discrimination.").

[*23] Indeed, the Second Circuit and District Court decisions within the Circuit continue to grant summary judgment to defendants in appropriate cases at the final McDonnell Douglas step, even after Reeves. 11

11    E.g., Molin v. Shapiro, 73 Fed. Appx. 511, 512, 2003 WL 22056217 at *1 (2d Cir. 2003); Silverman v. City of New York, 64 Fed. Appx. 799, 801, 2003 WL 1970472 at *1 (2d Cir. 2003); Tarshis v. Riese Org., 66 Fed. Appx. 238, 240, 2003 WL 1600154 at *1-2 (2d Cir. 2003); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d at 470;

James v. New York Racing Ass'n, 233 F.3d at 157; Slatky v. Healthfirst, Inc., 2003 U.S. Dist. LEXIS 20608, 02 Civ. 5182, 2003 WL 22705123 at *6 (S.D.N.Y. Nov. 17, 2003); Kulkarni v. City Univ. of N.Y., 2002 U.S. Dist. LEXIS 24684, 01 Civ. 10628, 2002 WL 31886639 at *9 (S.D.N.Y. Dec. 27, 2002); Williams v. N.Y.C. Dep't of Sanitation, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *12-19; Gonzalez v. N.Y. City Transit Auth., 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *12; Weiser v. Forest Pharms., Inc., 2001 U.S. Dist. LEXIS 3266, 2001 WL 293951 at *8; Tanay v. St. Barnabas Hosp., 2001 U.S. Dist. LEXIS 2661, 2001 WL 262695 at *9; Bennett v. Watson, Wyatt & Co., 136 F. Supp. 2d at 249-50; Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479, 2000 WL 1782744 at *13; Austin v. Ford Models, Inc., 2000 U.S. Dist. LEXIS 17174, 2000 WL 1752966 at *12-15; Trezza v. Dilenschneider Group, 2000 U.S. Dist. LEXIS 16461, 99 Civ. 0185, 2000 WL 1702029 at *5-6 (S.D.N.Y. Nov. 14, 2000); Faldetta v. Lockheed Martin Corp., 2000 U.S. Dist. LEXIS 16216, 98 Civ. 2614, 2000 WL 1682759 at *8-11 (S.D.N.Y. Nov. 9, 2000); Chudnovsky v. Prudential Sec., Inc., 2000 U.S. Dist. LEXIS 15401, 98 Civ. 7753, 2000 WL 1576876 at *8 (S.D.N.Y. Oct. 23, 2000), aff'd, 51 Fed. Appx. 901, 2002 WL 31664452 (2d Cir. 2002); Cousins v. Howell Corp., 113 F. Supp. 2d 262, 268-69 (D. Conn. 2000); Ekwegbalu v. Central Parking Sys., 2000 U.S. Dist. LEXIS 13545, 97 Civ. 9477, 2000 WL 1371335 at *3-4 (S.D.N.Y. Sept. 22, 2000);Connell v. Consolidated Edison Co., 109 F. Supp. 2d at 208-11; Lenhoff v. Getty, 2000 U.S. Dist. LEXIS 9835, 97 Civ. 9458, 2000 WL 977900 at *5-6 (S.D.N.Y. July 17, 2000); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 251 & n.12 (S.D.N.Y. 2000).

[*24] II. THE CITY IS GRANTED SUMMARY JUDGMENT ON WILLIAMS' AGE AND RACE DISCRIMINATION CLAIMS BECAUSE WILLIAMS FAILED TO ASSERT SUCH CLAIMS BEFORE THE NYCCHR/EEOC

Williams' NYCCHR complaint (which also served as his EEOC complaint) alleged gender discrimination, but not race or age discrimination. (See page 3 above.)

"'Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII.'" Hernandez v. New York City Law Dep't, 1997 U.S. Dist. LEXIS 620, 94 Civ. 9042, 1997 WL 27047 at *8 (S.D.N.Y. Jan. 23, 1997) (Peck, M.J.); accord, e.g., 42 U.S.C. § 2000e-5(e); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S. Ct. 1817, 1822, 36 L.

Ed. 2d 668 (1973); *Carter v. New York City Dep't of Corr.*, 7 Fed. Appx. 99, 102, 2001 WL 345170 at *2 (2d Cir. 2001) ("We concur with the District Court's decision to dismiss [plaintiff's] claims. [Plaintiff] failed to exhaust available administrative remedies in regard to racial discrimination claims since he did not raise them in his SDHR charge. . ."); *Lama v. Consolidated Edison*, 242 F.3d 366 (table), 2000 WL 1804510 [*25] at *1 (2d Cir. 2000) ("To the extent [plaintiff] alleged race, national origin, and age discrimination, the claims were not properly before the district court because Lama had not raised them before the EEOC."); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999) ("The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge."); *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) ("A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."). [12] "Judicial relief cannot be sought for claims not listed in the original EEOC charge unless they are 'reasonably related' to the charge." *Hernandez v. New York City Law Dep't*, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at *8 (quoting *Chojar v. Levitt*, 773 F. Supp. 645 at 650) (quoting *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 197-98 (2d Cir. 1985)); [*26] *see also, e.g., Butts v. City of New York Dep't of Housing*, 990 F.2d at 1401; *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407 at 427 (S.D.N.Y 1999); *Rivera v. Baccarat, Inc.*, 1996 U.S. Dist. LEXIS 6355, 1996 WL 251850 at *2. [13]

12  *See also, e.g., Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *McKay v. Principi*, 2004 U.S. Dist. LEXIS 22316, 03 Civ. 1605, 2004 WL 2480455 at *4 (S.D.N.Y. Nov. 4, 2004); *Smith v. Ward Leonard Elec. Co.*, 2004 U.S. Dist. LEXIS 14151, 00 Civ. 3703, 2004 WL 1661098 at *4 (S.D.N.Y. July 23, 2004); *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 427 (S.D.N.Y.) (Wood, D.J. & Peck, M.J.), *aff'd*, 201 F.3d 430 (table), 1999 WL 1070027 (2d Cir.1999) ; *Rivera v. Baccarat, Inc.*, 1996 U.S. Dist. LEXIS 6355, 95 Civ. 9478, 1996 WL 251850 at *2 (S.D.N.Y. May 10, 1996); *Dortz v. City of New York*, 904 F. Supp. 127, 142 (S.D.N.Y. 1995); *Chojar v. Levitt*, 773 F. Supp. 645, 650 (S.D.N.Y. 1991).

13  The "reasonably related" doctrine, for example, allows the Court to exercise jurisdiction over "'incidents occurring after the filing of the EEOC claim,'" *Hernandez v. New York City Law Dep't*,

1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at *8; *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d at 198, including retaliation for filing the EEOC charge. *See, e.g., Shah v. New York State Dep't of Civil Serv.*, 168 F.3d at 614; *Butts v. City of New York Dep't of Housing*, 990 F.2d at 1402 ("The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge."); *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1208-09 (2d Cir. 1993); *Hernandez v. New York City Law Dep't*, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at *8; *Dortz v. City of New York*, 904 F. Supp. at 140-41 & n.4.

[*27] While "a plaintiff's EEOC charge should be construed liberally," especially for a pro se plaintiff, "'there is a difference between liberally reading a claim which "lacks specificity," and inventing, ex nihilo, a claim which simply was not made.'" *Rivera v. Baccarat, Inc.*, 1996 U.S. Dist. LEXIS 6355, 1996 WL 251850 at *2 (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996)); *accord, e.g., Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d at 427; *Hernandez v. New York City Law Dep't*, 1997 U.S. Dist. LEXIS 620, 1997 WL 27047 at *8.

