Cliff Fonstein (CF-8603)
Joanne Seltzer (JS-2686)
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendants
Deutsche Bank Securities Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANIEL B. GRAVES,

                      Plaintiff,              07 Civ. 5471 (BSJ)

           - against -

DEUTSCHE BANK SECURITIES INC.,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT
AND TO STRIKE PORTIONS OF THE COMPLAINT**

SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendant
DEUTSCHE BANK SECURITIES INC.

787 SEVENTH AVENUE
NEW YORK, NEW YORK  10019
(212) 839-5300

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.     DBSI'S MOTION TO DISMISS UNDER RULES 12 AND 9(b)
SHOULD BE GRANTED. ................................................................................ 1

     A.     GRAVES CONCEDES HE CANNOT ASSERT ANY CLAIM
BASED ON ACTS OCCURRING BEFORE SEPTEMBER 26,
2003 ....................................................................................................... 1

     B.     GRAVES'S RETALIATION CLAIMS UNDER THE ADEA
AND THE NYCHRL SHOULD BE DISMISSED. ................................ 2

          1.     Graves Fails to Support His Contention that DBSI's
Refusal to Reconsider His Termination By Postponing it or
Transferring Him to Another Position Were Adverse
Employment Actions. ................................................................. 3

          2.     Graves Cannot Salvage His Retaliation Claim By His
Newly Minted Argument That The Denial of His 2003
Bonus Was A Retaliatory Act. ................................................... 6

     C.     GRAVES'S FLSA CLAIM HAS NO BASIS IN THE LAW. ................... 8

     D.     GRAVES CANNOT STATE A CLAIM FOR FRAUDULENT
CONCEALMENT .................................................................................. 9

          1.     Graves Has Failed to Plead Fraud with the Requisite
Specificity. .............................................................................. 10

          2.     DBSI Did Not Owe Graves a Duty to Disclose. ...................... 12

          3.     Graves Cannot Establish the Element of Reasonable
Reliance .................................................................................. 14

     E.     GRAVES HAS FAILED TO STATE A CAUSE OF ACTION
FOR A BREACH OF THE DUTY OF GOOD FAITH AND FAIR
DEALING. ........................................................................................... 16

i

F.    DBSI WITHDRAWS ITS MOTION TO DISMISS GRAVES'S CITY LAW CLAIMS UNDER THE ELECTION OF REMEDIES PROVISION ........................................................................................18

II.    GRAVES'S ARGUMENTS IN OPPOSING DBSI'S MOTION TO STRIKE ARE MERITLESS...............................................................19

A.    CRIMINAL CLAIMS AGAINST DBSI ARE INADMISSIBLE IN GRAVES'S CIVIL PROCEEDING....................................................19

B.    GRAVES'S ARGUMENTS CANNOT SAVE PARAGRAPHS 14, AND 24-124 OF THE COMPLAINT. ................................................21

1.    Allegations of Criminal Fraud Are Not Relevant to Any Issues Brought by Graves. ...........................................................21

2.    Allegations of Criminal Liability Against the EEOC Have No Relevance to the Assessment of Punitive Damages................22

3.    The Offending Paragraphs Have No Bearing on Proving the Existence of a "Long Standing Scheme".......................................24

4.    Graves's Other Scattershot Arguments Are Unavailing. ...............26

CONCLUSION...........................................................................................28

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc.</u>,
    404 F.3d 566 (2d Cir. 2005)..........................................................................13

<u>Allen-Jones v. Governors State University</u>,
    No. 05 C 6046, 2007 WL 1732493 (N.D. Ill. June 14, 2007) ......................7

<u>Andruff v. World Travel Holdings, PLC</u>,
    No. 01 Civ. 10717, 2002 WL. 1033811 (S.D.N.Y. May 22, 2002)............13

<u>Anheuser-Bush, Inc. v. Cohen</u>,
    37 F.2d 393 (D. Md. 1930) ........................................................................20

<u>BMW of North America v. Gore</u>,
    517 U.S. 559 (1996)...................................................................................23

<u>Banque Arabe and Internationale D'Investissement v. Maryland National Bank</u>,
    57 F.3d 146 (2d Cir. 1995).........................................................................13

<u>Burlington Northern & Santa Fe Railway Co. v. White</u>,
    126 S. Ct. 2405 (2006)............................................................................2, 4

<u>Butts v. N.Y.C. Department of Housing Preservation & Development</u>,
    No. 00 Civ. 6307, 2007 WL. 259937 (S.D.N.Y. Jan. 29, 2007)..................4

<u>Chambers v. Capital Cities/ABC</u>,
    851 F. Supp. 543 (S.D.N.Y. 1994) .............................................................9

<u>D'Ascoli v. Rora & Melamed</u>,
    No. 02 Civ. 2684, 2005 U.S. Dist. LEXIS 14274 (S.D.N.Y. July 13, 2005) ..............24

<u>Elliot v. Nelson</u>,
    301 F. Supp. 2d 284 (S.D.N.Y. 2004).......................................................14

<u>Farias v. Robinson</u>,
    259 F.3d 91 (2d Cir. 2001).........................................................................24

<u>Four Finger Art Gallery v. DiNicola</u>,
    No. 99 Civ. 1259, 2000 U.S. Dist. LEXIS 1221 (S.D.N.Y. Feb. 5, 2000) ..................14

<u>Freedman v. Pearlman</u>,
    706 N.Y.S.2d 405 (N.Y. App. Div. 1st Dep't 2000)..............................13, 15

G-I Holdings, Inc. v. Baron & Budd,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002)..........................................................................20

Giblin v. Murphy,
    73 N.Y.2d 769 (N.Y. 1988) ......................................................................................23

Ginsberg v. Fairfield-Noble Corp.,
    440 N.Y.S.2d 222 (N.Y. App. Div. 1st Dep't 1981) .....................................................14

Haffner v. Bryan Cave LLP,
    No. 98 Civ. 0552, 2000 U.S. Dist. LEXIS 11661 (S.D.N.Y. Aug. 14, 2000) .............18

Hazen Paper Co. v. Biggins,
    113 S. Ct. 1701 (1993)..........................................................................................22, 23

Henry v. Milwaukee County,
    No. 04-C-432, 2007 WL. 1577666 (E.D. Wisc. May 31, 2007)....................................7

Hoffman-La Roche Inc. v. Sperling,
    110 S. Ct. 482 (1989)..................................................................................................8

Jelks v. Citibank, N.A.,
    No. 99 Civ. 2955, 2001 U.S. Dist. LEXIS 381 (S.D.N.Y. Jan. 19, 2001)...................12

Kessler v. Westchester County Department of Social Services,
    461 F.3d 199 (2d Cir. 2006).....................................................................................4, 5

Kimel v. Florida Board of Regents,
    120 S. Ct. 631 (2000)..................................................................................................8

Kolstad v. America Dental Association,
    119 S. Ct. 2118 (1999)..........................................................................................23, 24

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991).......................................................................................10

Lorillard v. Pons,
    98 S. Ct. 866 (1978)....................................................................................................8

McKennon v. Nashville Banner Publ'g Co.,
    115 S. Ct. 879 (1995)..................................................................................................8

Mirabella v. Turner Broadcasting Systems, Inc.,
    No. 01 Civ. 5563, 2003 WL. 21146657 (S.D.N.Y. May 19, 2003).............................17

Moore v. Consolidated Edison Co. of N.Y., Inc.,
　　No. 00 Civ. 7384, 2007 WL 831807 (S.D.N.Y. Mar. 20, 2007) ..................................4

Moss v. Port Authority of N.Y.,
　　No. 04 Civ. 9631, 2006 WL 3392693 (S.D.N.Y. Nov. 20, 2006) ...............................4

Nardelli v. Stamberg,
　　44 N.Y.2d 500 (N.Y. 1978) .....................................................................................23

Ossining Union Free School District v. Anderson LaRocca Anderson,
　　73 N.Y.2d 417 (N.Y. 1989) .....................................................................................13

Pass v. NBC,
　　No. 92 Civ. 9266, 1994 U.S. Dist. LEXIS 131 (S.D.N.Y. Jan. 8, 1994)............... 19-20

Philip Morris v. Williams,
　　127 S. Ct. 1057 (2007)........................................................................................23, 24

