Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2007 WL 1732493 (N.D.Ill.)
**(Cite as: Slip Copy)**

Allen-Jones v. Governors State University
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
   United States District Court,N.D. Illinois,Eastern
                         Division.
         Glenda ALLEN-JONES, Plaintiff,
                           v.
   GOVERNORS STATE UNIVERSITY and Board of
   Trustees of Governors State University, Defendants.
                   **No. 05 C 6046.**

                     June 14, 2007.

Glenda Allen-Jones, Park Forest, IL, pro se. Richard J. Cho, Divya Rani Mehta, Illinois Attorney General's Office, Chicago, IL, for Defendants.

        ***MEMORANDUM OPINION AND ORDER***
JAMES B. ZAGEL, United States District Judge.
*1 Plaintiff Glenda Allen-Jones has filed suit against Defendant Governors State University ("GSU"), alleging employment discrimination under Title VII. GSU has now filed this motion seeking summary judgment.

                        **FACTS**

GSU employed Allen-Jones as a University Lecturer from 2000 to 2005. University Lecturer is a temporary position for which GSU contracts with lecturers for certain academic periods.[FN1] At the end of her last contract, GSU offered Allen-Jones another contract from September 1, 2005 through December 31, 2005. This was a shorter period than the year-long contracts she had in preceding years. She believed that this type of contract was offered to faculty who are about to be terminated. She did not sign the contract or show up to teach her assigned classes. The contract was voided. Dean Russell told (or encouraged) her to apply for any available tenure track positions, but she did not do so.

> FN1. Her contracts ran from August 16, 2000-June 30 2001; July 1, 2001-August 31, 2001; September 1, 2001-August 31, 2002; September 1, 2002-August 31, 2003; September 1, 2003-August 31, 2003; September 1, 2003-August 31, 2004; and, finally, September 1, 2004-August 31, 2005.

Allen-Jones alleges her University Lecturer position was not converted to a tenure track position because of her race. According to Plaintiff, a Dean (Diane Alexander) verbally promised her that her position would be so converted upon receipt of her doctorate. Next, she alleges that her existing lecturer position was eliminated because of her race. She also claims her removal as Chair of the Early Childhood Student Progress Committee ("EC Committee") was due to her race. Lastly, she believes that her February 2005 performance evaluation was lower than previous evaluations due to her race.

GSU responds first by noting that a Dean has no authority to make such a promise; only the University president can do this. In addition, GSU says her lecturer position was terminated because the Division of Education needed another tenured faculty member in Elementary Education, and the College (of which the division is a part) could not afford to have two new tenure track positions. GSU also claims that the removal of Allen-Jones from the EC Committee took place because the Faculty Senate voted that the Chairs could only be filled by tenured faculty. Lastly, GSU argues that her evaluation (which GSU notes was "satisfactory") was due to her lack of the necessary two-year teaching experience in an early childhood setting.

                      **ANALYSIS**

                       **Standard**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-33, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in Plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to Plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiff must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir.2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

**Discrimination**

**\*2** Unsurprisingly, Allen-Jones does not have direct evidence of discrimination with respect to her claims. Few employers in the 21st century would admit that they based a decision on race, and she could not offer any direct evidence at her deposition that race was a factor in the elimination of her position, her removal as Chair, or her evaluation. With respect to GSU's failure to convert her position to tenure track, she states that two academics-Larry Cross and Roger Oden-told her it was because of her race. However, the admissibility of this evidence is destroyed by the fact that neither man participated in the decision nor had personal knowledge of the reasons for that decision.

