Westlaw.

Slip Copy                                                                                                          Page 1
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

C
Butts v. New York City Dept. Of Housing
Preservation And Development
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Geneva BUTTS, Plaintiff,
v.
NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT,
Defendant.
No. 00-CV-6307 (KMK).

Jan. 29, 2007.

Geneva Butts, New York, NY, Pro Se.
Holly R. Winefsky, Esq., Zoe Lynn Davidson, Esq., Corporation Counsel of the City of New York, New York, NY, for Defendant.

OPINION AND ORDER
KENNETH M. KARAS, District Judge.
*1 Plaintiff Geneva Butts filed this action alleging discrimination by the New York City Department of Housing Preservation and Development. The Complaint alleges several causes of action, including: (1) retaliation against Plaintiff for filing discrimination claims, in violation of Title VII of the Civil Rights Act of 1964 (" Title VII" ), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (" ADEA" ), 29 U.S.C. § 629 et seq., (2) failure to promote, in violation of Title VII and the ADEA; and (3) constructive termination, in violation of Title VII and the ADEA.[FN1] In her First Amended Complaint, Plaintiff also alleged that Defendant's conduct violated other federal, state, and local anti-discrimination statutes, notably 42 U.S.C. §§ 1981, 1983, and 1985, the New York State Human Rights Law, and the New York City Human Rights Law. At the conclusion of discovery, Defendant moved for summary judgment on all counts. For the reasons stated in this Opinion, Defendant's motion for summary judgment is GRANTED.

> FN1. Plaintiff filed two amended complaints, both titled " Amended Complaint and Jury Demand." The Court will refer to Plaintiff's first " Amended Complaint and Jury Demand" as the " First Amended Complaint," and the Court will refer to Plaintiff's most recent submission as the " Second Amended Complaint." Plaintiff's First Amended Complaint is attached as Exhibit D to the Second Amended Complaint.

I. Background

A. The Parties

Plaintiff is an African-American female who was employed by Defendant, the New York City Department of Housing Preservation and Development (" HPD" ),[FN2] from 1972 until she retired in December 2000, at the age of 62. (Def.'s Amended Local Civil Rule 56.1 Statement of Undisputed Facts ¶ 1 (" Def.'s Am. 56.1" ).) Initially, Plaintiff was hired as a Level 2 Computer Systems Manager (" CSM" ). (Second Am. Compl. Ex. C at 1.[FN3]) In 1981, Plaintiff was promoted to a Level 3 CSM.

> FN2. New York City agencies may not be sued in their capacity as agencies. See New York City Charter § 396. Thus, for the purposes of this motion, the Court, as did Defendant's counsel, will construe Plaintiff's action as one against the City itself, rather than HPD. The Court does this in recognition of its duty to construe a pro se Plaintiff's papers to raise the strongest arguments they suggest. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994).

> FN3. Plaintiff has done an able job as a pro se plaintiff in compiling an extensive documentary record of her claims. Many of the facts she alleges, however, are not specifically contained within the Amended Complaint or her Rule 56.1 Statement. Mindful of the Court's obligation to construe her papers to raise the strongest arguments they suggest, many of the facts here are drawn from a variety of Plaintiff's submissions, including the fact section of her memorandum of law in opposition to Defendant's motion.

B. Alleged Discriminatory Conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In March 1996, Plaintiff worked in the Information Systems Development ("ISD") division at HPD, where she was the Director of Technology and Application Development Services and responsible for oversight of the agency's mainframe computer, one of three computer systems at HPD. (Def.'s Am. 56.1 ¶¶ 2-3.) At that time, Plaintiff supervised over 40 people. (Id. ¶ 3.) By October 1996, Plaintiff's title had changed. She was made the Director of Mainframe Application Development Services ("MADS"), where she supervised nine other employees, including Paget Mack ("Mack"), a programmer who was later promoted to become her deputy. (Id. ¶¶ 5-6.)

In May 1998, the Chief Information Officer/Assistant Commissioner of ISD was terminated. (Id. ¶ 8.) In June 1998, Hector Batista, HPD's Chief of Staff and Deputy Commissioner, sent an email to Plaintiff and the other two director-level employees in ISD indicating that they would have to assume additional responsibilities until a replacement for the Chief Information Officer was found. He asked the three employees to review their vacation plans given the increased demands that would be placed on them (Id. ¶ 11), and stated that he would review and approve any vacation plans for that summer. (Def.'s Mot. for Summ. J. Ex. S 01672 ("Def.'s Mot.").) Plaintiff submitted her upcoming vacation schedule, in which she stated that she intended to take thirty-one (31) vacation days between June and September 1998. Plaintiff subsequently took thirty-five (35) days of paid leave and nine (9) days of sick leave during that period, nearly triple that of the other two director-level employees. (Def.'s Am. 56.1 ¶¶ 13-15.)

