Slip Copy                                                                                                              Page 12

Slip Copy, 2007 WL 259937 (S.D.N.Y.)

(Cite as: Slip Copy)

alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc. The requirement also protects employers from the unfair burden of having " to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply."

*Id.* at 227 (quoting *Brown*, 163 F.3d at 710).

Plaintiff alleges, and Defendant offers no evidence to dispute the allegation, that this position was not posted. That alone, however, is insufficient to meet her prima facie burden.[FN19] Plaintiff must also show that she had no knowledge of the vacancy or that she attempted to apply through informal procedures endorsed by the employer. *See Petrosino*, 385 F.3d at 227.[FN20]

> FN19. Inconsistent posting practices are insufficient as a matter of law to waive the specific application requirement. In *Brown*, the Second Circuit rejected the plaintiff's argument that the lack of posting alone was enough to make her prima facie case:
> As to the posting practices of [defendant], [plaintiff's] complaint impliedly concedes that some positions not requiring a college degree were posted, albeit infrequently. There is no allegation in the complaint that [plaintiff] was not aware of positions, posted or not, as they came open. [Plaintiff] does not charge, for example, that [defendant] refused to accept applications for positions or hand-picked individuals for promotion to a position without considering applicants. In fact, the complaint asserts that " dozens to hundreds" of positions were " open" for which she was qualified. Thus, we see no reason that the posting practices as alleged should exempt [plaintiff] from having to avow that she made some specific effort to apply for a particular position or positions.
> 163 F.3d at 710. There is no reason that inconsistent posting practices by HPD, though potentially in violation of Personnel Services Bulletin 200-9, command a different result here.

> FN20. In *Mauro*, the Second Circuit held that a generally expressed interest in a specific class of positions was sufficient to meet the application requirement. *See Mauro*, 208 F.3d at 387. *Mauro*, however, does not conflict with the Court's decision here. In that case, the defendant had promised plaintiff a specific promotion to a particular class of jobs when one came open. After the plaintiff was not promoted despite two consecutive openings in the preferred class, the Second Circuit found that a jury could infer that the defendant had improperly refused to notify the plaintiff of job opportunities. Although the Court did not discuss the " informal procedures" requirement later announced in *Petrosino*, a promise from a supervisor that a person would not just be considered for the next available promotion, but would in fact receive it, is similar to the informal procedures discussed by the Second Circuit in *Petrosino*. This case is different on the facts, as no such promise to promote was made, and no such informal promotion procedures existed, *see infra*.

Plaintiff cannot show that she was unaware of the vacancy. In fact, her email to Deputy Commissioner Batista is concrete evidence of her awareness that there was a vacancy and that she was interested in applying. (Pl.'s Schedule. A. Docs. Ex. 2.) Plaintiff must, therefore, show that her email to the Deputy Commissioner constitutes an informal way of applying for jobs that was endorsed by her employer or that she was discriminatorily excluded from whatever informal hiring procedures existed.

The only evidence in the record regarding HPD's official hiring policies comes from Schwarz. He has described two different procedures, one for " vacancies," which occur when an incumbent separates from service and his or her position needs to be filled or when a newly created position needs to be filled, and another for " reorganizations," which occur when HPD reorganizes and current employees are simply assigned different responsibilities. (Schwarz Decl. ¶¶ 4-9.) Although the line between the two is somewhat fuzzy at best, there is no dispute that the Associate Commissioner position, created by the departure of an incumbent, Associate Commissioner Gonzalez, was a vacancy. When a vacancy is created and an agency receives approval to hire a replacement, PSB 200-9 requires that the agency post the position and invite qualified employees to apply. (*Id.* ¶ 4.) All postings contain a

Slip Copy                                                                                                     Page 13
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

contact person to whom resumes and cover letters are to be directed. (*Id.* ¶ 6.) There is no allowance for an informal email to a supervisor, like Plaintiff's.

Plaintiff alleges in her Rule 56.1 Statement that an informal promotion system existed, and she points to a deposition of Deputy Commissioner Schwarz to support this claim. (Pl.'s 56.1 ¶ 42.) [FN21] In the deposition, Schwarz discussed his own promotion and stated that he does not recall whether the position was posted or whether he was required to submit a resume and cover letter. (Pl.'s Schedule A Docs. Ex. 28 at 47.) He simply stated that he engaged in discussions with the then-Commissioner, and that, during a reorganization, he was moved to become Deputy Commissioner. At best, this evidence shows that reorganization promotions occur differently than vacancy promotions, a fact conceded by Defendant and not applicable to Plaintiff's claim here, which concerns a vacancy. Also, there is no evidence that this was a general practice at HPD, or that such practice was endorsed by HPD in the summer of 1998, when the conduct that forms the basis for this claim of discrimination occurred.

> FN21. This deposition was taken on February 15, 1996, more than two years prior to the filing of this action. The questions asked concern HPD's practices in the late 1980s and early 1990s, which were the subject of a previous discrimination claim against HPD filed by Plaintiff in 1991.

