Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2006 WL 3392693 (S.D.N.Y.)
(Cite as: Slip Copy)

Moss v. Port Authority of New York and New Jersey
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Sheila MOSS, Plaintiff,
v.
The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.
No. 04 Civ. 9631(GEL).

Nov. 20, 2006.

Sheila Moss, pro se, for Plaintiff.
Milton H. Pachter and Kathleen Gill Miller, New York, New York, for Defendant.

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge.

*1 Sheila Moss, an employee of the Port Authority of New York and New Jersey (" PA" ), brings this action against her employer for discrimination and retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L. No. 102-166). Defendant moves for summary judgment, which will be granted.

**BACKGROUND**

The following facts are drawn largely from defendant's statement of undisputed facts, which have not been directly challenged by plaintiff, supplemented by undisputed portions of plaintiff's deposition testimony and affidavit.

On September 11, 2001, Moss was employed by the PA as a secretary, working at the World Trade Center. Though she escaped without physical injury, she was understandably deeply upset by the tragic events of that day. The office in which she worked was relocated to New Jersey, and for a time Moss went to work there. Although she was placed on restricted duty due to high blood pressure for most of November and December, she worked in New Jersey until February 22, 2002, when she was diagnosed with Post-Traumatic Stress Disorder (" PTSD" ) and began a long-term paid medical leave.

As required by PA sick-leave policy, Moss regularly reported to the PA's Office of Medical Services (" OMS" ) for evaluation of her fitness to return to work. At OMS, she was seen by Jose Hevia, a clinical social worker who had been hired to assist in evaluating employees experiencing psychological difficulties following the terrorist attacks. On July 25, 2002, Hevia found Moss fit for duty and cleared her to return to work on a part-time basis. Moss, however, failed to report for work, or to keep appointments with OMS, during August 2002. Having been declared fit to work part-time, she was declared absent without leave (" AWOL" ) and not paid for her AWOL days, from August 6 through September 4, 2002. Moss returned to OMS on September 5, 2002, was found unfit to work, and again received sick-leave pay, from September 6 through December 20, 2002.

While not claiming she had followed official PA sick-leave procedure, Moss contested the PA's decision to treat her as AWOL during August 2002, asserting that she had made adequate efforts to make known the medical reason for her absence. (Miller Reply Aff. Ex. 4.) In an October 30, 2002, letter, her employer informed Moss that she could receive back pay for the period of work she had missed by signing a letter that set forth the PA's sick-leave rules and acknowledging that future failure to comply could result in formal disciplinary action. Moss declined to sign, presumably in objection to the letter's referencing of her AWOL status as a matter of fact. Alluding to a " meeting," where she claimed it was " determined that the AWOL status was made in error," she wrote the PA on December 6, 2002, that " I followed the absence control guidelines and understand my responsibilities." (*Id.*)

Moss never returned to work in her secretarial position, which by that time had moved back to Manhattan from New Jersey. Instead, the PA offered her a position as a financial analyst at John F. Kennedy International Airport, near her home in Queens. She accepted the position and returned to work in December 2002. Sometime before January 31, 2003, Moss requested a hearing, although there is no evidence that such a procedure was normally available in such cases, to discuss receiving her August 2002 pay without having to sign an acknowledgment of the PA's absence rules. She was refused, for " lack of authority ... requiring such a hearing." (Miller Reply Aff. Ex. 5.) In an April 29,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2003, letter, Moss again requested a hearing, to protest her past AWOL designation as " without just cause." (Miller Reply Aff. Ex. 6.) Despite not denying that she had received the PA's October 2002 letter setting forth the absence policy, she claimed, " I have not received any documentation stating what [PA] procedure I did not follow in reporting my absence from work." (*Id.*) The second request for a hearing was also denied, because " there is no basis to change your pay status for the period." (Miller Reply Aff. Ex. 7.)

*2 After returning to work, Moss encountered difficulties regarding certain conditional benefits available to PA employees. The PA provides qualifying employees with " TransitCheks," a form of subsidy for employees who use New York public transportation to commute to work. Employees are only eligible for TransitCheks when they incur at least $65 in monthly commuting expenses. Because they are issued quarterly, Moss had received TransitCheks for March and April 2002, although as noted above she did not work, and thus did not commute to work, during those months. As a part-time worker in December 2002, Moss was not eligible for the program, and when she resumed full-time work, in January and February 2003, she was denied TransitCheks for having ineligibly received them in March and April 2002. Subsequently, Moss refused to pick up and sign for TransitCheks, a procedure required by the PA's accounting system, since the subsidies are considered to be the equivalent of cash. In any event, starting in April 2003, Moss drove to work for several months. (P. Dep. Tr. 138-39.)

