b.    **December 2002 YTD Franchise Revenues**

115. When the double-counts of December 2002 YTD Franchise Revenues are taken into account by assigning the revenue from each deal to the senior banker involved, as the only neutral means of allocation available within the four corners of defendant's Position Statement to the EEOC, Exhibit C would show the following:

| Banker | 2002 Franchise Revenues in Euros, Shown in Exhibit C | 2002 Franchise Revenues, Corrected to Exclude Multiple Counts of Same Transactions, and Reflecting Plaintiff's Actual Revenues | Rank from Data Shown on Exhibit C | True Rank if Corrections Had Been Made |
|---|---|---|---|---|
| Amling, Jeffrey | 34,582,000 | 34,582,000 | 1 | 1 |
| Carey, Charles | 19,276,000 | 8,761,000 | 2 | 4 |
| Graves, Daniel (age 42) | 13,544,000 | 10,971.000 | 5 | 3 |
| Morris, JL Malcolm | 14,600,000 | 3,160,000 | 4 | 6 |
| Paul, Gregory | 15,117,000 | 15,116,000 | 3 | 2 |
| Silver, Ellen | 3,117,000 | 0 | Last | Last |
| Triffo, Dyan (age 36) | 7,492,000 | 7,493,000 | 7 | 5 |
| Yung, Sun | 11,223,000 | 2,529,000 | 6 | 7 |

116. The net effect of the tricks, devices, and stratagems used by defendant on the December 2002 YTD Franchise Revenues entries in Exhibit C to its Position Statement was to conceal the fact that plaintiff had out-earned every banker except Mr. Amling and Mr. Paul.

- 51 -

117. Defendant could have avoided the double- and triple-counting of December 2002 YTD Franchise Revenues and the 2003 Franchise Pipeline Revenues by allocating such revenues according to any neutral means, including allocations in proportion to work done on the deals. Upon information and belief, any such neutral means would have substantially undercut defendant's argument that plaintiff was the least productive banker in the Media Investment Banking Group.

118. In a statement filed with the EEOC, plaintiff attempted to use a different neutral means of allocating revenues to avoid multiple-counting of the December 2002 YTD Franchise Revenues, by relying on his personal knowledge of responsibilities for some of the transactions. Plaintiff informed the EEOC that the December 2002 YTD Franchise Revenues could be calculated at 8,762,000 Euros for Charles Carey, 3,160,000 Euros for J.L. Malcolm Morris, zero for Ellen Silver, 7,554,000 Euros for Sun Yung, and unchanged for the others. Except for the figure for Ms. Yung, which is a lower reduction than stated above, these are virtually identical to those stated in ¶ 46 above. However, plaintiff does not have the same knowledge for all of the deals in question.

### 6. The Significance of Defendant's Intentional Errors and Omissions

119. Defendant is a global financial institution that well knows how to prepare accurate statements of financial facts.

120. It is not probable that defendant would submit financial information to a Federal investigative agency without care.

121. Defendant did not put any credence in its own inflated evaluations of the other employees in its Media Investment Banking Group, but fired a number of these employees, or took actions leading to their transfer out of the Media Investment Banking Group or separation from employment, some time after it fired plaintiff.

- 52 -

122.    In filing its statement, defendant was under a statutory duty not to knowingly and willfully falsify, conceal, or cover up a material fact by any trick, scheme, or device, and was under a duty not to make a false, fictitious, or fraudulent statement or representation, or to use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry. 18 U.S.C. § 1001.

123.    By making the false statements detailed in ¶¶ 52–65 at pp. 15–22, ¶¶ 95–106 at pp. 30–45, and ¶¶ 108–117 at pp. 45–52 above, defendant knowingly and willfully attempted to falsify, conceal, or cover up material facts by tricks, schemes, or devices, as to plaintiff's discharge, in order to conceal defendant's age discrimination and retaliation. Defendant made false, fictitious, or fraudulent statements or representations, and used false writings and documents, knowing the same to contain false, fictitious, and fraudulent statements and entries, to conceal defendant's age discrimination and retaliation.

