UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                      :
DANIEL B. GRAVES,                     :
                                      :
                    Plaintiff,        :   07 Civ. 5471 (BSJ)
                                      :
        - against -                   :
                                      :
DEUTSCHE BANK SECURITIES INC.,        :
                                      :
                    Defendant.        :
                                      :
------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SANCTIONS

SIDLEY AUSTIN LLP

ATTORNEYS FOR  Defendant
               DEUTSCHE BANK SECURITIES INC.

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 1

ARGUMENT ................................................................................................................................. 6

    THE COURT SHOULD SANCTION GRAVES AND HIS
    COUNSEL FOR RULE 11 VIOLATIONS ..................................................................... 6

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Abdelhamid v. Altria Group, Inc.,
   515 F. Supp. 2d 384 (S.D.N.Y. 2007) ...................................................................... 7

Gowanus Indus. Park, Inc. v. Sulzer,
   No. 06 Civ. 105, 2008 U.S. Dist. LEXIS 26181 (E.D.N.Y. Mar. 31, 2008) ............... 6

In re: Nasdaq Market-Makers Antitrust Litigation.,
   187 F.R.D. 124 (S.D.N.Y. 1999) ............................................................................... 7

O'Brien v. Alexander,
   101 F.3d 1479 (2d Cir. 1996) .................................................................................... 7

Saltz v. City of N.Y.,
   129 F. Supp. 2d 642 (S.D.N.Y. 2001) ................................................................... 6, 7

Staples v. W.J.R. Assocs.,
   No. 04 Civ. 904, 2007 U.S. Dist LEXIS 24770 (E.D.N.Y. Mar. 20, 2007) ............... 7

**STATUTES**

18 U.S.C. § 1001 ............................................................................................................ 2, 4

Fed. R. Civ. P. 11(b)(3) .............................................................................................. 1, 6, 7

## **PRELIMINARY STATEMENT**

Defendant, Deutsche Bank Securities Inc. ("DBSI"), submits this memorandum of law in support of its motion for sanctions against Plaintiff Daniel B. Graves ("Graves") and his counsel Richard Seymour of the Law Office of Richard T. Seymour, PLLC and Steven Berger of Berger & Webb, LLP (collectively, Plaintiff's "counsel") pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). DBSI moves for sanctions because Graves and his counsel, without evidentiary support and knowing the reputational damage that such allegations could cause, filed a Complaint in which they accused DBSI, a major financial institution, of filing false and fraudulent documents with the Equal Employment Opportunity Commission ("EEOC"). Moreover, over the past ten months, Graves and his counsel have refused to withdraw these spurious allegations even after DBSI produced clear evidence that there was no factual basis to support these claims. As explained below, the conduct of Graves and his counsel amply merits the imposition of sanctions under Rule 11.

## **FACTUAL BACKGROUND**

On June 8, 2007, Graves and his counsel filed a Complaint for Damages and Injunctive and Declaratory Relief (the "Complaint"), primarily alleging age discrimination and retaliation in violation of federal, state, and city laws by DBSI.[1] Paragraphs 95 to 124 of the Complaint set forth the extreme allegations that DBSI and its then counsel, Epstein Becker & Green, P.C., engaged in a deliberate "cover-up" of its discriminatory conduct by knowingly falsifying two Franchise Revenue and Pipeline Reports (the "Reports") submitted to the EEOC

---

[1] A copy of the Complaint is attached to the Affirmation of Cliff Fonstein in Support of Defendant's Motion for Sanctions (the "Fonstein Aff.") as Exhibit A.

