IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>　　　　　Defendant. | CIVIL ACTION NO.<br><br>1:07-cv-05471-BSJ-KNF<br><br>(Electronically Filed) |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT AND TO STRIKE PORTIONS OF THE COMPLAINT

　　　　　　　　　　　Richard T. Seymour (RS-8094)
　　　　　　　　　　　Adele Rapport (AR-0991)
　　　　　　　　　　　Law Office of Richard T. Seymour, P.L.L.C.
　　　　　　　　　　　1150 Connecticut Avenue N.W., Suite 900
　　　　　　　　　　　Washington, D.C. 20036-4129
　　　　　　　　　　　　　(202) 862-4320 – Telephone
　　　　　　　　　　　　　(202) 549-1454 – Cell
　　　　　　　　　　　　　(800) 805-1065 – Telecopier

　　　　　　　　　　　Steven A. Berger (SB-2038)
　　　　　　　　　　　Jonathan Rogin (JR-9800)
　　　　　　　　　　　Thomas E. Hone (TH-7420)
　　　　　　　　　　　Berger & Webb, LLP
　　　　　　　　　　　1633 Broadway, 46th Floor
　　　　　　　　　　　New York, N.Y. 10019
　　　　　　　　　　　　　(212) 319-1900 – Telephone
　　　　　　　　　　　　　(212) 319-2017 and -2018 – Telecopiers

　　　　　　　　　　　Attorneys for Plaintiffs

Dated: July 18, 2007

None of defendant's employment cases involve a claim independent of termination, none involve a lengthy course of bad faith, none involve intentional deceit by an employer, none involve a promise of consideration for a bonus in a discretionary amount, none involve the virtually certain prospect of a large bonus, and none involve peers whose own bonuses establish what the good faith and fair dealing would require. Defendant's authorities have nothing to do with this case.

### G.     Defendant's Motion is Moot as to the New York City Human Rights Law

Defendant's Motion contends at pp. 20–22 that plaintiff's discrimination and retaliation claims under the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, §§ 8–101 *et seq.*, should be dismissed because plaintiff did not allege he had received a Notice of Administrative Dismissal from the State Division of Human Rights.

Plaintiff received the dismissal on July 9, 2007. See Attachment B to the accompanying Declaration of Richard T. Seymour. Plaintiff is moving for leave to amend and supplement his Complaint to allege its receipt. This part of defendant's Motion should be denied as moot.

### H.     Defendant's Rule 12(f) Motion to Strike Should Be Denied

#### 1.     Defendant's Motion to Strike is Inconsistent with Other Parts of Its Motion

Defendant has moved to strike, as irrelevant and inflammatory, the background facts in the Complaint, ¶¶ 14 and 95–124, that allege its cover-up of its actions in a false filing with the U.S. Equal Employment Opportunity Commission. Defendant's Memorandum at pp. 22–25. Simultaneously, defendant has moved to strike plaintiff's fraudulent concealment claim for an asserted failure to allege enough to show fraud, and has moved to strike all fraud allegations as insufficiently detailed to meet the requirements of Rule 9(b). Defendant is asserting inconsistent positions.

### 2. Motions to Strike are Disfavored

Motions to strike are disfavored. The law of this Circuit is as follows:

> In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. . . . The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing. . . .

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted).

The court added that "ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Id.* (citations omitted).

Treatises agree. 2 MOORE'S FEDERAL PRACTICE, § 12.37[1] states at p. 12–93 that motions to strike are disfavored. It adds that allegations that are relevant and material to the issues in the litigation are not subject to being struck as impertinent or scandalous. *Id.*, § 12.37[3] at pp. 12–95, 12–97. WRIGHT & MILLER, 5C FEDERAL PRACTICE AND PROCEDURE § 1382 (Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter) (West Group, 2007), states:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter. However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.
>
> \*      \*      \*
>
> Finally, "scandalous" matter is that which improperly casts a derogatory light on someone, most typically on a party to the action. It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events

that are relevant to the action. Nonetheless, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations.

