**SIDLEY AUSTIN LLP**

# SIDLEY

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

jseltzer@sidley.com
(212) 839-5985

FOUNDED 1866

April 2, 2008

**By Electronic and First Class Mail**

Richard T. Seymour, Esq.
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue NW, Suite 900
Washington, DC 20036-4129

Steven A. Berger, Esq.
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019

Re:   Daniel Graves v. Deutsche Bank Securities Inc.
      Civil Action No. 07 Civ 5471

Dear Rick and Steve:

We are in receipt of your March 18, 2008 letter, refusing to withdraw Daniel Graves's claim that Deutsche Bank Securities Inc. ("DBSI") and its counsel purposely committed a fraud on the EEOC by falsifying documents accompanying its position statement. We briefly respond to your letter so that there can be no possible confusion in our positions in the event we need to engage in motion practice.

*First*, since your letter confuses what claims we ask you to withdraw, we begin by recapping the claims at issue. In the Complaint, Mr. Graves alleges that when DBSI submitted its position statement to the EEOC, it deliberately submitted false information to the agency to conceal its knowledge that Mr. Graves's claims had merit. (Complaint, ¶ 95.) Specifically, the Complaint accuses DBSI and its attorneys of: (1) backdating Exhibit F to the position statement (Complaint, ¶ 98); (2) purposely double and triple-counting pipeline values in order to falsely inflate the 2003 and 2004 pipelines of other bankers (Complaint ¶ 99); and (3) "making up" pipeline figures which are purportedly evidenced by the fact that numerous transactions in Exhibit F have the same pipeline value (Complaint ¶ 101). The Complaint further alleges that DBSI and its attorneys used these "tricks, devices and stratagems" to intentionally deceive the EEOC (Complaint ¶ 103). It is these false allegations, filed despite your obligation to ensure that

SIDLEY

Richard T. Seymour, Esq.
April 2, 2008
Page 2


the allegations in the Complaint have some evidentiary support, that we have repeatedly asked you to withdraw.

In your March 18 letter, however, you mischaracterize the point of our request. You argue as if the issue we raised concerns whether DBSI applied its pipeline accounting and other practices uniformly to all bankers. While the notion that DBSI applied these practices selectively is itself baseless, the pivotal issue we have now raised is not whether DBSI applied its practices uniformly, but whether you have any evidentiary support for the claim that DBSI falsified documents to deceive the EEOC. It is this claim that needs to be promptly withdrawn.[1]

***Second***, to date we have produced to you numerous documents that disprove your sensational allegations of fraud. These documents indisputedly reflect the fact that DBSI, in its standard revenue reporting procedures, attributed the full pipeline amount of a deal to all of the bankers involved in the deal and estimated the potential revenue of a pipeline deal based on relative size and probability of execution. Eight months ago, on July 20, 2007, we sent you a letter attaching an email from Sue Hoffman to Mr. Graves which, in turn, attached a Franchise Revenue and Pipeline Report dated July 29, 2002. This report clearly reflected DBSI's practice of assigning full revenue to multiple bankers and of assigning identical estimated values to a number of deals. In addition, the email attested to the fact that Mr. Graves was well aware of these procedures as early as the date of the email, August 22, 2002. Thus, you and your client could not credibly assert that these DBSI practices, reflected in a July 20, 2002 report, were concocted to deceive the EEOC in DBSI's November 2004 position statement.

On February 21, 2008, we produced DBSI's official monthly Franchise Revenue and Pipeline Reports for all of 2002 and 2003. (Bates-stamp numbers DB000411-844.) Each of these 24 revenue reports showed the same two procedures for reporting pipeline revenue (i.e., the multiple revenue attribution and estimation of revenue). These documents again show that these revenue attribution practices were commonly used by DBSI throughout the two years preceding Mr. Graves's termination. More importantly, the Report dated January 8, 2004 was the identical report submitted to the EEOC as Exhibit F and is, therefore, uncontroverted evidence that DBSI neither falsified nor backdated the report when it produced it to the EEOC ten months later.

Recently, on March 12, 2008, we produced to you a copy of the GCF Controllers' procedures and systems for recording booked and pipeline revenues, which, again confirmed that

---

[1] In your March 18 letter, you question the validity of the pipeline value assigned to Sinclair Broadcast Deal D034325 in Exhibit F by comparing it to the pipeline values for the deal in November and December of 2003. You conclude that Exhibit F must be fraudulent since the Sinclair deal, valued at €3,930,000 in January 2004, as reflected in Exhibit F, had been credited with a value of only €473,000 in November 2003 and €327,000 in December 2003. Exhibit F, however, gives the deal a €0 franchise value in January 2004, not €3,930,000 as you claim. We do not know where you could have arrived at a figure of €3,930,000 for the transaction.

# SIDLEY

Richard T. Seymour, Esq.
April 2, 2008
Page 3

the procedures of multiple revenue allocation and pipeline estimation were DBSI's standard operating procedure.

       Finally, you were presumably aware of these procedures from your client and from your co-counsel's discovery in other Bank matters. In short, DBSI has produced multiple documents that expressly disprove the allegations in the Complaint that DBSI and its counsel submitted fraudulent documents to the EEOC.

       *Third*, your letter seems to suggest that the obligations under Rule 11 do not apply to you because you provided us with a copy of the Complaint the day before you filed it. Under Rule 11, however, the burden rests on the plaintiff's counsel to ensure that the allegations and other factual contentions in a complaint "have evidentiary support." Fed. R. Civ. P. 11(b)(3). It was, therefore, your responsibility to ensure that the allegations that you made were factually correct to the best of your knowledge before you filed the Complaint. Moreover, it continues to be your responsibility to withdraw allegations which you know to be without any credible support. You cannot wash your hands of these Rule 11 obligations by maintaining that DBSI was somehow responsible for not stopping you from filing false and salacious allegations.

       In sum, you persist in advocating a claim making serious allegations of fraud without a factual basis. Unless we receive some assurance from you that you will withdraw the fraud allegations from the Complaint, we will pursue all legal remedies available to us to ensure that this wrong is rectified.

       Very truly yours,

*Joanne Seltzer*
Joanne Seltzer

cc:    Cliff Fonstein, Esq.