# LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.

1150 CONNECTICUT AVENUE N.W. • SUITE 900 • WASHINGTON, DC 20036-4129
WEBSITE: www.rickseymourlaw.com  FAX: (800) 805-1065
  RICHARD T. SEYMOUR, PRINCIPAL (202) 862-4320 • CELL: (202) 549-1454 • E-MAIL: rick@rickseymourlaw.net
  ADELE RAPPORT, SENIOR COUNSEL (202) 862-4325 • CELL: (202) 531-4477 • E-MAIL: adele@rickseymourlaw.net
    (LICENSED ONLY IN ILLINOIS AND MICHIGAN)
  JULLION R. TAYLOR, PARALEGAL (202) 862-4370 • CELL: (202) 531-4039 • E-MAIL: jullion@rickseymourlaw.net

March 18, 2008

**By E-Mail and Mail**

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

  Re: **Graves v. Deutsche Bank: Defendant's Demand that
  Allegations Of a Fraudulent Response to the EEOC Be Withdrawn**

Dear Cliff and Joanne:

   This letter is in response to March 12 letter demanding that plaintiff withdraw the Complaint's allegations that defendant made a false filing to the EEOC, based on an August 2004 Sample Banker Report created or "Last Updated" after the filing of plaintiff's July 2004 EEOC charge, on the ground that this post-charge document is similar to the allegedly false filing three months later.

   To reiterate, plaintiff (1) proposed to defendant on June 1 that plaintiff send defendant a draft of the Complaint prior to its filing, with an offer to withdraw any draft allegation if defendant would produce documents and information showing that it was not well-taken; (2) sent defendant a copy of the draft Complaint on June 7, shortly before it had to be filed, explaining that the filing deadline was driven by the ninety-day suit-filing period after receipt of a Notice of Right to Sue issued by the EEOC, (3) repeated plaintiff's offer to withdraw any draft allegation if defendant would produce documents and information showing that it was not well-taken, and (4) offered to delay the filing to give defendant more time to consider the matter and produce such documents and information, if defendant would simply stipulate to toll the suit-filing period for a week. Defendant was not interested.

   Plaintiff's offer to withdraw any allegation, if defendant would produce documents and information showing that it was not well-taken, was once again repeated in my June 26 letter. Let me repeat it again here.

   It is not proper to accuse plaintiff of having known along that our allegations of a false filing were incorrect, where all of the information available to plaintiff supports the

accuracy of the allegations and defendant has rejected numerous offers to show plaintiff real information bearing on the allegations, with the promise that the allegations would be withdrawn if we are shown that they have no merit.

The defendant's slow and partial response to discovery has not produced any documents that would even be probative of the issue whether defendant presented plaintiff in a false light to the EEOC as alleged.

Plaintiff has sought information on the proposed transactions at issue. Such information would show whether the identical values for different transactions with different levels of probability, in defendant's submission to the EEOC, have an innocent explanation. Defendant has objected and refused to produce the information.

One concrete example may help defendant understand our point. Paragraph 100(c) of the Complaint refers to the "Sinclair Broadcast - interest rate swap (4Q 2003) (D034325)" deal described as "Derivatives-Interest Rate," and credited to Blair Faulstich for the 2004 Franchise Pipeline, as having been valued at € 3,930,000 in Exhibit F to defendant's Position Statement to the EEOC. The November 2003 pipeline information produced to plaintiff on Feb. 21, 2008, shows that this potential transaction was added to the pipeline for November 2003 with a value of only € 473,000. DB 000790, 000797. By the December 2003 pipeline information, the value had been reduced by a third, to only € 327,000 for the 2003 franchise pipeline. One month later, its value as represented to the EEOC was more than 12 times higher.

Plaintiff has also sought information on defendant's comparisons among bankers for purposes of compensation and personnel decisions. Such information would show whether in this context defendant chose among bankers for favorable or unfavorable employment-related decisions based on multiply-counted transactions, as defendant represented to the EEOC that it did in connection with plaintiff's termination. Defendant has objected and refused to produce the information.

Defendant's unwillingness to produce information that would be probative of these allegations has reinforced our belief that the allegations are correct.

It is not relevant that defendant used identical transaction values for different transactions with different levels of probability, or that defendant multiply-counted and multiply-credited transactions, where defendant was not choosing among bankers for favorable or unfavorable treatment. A company can put whatever it wants in isolated sample reports or isolated internal reports, without necessarily paying any attention to it in choosing among bankers for favorable or unfavorable employment-related treatment.

With this explanation, I am sure you can understand our inability to draw any conclusions as to defendant's practices from the partial information defendant has

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
March 18, 2008
Page 3 of 3 —

produced to date.

Very truly yours,

Richard T. Seymour

Cc: Jonathan Rogin, Esq.