**Response:**

DBSI objects to Request No. 67(b) to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have reflecting meetings or telephonic communications Plaintiff had with James DeNaut in January 2004.

**Document Request No. 67(c):**

A copy of all documents containing information about any meetings or telephonic communications (including but not limited to voice-mail messages he left) plaintiff had in January 2004 with any of the following, or that any of the following had with each other concerning the plaintiff:

c.    Jacques Brand;

**Response:**

DBSI objects to Request No. 67(c) to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have reflecting meetings or telephonic communications Plaintiff had with Jacques Brand in January 2004.

**Document Request No. 67(d):**

A copy of all documents containing information about any meetings or telephonic communications (including but not limited to voice-mail messages he left) plaintiff had in January 2004 with any of the following, or that any of the following had with each other concerning the plaintiff:

d.     Richard Byrne, or any members of his staff;

**Response:**

DBSI objects to Request No. 67(d) to the extent it is vague, ambiguous, overly broad,

unduly burdensome, calls for the production of numerous documents which have no bearing on

Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Document Request No. 67(e):**

A copy of all documents containing information about any meetings or telephonic
communications (including but not limited to voice-mail messages he left) plaintiff had in
January 2004 with any of the following, or that any of the following had with each other
concerning the plaintiff:

e.     Thomas Gahan;

**Response:**

DBSI objects to Request No. 67(e) to the extent it is vague, ambiguous, overly broad,

unduly burdensome, calls for the production of numerous documents which have no bearing on

Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Document Request No. 67(f):**

A copy of all documents containing information about any meetings or telephonic
communications (including but not limited to voice-mail messages he left) plaintiff had in
January 2004 with any of the following, or that any of the following had with each other
concerning the plaintiff:

f.     Mark Pfeffer;

**Response:**

DBSI objects to Request No. 67(f) to the extent it is vague, ambiguous, overly broad,

unduly burdensome, calls for the production of numerous documents which have no bearing on

Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Document Request No. 67(g):**

A copy of all documents containing information about any meetings or telephonic communications (including but not limited to voice-mail messages he left) plaintiff had in January 2004 with any of the following, or that any of the following had with each other concerning the plaintiff:

g.    Drew Marcus;

**Response:**

DBSI objects to Request No. 67(g) to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

**Document Request No. 67(h):**

A copy of all documents containing information about any meetings or telephonic communications (including but not limited to voice-mail messages he left) plaintiff had in January 2004 with any of the following, or that any of the following had with each other concerning the plaintiff:

h.    Christopher Johnson.

**Response:**

DBSI objects to Request No. 67(h) to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive documents, if any, it may have reflecting meetings or telephonic communications Plaintiff had with Christopher Johnson in January 2004.

**Document Request No. 68:**

A copy of all documents containing information about DBSI's or any of its managers' or employees' formal or informal communications or references on or after January 14, 2004, with any company providing investment banking services or employing investment bankers, with respect to plaintiff's employment with DBSI, the termination of plaintiff's employment, any

reference he made to any manager about age discrimination in January 2004 or before, his EEOC charge of age discrimination, his performance as an employee, any statement as to whether he might make a good employee for such company, his reference(s) to age discrimination, or his claim of age discrimination.

**Response:**

DBSI objects to Request No. 68 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, Request No. 68 would require DBSI to search for a voluminous amount of documents from individuals who have no bearing on Plaintiff's claims and is, therefore, burdensome and harassing. Moreover, Plaintiff has set forth no claim in his Complaint referring to the making of references by DBSI to any company.

**Document Request No. 69:**

A copy of all documents containing information showing whether DBSI is aware of any reason why plaintiff should not be reinstated in the event that he prevails in this lawsuit as to his termination.

**Response:**

DBSI objects to Request No. 69 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, the phrase "should not be reinstated" is so imprecise that it could refer to performance, staffing or other issues that have no bearing on Plaintiff's claims in this matter. DBSI further objects to Document Request No. 69 on the ground that it assumes the existence of facts or circumstances that do not or did not exist.

