UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DANIEL B. GRAVES,

               Plaintiff,

          - against -

DEUTSCHE BANK SECURITIES INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 5471 (BSJ)(KNF)


## MEMORANDUM OF LAW OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED AND SUPPLEMENTAL COMPLAINT


## SIDLEY AUSTIN LLP

ATTORNEYS FOR Defendant
DEUTSCHE BANK SECURITIES INC.

787 SEVENTH AVENUE
NEW YORK, NEW YORK 10019
(212) 839-5300

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL STATEMENT ..................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.    THE COURT SHOULD DENY GRAVES'S MOTION TO AMEND. ............................ 4

   A.    GRAVES'S PROPOSED AMENDMENTS ARE FUTILE ........................................ 5

     1.    The Criminal Fraud Claims are Inadmissible In Graves's Civil Proceeding ........... 5

     2.    Graves's Criminal Fraud Allegations Would Not Withstand a Rule 12(b)(6) Motion ................................................................................................................. 6

       a.    Graves Fails To Sufficiently Plead Materiality or Scienter ................................. 7

       b.    Graves Fails to Plead Reasonable Reliance ....................................................... 10

       c.    Graves Has Not Pled That He Had Any Pecuniary Loss .................................... 12

   B.    GRAVES'S MOTION HAS BEEN BROUGHT IN BAD FAITH ............................ 13

II.   IF THE COURT GRANTS GRAVES'S MOTION, IT SHOULD STRIKE THE CRIMINAL FRAUD ALLEGATIONS AND AWARD DBSI COSTS. ......................... 15

## TABLE OF AUTHORITIES

**CASES**                                                                                           **Page(s)**

Abbatiello v. Monsanto Co., Solutia, Inc.,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007) ...............................................................7, 10

Acito v. Imcera Group,
    47 F.3d 47 (2d Cir. 1995) ...........................................................................5

Alredi Prod., Inc. v. Sandra Carter Prods., Inc.,
    No. 03 Civ. 0790, 2006 U.S. Dist. LEXIS 7120 (S.D.N.Y. Feb. 21, 2006)..............................5

Avent v. Solfaro,
    No. 02 Civ. 0914, 2003 WL 21361730 (S.D.N.Y. June 12, 2003) ...........................................4

Barnhart v. Federated Dep't Stores,
    No. 04 Civ. 3668, 2005 WL 549712 (S.D.N.Y. Mar. 8, 2005) ...............................................11

Carofino v. Forester,
    450 F. Supp. 2d 257 (S.D.N.Y. 2006) .......................................................................12

Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs.
    Fund & Annuity Fund v. Lollo,
    148 F.3d 194 (2d Cir. 1998) .........................................................................10, 11

Chill v. General Electric Co.,
    101 F.3d 263 (2d Cir. 1996) ..........................................................................7

Crigger v. Fahnestock & Co.,
    443 F.3d 230 (2d Cir. 2006) ..........................................................................7

Devlin v. Transp. Communications Int'l Union,
    Nos. 95 Civ. 0742, 10838, 2000 U.S. Dist. LEXIS 2441 (S.D.N.Y. Mar. 6, 2000)..................5

Foman v Davis,
    371 U.S. 178 (1962) ...................................................................................4

G-I Holdings, Inc. v. Baron & Budd,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002) .......................................................................15

Hayden v. Feldman,
    159 F.R.D. 452 (S.D.N.Y. 1995).....................................................................17

Hewlett-Packard Co. v. Factory Mut. Ins. Co.,
    No. 04 Civ. 2791, 2006 WL 1788946 (S.D.N.Y. June 28, 2006) ...........................................17

Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,
   No. 01-2193-JWL, 2002 WL 1822404 (D. Kan. June 13, 2002) ............................................ 11

In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.,
   218 F.R.D. 76 (S.D.N.Y. 2003) .................................................................................. 15, 16-17

In re Worldcom, Inc. Secs. Litig.,
   308 F. Supp. 2d 214 (S.D.N.Y. 2004) .......................................................................... 13

Kent v. AVCO Corp.,
   815 F. Supp. 67 (D. Conn. 1992) ................................................................................ 16

Kulas v. Adachi,
   No. 96 Civ. 6674, 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 12, 1997) ............................ 12

Kungys v. U.S.,
   485 U.S. 759 (1988) .......................................................................................................... 9

Kuntz v. N.Y.S. Bd. of Elections, 924 F. Supp. 364, 366 (N.D.N.Y. 1996) ................................ 15

Lama Holding Co. v. Smith Barney Inc.,
   88 N.Y.2d 413 (N.Y. 1996) .................................................................................... 12, 16

Ledford v. Rapid-Am. Corp.,
   No. 86 Civ. 9116, 1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988) .................................... 17

Lipsky v. Commonwealth United Corp.,
   551 F.2d 887 (2d Cir. 1976) ......................................................................................... 17

Mitchell v. Bendix Corp.,
   603 F. Supp. 920 (N.D. Ill. 1985) ................................................................................ 17

Mitchell v. Keane,
   974 F. Supp. 332 (S.D.N.Y. 1997) ................................................................................. 5

Monter v. Gonzalez,
   430 F.3d 546 (2d Cir. 2005) .......................................................................................... 9

Morris v. Castle Rock Entm't, Inc.,
   246 F. Supp. 2d 290 ...................................................................................................... 11