Williams' NYCCHR complaint could not be clearer: he only alleged gender/sex discrimination. (Dkt. No. 30: Winefsky Aff. Ex. G: Williams NYCCHR Compl. PP 8-9; *see also id.* Ex. H: NYCCHR Decision.) [14]

14  Even if the Court were to review these claims on the merits, Williams has presented no evidence of race discrimination and no evidence that his termination was based on his age. (*See* page 4 above.)

The City [*28] is granted summary judgment dismissing Williams' age and race discrimination claims.

### III. WILLIAMS HAS NOT PROVED GENDER DISCRIMINATION BY SUPERVISOR BURNS

Williams' complaint raises a disparate treatment claim, *i.e.*, that he was treated differently by supervisor Burns (including receiving a negative performance review) and terminated because he was a man. (*See* pages 2-3 above.)

A disparate treatment claim is one in which the employer "simply treats some people less favorably than others because of their race, color [or] religion," or other protected characteristic. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S. Ct. 1701, 1705, 123 L. Ed. 2d 338 (1993); *see also, e.g., Viruet v. Citizen Advice Bureau*, 2002 U.S. Dist. LEXIS 15045, 01 Civ. 4594, 2002 WL 1880731 at *18 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.);

*Williams v. NYC Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *15 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.);*Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 424 (S.D.N.Y.) (Wood, D.J. & Peck M.J.), *aff'd*, 201 F.3d 430 (table), 1999 WL 1070027 [*29] (2d Cir.1999).

In order to establish a prima facie case of disparate treatment discrimination in violation of Title VII (or the NYCHRL), a plaintiff must show that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties of his position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in that class. *E.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). [15]

15    *See also, e.g., Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 768 (2d Cir. 2002); *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 167 (2d Cir. 2001); *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir. 2000); *Carlton v. Mystic Transport., Inc.*, 202 F.3d 129, 134 (2d Cir.), *cert. denied*, 530 U.S. 1261, 120 S. Ct. 2718, 147 L. Ed. 2d 983 (2000); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir. 1998); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir.), *cert. denied*, 525 U.S. 1001, 119 S. Ct. 511, 142 L. Ed. 2d 424 (1998); *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 559 (2d Cir. 1997), *cert. denied*, 525 U.S. 936, 119 S. Ct. 349, 142 L. Ed. 2d 288 (1998); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63-64 (2d Cir. 1997); *Scaria v. Rubin*, 117 F.3d 652, 653-54 (2d Cir. 1997); *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S. Ct. 851, 139 L. Ed. 2d 752 (1998); *Viruet v. Citizen Advice Bureau*, 2002 U.S. Dist. LEXIS 15045, 2002 WL 1880731 at *18; *Williams v. N.Y.C. Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *16; *Gonzalez v. N.Y. City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *13 (S.D.N.Y. May 9, 2001) (Peck, M.J.); *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 99 Civ. 10533, 2000 WL 1782744 at *15 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), *aff'd*, 23 Fed. Appx. 82, 2002 WL 4594 (2d Cir. 2001); *Austin v. Ford Models, Inc.*, 2000 U.S. Dist. LEXIS 17174, 99 Civ. 3731, 2000 WL 1752966 at *11 (S.D.N.Y. Nov. 29, 2000) (Peck, M.J.), *aff'd*, 22 Fed. Appx. 76, 2001

WL 1562070 (2d Cir. 2001), *petition for cert. filed*, No. 01-10542, __ U.S.L.W. __ (U.S. May 28, 2002) [cert. denied, 537 U.S. 848, 123 S. Ct. 189, 154 L. Ed. 2d 77]; *Campbell v. Alliance National Inc.*, 107 F. Supp. 2d 234, 243 (S.D.N.Y. 2000); *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d 343, 356-57 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.).

[*30]    "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d at 654; *accord, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47, 125 L. Ed. 2d 407 (1993); *Schnabel v. Abramson*, 232 F.3d at 87. [16]

16    *See also, e.g., Weinstock v. Columbia Univ.*, 224 F.3d at 42; *Austin v. Ford Models, Inc.*, 149 F.3d at 152; *Raskin v. Wyatt Co.*, 125 F.3d at 64; *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 32 (2d Cir. 1994); *Fisher v. Vassar College*, 114 F.3d at 1335; *Williams v. N.Y.C. Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 2001 WL 1154627 at *16; *Gonzalez v. N.Y. City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 2001 WL 492448 at *13; *Cobian v. New York City*, 2000 U.S. Dist. LEXIS 17479, 2000 WL 1782744 at *16; *Weber v. Parfums Givenchy, Inc.*, 49 F. Supp. 2d at 357.

[*31]    While Williams was subject to an adverse employment action because he was terminated (satisfying the third prong), Williams fails to satisfy the fourth prong of this analysis. [17]

17    To satisfy the second prong, Williams has to show that he performed his job satisfactorily. Williams had a disciplinary record at the Academy and received a poor evaluation from Burns. (*See* page 2 above.) However, because Williams challenges the Academy disciplines and asserts that Burns' performance review itself was because of gender discrimination, the Court assumes for purposes of this motion that Williams satisfied the second prong.

Williams claims that he was terminated based upon his gender (*see generally* Compl.), but he provides no evidence of gender discrimination. [18] In fact, in his opposition brief he asserts that Burns had an "irrational dislike" of him for "some reason unknown" to Williams. (*See* page 4 above.)

18    Even if a prima facie case were found, this same analysis applies with even greater force at the third *McDonnell-Douglas* stage.

[*32]  The only potentially gender-specific comment that Williams asserts is that Burns referred to him as "boy" (which frankly sounds more like a potentially racial comment than one based on gender), yet such a stray remark (even if that were a gender based remark), unrelated to his evaluation or termination, does not constitute evidence of discrimination. E.g., Wilton v. City & Cty. of San Francisco, 60 F.3d 836 (table), 1995 WL 398845 at *3 (9th Cir. 1995) ("Although [manager's] comments were crass . . ., they were isolated, and are insufficient to establish a hostile work environment. The one racial comment, [manager's] use of the word 'brother' at some time over a year before the altercation, is not enough to create sufficient specific evidence to survive summary judgment. Stray remarks are insufficient to establish discrimination."); see, e.g., Taylor v. Potter, 2004 U.S. Dist. LEXIS 15992, 99 Civ. 4941, 2004 WL 1811423 at *15 (S.D.N.Y. Aug. 16, 2004) (Peck, M.J.); Ferrand v. Credit Lyonnais, 2003 U.S. Dist. LEXIS 17202, 02 Civ. 5191, 2003 WL 22251313 at *11 (S.D.N.Y. Sep. 30, 2003) ("Whitehair's stray remarks Ladouceur referred to are insufficient [*33] to meet Ferrand's burden of proving that the legitimate reasons provided by Credit Lyonnais for the adverse employment actions Ferrand alleges are pretextual. Ladouceur offers no specific context for the remarks, nor does he indicate that they were said in reference or leading to the alleged adverse employment actions at issue here and Ferrand does not otherwise sufficiently establish that they were."), reconsideration denied, 292 F. Supp. 2d 518 (S.D.N.Y. Nov. 19, 2003), aff'd, 110 Fed. Appx. 160, 2004 WL 2029988 (2d Cir. 2004); Viruet v. Citizen Advice Bureau, 2002 U.S. Dist. LEXIS 15045, 01 Civ. 4594, 2002 WL 1880731 at *15 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.) ("Isolated incidents of discriminatory comments or conduct [are] not sufficient to establish a hostile work environment.") (citing cases); Magnan v. Manhattan Eye, Ear & Throat Hosp., 2002 U.S. Dist. LEXIS 3437, 01 Civ. 6306, 2002 WL 334505 at *5 (S.D.N.Y. Feb. 28, 2002) ("Furlong's remarks in a single conversation that plaintiff did not receive severance because she was a 'girl' and that MEETH was run by an 'old boy network' represent stray remarks by a non-decision maker, and, [*34] as such, do not constitute sufficient evidence of discrimination.") (internal citation omitted);Harris v. McGraw-Hill Cos., 2001 U.S. Dist. LEXIS 20234, 98 Civ. 2083, 2001 WL 1568296 at *5 (S.D.N.Y. Dec. 7, 2001) ("The Court finds that Chastain's isolated comment does not constitute discrimination and is not the type of conduct that Title VII was meant to prevent. The fact that Plaintiff was personally offended by the remark does not convert such conduct into discrimination."); Adeniji v. Administration for Children Servs., 43 F. Supp. 2d 407, 413 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.) ("As Magistrate Judge Peck correctly points out, it is well-settled that one racial remark, or even sporadic remarks, are not sufficient to establish a hostile work environment."), aff'd,201 F.3d 430 (table), 1999 WL 1070027 (2d Cir. 1999).