Plantier v. Cordiant PLC,
　　No. 97 Civ. 8696, 1998 U.S. Dist. LEXIS 15037 (S.D.N.Y. Sept. 24, 1998) .............18

In Re: Methyl Tertiary Butyl Ether Products Liability,
　　No. 1:00-1898, MDL 1358, M21-88, 2007 U.S. Dist. LEXIS 45543
　　(S.D.N.Y.June 15, 2007)..........................................................................................24

Scully v. Summers,
　　No. 95 Civ. 9091, 2000 U.S. Dist. LEXIS 12519 (S.D.N.Y. Aug. 30, 2000) .............23

Smalley v. Dreyfus Corp.,
　　832 N.Y.S.2d 157 (N.Y. App. Div. 1st Dep't 2007) .............................................13, 15

State Farm Mutual Automobile Insurance Co. v. Campbell,
　　538 U.S. 408 (2003)................................................................................................23

Steigerwald v. Dean Witter Reynolds, Inc.,
　　486 N.Y.S.2d 516 (N.Y. App. Div. 4th Dep't 1985)..............................................13, 15

Stewart v. Jackson & Nash,
　　976 F.2d 86 (2d Cir. 1992)....................................................................................13, 15

Stillman v. Townsend,
　　No. 05 Civ. 6612, 2006 WL. 2067035 (S.D.N.Y. July 26, 2006) ......................... 10-11

TXO Production Corp. v. Alliance Resources Corp.,
　　509 U.S. 443 (1993)................................................................................................23

Tyler v. Ispat Inland Inc.,
    245 F.3d 969 (7th Cir. 2001) ........................................................................7

V.J.W. Transport Corp. v. Santiago,
    570 N.Y.S.2d 138 (N.Y. App. Div. 2d Dep't 1991)......................................23

Vasile v. Dean Witter Reynolds Inc.,
    20 F. Supp. 2d 465 (E.D.N.Y. 1998) ..........................................................20

Wakefield v. Northern Telecom, Inc.,
    769 F.2d 109 (2d Cir. 1985)........................................................................17

Walker v. Sheldon,
    10 N.Y.2d 401 (N.Y. 1961) ........................................................................23

White v. Guarente ,
    43 N.Y.2d 356 (N.Y.  1977) ................................................................. 12-13

Whitten v. Cross Garage Corp.,
    No. 00 Civ. 5333, 2003 WL. 21744088 (S.D.N.Y. July 9, 2003) ...............22

Wieder v. Skala,
    80 N.Y.2d 628 (N.Y. 1992) ...................................................................17, 18

Williams v. McCausland,
    791 F. Supp. 992 (S.D.N.Y. 1992) ..............................................................20

Wynder v. McMahon,
    360 F.3d 73 (2d Cir. 2004)....................................................................24, 25

## STATUTES

18 U.S.C. § 1001.................................................................................19, 20, 21

29 U.S.C. 626(b) ........................................................................................22

Fed. R. Civ. P. 8(a)(2).................................................................................1

Fed. R. Civ. P. 12(b)(6)..............................................................................10

Fed. R. Evid. 404(b)....................................................................................20

-   23

## PRELIMINARY STATEMENT

On July 3, 2007, Defendant Deutsche Bank Securities Inc. ("DBSI") filed a

Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (the

"Opening Brief").  Plaintiff Daniel Graves responded to the motion with a Memorandum in

Opposition (the "Opposition"), which fails to address the substantive deficiencies of his claims

and attempts to rework his Complaint to better suit his evolving theories of liability.  For the

reasons set forth below, this Court should grant DBSI's partial motion to dismiss and to strike

the offending portions of the Complaint.

## ARGUMENT

I. **DBSI'S MOTION TO DISMISS UNDER RULES 12 AND 9(b) SHOULD BE
   GRANTED.**

   A. **GRAVES CONCEDES HE CANNOT ASSERT ANY CLAIM BASED ON
      ACTS OCCURRING BEFORE SEPTEMBER 26, 2003.**

In its Opening Brief, DBSI showed that all of Graves's ADEA claims arising out

of events occurring before September 26, 2003 should be dismissed because they are barred by

the applicable limitations period.  (Opening, pp. 6-8.)  Graves concedes, albeit in a rambling

five-page argument, that he cannot bring an age discrimination claim based on acts that occurred

before September 2003 and that the only relevance, if any, to the pre-2004 events that he

describes in Paragraphs 27 to 94 of his Complaint, is that they may be background evidence in

support of his age discrimination claim.[1]  He concurs with DBSI that they are not actionable

---

[1] Graves's First and Second Causes of Action, asserting age discrimination claims under the ADEA and the
NYCHRL, at Paragraphs 134 and 135 of his Complaint, refer to Paragraphs 27 to 94, which, in turn, describe a
series of employment decisions, most of which occurred before September 2003.  Graves suggests that DBSI should
have "picked up the telephone" and asked him to clarify whether he was seeking recovery for the claims based on
these pre-2004 acts.  It is, however, plaintiff's responsibility under Rule 8(b) of the Federal Rules of Civil Procedure
to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.
8(a)(2), and the responsibility of ensuring that his Complaint clearly set forth the actions for which he is seeking
recovery was squarely on Graves's shoulders, not on DBSI's.  In attempting to navigate the 140 paragraphs (284
paragraphs counting the multiple subsections) of Graves's Complaint, DBSI understandably relied on the assertions
contained in Graves's Causes of Action.

injuries for which he seeks relief. In particular, Graves concedes:

> ➢ He has not requested relief for any alleged action occurring pre-2004 (Opposition, p. 2);

> ➢ Alleged actions occurring pre-2004 did not have a tangible consequence on him (Opposition, p. 2); and

> ➢ He "has not alleged that he was injured at the time by DBSI's reassignment of his accounts, its misreporting of his achievements, its misreporting of his pipeline of expected achievements, its misreporting of others' pipelines; or its abuse of the Client Management system". (Opposition, p. 3.)

Accordingly, with Graves's concessions, there is no present dispute as to the timeliness of Graves's claims.[2]

## B. GRAVES'S RETALIATION CLAIMS UNDER THE ADEA AND THE NYCHRL SHOULD BE DISMISSED.

In its Opening Brief, DBSI showed that Graves could not maintain an ADEA retaliation claim under the standard for retaliation claims recently set forth by the Supreme Court in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S. Ct. 2405 (2006). As DBSI explained, the acts upon which Graves bases his retaliation claim – DBSI's denials of his requests that it "reconsider" the conditions of his termination – could not dissuade a reasonable worker from complaining about discrimination. <u>Burlington</u>, 126 S. Ct. at 2407. (Opening, p. 12.). In an effort to avoid dismissal, Graves misapplies <u>Burlington</u> and recharacterizes the retaliation claims in his Complaint.

---

[2] While Graves concedes he can bring no claim with respect to pre-September 2003 acts described in the Complaint, he also, without any apparent rhyme or reason, briefs the so called "discovery rule." (Opposition, p. 5.) To the extent that this reference indicates that Graves is still arguing, despite his concessions, that pre-September 2003 acts may be timely, his argument fails. Graves cannot now claim that he was only recently aware of the pre-September 2003 acts alleged or the Bank's supposedly discriminatory animus. Graves, in fact, alleges that he was well aware that his accounts were allegedly being transferred and his pipeline revenues were allegedly being understated because he complained about such acts to his supervisors at the time they were occurring. (Complaint, ¶¶ 51, 57 & 68.) Moreover, he also states in his EEOC Charge that he believed at the time the these actions were discriminatory. (Charge, ¶¶ 8&10.) Copies of Graves's Complaint and EEOC Charge are attached to the Affirmation of Cliff Fonstein in Support of Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (the "Fonstein Aff.") as Exhibits A and B, respectively.

As DBSI noted in its Opening Brief, Graves alleges that three "adverse actions" occurred after his purported complaint of discrimination on January 20, 2004: (1) the denial of his request that DBSI postpone his termination for six months, the so-called "soft landing," (2) the denial of Graves's request that he transfer to another (unspecified) position; and (3) the cancellation of a scheduled meeting with Richard Byrne. (Complaint, ¶¶ 87-94.) In his Opposition, Graves maintains that he never asserted that the cancellation of the meeting with Mr. Byrne was an adverse employment action (although he lists it as such in his Complaint at Paragraphs 90 (f) to (h)). He now argues instead that the "denial" of his 2003 bonus was an adverse employment action resulting from his complaint of age discrimination. (Opposition, pp. 8-9.)[3] As explained below, Graves's retooled retaliation claim is still insufficient under the law.