GSU puts forth three grounds for summary judgment. First, GSU argues that, with respect to some of the claims, there is no adverse employment action within the meaning of the law. "An adverse employment action must be materially adverse ...." *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir.2004). Actions such as a termination, a decrease in compensation or benefits or a downgrading of title and job duties is sufficient. Here, Allen-Jones focuses on the Chair position she lost, which meant she had to teach an additional course. Her Complaint fails on this point, though, because Chair position did not provide any extra compensation, and changing her work assignment to one which Plaintiff enjoys less does not make the change material.[FN2] Additionally, her performance evaluation was satisfactory, so it is difficult to see how this is adverse action. It did mean that she did not receive a discretionary bonus, but that is not a legally adverse action. *Tyler v. Ispat Inland, Inc.,* 245 F.3d 969, 972 (7th Cir.2001). These actions might serve as evidence of racial hostility, but they are not themselves actions for which the law offers compensation. The elimination of her position and the refusal to convert her position to tenure track are clearly adverse actions.

> FN2. I do note the apparent irony of a complaint about not getting a tenure track position from a teacher whose definition of an adverse action is being required to teach a course rather than chair a committee.

GSU also says there is no similarly situated employee who received more favorable treatment. According to Allen-Jones, there is one white female whose Lecturer position was not eliminated. GSU notes, without contradiction, that her position was eliminated, but, because of her greater seniority and experience in special education, this person was permitted to remain as a lecturer teaching in a different program area, so she was not actually similarly situated. Another white female did have her position converted to tenure track, but she benefitted from a need in the Reading program, which was her specialty. Plaintiff also has a background in Reading. Although the other white female also received an oral promise of conversion, she also had a written contract providing for conversion. Two other white male faculty members, who had the same oral promise of conversion from the same Dean that promised Plaintiff, also had their position eliminated. They later received tenure track position by applying for them-the same process that was open to Allen-Jones.

**\*3** Finally, GSU says there is no evidence that its reasons were pretextual. Removal from the Chair was the result of faculty senate rules, the evaluation was the result of Plaintiff not having the experience, the verbal promise was not authorized, and the school did not have enough money for two tenure track positions. There is no evidence, they say, other than bare opinion, that these reasons were not the real reasons.

The concrete facts are undisputed.[FN3] Plaintiff only added that her last evaluation (given by the same person who had previously given her better evaluations), while satisfactory, was substandard by her expectations since she had won several awards for her "outstanding and overall teaching abilities." She also says that her ranking changed after she "inquired as to [the] failure to convert her University Lecturer position to a tenure track faculty position." The letter she was sent encouraging her to apply for a tenure track position "failed to give Plaintiff sufficient notice that the University lecturer position would be eliminated." The heart of her case is that she had reasonable expectations of getting a tenure track position based on the apparent (but not real) authority of the dean who promised it. She was not given sufficient notice of various changes that were to occur, and she was the only faculty member to which this happened.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> FN3. GSU objects to some of Plaintiff's Statement of Additional Facts. Some of the objections are valid in the sense that the assertions are actually Plaintiff's perception of the facts at various points in time, e.g. that Plaintiff, upon receiving her last contract, "was forced to find alternative employment" or that she relied on a verbal promise of tenure. As a statement of perception, I accept it as true. There are other statements of perception that, true or not, are irrelevant, e.g. that she was selected after a national search (GSU notes the search was for another position for which she was not selected). The cited record support (or in some cases the absence of support) does not justify the assertions of fact made in Paragraphs 60, 61, 65 (second sentence), 66, 68, 69, 71, 72, 73, 74, 75, 76, 77 and 78. Many of these statements are inferences-suitable for argument, but not actually facts supported by record references.

Plaintiff's indirect proof fails as well. GSU has offered evidence from which I can reasonably conclude that two white females who did better than Plaintiff are not similarly situated.[FN4] As the summary judgment record stands, Marcus Ahmed, who evaluated Allen-Jones and was familiar with her and the other comparators, offered an affidavit which states non-discriminatory reasons for the events which are the subject of this suit. There is no evidence, short of Plaintiff's personal opinion, to conclude that a reasonable finder of fact could deem that there was pretext. Much of Plaintiff's resistance to summary judgment is based on the assumption that GSU's evidence could have been better. The evidence is adequate and no real effort was made to refute it. Plaintiff did not seek any of the statistics and the depositions of other GSU personnel that she says should have been offered by GSU.