*2 Plaintiff expressed interest in the vacancy created by the departure of the Associate Commissioner in an email to Hector Batista dated June 3, 1998. It stated, " if you are going to post this vacancy I am very interested in applying for the position." (Pl.'s Schedule A Docs. Ex. 2.) Plaintiff alleges no notice of vacancy was posted for this position, in violation of the City of New York's rules on filling employment vacancies described in the City's Personnel Services Bulletin 200-9 ("PSB 200-9").[FN4] (Pl.'s Am. Aff. in Opp'n to Mot. to Dismiss 5 ("Pl.'s Opp'n Mem.").) In July 1998, Nissim Baruch ("Baruch"), a white male younger than Plaintiff, was "given responsibility" for mainframe applications (Second Am. Compl. Ex. B at 2), and received a pay increase (Pl.'s Bate [sic] Stamped Docs. at 01602). Plaintiff alleges that the failure to place her in this position was discriminatory. (Id.) In August 1998, Kamal Bherwani ("Bherwani"), an Asian male approximately 32 years of age, was hired to fill the Chief Information Officer/Associate Commissioner position. Bherwani had previously worked at HPD from 1989 to 1994 and had 11 years of experience in the relevant field. (Def.'s Am. 56 .1 ¶ 16.)

> FN4. PSB 200-9 requires that after a city agency receives authorization to fulfill a vacant position, it must post a vacancy notice. (Def.'s Mot. Ex. A.) If the agency decides to fulfill the position from within the agency, it must post the notice for a period of 10 days within the agency. (Id.) If it decides to fulfill the position from outside the agency, it must follow additional procedures for posting the notice at other relevant city agencies.

One of the primary reasons Bherwani was hired was to prepare HPD for "Y2K," the name which came to describe the set of problems computer experts thought would occur when the internal clocks in older computer systems reached January 1, 2000. (Id. ¶¶ 17-18.) New York City had determined that HPD was behind other City agencies in Y2K preparation. (Id. ¶ 17.) As a result, Bherwani was given more direct access to senior leadership than his predecessor. For example, he reported directly to the Commissioner, as opposed to the Division of Administration, and, unlike his predecessor, he was invited to attend senior staff meetings. (Id. ¶ 20.) In one of Bherwani's first acts as Associate Commissioner, ISD was reorganized and renamed the "Division of Technology and Strategic Development" ("TSD"). (Id. ¶ 19.)

The reorganization of TSD in preparation for Y2K was significant. Mack, then Deputy Director of MADS under Plaintiff's supervision, became the Deputy Director of Network and Systems Management, under the Director of that section, Nissim Baruch. (Id. ¶ 21.) Later, Mack's title was changed to Y2K Contingency Deputy Director under Baruch, where he supervised Y2K preparation (Id. ¶ 23.) Plaintiff alleges that this reassignment was meant to undermine the effectiveness of her staff and discriminatorily reassign Y2K preparation duties to Barcuh. (Pl.'s Opp'n Mem. 5.) Many of Mack's duties as Y2K Contingency Deputy Director overlapped with duties formerly performed by Plaintiff's staff.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Pl.'s 56.1 ¶ 23.) Other staff was reorganized at this time as well. Darilynn Lewis ("Lewis"), another director, was given responsibility for Y2K-related procurement. (Def.'s Am. 56.1 ¶ 24.) Mainframe support employees, formerly under Plaintiff's supervision, were transferred to Baruch's division. (Def.'s Mot. Ex. L at 01575.) After the reorganization, Plaintiff supervised only two employees. (Def.'s Am. 56.1 ¶ 25.)

*3 In October 1998, Plaintiff alleges that in a meeting with Bherwani, he mentioned that he had been informed that Plaintiff's prior discrimination suit had been resolved. (Second Am. Compl. Ex. C at 1.) She also alleges that he implied that if she had further management complaints she should leave her job rather than file additional discrimination complaints. (*Id.*)

In November 1998, Bherwani reorganized the division again. He created a new position within the Division, "Director of Legacy Systems." (Def.'s Am. 56.1 ¶ 28.) The position was posted (*id.* ¶ 29), and later filled by Michael Hirst ("Hirst"), a 42-year-old white male who had been working in TSD "on loan" from another city department under the direct supervision of Bherwani. (*Id.* ¶ 27-28.) The position required skills with the "Wang" system, which Hirst possessed. (*Id.*) Plaintiff alleges that she was more qualified than Hirst but was not considered for the Director of Legacy Systems position. (Pl.'s Opp'n Mem. 6.) In addition to creating a new director position, Bherwani also decided to re-consolidate Mack's Y2K Contingency group with Plaintiff's Mainframe Applications group.