*13 Plaintiff also states in her Rule 56.1 Statement that not all positions required the submission of resumes. She bases this statement on another portion of Schwarz's deposition, which discussed internal hiring practices in 1990. (*Id.*) This testimony concerned the hiring practices of HPD at least seven years prior to the passage of Personnel Services Bulletin 200-9, which went into effect on June 30, 1998. (Def.'s Mot. Ex. A.) That Bulletin, which establishes the procedures described by Schwarz as the then-current practices of HPD, requires a posting of vacancies. (*Id.*) The posting form attached to that Bulletin includes a form box which states, "TO APPLY, PLEASE SUBMIT RESUME TO:" and then a blank space where a contact person's information may be entered. In addition, all the posting forms included in the record require applicants to " indicate their transmittal number on [the applicant's] resume or cover letter when responding." (Def.'s Mot. Exs. C, D.)

The record does not suggest a dispute over a material fact. Both Plaintiff's and Defendant's evidence comes from the same source, Schwarz. Defendant's evidence, however, concerns HPD's practices at the time of the alleged discrimination, while Plaintiff's evidence covers practices in place at least seven years prior. Even if the process involved in Deputy Commissioner Schwarz's hiring, which also occurred more than seven years before the events at issue here, was probative evidence, it is insufficient to create a question of material fact on whether there was an endorsed informal application procedure at HPD. In *Petrosino*, the Second Circuit held that informal procedures must be " endorsed" by the employer in question. 385 F.3d at 227. Here, there is no evidence that the process that resulted in Deputy Commissioner Schwarz's hiring was " endorsed" by HPD or the City of New York. Indeed, Personnel Services Bulletin 200-9 explicitly states otherwise, as it delineates the formal requirements for job posting and filling vacancies in city employment. In those cases where courts have found that an informal hiring practice was endorsed, it has been part of an ongoing policy or practice-not in direct contravention of posted regulations, as Plaintiff alleges occurred here. *See, e.g., EEOC v. Metal Serv. Co.,* 892 F.2d 341, 349 (3d Cir.1990) (finding that company in question had specific procedures that potential applicants were required to go through, including the use of a specific job service, and the plaintiff had met the requirements). Here, the specific procedures require an application and there is no proof Plaintiff submitted one. Therefore, Plaintiff has failed to raise a question of material fact regarding the existence of an informal hiring procedure that would excuse her failure to apply for the position. Thus, summary judgment in favor of Defendant on Plaintiff's state law claims for a failure to promote her to the Associate Commissioner position is granted.

### d. Director of Legacy Systems Vacancy

*14 Plaintiff next alleges that she was not considered for the newly-created position of Director of Legacy Systems in November 1998. Plaintiff claims that she was never considered for the position, and that this lack of consideration was discriminatory. (Second Am. Compl. Ex. B.) However, there is no evidence in the record that she applied for the position.

As Plaintiff's own evidence shows, this position was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 259937 (S.D.N.Y.)

(Cite as: Slip Copy)

posted. (Pl.'s Bate [sic] Stamped Docs. at 1604.) Plaintiff alleges that the posting was "not serious" because she received a "draft copy" of an organizational chart which listed Michael Hirst as Director of Legacy Systems on December 15, 1998. The record does not contain this "draft copy." It does contain a copy of the HPD organizational chart dated November 16, 1998, which lists Hirst as Director of the "Wang Legacy Applications" group within HPD. (Def.'s Mot. Ex. L at 01585.) The position was supposed to be posted, and thus applications were to be solicited, from November 23, 1998, to December 15, 1998, which corroborates Plaintiff's account. Plaintiff's argument that this should excuse the application requirement is also supported by dicta in *Brown,* where the Second Circuit implied that a plaintiff who alleged that a posting was in fact illusory because an employer had already hand-picked an employee to promote would not need to meet the specific application requirement. *See Brown,* 163 F.3d at 710. The Second Circuit, however, foreclosed this line of argument in *Petrosino.* Although the Court recognized that the specific application requirement could sometimes be "quixotic," it specifically limited the exception to those instances where there was no posting. *See Petrosino,* 385 F.3d at 227. As this vacancy was posted, Plaintiff cannot establish a prima facie case for a failure to promote claim and therefore summary judgment in favor of Defendant on this claim is granted. *See id.*

*e. Associate Commissioner Vacancy in 1999*

Plaintiff next alleges that she was denied a promotion to Associate Commissioner in 1999, after Bherwani's departure. This vacancy was posted from September 13, 1999 until September 24, 1999 (Def.'s Mot. Ex. C.) Plaintiff admitted in her deposition that she did not remember seeing the posting and that she did not formally apply for this position. (Def.'s Mot. Ex. Q at 133.) Thus, Plaintiff cannot establish a prima facie case for failure to promote her to this position and summary judgment in favor of Defendant on this claim is granted. *See Petrosino,* 385 F.3d at 227.