In May 2003, Moss requested a tuition-assistance advance in connection with certain college courses she wished to take. The PA provides such a benefit, although approval of tuition assistance is in the discretion of the director of the employee's department. Ordinarily, the program apparently reimburses eligible tuition expenses; however, payment may be advanced on a showing of financial need. Moss submitted a request for an advance, which required the signature of her department director, Edward Jackson. Jackson noted that the request inaccurately stated that Moss had been denied salary in July and August 2002 and asked that the statement be deleted. When Moss refused, Jackson declined to sign the request, and tuition accordingly was not advanced.

On November 1, 2003, Moss filed a charge of discrimination with the Equal Employment Opportunity Commission (" EEOC" ). The EEOC charge accused the PA of retaliation and harassment on the basis of mental disability and of failure to make reasonable accommodation of that disability. On April 14, 2004, after receiving a right to sue letter from the EEOC, Moss timely filed a complaint in this Court. The complaint charged discrimination on the basis of disability by failure to accommodate, retaliation, and " intimidation, harassment and intentional infliction of emotional and financial distress" during the period August 2002 through June 2003. (Compl.¶¶ 4, 5, 7.) [FN1] The complaint attached and incorporated the statement of facts provided in connection with the EEOC charge, which noted that plaintiff had been placed on AWOL status in August 2002 and been denied retroactive reinstatement when she refused to sign the letter acknowledging the PA's medical-leave rules. She also asserted that she had suffered additional discrimination upon returning to work, by being denied TransitCheks and tuition assistance and being subjected to " insulting [and] sarcastic remarks." (*Id.* at 3.)

> FN1. The Complaint expressly asserts that the discrimination was no longer occurring at the time plaintiff filed the complaint. (Compl.¶ 6.)

**DISCUSSION**

I. *Legal Standards*

*3 Summary judgment shall be granted " if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A " genuine issue of material fact" exists if the evidence is such that a reasonable jury could find in favor of the non-moving party. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 69 (2d Cir.2001). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In deciding a summary judgment motion, the court must " resolve all ambiguities and draw all reasonable references in the light most favorable to the party opposing the motion." *Cifarelli v. Vill. Of Babylon,* 93 F.3d 47, 51 (2d Cir.1996). Moreover, the court is not to make any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

credibility assessments or weigh the evidence at this stage. *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir.1996). Further, the supporting papers of a *pro se* litigant should be liberally interpreted " to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

The nonmoving party, however, may not rely on " conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). The nonmoving party " must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and rather indicate " significant, probative evidence" on which a reasonable factfinder could decide in its favor. *Anderson,* 477 U.S. at 247-48.

The substantive law applied to the case determines which facts are material for purposes of deciding a summary judgment motion. *Anderson,* 477 U.S. at 248. Here, plaintiff invokes federal law protecting those with covered disabilities from employment discrimination, including refusal of reasonable accommodation, harassment, and retaliation for engaging in a protected activity.

To state a claim of disability discrimination sufficient to survive summary judgment, a plaintiff must show evidence that: " (1) [her] employer is subject to the ADA; (2)[she] was disabled within the meaning of the ADA; (3)[she] was otherwise qualified to perform the essential functions of [her] job, with our without reasonable accommodation; and (4)[she] suffered an adverse employment action *because of [her] disability.*" [FN2] *Cameron v. Community Aid for Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir.2003) (emphasis added). An adverse employment action is an action that causes a " material adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640. Such actions may include " a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.* (citations omitted).

> FN2. In this case, there is no dispute as to the first or third elements. The second element-whether Moss was disabled within the meaning of the ADA-on the other hand,

is contested. Defendant vigorously argues that plaintiff's PTSD does not constitute a disability under the ADA. (D.Mem.3-4.) Moreover, the EEOC terminated its investigation on the ground that Moss's " allegations [do] not involve a disability as defined by the [ADA]." (Miller Aff. Ex. 8.) Nevertheless, the Court assumes, without deciding, that plaintiff has shown an ADA-covered disability, as its reasoning does not require resolving that issue.

*4 Once a plaintiff establishes a minimally sufficient case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *See Heyman v. Queens Village Comm. for Mental Health,* 198 F.3d 68, 72 (2d Cir.1999) (explaining burden-shifting for ADA claims and noting it is the same as that for Title VII claims); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The determination whether or not the defendant has met this burden " can involve no credibility assessment." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509 (1993).