124.    Defendant may have succeeded in part of its goal in submitting these false statements, in that the EEOC's investigation was prolonged for more than two years after the submission of the statements, and the EEOC did not bring suit on Mr. Graves' behalf.

I.    **Administrative Exhaustion**

125.    Plaintiff filed a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") on July 22, 2004, alleging that defendant Deutsche Bank Securities, Inc., had engaged in age discrimination and retaliation in violation of the ADEA, the New York State Human Rights Law (hereinafter, "State Human Rights Law"), and the City Human Rights Law. The charge specified that it was to be filed with the New York State Division of Human Rights as well as with the EEOC. The charge was sworn to, and notarized. A copy of the charge is attached hereto as Attachment A.

126. Plaintiff intended that his charge of discrimination be processed by the New York State Division of Human Rights with respect to his rights under the State Human Rights Law, as well as being processed by the EEOC with respect to his rights under the ADEA.

127. On August 6, 2004, the EEOC notified plaintiff that his charge of age discrimination and retaliation was being sent to the New York State Division of Human Rights, and continued in part: "If the charge is processed by that agency, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute." A copy of the letter and its attachment is attached hereto as Attachment B.

128. Plaintiff did not expect the New York State Division of Human Rights to ask to re-execute his charge because it had already been sworn and notarized, and both intended and expected that the New York State Division of Human Rights would investigate and process his charge under the State Human Rights Law.

129. The New York City Commission on Human Rights is barred by the City Human Rights Law, § 8–109(f)(ii) and (iii) of the Administrative Code, from processing any complaint that has been filed with the New York State Division of Human Rights.

130. The New York State Division of Human Rights never communicated with plaintiff, and on May 29, 2007, plaintiff informed the Division that he was planning on filing suit, and requested by facsimile transmission and by mail that the Division dismiss his charge for administrative convenience.

131. Pursuant to the City Human Rights Law, § 8–502(d) of the Administrative Code, plaintiff's time for filing suit under the City Human Rights Law was tolled during the time his complaint was before the New York State Division of Human Rights, i.e., from August 6, 2004,

through plaintiff's May 29, 2007, request for dismissal of that complaint for administrative convenience.

132. On March 9, 2007, the EEOC issued a Notice of Right to Sue to plaintiff, at his request. A copy of the Notice is attached hereto as Attachment C.

133. Plaintiff received the Notice on March 10, 2007, or a subsequent day. This lawsuit was timely filed ninety or fewer days from his receipt of the Notice of Right to Sue.

### J. Plaintiff's First Cause of Action: Discrimination Under the Age Discrimination in Employment Act

134. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 27–94 at pp. 10–30 above, incorporated herein by reference, violated the ADEA by discriminating against plaintiff because of his age.

### K. Plaintiff's Second Cause of Action: Discrimination Under the City Human Rights Law

135. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 27–94 at pp. 10–30 above, incorporated herein by reference, violated the City Human Rights Law by discriminating against plaintiff because of his age.

### L. Plaintiff's Third Cause of Action: Retaliation Under the Age Discrimination in Employment Act

136. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the ADEA by retaliating against plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

### M. Plaintiff's Fourth Cause of Action: Retaliation Under the Fair Labor Standards Act

137. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the FLSA by retaliating against

plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

### N. Plaintiff's Fifth Cause of Action: Retaliation Under the City Human Rights Law

138. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 38–94 at pp. 12–30 above, incorporated herein by reference, violated the City Human Rights Law, § 8–107(7) of the Administrative Code, by retaliating against plaintiff for having opposed age discrimination by complaining internally about age discrimination against him.