1

in response to Graves's charge of discrimination. These reports show actual and potential (or "pipeline") deal revenue for the bankers in the Media Group. The thrust of the disputed allegations is that DBSI and its counsel: (1) fraudulently backdated one of the Reports to show false pipeline revenue to minimize Graves's pipeline for 2003 (Complaint, ¶ 98); (2) submitted Reports that falsely inflated other bankers' pipeline revenue by assigning the full pipeline revenue value for Graves's deals to a number of other bankers working on the deal (Complaint, ¶ 99 & 109); and (3) substituted, in both Reports, "made up" figures for pipeline revenue numbers to devalue Graves's deals and overvalue those of the younger bankers. (Complaint ¶100 & 110.)[2] As sole evidence of this last contention, Graves points to the fact that a number of different deals on the Reports have the same pipeline value – a fact that he alleges is "highly improbable." (Complaint, ¶ 101.) Graves's Complaint concludes that DBSI "knowingly and willingly attempted to falsify, conceal, or cover up material facts by tricks, schemes and devices" and "made false, fictitious or fraudulent statements or representations, and used false writings and documents, knowing the same to contain false, fictitious, and fraudulent statements and entries" in violation of 18 U.S.C. § 1001, a criminal statute punishing false representations to the government. (Complaint ¶¶ 122-23.)

At the time the Complaint was filed, Graves and his counsel knew the allegations of fraud contained therein were false. As Graves well knew from his career as a Media Banker at DBSI, the pipeline figures in the two Reports reflect two common practices for attributing pipeline revenue by DBSI. First, in order to foster a sense of collaboration among bankers working on a single deal, DBSI attributes full pipeline revenue for the deal to each banker involved in its execution. Second, because of the uncertain status of pipeline deals, DBSI

---

[2] Copies of the Reports, dated January 15, 2003 and January 8, 2004, attached to DBSI's position statement as

accords a formulaic, round-number revenue value to pipeline deals based on projected size and multiplies that number by the percentage of probability of the deal's execution, calculated as 0%, 25%, 50% 75% or 100%.[3] Giving his New York counsel the benefit of the doubt that he did not remember DBSI's practices despite having handled another DBSI investment banker case, and giving his Washington D.C. counsel the benefit of the doubt that Graves had not adequately explained DBSI's practices, on June 25, 2007, DBSI sent Graves a letter explaining these practices at DBSI (of which Graves should have been well aware) and demanding that Graves amend his Complaint to retract the baseless allegations of fraud.[4] On June 26, 2007, Graves responded by reasserting the contention that DBSI had purposely defrauded a governmental agency but he added that he would be "happy" to evaluate any document that DBSI could produce to disprove his contention.[5]

After Graves refused to withdraw the fraud allegations in his Complaint, DBSI filed a motion to strike the offending Complaint paragraphs on July 3, 2007 in conjunction with its motion for partial dismissal of the Complaint.[6] DBSI demonstrated not only that the allegations were blatantly false, but also that they were not in any way relevant to Graves's claims of discrimination and retaliation and, therefore, had no place in the Complaint. (DBSI's Brief, pp. 22-23.) In his Memorandum in Opposition, Graves reasserted his allegation that DBSI and its counsel had lied to the government, adding that this purported fraud constituted a

---

Exhibits C and F, respectively, are attached to the Fonstein Aff. as Exhibits B and C.

[3] The numbers on the report do not appear to be round numbers because they were converted from dollars into Euros on the report.

[4] A copy of the letter from DBSI to Graves, dated June 25, 2007, is attached to the Fonstein Aff. as Exhibit D.

[5] A copy of the letter from Graves to DBSI, dated June 26, 2007, is attached to the Fonstein Aff. as Exhibit E.

[6] Relevant pages of Defendant's Memorandum of Law in Support of its Motion for Partial Dismissal of the Complaint and to Strike Portions of the Complaint (DBSI's Brief), filed on July 3, 2007, are attached to the Fonstein Aff. as Exhibit F.

violation of 18 U.S.C. § 1001. (Opposition Brief, p. 43.)[7] DBSI's motion is currently pending before the Court.