But there are several limitations on the court's willingness to strike scandalous allegations. For example, it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action. As a result, courts have permitted allegations to remain in the pleadings when they supported and were relevant to a claim for punitive damages. Moreover, if the party seeking the elimination of the scandalous matter was the "first to hurl epithets," the district judge will deny the motion to strike, presumably applying something in the nature of a "clean hands" notion. It should be noted that the motion to strike scandalous matter in Rule 12(f) largely is repetitious of the provision in Rule 11 permitting a pleading containing "scandalous or indecent matter" to be "stricken as sham and false."

The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available. Of course, if the complaint will not be submitted to the jury, or if the case will be tried to the court, or if the pleadings will be subject to continuing "judicial supervision," there is less need to strike scandalous allegations. The federal courts also consider the character of the matter in question. If it is highly objectionable, particularly when it is scurrilous or impugns the integrity of the court, the courts have been willing, in appropriate circumstances, to strike it from the record of the case as well as eliminate it from the pleading.

The remaining parts of this section of this Memorandum show the great relevance of the allegations in question.

### 3. Defendant's Motion is Premature

In the event that discovery does not show an adequate factual basis for any of the allegations in ¶¶ 14 and 95–124 of the Complaint, plaintiff will seek leave to amend the Complaint and conform the allegations to what is shown in discovery. To the extent that defendant disagrees with plaintiff's assessment of what has been supported by discovery, defendant can move for summary judgment, or can move in limine to exclude this part of the Complaint from the jury, or to exclude whatever else it thinks may lawfully be excluded. There

would thus be no risk that the jury might be inflamed by unsupported allegations in the Complaint.

Such a course of action is preferable to ruling on questions of materiality and admissibility in advance of discovery. *Lipsky v. Commonwealth United Corp.*, 551 F.2d at 893.

### 4. Plaintiff's Allegations of a Cover-Up Are Relevant to Declaratory Relief

Many of the representations alleged in ¶¶ 95–124 may have been used internally by defendant's officials to justify plaintiff's firing. If so, these damaging representations will have been disseminated within defendant, and plaintiff's peers who have remained there or who have gone elsewhere may have a tainted view of plaintiff. Credibility and reputation for productivity matter greatly within the investment banking field, and plaintiff may be harmed. Plaintiff has a right to explore such questions in discovery and show such a connection. He has requested declaratory relief, so that he will be protected from any adverse implications from these materials. For this purpose, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 5. An Employer's Representations to the EEOC Are Relevant to Liability

Evidence that defendant lied to the government about the reasons for plaintiff's termination is not a small matter. The Supreme Court has held that even a simple false denial—an "exculpatory no"—is a criminal violation of 18 U.S.C. § 1001. *Brogan v. United States*, 522 U.S. 398, 400–06 (1998). Defendant's misrepresentations to the EEOC here went far beyond a mere denial of age discrimination or retaliation.

Misrepresentations to investigative agencies, and even simple discrepancies between employer's statements to investigative agencies and their later explanations, are highly probative of discrimination or retaliation. *EEOC v. Sears, Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir.

2001), reversed the grant of summary judgment to the Title VII defendant, noting that defendant's latest explanation differed from its Operations Manager's representations to the EEOC, and stating "as an operations manager, she must have known the importance of responding truthfully and completely to an EEOC discrimination charge." *Id.* at 853. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676–77 (7th Cir. 2003), reversed the grant of summary judgment to the ADEA defendant, relying in part on a material discrepancy between defendant's original explanation provided to the Illinois Department of Human Rights and the defendant's current explanation. *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1382 (10th Cir. 1994), reversed the grant of summary judgment to the Title VII defendant, holding that the discrepancy between defendant's explanation to the EEOC and its later explanation "does tend to show pretext," but "we do not believe that the change itself constitutes an adverse employment action."[35] *Durley v. APAC, Inc.*, 236 F.3d 651, 656–57 (11th Cir. 2000), reversed the grant of summary judgment to the Title VII defendant, holding that the jury could reasonably find discrimination from evidence of plaintiff's superior qualifications, evidence that the defendant had falsely denied the existence of a job description prior to the EEOC's request for the description, and evidence that it had provided the EEOC with a job description that boosted the relative qualifications of the person selected.[36]