## 18. **Other Complaints**

**Document Request No. 70(a):**

A copy of all documents containing information about internal or external, formal or informal, complaints by any current or former banker (including plaintiff), and the merits and resolution of such complaints, about:

a.    allocation or re-allocation of clients;

**Response:**

DBSI objects to Request No. 70(a) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, argumentative, and calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  For example, complaints relating to any employees other than the Directors and MDs in the Media Group during the relevant period and relating to discrimination complaints other than age discrimination are not relevant to Plaintiff's claims in this action.  Moreover, DBSI objects to Request No. 70(a) because disclosure of such information would invade the privacy interests of current or former employees of Defendant who are not parties to this action. DBSI further objects to Request No. 70(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have, reflecting Plaintiff's complaints regarding the allocation of clients.

**Document Request No. 70(b):**

A copy of all documents containing information about internal or external, formal or informal, complaints by any current or former banker (including plaintiff), and the merits and resolution of such complaints, about:

b.      the amount of a bonus or denial of a bonus;

**Response:**

DBSI objects to Request No. 70(b) on the grounds it is vague, ambiguous, overly broad,

unduly burdensome, argumentative, and calls for the production of numerous documents which

have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant

information.  For example, complaints relating to any employees other than the Directors and

MDs in the Media Group during the relevant period and relating to discrimination complaints

other than age discrimination are not relevant to Plaintiff's claims in this action.  Moreover,

DBSI objects to Request No. 70(b) because disclosure of such information would invade the

privacy interests of current or former employees of Defendant who are not parties to this action.

DBSI further objects to Request No. 70(b) to the extent it seeks documents or information that

are subject to any claim of privilege, including, without limitation, the attorney-client privilege,

the attorney work-product doctrine or any other applicable privilege recognized under federal,

state, local or common law.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI

responds: DBSI will produce non-privileged, responsive documents, if any, it may have,

reflecting Plaintiff's complaints regarding the denial of a bonus.

**Document Request No. 70(c):**

A copy of all documents containing information about internal or external, formal or
informal, complaints by any current or former banker (including plaintiff), and the merits and
resolution of such complaints, about:

c.      termination;

**Response:**

DBSI objects to Request No. 70(c) on the grounds it is vague, ambiguous, overly broad,

unduly burdensome, argumentative, and calls for the production of numerous documents which

have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, complaints relating to any employees other than the Directors and MDs in the Media Group during the relevant period and relating to discrimination complaints other than age discrimination are not relevant to Plaintiff's claims in this action. Moreover, DBSI objects to Request No. 70(c) because disclosure of such information would invade the privacy interests of current or former employees of Defendant who are not parties to this action. DBSI further objects to Request No. 70(c) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have, reflecting Plaintiff's complaints regarding his termination.

### Document Request No. 70(d):

A copy of all documents containing information about internal or external, formal or informal, complaints by any current or former banker (including plaintiff), and the merits and resolution of such complaints, about:

d.    employment discrimination.

### Response:

DBSI objects to Request No. 70(d) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, argumentative, and calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, complaints relating to any employees other than the Directors and MDs in the Media Group during the relevant period and relating to discrimination complaints other than age discrimination are not relevant to Plaintiff's claims in this action. Moreover,

81

DBSI objects to Request No. 70(d) because disclosure of such information would invade the privacy interests of current or former employees of Defendant who are not parties to this action. DBSI further objects to Request No. 70(d) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have, reflecting to Plaintiff's complaints regarding age discrimination.

**Document Request No. 71:**

A copy of all documents containing information about any statement of any banker referring in any way to age discrimination, or being treated less favorably than younger employees, or statements by managers or supervisors referring to the age of any banker.

**Response:**

DBSI objects to Request No. 71 on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, argumentative, and calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, complaints relating to any employees other than the Directors and MDs in the Media Group during the relevant period and relating to discrimination complaints other than age discrimination are not relevant to Plaintiff's claims in this action. Moreover, DBSI objects to Request No. 71 because disclosure of such information would invade the privacy interests of current or former employees of Defendant who are not parties to this action. DBSI further objects to Request No. 71 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the

attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

## 19.  DBSI's Position Statement to the EEOC

### a.  The Text of the Position Statement

**Document Request No. 72:**

A copy of all documents containing information bearing on the question whether plaintiff's accounts were ever transferred or reassigned.  See the Position Statement, pp. 1, 4.