Morse v. Weingarten,
   777 F. Supp. 312 (S.D.N.Y. 1991) ............................................................................... 16

Pass v. NBC,
   No. 92 Civ. 9266, 1994 U.S. Dist. LEXIS 131 (S.D.N.Y. Jan. 8, 1994) .................................. 6

Ping v. Benihana Nat'l Corp.,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008) ............................................................................ 7

Rackson v. Sosin,
    No. 95 Civ. 1105, 1997 U.S. Dist. LEXIS 20350 (S.D.N.Y. Dec. 18, 1997) ........................15

Rappaport v. Buske,
    No. 98 Civ. 5255, 2000 U.S. Dist. LEXIS 12325 (S.D.N.Y. Aug. 24, 2000).........................12

Smith v. AVSC Int'l., Inc.,
    148 F. Supp. 2d 302 (S.D.N.Y. 2001) ...................................................................................16

Solar Travel Corp. v. Nachtomi,
    No. 00 Civ. 3564, 2001 U.S. Dist. LEXIS 7549 (S.D.N.Y. June 8, 2001).............................12

State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld,
    921 F.2d 409 (2d Cir. 1990) ..................................................................................................13

Tellabs, Inc. v. Makor Issues and Rights, Ltd.,
    127 S. Ct. 2499 (2007).............................................................................................................7

Trepel v. Dippold,
    No. 04 Civ. 8310, 2006 WL 3054336 (S.D.N.Y. Oct. 27, 2006)...........................................11

Truong v. Tran Dihn Truong,
    No. 03 Civ. 3423, 2007 U.S. Dist. LEXIS 10973 (S.D.N.Y. Feb. 5, 2007)..............................5

United Brands Co. Secs. Litig.,
    No. 85 Civ. 5445, 1990 U.S. Dist. LEXIS 1711 (S.D.N.Y. Feb. 16, 1990)...........................15

Vasile v. Dean Witter Reynolds Inc.,
    20 F. Supp. 2d 465 (E.D.N.Y. 1998) .......................................................................................6

Vine v. Beneficial Fin. Co.,
    374 F.2d 627 (2d Cir. 1967) ..................................................................................................13

Williams v. McCausland,
    791 F. Supp. 992 (S.D.N.Y. 1992) ...........................................................................................6

**STATUTES**

18 U.S.C. § 1001 .................................................................................................... *passim*

Fed. R. Civ. P. 15(a) ....................................................................................................4

Fed. R. Evid. 404(b) ....................................................................................................6

Fed. R. Civ. P 12(b).......................................................................................5, 6, 12, 13

Fed. R. Civ. P. 12(f).......................................................................................15, 16, 17

## PRELIMINARY STATEMENT

Defendant Deutsche Bank Securities Inc. ("DBSI") hereby opposes Plaintiff Daniel Graves's motion to file a Second Amended Complaint. In his Amended Complaint, Graves re-packages the allegations that are the focus of DBSI's pending motion for Rule 11 Sanctions, i.e., that DBSI perpetrated a fraud on the EEOC in the submission of its position statement. Graves's motion should be denied because not only are the re-cast fraud allegations insufficient to state a claim under New York law, but their bad-faith inclusion in the Second Amended Complaint threatens to begin a second round of motion practice to remove the offending allegations from the public record. For the reasons set forth below, the Court should deny Graves's Motion to Amend. Alternatively, if the Courts should decide to grant Graves's motion, it should do so on condition that Graves strike the offending paragraphs. In either case, the Court should award DBSI its attorneys' fees and costs incurred in relitigating issues previously briefed.

## FACTUAL STATEMENT

On June 8, 2007, Graves filed a Complaint, alleging age discrimination and retaliation by DBSI, as well as causes of action for fraudulent concealment, breach of the duty of good faith and fair dealing and retaliation under the Fair Labor Standards Act. While Graves did not plead a cause of action for criminal fraud, Paragraphs 14 and 95-124 of the Complaint set forth the allegations that DBSI violated 18 U.S.C. § 1001, a criminal statute punishing false representations to the government, by knowingly falsifying two Franchise Revenue and Pipeline Reports (the "Reports") it submitted to the EEOC in response to Graves's charge of discrimination. Specifically, Graves asserted that DBSI backdated a document and "made up"

figures in that and another document submitted as exhibits to DBSI's position statement. (Complaint, ¶¶ 98-118.).[1]

On July 3, 2007, after Graves refused to withdraw the criminal fraud allegations, DBSI filed a motion to strike those allegations from the Complaint. In its motion to strike, DBSI explained that not only were the allegations blatantly false, but that they also were not in any way relevant to Graves's actual causes of action and, therefore, had no place in the Complaint.[2] (DBSI's Dismissal Brief, pp. 22-23.) This motion is currently pending before the Court.

After DBSI filed its motion to strike, it produced numerous documents to Graves disproving Graves's criminal fraud allegations. Thereafter, on three occasions, DBSI wrote to Graves to highlight certain documents that demonstrated that the offending allegations were baseless and should promptly be withdrawn.[3] When DBSI's year-long effort to convince Graves to withdraw these allegations failed, DBSI served Graves and his counsel with a motion for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure. Twenty-two days after the service of the motion, and after a final call with Graves's counsel to give him one last opportunity to withdraw the fraud claims, DBSI filed the motion for sanctions.