Moreover, to establish a disparate treatment claim, the employees that Williams compares himself to "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001); [*35] see, e.g., Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000) ("to satisfy [the] 'all material respects' standard for being similarly situated, a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standard. . . . In addition, the standard . . . requires plaintiff to show that similarly situated employees who went undisciplined engaged in comparable conduct." Factors include "whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . There should be an 'objectively identifiable basis for comparability.'"); Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997) ("To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects."); Viruet v. Citizen Advice Bureau, 2002 U.S. Dist. LEXIS 15045, 2002 WL 1880731 at *19.

While Williams notes that the two female probationary school safety agents at Graphic Arts High School were not terminated (Winefsky Aff. Ex. I: Williams Dep. at 47, 48), he fails to show that they were similarly situated. Williams was [*36] the only probationary school safety agent at his school that had a disciplinary record from the Academy and a negative performance review. (See page 2 above.) See, e.g., Jones v. Yonkers Pub. Schs., 326 F. Supp. 2d 536, 545 (S.D.N.Y. 2004) ("Plaintiff's allegations of disparate treatment with respect to employees having visitors during work hours ring hollow because plaintiff, as a probationary employee, was not situated similarly to Hillman and Synan, who were non-probationary."). As the City Commission on Human Rights noted, "there is no evidence of preferential treatment toward similarly situated female school safety officers or unfair treatment to similarly situated male officers." (Winefsky Aff. Ex. H: NYCCHR Decision at 2.) Williams has not presented any evidence of gender discrimination, as opposed to the fact that his supervisor Burns had an "irrational dislike" of him for "some reason unknown." (Dkt. No. 37: Williams SJ Opp. at 2.) A supervisor's "dislike" of an employee, however, does not violate Title VII. See, e.g., Henkin v. Forest Labs, Inc., 2003 U.S. Dist. LEXIS 3060, 01 Civ. 4255, 2003 WL 749236 at *8 (S.D.N.Y. Mar. 5, 2003) ("The evidence [*37] is clear that plaintiff's supervisors may have been

hostile towards her, but there is no evidence that this hostility was because of her protected class. Plaintiff does not show that hostility to her arose out of any animus towards plaintiff based on her religion, national origin, or age. Title VII and the ADEA are not general civility codes."), *aff'd*, 88 Fed. Appx. 478, 2004 WL 436006 (2d Cir. 2004); *Figueroa v. City of New York*, 2002 U.S. Dist. LEXIS 18340, 00 Civ. 7559, 2002 WL 31163880 at *3 (S.D.N.Y. Sep. 27, 2002) ("Courts have repeatedly granted summary judgment where the evidence points, not to gender or racial animus, but rather to the fact that plaintiff's personality is the motivation for the harassment.") (citing cases), *aff'd*, 118 Fed. Appx. 524, 2004 WL 2823327 (2d Cir. 2004).

Williams has failed to establish a prima facie case of disparate treatment gender discrimination. The City is granted summary judgment dismissing Williams' gender discrimination claim.

## IV. WILLIAMS FAILS TO ESTABLISH A RETALIATION CLAIM

Williams asserted a claim of retaliation in his complaint in this action by putting [*38] a checkmark next to the word retaliation in the paragraph listing discriminatory conduct. (Dkt. No. 2: Compl. P 4.) However, Williams does not assert a retaliation claim in any detail elsewhere in his motion papers, and when he was asked at his deposition about his retaliation claim, he stated, "I think they brought that -- instead of, you know, giving me a plaque or congratulated me [for finding a gun on a student], they turn around and got rid of me. . . . I think they retaliated against me for the findings of the gun, that's what I think." (Dkt. No. 30: Winefsky Aff. Ex. I: Williams Dep. at 96-97.)

Williams' opposition to defendant's summary judgement motion does not address the retaliation claim or defendant's motion as to that claim. (*See generally* Dkt. No. 37: Williams SJ Opp.) On this basis alone, the Court could consider the retaliation claim abandoned. *See, e.g., Diaz v. Weill Med. College*, 2004 U.S. Dist. LEXIS 2054, 02 Civ. 7380, 2004 WL 285947 at *20 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.) ("Plaintiff's brief opposing [defendant's] summary judgment motion does not address the retaliation claim or [defendant's] summary judgment motion as to that claim. [*39] On this basis alone, the Court could consider the retaliation claim abandoned.") (record citation omitted); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. Nasdaq/Amex Mkt. Group*, 2003 U.S. Dist. LEXIS 166, 00 Civ. 9827, 2003 WL 354978 at *13 (S.D.N.Y. Feb. 13, 2003) (Where

plaintiff's summary judgment opposition "neither refuted nor even mentioned" defendant's argument for summary judgment on two of his claims, those claims dismissed as "abandoned."); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (Where plaintiff's summary judgment opposition papers "made no argument in support of [one] claim *at all*," the court dismissed the claim as "abandoned."); *Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (Stein, D.J. & Peck, M.J.) (Where plaintiff's opposition papers "never even mention[] any retaliation . . . claim in his brief or affidavits . . . the [*40] Court deems all of the remaining claims in the complaint to be abandoned, and recommends that defendants be granted summary judgment dismissing these claims.") (citing cases). In any event, Williams' claim is without merit.

Title VII retaliation claims also are governed by the *McDonnell Douglas* burden-shifting analysis. *See, e.g., Terry v. Ashcroft*, 336 F.3d at 141; *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79-81 (2d Cir. 2001); *Slattery v. Swiss Reins. America Corp.*, 248 F.3d 87, 94 (2d Cir.), *cert. denied*, 534 U.S. 951, 122 S. Ct. 348, 151 L. Ed. 2d 263 (2001); *Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001); *Sotolongo v. New York City Transit Auth.*, 216 F.3d 1073 (table), 2000 WL 777958 at *2-3 (2d Cir. 2000); *Diaz v. Weill Med. College*, 2004 U.S. Dist. LEXIS 2054, 2004 WL 285947 a *21. [19]

> [19] *See also, e.g., Kennebrew v. New York Hous. Auth.*, 2002 U.S. Dist. LEXIS 3038, 01 Civ. 1654, 2002 WL 265120 at *17 (S.D.N.Y. Feb. 26, 2002) (Peck, M.J.); *Williams v. N.Y.C. Dep't of Sanitation*, 2001 U.S. Dist. LEXIS 15594, 00 Civ. 7371, 2001 WL 1154627 at *19-20 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); *Gonzalez v. New York City Transit Auth.*, 2001 U.S. Dist. LEXIS 5908, 00 Civ. 4293, 2001 WL 492448 at *18 (S.D.N.Y. May 9, 2000) (Peck, M.J.); *Economou v. Caldera*, 2000 U.S. Dist. LEXIS 18231, 99 Civ. 12117, 2000 WL 1844773 at *25 (S.D.N.Y. Dec. 18, 2000) (Peck, M.J.); *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d 407, 428 (S.D.N.Y.) (Wood, D.J. & Peck, M.J.), *aff'd*, 201 F.3d 430 (table), 1999 WL 1070027 (2d Cir. 1999).