1.    **Graves Fails to Support His Contention that DBSI's Refusal to Reconsider His Termination By Postponing it or Transferring Him to Another Position Were Adverse Employment Actions.**

As DBSI explained in its Opening Brief, DBSI's refusal to accede to Graves's request that it postpone the termination decision six months or that it transfer him to another job cannot be the basis of a retaliation claim because they do not constitute adverse employment actions under Burlington. (Opening, p. 8.) Graves counters, without supporting law, that, subjectively, he could have been dissuaded from complaining of age discrimination by such a refusal. (Opposition, pp. 8-10.) His argument is misplaced for two reasons.

First, contrary to Graves's misleading argument, the Supreme Court in Burlington was careful to specify that the standard for determining an adverse employment action in a claim of retaliation should be the objective standard of a "reasonable employee." Specifically, the Court cautioned:

---

[3] Significantly, when Graves lists the acts that occurred after he was told of his termination that form the basis of his retaliation claims, in the section of his Complaint entitled "Defendant's Infliction of Additional Injury on Plaintiff," he does not mention the bonus decision. (Complaint, ¶¶ 87-94.)

> We refer to the reactions of a *reasonable* employee because we
> believe that the provision's standard for judging harm must be
> objective.   An objective standard is judicially administrable.   It
> avoids the uncertainties and unfair discrepancies that can plague a
> judicial effort to determine a plaintiff's unusual subjective feelings.

Burlington, 126 S. Ct. at 2415 (emphasis in the original).  Even though the Court went on

to specify that the context surrounding the adverse employment action was important, it

continued to emphasize the need to evaluate what constitutes an adverse employment

action through the eyes of a ***reasonable*** employee.  The Court therefore, should consider

whether a reasonable employee in Graves's position (i.e. an employee who has just been

told he was going to be fired) would have been dissuaded from filing a complaint of

discrimination by the threat that the employer would do exactly what it said it was going

to do.  Both the law and common sense indicate that a reasonable person would not have

been so dissuaded.  Having already lost all that would constitute the benefits of his or her

position, a terminated employee would not reasonably be dissuaded from filing a charge

of discrimination solely by the possibility that the employer would change its mind

regarding the terms of his dismissal.[4]

    Second, the only case cited by Graves in opposition, Kessler v.

Westchester County Department of Social Services, 461 F.3d 199 (2d Cir. 2006),

perfectly illustrates the difference between a cognizable retaliation claim and Graves's

insufficient claim.  In Kessler, the defendant took the following actions after the plaintiff

---

[4] Graves's criticism of the cases cited by DBSI is misplaced.  These decisions describe employment actions that courts have held do not meet the Burlington standard, i.e., they could not reasonably have "dissuaded" an employee from filing a claim.  See Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., No. 00 Civ. 6307, 2007 WL 259937, at *19 (S.D.N.Y. Jan. 29, 2007) (refusal to convert leave time to compensatory time not adverse employment action); Moss v. Port Auth. of N.Y., No. 04 Civ. 9631, 2006 WL 3392693, at *8 (S.D.N.Y. Nov. 20, 2006) (denial of travel subsidies not adverse employment action); Moore v. Consolidated Edison Co. of N.Y., Inc., No. 00 Civ. 7384, 2007 WL 831807 (S.D.N.Y. Mar. 20, 2007) (exclusion from meetings and opportunities for professional development not an adverse employment action).  These decisions, just like DBSI's decision not to change the timing of Graves's termination, would not deter a reasonable employee from filing a claim.

complained of discrimination: (1) transferred him from its offices in White Plains to offices in Yonkers; (2) stripped him of the responsibilities and functions he performed as an Assistant Commissioner; (3) changed his report from the Commissioner of Social Services to a supervisor whose grade level was no higher than his; (4) stopped giving him managerial assignments and refused to allow him to attend managerial meetings and (5) stripped him of all supervisory responsibilities. See id. at 209. The Court found that these actions, depriving Kessler of virtually all of his prior responsibilities and job prestige, could have dissuaded a reasonable employee from filing a charge of discrimination. See id. at 209-10.

Unlike the plaintiff in Kessler, the adverse actions of which Graves complains did not deprive him of any benefit, job responsibility or compensation which he had any reasonable expectation of receiving. In fact, by the time Graves complained of job discrimination, the decisions that he complains about were already made. His employment had already been terminated and, along with his employment, the responsibilities, benefits and compensation available to him through his employment. DBSI's decision not to reconsider Graves's termination by changing the date of the termination or transferring him to another position was not an adverse action depriving him of benefits or job conditions he possessed. In short, Graves could not have been deprived of benefits he never had. A reasonable person in Graves's position, having already been notified of the elimination of his job, could not possibly have been dissuaded from filing a charge of discrimination by the unlikely possibility that the employer would give him an unpaid six month extension or assist him in looking for a

5

suitable transfer.[5]  Implicit in Graves's argument is that he (and others) had a reasonable

expectation that DBSI would, at an employee's request, reverse its lay-off decision by

either postponing it or by transferring the employee.  Graves, however, alleges no facts in

the Complaint that would support such an expectation and, without some reasonable

expectation that DBSI would change the terms of his discharge, Graves is left with

nothing more than an unfounded hope, which cannot form the basis of a retaliation claim

under Burlington.[6]

2.    **Graves Cannot Salvage His Retaliation Claim By His Newly Minted Argument That the Denial of His 2003 Bonus Was a Retaliatory Act.**

In an attempt to salvage his floundering retaliation claim and to give

substance to the "adverse actions" he accuses DBSI of trivializing, Graves asserts that

DBSI's refusal to pay him his 2003 discretionary performance bonus was an adverse

action that was taken as a result of his complaint of discrimination.  (Opposition, p. 7.)

This argument, however, is flatly contradicted by Graves's Complaint.  Indeed, the

gravamen of the Complaint is that DBSI hatched a plan several years before his dismissal

to terminate him and deprive him of his bonus.  Paragraph 12 of the Complaint, for

example, states:

> Defendant denied plaintiff the bulk of his annual compensation –
> the bonus he had earned for his work in 2003 – having concealed
> its long-term plan to replace him with the younger bankers and
> inducing him to continue working by concealing its intent to

---

[5] Under Graves's argument, any employee who is terminated could ask his or her employer to reconsider its decision and then file a cognizable retaliation claim upon the company's refusal to do so.  Burlington does not contemplate such an anomalous result.

[6] While Graves says a "soft landing" is commonplace on Wall Street, he provides no factual support for this conclusory allegation, and crucially, he does not suggest that this was the practice at DBSI. (Complaint, ¶ 87.) Graves argues, by analogy, that "[f]ew employees are entitled to a promotion, but no court to plaintiff's knowledge has ever found that the retaliatory denial of a promotion is not actionable." (Opposition, p. 11.)  The problem with Graves's argument is that, in these (uncited) promotion cases, there is an actual job opening for the plaintiff to be promoted into and a decision by the employer not to put the plaintiff in the job.  Here, by stark contrast, all that is alleged is that Graves asked the Bank to "reconsider" its decision, and it refused.  (Complaint, ¶ 12.)

> deprive him of the bonus.  This was both fraud by concealment and
> breach of the duty of good faith and fair dealing as to the bonus.
> Several days after plaintiff complained of age discrimination,
> defendant refused to reconsider this decision.  This was retaliation.

(Complaint, ¶ 12) (emphasis added).  By Graves's own admission, therefore, DBSI's

purported decision to deprive him of his bonus was made *before* the decision was

communicated to him, and certainly before his complaint of discrimination.  The decision

not to pay him his 2003 bonus could not, therefore, have been in retaliation for his

complaint.[7]  Furthermore, DBSI's refusal to reconsider the decision not to pay him his

2003 bonus, like the decisions discussed in Section B(1), *supra*, did not deprive him of

any compensation to which he was entitled since he had already lost the opportunity, by

virtue of his termination, of being considered for a 2003 bonus well before his age

discrimination complaint.  Again, Graves was not adversely affected by the deprivation

of a benefit he had already lost prior to his complaint.[8]

In sum, by his own admission, Graves has failed to set forth an adverse

employment action that could have dissuaded a reasonable employee in his position to

file a complaint of discrimination.  His claims of retaliation under both federal and city

law, therefore, should be dismissed.