> FN4. Mary Chladek survived the elimination of her position, but she had greater tenure than Plaintiff and special education teaching experience which Plaintiff did not possess. Nina Nilsson had a more appropriate background (in Reading and actual teaching) than did Plaintiff and she, unlike Plaintiff, had a binding written contract for tenure. The two male comparators lost their positions and had to apply for tenure positions, which they received. This is a substantial differentiation from Plaintiff who had the same opportunity to apply but did not do so. If her claim is valid (as opposed to being unprovable) it was unwise of her to decline the application. Denial of her application might have provided some evidence supporting her claim.

Allen-Jones passed up opportunities to secure evidence supporting her claim (both during litigation and at the time she was invited to apply for tenure), and she has to live with the consequences of those decisions. GSU and its Board of Trustees' motion for summary judgment is granted.

N.D.Ill.,2007.
Allen-Jones v. Governors State University
Slip Copy, 2007 WL 1732493 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268
**(Cite as: Not Reported in F.Supp.2d)**

C
Andruff v. World Travel Holdings, PLC
S.D.N.Y.,2002.

United States District Court, S.D. New York.
Ronald N. ANDRUFF Plaintiff,
v.
WORLD TRAVEL HOLDINGS, PLC et al.,
Defendants.
No. 01 Civ. 10717(LBS).

May 22, 2002.

*MEMORANDUM & ORDER*
SAND, J.

*1 Plaintiff Ronald N. Andruff (" plaintiff" or " Andruff" ) brings three causes of action against World Travel Holdings, PLC, (" WTH PLC" ), World Travel Holdings, USA (" WTH USA" ), John Deacon (" Deacon" ), John Biles and Adrian Biles (collectively " defendants" ) arising out of his former employment with WTH PLC. First, Andruff alleges that defendants breached a two-year contract of employment by terminating him prematurely in July 2001. (According to plaintiff, his contract with WTH PLC should have run from October 1, 2000 until October 1, 2002.) Second, Andruff asserts that defendants fraudulently induced him to leave his position of employment willingly by making false promises of severance payments. Finally, Andruff pleads a cause of action for promissory estoppel grounded in the same facts.

Defendants have moved to dismiss all three causes of action. Following oral argument on these motions, the Court converted the motion concerning the breach of contract claim into a limited motion for summary judgment. For the reasons set forth below, we grant summary judgment as to the breach of contract claim. Likewise, we dismiss the fraudulent inducement and promissory estoppel claims.

*Background*

The instant controversy arises out of plaintiff's employment relationship with WTH PLC. As the amended complaint recounts, from Spring 1999 until May 2000 plaintiff was employed as a Chief Executive Officer (" CEO" ) of Fare One, a travel related business. (Plaintiff owned a 25 percent share in Fare One.) In May 2000, Fare One entered into a purchase option agreement with Culver Holdings, PLC, a publicly held British company. Culver Holdings subsequently created WTH PLC, also a publicly held British company, and transferred the purchase option agreement into this company, resulting in WTH PLC's ownership of Fare One.[FN1] According to the amended complaint, following the acquisition of Fare One, plaintiff received shares in WTH PLC in exchange for his shares in Fare One and an oral two-year employment contract with WTH PLC to continue as Fare One's CEO. (His salary was set at $150,000 per year, plus various benefits.) Plaintiff was also named as a director of WTH PLC.

> FN1. Defendant WTH USA, mentioned intermittently throughout the amended complaint, is a wholly-owned subsidiary of WTH PLC which was " allegedly created" in Spring 2001. (Am.Comp.¶ 19). John Deacon was appointed as its president. Although following the formation of WTH USA, Fare One was formally placed under its direction, according to the amended complaint, WTH PLC continued to control all decisions regarding plaintiff's alleged employment contract and severance agreement. Defendants maintain that WTH USA is not a proper defendant to the breach of contract claim because it was not a party to the contract. Because we grant summary judgment as to all defendants, we do not address this issue separately.