Bherwani stated in his declaration that the lack of coordination between Mack, as Deputy Director of Y2K Contingency Planning, and Plaintiff, as Director of Mainframe Applications, had caused both groups to miss deadlines. (Def.'s Am. 56.1 ¶ 32.) Bherwani gave the reconsolidated group a new title, "Y2K Mainframe Applications," and appointed Mack, a 53-year-old African-American male, as its director. (*Id.* ¶¶ 33-34.) He stated Mack was given this position based on "his proven leadership abilities, technical expertise, knowledge and experience as a programmer, historical knowledge and willingness to be a team player." (Decl. of Kamal Bherwani in Supp. of Def.'s Mot. for Summ. J. ¶ 19 ("Bherwani Decl.").) Subsequently, Plaintiff was demoted from a director position to a deputy director position (Def.'s Am. 56.1. ¶¶ 36-37), and received a 20% pay cut. (*Id.*

¶ 36.) Bherwani stated that he chose to demote Plaintiff because there was no need for two directors to supervise the mainframe, as its importance to HPD was declining, and that her performance was not "deserving of a Director position." (Bherwani Decl. ¶ 20.) This was because she failed to attend scheduled meetings and did not adjust her personal schedule to meet critical needs of the agency. (*Id.*) This demotion was approved by the Office of the Mayor on November 12, 1998, and went into effect on November 16, 1998. (Pl.'s Bate [sic] Stamped Docs. at 1585; Pl.'s Am. Schedule A Docs. Ex. 36.)

In June 1999, a vacancy notice was posted for the position of Director of Client Server Application Development. (Pl.'s Opp'n Mem. 7.) Plaintiff expressed interest in the position to Lewis and Bherwani. (*Id.*) The position was filled by Daniel Moliterno, a white male approximately 50 years old. (*Id.*) At the time, Plaintiff had 38 years of experience, while Moliterno had 25 years of experience. (*Id.*)

*4 In August 1999, Bherwani left HPD. (Def.'s Am. 56.1 ¶ 40.) The vacancy in the position of Chief Information Officer/Associate Commissioner was posted from September 13, 1999 to September 24, 1999. (Def.'s Mot. Ex. C.) HPD sought pre-approval to place Cary Peskin ("Peskin"), a white male, in the position on September 13, 1999. (Pl.'s Bate [sic] Stamped Docs. at 1598.) Plaintiff did not apply for the position. (Def.'s Am. 56.1 ¶ 42; Feb. 5, 2002 Deposition of Geneva Butts 133 ("Pl.'s Dep.").) Peskin was hired to fill the vacancy. (Def.'s Am. 56.1 ¶ 41.)

After the appointment of the new Associate Commissioner, Plaintiff claims she was subjected to mistreatment in the office. She claims she was excluded from management, that she was "harassed" about giving up her office to a new director after her demotion, that she was not allowed to work on a problem even though she knew the solution, and that she was denied a discretionary pay increase in late 1999. (Pl.'s Opp'n Mem. 9.)

In May 2000, the department was reorganized again. The Y2K Mainframe Applications section, directed by Mack with Plaintiff as deputy director, and the Planning/Client Support Services/Y2K Technical Procurement sections were combined. (Def.'s Mot. Ex. L 0000028, 0000031.) The new section was titled Mainframe/Planning/QA Support/Technical

Slip Copy                                                                                              Page 4
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

Procurement and was led by Lewis, as a Director. Plaintiff claims that this position was not posted, and that she was not allowed to apply for it. (Pl.'s Opp'n Mem. 9.) Both Mack and Plaintiff were no longer directors or deputy directors, and both worked under Carl Abraham, who supervised Mainframe Quality and Assurance in the new division. (Def.'s Mot. Ex. L at 0000031.)

In December 2000, Plaintiff took an early retirement incentive. (Def.'s Am. 56.1 ¶ 48.) Under the incentive, Plaintiff would receive a lump sum payout of her accrued leave. (Id. ¶ 68.) Plaintiff was informed at that time that her past leave would be subject to an audit. (Id.) HPD's initial calculations estimated that Plaintiff was owed $58,509.79. (Id. ¶ 69.) These calculations were reviewed by the Comptroller's office and adjusted. (Id. ¶ 71.) Based on the adjusted calculations of the Comptroller's office, Plaintiff was only owed $28,327.43, which was the sum approved for disbursement. (Id. ¶¶ 71-74, 77.) Plaintiff alleges that this adjustment was in retaliation for an Article 78 proceeding, an administrative claim under New York State law, that she brought against HPD in 1999.[FN5] (First Am. Compl. 1.)

> FN5. On December 15, 2006, after oral argument, Plaintiff submitted an additional set of papers entitled "Facts Related to Article 78 Proceeding." The Court has considered Plaintiff's additional papers, but they are not relevant to the outcome of the present motion.

Prior to her retirement, Plaintiff requested that some of the leave time she had charged to annual leave in 1998 be switched to compensatory time. (First Am. Compl. 3.) According to Defendant, such a request was unusual. (Def.'s Am. 56.1 ¶ 82.) Plaintiff's supervisor, Lewis, stated that Plaintiff was required to obtain the approval of Bernard Schwarz ("Schwarz"), the Assistant Commissioner for Human Resources. (First Am. Compl. 3.) The request was not approved. (Id.)