*f. Director of Mainframe/Planning/QA Support/Technical Procurement Reorganization*

Plaintiff also challenges the appointment of Lynn Lewis in May 2000 as Director of Mainframe/Planning/QA Support Technical Procurement. Lewis's previous title was Director of TSD Planning/Client Support, Y2K Technical Procurement. Lewis is an African-American female, who was 49 years of age at the time she was promoted in May 2000.[FN22] It is undisputed that this position was not posted. Defendant claims that this position was not required to be posted and that Lewis, who was already a director, was not given a promotion, but simply received a title more in line with her responsibilities at the time. (Def.'s Am. 56.1 ¶ 62.)

> FN22. Because the person who filled the position has the same gender and race as the Plaintiff, the only potential inference of discrimination that can be drawn from this incident is of age discrimination.

*15 Plaintiff has not plead sufficient allegations to survive summary judgment on this claim. First, there is no evidence in the record regarding Plaintiff's awareness of the vacancy. Second, there is no evidence that Plaintiff informally applied for the position. Thus, Plaintiff has failed to meet her prima facie burden to establish a failure to promote claim based on this reorganization. *See Petrosino,* 385 F.3d at 227; *Lyerly,* 2006 WL 1997709, at *5.FN23

> FN23. Plaintiff alleged for the first time in her opposition papers to Defendant's motion that she was also discriminated against when she was not considered for a Director of Client Server Applications Development position that was created in 1999. (Pl.'s Opp'n Mem. 7.) Even though the Court has liberally construed Plaintiff's papers, a plaintiff may not raise new issues or arguments when they were not included within the Complaint. *See Kearney v. County of Rockland,* 373 F.Supp.2d 434, 441 (S.D.N.Y.2005) (citing cases). Plaintiff has submitted two amended complaints and has had ample time to assert her claims. A new claim, for which Defendant has had no opportunity to respond, is inappropriate.
> Even if the Court were to consider the claim, however, it would not survive summary judgment. The position was posted (Pl.'s Bate [sic] Stamped Docs. at 01605-06), and Plaintiff's only evidence that she applied for the position is an email to Lynn Lewis, the designated contact person, expressing interest in the position and asking for more information. (Pl.'s Schedule A Docs. Ex.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10.) As previously noted, an expression of general interest does not satisfy the specific application requirement for failure to promote claims. See Petrosino, 385 F.3d at 227.

*D. Retaliation Claims*

Plaintiff alleges that numerous events that occurred during her tenure at HPD, including her demotion, all of the alleged failures to promote discussed above, the failure to receive a discretionary salary increase in September 1999, and the readjustment of her lump sum benefits calculation post-retirement, were in retaliation for discrimination lawsuits she had filed against HPD. To establish a prima facie case of retaliation, Plaintiff must show that: (1) she was engaged in protected activity; (2) Defendant knew of this activity; (3) Defendant took an adverse action against Plaintiff; and (4) there is a causal connection between the adverse actions and the protected activity, i.e., that the Defendant had a retaliatory motive. See Kessler, 461 F.3d at 205-06 (both ADEA and Title VII); Hawana v. City of New York, 230 F.Supp.2d 518, 529 (S.D.N.Y.2002). Proof of causation can be shown either: (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. See Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir.2000); Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990); Gilford v. City of New York, No. 03 Civ. 0091, 2004 WL 1574695, at *7 (S.D.N.Y. July 14, 2004). " Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause, and if the employer was motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the discharge." See Sumner, 899 F.2d at 209 (internal citations omitted). Plaintiff must make these showings by a preponderance of the evidence. See Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1038 (2d Cir.1993). However, even if Plaintiff states a prima facie case, retaliation claims are still subject to *McDonnell Douglas* burden shifting. See Sumner, 899 F.2d at 209.

Plaintiff cites two instances of her own protected activity. First, Plaintiff filed a lawsuit alleging discrimination by HPD on August 5, 1991 That litigation was protracted, and it concluded on March 25, 1999, when the Second Circuit upheld summary judgment in favor of HPD. See Butts v. City of New York, Dep't of Housing Pres. & Devel., No. 98-7209, 1999 WL 187912 (2d Cir.1999) (unpublished disposition).[FN24] A discrimination lawsuit is protected activity. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Second, Plaintiff brought an action in New York state court under Article 78 of the Civil Practice Law and Rules of the State of New York. In that proceeding, Plaintiff apparently challenged her demotion.[FN25] The Parties have produced little evidence regarding that proceeding, however. The only evidence in the record about when the proceeding commenced came from Plaintiff's deposition testimony, where she stated that her claim was filed soon before this case, in approximately September 1999. (Def.'s Mot. Ex. Y at 39-40.) The Article 78 proceeding concluded on April 11, 2001. (First Am. Compl. 1, Def.'s Mot. Ex. X.) Defendant does not challenge that filing an anti-discrimination lawsuit constitutes protected activity. Thus, for the purposes of this Motion only, the Court will assume that Plaintiff's Article 78 suit constitutes protected activity.[FN26]