If the defendant does provide a legitimate reason, the plaintiff must then show evidence that the proffered reason is a pretext-that " the employer's proffered explanation is unworthy of credence." *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 169, 173 (2d Cir.2006) (internal quotation marks and citations omitted); *see also Huels v. Exxon Coal USA, Inc.* 121 F.3d 1047, 1050 (7th Cir.1997) (explaining that " pretext means a lie, specifically a phony reason for some action" ) (internal quotation marks and citation omitted). At the summary judgment stage, this step requires the plaintiff to cite " admissible evidence [showing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003) (citation and internal quotation marks omitted).

Claims asserting the failure-to-accommodate theory of discrimination must satisfy a variation of the basic prima facie standard. While the ADA prohibits discrimination in the discharge and treatment of employees, it also defines " discriminate" to include " not making reasonable accommodations." 42 U.S.C. § 12112(a) & (b)(5)(A). To sustain such a claim, a plaintiff must point to evidence that: " (1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Group of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir.2004).

The minimal case for retaliation differs slightly from the claims previously discussed, both in elements and perspective. To survive summary judgment, a plaintiff must at least show evidence that " (1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002); *see, e.g., Weixel v. Bd. of Educ.,* 287 F.3d 138, 149 (2d Cir.2002) (good-faith request for accommodation is a protected activity, even if accommodation is not ultimately justified); *see, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir .2001) (filing of a complaint with the EEOC is an activity protected by the ADA).

*5 The Second Circuit recently invoked the Supreme Court's decision in *Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405 (2006), to explain that the standard for determining an " adverse" action on a retaliation claim differs from that on a non-retaliation discrimination claim, because the prohibition against retaliation is intended generally to prevent employers' interference with enforcement of the law. *Kessler v. Westchester County Dept. of Social Services,* 461 F.3d 199, 208 (2d Cir.2006). Thus, what is " adverse" on this claim " is not limited to discriminatory actions that affect the [individual's] terms and conditions of employment," but also includes any action that " well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 207 (internal quotation marks and citations omitted).

Finally, the survival of plaintiff's harassment, or hostile work environment, claims, requires that she indicate evidence sufficient to prove that " the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir.2006), quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotation marks omitted); *see Fairbrother v. Morrison,* 412 F.3d 39, 48, 50 (2d Cir.2005). Factors to consider when determining whether an environment is " hostile" are " the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Terry,* 336 F.3d at 148, quoting *Harris,* 510 U.S. at 23 (internal quotation marks omitted). Isolated incidents typically will not suffice to demonstrate a hostile work environment unless they are sufficiently severe as to " alter the terms and conditions of employment." *Demoret,* 451 F.3d at 149 (internal quotation marks and citation omitted). Generally, " incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks and citation omitted). But the environment need not be " unendurable" or " intolerable," nor the case " the most egregious," to sustain a claim. *Terry,* 336 F.3d at 148 (internal quotation marks and citations omitted).

Because an employer's intent is ordinarily an issue in discrimination actions, the Second Circuit has instructed district courts in such cases to be " especially chary in handing out summary judgment." *Chertkova v. Conn. Gen. Life Ins.,* 92 F.3d 81, 87 (2d Cir.1996); *see also Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 135 (2d Cir.2000). However, plaintiffs may not avoid summary judgment " by simply declaring that state of mind is at issue." *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61-62 (2d Cir.1998). In other words, a discrimination plaintiff may not save her case merely by insistence, where there is no " concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Id.* at 62 (citation and internal quotation marks omitted).

*6 Moss's complaint charges four acts of discrimination: denial of salary for August 2002 due to her being designated AWOL, denial of TransitCheks in early 2003, denial of tuition assistance benefits, and harassment in the form of insulting and sarcastic remarks.

II. *Moss's AWOL Status in August 2002*

Moss's complaint about being designated AWOL and thus denied salary in August 2002 is time-barred. The ADA incorporates the administrative exhaustion

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requirements of Title VII, the federal statute prohibiting employment discrimination on the basis of race and other factors. 42 U.S.C. § 12117(a). Thus, an employee seeking to file a federal lawsuit under the ADA must first file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory practice. (*Id.*) Because New York's anti-discrimination law does not apply to the PA, an interstate agency, the extended 300-day period in situations where a state agency may address the charge does not apply. *Dezaio v. Port Authority of New York and New Jersey,* 205 F.3d 62, 65 (2d Cir.2000). Accordingly, since Moss filed her charge with the EEOC on November 1, 2003, her complaint is time-barred with respect to any alleged discriminatory action that occurred before approximately May 1, 2003.

Moss's salary claim concerns her designation as AWOL in August 2002. This action was taken when Moss failed to report for work on July 29, 2002, as directed by the PA's OMS. She thus complains of an action taken more than a year before she filed her charge. The claim is accordingly time-barred.