### O. Plaintiff's Sixth Cause of Action: Fraudulent Concealment in Denying Plaintiff His Incentive Bonus for 2003

139. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 78–86 at pp. 24–28 above, incorporated herein by reference, constituted the tort of fraudulent concealment of its intent not to pay plaintiff his incentive bonus for 2003, defendant knowingly induced plaintiff to continue working for it in reliance on receiving his 2003 incentive bonus, knew that plaintiff was continuing to work for defendant in reliance on the bonus, knew that plaintiff's expectation of the bonus was reasonable, had decided at some time materially before January 14, 2004, not to pay plaintiff's bonus to him, had a duty based on its special knowledge to communicate that change of position to plaintiff, and instead concealed and did not communicate this change of position to plaintiff before January 14, 2004, so that plaintiff would continue working for it until defendant was ready to fire him, and succeeded in that plaintiff continued working for defendant throughout 2003.

### P. Plaintiff's Seventh Cause of Action: Breach of the Duty of Good Faith and Fair Dealing in Denying Plaintiff His Incentive Bonus for 2003

140. The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶ 78–86 at pp. 24–28 above, incorporated herein by reference, breached defendant's duty of good faith and

fair dealing with respect to its decision not to pay plaintiff his incentive bonus for 2003, in that defendant knowingly induced plaintiff to continue working for it in reliance on receiving his 2003 incentive bonus, knew that plaintiff was continuing to work for defendant in reliance on the bonus, knew that plaintiff's expectation of the bonus was reasonable, had decided at some time materially before January 14, 2004, not to pay plaintiff's bonus to him, had a duty based on its special knowledge to communicate that change of position to plaintiff, and instead concealed and did not communicate this change of position to plaintiff before January 14, 2004, so that plaintiff would continue working for it until defendant was ready to fire him, and succeeded in that plaintiff continued working for defendant throughout 2003.

Q.    **Prayer**

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief:

1. Declare that defendant's termination of plaintiff's employment, its insistence that his employment end so soon after notification, and its denial of his bonus for 2003, to have violated the prohibitions of discrimination and retaliation in the ADEA and the City Human Rights Law, and the prohibition of retaliation in the FLSA;

2. Declare that defendant knowingly made false and misleading representations of material fact to the EEOC, and knowingly provided a backdated document to the EEOC where the date of the document was material and of critical importance, in its November 5, 2004, Position Statement, for the purpose of attempting to persuade plaintiff and the EEOC that there was no merit in plaintiff's charge of discrimination, and for the purpose of persuading the EEOC not to file suit to enforce plaintiff's rights under the ADEA;

3. Order defendant to reinstate plaintiff in the position of Managing Director, with salary, benefits, and incentive bonuses comparable to those of other Managing Directors but in no event lower than the salary, benefits, and incentive bonuses for any Managing Director in the

Media Investment Banking Group, and with length of service and seniority for all purposes as if plaintiff had never been terminated and had continued to work for defendant from January 31, 2004, through the date of reinstatement;

4. In the event reinstatement is granted, order defendant Deutsche Bank Securities, Inc., its senior officials, and Mr. Amling:

    a. not to take or omit any action, wholly or partially, in retaliation against plaintiff for having complained of client reassignments, and/or of age discrimination, from 2002 to 2004, for filing his charge of discrimination with the EEOC, or for having filed this lawsuit, and

    b. in making future decisions on promotions, assignments, training, and compensation, not to consider plaintiff's absence from work since January 31, 2004, or his having complained of client reassignments and of age discrimination from 2002 to 2004, or his charge of discrimination with the EEOC, or this lawsuit;

5. In the event reinstatement is granted, order defendant to facilitate the service required in this paragraph, and order the Marshal to make personal service of an Order entered pursuant to ¶ 3 of this Prayer on Mr. Amling if still employed by defendant at that time, on the new head of the Media Investment Banking Group if this is not Mr. Amling, on each of Mr. Amling's or the new head's superiors in the direct line of command in the United States, on defendant's Human Relations Director (or similar title) for the United States, and on the Human Relations official chiefly responsible for servicing the Media Investment Banking Group.