During discovery, DBSI produced documents supporting the factual assertions contained in its EEOC response, and, on three occasions, wrote to Graves to highlight certain documents in an effort to demonstrate that the fraud allegations were baseless and must be withdrawn. On July 20, 2007, DBSI sent Graves a letter that attached an email to Graves dated August 22, 2002 from Sue Hoffman, the Media Group's Chief Operating Officer, which attached a Report that clearly evidenced the two revenue attribution practices of crediting the same full pipeline revenue to all of the bankers on a deal and of assigning the same round pipeline estimate to different deals.[8] As an example, the Report received by Graves in 2002 contained the same revenue attribution of 5,038,000 Euros to both Jeffrey Amling and Chip Carey on the Citadel Broadcasting Deal and assigned identical estimates of 3,230,000 Euros to the Sinclair Broadcasting bank financing deal, the Gray Communications acquisition of Benedict Broadcasting, the Pinnacle Holdings general advisory and the Data Transmission Network bank/bond financing deal. DBSI pointed out in its letter to Graves that not only did this email and report substantiate the two legitimate attribution practices reflected in the Reports submitted to the EEOC, but it also shows that Graves was well aware of these practices from as early as August 2002. DBSI requested that, in light of this uncontraverted evidence of the legitimacy of

---

[7] Relevant pages of Plaintiff's Memorandum in Opposition to Defendant's Motion for Partial Dismissal of the Complaint and to Strike Portions of the Complaint (the "Opposition Brief"), filed on July 18, 2007, are attached to the Fonstein Aff. as Exhibit G.

[8] A copy of the letter from DBSI to Graves, dated July 20, 2007, attaching the email from Sue Hoffman to Graves, dated August 22, 2002 and the Report dated July 29, 2002 is attached to the Fonstein Aff. as Exhibit H.

DBSI's submission to the EEOC, Graves withdraw the fraud accusations from the Complaint. Graves responded on July 23, 2007 that he would not do so.[9]

On February 21, 2008, DBSI produced the Bank's official monthly Reports for all of 2002 and 2003. Each of these twenty-four Reports showed the same two revenue attribution practices used by DBSI in the reports it submitted to the EEOC (i.e., the multiple revenue attribution and identical estimation of revenue for different transactions). These documents again showed that these revenue attribution practices were commonly used by DBSI throughout the two years preceding Graves's termination. More importantly, the Report dated January 8, 2004 was the same report as the one submitted to the EEOC as an exhibit, providing clear evidence that DBSI neither falsified nor backdated the Report it produced to the EEOC ten months later.[10]

On March 12, 2008, DBSI produced to Graves and his counsel a copy of a document showing the GCF Controllers' procedures and systems for recording booked and pipeline revenues, which appended sample Reports evidencing the two revenue attribution practices at issue. DBSI again stressed to Graves that this last document confirmed that the figures Graves claimed to be fraudulent were reflections of DBSI's standard procedures and were not created to deceive the EEOC.[11] By letter dated March 18, 2008, Graves again refused to withdraw the damaging allegations from the Complaint.[12]

---

[9] A copy of the letter from Graves to DBSI, dated July 23, 2007, is attached to the Fonstein Aff. as Exhibit I.
[10] Copies of the Reports produced to Graves on February 21, 2008, Bates stamped DB 000411 to DB 000836, with the accompanying letter from DBSI to Graves, are attached collectively to the Fonstein Aff. as Exhibit J.
[11] A copy of the letter from DBSI to Graves, dated March 12, 2008, with the attached GCF Controllers procedures and systems, is attached to the Fonstein Aff. as Exhibit K.
[12] A copy of the letter from Graves to DBSI, dated March 18, 2008, is attached to the Fonstein Aff. as Exhibit L.

On April 2, 2008, DBSI sent Graves a letter recapping its earlier letters, disproving Graves's fraud allegations.[13] DBSI referred Graves to the August 22, 2002 email from Susan Hoffman, the twenty-four pipeline and revenue reports for 2002 and 2003, and the GCF Controllers' procedures and systems for recording booked and pipeline revenues, all of which evidenced the fact that the Reports DBSI sent to the EEOC were not created to defraud the EEOC. DBSI again requested that Graves withdraw his fraud allegations, and informed him that it would pursue motion practice if necessary. Graves has not responded to the April 2, 2008 letter.