### 6.    An Employer's Deceit is Relevant to Liability

Evidence of deceit would automatically permit (but not require) the factfinder to draw the inference that the lies were intended to cover up discrimination and retaliation, and would ordinarily bar the entry of summary judgment on the pretext issue as to plaintiff's discrimination and retaliation claims. All evidence of deceit is extremely valuable in proving claims involving

---

[35] Defendant's Motion ignores the distinction between relevant background facts and causes of action drawn by the court in *Cole*.

[36] These cases from four Circuits are illustrative but not exhaustive.

intent. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000), an ADEA case, stated:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620–621, 16 S. Ct. 895, 40 L. Ed. 1090 (1896); 2 J. WIGMORE, EVIDENCE § 278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

(Some citations omitted.) The Court cited this discussion in a later case holding that circumstantial evidence should be treated like direct evidence in meeting the "motivating factor" requirement in "mixed motive" employment discrimination cases. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–100 (2003), a Title VII case, stated:

> We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination." *Id.*, at 147, 120 S. Ct. 2097 (emphasis added). The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." . . .

(Citation omitted.) *Mandell v. County of Suffolk*, 316 F.3d 368, 380–81 (2d Cir. 2003), a Title VII and New York Human Rights Act case, reversed the grant of summary judgment to the defendant County because evidence of a cover-up helped show that the defendant's proffered nondiscriminatory reason was a pretext for discrimination. Similarly, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 390 (5th Cir. 2003), held that a false affidavit helped show that the

defendant's proffered nondiscriminatory reason was a pretext for discrimination. Under these standards, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 7. Deceit Shows Animus, and Animus is Relevant to Retaliation

Evidence that defendant lied to the government about the reasons for plaintiff's termination would show the strength of defendant's determination to fight plaintiff's claim, and would make it more credible to the jury that defendant would engage in retaliation. Under F.R.E. 404(b), "[e]vidence of other crimes, wrongs or acts . . . may, however, be admissible for . . . purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge . . . or absence of mistake or accident . . . ." In *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005), a case involving discriminatory peremptory challenges to jurors,[37] the Supreme Court emphasized the importance of evidence of deceit: "It would be difficult to credit the State's new explanation, which reeks of afterthought. While the Court of Appeals tried to bolster it . . . the court's readiness to accept the State's substitute reason ignores not only its pretextual timing but the other reasons rendering it implausible."

Under these standards, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 8. Deceit is Relevant to Credibility and Impeachment

Evidence that particular officials of defendant had knowingly participated in making a false filing with the government would impeach their testimony at trial and affect their credibility before the jury. "Evidence of other crimes, wrongs, or acts has also been admitted to establish . . . consciousness of guilt, to corroborate crucial testimony . . . ." MICHAEL H. GRAHAM, 1 HANDBOOK OF FEDERAL EVIDENCE, 5TH ED. (West Group, 2001), § 404.5 at p. 362.

---

[37] The Court cited *Reeves v. Sanderson Plumbing Products*, 545 U.S. at 241, underscoring the relevance of this decision to employment law.

46

Under this standard, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 9. Deceit is Relevant to the Existence of a Long-Standing Scheme

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, would make it more credible to the factfinder that defendant had engaged in a lengthy plan to undermine plaintiff and deprive him of his bonus, after using the prospect of the bonus to induce him to work for defendant past the end of 2003, until defendant was ready to fire him. This is directly relevant to plaintiff's claims for fraudulent concealment and for breach of the implied covenant of good faith and fair dealing, as well as to the discrimination and retaliation claims.

*Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004), a case brought under Title VII and 42 U.S.C. §§ 1981, 1983, 1985, and 1986, held that plaintiff's Second Amended Complaint "exceeds the Rule 8 floor." The court set forth the Second Amended Complaint which included the allegations quoted below,[38] allegations going much farther than those defendant seeks to

---

[38] The Second Amended Complaint alleged at 81–87:

> 21. The interview was calculated to demean and impress upon plaintiff the racist nature of the interview
>
> \*   \*   \*
>
> 30. During the period from January, 1997 through January 1998, without a reasonable belief of criminal activity, IAD conducted a criminal investigation into plaintiff's affairs. Commanded by McMahon, the criminal investigation involved surveillance of plaintiff in his neighborhood and contacting plaintiff's neighbors informing them that plaintiff was suspected of drug sales, money laundering and gun smuggling.
>
> 31. In furtherance of this investigation Capt Klusacek stated to Ms Brenda Bennic that plaintiff was living above his means and that IAD was investigating him for criminal charges.

47

strike herein. Yet the Second Circuit approved this document, criticizing only its prolixity and the fact that it could have done more to specify which defendants engaged in which unlawful acts. *Id.* at 80.

---

\*   \*   \*

39. The taking of the sworn statement and the intentional deceit were part and parcel of NYSP policy and custom to deprive plaintiff of his constitutional rights in direct violation of 42 U.S.C. § 1983.

\*   \*   \*

45. Upon information and belief, Spahl communicated with Masterson in IAD to repeatedly bring false charges against plaintiff. Both officers knew or should have known that there was no foundation for the charges. The bringing of false charges, administrative prosecution of the false charges, the bias nature of the Board that heard the charges and the conviction contrary to the evidence was part of a plan or scheme to terminate plaintiff's employment.

\*   \*   \*

47. Upon information and belief, all defendants conspired to violate the constitutional rights and privileges of plaintiff by obtaining his private banking records using the private records to bring false charges and to deprive plaintiff of "due process" under the 5th and 14th Amendments.

\*   \*   \*

52. Two hearings were conducted by NYSP utilizing three hearing officers at each hearing. Two officers at each hearing were hand picked by McMahon to decide false charges against plaintiff. Plaintiff was deprived of a fair hearing by a biased board. Plaintiff was denied discovery prior to the hearings in violation of his due process rights under the 5th and 14th Amendments. Plaintiff was denied copies of police records and reports contained in his personnel file which would have shown improper and unlawful police procedures. Plaintiff's constitutional right against being deprived of "property" without due process was violated through the use of a bias hearing board

53. Defendants conspired to create a constructive discharge of plaintiff under Title VII of the Civil Rights Act by deliberately creating working conditions so difficult, hostile and unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. The powers exercised by McMahon and the other defendants in excess of the power granted to their positions, placed their acts and action under the purview of Title VII of the Civil Rights Act through violating the rights, privileges and immunities of plaintiff granted by the United States Constitution

(Omission of ending periods was as stated in the original.)

48

### 10. Deceit is Relevant to Plaintiff's Need for Injunctive Protections in the Event of Reinstatement

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, are highly relevant to plaintiff's need for protections if he prevails on his claim for reinstatement. For this purpose, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 11. Deceit is Relevant to Punitive Damages

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, are highly relevant to plaintiff's claim for punitive damages.

*Kolstad v. American Dental Association*, 527 U.S. 526 (1999), discussed the standards for awarding punitive damages on a Federal-law cause of action, particularly the standards under which corporations are vicariously liable for punitive damages for the actions of lower-level officials. The Court quoted with approval the standards of § 217(C) of the RESTATEMENT (SECOND) OF AGENCY and § 909 of the RESTATEMENT (SECOND) OF TORTS, modifying only the "scope of employment" standard and establishing a "good faith defense":

> The Restatement of Agency places strict limits on the extent to which an agent's misconduct may be imputed to the principal for purposes of awarding punitive damages:
>
> > "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
> >
> > > "(a) the principal authorized the doing and the manner of the act, or
> > >
> > > "(b) the agent was unfit and the principal was reckless in employing him, or
> > >
> > > "(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> > >
> > > "(d) the principal or a managerial agent of the principal ratified or approved the act." Restatement (Second) of Agency, *supra*, § 217 C.