**Response:**

DBSI objects to Request No. 72 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating to the transfer or reassignment of any of Plaintiff's accounts.

**Document Request No. 73:**

A copy of all documents containing information bearing on the question whether plaintiff "specialized in television broadcasting."  See the Position Statement, p. 2.

**Response:**

DBSI objects to Request No. 73 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  DBSI further objects to this Request on the grounds that it seeks documents not in DBSI's possession or control.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI

responds: <u>See</u> documents attached hereto. DBSI will produce additional non-privileged,

responsive documents, if any, it may have relating to Plaintiff's areas of specialization.

**<u>Document Request No. 74</u>:**

A copy of all documents containing information bearing on the question whether DBSI's
choice of whom to lay off was restricted to plaintiff and Gregory Paul. See the Position
Statement, pp. 2, 4 and 8.

**<u>Response</u>:**

DBSI objects to Request No. 74 to the extent it seeks documents or information that are

subject to any claim of privilege, including, without limitation, the attorney-client privilege, the

attorney work-product doctrine or any other applicable privilege recognized under federal, state,

local or common law. DBSI further objects to Request No. 74 on the grounds that it misstates

the information contained in the Position Statement.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI

responds: DBSI will produce non-privileged, responsive documents, if any, it may have, relating

to the decision to terminate Plaintiff's employment.

**<u>Document Request No. 75</u>:**

A copy of all documents containing information on other layoffs of Media Bankers or
bankers in the Media Investment Banking Group from March 31, 1999, to the present, showing
the name, age, work assignment, unit, seniority, and date of layoff of each person laid off and,
separately for each such person, the name, age, work assignment, unit, and seniority of each
person considered for that layoff but retained.

**<u>Response</u>:**

DBSI objects to Request No. 75 on the grounds it is vague, ambiguous, overly broad,

unduly burdensome, argumentative, and calls for the production of numerous documents which

have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant

information. Moreover, DBSI objects to Request No. 75 because disclosure of such information

would invade the privacy interests of current or former employees of Defendant who are not parties to this action. DBSI further objects to Request No. 75 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.

**Document Request No. 76:**

A copy of all documents containing information bearing on the question whether DBSI's choice of whom to lay off was restricted to Managing Directors. See the Position Statement, p. 2.

**Response:**

See DBSI's Response to Request No. 74.

**Document Request No. 77:**

A copy of all documents containing information bearing on the question whether plaintiff had had experience outside of television. See the Position Statement, p. 2.

**Response:**

DBSI objects to Request No. 77 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. DBSI further objects to Request No. 77 because it is duplicative of Request No. 73.

See DBSI's Response to Request No. 73.

**Document Request No. 78:**

A copy of all documents containing information bearing on the question whether plaintiff "focused primarily on television." See the Position Statement, p. 2.

**Response:**

DBSI objects to Request No. 78 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  DBSI further objects to Request No. 78 because it is duplicative of Request Nos. 73 and 77.

See DBSI's Responses to Request Nos. 73 and 77.

**Document Request No. 79:**

A copy of all documents containing information bearing on the question whether plaintiff lacked "cinema background."  See the Position Statement, pp. 2 and 8.

**Response:**

See DBSI's Response to Request No. 73.

**Document Request No. 80:**

A copy of all documents containing information bearing on the question whether any Media Banker other than plaintiff had a "soft financial 2003."  See the Position Statement, pp. 3-4.

**Response:**

DBSI objects to Request No. 80 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  DBSI further objects to Request No. 80 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  For example, information related to employees other than Directors and MDs in the Media Group during the relevant period is not relevant to Plaintiff's claims.  Additionally, DBSI

objects to Request No. 80 because disclosure of such information would invade the privacy interests of current or former employees of DBSI who are not parties to this action.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the franchise revenues of MDs and Directors in the Media Group for 2003.

**Document Request No. 81:**

Separately for each Director or Managing Director who was a Media Banker, a copy of all documents containing information about the transactions, potential transactions, clients, type of clients, Franchise Revenue Pipelines, Franchise Revenues, and SIB designations for the period from March 31, 1999, to March 31, 2005.