On June 16, 2008, Graves filed his opposition papers to DBSI's sanctions motion. Rather than trying to explain what justification he had for raising and retaining the criminal fraud allegations in the Complaint, Graves asked the Court for permission to file a Second Amended Supplemental Complaint for Damages and Injunctive and Declaratory Relief (the "Amended

---

[1] Graves's fraudulent concealment cause of action is very different from his criminal fraud allegations. It is, at basis, a contractual claim asserting that DBSI allegedly induced Graves to continue working for the Bank in reliance on his receiving his 2003 bonus. (Complaint ¶ 139.)
[2] Relevant pages of Defendant's Memorandum of Law in Support of its Motion for Partial Dismissal of the Complaint and to Strike Portions of the Complaint ("DBSI's Dismissal Brief"), filed on July 3, 2007, are attached to the Fonstein Aff. as Exhibit A.
[3] Details of DBSI's efforts to convince Graves to withdraw his baseless fraud allegations are described in detail in DBSI's Memorandum of Law in Support of its Motion for Sanctions ("DBSI's Sanctions Brief") at pages 4-6. A copy of DBSI's Sanctions Brief is attached for the Court's convenience to the Fonstein Aff. as Exhibit B.

Complaint"). The Amended Complaint purports to correct allegations in the Complaint that "may not be correct" and to reframe other allegations "to conform to the results of discovery to date." (Plaintiff's Memorandum in Support of His Motion to File His Second Amended and Supplemental Complaint (the "Opening Brief"), p. 2.) In fact, the Amended Complaint is nothing more than a subtle shift in Graves's criminal fraud theory. He has abandoned the argument that DBSI created documents out of whole cloth to deceive the EEOC and instead now argues that DBSI intentionally took these documents, albeit genuine, out of context and altered them to deceive the EEOC. (Amended Complaint, ¶¶106-112 & 120-122.) As explained more fully below, these changes are cosmetic; they still accuse DBSI of criminal fraud without basis.

As with the original Complaint, the Amended Complaint does more than merely dispute the legitimate non-discriminatory reasons that DBSI articulated in its position statement to the EEOC. Without any factual basis, it accuses DBSI of lying to the EEOC in order to deceive it, in violation of a criminal statute. Specifically, the Amended Complaint makes the following allegations of criminal fraud:

| Paragraph | Allegation |
|---|---|
| 97 | DBSI represented to the EEOC that Mr. Graves's accounts were never reassigned. |
| 101 | DBSI made a number of material representations to the EEOC that bankers worked in "spaces," that there were only two bankers working in the "TV Broadcasting" space, and that, therefore, the only two bankers who could be considered for layoff were Plaintiff and Gregory Paul. |
| 103 | DBSI represented to the EEOC that Plaintiff was the peer of other Managing Directors and their comparator, even to the extent that seniority was a factor in deciding whom to lay off. |
| 106 | Defendant implicitly represented to the EEOC that it was providing accurate figures that could fairly be used to compare the performance of individual Managing Directors and Directors in the Media Industry Group. |
| 108 | Defendant deleted all pages from its January 15, 2003 franchise reports other than the 100% weighting pages and never provided to the EEOC the pages showing that it weighted the potential transaction by the stated |

| | probability of a deal occurring, or otherwise informed the EEOC of this practice. |
|---|---|
| 113 | Defendant represented to the EEOC that Mr. Paul had experience outside of television broadcasting, or had experience in the cinema industry, and by clear and necessary implication that Mr. Graves did not have experience outside of television broadcasting. |
| 118 | Defendant represented to the EEOC that a number of the accounts it took away from plaintiff had little or no value. |
| 120 | Defendant submitted to the EEOC altered and redacted excerpts from its Franchise Pipeline Reports as the only tool by which the performance and prospects of individual bankers could be compared. |
| 121(c) | Defendant did not provide the EEOC with the actual redacted excerpts of its Franchise Pipeline reports, which do not contain aggregate totals for each banker but provided altered forms of these pages with aggregate totals for each banker. |
| 121(e) | Defendant's failure to include some of plaintiff's clients, achievements and pipelines in these types of documents materially lowered Plaintiff's performance and prospects on these types of documents and put Plaintiff in a falsely poor light. |

In addition, the Amended Complaint asks the Court to declare that "defendant knowingly made false and misleading representations of material fact to the EEOC, for the purpose of attempting to persuade plaintiff and the EEOC that there was no merit in plaintiff's charge of discrimination, and for the purpose of persuading the EEOC not to file suit to enforce plaintiff's rights under the ADEA." (Amended Complaint, p. 56.)

## ARGUMENT

### I. THE COURT SHOULD DENY GRAVES'S MOTION TO AMEND.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given, but only when "justice so requires." Fed. R. Civ. P. 15(a). Leave to amend may be denied for reasons such as: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility. See Avent v. Solfaro, No. 02 Civ. 0914, 2003 WL 21361730, at *2 (S.D.N.Y. June 12, 2003) (citing Foman v Davis, 371 U.S. 178, 182 (1962)) (copies of unpublished decisions are attached hereto as Exhibit A). Here, Graves's motion to

amend should be denied because it would be futile and because it is brought in bad faith to divert the Court's attention from DBSI's motion for sanctions.