[*41] Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). [20]

20  See, e.g., *Terry v. Ashcroft*, 336 F.3d at 140; *Diaz v. Weill Med. College.*, 2004 U.S. Dist. LEXIS 2054, 2004 WL 285947 at *21; *Minott v. Port Auth.*, 116 F. Supp. 2d 513, 520, 524 (S.D.N.Y. 2000) ("Title VII defines protected activities as (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding."); *see also Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) ("The objective of [the section prohibiting retaliation] is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.").

[*42] Williams' retaliation claim is not based on his protected conduct, such as the filing of his NYCCHR charge. Since Williams was terminated before he filed his NYCCHR complaint, his termination could not be in retaliation for his subsequent NYCCHR complaint. *See, e.g., Diaz v. Weill Med. College*, 2004 U.S. Dist. LEXIS 2054, 2004 WL 285947 at *21. [21]

21  *See also, e.g., Kennebrew v. N.Y. City Hous. Auth.*, 2002 U.S. Dist. LEXIS 3038, 2002 WL 265120 at *17; *Adeniji v. Administration for Children Servs.*, 43 F. Supp. 2d at 428-29 (citing cases); *Taylor v. Polygram Records*, 1999 U.S. Dist. LEXIS 2583, 94 Civ. 7689, 1999 WL 124456 at *21 (S.D.N.Y. Mar. 8, 1999) (because plaintiff's "position was already demonstrably at risk *before* she hired [an attorney] or filed the [EEOC] charge, Plaintiff cannot show on the basis of temporal proximity alone that her termination resulted from that conduct."); *DuBois v. State of New York*, 966 F. Supp. 144, 148 (N.D.N.Y. 1997) ("The alleged [retaliation] necessary preceeded plaintiff's March 12, 1996 EEOC complaint since defendant terminated her on July 22, 1995. Thus, ostensibly there can be no factual connection between these two events."); *Doria v. Cramer Rosenthal McGlynn, Inc.*, 942 F. Supp. 937, 943 (S.D.N.Y. 1996) (Parker, D.J.) ("Here, the majority of the discriminatory acts which [plaintiff] alleges were taken in response to her EEO complaint took place *prior* to [the filing of her EEO complaint], and therefore could not have been retaliatory.").

[*43] **CONCLUSION**

For the reasons stated above, defendant's summary judgment motion (Dkt. No. 28) is granted and Williams' claims are dismissed. The Clerk of Court is to enter judgment for defendant New York City dismissing Williams' complaint.

SO ORDERED

DATED: New York, New York

April 12, 2005

/s/ Andrew J. Peck

**Andrew J. Peck**

United States Chief Magistrate Judge

LEXSEE



Positive
As of: Jun 26, 2007

**BARBARA WITCHARD, Plaintiff, -against- MONTEFIORE MEDICAL CENTER
and 1199 SERVICE EMPLOYEES INTERNATIONAL UNION, Defendants.**

**05 Civ. 5957 (JSR) (THK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2006 U.S. Dist. LEXIS 72811**

**July 19, 2006, Decided**

**SUBSEQUENT HISTORY:** Adopted by, Summary judgment denied by, Claim dismissed by Witchard v. Montefiore Med. Ctr., 2006 U.S. Dist. LEXIS 72819 (S.D.N.Y., Sept. 26, 2006)

**COUNSEL:** [*1] Barbara Witchard, Plaintiff, Pro se, Bronx, NY.

For Montefiore Medical Center, Defendant: Jean L. Schmidt, Richard Malcom Reice, Jonas Karp, Natlie Susan Rothman, Brown, Raysman, Millstein, Felder & Steiner LLP, New York, NY.

For 1199 Service Employees International Union, Defendant: Clarissa Yvette Jones, Jennifer Jenkins Middleton, Levy Ratner, P.C., New York, NY.

**JUDGES:** THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE. HON. JED S. RAKOFF, United States District Judge.

**OPINION BY:** THEODORE H. KATZ

**OPINION**

**REPORT AND RECOMMENDATION**

**TO: HON. JED S. RAKOFF, United States District Judge.**

**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

Plaintiff, Barbara Witchard, brings this employment discrimination action against Defendants 1199 Service Employees International Union ("1199" or the "Union") and Montefiore Medical Center ("Montefiore"), alleging disability discrimination and wrongful termination. Presently before the Court is the Union's Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Montefiore's Motion for Summary Judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. [*2] The motions were referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, this Court recommends that the Union's Motion to Dismiss be granted, and Montefiore's Motion for Summary Judgment be denied.

**PROCEDURAL HISTORY**

On June 21, 2004, Plaintiff filed an action in New York Supreme Court, Bronx County, against Montefiore and 1199, alleging breach of contract, disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112-17 (the "ADA"), and duty of representation claims (the "2004 Action"). (See Verified Complaint, Witchard v. Montefiore Med. Ctr. and 1199 SEIU, Index No. 17899-2004 (N.Y. Sup. Ct. June 21, 2004) ("2004 Complaint"), attached as Exhibit ("Ex.") B to Declaration of Richard Reice, Esq., dated Dec. 21, 2005 ("Reice Decl.").) On August 4, 2004, Montefiore removed the action to the Southern District of New York. (See Petition For Removal, dated Aug. 6, 2004, attached as Ex. D to Reice Decl.) On Oct. 6, 2004, the Court (Rakoff, J.) dismissed

Page 1

the case with prejudice. [*3] (See Order, dated Oct. 6, 2004 ("Dismissal Order"), attached as Ex. E to Reice Decl.)

Subsequent to the dismissal of the 2004 Action, on December 15, 2004, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC") against Montefiore, alleging disability discrimination in violation of the ADA. (See Charge of Discrimination, dated Dec. 15, 2006 ("EEOC Charge"), attached as Ex. E to Reice Decl.) The EEOC issued right to sue letters to Plaintiff on February 28 and March 30, 2005. (See Dismissal and Notice of Rights, dated Feb. 28, 2005 ("Feb. Right to Sue Notice"), attached as Ex. F to Reice Decl.; Dismissal and Notice of Rights, dated Mar. 30, 2005 ("Mar. Right to Sue Notice"), attached as Ex. B to Declaration of Clarissa Y. Jones, Esq., dated Nov. 23, 2005.) [1]

> 1. Defendant Montefiore submitted the February Notice as an exhibit to its Motion for Summary Judgment, and Defendant 1199 attached the March Notice as an exhibit to its Motion to Dismiss. The only discernable difference between the two notices is that the February Right to Sue Notice refers to EEOC Charge No. 160-2005-00511, while the March Right to Sue Notice refers to a Charge Number of 160-2005-00512. Neither letter includes the name of a defendant or a caption. For purposes of the present motion, the Court has used the March Notice submitted by the Union for statute of limitations purposes.