---

[7] While Graves now concedes that his termination "obviously" cannot be the basis for his retaliation claim because that decision was made before he complained of discrimination (Opposition, p. 7), it is just as obvious that the bonus decision cannot be the basis of his retaliation claim because that decision was made before he complained of discrimination.

[8] Even if Graves had stated that the refusal to pay him his 2003 bonus was the direct result of his complaint of discrimination (which he logically cannot), the refusal would still not rise to the level of an adverse employment action.  Federal courts after Burlington have held that the denial of a "monetary perk" such as a discretionary bonus, does not constitute an adverse employment action if "it is wholly within the employer's discretion to grant or deny." Henry v. Milwaukee County, No. 04 Civ. 432, 2007 WL 1577666, at *5 (E.D. Wis. May 31, 2007) (citing Tyler v. Ispat Inland Inc., 245 F.3d 969, 972 (7th Cir. 2001)); Allen-Jones v. Governors State Univ., No. 05 Civ. 6046, 2007 WL 1732493 (N.D. Ill. June 14, 2007).

C.    **GRAVES'S FLSA CLAIM HAS NO BASIS IN THE LAW.**

In its Opening Brief, DBSI showed that Graves had failed to minimally set forth a separate claim of FLSA retaliation due to his failure to formally complain about a violation of that statute. (Opening, pp. 12-13.) In response, Graves argues that his internal complaint of age discrimination was protected activity under the ADEA (which was never disputed by DBSI in the Opening Brief); and that retaliation in violation of the ADEA also engenders a separate violation of the FLSA under Section 7(b) of the ADEA. (Opposition, pp. 13-17.) [9] There is simply no support under the law, including the Supreme Court precedent Graves cites, for this proposition.

The four Supreme Court cases cited in the Opposition stand for the unremarkable proposition that, when Congress enacted the ADEA, it determined that the statute would be enforced "using certain of the powers, remedies and procedures of the FLSA." Hoffman-La Roche Inc. v. Sperling, 110 S. Ct. 482, 485 (1989) (applying FLSA procedures for facilitating notice to potential plaintiffs to ADEA actions). See also Lorillard v. Pons, 98 S. Ct. 866, 872 (1978) (finding that the jury trial right available to enforce the FLSA should be also available for private actions under the ADEA); Kimel v. Fla. Bd. of Regents, 120 S. Ct. 631, 641 (2000) ("[The ADEA's] remedial provisions incorporate by reference the provisions of the Fair Labor Standards Act of 1938") (quotation and citations omitted); McKennon v. Nashville Banner Publ'g Co., 115 S. Ct. 879, 884 (1995) (holding that, when confronted with a violation of the ADEA, a court is authorized to afford the relief provided in the remedial provisions of the FLSA). There is absolutely nothing in these cases that supports the theory posited by Graves

_____

[9] Section 7(b) of the ADEA provides that the statute's prohibition of age discrimination should be enforced in accordance with the "powers, remedies and procedures" of the Fair Labor Standards Act (29 U.S.C. §§ 211(b), 216 & 217). 29 U.S.C. § 626(b).

that the filing of an ADEA claims automatically empowers a plaintiff to file a separate FLSA claim.

This Court flatly rejected this very argument in <u>Chambers v. Capital Cities/ABC</u>, 851 F. Supp. 543 (S.D.N.Y. 1994). The plaintiff in <u>Chambers</u>, like Graves, set forth separate claims under the ADEA and the FLSA in a complaint alleging discrimination on the basis of age. <u>Id.</u> at 544. In dismissing the FLSA claim on the defendant's motion to dismiss, the Court explained that the Section 7(b) of the ADEA *does not create an independent claim under the FLSA but merely makes specified remedies available.*

Accordingly, Graves's attempt to twist the ADEA's remedial provisions into an opportunity to assert an FLSA claim, where no violation of the statute has been pled, should be rejected.

### D.    GRAVES CANNOT STATE A CLAIM FOR FRAUDULENT CONCEALMENT.

As DBSI has demonstrated, dismissal of Graves's fraudulent concealment claim is appropriate because he has not pled fraud with the requisite specificity, and because he cannot establish two necessary elements of a fraudulent concealment cause of action – a duty to disclose and reasonable reliance. (Opening, pp. 13-17.) As explained below, Graves fails to rebut either argument. Significantly, while Graves now argues that the conduct at issue here was not the decision to terminate him but rather the decision to not pay him a bonus, that shift cannot salvage his pleading failures.[10]

---

[10] Graves accuses DBSI of misinterpreting his fraudulent concealment claim because DBSI characterized the concealed representation to be its supposed foreknowledge that it was going to terminate Graves rather than, as he argues now, its supposed foreknowledge that he would receive no bonus. (Opposition, p. 21.) The Complaint, however, focuses on the termination. For example, the Complaint contained allegations such as the following:

> Plaintiff discussed his expectations of continued employment for defendant with James DeNaut and Jacques Brand, and told them that he hoped to spend the rest of his career there. They, and Jeffrey Amling, knew that defendant intended to fire plaintiff and deny

9

1.    **Graves Has Failed to Plead Fraud with the Requisite Specificity.**

As DBSI stated in its Opening Brief, under Federal Rule of Civil Procedure 9(b),

Graves's claim should be dismissed due to his failure to state a fraud claim with specificity.

(Opening pp. 13-15.) As DBSI understands Graves's Complaint, he accuses it of making

fraudulent statements that purportedly encouraged his expectations regarding a 2003 bonus.

However, no details relating to these statements are set forth in either his Complaint or in his

Opposition. The Complaint does not allege who made the representations, what they were, or

when they were made, and it does not allege that any of the statements (whatever they were)

were made with fraudulent intent.

Completely ignoring the deficiencies of his Complaint, Graves limits himself to

vague claims of the existence of "[a] multitude of communications to employees containing such

[fraudulent] statements," and then provides a copy of a supposed "exemplar" as Attachment A to

the Declaration of Richard T. Seymour. (Opposition, p. 30 & Seymour Declaration ¶ 3 &

Exhibit A.) Graves's vague post-hoc reference to unnamed communications and his reference to

a so-called exemplar cannot save his claims. Initially, in a motion to dismiss, Graves is

constrained by the facts contained in his Complaint and must rely solely on those facts in

responding to a motion to dismiss. See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.

1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached

to the complaint as exhibits or incorporated into the complaint by reference."); Stillman v.

---

him his bonus for 2003, but concealed their knowledge in order to induce plaintiff to
remain working with defendant until they were ready to fire him.

(Complaint, ¶ 84.) As explained above, notwithstanding Graves's new focus on the bonus decision, i.e., that the
fraudulent concealment involved DBSI's purported plan to deny him his 2003 bonus, Graves still cannot state a
claim for fraudulent concealment because he cannot satisfy the critical elements of this claim.

10

<u>Townsend</u>, No. 05 Civ. 6612, 2006 WL 2067035, at *3 (S.D.N.Y. July 26, 2006) ("Factual

allegations contained in legal briefs and memoranda are . . . treated as matters outside the

pleadings for purposes of Rule 12(b).") (quotations omitted).  (Copies of unpublished opinions

are attached hereto as Exhibit A.)  The statements made in the Opposition regarding the

communications to employees relating to bonus compensation and the introduction of a

memorandum purportedly illustrating such communications are improper under the standards of

a Rule 12(b) motion and should not be considered by the Court in deciding the motion.

   Moreover, the exemplar does nothing to remedy Graves's defective claim that

DBSI fraudulently concealed its intent not to pay him a bonus.  First, the memorandum is dated

February 8, 2000, and has absolutely no bearing on representations supposedly made, as stated in

Paragraph 83 of the Complaint, in 2003 and 2004.  Further, the memorandum does not conceal

the fact that a bonus may, in fact, be equal to zero.  To the contrary, the memorandum to "All

Employees" describing the "Year End Compensation Process" states: "All employees are

<u>eligible</u> to receive a cash bonus.  Employees' total compensation packages will be reviewed and

considered along with individual, divisional and Bank performance when determining the

amount (<u>if any</u>) of an employee's cash bonus." (Emphasis added.)  While plaintiff claims that "a

multitude of [fraudulent] communications" exists, it is telling that plaintiff's one and only

example of such communication explicitly states that an employee may not receive a bonus at

all.  Finally, and most significantly, Graves concedes that the representations DBSI made to him

told him just the opposite, that bonuses were, in fact, entirely discretionary.  As Graves states on

page 38 of the Opposition: "The bonus representations state that the amount would be

discretionary and could be zero."