According to the amended complaint, plaintiff sought a written contract with WTH PLC stipulating the terms of his employment. When defendants did not proffer such a written contract, plaintiff drafted an agreement (the " draft agreement" ) and submitted it to WTH PLC in November 2000. WTH PLC returned it some time later in 2001 with " limited changes" but no agent or representative of the Company signed the employment agreement. (Am.Comp.¶ 26). In spite of plaintiff's inability to obtain a written employment contract from WTH PLC, according to the amended complaint, plaintiff continued to perform all of his duties until his termination " as though the agreement had been fully subscribed to by necessary parties." (Am.Comp.¶ 29).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF   Document 12-2   Filed 07/25/2007   Page 5 of 8

Not Reported in F.Supp.2d                                                                                                      Page 2
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268
(Cite as: Not Reported in F.Supp.2d)

In mid-July 2001, defendants terminated plaintiff, allegedly due to plaintiff's " strained relationship" with John Biles and various other executives and board members. (Am.Comp.¶ 33). According to plaintiff, Deacon offered him three months of severance and various other payments and benefits but informed him that the offer was contingent on WTH PLC's formal ratification. In exchange, plaintiff agreed to " provide all reasonable assistance" in the transition of the executive team, " to provide additional consulting services, when needed" and promised not to " engage in any conduct detrimental to Fare One." (Am.Comp.¶ 35). Plaintiff repeatedly asked Deacon that WTH PLC reduce the severance offer to writing. Plaintiff likewise alleges that the other defendants " individually and collectively" led him to believe that a severance agreement would be forthcoming. (Am.Comp.¶ 51). Defendants never furnished plaintiff with a written severance agreement, nor complied with any of the original offers.

*2 Plaintiff subsequently brought suit.

*Discussion*

" Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Metropolitan Life Ins. Co. v. Bigelow, 283 F.3d 436, 440 (2d Cir.2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). In considering a motion for summary judgment, the court should construe " the evidence in the light most favorable to the non-moving party." Scholastic, Inc. v. Harris, 259 F.3d 73, 81 (2d Cir.2001). Likewise, when presented with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations contained within as true. Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 685 (2d Cir.2001). Dismissal of the complaint is proper only where " it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

*Breach of Contract*

As stated above, the amended complaint alleges that WTH PLC breached a two-year employment contract with Andruff by terminating him prematurely. In its initial submissions to this Court, defendant maintained that plaintiff's breach of contract claim should be dismissed because the contract violated the statute of frauds. Plaintiff acknowledged that there was no signed written agreement but alleged that the parties agreed to a termination provision (ultimately incorporated in the draft agreement) that made the contract terminable within one year and, therefore, rendered the statute of frauds inapplicable.[FN2] At oral argument held on March 21, 2002, the Court reserved decision. Finding that consideration of the termination provision was critical to sound resolution of the issue, the Court converted defendants' motion to dismiss into a limited motion for summary judgment to allow it to evaluate the termination provision contained in the draft agreement.[FN3]

> FN2. Plaintiff also argued that the doctrine of part performance took the draft agreement out of the statute of frauds. We do not see any merit to this argument.
>
> FN3. In their supplemental briefing dated April 25, 2002, defendants urge this Court not to assess the draft agreement. Defendants maintain that according to the allegations in the amended complaint, the draft agreement was not the product of mutually agreed upon terms. Defendants contend that " [f]oremost, the amended complaint does not allege that defendant agreed to the provisions in the termination clause, orally or otherwise and, therefore, the inquiry should end there. The meaning and scope of the termination provision, drafted unilaterally by plaintiff, is irrelevant since the complaint does not allege any agreement by defendants to its terms." Def. Supp. Mem. at 1-2. Defendants' contentions, however, are belied by a close examination of the amended complaint. In paragraph 28 of the amended complaint, plaintiff *does* allege that defendants orally agreed to the termination clause contained in the draft agreement. After summarizing the termination clause set out in the draft agreement, plaintiff alleges that, " [a]ll of the above clauses as articulated by plaintiff in his draft ... were elements already agreed to by the parties as terms of plaintiff's oral agreement with WTH PLC." (Am.Comp.¶ 28). Consequently, we find it is appropriate to examine the draft agreement's termination