*5 Plaintiff did not receive her lump payment for accrued leave time until July 2001, when the audit of her accrued leave was completed. (Def.'s 56.1 ¶ 77.) She alleges that she was supposed to receive the payment within two months of her retirement, in approximately January 2001. (First Am. Compl. 1.)[FN6]

> FN6. Plaintiff's Second Amended Complaint includes allegations of discriminatory conduct that were not included in the charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"). Exhaustion is an essential element of a Title VII claim; therefore, conduct not included in a claim of discrimination filed with the EEOC is not actionable unless it is "reasonably related" to the conduct included in the claim. Williams v. N.Y. City Housing Auth., 458 F.3d 67, 70 (2d Cir.2006) (per curiam).
> Plaintiff's EEOC complaint includes a three page description of Defendant's allegedly discriminatory conduct. As described in that document, Defendant's discriminatory conduct began in approximately November 1998, with Plaintiff's demotion from a Level 3 CSM to a Level 2. Plaintiff's Second Amended Complaint includes numerous additional allegations of discriminatory conduct, including a failure to promote allegation from 1994 and a disparate treatment allegation from a failure to receive a salary increase while assuming additional responsibility in 1995. These pre-1996 allegations of discrimination are not "reasonably" related to the allegations in Plaintiff's EEOC complaint, which all concern events surrounding the reorganization of Plaintiff's department and the hiring of new division heads. Thus, the pre-1995 allegations are not actionable. See id. The remaining allegations in Plaintiff's Second Amended Complaint concern failure to promote and retaliation claims that arise out of the same facts that Plaintiff alleged in her EEOC complaint. Thus, they are reasonably related to the allegations included in Plaintiff's EEOC complaint. See id. ("This Circuit has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." (internal citations and quotation marks omitted)).
> Plaintiff's state and local law claims, however, are not subject to Title VII's exhaustion requirement. See Waterman v. Register.com, Inc., No. 05 Civ. 2191, 2005

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

WL 2759825, at *1 (S.D.N.Y Oct. 19, 2005). The pre-1996 claims, however, fall outside those statutes' limitations on the filing of claims, which require a discrimination claim be filed within three years of the discriminatory conduct. *See infra.*

### C. Procedural History

Plaintiff filed an administrative appeal of her demotion with HPD on December 30, 1998. (Def.'s Mot. Ex. P.) This appeal was denied, and Plaintiff continued to appeal her demotion to higher authorities. (*Id.*) Her final appeal was denied by William J. Diamond, Commissioner of the New York City Department of Citywide Administrative Services, on August 23, 1999.[FN7] On September 14, 1999, Plaintiff filed a charge of discrimination with the EEOC, alleging racial, gender, and age discrimination by HPD. The EEOC issued a right-to-sue letter on April 12, 2000. Plaintiff filed the Complaint in the instant action on August 23, 2000. Defendant answered on January 2, 2001. Plaintiff amended her Complaint on March 14, 2001, and again on November 15, 2002. On September 27, 2004, this case was reassigned to the undersigned.

> FN7. At some point in late 1999, Plaintiff filed a state law claim under Article 78 of the New York Civil Practice Law and Rules. Oral argument was heard in December 1999, and in January 2001, the Supreme Court for the State of New York found for Plaintiff. As a result of that action, the reduction in Plaintiff's salary and benefits was lessened. (Def.'s Mot. Ex. X.)

### II. Discussion

### A. Standard of Review

Summary judgment may be granted when it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must view all evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-movant's favor. *See Tufariello v. Long Island R.R.*, 458 F.3d 80, 85 (2d Cir.2006). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Segal v. City of New York*, 459 F.3d 207, 211 (2d Cir.2006). "Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his favor." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). "The motion 'will not be defeated merely ... on the basis of conjecture or surmise.'" *Id.* (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991)); *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir.2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) ("[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." (internal quotations omitted)).

The materiality of the facts considered by the Court will be governed by substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Castro v. Met. Transp. Auth.*, No. 04 Civ. 1445, 2006 WL 1418585, at *2 (S.D.N.Y. May 23, 2006); *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F.Supp. 1205, 1212 (S.D.N.Y.1990). A court's goal should be to "isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

*6 While courts are to be "particularly cautious" about granting summary judgement to employers in cases where the discriminatory intent of the employer is contested, *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997), "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001). Though district courts must pay careful attention to affidavits and depositions which may reveal circumstantial proof of discrimination, *see Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994), courts are not to "treat discrimination differently from other ultimate questions of fact." *Abdu-Brisson*, 239 F.3d at 466 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

*Pro se* parties are entitled to "extra consideration" and "special latitude" on summary judgment motions. *Salahuddin v. Coughlin*, 999 F. Supp 526, 535 (S.D.N.Y.1998). Therefore, this Court must read a *pro se* litigant's supporting papers liberally, interpreting them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (internal quotations and citations omitted); *see also Burgos*, 14 F.3d at 790. This does not, however, "relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir.2003) (internal quotations and citations omitted). In particular, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lyerly v. Koenigsmann*, No. 04 Civ. 3904, 2006 WL 1997709, at *2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted).