> FN24. Judge Stein granted summary judgment in favor of HPD on January 15, 1998. See Butts, 1998 WL 13851, at *7.
>
> FN25. It is unclear from the record what the basis of Plaintiff's Article 78 action actually was. The State Justice's opinion, however, ordered that Plaintiff's salary and benefits be restored to their pre-demotion levels. (Def.'s Mot. Ex. X.) According to that court, Plaintiff's salary had been reduced in violation of City Personnel Services Bulletin 230-1R. (*Id.*)
>
> FN26. Article 78 of the New York Civil Practice Law and Rules allows a New York citizen to challenge state and local government decisions that are arbitrary, capricious, or abuses of lawful discretion. N.Y C.P.L.R. § 78. Title VII and the ADEA, on the other hand, only prohibit retaliation for engaging in activity protected by those statutes, namely challenges to unlawful discrimination. Whether Plaintiff's Article 78 proceeding constitutes protected activity, therefore, depends upon the extent

to which she argued that HPD's decision was the product of discrimination. Again, for the purposes of this motion, the Court assumes that Plaintiff's Article 78 action constitutes protected activity.

*16 Regarding the second element, Plaintiff has produced evidence that Defendant knew of her protected activity. General knowledge of Plaintiff's protected activity is sufficient to make out a prima facie case. See Kessler, 461 F.3d at 210 (" 'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.' " (quoting Gordon, 232 F.3d at 116)). In both instances, Plaintiff's suits were against HPD. Thus, Plaintiff has satisfied the second element of her prima facie case.

Next, Plaintiff must show that she suffered an adverse action. To constitute an adverse action for a retaliation claim, the allegedly retaliatory action must be " materially adverse;" in other words, it must be the type of action that would " dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. ----, 126 S.Ct. 2405, 2415 (2006); accord Kessler, 461 F.3d at 207 (quoting White, 126 S.Ct. at 2415). The actions Plaintiff alleges are adverse actions are: (1) her demotion from Director to Deputy Director in November 1998, with concomitant decrease in salary and responsibility in November 1998; (2) the numerous allegations of a discriminatory failure to promote from July 1998 to May 2000 described above; (3) her failure to receive a discretionary salary increase in 1999; (4) HPD's refusal to convert some of the time she charged in 1998 from annual leave to compensatory time in December 2000; and (5) the recalculation of her lump-sum retirement benefits in December 2000. Demotion, failure to promote, and a reduction of benefits are materially adverse actions. See Joseph, 465 F.3d at 90 (" 'Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [or] significantly diminished material responsibilities.' " (quoting Terry, 336 F.3d at 136)). The failure to receive a discretionary salary increase can also constitute an adverse action.

At this stage, all facts must be construed and all inferences drawn in favor of Plaintiff. Plaintiff alleges that persons not of her protected class received the salary increase, but she did not. This type of activity could dissuade a reasonable worker from engaging in protected activity, and thus constitutes an adverse action. See White, 126 S.Ct. at 2420. The refusal to recalculate Plaintiff's charged time, however, does not constitute an adverse action. There is no evidence that any employee was ever allowed to re-allocate charged time prior to retirement, and Schwarz testified that the request was denied because it was untimely. (Schwarz Decl. ¶ 27.) Plaintiff does not suggest that her request was timely. Thus, the denial of an untimely request is not the type of action that would dissuade a reasonable person from engaging in protected activity. See White, 126 S.Ct. at 2420.

*17 The final element of Plaintiff's prima facie case is proof of causation-namely, evidence of a discriminatory animus that links the adverse actions to unlawful discrimination. Plaintiff has tendered two pieces of evidence of retaliatory animus. First, in October 1998, Plaintiff alleges that she was told by Bherwani that he had been informed her previous discrimination complaint had been recently resolved, and that he " questioned why [Plaintiff] would even bring a charge of discrimination." (Second Am. Compl. Ex. C at 1.) She also stated that Bherwani asked why an employee in that situation would not just leave her job. (Id.) Second, Plaintiff alleges that Lewis told her that she " doesn't care about lawsuits." (Pl.'s Am. Schedule A Docs. Ex. 27.) Plaintiff's evidence of this statement is a handwritten note Plaintiff took, allegedly documenting a meeting that occurred on July 27, 2000. Aside from this evidence, the temporal proximity between Plaintiff's protected activity and the allegedly retaliatory acts of Defendant can constitute indirect evidence of discriminatory animus. See Gilford, 2004 WL 1574695, at *7.