Moss argues that her claim is not time-barred, " because the discriminatory actions were continuous up to and including the filing date of the EEOC complaint in November 2003." (Moss Aff. ¶ 3.) [FN3] But " the courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Falinski v. Kuntz,* 38 F.Supp.2d 250, 257 (S.D.N.Y.1999) (internal quotation marks omitted). Completed acts such as " a termination through discharge or resignation, a job transfer or discontinuance of a particular job assignment are not acts of a continuing nature." *Malarkey v. Texaco, Inc.,* 559 F.Supp. 117, 121 (S.D.N.Y.1982) (internal quotation marks and citation omitted), *aff'd,* 704 F.2d 674 (2d Cir.1983). This is so even where the employee continues to feel the effects of the time-barred discriminatory act in her on-going employment. *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999).

> FN3. This argument, it should be noted, is inconsistent with the Complaint in this action, which asserts that the discrimination stopped in June 2003, several months before the EEOC charge was filed. (Compl.¶ 5.)

Thus, where an employee is transferred or denied a promotion, such an act is a discrete adverse employment action, even though the employee continues to experience the same status caused by the adverse action. Here, the case for a continuing violation is even weaker. Moss was denied pay in August 2002. She then was restored to leave with pay status, and eventually to active duty, and received her pay regularly. Thus, the denial of pay for August 2002 was a discrete adverse action that occurred in August 2002 and that was effective only during that specific period.

*7 Moss's apparent claim that the denial effectively continued beyond August 2002, because she was thwarted in pursuing various remedies within the PA in an attempt to reverse it, is unavailing. There is no argument or evidence whatsoever that plaintiff raised any issue relating to discrimination in her requests for a PA hearing, or that by denying her these hearings the employer was somehow ignoring or perpetuating discrimination problems. If Moss believed that she was discriminated against by the AWOL designation and denial of pay, she was required to complain to the EEOC within 180 days of that denial. She did not, and her claim is therefore time-barred.

Even if the matter were not barred by the statute of limitations, moreover, summary judgment for the PA would be justified. Moss offers absolutely no evidence that the AWOL designation or the denial of pay was discriminatory. Further, passing all the other issues raised by the PA, and assuming without deciding that Moss could establish a prima facie case of discrimination, the PA has demonstrated a legitimate, nondiscriminatory reason for the denial, and Moss has presented no evidence whatsoever of pretext. It is undisputed that Moss did not report for work when found fit by the OMS. (P. Dep. Tr. 83.) Although she contends that she was unable to work, and notified OMS of that fact (*id.* 84-85), she did not comply with the explicit requirements of the PA's sick leave policy. She did not advise OMS that she was supposed to report for work that day (*id.* 85); she did not seek to schedule an appointment with the social worker who was evaluating her (*id.* 86); she did not keep her next appointment with OMS (*id.* 90-92). She did not report either to work or to OMS at any time during August 2002. (*Id.* 91-92.)

Notwithstanding this breach, the PA offered to restore Moss's pay, contingent only upon her signing a document setting forth the rules governing her renewed medical leave. (Miller Aff. Ex. 1, EEOC

Charge, 2; Miller Reply Aff. Ex. 3.) This was an entirely reasonable request. Moss had failed to comply with the plain requirements of the PA's leave policy, and the PA was entitled to make sure that Moss understood and acknowledged those rules going forward. Moss declined to sign the letter. (P. Dep. Tr. 99-101.) Although Moss testified that she " did not agree with ... everything contained in the letter" (*id.* 101), neither in her responsive letter (Miller Reply Aff. Ex. 4) nor in any testimony presented in connection with the present action does she identify any misstatement of the rules and procedures that she was asked to acknowledge.[FN4]

> FN4. Although Moss's responsive letter quibbled with the tone or implications of the letter, the PA's letter is crystal clear that the PA set only one condition for restoration of Moss's pay: that she " acknowledge in writing that you have read the absence control guidelines set forth above, that you have had the opportunity to make inquiries about your responsibilities, that you understand your responsibilities, and you acknowledge that your failure to abide by these absence control guidelines may affect your ability to receive pay and result in formal disciplinary action seeking a penalty up to and including termination." (Miller Reply Aff. Ex. 3 at 3-4.) The italicized block that Moss was asked to sign repeats this formulation virtually verbatim. (*Id.* at 4.) Moss essentially was asked only to acknowledge that she understood the rules and that future violations could have consequences, not to admit any particular account of her August absence. Even if the letter were construed as compelling Moss to admit her AWOL status as a condition of receiving back pay, and even if that status was substantively inaccurate, such facts would still not sustain a claim of discrimination, given the utter absence of discrimination-related evidence.