6. Award back pay to plaintiff for his 2003 incentive bonus, calculated in the same manner as the incentive bonuses for other for other Managing Directors but in no event lower

than the salary, benefits, and incentive bonuses for any Managing Director in the Media Investment Banking Group;

7. Award back pay to plaintiff for the salary and incentive bonuses, less interim earnings, he would have received if he had not been fired, for the period from January 31, 2004, to the date of the verdict, with salary, benefits, and incentive bonuses calculated in the same manner as the salary, benefits, and incentive bonuses for other Managing Directors but in no event lower than the salary, benefits, and incentive bonuses for any Managing Director in the Media Investment Banking Group, and with length of service and seniority for all purposes as if plaintiff had never been terminated and had continued to work for defendant from January 31, 2004, through the date of reinstatement;

8. To the extent that the back pay award includes awards of stock that plaintiff would have received if he had been employed in the year in question, the stock should be awarded at the same price in effect at the time other employees were awarded the stock, not its present value, and any period of restriction should be considered as satisfied by the passage of time;

9. Award back pay to plaintiff for any employment benefits he lost because of his termination including, but not limited to, 401K, Pension Plan and gift matching as well as for the amount of health, dental and disability insurance paid by plaintiff for his coverage of his family since his termination;

10. Award back pay to plaintiff for the value of the appreciation of defendant's stock previously awarded to him that he could not enjoy because he sold the stock to meet his expenses and support his family;

11. Award liquidated damages to plaintiff in an additional amount equal to the amount of back pay awarded;

12. Award prejudgment interest to plaintiff, at the statutory New York rate of 9% per annum simple interest on State-law claims and such interest rate as the Court deems proper for claims under Federal law, from the date the payment should have been received to the date judgment is entered, for every element of his back pay award;

13. Award postjudgment interest to plaintiff;

14. In the event that the Court denies reinstatement, or in the event that reinstatement is delayed during the pendency of an appeal or for other reasons:

    a.    award plaintiff front pay for the period from the date of the verdict until such time as Plaintiff is reinstated or can be expected to have obtained comparable employment;

    b.    award plaintiff lost future earnings to compensate for the reduction in his lifetime earnings potential caused by defendant's actions, whether such lost future earnings are characterized as front pay or as compensatory damages;

15. Award punitive damages to plaintiff, in an amount sufficient to deter defendant from engaging in future actions similar to those giving rise to this lawsuit, and sufficient to deter other similar employers from doing the same;

16. Award plaintiff reasonable attorneys' fees and the reasonable expenses of his charge of discrimination and retaliation and of this action; and

17. Grant such other and further relief as may be necessary or appropriate.

**R.    Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands trial by jury of all questions of fact, of all matters as to which the Seventh Amendment to the

Constitution of the United guarantees the right of trial by jury, and of all matters as to which § 7(c)(2) of the ADEA, 29 U.S.C. § 626(c)(2), provides a right of trial by jury.

        Respectfully submitted,

        Richard T. Seymour (RS 8094)
        Adele Rapport (AR 0991)
        Law Office of Richard T. Seymour, P.L.L.C.
        1150 Connecticut Avenue N.W., Suite 900
        Washington, D.C. 20036-4129
        (202) 862-4320 – Telephone
        (202) 549-1454 – Cell
        (800) 805-1065 – Telecopier

        Steven A. Berger (SB-2038)
        Jonathan Rogin (JR-9800)
        Thomas E. Hone (TH-7420)
        Berger & Webb, LLP
        1633 Broadway, 46th Floor
        New York, N.Y. 10019
        (212) 319-1900 – Telephone
        (212) 319-2017 and -2018 – Telecopiers

By: _____
        Thomas E. Hone (TH-7420)
        Attorneys for Plaintiff

Dated: June 8, 2007