## ARGUMENT

### THE COURT SHOULD SANCTION GRAVES AND HIS COUNSEL FOR RULE 11 VIOLATIONS

Rule 11 mandates that, "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3) (emphasis added). Courts have assessed sanctions against attorneys and their clients for filing allegations or claims without ensuring, through reasonable inquiry, that the claims have or will have evidentiary support. See Gowanus Indus. Park, Inc. v. Sulzer, No. 06 Civ. 105, 2008 U.S. Dist. LEXIS 26181, at *21-22 (E.D.N.Y. Mar. 31, 2008)[14] (granting motion for sanctions where plaintiff made factual contentions to the court that were unsupported by evidence); Saltz v. City of N.Y., 129 F. Supp.

---

[13] A copy of the letter from DBSI to Graves, dated April 2, 2008, is attached to the Fonstein Aff. as Exhibit M.

2d 642, 646 (S.D.N.Y. 2001) (awarding sanctions where the plaintiff's counsel failed to make a reasonable inquiry into the facts alleged in the complaint). Moreover, "[t]he continued assertion of a factual or legal argument long after that argument has proven to be completely baseless is sanctionable conduct." In re: Nasdaq Market-Makers Antitrust Litig., 187 F.R.D. 124, 131 (S.D.N.Y. 1999) (citing O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996)). See also Staples v. W.J.R. Assocs., No. 04 Civ. 904, 2007 U.S. Dist LEXIS 24770, at *16 (E.D.N.Y. Mar. 20, 2007) (awarding sanctions where the plaintiff's attorneys failed to withdraw a claim after receipt of documentary evidence that contradicted the claim).

A recent decision from this Court, Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384 (S.D.N.Y. 2007), is instructive. In its motion for Rule 11 sanctions, the defendant charged not only that there was no evidentiary support for many of the allegations in the amended complaint, but that the plaintiff's counsel was aware of evidence that directly contradicted many of the allegations. Id. at 398. Like DBSI, the defendant in Abdelhamid notified the plaintiff's counsel of the contradictory evidence before filing its motion for sanctions and provided documents showing such contradictions, but the plaintiff refused to withdraw the baseless allegations. Id. at 399. The Court granted the motion because of the plaintiff's failure to retract the allegations in the face of evidence that clearly disproved them. Id. Like the plaintiff and his counsel in Abdelhamid, Graves and his counsel violated Rule 11 not only by failing to ensure that the fraud allegations in the Complaint had adequate evidentiary support, but also by obstinately refusing to withdraw them from the public record in light of overwhelming evidence that no such fraud was committed. This is precisely the type of behavior that warrants the assessment of sanctions by this Court.

---

[14] Copies of unpublished opinions cited in this memorandum are attached hereto as Exhibit A.

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that the Court grant its motion for sanctions and direct Graves to withdraw the fraud allegations against DBSI from his Complaint and award DBSI attorneys' fees and costs incurred in filing the motion to strike and this motion for sanctions, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      May 5, 2008

SIDLEY AUSTIN LLP

By *[signature]*
Cliff Fonstein
Joanne Seltzer
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendant
Deutsche Bank Securities Inc.

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on May 6, 2008, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion For Sanctions to be served upon the following:

>Richard T. Seymour
>Law Office of Richard T. Seymour, PLLC
>1150 Connecticut Avenue, NW, Suite 900
>Washington, D.C. 20036-4129
>(by Federal Express overnight delivery)

>Steven A. Berger
>Berger & Webb, LLP
>1633 Broadway, 46th Floor
>New York, New York 10019
>(by hand delivery)

_____
Joanne Seltzer