49

See also Restatement (Second) of Torts § 909 (same).

527 U.S. at 542-43. Defendant's Position Statement to the EEOC was a ratification or approval of the actions complained of, and its falsity demonstrated malice or reckless disregard of plaintiff's Federally-protected rights.

The same result obtains under the New York law of punitive damages. The New York Court of Appeals has stated: "Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 179 N.E.2d 497, 223 N.Y.S.2d 488 (N.Y. 1961). In a malicious-prosecution case, the Court of Appeals set forth the standard for conduct giving rise to punitive damages: "It has long been recognized in New York that punitive damages may be awarded in an action for malicious prosecution if the defendant was motivated by actual malice or acted in reckless disregard of the plaintiff's rights." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 377 N.E.2d 975, 976, 406 N.Y.S.2d 443, 445 (N.Y. 1978). *Accord, Giblin v. Murphy*, 73 N.Y.2d 769, 772, 532 N.E.2d 1282, 1284, 536 N.Y.S.2d 54, 55 (N.Y. 1988) (fraud) ("'wanton or reckless disregard of plaintiff's rights'"); *V.J.V. Transport Corp. v. Santiago*, 173 A.D.2d 537, 570 N.Y.S.2d 138 (N.Y. App. 2d Dept. 1991) (fraud) ("Moreover, in cases such as this, it is not necessary to prove that the fraud was aimed at the public generally in order to justify an award of punitive damages . . . . Review of the record discloses that the defendants' acts were gross, wanton, deliberate, evinced a reckless disregard for the plaintiffs' rights, and, moreover, attained that high degree of moral culpability required to justify an award of punitive damages.") (citations omitted).

Plaintiff's allegations of a cover-up scheme in violation of a statutory prohibition of trickery and deceit are supported by Supreme Court punitive-damages cases. *TXO Production*

50

*Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993), stated: "The punitive damages award in this case is certainly large, but in light of the amount of money potentially at stake, the bad faith of petitioner, the fact that the scheme employed in this case was part of a larger pattern of fraud, trickery and deceit, and petitioner's wealth, we are not persuaded that the award was so 'grossly excessive' as to be beyond the power of the State to allow." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 576 (1996), citing *TXO*, held that "'trickery and deceit' . . . are more reprehensible than negligence." *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408, 419 (2003), stated: "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (Citation omitted.) The Court's latest pronouncement, *Philip Morris USA v. Williams*, __ U.S. __, 127 S. Ct. 1057, 1064 (2007), held that a jury may properly take into account whether there was "a substantial risk of harm to the general public, and so was particularly reprehensible," but "a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties."

      Defendant's cover-up made its actions more reprehensible, demonstrated a deeper malice, reckless indifference and moral depravity than if it had not lied to the EEOC, in so doing vastly complicated the task of a single individual challenging an entity with comparatively unlimited resources, and demonstrated a risk that defendant and comparable companies will repeat such actions in the future. Defendant's cover-up is directly relevant to punitive damages and their amount, under both New York and Federal law.

12. **The Detailed Allegations of a Cover-Up Meet the Requirement of Alleging Sufficient Subsidiary Facts to Make Plaintiff's Claims Plausible**

Moreover, plaintiff is required to plead sufficient facts to allow a plausible inference of fraud. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), has recently tightened the pleading rules, stressing the importance of such allegations even in the absence of a heightened pleading requirement. The Second Circuit requires the allegation of the facts making a fraud claim plausible, to the extent plaintiff can do so before discovery. See the discussion at pp. 35–36 above. Plaintiff needs to allege a chain of circumstantial evidence strongly leading to the inference of fraud, and ¶¶ 14 and 95–124 of the Complaint are necessary and appropriate to that end.