**Response:**

DBSI objects to Request No. 81 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. Additionally, DBSI objects to Request No. 81 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 81 because it is duplicative of Request Nos. 30, 31, 32, 33 and 34.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds: See Responses to Request Nos. 30, 31, and 32.

**Document Request No. 82:**

A copy of every policy about the classification of bankers into any specific "space," within the meaning of the Position Statement's use of the word "space."

**Response:**

DBSI objects to Request No. 82 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. DBSI further objects to Request No. 82 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example, policies in effect at any time other than the relevant period and which were not applicable to the Media Group are not relevant to Plaintiff's claims in this action.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce policies, if any, it may have relating to the assignment of MDs and Directors in the Media Group to clients and industries during the relevant period.

**Document Request No. 83:**

Separately for each Media Banker, a copy of all documents containing information about any specific "space" in which the banker was classified, within the meaning of the Position Statement's use of the word "space" on pp. 4 and 6.

**Response:**

DBSI objects to Request No. 83 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. For example, information relating to individuals other than MDs and Directors in the Media Group during the relevant period are not relevant to Plaintiff's claims in this action. DBSI further objects to Request No. 83 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.

88

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have reflecting the allocation of clients and transactions to MDs and Directors in the Media Group during the relevant period.

**Document Request No. 84:**

Separately for each Media Banker, a copy of all documents containing information about whether he or she duplicated with any other such Media Banker or banker for any specific "space" in which the banker was classified, within the meaning of the Position Statement's use of the words "space" and "duplication" on pp. 4 and 6.

**Response:**

See DBSI's Response to Request No. 83.

**Document Request No. 85:**

Separately for each Media Banker, a copy of all documents containing information about whether he or she met his or her Franchise Revenue targets in 2002.

**Response:**

See DBSI's Responses to Request Nos. 30, 31, and 32.

**Document Request No. 86:**

Separately for each Media Banker, a copy of all documents containing information about whether he or she met his or her 2003 Franchise Revenue Pipeline target as of January 2003.

**Response:**

See DBSI's Responses to Request Nos. 30, 31, and 32.

**Document Request No. 87:**

Separately for each Media Banker, a copy of all documents containing information about whether he or she met his or her Franchise Revenue targets in 2003.

**Response:**

See DBSI's Responses to Request Nos. 30, 31, and 32.

**Document Request No. 88:**

Separately for each Media banker, a copy of all documents containing information about whether he or she met his or her 2004 Franchise Revenue Pipeline target as of January 2004.

**Response:**

See DBSI's Responses to Request Nos. 30, 31, and 32.

**Document Request No. 89:**

A copy of all documents containing information bearing on the question whether any Media Bankers were hired, promoted, fired, transferred into any unit employing Media Bankers, or transferred out of any of these units, or transferred between any of these units, from January 1, 2003, to the present. See the Position Statement at p. 6.

**Response:**

See DBSI's Response to Request No. 9.

**Document Request No. 90:**

A copy of all documents containing information bearing on the revenues produced by the Adelphia client from January 1, 2003 to the present. See the Position Statement, p. 9.

**Response:**

DBSI objects to Request No. 90 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 90 on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example information bearing on the revenues produced by the Adelphia client outside of the Media Group and outside of the relevant period is not relevant to Plaintiff's claims in this action. DBSI further objects to Request No. 90 to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 90 because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have that reflect the revenues of deals by MDs and Directors in the Media Group for the Adelphia client for the relevant period.

**Document Request No. 91:**

A copy of all documents containing information bearing on the question whether, from January 1, 2002, to the present, DBSI considered Adelphia to be a valuable client, and how valuable DBSI considered Adelphia to be as a client. See the Position Statement, p. 9.

**Response:**

See DBSI's Response to Request No. 90.

**Document Request No. 92:**

A copy of all documents containing information bearing on the revenues produced by the Charter Communications client from January 1, 2003 to the present. See the Position Statement, p. 9.