### A.    GRAVES'S PROPOSED AMENDMENTS ARE FUTILE

A court should deny a motion for leave to amend a pleading when such leave would be futile. See Acito v. Imcera Group, 47 F.3d 47, 55 (2d Cir. 1995); Truong v. Tran Dihn Truong, No. 03 Civ. 3423, 2007 U.S. Dist. LEXIS 10973, at *37 (S.D.N.Y. Feb. 5, 2007); Alredi Prod., Inc. v. Sandra Carter Prods., Inc., No. 03 Civ. 0790, 2006 U.S. Dist. LEXIS 7120, at *6 (S.D.N.Y. Feb. 21, 2006). An amendment is considered futile if the amended pleading fails to state a claim or would otherwise be subject to a successful Rule 12(b)(6) motion. See Devlin v. Transp. Communications Int'l Union, Nos. 95 Civ. 0742, 10838, 2000 U.S. Dist. LEXIS 2441, at *13 (S.D.N.Y. Mar. 6, 2000); Mitchell v. Keane, 974 F. Supp. 332, 344 (S.D.N.Y. 1997). As explained below, Graves's new criminal fraud allegations, proposed in his Amended Complaint, fail as a matter of law and are, therefore, futile.

#### 1.    The Criminal Fraud Claims are Inadmissible In Graves's Civil Proceeding

As noted above, in his Amended Complaint, Graves alleges that DBSI violated 18 U.S.C. § 1001, a criminal statute prohibiting the falsification, concealment or cover-up of material facts to a branch of the United States government. (Amended Complaint ¶¶ 123-24.) Because Graves cannot bring a claim against DBSI for the alleged fraud committed against the EEOC, and because evidence of such alleged fraud cannot be brought into this case under the Federal Rules of Evidence, the fraud allegations in his Amended Complaint are futile.[4]

---

[4] DBSI's response to Graves's arguments regarding the purported relevance of including the criminal fraud allegations in the Complaint, including his argument that they are relevant to pretext, is set forth in pages 19 through 27 of DBSI's Reply Memorandum in Further Support of its Motion for Partial Dismissal of the Complaint and to Strike Portions of the Complaint, filed with the Court on July 25, 2007.

Section 1001 provides no private right of action, and Graves could not, therefore, bring a claim on behalf of the EEOC under this statute. Pass v. NBC, No. 92 Civ. 9266, 1994 U.S. Dist. LEXIS 131 (S.D.N.Y. Jan. 8, 1994); Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 478 (E.D.N.Y. 1998) (dismissing allegations about false statements to a Department of Defense Investigator because there is no private right of action under 18 U.S.C. § 1001); Williams v. McCausland, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992) (in race discrimination case, dismissing claim as to allegedly false statements made to government agency, because 18 U.S.C. § 1001 provides no private right of action). In Pass v. NBC, after having his claims administratively dismissed by the EEOC, the plaintiff sued his former employer, NBC, alleging race discrimination in violation of Title VII. Pass, 1994 U.S. Dist. LEXIS 131, at *1. In his complaint, the plaintiff added a claim under Section 1001 by alleging that NBC made false statements to the EEOC. Id. at *8-9. The Court dismissed the claim because "[s]ection 1001 of Title 18 does not confer a right of action on private parties." Id. at *9. Like the plaintiff in Pass, Graves has no standing to bring a claim under Section 1001 on behalf of the EEOC.

Moreover, Graves is barred from introducing evidence of a wrong committed by DBSI against the EEOC under Federal Rule of Evidence 404(b) which proscribes the introduction into evidence of other crimes, wrongs or acts to prove the character of a party. Fed. R. Evid. 404(b). Since evidence substantiating DBSI's purported violation of Section 1001 would be inadmissible at Graves's civil trial, all allegations of criminally fraudulent behavior should be struck from the Complaint.

### 2. Graves's Criminal Fraud Allegations Would Not Withstand a Rule 12(b)(6) Motion

In order to state a fraud claim under New York law, a plaintiff is required to allege the following five elements: (1) a material misrepresentation of fact; (2) made by defendant with

6

knowledge of its falsity; (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff. Abbatiello v. Monsanto Co., Solutia, Inc., 522 F. Supp. 2d 524, 533 (S.D.N.Y. 2007) (citing Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006)).

### a.    Graves Fails To Sufficiently Plead Materiality or Scienter

The first and second elements of a fraud claim require that a plaintiff set forth that the defendant made material misrepresentations of fact with knowledge of their falsity.  As explained below, Graves fails to sufficiently plead both these elements, i.e., (1) that DBSI intended to defraud the EEOC at the time it submitted its position statement (scienter), and (2) that its purported misrepresentations were material.

The Supreme Court recently emphasized the importance of pleading scienter. Tellabs, Inc. v. Makor Issues and Rights, Ltd., 127 S. Ct. 2499 (2007).  In Tellabs, the Court concluded that the proper inquiry into the existence of scienter is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter . . . ." Id. at 2509 (emphasis in original).[5] Moreover, the inference must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id. at 2505.  See Ping v. Benihana Nat'l Corp., 542 F. Supp. 2d 245, 255 (S.D.N.Y. 2008) (applying Tellabs in a common law fraud context).