[*4] Plaintiff filed the present action on June 28, 2005. (See Complaint, filed June 28, 2005.) [2] As of August 12, 2005, the Court's docket for this action indicated that Plaintiff had not served the Complaint. Accordingly, this Court sent Plaintiff a letter informing her of the requirements of Rule 4(m) of the Federal Rules of Civil Procedure. (See Letter to Barbara Witchard, dated Aug. 12, 2006, attached as Ex. 3 to Affidavit of Barbara Witchard, dated Jan. 3, 2006 ("Pl.'s Aff.").) The letter advised Plaintiff that if service was not made upon Defendants by October 26, 2005, and Plaintiff did not demonstrate good cause for such a failure, the Court would recommend that the action be dismissed. (See id. at 1.)

> 2. The Complaint is stamped as received by the Southern District's Pro Se Office on May 26, 2005.

On September 23, 2005, Plaintiff filed an Amended Complaint, and an Amended Summons was issued as to both Defendants. (See Amended Complaint, filed Sept. 23, 2005.) [*5] Plaintiff, proceeding in forma pauperis, used the United States Marshals Service to effect service.

The Marshals Service served Montefiore on November 2, 2005, and served the Union on November 3, 2005.

## DISCUSSION

### I. Montefiore's Motion for Summary Judgment

#### A. Untimely Service

Montefiore argues that Plaintiff's claims should be dismissed because service of the Amended Complaint was untimely. According to Rule 4(m) of the Federal Rules of Civil Procedure,

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; *provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.*

Fed. R. Civ. P. 4(m) (emphasis added). Thus, courts have discretion to extend the deadline for service. See id.; Sidney v. Wilson, 228 F.R.D. 517, 521 (S.D.N.Y. 2005). [*6] In addition, a court can disregard a failure to meet the 120-day limit for service if a plaintiff can show "good cause" for the failure to timely serve. See Fed. R. Civ. P. 4(m); Romandette v. Weetabix Co., 807 F.2d 309, 311 (1986).

Plaintiff filed the present action on June 28, 2005, and filed an Amended Complaint on September 23, 2005. Plaintiff submitted her Amended Complaint and Amended Summons to the United States Marshals Service for service on both Defendants on September 30, 2006. (See U.S. Dep't of Justice United States Marshals Service Process Receipts, stamped received on Sept. 30, 2005 ("Process Receipts").) Montefiore was served on November 2, 2005, and the Union was served on November 3, 2005.

Pursuant to Rule 4(m), Plaintiff had until October 26, 2006 to properly serve Defendants. Because Plaintiff is proceeding in forma pauperis, she was entitled to use the United States Marshals Service to effect service. See Thompson v. Maldonado, 309 F.3d 107, 109 n.2 (2d Cir. 2002). Service of the Amended Complaint on Montefiore and the Union fell outside the period allowed for service by seven [*7] days and eight days, respectively.

Plaintiff has not argued good cause in her response to Montefiore's motion. This is due most likely to a glaring typo in Montefiore's Memorandum, stating that "Plaintiff served this revised Complaint on Montefiore on October 2, 2005, one hundred twenty-eight days after the commencement of the lawsuit." (See Montefiore's Mem. at 2.). Plaintiff takes this statement as an admission that Montefiore was served on October 2, 2005, twenty-four days before the end of the 120-day service period. (See Pl.'s Aff. at 2.) The Docket shows that, in fact, Montefiore was served on November 2, 2005, 127 days after the filing of the original Complaint.

Even though Plaintiff bears the burden of proving the adequacy of service once it has been challenged, the Court may take judicial notice of facts contained in the record in adjudicating a motion for summary judgment. See Kaggen v. I.R.S., 71 F.3d 1018, 1019-20 (2d Cir. 1995) (on motion for summary judgment, the court may take judicial notice of facts not reasonably subject to dispute which are capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned); [*8] cf. Sidney, 228 F.R.D. at 522 (court may take judicial notice of facts contained in the record in adjudicating a motion to dismiss). The Marshals Service's Process Receipts in the Court's file show that Plaintiff submitted the Amended Summons and Amended Complaint to the United States Marshals Service for service on both Defendants on September 30, 2006. (See Process Receipts.) Plaintiff gave the Marshals Service almost a month before the expiration of the 120-day period to serve Defendants. "'The failure of the Marshals Service to properly effect service of process constitutes 'good cause' within the meaning of Rule 4(m)." McCalmann v. Partners in Care, 2002 U.S. Dist. LEXIS 7460, No. 01 Civ. 58447 (SHS) (FM), 2002 WL 856465, at *1 (S.D.N.Y. Apr. 25, 2002) (Report and Recommendation, adopted July 22, 2002) (citation omitted); see also Jackson v. Foley, 156 F.R.D. 545, 547 (E.D.N.Y. 1994) (noting that courts have found that reliance on the Marshals Service can be considered good cause). Thus, the Court finds that Plaintiff's use of the United States Marshals Service constitutes good cause, because Plaintiff gave the Marshals Service ample time to carry out [*9] timely service. Cf. Romandette, 807 F.2d at 311 (reversing dismissal based on failure to effect service and finding good cause where incarcerated pro se plaintiff had timely requested the Marshals Service to effect service); McCalmann, 2002 U.S. Dist. LEXIS 7460, 2002 WL 856465, at *1-2 (finding good cause for untimely service where pro se plaintiff delivered summons and complaint to the Marshals Service twenty days prior to the deadline for service, and the Marshals Service took three weeks to effect service); Jackson, 156 F.R.D. at 547 (denying motion to dismiss for improper service

where the defendants were properly served fourteen days after the expiration of the 120-day limit).

Further, Defendants have not shown that they would be unduly prejudiced by allowing this action to continue. Under the circumstances, Plaintiff's time to effect service should be extended to November 3, 2005, nunc pro tunc, the date by which the Marshals Service had served both Defendants. Based on this extension, Montefiore's motion for summary judgment based on untimely service should be denied.

B. Failure to Serve the Original Complaint

Montefiore argues that [*10] Plaintiff's claims should be dismissed because Plaintiff failed to serve Montefiore with the original Complaint, filed on June 28, 2006. (See Montefiore's Mem. at 4.) Montefiore seems to be arguing that Plaintiff's service of the Amended Complaint, on November 2, 2005, did not correct this deficiency. Montefiore does not cite to any authority for this proposition, and the Court rejects Montefiore's argument.

Service of an amended complaint within 120 days of filing suit has been held to satisfy Rule 4(m), even though a defendant has not been served with the original complaint. See Bakal v. Ambassador Constr., 1995 U.S. Dist. LEXIS 10542, No. 94 Civ. 584 (JSM), 1995 WL 447784, at *2 (S.D.N.Y. July 28, 1995). "[If a] plaintiff amends his complaint, to require service of the original complaint rather than the amended complaint would promote a useless exercise and exalt form over substance." Crossen v. Bernstein, 1994 U.S. Dist. LEXIS 8388, No. 91 Civ. 3501 (PKL), 1994 WL 281881, at *8 (S.D.N.Y. June 23, 1994). Plaintiff gave her Amended Complaint to the United States Marshals Service almost a month before Rule 4(m)'s 120-day period was set to expire. The Court has found that Plaintiff's use of the Marshals [*11] Service satisfies Rule 4(m)'s requirements, and has deemed the Amended Complaint timely served. Therefore, Defendant's argument that Plaintiff's service of the Amended Complaint, as opposed to her original Complaint, fails to meet the requirements of Rule 4(m), is without merit.