Other than this inadmissible and entirely inconsequential exemplar, Graves is unable to counter DBSI's well-supported argument that he has failed to plead his fraud cause of action with the specificity required under Rule 9(b) of the Federal Rules of Civil Procedure, and his fraudulent concealment claim should be dismissed on this basis alone.  Simply put, if representations were made, DBSI does not know who made them, when they were made, what was said, and in what context.

2.    **DBSI Did Not Owe Graves a Duty to Disclose.**

As set forth in the Opening Brief, and as Graves concedes in his Opposition, the elements for a claim of fraudulent concealment are: 1) a duty to disclose, 2) a materially false representation, 3) made with intent to defraud, 4) a reasonable reliance by the employee thereon, 5) that damages the employee.  (Opposition, p. 30.)  DBSI established in its Opening Brief that under New York law, an employer has no duty to disclose decisions relating to the termination of an at-will employee's employment.  (Opening, pp. 16-17.)  Despite Graves's restatement of his fraud claim to involve his 2003 bonus rather than his termination, he has set forth absolutely no authority to challenge the bedrock principle that an employer owes an at-will employee no duty to forewarn the employee of decisions affecting his or her employment before they are implemented.  See Jelks v. Citibank, N.A., No. 99 Civ. 2955, 2001 U.S. Dist. LEXIS 381, at *13 (S.D.N.Y. Jan. 19, 2001) ("Because Plaintiff was employed at-will, Defendant had no duty, once the decision was made, to provide advance warning that Plaintiff's job might be terminated.")

Graves's argument in opposition consists of a conclusory statement that DBSI owes him a duty, though not necessarily a fiduciary duty, under some amorphous standard of a "duty of care" or "a showing of privity or near privity" (Opposition, p. 26.)  Graves, however, fails to set forth even one case in an at-will employment context where such duty of care or privity is found.  Instead, Graves points to four cases: White v. Guarente, 43 N.Y.2d 356 (N.Y.

12

1977), <u>Ossining Union Free School District v. Anderson LaRocca Anderson</u>, 73 N.Y.2d 417

(N.Y. 1989), <u>Banque Arabe and Internationale D'Investissement v. Maryland National Bank</u>, 57

F.3d 146 (2d Cir. 1995) and <u>Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc.</u>, 404

F.3d 566 (2d Cir. 2005), that are set entirely in the context of contracts formed between two

business entities –a relationship where a duty of care to disclose is indeed recognized.  Since

none of these cases concern at-will employment relationships, they are not relevant to the claim

here.

        The only case in an employment context cited by Graves to support his contention

that DBSI owed him a duty to disclose its purported intent not to pay him a 2003 bonus, <u>Stewart</u>

<u>v. Jackson & Nash</u>, 976 F.2d 86 (2d Cir. 1992), is entirely inapposite.  In <u>Stewart</u>, the plaintiff

does not allege a fraudulent *concealment* claim but, rather, a fraudulent *inducement* claim – a

claim that does not require a showing of a duty to disclose by an employer.[11]  Here, Graves is not

making a fraudulent inducement claim, and his reliance on a fraudulent inducement line of cases

is inappropriate.[12]  For all of these reasons, Graves's fraudulent concealment claim should be

dismissed.  Indeed, in view of the concession in Graves's Opposition that DBSI represented that

it had complete discretion in determining the amount (if any) of a bonus, (Opposition, p. 38), no

duty to award a bonus could have existed.  DBSI cannot credibly be accused of concealing its

---

[11] <u>See, e.g.</u>, <u>Andruff v. World Travel Holdings, PLC</u>, No. 01 Civ. 10717, 2002 WL 1033811, at *4 (S.D.N.Y. May 22, 2002) (stating elements of fraudulent inducement: 1) material false representation, 2) made with knowledge of its falsity, 3) and intent to defraud, 4) upon which plaintiff reasonably relied, and 5) and suffered damages as a result).  DBSI surmises that Graves couched his claim as fraudulent concealment instead of fraudulent inducement because he was unable to point to any affirmative statement on the part of any DBSI representative that assured him he would receive a 2003 bonus.  Of course, once he chose to plead a fraudulent concealment claim, he has the burden of demonstrating some duty to disclose, which Graves manifestly cannot do.

[12] <u>Smalley v. Dreyfus Corp.</u>, 832 N.Y.S.2d 157 (N.Y. App. Div. 1st Dep't 2007), <u>Steigerwald v. Dean Witter Reynolds, Inc.</u>, 486 N.Y.S.2d 516 (N.Y. App. Div. 4th Dep't 1985), and <u>Freedman v. Pearlman</u>, 706 N.Y.S.2d 405 (N.Y.App. Div. 1st Dep't 2000), also relied on by plaintiff, involved fraudulent inducement claims, and not fraudulent concealment claims.

2003 bonus decision when, as Graves concedes, DBSI warned him his bonus was discretionary and could be zero.  (Opposition, p. 38.)

      **3.**     **<u>Graves Cannot Establish the Element of Reasonable Reliance.</u>**

Graves's Opposition fails in its attempt to rebut DBSI's contention that he has not properly plead reasonable reliance, a necessary element of a fraudulent concealment cause of action.  In its Opening Brief, DBSI set forth a number of New York cases that held that claims of fraud based on future promises of continued employment to an at-will employee are not cognizable.  (Opening brief, p. 17.)  Graves countered by changing the theory of his case to allege concealment as to his 2003 bonus instead of his termination and by quoting a line of cases involving fraudulent inducement by a company to job applicants.  Both Graves's argument and his legal support are unavailing.

Graves's last minute shift in theory that DBSI fraudulently concealed its intent not to pay him a 2003 bonus is unavailing in light of his concession that DBSI had discretion to grant him no bonus for 2003.  (Opposition, p. 38.)  In light of this express representation, Graves could not have reasonably relied on a belief that he would receive a bonus for 2003.  In similar circumstances, New York courts have held that a plaintiff was unable to establish reasonable reliance in the face of well-publicized discretionary bonus policies.  See <u>Elliot v. Nelson</u>, 301 F. Supp. 2d 284, 286 (S.D.N.Y. 2004) (granting summary judgment on promissory estoppel claim, finding no reasonable reliance due to the existence of a meaningful conflict between a written contract and prior oral representations); <u>Four Finger Art Gallery v. DiNicola</u>, No. 99 Civ. 1259, 2000 U.S. Dist. LEXIS 1221, at *26 (S.D.N.Y. Feb. 5, 2000) (dismissing promissory estoppel claim because the plaintiff could not have reasonably relied on promises that contradicted the express terms of the contract governing the dispute); <u>Ginsberg v. Fairfield-Noble Corp.</u>, 440

14

N.Y.S.2d 222, 225 (N.Y. App. Div. 1st Dep't 1981) ("Where a plain writing is inconsistent with the alleged prior oral agreement there is no basis for a claim of an estoppel.")