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268
**(Cite as: Not Reported in F.Supp.2d)**

provision.

Under New York law, oral agreements violate the statute of frauds when " by their very terms [they] have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverages, Inc.,* 63 N.Y.2d 449, 454 (1984). *See also* N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 1989). By definition, a party cannot perform a contract by breaching it. Therefore, if a defendant's only means of terminating an oral contract within a year is predicated on plaintiff's breach, the contract is barred by the statute of frauds. *See, e.g., Boening,* 63 N.Y.2d at 454; *Volmar Distributors, Inc. v. The New York Post Co., Inc.,* 825 F.Supp. 1153, 1168 (S.D.N.Y.1993). Likewise, " ' if the possibility of performance within one year is contingent on some act or performance solely within the discretion or control of the party seeking to enforce the oral agreement, the agreement remains subject to the statute's requirement that it be in writing before it can be enforced." ' *Zaitsev v. Salomon Bros., Inc.,* 1994 WL 361463, *3 (S.D.N.Y. July 8, 1994) (quoting *Vanderbilt University v. Dipsters Corp.,* 1985 WL 9366 at *2 (S.D .N.Y. July 2, 1985)).

*3 Plaintiff, however, argues that a narrow line of Second Circuit precedent renders the statute of frauds inapplicable to the parties' two-year oral employment contract. Plaintiff points out that the Second Circuit has acknowledged that, under New York law, termination " for cause" may not always be coterminous with termination for a breach of contract. *Ohanian v. Avis Rent A Car,* 779 F.2d 101, 106-07 (2d Cir.1985). If, in an oral contract, the parties expressly agree to a termination provision by which defendant may terminate plaintiff " for cause" even if plaintiff does not breach the contract, the contract can be fully performed within one year under New York law. *Id.,* as limited by *Burke v. Bevona,* 866 F.2d 532 (2d Cir.1989). The Second Circuit has adjudged that, in these limited cases, the statute of frauds does not apply.

In the instant case, plaintiff alleges that the parties agreed to an express termination provision in their oral contract (which plaintiff subsequently incorporated into his draft agreement). (Am.Comp.28).[FN4] Hence, we agree that resolution of this motion turns on one question: Did the termination provision at issue here allow defendants to terminate plaintiff for a reason other than plaintiff's breach of the employment contract?

> FN4. As stated *supra,* n. 3, at this stage defendants do not dispute that the parties expressly agreed to these terms, defendants challenge whether plaintiff sufficiently alleged this understanding in his pleadings.

Plaintiff maintains that this termination provision gives defendants precisely this power. The termination provision allegedly memorialized in the draft agreement states that WTH PLC has " the absolute right to terminate" the contract " for Cause." The provision defines Cause as:
(i) Executive's material breach of the terms of this Agreement or any other legal obligation to the Company; or
(ii) Executive's fraud, dishonesty, gross negligence, embezzlement, misconduct, insubordination, failure to perform his duties or conviction of a misdemeanor, the nature of which is detrimental to the reputation or business of fare1 ... or a felony, or entry of a *nolo contendere* plea to either misdemeanor or felony offense (sic).