### B. Procedural Requirements

### 1. Federal Claims

Both Title VII and the ADEA require that a plaintiff file a charge with the EEOC prior to filing a federal court action. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (per curiam) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."). In cases such as this one, where a plaintiff has initially instituted state or local proceedings challenging the allegedly discriminatory conduct, that charge must be filed no more than 300 days from the date of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d); *see also Hill v. Citibank Corp.*, 312 F.Supp.2d 464, 472 (S.D.N.Y.2004).[FN8] The filing deadlines for a charge of discrimination act as a "statute of limitations" and a failure to timely file a charge acts as a bar to a plaintiff's action. *See Hill*, 312 F.Supp.2d at 472. This "statute of limitations" begins to run when each discrete discriminatory act occurs. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Hill*, 312 F.Supp.2d at 472.

> FN8. 42 U.S.C. § 2000e-5(e)(1) reads in full:
> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.
> 29 U.S.C. § 626(d) reads in full:
> No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed-
> (1) within 180 days after the alleged unlawful practice occurred; or
> (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.
> Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

*7 Here, Plaintiff filed her charge of discrimination with the EEOC on September 14, 1999. As a result, the statute of limitations had already run on any discriminatory acts that occurred prior to November 18, 1998, 300 days prior to the filing of Plaintiff's charge of discrimination. Thus, the statute of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 259937 (S.D.N.Y.)

(Cite as: Slip Copy)

limitation for federal Title VII and ADEA claims has run on three of Plaintiff's claims, namely those regarding her failure to be considered for the positions filled by Nissim Baruch in June 1998 and Kamal Bherwani in August 1998, and, potentially, her demotion during the 1998 reorganization, which occurred on November 16, 1998 (Pl.'s Am. Schedule. A Docs. Ex. 36).

Plaintiff gives two justifications for why these claims are timely. First, she claims that these acts were part of a continuing pattern of discrimination that began in the mid-1990s and continued until the filing of her charge in September 1999. Second, she argues that she was required to exhaust her administrative appeals prior to filing her federal claim, which is correct, and that her appeal was not exhausted until August 23, 1999. The September 13, 1999 filing date for her charge of discrimination is therefore, she argues, timely, as it is within 30 days from when she received notice that her state proceedings were terminated.

When a claim is based on a continuous pattern or practice of discrimination that occurs over time, the statute of limitations period does not begin until the final act of discrimination in the pattern. *See Washington v. County of Rockland,* 373 F.3d 310, 317 (2d Cir.2004). This is known as the "continuing violation" doctrine. *Id.* However, as the Supreme Court noted in *Morgan,* this doctrine does not apply to discrete discriminatory acts: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan,* 536 U.S. at 113. Failure to promote, demotion, retaliation, and termination claims are all viewed as "discrete" incidents of discrimination. *See id.* at 114; *see also Petrosino v. Bell Atlantic,* 385 F.3d 210, 220 (2d Cir.2004) ("The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period."). Thus, Plaintiff's claims do not fall within the "continuing violation" doctrine and her allegations that her timely claims were part of a pattern of discrimination will not save her untimely claims from dismissal.

Plaintiff's second argument fares a little better. Under both the ADEA and Title VII, a plaintiff has 30 days from the receipt of notice that the state or local claim has been terminated to file a charge of discrimination.[FN9] *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). Here, Plaintiff filed an administrative appeal related only to her demotion, not her failure to be promoted to the positions filled by Baruch and Bherwani. Thus, the tolling period for state or local law claims related to her demotion does not save her untimely federal failure to promote claims, as they were not included in the state or local proceeding. Plaintiff's administrative appeal did challenge her demotion, however. Therefore, the Court considers Plaintiff's November 1998 demotion claim to be timely.[FN10]

> FN9. Whether an intra-agency administrative appeal is a claim under local law that tolls the statute of limitations period for Title VII and the ADEA was not briefed by the parties and is not at issue in the Court's decision. As the parties did not contest the point, the Court assumes without deciding that Plaintiff's internal HPD appeal is sufficient to invoke the 30-day notice of termination exception in the relevant sections of the ADEA and Title VII.

> FN10. The statute of limitations for federal claims filed under 42 U.S.C. §§ 1981, 1983, and 1985 is three years. Although the statute of limitations for these claims differs from that of Title VII and the ADEA, the substantive framework for evaluating them is identical to claims raised under those statutes and the relevant state and local anti-discrimination statutes, the New York State Human Rights Law and New York City Human Rights Law. *See Martinez v. Sulner,* No. 04 Civ. 2728, 2006 WL 737137, at *4 (S.D.N.Y. Mar. 23, 2006) ("Discrimination claims under [Sections 1981, 1983, and 1985] ... are assessed pursuant to standards similar to those applicable to Title VII claims."). Plaintiff's federal claims under 42 U.S.C. §§ 1981, 1983, and 1985 are discussed *infra.*

### 2. *State and Local Claims*

*8 Section 296 of the New York State Human Rights Law ("NYSHRL") gives complainants three years from the date of any allegedly discriminatory acts to file suit. *See Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 572 (2d Cir.2005). Section 8-502 of the New York City Human Rights

Slip Copy                                                                                                                  Page 8
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