Plaintiff's evidence of retaliatory animus is thin, at best. First, Bherwani's alleged statements questioning why Plaintiff would bring a lawsuit, as described by Plaintiff at oral argument, were not the of the kind meant to intimidate or cow an employee engaged in protected activity. Indeed, at that time, Plaintiff's prior lawsuit was more than six years old, and Bherwani was not involved in it in any way. From the way Plaintiff described the conversation to the Court at oral argument, there is little evidence that Bherwani's statements were meant to affect Plaintiff's

behavior at all, nor is there evidence that any of Bherwani's decisions regarding Plaintiff's employment, such as her demotion, were related to the lawsuit. Second, these statements were not linked to the numerous adverse actions Plaintiff alleges were retaliatory. Plaintiff has not alleged that Bherwani was involved in the failure to provide her with a discretionary raise, the refusal to convert her charged leave, or the recalculation of her lump-sum retirement benefits. Only two of the alleged adverse actions occurred during Bherwani's tenure, Plaintiff's failure to be promoted to the Director of Legacy Systems position and her demotion. At this stage, however, the Court must draw all reasonable inferences in favor of Plaintiff. Although drawing an inference that Bherwani's employment decisions were motivated by retaliatory animus for a lawsuit that did not involve him from his statements regarding what he would do if faced with discrimination stretches the boundary of reasonability, Bherwani's statements are sufficient to meet Plaintiff's prima facie burden on her demotion claim and her failure to promote claim related to the Director of Legacy Systems vacancy, if only for their temporal proximity.

Second, Lewis's statement that she " doesn't care about lawsuits" is not evidence of retaliatory animus.[FN27] Plaintiff has never alleged that she was retaliated against by Lewis, nor has she alleged that Lewis played any part in HPD's allegedly retaliatory acts. A single statement by a co-worker, unrelated to any particularly activity or adverse action, does not raise an inference of retaliation. See *Riley v. N.Y. State Office of Alcoholism & Substance Abuse*, No. 1:01-CV-1803, 2006 WL 266537, at *3 (N.D.N.Y. Feb. 1, 2006).

> FN27. Although the note itself is hearsay, and therefore cannot be considered on summary judgment, see *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir.2005), Plaintiff stated at oral argument that Lewis made these statements directly to her. Thus, they could be admitted at trial and may be considered on summary judgment.

*18 Finally, few of the allegedly retaliatory adverse actions were actually proximate to Plaintiff's protected activity. The longer the time between a plaintiff's protected activity and the adverse employment action, the weaker the inference of discriminatory retaliation. In general, a time differential of greater than three months, without additional direct evidence of discrimination, is insufficient to survive summary judgment. See *Gilford*, 2004 WL 1574695, at *7 (citing cases). Here, Plaintiff's protected activity occurred when she filed a discrimination case against HPD in 1991, when summary judgment was granted in March 1999,[FN28] and when Plaintiff filed an Article 78 proceeding against New York City in September 1999.[FN29] As all of the adverse employment actions in this case took place more than six years after her initial suit was filed in 1991, a reasonable inference of retaliation cannot be drawn regarding the *filing* of her 1991 suit. The Article 78 proceeding occurred in the spring and fall of 1999. However, most of the alleged adverse actions occurred in 1998, including (1) her demotion (November 1998), (2) the failure to promote her to the unspecified mainframe applications position filled by Nissim Baruch (July 1998), (3) the failure to promote her to the Associate Commissioner vacancy left by the departure of Bherwani (August 1998), and (4) the failure to promote her to the newly created Director of Legacy Systems position (November 1998). Actions taken prior to Plaintiff's protected activity cannot be retaliatory, as the protected activity had not yet occurred. See *McFadden v. Memorial Sloan-Kettering Cancer Ctr.*, No. 04 Civ. 9629, 2006 WL 2930200, at *6 (S.D.N.Y. Oct. 11, 2006) (" [A]ny hiring decision made *before* McFadden had ever filed her charge with the EEOC cannot sustain a prima facie case of retaliation." ).

> FN28. Retaliation need not be proximate to the filing of a case. Proximity to the conclusion of a case is also actionable. See *Bennett v. Goord*, 343 F.3d 133, 137-38 (2d Cir.2003); *Hill v. Rayboy-Brauestein*, No. 02 Civ. 3770, --- F.Supp. ----, 2006 WL 3298383, at *17 (S.D.N.Y. Nov. 9, 2006).

> FN29. Oral argument on Plaintiff's Article 78 claim occurred in state court in December 1999. (Def.'s Mot. Ex. X.)

Many of the remaining adverse employment actions took place too long after Plaintiff's protected activity to raise an inference of discrimination. Plaintiff was allegedly passed over for the Director position filled by Lewis in May 2000, more than five months after her last protected activity. Plaintiff's lump sum retirement benefit was calculated in December 2000, more than one year after Plaintiff's last protected

activity. These gaps between protected activity and alleged discrimination are too great to raise any inference of discrimination. *See Gilford,* 2004 WL 1574695, at *7 (holding that four month gap too attenuated to raise inference of discrimination); *Hill,* 312 F.Supp.2d at 480-81 (granting summary judgment where only evidence of causation is temporal proximity of two months); *Allen v. St. Cabrini Nursing Home, Inc.,* 198 F.Supp.2d 442, 450 (S.D.N.Y.2002) (noting that three months is considered too attenuated and finding that sixteen month gap did not raise inference of discrimination).