No reasonable factfinder could conclude that the refusal to restore Moss's pay unless she acknowledged the rules was a pretext for discrimination. Assuming without deciding that Moss's PTSD constituted a disability, the PA fully accommodated that disability, providing Moss with a reduced work schedule even before her diagnosis; providing a medical leave with full pay for five months from February 22 through July 29, 2002; returning her to medical leave status for another three months from September 5 through December 20, 2002; providing her with psychological counseling at no cost throughout these periods; offering her a job nearer her home that did not require her to return to Manhattan; and even offering to restore her missed pay in return for a simple acknowledgment that she would have to follow the same rules as any other employee on sick leave. Moss offers no evidence whatsoever that the PA was motivated by discriminatory animus, or that its actions were unreasonable in any way whatsoever. In this context, the notion that the PA's asserted reasons for designating plaintiff AWOL and denying her pay in August 2002 were a pretext for a discriminatory purpose is entirely without support.

### III. *TransitCheks*

*8 Moss's claims regarding the TransitCheks are no more persuasive. Moss acknowledges that she received TransitCheks for the months of February, March, and April 2002, as she must in light of documents showing that she signed for them, even though she did not work in March or April. (P. Dep. Tr. 131.) In light of her receipt of those unjustified subsidies, she was not provided with TransitCheks in January and February 2003, her first eligible months after returning to work. (*Id.* 132.) Plaintiff identifies no rule or practice that would have entitled her to the withheld TransitCheks despite her acknowledged receipt of unjustified TransitCheks in the past.

TransitCheks were made available to her in April 2003, the only month during the period covered by the Complaint in which she was eligible to receive them; however, she failed to pick them up when provided. (P. Dep. Tr. 133-35.) Moss testified that she failed to pick them up because she " was not traveling into Manhattan." (*Id.* 134.) Reading the evidence with every inference drawn in favor of plaintiff, it can be inferred that Moss maintains that her PTSD disabled her from traveling to Manhattan; she complains that the PA " refused to make and/or adhere to alternate arrangements" for her to receive TransitCheks. (Moss Aff. ¶ 3(c).) Such allegations, however, do not create an issue of discrimination.

First, April 2003 is outside the limitations period for her EEOC charge, which extends for 180 days prior to November 1, 2003, and any claim regarding the failure to provide TransitCheks in that month is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

therefore time-barred.

Second, plaintiff's deposition testimony does not support her claim. Because TransitCheks function essentially as cash, per PA policy they cannot be mailed but must be picked up and signed for. Moss was clearly advised of this requirement. However (whether as a matter of general policy or as a special accommodation to Moss is unclear from the record), Moss was told that it was not required that she personally travel to Manhattan to pick up the TransitCheks. Rather, she was advised by email that " you *or someone from your group* will have to come in to sign for your [TransitCheks]." (Davidson Aff. Ex. L, emphasis added.) Moss acknowledged receiving that communication. (P. Dep. Tr. 129.) Her testimony discloses various failed efforts to get a colleague to pick up the TransitCheks (*id.* 133-36), and it indicates no formal request for any additional accommodation. Nor, for that matter, does plaintiff offer any evidence that the generally offered, conditional commuting subsidy was a " reasonable accommodation" necessary to her ability to " perform the essential functions of the job at issue," *Rodal,* 369 F.3d at 118, or that the offer to allow another employee to pick up the TransitCheks for Moss was not an adequate accommodation of her inability to travel to Manhattan.

Finally, Moss has acknowledged that she commuted by car for " two or three months" beginning in April 2003. (*Id.* 138.) She was thus not eligible to receive TransitCheks at any time covered by the Complaint and within the limitations period. The undisputed fact of plaintiff's substantive ineligibility to receive the subsidies not only negates any case for subjective discrimination, but it also makes it impossible for plaintiff to sustain a claim on the objective adverse-action element of retaliation.[FN5] The threat or fact of denial of travel subsidies for which one is otherwise ineligible is not an action that " well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *Kessler,* 461 F.3d at 207, even assuming there were any evidence hinting at discrimination in the first place.

> FN5. Plaintiff does not explicitly allege retaliation in relation to the denial of Transitcheks, but such a charge could be implied from her papers. She broadly mentions that she complained within the PA that her supervisor, Jackson, was " retaliating against me" (P. Dep .153),

without articulating any details about the purported retaliation.