13. **Defendant's Cases Do Not Support Its Motion**

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D. N.Y. 2003), merely held that factually unsupported conclusions and irrelevant facts, such as allegations concerning conflicts of interest in stocks the defendant's fund never held, may be stricken. *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 554–55 (S.D. N.Y. 2002), involved the striking of scandalous allegations that the principals of a law firm used their secretaries and paralegals to seduce and "entertain" medical expert witnesses, where such allegations had nothing to do with any of the surviving claims. These are highly distinguishable from the allegations in question here.

*Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 317–18 (S.D. N.Y. 2001), involved the use of Rule 12(f) as a substitute for Rule 12(b)(6), to strike allegations for failure to state a claim, and its use to strike irrelevant allegations, such as allegations of financial irregularities and lack of internal controls, that the court said had nothing to do with plaintiff's discrimination claim. AVSC contended that plaintiff was fired for insubordination in reporting the irregularities to the

company's external auditor. Plaintiff's claim for retaliation under the City, State, and Federal civil rights laws was dismissed. *Id.* at 310–11. The plaintiff accountant also claimed retaliation for having made the report, but there was no State cause of action for such retaliation against an accountant. *Id.* at 314–17. Under these circumstances, the allegations of financial irregularities had nothing to do with any remaining claim. Plaintiff Graves' claims are highly distinguishable.

The only allegation in *Smith* involving assertedly scandalous matter—that plaintiff had received a death threat—was allowed to remain. The court stated: "Paragraph 57, while clearly inflammatory, may remain for the sole purpose of enabling Smith to gather proof of its relevance to his retaliation claim. If he can do so, this allegation will be highly probative of retaliation. Otherwise, it shall be struck upon proper motion after discovery." *Id.* at 318. Plaintiff has suggested the same course of action herein.

*Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D. N.Y. 1991), stated: "The complaint's reference to Milken's criminal conviction and his income level are immaterial and impertinent to this case, and may be 'scandalous.' Neither Milken's income nor the outcome of his celebrated criminal prosecution bears remotely on the merits of this case. Reference to those matters serves no purpose except to inflame the reader." Plaintiff has not made any comparable allegations, and his allegations bear directly on the merits of the case.

*Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992), merely struck references to other litigation in which defendant had been involved.

Defendant urges, in effect, that no allegation as to any administrative event can properly be alleged if it did not result in a binding determination. Defendant's Memorandum at 24–25. None of its cases involved allegations of an attempted cover-up by the making of a false filing in the administrative process of the case at bar.

*Lipsky v. Commonwealth United Corp.*, 551 F.2d at 893, affirmed an order striking allegations of a consent decree between defendant and the Securities and Exchange Commission, because evidence of such a decree would be inadmissible, as would evidence of the complaint that led to the consent decree. Evidence supporting plaintiff's allegations herein, by contrast, would be admissible.

*Ledford v. Rapid-American Corp.*, 1988 WL 3428, 1988 U.S. Dist. LEXIS 79 (S.D. N.Y. Jan. 8, 1988, No.86 Civ. 9116 (JFK)),[39] struck an allegation that the New York State Division of Human Rights had made a probable-cause finding. The court stated that "a determination by the Division of probable cause is an initial non-adjudicative step in the administrative process." WestLaw p. *1, LEXIS p. *3. The court's decision to strike the paragraph was based on its potential to prejudice the jury; it even cited F.R.E. 401, 402, and 403. WestLaw p. *2–3, LEXIS p. *5. Apart from the court's failure to follow the rule in *Lipsky*, 551 F.2d at 893 ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings."), the procedure suggested by plaintiff avoids any possibility of jury prejudice.