**Response:**

DBSI objects to Request No. 92 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 92 on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example information bearing on the revenues produced by the Charter Communications client outside of the Media Group and outside of the relevant period is not relevant to Plaintiff's claims in this action. DBSI further objects to Request No. 92 to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 92 because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have that reflect the revenues of deals by MDs and Directors in the Media Group for the Charter Communications client for the relevant period.

**Document Request No. 93:**

A copy of all documents containing information bearing on the question whether, from January 1, 2002, to the present, DBSI considered Charter Communications to be a valuable client, and how valuable DBSI considered Charter Communications to be as a client. See the Position Statement, p. 9.

**Response:**

See DBSI's Response to Request No. 92.

**Document Request No. 94:**

A copy of all documents containing information bearing on the revenues produced by the Tribune Co. client from January 1, 2003 to the present. See the Position Statement, pp. 5-6.

**Response:**

DBSI objects to Request No. 94 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 94 on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example information bearing on the revenues produced by the Tribune Company client outside of the Media Group and outside of the relevant period is not relevant to Plaintiff's claims in this action. DBSI further objects to Request No. 94 to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 94 because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have that reflect the revenues of deals by MDs and Directors in the Media Group for the Tribune Company client for the relevant period.

**Document Request No. 95:**

A copy of all documents containing information bearing on the question whether, from January 1, 2002, to the present, DBSI considered the Tribune Co. to be a valuable client, and how valuable DBSI considered Tribune Co. to be as a client. See the Position Statement, pp. 5-6.

    **Response:**

See DBSI's Response to Request No. 94.

**Document Request No. 96:**

A copy of all documents containing information bearing on the revenues produced by the Salem Communications client from January 1, 2003 to the present. See the Position Statement, pp. 5-6.

    **Response:**

DBSI objects to Request No. 96 to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 96 on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. For example information bearing on the revenues produced by the Salem Communications client outside of the Media Group and outside of the relevant period is not relevant to Plaintiff's claims in this action. DBSI further objects to Request No. 96 to the extent

it is duplicative of Request No. 30.  Moreover, DBSI objects to Request No. 96 because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive documents, if any, that reflect the revenues of deals by MDs and Directors in the Media Group for the Salem Communications client for the relevant period.

**Document Request No. 97:**

A copy of all documents containing information bearing on the question whether from January 1, 2002, to the present, DBSI considered Salem Communications to be a valuable client, and how valuable DBSI considered Salem Communications to be as a client.  See the Position Statement, pp. 5-6.

**Response:**

See DBSI's Response to Request No. 96.

**b. Attachment C to the Position Statement**

**Document Request No. 98(a):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 2,837,000 Euros each, with identical probabilities of zero that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

a.     the "Citadel Broadcasting – IPO (D023066)" deal described as "Equity-IPO" and credited to both Jeffrey Amling and Charles Carey with a probability of zero;

**Response:**

DBSI objects to Request No. 98(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  In addition, DBSI objects to Request No. 98(a) on the grounds it is

vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 98(a) to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 98(a) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Citadel Broadcasting – IPO (D023066) deal.

**Document Request No. 98(b):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 2,837,000 Euros each, with identical probabilities of zero that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      b.    the "Sinclair Broadcasting – bank financing (3Q 02) (D021892)" deal described as "Senior Bank Debt," and credited to both Jeffrey Amling and Charles Carey with a probability of zero; and

**Response:**

DBSI objects to Request No. 98(b) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 98(b) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 98(b) to the extent it is duplicative

95

of Request No. 30.  Moreover, DBSI objects to Request No. 98(b) because it seeks disclosure of

confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI

responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating

to the Media Group's Revenue for the Sinclair Broadcasting – bank financing (3Q 02)

(D021892) deal.

**Document Request No. 98(c):**

A copy of all documents containing information about the following potential
transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003
Franchise Pipeline values of 2,837,000 Euros each, with identical probabilities of zero that
revenues would be received in 2003, including but not limited to the valuation of the 2003
Franchise Revenues Pipeline for each potential transaction, the dates of changes in that
valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such
receipts:

        c.    the "Young Broadcasting – general advisory (Kron Station) D025304),"
           deal described as "Divestiture Advisory" and credited to Gregory Paul
           with a probability of zero.