Nowhere in the Amended Complaint does Graves set forth any facts to support his reckless claim that DBSI misrepresented material statements and documents to the EEOC with the intent to commit a fraud against the agency.  While Graves tries to dispute DBSI's view, as articulated in the position statement, that Graves's termination was more than justified, he offers

---

[5] Even though Tellabs interpreted the element of scienter with reference to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), its requirement that the facts underlying a fraud claim give rise to a strong inference of fraud was a pleading component of common law fraud in the Second Circuit before Tellabs. See, e.g., Chill v. General Electric Co., 101 F.3d 263, 267 (2d Cir. 1996).

no evidence of scienter. Graves's disagreement with DBSI's decision to lay him off is nothing more than a disagreement with the bases of that decision and does not support the sinister spin he tries to put on it, that DBSI intentionally deceived the EEOC. Indeed, the majority of the alleged misrepresentations are nothing more than disputes about the facts underpinning Graves's employment and termination. Graves, for example, tries to dispute issues surrounding (1) the reassignment of Graves's accounts (Amended Complaint, ¶ 97); (2) the level of Graves's and Gregory Paul's (an older co-worker) involvement in the TV Broadcasting "space" (Amended Complaint, ¶ 101); (3) the identification of the employees considered to be Graves's comparators (Amended Complaint, ¶ 103); (4) Mr. Paul's experience outside of television broadcasting (Amended Complaint, ¶ 113); (5) the value of the accounts allegedly "taken away" from Graves (Amended Complaint, ¶ 118); and (6) the exclusion of certain of Graves's supposed clients and achievements from the reports submitted to the EEOC (Amended Complaint, ¶ 121(e).[6] Graves, however, has set forth absolutely no facts whatsoever to show that DBSI's true intent in filing the position statement was to defraud the EEOC. Nor has he even minimally shown how his inference of fraud is "at least as compelling" as the opposing inference, that DBSI legitimately filed the position statement to explain to the EEOC the facts underlying Graves's charge of discrimination. That the parties disagree on their version of the facts regarding Graves's employment and termination is not surprising and certainly not evidence of an intent to defraud.[7]

---

[6] Of course, that Graves tries to dispute certain issues in a pleading has no bearing on the likelihood of DBSI's prevailing on a future summary judgment motion.

[7] In addition to the fact that Graves has not pled any basis for suggesting that DBSI intended to deceive the EEOC, he has also mischaracterized a number of the statements from the position statement. For example, in Paragraph 118 of the Amended Complaint, Graves alleges that DBSI misrepresented the value of the clients purportedly transferred away from him as low. As evidence of this misrepresentation, he sets forth the value of deals concluded with these clients in 2004. (Amended Complaint, ¶¶ 118(a) to (e).) In the position statement, however, DBSI stated that these clients produced no revenue for anyone in 2003, a fact readily confirmed by the Franchise Revenue and Pipeline Reports for 2003. (Position Statement, p. 1.) Similarly, in Paragraph 101 of the Amended Complaint, Graves accuses DBSI of making the false statement that there were only two bankers in the TV Broadcasting space and that therefore the only two bankers who could be considered for layoff were Graves and Mr. Paul. (Amended Complaint, ¶ 101.) In the position statement, in fact, DBSI merely stated that Graves and Mr. Paul were two

The remainder of the allegations of fraud in Graves's Amended Complaint center around Exhibits C and F to the position statement. These Exhibits consist of the Reports for January 15, 2003 and January 8, 2004. Graves accuses DBSI of "deleting pages" from its January 15, 2003 Report (Amended Complaint, ¶ 108), providing the EEOC with a version of the Reports that contain aggregate totals per banker (Amended Complaint, ¶ 121(c)) and submitting "altered and redacted" excerpts from the Reports as the "only tool" by which the performance and prospects of individual bankers could be compared (Amended Complaint, ¶ 120). Putting aside the fact that DBSI never maintained the Reports were the "only" tool for evaluating the performance and prospects of bankers, the claims of alterations and redactions are entirely misplaced and do not meet the standard of "materiality" required to state a claim of fraud.

In interpreting the materiality element of a fraud claim in criminal statutes, courts have applied the general rule that a misrepresentation is material if "it has a general tendency to influence, or was capable of influencing, the decisions of the decisionmaking body to which it was addressed." Monter v. Gonzalez, 430 F.3d 546, 553 (2d Cir. 2005) (quoting Kungys v. U.S., 485 U.S. 759, 770 (1988)). Here, as a logical matter, Graves cannot establish materiality. The Reports submitted to the EEOC are the relevant portions of the full Reports published monthly by DBSI during the relevant period. They contain the values and probability of pipeline (or potential) deals and the revenue attributions to each banker on executed deals. Although the Reports break the revenue numbers down in a variety of ways, such as by deal, by client and by product, e.g., mergers and acquisitions, DBSI chose to produce the pages of the two Reports showing the revenue numbers *by banker* to best illustrate the comparative franchise and revenue

---

Managing Directors ("MDs") who specialized in television broadcasting and, with the downturn in that industry, the television broadcasting space could not support two MDs. (Position Statement, pp. 2 & 4.) Nowhere in the position statement does it state that Graves and Mr. Paul were the only two bankers specializing in this space nor that they were the only two bankers considered for layoff.

numbers among the bankers in the Media Department. That DBSI did not produce portions of the Reports showing the same information in a different format (i.e. *by client* or *by product*) could not have led the EEOC to draw a different conclusion with respect to Graves's claims. Moreover, the relevant pages of the Reports produced to the EEOC are identical to the ones produced during the normal course of discovery with one small exception – the version of the Reports produced to the EEOC contain an aggregate total of each banker's revenue. There is no basis for Graves's assertion that this one addition to the Reports (which actually gave the EEOC *more* information) is in any way an "alteration" or a "redaction" or that it, by any stretch, worked to his disadvantage in the EEOC's investigation. The numbers and information on the Reports produced to the EEOC and those maintained in the normal course of business are entirely consistent and accurate. Thus, DBSI's production of the portions of the Reports relevant to its position statement and of reports containing information that would, if anything, have been helpful to the EEOC in comparing bankers' revenues, could not possibly have influenced it to decline to pursue Graves's case. In sum, Graves cannot point to anything in the Reports submitted to the EEOC that could be construed as a material omission or alteration.