II. 1199's Motion to Dismiss

A. Time-Bar

In a similar vein, the Union argues that this action is time-barred because Plaintiff's filing of the Amended Complaint in September 2005 occurred more than 90 days after she received her Right to Sue Notice from the EEOC. (See Memorandum of Law in Support of Defendant 1199 SEIU United Healthcare Workers East Motion to Dismiss, dated Nov. 23, 2005 ("Union's Mem."), at 5.) To be timely, actions for violations of the ADA must be filed within 90 days of receipt of notice from the EEOC.

Page 3

See 42 U.S.C.A. § 12117 (applying Title VII's proce-
dures for civil actions by aggrieved persons, 42 U.S.C.A.
§ 2000e-5(f) (1), which require that civil actions be
brought within 90 days after the EEOC gives notice of
dismissal).

Plaintiff filed a charge with the EEOC alleging dis-
ability discrimination in violation [*12] of the ADA on
December 15, 2004. (See EEOC Charge.) The EEOC
issued a right to sue notice to Plaintiff on March 30,
2005. (See Mar. Right to Sue Notice.) The Letter in-
formed Plaintiff that claims under the ADA **"must be
filed WITHIN 90 DAYS of receipt of this Notice."**
(See id.) (emphasis in original.) This means that, using
the date on the March Right to Sue Notice, Plaintiff
would have had to file her Complaint by June 29, 2005.
Plaintiff's Complaint is stamped as received by this
Court's Pro Se Office on May 26, 2005, and was filed on
June 28, 2006. Plaintiff's Complaint was officially filed
one day before the limitations period expired on June 29,
2005, and therefore, was timely filed. [3]

> 3    The delay between Plaintiff's submission of
> her Complaint to the Pro Se Office and the Com-
> plaint's official filing occurred because Plaintiff's
> Complaint was accompanied by an application to
> proceed in forma pauperis, which was granted on
> June 27, 2005.

Moreover, for statute of limitations [*13] purposes,
the filing date is considered to be that date on which the
Complaint was filed with the Pro Se Office, which was
May 26, 2005. See Toliver v. County of Sullivan, 841
F.2d 41, 42 (2d Cir. 1988) (holding that pro se complaint
was timely filed where it was stamped as received by the
pro se clerk prior to the expiration of the EEOC's 90-day
limitations period, even though the complaint was not
filed until more than 90 days after the date on the right to
sue letter). Even if the date of the February Right to Sue
Notice, February 28, 2005, is used for statute of limita-
tions purposes, Plaintiff would have timely commenced
this action by submitting her Complaint to this Court's
Pro Se Office before May 30, 2005.

The timeliness of this action is not effected by the
date on which Plaintiff served the Amended Complaint,
rather than the original Complaint, on Defendants. Plain-
tiff's filing of the Complaint with the Pro Se Office on
May 26, 2005 complied with the 90-day statute of limita-
tions, and her service of the Amended Complaint using
the Marshals Service is deemed to have met the require-
ments of Rule 4(m). Thus, the Union's argument that this
[*14] action is time-barred is without merit.

B. Res Judicata

The final argument raised in the Union's Motion to
Dismiss is that this action should be dismissed under the
doctrine of res judicata. (See Union Mem. at 6.) The Un-
ion contends that Plaintiff's 2004 Action, filed against the
Union and Montefiore on June 21, 2004, alleged duty of
fair representation claims and disability discrimination
claims. (See id.) The 2004 Action was dismissed with
prejudice on October 6, 2004. (See Order, dated Oct. 6,
2004, attached as Ex. E to Reice Decl.) The Union al-
leges that although Plaintiff's current pro se Amended
Complaint is much more detailed than the complaint
filed by her attorney in the 2004 Action, the conduct,
parties, and time period alleged in this action are identi-
cal to those alleged by Plaintiff in her first suit. (See Un-
ion Mem. at 7.)

1. Applicable Law

"Res judicata challenges may properly be raised via
a motion to dismiss for failure to state a claim under Rule
12(b) (6)." Thompson v. County of Franklin, 15 F.3d
245, 253 (2d Cir. 1994); accord Weinraub v. Glen Rauch
Sec., Inc., 399 F. Supp. 2d 454, 459 (S.D.N.Y. 2005);
[*15]  see also Houbigant, Inc. v. Dev. Specialists, Inc.,
229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002) ("Though res
judicata is usually plead in an answer, a Rule 12(b)(6)
dismissal on the basis of the doctrine is appropriate when
it is clear . . . that plaintiff's claims are barred as a matter
of law.") (citing Day v. Moscow, 955 F.2d 807, 811 (2d
Cir. 1992)).

Under the doctrine of res judicata, or claim preclu-
sion, "[a] final judgment on the merits of an action pre-
cludes the parties or their privies from relitigating issues
that were or could have been raised in that action." San
Remo Hotel, L.P. v. City and County of San Francisco,
545 U.S. 323, 332, 125 S. Ct. 2491, 2500 n.16, 162 L.
Ed. 2d 315 (2005) (quoting Allen v. McCurry, 449 U.S.
90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980));
accord Aurecchione v. Schoolman Transp. Sys., Inc., 426
F.3d 635, 640 (2d Cir. 2005); King v. Fox, 418 F.3d 121,
131 (2d Cir. 2005). In other words, "when a final judg-
ment has been entered on the merits of a case, it is a fi-
nality as to the claim or demand in controversy . . . ."
SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1463 (2d
Cir. 1996) [*16]  (quoting Nevada v. United States, 463
U.S. 110, 129-30, 103 S. Ct. 2906, 2918, 77 L. Ed. 2d
509 (1983)); accord Interoceanica Corp. v. Sound Pilots,
Inc., 107 F.3d 86, 90 (2d Cir. 1997).

To demonstrate that a claim is precluded based upon
res judicata, the moving party must show that: (1) the
previous action involved an adjudication on the merits;
(2) the previous action involved the parties or those in
privity with them; and (3) the claims asserted in the sub-
sequent action were, or could have been, raised in the
prior action. See Monahan v. New York City Dep't of

Corr., 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted); accord Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001); Melwani v. Jain, 2004 U.S. Dist. LEXIS 16867, No. 02 Civ. 1224 (DF), 2004 WL 1900356, at *1 (S.D.N.Y. Aug. 24, 2004).

2. Application

In order to satisfy the first prong under Monahan, the Union must show that there was an adjudication on the merits of Plaintiff's first action. See Monahan, 214 F.3d at 285. An "adjudication on the merits" has "a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, [*17] that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted); accord Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003); Holmes v. Artus, 2005 U.S. Dist. LEXIS 7780, No. 03 Civ. 7065 (LAP) (GWG), 2005 WL 1027195, at *10 (S.D.N.Y. May 4, 2005). A judgment is final when it puts an end to the particular litigation, "[leaving] nothing for the court to do but execute the judgment." Kamerling v. Massanari, 295 F.3d 206, 213 (2d Cir. 2002); accord In re Ad Hoc Committee of Tort Victims, 2005 U.S. Dist. LEXIS 1540, No. 04 Civ. 08934 (CSH), 2005 WL 267564, at *2 (S.D.N.Y. Feb. 3, 2005).