The weakness of Graves's position is evident by his inability to cite one case in an at-will employment context where a court found an employer liable for failure to reveal its intent not to pay its employee a bonus under a discretionary bonus plan. Instead, Graves cites inapposite cases involving claims of fraudulent inducement or misrepresentation by employees who were allegedly induced to accept employment with a defendant company on the basis of promises of future compensation and benefits. See Smalley v. Dreyfus Corp., 832 N.Y.S.2d 157 (N.Y. App. Div. 1st Dep't 2007) (fraudulent inducement claim involving promises of a target bonus to plaintiffs to induce them to accept employment with defendant); Steigerwald v. Dean Witter Reynolds, Inc., 486 N.Y.S.2d 516 (N.Y. App. Div. 4th Dep't 1985) (fraudulent misrepresentation claim involving promise to prospective employee of the opening of a new office); Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992) (fraud claim involving promises by a law firm to a lawyer candidate that it would expand its environmental practice). Freedman v. Pearlman, 706 N.Y.S.2d 405 (N.Y. App. Div. 1st Dep't 2000), which Graves characterizes as "strikingly similar" to his case, is, in fact, clearly distinguishable. The fraud action brought by the plaintiff in Freedman involved the defendant's deliberate concealment of an amount of income received from a client, a part of which had been promised to the plaintiff. Id. at 304. The Freedman Court specifically cautioned: "[w]e do not mean to suggest that every employer that pays a bonus is obligated to reveal its income to its employees so that its employees can decide whether their bonuses are fair." Id. at 305. Unlike Freedman, Graves cannot set forth evidence of a deliberate misrepresentation that DBSI concocted in order to induce him to continue working for DBSI. In fact, he is unable to set forth any statement or promise made to

him that led to this alleged reasonable reliance that he would receive a 2003 bonus. As such, the Freedman decision is wholly inapplicable.

Thus, the prevailing law dictates that, in a situation where the amount of a bonus (or the award of any bonus at all) is at the discretion of the employer, an employee cannot prevail on a claim that the employer failed to give him advance notice that he would not be receiving a bonus in a particular year. Allowing such a claim would not only trammel the entire concept of "discretion" in the administration of bonus plans, but would also open the floodgates to claims of fraud from the countless employees who are yearly dissatisfied with their bonuses. Moreover, it would be virtually impossible to determine when such a duty to disclose would arise relative to the communication of the bonus award and the circumstances (such as the relative size of the bonus) that would trigger such a duty. New York courts, as indicated by Freedman, reject such unnecessary extension of fraud claims into the discretionary compensation context.

### E. GRAVES HAS FAILED TO STATE A CAUSE OF ACTION FOR A BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING.

In its opening brief, DBSI set forth controlling case law stating that a claim for breach of the duty of good faith and fair dealing cannot exist in the absence of an express contract. (Opening, pp. 18-20.) Graves readily admits that "a valid contract is necessary before there can be a claim for breach of the implied covenant of good faith and fair dealing" and that he "had no contractual right to be allowed to work to December 31, 2003." (Opposition, p. 38.) However, Graves states, in entirely conclusory fashion, that having worked through December 31, 2003, he had a "contractual right to be considered for a bonus." (Opposition, p. 38.) There is absolutely no indication in Graves's Complaint or Opposition papers of the nature of this "contractual right" and what document or documents it might arise out of. There are no facts in the Complaint indicating the formation of such a contract – no offer, no acceptance and no

16

consideration. Moreover, as noted above, Graves, in fact, states the opposite – that DBSI, in fact, represented to him that his bonus was discretionary and could be zero. (Opposition, p. 38.)

The two cases cited by Graves entirely support the elemental premise that there can be no breach of a duty of good faith and fair dealing absent a contract. In <u>Wakefield v. Northern Telecom, Inc.</u>, 769 F.2d 109 (2d Cir. 1985), the court clearly indicated that the plaintiff's breach of the covenant of good faith derived from the "contract for payment of commissions." <u>Id.</u> at 112 n.1. The parties in <u>Wakefield</u> had agreed that the defendant's written commission plan constituted a binding contract. <u>Id.</u> at 111. There is no such binding contract supporting Graves's claim. <u>Wieder v. Skala</u>, 80 N.Y.2d 628 (N.Y. 1992), involves an implied contract claim strictly limited by the court to the "distinctive relationship between a law firm and a lawyer hired as an associate," <u>id</u> at 635, and is entirely inapplicable to Graves's employment and claims. In limiting its holding, the Court stated "We agree with the plaintiff that these unique characteristics of the legal profession in respect to [Disciplinary Rule 1-103(A)] make the relationship of an associate to a law firm employer different from that of the financial managers to the corporate employers of <u>Murphy</u> and <u>Sabetay</u>." <u>Id.</u>, at 637. This express limitation makes the case entirely inapplicable to Graves's claims.

New York courts, instead, have arrived at a different result in cases involving claims of breach of a duty of good faith and fair dealing in a discretionary bonus context. In <u>Mirabella v. Turner Broadcasting Systems, Inc.</u>, No. 01 Civ. 5563, 2003 WL 21146657 (S.D.N.Y. May 19, 2003), for example, the plaintiff alleged that his employer terminated him to avoid paying him a bonus and commissions. <u>Id.</u> at *1. This Court found <u>Wakefield</u> inapplicable because the plaintiff in <u>Mirabella</u> could point to no contractual agreement of a fixed amount of bonus or commissions due at the time of his termination. <u>Id.</u> at *2. The Court explained that

relief under a theory of the duty of good faith and fair dealing was not available because "the 1999 performance incentives for which plaintiff was eligible were entirely discretionary." Accordingly, the plaintiff's breach of good faith and fair dealing claim was dismissed.

Like the plaintiff in Mirabella, and unlike the plaintiff in Wakefield, Graves was not promised a bonus. Graves's own Opposition admits the fact that: "[t]he bonus representations state that the amount would be discretionary and could be zero." (Opposition, p. 38.) Where the payment of a bonus is discretionary such that "no fixed amount was due at the time of termination," an employee cannot state a claim under the covenant of good faith and fair dealing. Haffner v. Bryan Cave LLP, No. 98 Civ. 0552, 2000 U.S. Dist. LEXIS 11661, at *13 (S.D.N.Y. Aug. 14, 2000) ("Where, as here, the payment of a bonus . . . is discretionary such that 'no fixed amount was due at the time of termination,' the employee cannot state a claim under the implied covenant of good faith and fair dealing."); Plantier v. Cordiant PLC, No. 97 Civ. 8696, 1998 U.S. Dist. LEXIS 15037, at * 7 (S.D.N.Y. Sept. 24, 1998) (rejecting claim for breach of the implied covenant of good faith and fair dealing where the case did not fall within Wieder's "narrow exception" created by the courts for employees in certain professional fields and where there was no fixed amount of annual bonus due at the time of termination). In accordance with clear New York law, Graves's breach of the duty of good faith claim and fair dealing as to his bonus should be dismissed.

**F.    DBSI WITHDRAWS ITS MOTION TO DISMISS GRAVES'S CITY LAW CLAIMS UNDER THE ELECTION OF REMEDIES PROVISION**

In light of the Graves's contention that the State Division of Human Rights dismissed his claims under the New York City Human Rights Law on July 9, 2007 for administrative convenience (notification of which was never received by DBSI or its counsel),

DBSI withdraws its motion to dismiss Graves's city law age claims for the events that occurred in 2004 – Graves's termination and the Bank's purported failure to pay 2003 bonus claims.

## II.    GRAVES'S ARGUMENTS IN OPPOSING DBSI'S MOTION TO STRIKE ARE MERITLESS.

In his Complaint, Graves inserts 30 paragraphs that are entirely irrelevant to his underlying causes of action and serve solely to prejudice DBSI.  In Paragraphs 14 and 95-124 of the Complaint, Graves makes allegations relating to DBSI's supposed wrongdoing against a wholly unrelated party – the EEOC – on the basis of a cause of action that has absolutely nothing to do with his discrimination claims – Section 1001 of Title 18 of the United States Code, a criminal statute prohibiting the falsification, concealment or cover up of a material fact to a branch of the United States Government.  18 U.S.C. § 1001(a).  In its Opening Brief, DBSI demonstrated that such statements have nothing to do with Graves's employment discrimination claims and, in his Opposition, Graves has been unable to establish otherwise.[13]

### A.    CRIMINAL CLAIMS AGAINST DBSI ARE INADMISSIBLE IN GRAVES'S CIVIL PROCEEDING.

As Graves concedes, Courts grant motions to strike where *it can be shown that no evidence in support of the allegation is admissible.*  (Opposition, p. 41.)  That is precisely the circumstance in this case.  Because Graves cannot bring a claim against DBSI for the alleged fraud committed against the EEOC, and because evidence of such alleged fraud cannot be brought into his case under the Federal Rules of Evidence, his misplaced allegations should be struck from the Complaint.