Draft Agreement at 3. In particular, plaintiff trains upon the " failure to perform his duties" provision in subsection (ii).[FN5] Situations exist, plaintiff argues, where plaintiff could fail to perform his duties without breaching his contract.[FN6] For example, plaintiff suggests if " plaintiff was simply doing a poor job of running the company, *i.e.* by making poor decisions, not meeting revenue goals or keeping certain costs and expenditures below target levels, or otherwise failing to adequately run the company" then " arguably" plaintiff would fail to perform duties but not be in breach of his contract. Pl. Supp. Mem. at 5.

> FN5. Plaintiff also contends that a felony conviction would not constitute a breach of contract. For the reasons stated above, we do not find this argument to have merit. *See, supra, Zaitsev,* 1994 WL 361463 at *3.

> FN6. In his submissions to the court, plaintiff does not outline the contours of his contractual duties. While plaintiff alleges that portions of the draft agreement reflected " elements" upon which the parties had previously agreed, he does not claim that the draft agreement memorialized any understanding of these duties. (Am.Comp.¶

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF  Document 12-2  Filed 07/25/2007  Page 7 of 8

Not Reported in F.Supp.2d  Page 4
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268
(Cite as: Not Reported in F.Supp.2d)

28).

While we do not dispute that there is a narrow exception to New York's statute of frauds for situations where an employer expressly reserves the right to terminate an employee for " just cause" even though the employee does not breach the contract, we do not feel this is such a situation. Plaintiff does not present any legal precedent or offer any hypothetical situations by which he could " fail[ ] to perform his duties" without breaching the contract; nor can we conjure any. A plain reading of the termination provision demonstrates that the only way defendant can terminate the parties' oral contract within a year is if plaintiff breaches the contract during this period. As such, the contract is barred by the statute of frauds.[FN7]

> FN7. Defendants also argue that the Court should grant summary judgment because, under New York law, if an employee's only contract is oral, the Court should deem plaintiff an employee-at-will. (The logical conclusion of this argument would seem to be that plaintiff cannot recover on a breach of contract claim because the employer retains the right to terminate plaintiff at any time. Mysteriously, defendants present this argument in support of their position that the statute of frauds should apply.) While we do not find this argument to be persuasive (all of the cases to which defendants point the Court are inapposite), it is of no moment. We grant summary judgment on other grounds.

*4 In short, defendants have adequately demonstrated that they are entitled to judgment as a matter of law and we hereby grant their motion.

*Fraudulent Inducement*

In plaintiff's second cause of action, plaintiff claims that defendants falsely promised him a severance package on which basis plaintiff asserts that he agreed to abide by a host of conditions, including willingly stepping aside as CEO of Fare One, assisting in the transition of leadership of Fare One and refraining from (1) actively pursuing previously commenced WTH PLC-related litigation in Great Britain; (2) making any deleterious public statements regarding his prior employment with WTH PLC and/or termination therefrom; and (3) taking legal action to enforce his rights under his alleged employment contract with WTH PLC. Plaintiff maintains that the " defendants individually and collectively participated in making offers for the express purpose of inducing" him to agree to and satisfy the conditions listed above with the " understanding that such offers and promises ... would not be honored." (Am.Comp.¶ 51). On this basis, plaintiff claims that defendants are liable for fraudulent inducement. Defendants contend that this claim must be dismissed because the amended complaint fails to allege the requisite elements of fraud.

The parties do not dispute the five basic elements of common-law fraud in New York. Both parties acknowledge that to state a prima facie case of fraud, a plaintiff must show that there was a material false representation made with knowledge of its falsity and intent to defraud. The plaintiff must also show that he reasonably relied on this representation and suffered damages as a result. *Kaye v. Grossman,* 202 F.3d 611, 614 (2d. Cir.2000). The parties disagree as to the sufficiency of plaintiff's pleadings.