Law ("NYCHRL") does the same. *See* N.Y. City Admin. Code § 8-502(d). As a result, any conduct that occurred between September 14, 1996, and the filing of her charge of discrimination on September 14, 1999, is not time barred under the NYSHRL and the NYCHRL. Thus, Plaintiff's failure to promote claims relating to the hiring of Baruch and Bherwani are timely under the NYSHRL and NYCHRL.[FN11]

> FN11. Defendant asks the Court to decline to exercise pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). However, this provision is discretionary, and a district court may exercise pendant jurisdiction over state law claims arising out of facts similar to those that form the basis of federal claims over which the court has original jurisdiction, even if all federal claims have been dismissed. *See Purgess v. Sharrock, 33 F.3d 134, 139 (2d Cir.1994)*. Although it is true, as Defendant notes, that it is not an abuse of discretion for a federal court to dismiss pendant state law claims if all federal claims have been dismissed prior to trial, *see Castellano v. City of New York, 142 F.3d 58, 74 (2d Cir.1998)*, requiring the parties to engage in exactly the same discovery as has already occurred in this case is a waste of scarce judicial resources. Thus, the Court will consider Plaintiff's state law claims.

*C. Intentional Discrimination Claims*

*1. Analytical Framework*

Title VII and ADEA claims are subject to the burden shifting framework outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)*. Plaintiff must first establish a prima facie case of discrimination. *See id.* at 802 (Title VII); *Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 187 (2d Cir.2006)* (ADEA). To establish a prima facie case, the *McDonnell Douglas* test requires that a plaintiff show: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir.1999)* (Title VII); *see also Fagan v. N.Y. State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir.1999)* (ADEA).

Plaintiff's burden in establishing a prima facie case is "de minimis." *Douglas v. Dist. Council 37 Mun. Employees' Educ. Fund Trust, 207 F.Supp.2d 282, 289 (S.D.N.Y.2002)*.

If the plaintiff satisfies this initial burden, the burden of production (but not persuasion) shifts to the employer to articulate a legitimate, non-discriminatory reason for the action. *See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir.2004)*. If the employer carries this burden, the burden of production shifts back to the plaintiff to demonstrate that the legitimate reasons offered are pretextual. *Id.* The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, and if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate. *Id.* This analysis is the same for claims under the NYSHRL and NYCHRL. *See Dawson v. Bumble & Bumble, 398 F.3d 211, 217 (2d Cir.2005); Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir.2001); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir.2000); Torres v. Pisano, 116 F.3d 625, 629 n. 1 (2d Cir.1997); Ferrante v. Am. Lung Assoc., 687 N.E.2d 1308, 1312 (N.Y.1997)*.[FN12] It is undisputed in this case that Plaintiff was a member of the relevant protected classes and that she had the qualifications listed for the positions at issue. Thus, the only questions in dispute are whether Plaintiff suffered an adverse employment action, and whether that action occurred under circumstances giving rise to an inference of discrimination.

> FN12. Where, as here, parties in a discrimination action do not distinguish the applicable levels of proof for federal, state, and local claims, the Second Circuit has treated them as identical. *See Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir.2003)*. Therefore, for all purposes other than the relevant statutes of limitations, discussed *infra*, the Court's analysis of Plaintiff's discrimination claims under Title VII and the ADEA applies equally to her state and local law claims. *See Gonzalez v. City of New York, 354 F.Supp.2d 327, 331 n. 2 (S.D.N.Y.2005)* (citing cases and granting summary judgment in favor of defendants on Title VII and NYSHRL claims).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2. Reorganization and Demotion Claim*[FN13]

> FN13. In her papers, Plaintiff classified this cause of action as a failure to promote claim. However, it is better argued as a reorganization or restructuring claim. As the Court must read Plaintiff's papers to raise the strongest arguments they suggest, the Court will evaluate it as a reorganization claim. Additionally, as this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983, 1985, the NYSHRL, and the NYCHRL. However, as discussed *supra*, the analytic framework for evaluating these claims is identical to that of Title VII and ADEA claims.

*9 Plaintiff alleges that she was discriminated against when, during the reorganization of TSD in November 1998,[FN14] HPD promoted Mack, a 53-year-old African American male, to Director of the newly created Y2K Mainframe Applications group. The group that Plaintiff had directed was eliminated and she was demoted to Deputy Director. It is well settled that a demotion is an adverse employment action. *See Kessler v. Westchester County Dep't of Soc. Serv.*, 461 F.3d 199, 205-06 (2d Cir.2006).

> FN14. It is impossible to establish, based on the current record, whether this reorganization was complete, or even announced, prior to November 18, 1998. Bherwani stated that it occurred in November 1998. The organizational chart that reflects these changes is dated November 16, 1998 (Def.'s Mot. Ex. L at 01585), and the administrative record of Plaintiff's demotion, which occurred during this reorganization, is dated November 12, 1998 (Pl.'s Am. Schedule. A Docs. Ex. 36). Events prior to November 18, 1998, as discussed *supra*, fall outside the statute of limitations. As the exact date of the reorganization is unclear, however, the Court will construe Plaintiff's claims liberally to fall within the statute of limitations period.