However, Plaintiff has established her prima facie case as to four adverse actions: (1) her November 1998 demotion, based on Bherwani's October 1998 statements; (2) her failure to be promoted to Director of Legacy Systems in November 1998, also based on Bherwani's October 1998 statements; (3) the failure to promote Plaintiff to the Associate Commissioner vacancy filled by Peskin in August 1999, based on its temporal proximity to Plaintiff's protected activity; and (4) her failure to receive a discretionary salary increase in September 1999, also based on temporal proximity. Thus, the burden of production shifts to Defendant to show that these two actions were not based on any retaliatory animus.

*19 Defendant has offered legitimate business reasons for all of these events, which were described in detail *supra*. Plaintiff was not considered for the Director of Legacy Systems position because she did not apply for it. Plaintiff was demoted because her skills were becoming outdated, there was no need for two directors in her division, and her supervisor felt that Plaintiff had not demonstrated leadership qualities. Plaintiff was not considered for the Associate Commissioner vacancy because, as she admitted, she did not apply for it either. (Def.'s Mot. Ex. Q at 133.) Defendant has also provided a legitimate business reason for Plaintiff's failure to receive a discretionary pay increase. Defendant argues that (1) Plaintiff was an " unproductive employee" based on the Batista memo described *supra*, and (2) that Plaintiff's excessive use of vacation at a time of agency need justified the agency decision to give Plaintiff no raise. (Def.'s Mem. 13.) Defendant also argues that the decision to deny Plaintiff a raise was approved by an African-American supervisor.

Thus, the burden shifts back to the Plaintiff to show that these legitimate business reasons were merely pretexts for discrimination. As discussed above, Plaintiff has not produced any evidence that the legitimate business reasons provided by HPD for her demotion were pretexts for discrimination or retaliation. In addition, her failure to be promoted to the Director of Legacy Systems and Associate Commissioner positions were due to her failure to apply, and there is no evidence this failure was the result of any type of retaliation by HPD. As no rational jury could find that these actions were motivated by retaliatory animus for Plaintiff's protected activity, summary judgment on these claims in favor of Defendant is granted. *See Hill,* 312 F.Supp.2d at 482 (granting summary judgment where plaintiff failed to adduce evidence of a connection between adverse employment action and discriminatory animus).

Plaintiff argues that her failure to receive the discretionary raise was retaliatory because a white male manager received a raise (Second Am. Compl. Ex. B at 3) and an article from *New York City Manager* reported that many managers were unhappy with the arbitrary manner in which raises were granted (Pl.'s Am. Schedule A Docs. Ex. 15). This evidence is also insufficient to show that Defendant's legitimate business reason was a pretext for retaliation. Plaintiff's own evidence shows that, whatever the motivation for HPD's refusal to grant Plaintiff the discretionary raise, it was not discrimination. Roughly 85% of the managers in HPD received some type of raise. (*Id.*) Thus, the fact that a single white male received a raise is not an atypical event, nor is it any proof of discrimination on the part of HPD. In addition, twenty managers besides Plaintiff received no raise. There is no evidence that the distribution of raises was based on Plaintiff's protected activity, as the raise was discretionary and numerous other managers were also denied the raise. Although Plaintiff disagrees with her superiors' evaluation of her work, there is simply no evidence that their decision was based on retaliatory animus. Plaintiff's own statements that this refusal must have been the result of discrimination are insufficient. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985) (" To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." ); *Rayboy-Brauestein,* 2006 WL 3298383, at *18 (dismissing claim where plaintiff's allegations of pretext were conclusory and speculative). Thus,

Slip Copy                                                                                                           Page 19
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
(Cite as: Slip Copy)

summary judgment in favor of Defendant on Plaintiff's retaliation claim related to the discretionary raise is also granted.

### E. Constructive Discharge

*20 Plaintiff's final claim is that the conduct of HPD described above, including her demotion and HPD's failure to promote Plaintiff, constituted a constructive discharge that forced her to resign. Not every slight in the workplace, nor even every adverse employment action, can form the basis of a constructive discharge claim under Title VII or the ADEA. " To establish a prima facie case of unlawful termination under the ADEA, like Title VII, plaintiff must show: (1) that she was qualified for the job, (2) that she was within the protected group, (3) that she was either actually or constructively discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination." See Nakis v. Potter, 422 F.Supp.2d 398, 413 (S.D.N.Y.2006).

Here, the first two elements of Plaintiff's prima facie case are not in question. As Plaintiff voluntarily retired, her claim relies on a showing of constructive discharge. " An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." See Terry, 336 F.3d at 151-52. A work atmosphere is intolerable when working conditions, viewed as a whole, are " ' so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " Id. at 152 (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir.1996)). As with a retaliation claim, the fourth element of the prima facie case can be shown directly through evidence of a retaliatory animus, or indirectly through evidence of disparate treatment or temporal proximity to activity protected by Title VII or the ADEA. Id.