### IV. *Tuition Assistance*

**\*9** Moss's complaint that she was denied tuition assistance due to discrimination or retaliation also lacks merit. Moss requested an advance on tuition benefits in May 2003. The request for advance payment of tuition benefits required a statement of financial need signed by the employee's supervisor, Edward Jackson. Jackson advised Moss that he would not sign the document drafted by Moss, because it included a statement that she had not been paid in July 2002, which he believed was not accurate; Moss was paid for virtually all of that month, up to July 30, as she acknowledges. (P. Dep. Tr. 169-172.)

Whether Jackson's refusal to sign the letter on this basis was principled or pig-headed, and whether the letter was accurate or incorrect, are not the issues here. An employer's proffered legitimate reason for an adverse employment action need not be deemed correct or prudent or even, at this stage, credible, so long as it is not discriminatory. *See St. Mary's Honor Center,* 509 U.S. at 509. There is no question that Jackson's proffered reason for refusing to sign the letter is a nondiscriminatory reason, and that the refusal by the PA to advance tuition assistance was the inexorable result of that refusal. Once again, Moss offers no reason whatsoever to believe that the refusal was the result of bias against her on account of disability. By the time this incident occurred, Moss had been back at work for months, and she cites no statements or actions by Jackson or anyone else, apart from the already addressed dispute over her August 2002 pay status, that actually relate to her disability.

Nor is there any basis for a claim of retaliation. A retaliation claim under the ADA must be causally linked to some protected activity, meaning some complaint about discriminatory treatment. Although Moss vigorously protested her designation as AWOL in August 2002 and claims to have complained internally about Jackson, she references no complaint raising the issue of disability discrimination to anyone in the PA or to any governmental agency before her EEOC charge was filed in November 2003, long after the denial of a tuition advance. The record thus discloses no predicate protected activity on which a retaliation claim can be based.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 8
Slip Copy, 2006 WL 3392693 (S.D.N.Y.)
**(Cite as: Slip Copy)**

V. *Hostile Work Environment (Harassment)*

Moss provides no evidence of any acts of the " harassment" or " intimidation" alleged in the Complaint (Compl.¶ 4), or of the " insulting [and] sarcastic remarks" cited in the EEOC charge (EEOC Charge at 3). At her deposition, she expressly denied having any other " claims or complaints" beyond the denial of pay for August 2002, TransitCheks, and tuition assistance. (P. Dep. Tr. 171-72.) Whether or not this constitutes " abandonment" of any hostile work environment claim, as argued by defendant (D.Mem.10), it certainly leaves the Court without any evidence sufficient to raise a genuine issue of material fact regarding this claim. Far from showing conduct that involved " discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe ... to ... create an abusive working environment" and " sufficiently continuous and concerted ... to be deemed pervasive," *Demoret,* 451 F.3d at 149, Moss at most shows three completely discrete arguably adverse employment actions taken at widely separated times. Each on its own merits, as discussed above, cannot provide the basis for a claim of discrimination or retaliation. Together, they no better approach the minimum showing for sustaining a claim of discriminatory harassment.FN6

> FN6. To the extent that plaintiff's complaint of " discriminatory conduct" amounting to " intentional infliction of emotional distress" can be read as asserting a claim under state tort law, the Court declines to exercise supplemental jurisdiction over any such claim, the federal claims having been dismissed on summary judgment. 28 U.S.C. § 1367(c); *see also Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York,* 464 F.3d 255, 262-63 (2d. Cir.2006).

**CONCLUSION**

*10 For the reasons stated above, the defendant's motion for summary judgment is granted, and plaintiff's claims are dismissed.

SO ORDERED.

S.D.N.Y.,2006.
Moss v. Port Authority of New York and New Jersey
Slip Copy, 2006 WL 3392693 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1994 U.S. DIST. LEXIS 131


Analysis
As of: Jul 25, 2007

NATHANIEL PASS, Plaintiff, v. NATIONAL BROADCASTING COMPANY, INC., and GENERAL ELECTRIC CORPORATION, Defendants.

92 Civ. 9266 (RPP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1994 U.S. Dist. LEXIS 131*

**January 8, 1994, Decided
January 10, 1994, Filed**

**COUNSEL:** [*1] Plaintiff Pro Se: Nathaniel Pass, Hackensack, NJ.

For Defendants: National Broadcasting Company, Inc. and General Electric Company, New York, NY, By: Ellen Miller-Wachtel, Esq. Marshall & McEvoy, New York, NY, By: David R. Marshall, Esq.