*Mitchell v. Bendix Corp.*, 603 F. Supp. 920, 921 (N.D. Ind. 1985), merely struck an allegation about an unappealed decision of the Indiana Employment Security Division "that plaintiff had been discharged 'but not for proven just cause within the meaning of Chapter 15, Section 1 of the Indiana Employment Security Act.'" The court struck the allegation because an unappealed determination would not have been preclusive in the case.

---

[39] The decision can be found at unmarked p. 23 in defendant's Appendix 8, and is the second of three decisions in the Appendix.

### 14. Defendant's Footnote Claim of Absolute Privilege

Defendant's footnote 9 on p. 25 of its Memorandum makes the extraordinary claim that "[i]t is also well-settled under New York law that statements or submissions to the EEOC are protected by absolute privilege and cannot be the basis for imposing liability on a party." It cites no New York law, regulation, or case, and does not cite any reported authority at all. It cites only two unreported district court decisions having to do with defamation or libel, but does not limit its sweeping assertion accordingly.

*Witchard v. Montefiore Medical Center*, 2006 U.S. Dist. LEXIS 72811 (S.D. N.Y. July 19, 2006, No. 05 Civ. 5957 (JSR THK)),[40] at p. *31 cited by defendant and p. *32, is a decision of Magistrate Judge Katz. The court stated that plaintiff seemed to be claiming defamation or libel because she claimed that the union's false statements to the EEOC caused her embarrassment and humiliation. The court's actual holding was that statements to the EEOC are absolutely privileged with respect to a claim for defamation. *The Dweck Law Firm v. Mann*, 2003 U.S. Dist. LEXIS 19535 (S.D. N.Y. Oct. 20, 2003, No. 02 Civ. 8481 (SAS)),[41] did not involve the EEOC at all; the court merely held that there is an absolute privilege under New York law with respect to libel claims involving comments made in the course of a judicial proceeding.

Defendant's offhand use of these authorities leaves its intent somewhat ambiguous. Plaintiff has not alleged a defamation or libel claim with respect to defendant's false filing, so the footnote would seem to be irrelevant. It is possible that the footnote reflects defendant's general treatment of background evidence as if they were causes of action, as with its effort to

---

[40] The decision can be found at unmarked p. 29 in defendant's unindexed Appendix 10, and is the third of three decisions in the Appendix.

[41] The decision can be found at unmarked p. 11 in defendant's unindexed Appendix 4, and is the second of three decisions in the Appendix. The firm name as stated in the decision is Dweck, not Dwerk.

55

dismiss background evidence with respect to Federal claims before the charge-filing period. If so, neither of these unpublished decisions would support the proposition that false statements to the EEOC cannot be used to help prove liability or show entitlement to relief. Neither conflicts with the authorities plaintiff has cited above, with respect to the admissibility and utility of false or inconsistent statements made to the EEOC.

I.  **Conclusion**

Defendant's Motion is not well taken, and should be denied in its entirety.

The part of its Motion seeking to strike untimely Federal claims is basically a motion to strike background facts predating the charge-filing period, and is frivolous.

Plaintiff has adequately pled adverse employment actions occurring within a short time after his internal complaint of age discrimination, including defendant's refusal to allow him to continue working for six months at reduced or no pay to facilitate his obtaining a comparable job elsewhere, the denial of a very substantial bonus, and defendant's refusal to transfer him. Defendant's contention that these were all embodied in the original termination decision is contrary to the allegations of plaintiff's Complaint, and would be a defense to be shown. Defendant may raise the contention again in a motion for summary judgment, if it is by then adequately supported by evidence. To grant this part of defendant's motion now would be the equivalent of granting a motion for summary judgment on the unsupported assertion of defense counsel.

Defendant's contention that plaintiff has not adequately pled the protected activity necessary to an FLSA retaliation claim is frivolous, inasmuch as plaintiff has clearly pled protected activity under the ADEA, and the ADEA provides that violations of that statute shall also be considered violations of the FLSA.