**Response:**

DBSI objects to Request No. 98(c) to the extent it seeks documents or information that

are subject to any claim of privilege, including, without limitation, the attorney-client privilege,

the attorney work-product doctrine or any other applicable privilege recognized under federal,

state, local or common law.  In addition, DBSI objects to Request No. 98(c) on the grounds it is

vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous

documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery

of relevant information.  DBSI further objects to Request No. 98(c) to the extent it is duplicative

of Request No. 30.  Moreover, DBSI objects to Request No. 98(c) because it seeks disclosure of

confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Young Broadcasting – general advisory (Kron Station) (D025304) deal.

**Document Request No. 99(a):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 3,310,000 Euros each, with identical 25% probabilities that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenue Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received fro each, and the dates of such receipts:

        a.   the "DirecTV USA – bridge financing (4Q 02) (D020076)" deal described as "Bonds-Corporate High Yield," and credited to Jeffrey Amling; and

**Response:**

DBSI objects to Request No. 99(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 99(a) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 99(a) to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 99(a) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the DirecTV USA – bridge financing (4Q 02) (D020076) deal.

**Document Request No. 99(b):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 3,310,000 Euros each, with identical 25% probabilities that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenue Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received fro each, and the dates of such receipts:

    b. The "Emmis Communications – acq of Fisher Communications (D027038)" deal described as "Acquisition Advisory," and credited to Jeffrey Amling.

**Response:**

DBSI objects to Request No. 99(b) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  In addition, DBSI objects to Request No. 99(b) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  DBSI further objects to Request No. 99(b) to the extent it is duplicative of Request No. 30.  Moreover, DBSI objects to Request No. 99(b) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Emmis Communications – acq of Fisher Communications (D027038) deal.

**Document Request No. 100(a):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 9,547,000 Euros each, with identical 25% probabilities that revenues would be received in 2003, including but not limited to the valuation of the 2003

Franchise Revenue Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      a.    the "AOL Time Warner – convertible offering (3Q 02) (D024044)" deal described as "Equity-Convertible Bonds," with a stated zero probability of occurring in 2003, and credited to J.L. Malcolm Morris for the 2003 Franchise Pipeline;

**Response:**

DBSI objects to Request No. 100(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 100(a) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 100(a) to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 100(a) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the AOL Time Warner – convertible offering (3Q 02) (D024044) deal.

**Document Request No. 100(b):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 9,547,000 Euros each, with identical 25% probabilities that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenue Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

   b.    the "Vivendi Universal – disposal of US stakes (D025431)" deal described as "Block Trade," with a stated 25% probability of occurring in 2003, and credited to Dyan Triffo for the 2003 Franchise Pipeline; and

**Response:**

DBSI objects to Request No. 100(b) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law.  In addition, DBSI objects to Request No. 100(b) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  DBSI further objects to Request No. 100(b) to the extent it is duplicative of Request No. 30.  Moreover, DBSI objects to Request No. 100(b) because it seeks disclosure of confidential and proprietary business information.  DBSI further objects to Request No. 100(b) because it assumes the existence of facts and circumstances that did not or do not exist.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Vivendi Universal – disposal of US stakes (D025431) deal.

**Document Request No. 100(c):**

A copy of all documents containing information about the following potential transactions referenced in Attachment C to DBSI's Position Statement as having identical 2003 Franchise Pipeline values of 9,547,000 Euros each, with identical 25% probabilities that revenues would be received in 2003, including but not limited to the valuation of the 2003 Franchise Revenue Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

100

    c.    the Vivendi Universal – disposal of US stakes (D025431)" deal described as "Divestiture Advisory," with a stated zero probability of occurring in 2003, and credited to Dyan Triffo for the 2003 Franchise Pipeline.

**Response:**

DBSI objects to Request No. 100(c) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 100(c) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. DBSI further objects to Request No. 100(c) to the extent it is duplicative of Request No. 30. Moreover, DBSI objects to Request No. 100(c) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Vivendi Universal – disposal of US stakes (D025431) deal.