### b.    Graves Fails to Plead Reasonable Reliance

A plaintiff must plead that he or she reasonably relied on a misstatement in order to sufficiently plead a claim of fraud. See Abbatiello, 522 F. Supp. 2d at 533. Here, Graves's claim of criminal fraud cannot possibly satisfy this element. Graves bases his criminal fraud allegations on purported misrepresentations made *to the EEOC*, but New York law requires that Graves plead that he, *himself* was misled to *his* detriment by the alleged misrepresentations. Abbatiello, 522 F. Supp. at 534 (citing Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo, 148 F.3d 194, 196 (2d Cir. 1998)). New York courts have consistently dismissed fraud claims where false statements were made to

and relied upon by third parties. See, e.g., Lollo, 148 F.3d at 196 (holding that the plaintiff failed to establish the reliance element of fraud for purposes of New York law by showing only that a third party relied on defendant's false statements); Trepel v. Dippold, No. 04 Civ. 8310, 2006 WL 3054336, at *5 (S.D.N.Y. Oct. 27, 2006) (dismissing fraud claim where the plaintiff was not aware of the contents of the allegedly fraudulent letter to a third party and, therefore, could not have acted in reliance on that letter). This is so even if the alleged misrepresentations to a third party caused harm to the plaintiff. See Barnhart v. Federated Dep't Stores, No. 04 Civ. 3668, 2005 WL 549712, at *8 (S.D.N.Y. Mar. 8, 2005) (dismissing fraud claims where fraudulent statements allegedly made by defendant to ASCAP resulted in a loss of royalties to the plaintiff); Morris v. Castle Rock Entm't, Inc., 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003 (holding that plaintiff failed to state a fraud claim where purported misrepresentations made to arbitration panel led it to rule in a way that was adverse to plaintiff's interests).

Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., No. 01-2193-JWL, 2002 WL 1822404 (D. Kan. June 13, 2002), is virtually identical to the present facts. In Horizon, one of the plaintiffs, Cassandra O'Toole, filed a charge of discrimination and retaliation with the EEOC against the defendant, Genmar Holdings. See id. at *1. Genmar filed a position statement with the EEOC disputing Ms. O'Toole's allegations. See id. at *5. In their federal court complaint, the plaintiffs accused Genmar not only of the discriminatory and retaliatory acts against Ms. O'Toole, but of having submitted "false and misleading information to the EEOC in criminal violation of 18 U.S.C. § 1001". Id. In rejecting the plaintiffs' fraud allegations, the Court found that the plaintiffs failed to set forth that the contentions in the position statement were false or that they were submitted to the EEOC with intent to deceive the agency. Id. Moreover, the

11

Court concluded that the plaintiffs had not set forth any evidence that the plaintiffs themselves relied to their detriment on the facts in the position statement submitted to the EEOC. Id.

The gravamen of Graves's claims of fraud against DBSI is that DBSI "knowingly and willfully made . . . material false representations to the EEOC and failed to provide the EEOC with affirmative information necessary to prevent its submissions from misleading and manipulating the EEOC's investigation and decision-making." (Amended Complaint, ¶ 96.) Nowhere in the Amended Complaint does Graves indicate that *he* relied on the alleged misrepresentations in the Position Statement to *his* detriment. Accordingly, under New York law, his claim would be dismissed.

### c.    Graves Has Not Pled That He Had Any Pecuniary Loss

Graves's criminal fraud allegations would also fail to survive a Rule 12(b)(6) motion because he does not plead that he incurred any damages. Under New York law, on a claim for fraud, "'[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as a direct result of the wrong or what is known as the 'out-of-pocket' rule.'" Carofino v. Forester, 450 F. Supp. 2d 257, 269 (S.D.N.Y. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (N.Y. 1996)). "Under this rule, damages are to be calculated to compensate a plaintiff for money [he] actually lost because of the fraud, not to compensate [him] for what [he] might have gained." Rappaport v. Buske, No. 98 Civ. 5255, 2000 U.S. Dist. LEXIS 12325, at *28 (S.D.N.Y. Aug. 24, 2000) (citations omitted). New York courts have consistently dismissed fraud claims under Rule 12(b)(6) for failure to state out-of-pocket damages incurred as a result of the purported fraud. See Solar Travel Corp. v. Nachtomi, No. 00 Civ. 3564, 2001 U.S. Dist. LEXIS 7549, at *17-18 (S.D.N.Y. June 8, 2001); Kulas v. Adachi, No. 96 Civ. 6674, 1997 U.S. Dist. LEXIS 6868, at *28 (S.D.N.Y. May 12, 1997).