The Union emphasizes that the 2004 Action was dismissed with prejudice on October 6, 2004. (See Union Mem. at 6-7.) The Order explaining the dismissal is two sentences long: "For the reasons stated from the bench, see transcript, 10/5/04, the complaint is dismissed with prejudice. Clerk to enter judgment." (See Dismissal Order.) Neither Defendant has explained the basis for the dismissal. Plaintiff though, attached the transcript of the hearing, where her case [*18] was dismissed, to her affidavit. (See Hearing Transcript ("Hr'g Tr."), attached to Pl.'s Aff.) The hearing appears to be an oral argument on Defendants' motion to dismiss the 2004 Action. During the hearing, the Court dismissed Plaintiff's state law claims as preempted by the Labor Management Relations Act. (See id. at 4.) After argument by counsel, the court then dismissed Plaintiff's LMRA claims against the Union, finding that Plaintiff had failed to exhaust her union remedies. (See id. at 9.) The court noted that it "would be futile to allow repleading given what has been put forward by plaintiff's counsel and his client in this very motion practice." (See id. at 9.)

Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits. The Second Circuit has stated,

[I]t is well settled that a judgment dismissing a complaint on a general demurrer or its modern substitute under the Fed-

eral Rules a motion to dismiss for failure to state a claim upon which relief can be granted and without reservation of any issue, is presumed to be upon the merits, unless the contrary appears of record or is stated [*19] in the decree, and the judgment has the same effect of res judicata as though rendered after trial, in a subsequent suit on the same claim.

Mitchell v. Nat'l Broad. Co., 553 F.2d 265, 271 (2d Cir. 1977); see also Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976) (stating that "judgments under 12(b)(6) are on the merits, with res judicata effects"). However, a dismissal for failure to exhaust administrative remedies is not necessarily an adjudication on the merits. Such dismissals are normally without prejudice, and do not bar instituting another suit after administrative remedies are properly exhausted. See generally, Criales v. Am. Airlines, Inc., 105 F.3d 93, 95-97 (2d Cir. 1997); see also Heckman v. Olive, 1992 U.S. Dist. LEXIS 19090, No. CV 88-2981 (RJD), 1992 WL 390249, at *4 (E.D.N.Y. Dec. 9, 1992) ("A dismissal for failure to exhaust administrative remedies does not preclude litigation of the claim once the exhaustion requirement has been satisfied."). Conversely, a dismissal is considered to be on the merits where it is no longer possible to properly exhaust administrative remedies. [*20] Cf. Henneberry v. Sumitomo Corp. of Am., 2005 U.S. Dist. LEXIS 7475, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *4 (S.D.N.Y. Apr. 27, 2005) ("If the district court decides to dismiss any claim, that dismissal is generally considered a judgment on the merits, unless dismissed for some 'curable defect'") (citing Criales, 105 F.3d at 98).

Plaintiff's claims in the 2004 Action against the Union were dismissed for her failure to exhaust her union remedies. Specifically, the court found that although Plaintiff alleged that the Union refused her request to file a grievance, she had not pleaded that she was denied an opportunity to appeal this decision. (Hr'g Tr. at 8-9.)

"In this Circuit, it is well established that Section 301 of the LMRA requires the employee to exhaust grievance procedures before bringing a claim." See Henry v. Cmty. Res. Ctr., Inc., 1996 U.S. Dist. LEXIS 6414, No. 95 Civ. 5480 (AJP) (JGK), 1996 WL 251845, at *5 (S.D.N.Y. May 13, 1996). Nevertheless, the exhaustion requirement under LMRA is not absolute, but rather, "the requirement that a plaintiff exhaust internal union remedies lies within the court's discretion." Maddalone v. Local 17, United Bros. of Carpenters and Joiners of Am., 152 F.3d 178, 186 (2d Cir. 1998) [*21] (citing Clayton v. International Union, United Auto., 451

U.S. 679, 689, 101 S. Ct. 2088, 2095, 68 L. Ed. 2d 538 (1981)); see also Clarke v. Commc'ns. Workers of Am., 318 F. Supp. 2d 48, (E.D.N.Y. 2004); Henry, 1996 U.S. Dist. LEXIS 6414, 1996 WL 251845, at *5. The Supreme Court has held that a court should consider three factors in exercising this discretion, but if none of these factors exist, the exhaustion requirement advances national labor policy of encouraging private resolution of contractual disputes. See Henry, 1996 U.S. Dist. LEXIS 6414, 1996 WL 251845, at *5-6. [4] In the 2004 Action, the court exercised its discretion to require Plaintiff to meet the LMRA's exhaustion requirement, and then, finding that Plaintiff had failed to exhaust her administrative remedies, dismissed her LMRA claims.

> [4] The three factors are "'[F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks . . .; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.'" Maddalone, 152 F.3d at 186 (quoting Clayton, 451 U.S. at 689, 101 S. Ct. at 2095).

[*22] Because the 2004 Action was dismissed due to Plaintiff's failure to exhaust her administrative remedies with the Union, the court's dismissal with prejudice would not operate as an adjudication on the merits if the dismissal was due to a "curable defect." However, the court's Dismissal Order dismissed the entire 2004 Action with prejudice, and ordered the clerk to enter judgment, (see Dismissal Order), rather than ordering the case stayed, or dismissing the case without prejudice, to allow Plaintiff an opportunity to exhaust her administrative remedies. At the hearing in the 2004 Action, the Court determined that it would be futile to allow repleading. (Hr'g Tr. at 8-9.) This futility stemmed from Plaintiff's acknowledgment at the hearing that she did not file an appeal within the Union (see id.), and, it appears that by October 2004, Plaintiff could no longer file such an appeal. Thus, the 2004 Action was dismissed, because the defect in Plaintiff's pleadings was incurable. [5] Cf. Berry v. Kerik, 345 F.3d 126, 128 (2d Cir. 2003) (holding that lawsuit brought under § 1983 alleging mistreatment while incarcerated was properly dismissed with prejudice for failure [*23] to exhaust administrative remedies, where administrative remedies had become unavailable); Cordoba v. Beau Deitl & Assocs., 2003 U.S. Dist. LEXIS 22033, No. 02 Civ. 4951 (MBM), 2003 WL 22902266, at *11 (S.D.N.Y. Dec. 8, 2003) (dismissing Title VII and ADEA retaliation claims with prejudice where Plaintiff had failed to exhaust administrative

remedies, and the time to cure the defect had expired). In light of the dismissal with prejudice of the 2004 Action, and the court's conclusion that repleading would have been futile, this Court concludes that, as to the claims against the Union, the 2004 Action was adjudicated on the merits for res judicata purposes.

> [5] Unlike her union remedies, Plaintiff did file a charge with the EEOC in December 2004 in order to exhaust her ADA claims against Montefiore.

The second prong of Monahan is clearly met, as Plaintiff filed suit against the Union in the 2004 Action and the present action. Thus, to satisfy the remaining prong of Monahan, the Union must show that Plaintiff's current [*24] claims were raised, or at least could have been raised, in her first action. For the purposes of res judicata, the Second Circuit has explained that,

> [w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.

NLRB v. United Tech. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted); accord Pike, 266 F.3d at 91; Interoceanica Corp., 107 F.3d at 90; First Jersey Sec., Inc., 101 F.3d at 1463-64.

It is therefore necessary to determine whether the instant action arises from the same transaction -- or "nucleus of operative fact" as the 2004 Action. Interoceanica Corp., 107 F.3d at 90 (citation omitted); accord Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000). "To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, [*25] whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Interoceanica Corp., 107 F.3d at 90-91 (quoting Restatement (Second) of Judgments § 24(2) (1982)) (internal quotation marks omitted); accord Waldman, 207 F.3d at 108.

In the 2004 Action, Plaintiff's claims arose out of her employment with Montefiore. Plaintiff alleged that she worked as an electrophysiology technician from February 1988 until April 2004, at which time she was displaced from her position. (See 2004 Complaint PP 2-3.) Plaintiff claimed that Montefiore failed to offer her an-

other position that accommodated her disability, thus violating her rights under the ADA.