---

[13] Graves argues that DBSI has asserted inconsistent positions with respect to his fraud claims, arguing that DBSI has moved to dismiss the fraudulent concealment claim for a pleading deficiency while, at the same time, moving to strike fraud claims under Rule 12(f).  (Opposition, p. 40.)  There is, however, no inconsistency because the two sets of fraud allegations are different.  Graves's fraudulent concealment claim involves an alleged effort on the part of DBSI to conceal bonus information from him.  By contrast, the claims that DBSI asks this Court to strike, are completely extraneous fraud claims that involve DBSI's purported attempt to defraud the EEOC in violation of a criminal statute.

Section 1001 provides no private right of action, and Graves could not, therefore, bring a claim on behalf of the EEOC under this statute. Pass v. NBC, No. 92 Civ. 9266, 1994 U.S. Dist. LEXIS 131 (S.D.N.Y. Jan. 8, 1994); Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 478 (E.D.N.Y. 1998) (dismissing allegations about false statements to a Department of Defense Investigator because there is no private right of action under 18 U.S.C. § 1001); Williams v. McCausland, 791 F. Supp. 992, (S.D.N.Y. 1992), aff'd without opinion, 983 F.2d 1047 (2d Cir. 1992) (in race discrimination case, dismissing claim as to allegedly false statements made to government agency, because 18 U.S.C. § 1001 provides no private right of action). In Pass v. NBC, after having his claims administratively dismissed by the EEOC, the plaintiff sued his former employer, NBC, alleging race discrimination in violation of Title VII. Pass, 1994 U.S. Dist. LEXIS 131, at *1. In his complaint, the plaintiff added a claim under Section 1001 by alleging that NBC made false statements to the EEOC. Id. at *8-9. The Court dismissed the claim because "[s]ection 1001 of Title 18 does not confer a right of action on private parties." Id. at *9. Like the plaintiff in Pass, Graves has no standing to bring a claim under Section 1001 on behalf of the EEOC.

Moreover, Graves is barred from introducing evidence of a wrong committed by DBSI against the EEOC under Federal Rule of Evidence 404(b) which proscribes the introduction into evidence of other crimes, wrongs or acts to prove the character of a party. Fed. R. Evid. 404(b). Since evidence substantiating DBSI's purported violation of Section 1001 would be inadmissible at Graves's civil trial, all information relating to alleged criminally fraudulent behavior should be struck from the Complaint.[14]

---

[14] Indeed, as DBSI noted in its opening brief, allegations containing "criminal overtones" are particularly worthy of being stricken, even in light of the premise that motions to strike are generally disfavored. G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002). See also Anheuser-Bush, Inc. v. Cohen, 37 F.2d 393, 395 (D. Md. 1930) (noting "[i]f the plaintiff is in fact violating the criminal law, he can be punished in the proper

**B.    GRAVES'S ARGUMENTS CANNOT SAVE PARAGRAPHS 14, AND 24-124 OF THE COMPLAINT.**

In opposition to DBSI's motion to strike, Graves sets forth fourteen pages of inapplicable law and circular arguments, attempting to find some rationale for the inclusion of allegations of criminal fraud that have no business in his Complaint.  Notably, Graves fails to introduce a single case that directly supports his position.  We address each of Graves's arguments below.

**1.    Allegations of Criminal Fraud Are Not Relevant to Any Issues Brought by Graves.**

Graves's first argument is that statements in a Position Statement may, in certain circumstances, be relevant to liability, because, if they are found to be inconsistent with other statements made by the employer, they will show that an employer's proffered legitimate business rationale for a challenged decision is really a pretext for discrimination.  (Opposition, pp. 43-46.)  Graves's argument is misleading.  While discrepancies in an employer's explanations about employment decisions may be probative of pretext in some instances, this does not give Graves carte blanche to grossly mischaracterize DBSI's Position Statement, or to make allegations about criminal fraud.  In fact, in the offending paragraphs, Graves does not argue that the Position Statement is relevant because it will establish pretext.  Rather, Graves makes a very different allegation: that DBSI and its counsel are criminally liable for deceiving the EEOC.  These are two entirely different claims, and proof of one has nothing to do with the other.  The difference between the claims is illustrated by the evidence that would need to be produced in discovery and at trial to support them.  To show pretext, Graves need only introduce the Position Statement to show that it is inconsistent with other reasons offered by DBSI for the

forum.  Unless and until such violation is established, the question is not properly to be considered in a proceeding of this kind").

adverse employment actions. On the other hand, to establish a violation of 18 U.S.C. § 1001

(even if he had standing to do so, which he does not), Graves would need to present evidence of

the criminal intent of DBSI and its attorneys in defrauding the EEOC and the reasonable reliance

of the EEOC on such fraudulent statements. Accordingly, the fact that the Position Statement

may be relevant to the issue of pretext does not mean that it is proper for Graves to make

allegations of criminal fraud with respect to the submission of the Position Statement.[15]

### 2.   Allegations of Criminal Liability Against the EEOC Have No Relevance to the Assessment of Punitive Damages.

Graves also argues that the offending paragraphs should remain in the Complaint

because evidence of a false filing to the EEOC is relevant to his claim for punitive damages.

(Opposition, pp. 49-51.) Contrary to Graves's argument, prevailing law interpreting the

availability of liquidated damages under the ADEA shows that the admission of this

inflammatory evidence is not pertinent for the award of liquidated damages under the statute.

Moreover, cases evaluating the award of punitive damages under the NYCHRL and common law

maintain that punitive damages must be assessed for harm caused to the plaintiff, not to

nonparties.

Unlike Title VII, ADEA's remedial scheme provides for the assessment of

liquidated damages, measured as double back pay and benefits for "willful" violations of the

ADEA. 29 U.S.C. § 626(b); Whitten v. Cross Garage Corp., No. 00 Civ. 5333, 2003 WL

21744088, at *5 (S.D.N.Y. July 9, 2003). Willfulness may be found where an employer either

"knew or showed reckless disregard for the matter of whether its conduct is prohibited by the

statute." Hazen Paper Co. v. Biggins, 113 S. Ct. 1701, 1710 (1993) "Once a willful violation

---

[15] To be clear, DBSI is not seeking to exclude the Position Statement, or to prevent discovery with respect to the veracity of its contents. Rather, DBSI seeks to strike the inflammatory accusations that Graves makes with respect to purported criminal misconduct by DBSI through a fraudulent submission to a governmental agency.

has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous . . . ." Id. See also Scully v. Summers, 95 Civ. 9091, 2000 U.S. Dist. LEXIS 12519, at *61-62 (S.D.N.Y. Aug. 30, 2000).

If Graves proves that DBSI willfully violated the ADEA, he may receive liquidated damages as prescribed by the ADEA remedial scheme, no more, no less. It is, therefore, irrational for Graves to justify the inclusion of inflammatory and prejudicial criminal allegations against DBSI under the guise of arguing that these allegations will augment his punitive damages under the ADEA. DBSI's liability for liquidated damages can be determined by the evaluation of its behavior in the relevant factual realm – its treatment of Graves during the course of his employment with DBSI and not by any supposed criminal wrongdoing to a third party such as the EEOC. The fact that not one of the cases cited by Graves in support of his punitive damages justification is an age discrimination case, or even an employment case at all, demonstrates the weakness of this argument.[16]

Graves's argument that the allegations of criminal fraud against the EEOC will augment his punitive damages under his NYCHRL claim and his common law claims is similarly unavailing. Although courts have allowed the introduction of similar harm to others to demonstrate "reprehensibility," "a jury may not go further than this and use a punitive damages

---

[16]Walker v. Sheldon, 10 N.Y.2d 401 (N.Y. 1961) (fraud action); Nardelli v. Stamberg, 44 N.Y.2d 500 (N.Y. 1978) (malicious prosecution); Giblin v. Murphy, 73 N.Y.2d 769 (N.Y. 1988) (fraudulent stock sales); V.J.W. Transport Corp. v. Santiago, 570 N.Y.S.2d 138 (N.Y. App. Div. 2d Dep't 1991) (conversion of corporate funds); TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443 (1993) (common law action for slander of title); BMW of N. Am. v. Gore, 517 U.S. 559 (1996) (automobile manufacturer's failure to disclose to purchaser that automobile had been repainted); State Farm Mutual Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003) (insured's action against automobile liability insurer to recover for failure to settle within policy limits); Philip Morris v. Williams, 127 S. Ct. 1057 (2007) (state negligence and deceit lawsuit against cigarette manufacturer). The only case cited by Graves that is in the employment context, Kolstad v. Am. Dental Ass'n, 119 S. Ct. 2118 (1999), pertains to the assessment of punitive damages under Title VII and Section 1981 – a remedial scheme wholly inapplicable to the ADEA. Moreover, Kolstad makes clear, albeit in a Title VII context, that punitive damages are available for reckless indifference to the federally protected rights of the plaintiff. Kolstad, 119 S. Ct. at 2124. The assessment of augmentation of punitive damages for wrongdoing to the EEOC would, therefore, be inappropriate in Graves's case.