Defendants contend that plaintiff's amended complaint does not satisfy any of these elements. Defendants preliminarily point out that if plaintiff, as he does, acknowledges that Deacon qualified his severance offer by informing plaintiff that it " was contingent on WTC PLC's formal ratification" that plaintiff may not simultaneously assert that Deacon falsely represented himself or intended to defraud plaintiff in presenting this offer. Defendants equally argue that plaintiff cannot demonstrate reasonable reliance thereon. Defendants contend that in order for plaintiff to have reasonably relied on Deacon's offer, he would have had to assume that Deacon falsely informed him that he was unable to bind the company.[FN8] Defendants further suggest that it is patently illogical for plaintiff to rely on an individual he personally found to be duplicitous. Finally, defendants take issue with plaintiff's alleged failure to claim any specific damages resulting from defendants' alleged fraudulent inducement and conclude by suggesting that plaintiff's second claim for fraudulent inducement is, in reality, an effort to dress a breach of contract claim in another doctrine.

> FN8. Indeed, plaintiff makes this allegation in his amended complaint. (Am.Comp.¶ 42). Plaintiff alleges that, in spite of Deacon's assertions to the contrary, he believed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF   Document 12-2   Filed 07/25/2007   Page 8 of 8

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268
(Cite as: Not Reported in F.Supp.2d)

Deacon had the authority to bind WTH PLC in a severance agreement. Plaintiff states that it was on this understanding that he agreed to depart willingly by the terms Deacon proposed.

*5 Plaintiff, in his response, points the Court to other allegations in the amended complaint (Am.Comp.¶¶ 48-51) and asserts that these allegations make clear that in addition to John Deacon's assurances that John Biles and Adrian Biles also communicated similar severance offers to the plaintiff. The amended complaint states that " [p]laintiff relied upon defendants' promises that their offers would be memorialized and effected." (Am.Comp.¶ 49).

We do not see how these allegations-either stated in terms of Deacon's offer or those of the remaining defendants-establish fraud. That plaintiff may have altered his behavior by, among other things, refraining from additional legal action or voicing negative statements about WTH PLC in reliance on a severance agreement that he had reached with defendants " in principle" (Am.Comp.¶ 39) may demonstrate plaintiff's lack of sophistication in contractual negotiation but it does not establish that defendants' actions were fraudulent.

On this basis, we hereby dismiss plaintiff's second of action.

*Promissory Estoppel*

To establish a cause of action for promissory estoppel under New York law, a plaintiff must allege three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury sustained by reason of reliance on this promise. *Kaye,* 202 F.3d at 615. Plaintiff fails to establish essential elements for his promissory estoppel claims. In regard to the severance agreement, there is no evidence that defendants made any clear and unambiguous promises regarding its terms. Likewise, as explained above, we see no basis for plaintiff's reliance thereon. We also find that plaintiff's claim in regard to the oral contract is deficient. " A claim for promissory estoppel may not be maintained under New York law where the alternative claim for breach of contract is barred by the Statute of Frauds, unless the circumstances make it unconscionable to deny the promise upon which the plaintiff relied." *United Magazine Co. v. Murdoch Magazines Distribution, Inc.,* 146

F.Supp.2d 385, 405 (S.D.N.Y.2001) (citing *inter alia Merex A.G. v. Fairchild Weston Sys., Inc.,* 29 F.3d 821, 826 (2d Cir.1994); *D & N Boening, Inc. v. Kirsch Beverages, Inc.,* 99 A.D.2d 522, 524 (1984)). In such situations, the Second Circuit has indicated that unconscionable injury is " injury beyond that which flows naturally ... from the non-performance of the unenforceable agreement." *Merex,* 29 F.3d at 826. Because plaintiff has failed to demonstrate unconscionable injury, we hereby dismiss his claims for promissory estoppel.

*Conclusion*

In sum, we grant summary judgment as to the breach of contract claim and dismiss plaintiff's claims for fraudulent inducement and promissory estoppel.

SO ORDERED.

S.D.N.Y.,2002.
Andruff v. World Travel Holdings, PLC
Not Reported in F.Supp.2d, 2002 WL 1033811 (S.D.N.Y.), 28 Employee Benefits Cas. 2268

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.