Thus, the only question remaining is whether Plaintiff's demotion occurred under circumstances giving rise to an inference of discrimination. Plaintiff alleges this reorganization was discriminatory. Her allegation is based on the fact that (1) she was replaced by a person, not of her protected class, who had fewer qualifications and less experience than Plaintiff,[FN15] and (2) other white managers in similar reorganizations were notified of the demotion and given opportunity to find new positions, courtesies that Plaintiff alleges were denied to her.[FN16] An employer's choice of a less qualified employee not from Plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination, *see Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir.2003), as does treating similarly-situated employees not in a plaintiff's protected class differently, *see Abdu-Brisson*, 239 F.3d at 467-68.

> FN15. Because Mack was also African-American, this allegation only raises an inference of gender and age discrimination. The eight-year difference in age between Plaintiff and Mack is sufficient to raise an inference of age discrimination. *See Tarsis v. Riese Org.*, 211 F.3d 30, 38 (2d Cir.2000) *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002); *Ranieri v. Highland Falls-Fort Montgomery Sch. Dist.*, 198 F.Supp.2d 542, 544 (S.D.N.Y.2002).

> FN16. Plaintiff specifically names three managers who allegedly received different treatment: Robert Sousa, Dean Plummer, and Harvey Blum. As Plaintiff does not provide the age of these employees, this allegation is insufficient to raise an inference of age discrimination. In addition, Plaintiff has provided no evidence to substantiate her allegations of differential treatment other than a reference to the employees' names. Finally, these events occurred at least four years prior to Plaintiff's alleged demotion, which makes it difficult, if not impossible, to determine if these employees were in fact similarly situated to Plaintiff. (Second Am. Compl. Ex. B at 2.)

That does not end the inquiry. It simply shifts the burden of production to Defendant to come forth with a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant produced the declaration of Bherwani, who stated that the reorganization was necessary to prepare the division for Y2K. (Bherwani

Decl. ¶ 17.) He also stated that the current separation of responsibilities between Mack's Y2K Contingency group and Plaintiff's Mainframe Applications group was inefficient and ineffective. (*Id.* ¶ 17-18.) He justified Mack's promotion over Plaintiff by saying that Mack was chosen to lead the consolidated group because he was well qualified for the position. (*Id.* ¶ 18.) Bherwani noted that Mack had " proven leadership abilities, technical expertise, knowledge and experience as a programmer, historical knowledge and willingness to be a team player " (*Id.*) He also stated that Plaintiff was demoted because Plaintiff's skills, which focused on mainframe computers, were no longer as relevant to HPD, which was shifting to networked computers. (*Id.* ¶ 21.) In addition, Bherwani stated that Plaintiff's performance was not deserving of a Director position, based on her failure to attend scheduled meetings and her refusal to make accommodations to her vacation schedule. (*Id.* ¶¶ 18-20.) Bherwani explained that the reduction in Plaintiff's salary brought her compensation in line with that of Mack's, which he felt was fair. (*Id.* ¶ 19.) In addition to Bherwani's statements, Defendant produced a memo from Batista which stated, " Geneva Butts ... is one of the most unproductive employees and must be monitored closely " (Pl.'s Bate [sic] Stamped Docs. at 01725.) Defendant, however, has produced no documentary evidence of any non-performance. Defendant did, however, provide statistical evidence regarding Bherwani's hiring practices. During Bherwani's tenure as Associate Commissioner, he promoted thirty-two people. Of those thirty-two, seventeen were African-American, eleven were female, and all eleven females were African-American. Eight were over the age of forty. (Bherwani Decl. ¶ 22.)

*10 In response to Plaintiff's allegation that white male managers were treated differently than she was during reorganizations, Defendant produced a declaration from Bernard Schwarz (" Schwarz" ), Deputy Commissioner of the Office of Administration of HPD. (Decl. of Bernard F. Schwarz in Supp. of Def.'s Mot. for Summ. J. ¶¶ 14-18 (" Schwarz Decl." ).) Schwarz provided three examples of white HPD managers, two male and one female, who received reductions in salary when they were demoted. (*Id.* ¶ 16-18.) Schwarz also specifically rebutted Plaintiff's allegations concerning Sylvia Maraia, a white female manager, who Plaintiff alleged was allowed to keep her salary during a reorganization. Schwarz stated that Maraia did not receive a demotion in that reorganization, thus, she kept her salary. (*Id.* ¶ 15.)

Plaintiff alleges that these justifications are merely a pretext for discrimination, but no support for this claim is found in Plaintiff's papers. When asked at oral argument what evidence she bases that allegation upon, she pointed to little else than her own lack of advancement within the ranks of HPD and a general allegation that HPD has, over the past 20 years, sought to remove African Americans from management positions and that her previous positions were generally filled by persons not of her protected classes. Defendant has produced much evidence that rebuts this allegation, however, namely: (1) that HPD, during Plaintiff's tenure, promoted large numbers of African-Americans, females, African-American females, and older employees; (2) that Plaintiff was not treated differently than similarly situated employees not of Plaintiff's protected class; and (3) that HPD had a detailed, legitimate business reason for Plaintiff's demotion. In light of this evidence, Plaintiff's general and speculative allegations of discrimination are insufficient to allow a rational juror to find that Plaintiff's demotion was the result of unlawful discrimination. As a result, summary judgment in favor of Defendant on Plaintiff's demotion claim is granted. *See Phillips v. Chertoff,* No. 03 Civ. 4266, 2005 WL 3466033, at *12 (S.D.N.Y. Dec. 16, 2005) (granting summary judgment, in part, because overall promotion record of defendant refuted any claim of race or gender discrimination).