Plaintiff alleges that all of the conditions described above were part of a scheme to force her to retire. She also includes a number of minor incidents, including refusal to accept her help on certain projects and the relocation of her office. To prevail, Plaintiff must show (1) that this conduct was intentional, and (2) that it was designed to create a workplace that a reasonable person would find intolerable. She can do neither. In the context of a constructive discharge claim, " intentional" means something beyond negligence or recklessness. See Whidbee v. Garazelli Food Specialities, Inc., 223 F.3d 62, 74 (2d Cir.2000); Wright v. Goldman, Sachs & Co., 387 F.Supp.2d 314, 325 (S.D.N.Y.2005). There is no evidence that any of the actions by HPD were intended to create intolerable working conditions. The demotion and promotion decisions of which Plaintiff complains were made by a number of different supervisors, some of whom were members of the same protected classes as Plaintiff. Plaintiff has provided no evidence that any of these supervisors intended to create a work atmosphere that was intolerable, rather, they merely promoted other employees.

Even if Plaintiff had produced some evidence of a deliberate intent on the part of HPD, she has not shown that her working conditions were such that a reasonable person would find the conditions intolerable. A single reduction in pay, without additional evidence of malicious intent, is insufficient to establish a claim of constructive discharge. See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360 (2d Cir.1993) (holding that plaintiff's allegation that he did not receive sufficient pay increases did not constitute constructive discharge); Muller v. U.S. Steel Corp., 509 F.2d 923, 929 (10th Cir.1975) (holding that discriminatory failure to promote and demotion were insufficient to demonstrate intent to make workplace intolerable); see also Mathurin v. Skrivaneck, No. 00 Civ. 1762, 2003 WL 23744279, at *14 (S.D.N.Y. June 10, 2003) (Report and Recommendation) (holding that intense scrutiny of plaintiff, even if coupled with " economic consequences," was insufficient to show workplace was intolerable); Rodriguez v. Graham-Windham Servs. to Families & Children, No. 99 Civ. 10447, 2001 WL 46985, at *6 (S.D.N.Y. Jan. 18, 2001) (finding no constructive discharge when employer demoted employee instead of terminating her); Phillips v. General Dynamics Corp., 811 F.Supp. 788, 794 (N.D.N.Y.1993) (" Lower pay resulting from gender discrimination is not sufficient." ). Indeed, as the record shows, demotions were relatively commonplace in HPD, where Director positions were limited and there were numerous qualified applicants. (Schwarz Decl. ¶¶ 15-18.) In addition, when a plaintiff remains in a position after conduct which is allegedly designed to force him or her to resign, it undermines any claim of intolerable working conditions. See Petrosino, 385 F.3d at 230; Flaherty v. Metromail Corp., No. 98 Civ. 8611, 2001 WL 868011, at *5 (S.D.N.Y. July 31, 2001). Here,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff continued working at HPD for more than two years after her demotion. Thus, the demotion is insufficient to meet Plaintiff's prima facie burden.

*21 A failure to promote alone also is insufficient to establish a claim of constructive discharge. *See Petrosino*, 385 F.3d at 231 (" Because the law is clear that a constructive discharge claim cannot be proved by demonstrating that an employee is dissatisfied with the work assignments she receives within her job title, or even with the failure to receive an anticipated raise, or a bonus after having received one in previous years, it is doubtful that a constructive discharge claim can be established by an employee dissatisfied with reduced promotion opportunities." (internal citations omitted)); *Loucar v. Boston Market Corp.*, 294 F.Supp.2d 472, 482 (S.D.N.Y.2003) (" A denial of promotion does not constitute an intolerable work atmosphere amounting to a constructive discharge." (internal quotations and citations omitted)). This is especially true in this case, where Plaintiff cannot establish that she applied for the vast majority of positions for which she claims she was overlooked for promotion. Additionally, approximately six months passed between the last alleged failure to promote and Plaintiff's acceptance of HPD's voluntary retirement plan. A six month passage of time is sufficient to undermine a claim that working conditions were intolerable. *See Flaherty*, 2001 WL 868011, at *5.

Even when all of the incidents Plaintiff alleges are combined, they fall short of the mark. Numerous courts in this district have refused to find constructive discharge in situations much more egregious than those alleged here. *See Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1149-52 (2d Cir.1993) (no constructive discharge despite ridicule, threats of termination, constant harassment, and improper discipline); *Nakis*, 422 F.Supp.2d at 415-16 (citing cases); *Katz v. Beth Israel Medical Ctr.*, No. 95 Civ. 7183, 2001 WL 11064 at *12 (S.D.N.Y. Jan. 4, 2001) (finding no constructive discharge where a plaintiff alleged that she was told to retire, unfairly disciplined, and threatened with termination). In addition, much of the behavior Plaintiff complains of occurred long before her retirement (and under different supervisors). Thus, Plaintiff has failed to establish a prima facie case of constructive discharge.