**JUDGES:** PATTERSON, JR.

**OPINION BY:** ROBERT P. PATTERSON, JR.

**OPINION**

**OPINION AND ORDER**

**ROBERT P. PATTERSON, JR., U.S.D.J.**

Plaintiff Nathaniel Pass moves for leave to file a second amended complaint pursuant to *Rule 15 of the Federal Rules of Civil Procedure*. Pass, a pro se litigant, commenced this action under Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e, et seq.*, as a result of his having filed a charge with the Equal Employment Opportunity Commission ("EEOC") in May 1991 and the EEOC's issuance of a Notice of Right to Sue on September 29, 1992. Plaintiff's EEOC charge was that he was terminated by defendant National Broadcasting Company, Inc. ("NBC) on March 1, 1991, because of his race.

Plaintiff filed his original complaint in this Court on December 23, 1992, and an amended complaint on December 28, 1992. Both the original and amended complaint assert claims under Title VII charging that defendants NBC and [*2] General Electric Corporation ("GE") discriminated against him (i) in the terms and conditions of his employment; (ii) in discharging him; (iii) in retaliating against him for statements made against other employees; and (iv) in failing to take correction action with respect to the aforesaid acts.

On May 18, 1993, plaintiff moved for leave to file a 65-page second amended complaint in which he seeks (1) to add nine individual defendants; (2) to assert new claims under various state and federal statutes, common law and constitutional provisions; (3) to recover compensatory and punitive damages and obtain a jury trial, and (4) to bring such claims as a class action on behalf of "all others similarly situated."

Pursuant to *Rule 15(a) of the Federal Rules of Civil Procedure*, pleadings may be amended by leave of the court and "leave shall be freely given when justice so requires." Leave may be denied, however, for reasons

> such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment.

Case 1:07-cv-05471-BSJ-KNF     Document 12-8     Filed 07/25/2007     Page 10 of 11

Page 2
1994 U.S. Dist. LEXIS 131, *

*Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).* [*3]

Plaintiff's motion for leave to file a second amended complaint to add as defendants nine individuals must be denied as futile. The second amended complaint demonstrates he had knowledge of these individuals' role in his discharge. Plaintiff did not name these individuals in his EEOC charges. Accordingly, a Title VII suit cannot be brought against them. *Johnson v. Palma, 931 F.2d 203, 209-10 (2d Cir. 1991)*. Also, plaintiff did not commence his action against the nine individuals within 90 days after he received his Notice of Right to Sue from the EEOC. *See 42 U.S.C. § 2000e-5(f)(1)*.

Plaintiff also seeks to add new Title VII claims of discrimination in promotion, training and compensation on the basis of gender (female) and national origin (Hispanic), as well as race. Claims of sex and national origin discrimination were not included in plaintiff's charges before the EEOC and, thus, cannot be made a part of this action. *Torriero v. Olin Corp., 684 F. Supp. 1165, 1170 (S.D.N.Y. 1989)* ("civil complaint may not include new and unrelated types of discrimination" which are not "similar [*4] to or reasonably related to the charges filed with the EEOC"); *cf. Miller v. International Telephone and Telegraph Corp., 755 F.2d 20, 23-24 (2d Cir.), cert. denied, 474 U.S. 851 (1985)* (Age Discrimination in Employment Act case).

Similarly, because plaintiff's claims of discrimination in various "past practices and procedures" challenge activities by NBC during a period earlier than the period encompassed by his EEOC claim, namely from January 1, 1987 to January 1, 1989, the Court lacks subject matter jurisdiction. *See Torriero, 684 F. Supp. at 1170; Ritzie v. City University, 703 F. Supp. 271, 727 (S.D.N.Y. 1988)*. The applicable statute of limitations, *42 U.S.C. § 2000e-5(e)*, also bars such charges since the alleged acts of discrimination occurred more than 300 days before the filing of plaintiff's EEOC charge on May 15, 1991. *Drummer v. DCI Contracting Corp., 772 F. Supp. 821, 825 (S.D.N.Y. 1991)* ("relation back is not appropriate where the facts alleged in the timely EEOC charge refer [*5] exclusively to one type of discrimination wholly distinct from that alleged in the untimely amendment" (citation omitted)); *Byrd v. Long Island Lighting Co., 565 F. Supp. 1455, 1465 (E.D.N.Y. 1983)*.

Plaintiff's effort to allege a class action fails. The plaintiff made no such claims before the EEOC. But, more importantly, plaintiff has not met and cannot meet the commonality, typicality and adequacy of representation requirements of *Rule 23 of the Federal Rules of Civil Procedure*. He does not claim that he was adversely affected by the various practices and procedures of defendants for which he seeks class action status in the proposed second amended complaint. Accordingly, his interests are not typical of those of the putative class. *See General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982)* (noting that the commonality and typicality requirements are "guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence"); *East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403-04, 52 L. Ed. 2d 453, 97 S. Ct. 1891 (1977)* [*6] (holding that named plaintiffs who did not suffer injury as a result of the alleged discriminatory practices were "simply ineligible to represent a class of persons who did allegedly suffer injury").