### c. Attachment F to the Position Statement

**Document Request No. 101:**

A copy of all documents containing information about the "Salem Communications secondary offering (3Q 02) (D024428)" transaction referenced on pp. 2 and 3 of Attachment F to DBSI's Position Statement, including but not limited to the valuation of the Franchise Revenues pipeline and dates of changes in that valuation.

**Response:**

See DBSI's Response to Request No. 96.

**Document Request No. 102(a):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 3,930,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      a.     the "AOL – monetisation of Time Warner Telecom stake (D034002)" deal described as an "Equity Follow-On," and credited to both Elizabeth Chang and JL Malcolm Morris for the 2004 Franchise Pipeline;

**Response:**

DBSI objects to Request No. 102(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 102(a) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Moreover, DBSI objects to Request No. 102(a) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the AOL – monetisation of Time Warner Telecom stake (D034002) deal.

**Document Request No. 102(b):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 3,930,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

b.  the "Kim Magnes Estate – divestiture advisory (D033651)" deal described as "divestiture Advisory," and credited to Jeffrey Amling for the 2004 Franchise Pipeline;

**Response:**

DBSI objects to Request No. 102(b) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 102(b) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Moreover, DBSI objects to Request No. 102(b) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, relating to Media Group's Revenue for the Kim Magnes Estate – divestiture advisory (D033651) deal.

**Document Request No. 102(c):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 3,930,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

c.  the 'Sinclair Broadcast – interest rate swap (4Q 2003) (D034325)" deal described as "Derivatives-Interest Rate," and credited to Blair Faulstich for the 2004 Franchise Pipeline:

**Response:**

DBSI objects to Request No. 102(c) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege,

the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 102(c) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Moreover, DBSI objects to Request No. 102(c) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Sinclair Broadcast – interest rate swap (4Q 2003) (D034325) deal.

**Document Request No. 102(d):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 3,930,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      d.    the "BusinessWire – general advisory (D005685)" deal described as "Divestiture Advisory," and credited to Dyan Triffo for the 2004 Franchise Pipeline; and

**Response:**

DBSI objects to Request No. 102(d) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 102(d) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery

of relevant information.  Moreover, DBSI objects to Request No. 102(d) because it seeks

disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI

responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating

to the Media Group's Revenue for the BusinessWire – general advisory (D005685) deal.

**Document Request No. 102(e):**

A copy of all documents containing information about the following potential
transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004
Franchise Pipeline values of 3,930,000 Euros each, including but not limited to the valuation of
the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that
valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such
receipts:

  e.    the "Google – IPO (D031830)" deal described as "Equity-IPO," and
        credited to Zach Maurus for the 2004 Franchise Pipeline.

**Response:**

DBSI objects to Request No. 102(e) to the extent it seeks documents or information that

are subject to any claim of privilege, including, without limitation, the attorney-client privilege,

the attorney work-product doctrine or any other applicable privilege recognized under federal,

state, local or common law.  In addition, DBSI objects to Request No. 102(e) on the grounds it is

vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous

documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery

of relevant information.  Moreover, DBSI objects to Request No. 102(e) because it seeks

disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI

responds:  DBSI will produce non-privileged, responsive documents, if any, it may have relating

to the Media Group's Revenue for the Google – IPO (D031830) deal.

**Document Request No. 103(a):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 786,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      a.    the "Arturo Moreno – advisory for Anaheim Angels (D030970)" deal described as "Acquisition Advisory," with a 100% probability of occurring in 2004, and credited to Charles Carey for the 2004 Franchise Pipeline; and

**Response:**

DBSI objects to Request No. 103(a) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 103(a) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Moreover, DBSI objects to Request No. 103(a) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Arturo Moreno – advisory for Anaheim Angels (D030970) deal.

**Document Request No. 103(b):**

A copy of all documents containing information about the following potential transactions referenced in Attachment F to DBSI's Position Statement as having identical 2004 Franchise Pipeline values of 786,000 Euros each, including but not limited to the valuation of the 2004 Franchise Revenues Pipeline for each potential transaction, the dates of changes in that

valuation, the ultimate Franchise Revenue amounts received for each, and the dates of such receipts:

      b.    the "Thomson – c/b general advisory (Project Hollywood – 2004) Hollywood2 (D032395)" deal described as "Acquisition Advisory," with a zero probability of occurring in 2004 and credited to Sun Yung for the 2004 Franchise Pipeline.