Graves's Complaint not only fails to set forth pecuniary damages suffered as a result of DBSI's purported fraud to the EEOC; he fails to even address this crucial element altogether. In his Prayer, Graves obliquely asks the Court to "[d]eclare that defendant knowingly made false and misleading representations of material fact to the EEOC, for the purpose of attempting to persuade plaintiff and the EEOC that there was no merit in plaintiff's charge of discrimination and retaliation . . . ." (Amended Complaint, p. 56.) Graves, however, sets forth no monetary damages incurred by him as a result of the alleged fraud and has, therefore, failed to set forth a claim. Since the Court would dismiss this claim under Rule 12(b)(6) on this deficiency alone, Graves's motion to amend should be denied.

## B. GRAVES'S MOTION HAS BEEN BROUGHT IN BAD FAITH

Courts have rejected motions to amend where the plaintiff has filed the motion in bad faith. In this context, courts have found bad faith where a plaintiff files a motion to amend for the sole reason of warding off an unfavorable court ruling. See, e.g., Vine v. Beneficial Fin. Co., 374 F.2d 627, 637 (2d Cir. 1967) (denying motion to amend where the plaintiff was aware of the deficiency of his complaint before the defendant filed a motion to dismiss and filed the motion to amend to prevent the dismissal of his complaint); State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990) (citations omitted) ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); In re Worldcom, Inc. Secs. Litig., 308 F. Supp. 2d 214, 234 (S.D.N.Y. 2004) (denying motion to amend where the plaintiff had prior notice of what was required to file a complaint that did not contain the identified deficiencies, and yet delayed in curing those deficiencies).

The procedural history of this case shows that Graves's motion to amend is nothing more than an attempt to deflect the Court's attention from the motion for sanctions filed against Graves and his counsel. Since at least July 3, 2007, almost a year ago, when DBSI filed its

13

motion to strike, DBSI has prevailed upon Graves to drop his claim that DBSI tried to intentionally deceive the EEOC when it submitted its position statement. After a year of effort, and only after DBSI submitted a motion for sanctions, has Graves acknowledged that his theory was wrong, that the documents DBSI sent to the EEOC were, in fact, created in "good faith" and not out of whole cloth to deceive the EEOC. (Motion for Sanctions Opposition Brief, p. 3.)[8] However, the Amended Complaint repeats the same offending allegations, dressing them up in slightly different garb. Instead of alleging that DBSI created false documents and revenue numbers, the Amended Complaint now alleges that DBSI distorted and redacted genuine documents. Yet the same offensive allegations are present – that DBSI intended to defraud the EEOC in violation of Section 1001. As explained above, not only is there no factual support for these claims, but they are also irrelevant to the causes of action that Graves has actually pled. Their only purpose is to disparage DBSI's reputation and to drive up its costs with needless motion practice. Moreover, because the new allegations do not correct the original harm, DBSI will be forced to engage in further motion practice to eliminate allegations that should never have been brought in the first place.

In sum, Graves's Amended Complaint is simply a judicial shell game, suggesting that Graves is attempting to rectify the sanctionable behavior when, in fact, he is doing nothing more than re-packaging his criminal fraud allegations for yet another round of costly motion practice. Thus, Graves's motion has not been brought in "interests of justice," but rather to avoid sanctions and to retain unfounded and damaging claims against DBSI in the public record.

---

[8] Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Sanctions is attached as Exhibit C to the Fonstein Aff.

14

## II.    IF THE COURT GRANTS GRAVES'S MOTION, IT SHOULD STRIKE THE CRIMINAL FRAUD ALLEGATIONS AND AWARD DBSI COSTS.

If the Court grants Graves's motion to amend, it should condition doing so on Graves's

withdrawal of his criminal fraud allegations against DBSI and award DBSI costs for having

defended against these baseless claims.    It is within the Court's discretion to condition the

granting of a motion to amend upon the striking of certain paragraphs of the proposed

amendment. United Brands Co. Secs. Litig., No. 85 Civ. 5445, 1990 U.S. Dist. LEXIS 1711, at

*9 n.4 (S.D.N.Y. Feb. 16, 1990); Rackson v. Sosin, No. 95 Civ. 1105, 1997 U.S. Dist. LEXIS

20350, at *16 (S.D.N.Y. Dec. 18, 1997), aff'd, No. 00 Civ. 7687, 1001 U.S. App. LEXIS 4155

(2d Cir. 2001).    In Kuntz v. N.Y.S. Bd. of Elections, for example, the court struck a number of

the plaintiff's meritless claims "in light of the borderline frivolousness and facial inadequacy of

his earlier Complaint" which "place[d] a heavy burden on both the responding defendants and

judicial resources . . . ."  924 F. Supp. 364, 366 (N.D.N.Y. 1996), aff'd, 113 F.3d 326 (2d Cir.

1997).    As explained below, the Court should strike the fraud paragraphs of the Amended

Complaint for two reasons:  (1) they are irrelevant to the causes of action brought by Graves and

substantially prejudice DBSI, and (2) they concern DBSI's submissions in an administrative

proceeding which are per se immaterial under Rule 12(f).  Fed. R. Civ. P. 12(f).

Rule 12(f) provides that the court may strike from any pleading "any redundant,

immaterial, impertinent, or scandalous matter."    In re Merrill Lynch & Co., Inc. Research

Reports Secs. Litig., 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citations omitted).  "[A]llegations may

be stricken if they have no real bearing on the case, will likely prejudice the movant, or where

they have criminal overtones." G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 555

(S.D.N.Y. 2002) (citations omitted).    Stated differently, a court may strike matter from a

complaint where its material is prejudicial.  Id. (citing Wright Miller & Marcus, Fed. Prac. &

Proc.: Civil 2d § 1382, at 714 (West 1994 & Supp. 2001)) ("Scandalous allegations . . . will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations."); See also Smith v. AVSC Int'l., Inc., 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2001).