Plaintiff also claimed that she was a member of the Union and a protected employee under the collective bargaining agreement (the "CBA") with Montefiore. (See id. PP 4-5.) Plaintiff's third and fourth causes of action in the 2004 Action claimed intentional and negligent failure to represent by the Union. The 2004 Complaint, which was filed on June 22, 2004, alleged that Plaintiff, [*26] as a member of the Union, contacted several union representatives and requested that a grievance be filed with Montefiore over its failure to provide her a reasonable accommodation because of her disability. (See id. P 23.) Plaintiff claimed that the Union refused to file a grievance on Plaintiff's behalf, in breach of its duty of representation. (See id. PP 24, 26-27.)

In the instant action, Plaintiff has filed a 62-page Amended Complaint. In the Amended Complaint, Plaintiff goes into great detail about her alleged disability, her attempts to inform Montefiore that she needed accommodation, and the various positions she was offered after she was displaced from her original job. (See Amended Complaint at 1-16.) The main focus of the Amended Complaint is Montefiore's alleged failure to accommodate Plaintiff's disability. Plaintiff uses the term "defendants" throughout the Amended Complaint, but provides little detail as to her interactions with the Union. Plaintiff does describe one meeting with the Union in March 2004 during which she allegedly informed the Union that she required job accommodations, but was discouraged by the Union from mentioning it to Montefiore. ( [*27] See id. at 2-3.) Plaintiff then allegedly met with both Defendants that same month, and informed Montefiore of her need for reasonable accommodation.

Under a "Breach of Contract Claim" heading, Plaintiff also details the years leading up to her displacement from her position as a electrophysiology technician. Montefiore allegedly instructed Plaintiff to enroll in a physician's assistant training program in preparation for the elimination of her current position. (See id. at 50-52.) Although Plaintiff started taking classes, she alleges that when her position was eliminated in April 2004, she was told that she could not apply for the physician's assistant training program, and must stop attending classes, which conflicted with the schedule required by the first position she was offered. (See id. at 52-54.) When Plaintiff allegedly asked the Union, in April 2004, about the program and issues related to her disability, she was told that the Union could not revisit the issue with the decisionmaker at Montefiore. (See id. at 54.) She also claims that she was told by the Union that she should accept the position she was offered, or she risked termination. (See id.)

[*28] The claims raised in the present action with regard to the Union's failure to represent Plaintiff adequately as a protected member of the Union under the CBA clearly arise out of the same nucleus of operative facts as Plaintiff's 2004 Action -- namely, her employment with Montefiore, the circumstances surrounding her displacement from her position as an electrophysiology technician in April 2004, her repeated requests for reasonable accommodation in the spring of 2004, and the Union's alleged failure to assist Plaintiff in securing an accommodation. These allegations, covering the same time period as those made in the 2004 Complaint, are the same transaction for res judicata purposes.

The Court notes, however, that Plaintiff's Amended Complaint also contains allegations about a few events which allegedly occurred subsequent to the filing of the 2004 Action, on June 22, 2004. Claims arising subsequent to a prior action need not, and often could not, have been brought as part of the prior action. See Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003). Such claims are not barred by res judicata, "regardless of whether they are premised on facts [*29] representing a continuance of the same 'course of conduct': [t]hat both suits involved 'essentially the same course of wrongful conduct' is not decisive." Id. "If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." First Jersey Sec. Inc., 101 F.3d at 1464.

First, the Amended Complaint describes a June 30, 2004 meeting, at which Montefiore took the position that, in the prior three months, it had offered Plaintiff three different accommodations, which she refused. (See Amended Compl. at 29.) After June 30, 2004, Plaintiff considered herself terminated from employment. Plaintiff also describes Montefiore's effort to offer her job accommodations in early July 2004, but Plaintiff viewed the offer as coming too late, since Plaintiff viewed her employment as having been terminated earlier, and Plaintiff had already filed her first action. Plaintiff does not make any specific allegations against the Union relating to these events. Moreover, it is not these events which form the basis of Plaintiff's allegations of discrimination and violation of the duty of fair representation. Plaintiff [*30] does not claim discrimination on the basis of that meeting, as she concedes that all of the discrimination occurred in the prior three months, when Montefiore failed to offer her positions which accommodated her disability, and the Union failed to grieve this alleged discrimination. (See id. at 43-44.) Thus, Plaintiff's Amended Complaint in this action does not add any new allegations related to the duty of fair representation that were not raised against the Union as part of the prior action. Accordingly, Plaintiff's inclusion in her Amended

Complaint of these events, which are simply a postscript to the earlier conduct which provides the basis for Plaintiff's claims, does not alter the Court's conclusion that Plaintiff's claims against the Union are barred by res judicata.

Plaintiff also complains about the Union's behavior during the EEOC investigation, which was based on the EEOC Charge she filed subsequent to the dismissal of the 2004 Action. Plaintiff alleges that the Union, as well as Montefiore, made false and misleading statements to the EEOC during the investigation. (See id. at 16-26.) Plaintiff goes into great detail recounting the Union's responses to the [*31] EEOC, and spends pages rebutting the explanations provided by the Union. (See id.) As a result of the Union's purposefully misdirecting the investigation, Plaintiff claims she was embarrassed and humiliated. (See id. at 26.)

The Union's Memorandum does not address this portion of Plaintiff's Amended Complaint, perhaps because Plaintiff does not explicitly state any additional causes of action based on these allegations. Nor could the Union's defense against the charges before the EEOC implicate any duty it had to represent Plaintiff while she was employed by Montefiore. Moreover, what Plaintiff appears to be claiming is that the Union's false statements to the EEOC constituted defamation or libel. "It is well settled in New York [] that statements made in quasi-judicial proceedings, including proceedings by agencies such as the EEOC, are protected by an absolute privilege." Hinds v. Magna Fabrics, Inc., 1997 U.S. Dist. LEXIS 8071, No. 96 Civ. 1383 (DC), 1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997); see also Allen v. St. Cabrini Nursing Home, Inc., 2001 U.S. Dist. LEXIS 3340, No. 00 Civ. 8558 (CM), 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001) ("Statements submitted to administrative agencies [*32] are protected by absolute privilege.") Accordingly, the statements made by the Union to the EEOC cannot serve as the basis for a claim of defamation. See Allen, 2001 U.S. Dist. LEXIS 3340, 2001 WL 286788, at *6 (dismissing cause of action for defamation arising out of statements made by defendant to EEOC in its "Statement of Position"); Hinds, 1997 U.S. Dist. LEXIS 8071, 1997 WL 309378, at *5 (dismissing defamation claim premised on written statements submitted by Defendant to the EEOC in response to inquiries made by the EEOC concerning the plaintiff's claim of discrimination).

Therefore, the Court concludes that Plaintiff's claims against the Union in the present action are barred by res judicata, because they are precisely the claims she asserted against the Union in the 2004 Action. To the extent that her allegations against the Union relating to the EEOC investigation are not barred by res judicata, the allegations do not state a claim for which relief can be granted. Consequently, the Court recommends that Plaintiff's claims against the Union be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, this Court recommends that the Union's Motion to Dismiss be granted. [*33] The Court further recommends that Montefiore's Motion for Summary Judgment be denied in all respects.

Pursuant to 28 U.S.C. 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and 6(e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Batts. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 149-52, 106 S. Ct. 466, 472-3, 88 L. Ed. 2d 435 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

[*34] Respectfully Submitted,

THEODORE H. KATZ

UNITED STATES MAGISTRATE JUDGE

Dated: July 19, 2006

New York, New York