verdict to punish a defendant directly on account of harms it has alleged to have visited on nonparties." In Re: Methyl Tertiary Butyl Ether Products Liability, No. 1:00-1898, MDL 1358, M21-88, 2007 U.S. Dist. LEXIS 45543, at *21 (S.D.N.Y. June 15, 2007) (quoting Philip Morris U.S.A. v. Williams, 127 S. Ct. 1513, 1064 (2007)). Kolstad v. Am. Dental Ass'n, 119 S. Ct. 2118 (1999), a landmark case clarifying the availability of punitive damages under Title VII, made clear that, in addition to the showing of the requisite "malice and reckless indifference" on the part of the defendant, the harm must be to the "federally protected rights of the aggrieved individual." Id. at 2124 (quoting 42 U.S.C. 1981a(b)(1)). See also Farias v. Robinson, 259 F.3d 91, 101 (2d Cir. 2001) (applying Kolstad standard to claims under the New York City Administrative Code); D'Ascoli v. Rora & Melamed, No. 02 Civ. 2684, 2005 U.S. Dist. LEXIS 14274, at *6 (S.D.N.Y. July 13, 2005)) (same). In light of this precedent, Graves will be unable to augment his punitive damages award through the submission of evidence of completely different harm done by DBSI to another party – the EEOC. As such, there is no justification for the inclusion of irrelevant criminal charges of fraud against DBSI for its submission of a Position Statement to the EEOC.

### 3.    The Offending Paragraphs Have No Bearing on Proving the Existence of a "Long Standing Scheme".

Graves argues that evidence of DBSI's deceit is relevant to the existence of a "long-standing scheme to undermine plaintiff and deprive him of his bonus." (Opposition, pp. 46 & 47-48.) Graves's arguments fails for two reasons: (1) there is no link between purported fraud on the EEOC and a long-standing scheme of age discrimination against Graves; and (2) Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004), the case he relies upon to support this argument, is entirely inapposite.

24

Initially, it is incomprehensible how allegations of fraud committed by DBSI and its attorneys on the EEOC by virtue of a Position Statement, submitted almost a full year after the decision was made to terminate Graves, could possibly "make it more credible to the fact finder" that DBSI had engaged in a lengthy plan to undermine plaintiff and deprive him of his bonus. The thought processes and motivation of DBSI and its attorneys in drafting the Position Statement have no connection to the alleged plan by Graves's supervisors to discharge him, allegedly hatched as early as 2002. Graves's arguments, therefore, that the inclusion of the criminal charge under Section 1001 could somehow bolster his allegations of a "long-term scheme" against him are misguided.

Moreover, Graves's reliance on <u>Wynder</u> is misplaced and misleading. Graves cites <u>Wynder</u> for the proposition that the allegations contained in the <u>Wynder</u> complaint, which he sets forth in almost two full pages of his Opposition, went "much farther than those defendant seeks to strike herein." (Opposition, pp. 47-48.) <u>Wynder</u>, just like every other case cited by Graves, did not decide whether to grant a motion to strike. Instead, the issue in <u>Wynder</u> was whether the plaintiff had met the "short and plain statement" requirements of Rule 8 of the Federal Rules of Civil Procedure. After ruling on the Rule 8 issue, the <u>Wynder</u> court critically left to the discretion of the district court on remand whether to strike portions of the complaint that were redundant, immaterial, or scandalous.[17] Therefore, the fate of the so-called statements that went "much farther" than Paragraphs 14, and 95-124, was not decided by the Court, as Graves would lead this Court to believe. Accordingly, <u>Wynder</u> lends no support to Graves' argument against striking the prejudicial paragraphs of his Complaint.

---

[17] The district court has yet to rule on striking paragraphs of the complaint. <u>See</u> No. <u>Wynder v. McMahon</u>, 99 Civ. 772, 2005 U.S. Dist. LEXIS 19311 (S.D.N.Y. Sept. 7, 2005).

4.    **Graves's Other Scattershot Arguments Are Unavailing.**

In addition to the above arguments, Graves attempts to convince this Court to retain the immaterial and inflammatory paragraphs in the Complaint with a series of throwaway arguments that are duplicative and baseless.

Graves argues that the motion to strike is premature because, in the event that discovery does not show an adequate factual basis for any of the offending paragraphs, he will seek leave to amend the Complaint to "conform the allegations to what is shown in discovery." (Opposition, p. 42.)  The question, however, is not whether Graves can come up with evidence to support his baseless criminal claims, but, rather, whether they are extraneous in the first place and should be stricken under Rule 12(f).  It would be small comfort to DBSI to have Graves amend his Complaint after the close of discovery, during which time the scurrilous allegations lodged against DBSI would remain open to the public eye.  The goal of a motion to strike is to effectively shut the barn door *before* the horse has escaped into the pasture.  Graves should not be allowed to vilify DBSI's reputation while he attempts to find substantiation for charges relating to the EEOC that should never have initially been filed.

Equally unavailing are Graves's arguments that he needs to retain the offending paragraphs in order to be able to obtain injunctive protections and declaratory relief. (Opposition, pp. 44 & 49.)  The Court already has the power to fashion such remedies under the statutes applicable to Graves's claims.  The criminal remedies available under Section 1001 have absolutely no bearing on the Court's ability to grant Graves equitable relief for damages occasioned by purported age discrimination or fraud.

Graves also argues that, because evidence of a violation of Section 1001 will establish animus on DBSI's part, it will help him establish the animus necessary to prove retaliation.  (Opposition, p. 46.)  This argument is farfetched.  It not only presumes the Court will

26

allow a mini-trial in the middle of Graves's age discrimination trial with respect to violations of Section 1001, but it also seeks to transpose the motivation and intent of DBSI and its counsel in drafting the Position Statement to a different set of decisions made much earlier, when DBSI decided not to reconsider its decision to terminate Graves. Simply put, the only relevant intent with respect to Graves's retaliation claims is the intent of the decision makers with respect to the actions that Graves claims to be retaliatory.

Finally, Graves argues that the admission of evidence of fraud against the EEOC would be relevant to impeach the credibility of particular officials of DBSI is simply nonsensical. (Opposition, pp. 46-47.) The credibility of the officials who may have contributed to the drafting of the EEOC Position Statement can be evaluated on the basis of the content of the Position Statement, not by the filing of entirely irrelevant allegations regarding their commission of criminal acts against the EEOC.

In sum, the statements Graves makes in Paragraphs 14, and 95-124 are irrelevant and prejudicial, and serve absolutely no purpose in either proving liability against DBSI or in assessing appropriate liquidated damages in the event such liability is found. Gratuitous allegations of criminal activity by DBSI, wholly unrelated to the allegations of age discrimination brought forth by Graves, have no place in this matter or in the public pleading irresponsibly filed by Graves. This Court should grant DBSI's motion to strike these impertinent and inflammatory criminal allegations.

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that the Court grant its

Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint,

together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       July 25, 2007

SIDLEY AUSTIN LLP

By: _____
    Cliff Fonstein
    Joanne Seltzer
    787 Seventh Avenue
    New York, New York 10019
    (212) 839-5300

Attorneys for Defendant
Deutsche Bank Securities Inc.

28

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on July 25, 2007, I caused a true and correct copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion For Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint to be served by electronic service through the Court's ECF system and by Federal Express overnight delivery upon the following:

Richard T. Seymour
Law Office of Richard T. Seymour, PLLC
1150 Connecticut Avenue, NW, Suite 900
Washington, D.C. 20036-4129

Steven A. Berger
Berger & Webb, LLP1633 Broadway, 46th Floor
New York, New York 10019

_____
Joanne Seltzer

NY1 6278425v.4