### 3. Failure to Promote Claims

#### a. Analytical Framework

In the context of failure to promote cases, the Second Circuit has developed a specific application of the *McDonnell Douglas* test. A plaintiff satisfies the *McDonnell Douglas* test in a Title VII failure to promote case when the plaintiff " demonstrate[s] that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino,* 385 F.3d at 226 (internal quotation marks and citation omitted). The same framework applies to ADEA cases. *See Mauro v. S. New Eng. Telecomms., Inc.,* 208 F.3d 384, 386 (2d Cir.2000) (per curiam).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

There is a parallel line of cases that holds that a plaintiff may also raise an inference of discrimination, thereby satisfying the fourth prong of the *McDonnell Douglas* test, by demonstrating that a person, not of the plaintiff's class, was given the position. *See de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 20 (2d Cir.1996) (Title VII); *Owens v. N.Y. City Housing Auth.,* 934 F.2d 405, 408-09 (2d Cir.1991) (ADEA); *Gomez v. Pellicone,* 986 F.Supp. 220, 228 (S.D.N.Y.1997).

*11 The application requirement is not satisfied by a general request to be considered for the position. *See Petrosino,* 385 F.3d at 227. A "specific application" for a given position is required. *Id.* However, there is a "narrow" exception to the specific application requirement. *Id.* An employee may be excused from the specific application requirement if he or she demonstrates "that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id.* The Second Circuit also uses this same framework to evaluate state and local law claims that arise under the NYSHRL and NYCHRL. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709-10 (2d Cir.1998) (upholding dismissal of NYSHRL and NYCHRL claims for failure to show a specific application); *Storms v. Elec. Data Sys. Corp.,* No. 01 Civ. 665A, 2004 WL 2480857, at *1 n. 1 (W.D.N.Y. Nov. 3, 2004) ("[C]laims under the [New York State] Human Rights Law are analyzed under the same standards as Title VII claims.").

For all of Plaintiff's claims, it is undisputed that she meets the first and third requirements of her prima facie case. Plaintiff is an African American female over the age of 40. This makes her a member of the relevant protected classes. It is also undisputed that Plaintiff did not receive any of the promotions in question.

*b. Unspecified Mainframe Applications Vacancy in July 1998*[FN17]

> FN17. As this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983, 1985, the NYSHRL, and the NYCHRL.

Plaintiff alleges that the failure of HPD to place her in the unspecified position filled by Nissim Baruch in July 1998 was discriminatory. (Second Am. Compl. Ex. B at 2.) However, Plaintiff has failed to meet her prima facie burden to establish a failure to promote claim regarding this position. There is no evidence that Plaintiff applied for this position, either formally or informally; nor is there evidence in the record of any vacancy. HPD's organizational charts in the record show that Baruch held the same position, "Director of Network and Systems Management," from at least March 1996 until August 2000. Plaintiff has also failed to show, or even allege, that she applied for the position. Moreover, Plaintiff has not alleged that the vacancy was not posted or that HPD engaged in an improper job search. Therefore, Plaintiff cannot establish a prima facie case for this claim, and summary judgment in favor of Defendant on this claim is granted. *See Petrosino,* 385 F.3d at 227; *Butts v. City of New York Dep't of Pres. & Devel.,* No. 91 Civ. 5325, 1998 WL 13851, at *4-5 (S.D.N.Y. Jan. 15, 1998) (dismissing plaintiff's Title VII claims for failure to produce any evidence plaintiff was actually excluded from promotion opportunities).

*c. CIO/Associate Commissioner Vacancy in 1998*[FN18]

> FN18. As this claim is outside the scope of the Title VII and ADEA statute of limitations' periods, Plaintiff's claim is only cognizable under 42 U.S.C. §§ 1981, 1983, 1985, the NYSHRL, and the NYCHRL.

Plaintiff also claims that she requested consideration for the Associate Commissioner Vacancy filled by Bherwani in 1998, but that she was never considered. (Second Am. Compl. Ex. B at 1.) After former Associate Commissioner Gonzalez left HPD in 1998, Plaintiff sent an email to Deputy Commissioner Batista that stated "if you are going to post this vacancy I am very interested in applying for the position." (Pl.'s Am. Schedule. A Docs. Ex. 2.) There is no evidence in the record that Plaintiff followed up this email with an application. A specific application for a promotion is required to establish a prima facie case of discrimination due to a failure to promote. *See Petrosino,* 385 F.3d at 227. As the Second Circuit observed in *Petrosino,*

*12 [T]he requirement ensures that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of