Even if these actions did constitute constructive discharge, Plaintiff cannot show that her discharge occurred under circumstances that give rise to an inference of discrimination. The retirement incentive that Plaintiff accepted was offered to all employees with her title. (Pl.'s Schedule A Docs. Ex. 41.) Plaintiff chose to accept it. There is no evidence that this offer arose under any discriminatory circumstances. Plaintiff alleges she received her notice of the offer later than Mack, whose notice letter was dated more than one month prior to Plaintiff's. At best, however, this evidence raises a non-discriminatory inference, as it implies that HPD did not want Plaintiff to retire. Therefore, there is no evidence, direct or otherwise, that raises an inference of discrimination regarding Plaintiff's retirement from HPD. *See Ferraro v. Kellwood Co.*, No. 03 Civ. 8492, 2004 WL 2646619, at *7-8 (S.D.N.Y. Nov. 18, 2004) (holding that plaintiff failed to raise an inference of discrimination because, though plaintiff had been demoted, other allegedly similarly situated managers not of plaintiff's protected class were fired); *Buchanan v. Conn. Transit, Inc.*, No. 3:98cv1145, 2000 WL 435546, at *6-7 (D.Conn. Mar. 10, 2000) (dismissing constructive discharge claim where plaintiff failed to show that demotion and change in work assignments were intended to force resignation). As Plaintiff has failed to make a prima facie case of constructive discharge, summary judgment in favor of Defendant on Plaintiff's claim of constructive discharge is granted.

### F. Sections 1981, 1983, and 1985 Claims

*22 Plaintiff's First Amended Complaint, based on a standard form, stated that Defendant's actions were in violation of 42 U.S.C. §§ 1981, 1983 and 1985. Neither Plaintiff nor Defendant specifically argued these claims in their papers. However, they are governed by the same standards as those under Title VII and the ADEA. *See Martinez*, 2006 WL 737137, at *4 (" Discrimination claims under [Sections 1981, 1983, and 1985] ... are assessed pursuant to standards similar to those applicable to Title VII claims." ).

#### 1. Sections 1981 and 1983

Section 1981 provides that " [a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ...." 42 U.S.C. § 1981(a). Section 1981 thus protects a plaintiff's right to enjoy " all of the benefits, privileges, terms and conditions" of his or her employment contracts. 42 U.S.C. § 1981(b). Section 1983 provides a federal remedy for the " deprivation of any rights, privileges, or immunities

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  Page 21
Slip Copy, 2007 WL 259937 (S.D.N.Y.)
**(Cite as: Slip Copy)**

secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983.

To establish liability against a municipal agency for a violation of section 1981 or section 1983, a plaintiff must show " that the challenged acts were performed pursuant to a municipal policy or custom." See Patterson, 375 F.3d at 226; Hayes v. Kerik, 414 F.Supp.2d 193, 209 (E.D.N.Y.2006). A plaintiff need not show the existence of an expressly discriminatory rule or regulation, but can make a claim by demonstrating that a discriminatory practice of municipal officials was so " persistent or widespread as to constitute a custom or usage with the force of law." Patterson, 375 F.3d at 226 (internal quotation marks omitted). Here, Plaintiff has not alleged that any policy or practice was discriminatory, or that any of the discriminatory actions taken against her, e.g., the demotion, the failure to promote, or any of the retaliatory acts, was done pursuant to any policy or practice of the City of New York or HPW.[FN30] Therefore, summary judgment in favor of Defendant on any claim arising under section 1981 or section 1983 is granted. See Hayes, 414 F.Supp.2d at 209 (dismissing section 1981 claim for failure to allege that discriminatory actions were performed pursuant to a municipal policy or custom).

> FN30. At argument, Plaintiff suggested that there was a policy of eliminating African-American managers at HPD dating back to 1987. However, this conclusory allegation, made for the first time at oral argument, is insufficient to resuscitate this cause of action.

### 2. Section 1985

Section 1985 prohibits conspiracies to deprive individuals of the equal protection of the laws. See 42 U.S.C. § 1985(3). " In order to maintain an action under Section 1985, a plaintiff ' must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.' " Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir.2003) (quoting Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)). Conclusory allegations of conspiracies cannot withstand a motion to dismiss, let alone a motion for summary judgment. See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999) (per curiam). Here, Plaintiff has made no allegations of a conspiracy at all, nor has she adduced any evidence that there was any agreement between any of the defendants to violate her rights. Thus, summary judgment in favor of Defendant on any claim arising under section 1985 is granted. See Sylla v. City of New York, No. 04 Civ. 5692, 2005 WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005) (granting summary judgment in favor of defendants when plaintiff failed to make any allegations regarding an agreement).

### III. Conclusion

*23 In conclusion, Defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is directed to grant judgment in favor of Defendant and to close this case.

SO ORDERED.

S.D.N.Y.,2007.
Butts v. New York City Dept. Of Housing Preservation And Development
Slip Copy, 2007 WL 259937 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.