Nor has Plaintiff shown that he is "qualified, experienced and able to conduct the proposed litigation" such that he, appearing pro se, is capable of adequately representing the class. *Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)*. To the contrary, his moving papers reflect that he does not possess the required qualifications to represent the class.

Plaintiff also seeks to allege claims under *42 U.S.C. §§ 1981, 1983, 1985 (2) and (3)* and the *Fifth* and *Fourteenth Amendments to the United States Constitution*. His *Section 1981* claim concerning the terms and conditions of his employment is invalid. *Patterson v. McLean Credit Union, 491 U.S. 164, 175, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989)* (discrimination in the terms and conditions of employment after formation of contract not actionable under *Section 1981*); *see also Patterson v. Intercoast Management of Hartford, Inc., 918 F.2d 12, 13-14 (2d Cir. 1990)* [*7] (discriminatory termination of employment not actionable under *Section 1981*), *cert. denied, 114 L. Ed. 2d 81, 111 S. Ct. 1686 (1991)*. Furthermore, the terms and conditions of employment claims based on conduct that occurred from January 1, 1987 to January 1, 1989 are barred by the three-year state of limitations. *See Butts v. City of New York Dep't of Housing Pres. and Dev., 990 F.2d 1397, 1412 (2d Cir. 1993)*.

Plaintiff's *Section 1983* claim is barred since plaintiff has not alleged that defendants acted under color of state law. *42 U.S.C. § 1983; Dean Tarry Corp. v. Friedlander, 650 F. Supp. 1544 (S.D.N.Y.), aff'd, 826 F.2d 210 (2d Cir. 1987)*.

Plaintiff's constitutional claims under the *Fifth* and *Fourteenth Amendments* are invalid also because no state action is alleged. *McPartland v. American Broadcasting Co., Inc., 623 F. Supp. 1334, 1341 (S.D.N.Y. 1985)* ("Where, as here, the source of the alleged discrimination

1994 U.S. Dist. LEXIS 131, *

is a private organization, the state must be significantly involved with invidious discrimination [*8] in order for the private action to run afoul of constitutional prohibitions.").

Plaintiff's allegations claiming violations of *42 U.S.C. § 1985(2)* and *(3)* are also insufficient. Plaintiff has not alleged that any party or witness in any court of the United States has been intimidated or threatened. *42 U.S.C. § 1985(2)*; *cf. McLean v. International Harvester Co., 817 F.2d 1214, 1218 (5th Cir. 1987)*. Plaintiff's claim of conspiracy to violate Title VII also is insufficient to allege a violation of *Section 1985(3)*. *Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 378, 60 L. Ed. 2d 957, 99 S. Ct. 2345 (1979)*.

Plaintiff also seeks to make claims under Section 301 of the Labor Management Relations Act, *29 U.S.C. § 185*. These claims are futile since they were not initiated within six months of his discharge or the arbitration award upholding his discharge on August 20, 1991. *DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 159 n.12, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983)*.

Alleging that NBC made false statements to [*9] the EEOC, plaintiff also seeks to add a claim for defamation based on common law and *18 U.S.C. § 1001*. The common law claim, the latest event of which allegedly took place in June 1991, has not been brought within one year and, thus, is time barred. *See New York C.P.L.R. § 215(3)*. *Section 1001* of Title 18 does not confer a right of action on private parties. *Williams v. McCausland, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992)*.

Plaintiff's claim under New York's Human Right Law is barred because plaintiff filed his claim with the Division of Human Rights but withdrew it. Under these circumstances, the plaintiff is precluded from commencing an action at law based on the same facts. *Emil v. Dewey, 49 N.Y.2d 968, 428 N.Y.S.2d 887, 887, 406 N.E.2d 744 (N.Y. 1980)*.

Lastly, plaintiff is not entitled to a jury trial or compensatory or punitive damages on his Title VII claim. *Butts v. City of New York, 990 F.2d at 1411* (Civil Rights Act of 1991 does not apply retroactively).

Plaintiff's motion for leave to file a second amended complaint is denied. The parties are to complete discovery by May 1, [*10] 1994, file a pretrial order by May 15, 1994, and proceed to trial on May 22, 1994, at 9:30 a.m. in Courtroom 302.

IT IS SO ORDERED.

Dated: New York, New York

January 8, 1994

ROBERT P. PATTERSON, JR.

U.S.D.J.