**Response:**

DBSI objects to Request No. 103(b) to the extent it seeks documents or information that are subject to any claim of privilege, including, without limitation, the attorney-client privilege, the attorney work-product doctrine or any other applicable privilege recognized under federal, state, local or common law. In addition, DBSI objects to Request No. 103(b) on the grounds it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information. Moreover, DBSI objects to Request No. 103(b) because it seeks disclosure of confidential and proprietary business information.

Without waiving the foregoing objection, and to the extent not objected to therein, DBSI responds: DBSI will produce non-privileged, responsive documents, if any, it may have relating to the Media Group's Revenue for the Thomson – c/b general advisory (Project Hollywood – 2004) Hollywood2 (D032395) deal.

### 20. Document Retention Policies

**Document Request No. 104:**

A copy of every policy containing information about DBSI's policies on or after March 31, 1999, with respect to the retention or destruction of any types of documents involving present or former employees.

**Response:**

DBSI objects to Request No. 104 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on

Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  For example, policies in effect at any time other than the relevant period and which were not applicable to the Media Group are not relevant to Plaintiff's claims in this action.

Without waiving the foregoing objections, and to the extent not objected to therein, DBSI responds:  DBSI will produce non-privileged, responsive, documents, if any, reflecting document retention and destruction of personnel documents applicable to the Media Group during the relevant period.

**Document Request No. 105:**

A copy of all documents on or after March 31, 1999, containing information about DBSI's managers' and supervisors' knowledge of, and compliance with, DBSI's policies with respect to the retention or destruction of any types of documents involving present or former employees, with respect to the Media Investment Banking Group.

**Response:**

DBSI objects to Request No. 105 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  DBSI further objects to Request No. 105 to the extent it seeks information regarding confidential communications between attorney and client or materials prepared by counsel or on counsel's behalf in anticipation of litigation, which contain the mental impressions, legal theories or conclusions of DBSI's counsel on the grounds that said information is protected from disclosure by the attorney-client privilege, the work-product privilege, or by any other privilege recognized by statute, at common law or by the Federal Rules of Civil Procedure or the Local Rules of this Court.

## 21.  **The Litigation Hold**

**Document Request No. 106:**

A copy of all documents containing information about the date, terms, and persons notified, of any litigation hold in connection with plaintiff.

### **Objection to Document Request No. 106:**

DBSI objects to Request No. 106 to the extent it is vague, ambiguous, overly broad, unduly burdensome, calls for the production of numerous documents which have no bearing on Plaintiff's claims, and is not likely to lead to the discovery of relevant information.  DBSI further objects to Request No. 106 to the extent it seeks information regarding confidential communications between attorney and client or materials prepared by counsel or on counsel's behalf in anticipation of litigation, which contain the mental impressions, legal theories or conclusions of DBSI's counsel on the grounds that said information is protected from disclosure by the attorney-client privilege, the work-product privilege, or by any other privilege recognized by statute, at common law or by the Federal Rules of Civil Procedure or the Local Rules of this Court.

Dated: New York, New York
       December 10, 2007

                              SIDLEY AUSTIN LLP

                              By:

                              Cliff Fonstein
                              Joanne Seltzer
                              787 Seventh Avenue
                              New York, New York 10019
                              (212) 839-5300

                              Attorneys for Defendant
                              Deutsche Bank Securities Inc.

## CERTIFICATE OF SERVICE

I, Joanne Seltzer, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on December 10, 2007, I caused a true and correct copy of DBSI's Responses to Plaintiff's First Set of Discovery Requests to be served by Federal Express overnight delivery upon the following:

> Richard T. Seymour
> Law Office of Richard T. Seymour, PLLC
> 1150 Connecticut Avenue, NW, Suite 900
> Washington, D.C. 20036-4129
>
> Steven A. Berger
> Berger & Webb, LLP
> 1633 Broadway, 46th Floor
> New York, New York 10019

_____
Joanne Seltzer

NY1 6450180v.1