In Smith, the plaintiff brought claims alleging discrimination based on sex and age, as well as a claim for retaliatory discharge. Id. at 306. In his complaint, however, the plaintiff raised allegations of "various fraudulent and improper financial practices by [the defendant]," and the court struck those paragraphs, stating that the "ethical obligations to report financial misconduct, and specific instances of such acts, are not relevant to the only remaining claims in the complaint, the discrimination claims." Id. at 317. Similarly, here, the allegations Graves makes in Paragraphs 14 and 95-124 of the Amended Complaint, concerning allegedly false statements made by DBSI in its EEOC Position Statement in violation of 18 U.S.C. § 1001, have no bearing on any of his causes of action. The allegations concerning the position statement do more than merely dispute its contents; they allege something separate and apart from Graves's legal claims – that DBSI defrauded the EEOC. The obvious purpose for making these scandalous allegations on the public record is to influence the Court and to prejudice DBSI. Since there is no reason for Paragraphs 14 and 95-124 to remain in the Amended Complaint, the Court should strike them. Morse v. Weingarten, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking references that were "immaterial and impertinent to the case" because they served "no purpose except to inflame the reader"); Kent v. AVCO Corp., 815 F. Supp. 67, 71 (D. Conn. 1992).

Moreover, Second Circuit law makes it clear that references to preliminary steps in litigation and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f). In re

16

Merrill Lynch, 218 F.R.D. at 78  (citing Lipsky v. Commonwealth United Corp., 551 F.2d 887, 892-94 (2d Cir. 1976)).  In Ledford v. Rapid-Am. Corp., No. 86 Civ. 9116, 1988 U.S. Dist. LEXIS 79 (S.D.N.Y. Jan. 8, 1988), a case alleging discriminatory termination on the basis of age, the defendant moved to strike paragraphs of the complaint that set forth findings in the State Division of probable cause to believe discrimination had occurred.  Id. at *1.  The Court held that since the State Division's administrative findings had no preclusive effect, allegations in respect to the findings were irrelevant to the action and were stricken from the complaint pursuant to Rule 12(f).  See id. at *4.  See also Mitchell v. Bendix Corp., 603 F. Supp. 920, 921 (N.D. Ill. 1985) (granting motion to strike paragraphs of the complaint alleging the determination of a state administrative review of the plaintiff's claim).  Just as the Court in Ledford struck the State Division's findings, the Court here should strike Graves's inflammatory mischaracterizations of DBSI's submission to a similar agency.

In addition, a common condition imposed on an amending party is the payment of costs to the opposing party to "balance the interests of the party seeking the amendment and those of the party objecting to it".  6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1486 at 605 (1990).  Courts have assessed costs against a moving plaintiff for, among other things, the filing by defendant of an amended answer to the amended complaint and for defendant's motion to dismiss the prior legally insufficient complaint.  See Hewlett-Packard Co. v. Factory Mut. Ins. Co., No. 04 Civ. 2791, 2006 WL 1788946, at *13 (S.D.N.Y. June 28, 2006).  In Hayden v. Feldman, 159 F.R.D. 452 (S.D.N.Y. 1995), for example, the court granted attorneys' fees and costs incurred in the defendant's preparation of a motion to dismiss the prior faulty complaint, to compensate the defendant for the prejudice suffered as a result of plaintiff's decision "to proceed in this inefficient manner."  Id. at 455.

17

This Court should similarly award DBSI attorney's fees and costs for filing the motion to strike, for the motion for sanctions filed after Graves unreasonably refused to withdraw the paragraphs. and for its future Amended Answer to Graves's voluminous Amended Complaint.

Accordingly, if the Court should decide to grant Graves's motion to amend, it should do so on condition that Grave strike the criminal fraud paragraphs from the Amended Complaint and reimburse DBSI for the attorneys' fees and costs incurred in defending against his filing of the improvident criminal fraud claims.

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that the Court deny Graves's motion to amend his Complaint, together with such other and further relief as the Court may deem just and proper. In the alternative, if the Court should decide to grant Graves's motion, it should do so on condition that Graves strike Paragraphs 14 and 95-124 from the Amended Complaint and reimburse DBSI for its attorneys' fees and costs incurred in preparing its motion to strike and motion for sanctions.

Dated:  New York, New York
       June 30, 2008

SIDLEY AUSTIN LLP

By: _____

Cliff Fonstein
Joanne Seltzer
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Attorneys for Defendant
Deutsche Bank Securities Inc.

18

## CERTIFICATE OF SERVICE

I, Allison E. Maue, an attorney admitted to practice in the State of New York, and not a party to this action, state under penalty of perjury that on June 30, 2008, I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Second Amended and Supplemental Complaint to be served upon the following:

> Richard T. Seymour
> Law Office of Richard T. Seymour, PLLC
> 1150 Connecticut Avenue, NW, Suite 900
> Washington, D.C. 20036-4129
> (via Federal Express overnight delivery)
>
> Steven A. Berger
> Berger & Webb, LLP
> 1633 Broadway, 46th Floor
> New York, New York 10019
> (via hand delivery)

_____
Allison E. Maue

NY1 6675486v.4