Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.))

Page 1

**H**Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.
D.Kan.,2002.
Only the Westlaw citation is currently available.
United States District Court,D. Kansas.
HORIZON HOLDINGS, L.L.C., et al., Plaintiffs,
v.
GENMAR HOLDINGS, INC., et al., Defendants.
No. 01-2193-JWL.

June 13, 2002.

### MEMORANDUM AND ORDER

DAVID J. WAXSE, Magistrate Judge.
*1 Pending before the Court is Defendants' Motion to Quash Deposition Notice and for Entry of a Protective Order (doc. 72). For the reasons stated below, Defendants' Motion is granted.

I. Relevant Factual Background

In 1997, Horizon Marine, L.C. ("Horizon Marine") began doing business as an aluminum boat manufacturer in Junction City, Kansas. At this time, Plaintiff Goeffrey Pepper ("Pepper"), one of several investors who started the company, became President of Horizon Marine. Pepper's daughter, Cassandra O'Tool, became the company's human resources manager and his son-in-law, John O'Tool, became the company's Director of Manufacturing.

In late 1998, Defendant Genmar Manufacturing of Kansas, L.L.C. (Genmar Kansas) acquired Horizon Marine. Mary P. McConnell, Defendants' former general counsel and corporate secretary, reviewed and then provided legal advice with regard to the proposed contracts and purchase agreements related to the acquisition.

At the time of the acquisition, Pepper became president of Genmar Kansas, Pepper's daughter Cassandra O'Tool became director of human resources for Genmar Kansas and Pepper's son-in-law John O'Tool became director of manufacturing for Genmar Kansas. All three of these individuals signed employment agreements with Genmar Kansas.

On March 13, 2000, Pepper sent a letter to Defendants alleging Defendants had engaged in pregnancy discrimination against his daughter, Plaintiff Cassandra O'Tool, in failing to give her a raise in salary. In responding to this letter, David Vigdal ("Vigdal"), senior vice-president of Genmar operations and president of Genmar's Aluminum Division, states he consulted with Ms. McConnell on various legal issues relevant to his response.

On March 31, 2000, Pepper's attorney sent a demand letter to Genmar. On April 5, 2000, Genmar Kansas terminated the employment of Pepper, Cassandra O'Tool and John O'Tool. On April 18, 2000, Ms. McConnell responded to the March 31, 2000 demand letter.

Plaintiffs filed a complaint against Defendants with the Equal Employment Opportunity Commission ("EEOC"). Ms. McConnell participated in the resulting investigation, conducted interviews and ultimately prepared the formal response letter to the EEOC.

On April 20, 2001, Plaintiffs Horizon Holdings and Pepper filed this lawsuit alleging contract and tort claims against Genmar Holdings, Inc. ("Genmar Holdings"), Genmar Industries, Inc. ("Genmar Industries") and Genmar Kansas. With respect to terms and conditions of employment after the acquisition, Plaintiff Cassandra O'Tool alleges discrimination and retaliation against Genmar Kansas and Pepper and John O'Tool allege retaliation against Genmar Kansas.

On April 11, 2002, Plaintiffs served upon counsel for Defendants a Notice to Take Videotaped Deposition of Mary P. McConnell. The referenced deposition was scheduled for April 24, 2002. On April 15, 2002, Plaintiffs served Ms. McConnell (in care of Defendants' counsel) with a subpoena commanding her appearance for deposition on April 24, 2002. Defendants now move to quash the McConnell subpoena and request the Court issue a protective order prohibiting the deposition. In support of their request, Defendants argue the testimony sought is protected from disclosure by the attorney-client privilege. Plaintiffs, however, claim they are entitled

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF   Document 39-7   Filed 06/30/2008   Page 2 of 5

Not Reported in F.Supp.2d                                                                                                 Page 2
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.))

to depose Ms. McConnell and discover privileged information she possesses because

*2 • Ms. McConnell often acted in a non-attorney capacity when she was employed by Genmar and, as a non-lawyer material fact witness to the underlying claims advanced in this lawsuit, does not qualify as "opposing counsel" in the context of the attorney-client privilege;

• Any privilege that may be applicable to communications between Ms. McConnell and her client have been waived pursuant to the crime-fraud exception to such privilege;

• Ms. McConnell should be required, at a minimum, to answer questions to determine whether the claimed privilege exists and, if it does, to what extent it does exist; and

• Ms. McConnell should be required to produce any work product in her files regarding Genmar's decision to terminate Plaintiffs and the subsequent internal investigation into such decision.

II. Discussion

The court "shall quash or modify [a] subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies, or [if it] subjects a person to undue burden."Fed.R.Civ.P. 45(c)(3)(A)(iii) and (iv). Moreover, and for good cause shown, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."Fed.R.Civ.P. 26(c). Such orders may include completely prohibiting certain discovery or imposing a designated method by which discovery must be conducted. Fed.R.Civ.P. 26(c)(1) and (3). One seeking a protective order or to quash a subpoena carries the burden to show good cause and/or the right to be protected. Sentry Ins. v. Shivers, 164 F.R.D. 255, 256 (D.Kan.1996.)

Special rules, however, apply to depositions of a party's counsel. In Simmons Foods, Inc. v. Willis, 191 F.R.D. 625 (D.Kan.2000), this Court set forth the standard for determining when the deposition of a party's attorney should be allowed. The Court first summarized the general rules regarding such depositions:

> An attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition. A request to take the deposition of an attorney for a party may, however, constitute an extraordinary circumstance justifying departure from the normal rule. While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters.

Id. at 630 (citations and quotations omitted).

The Court then held that depositions of "opposing counsel" should be limited to those circumstances where the party seeking to take the deposition has shown the following:

> (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*3 Id. (citing Shelton v. American Motors Corp., 805 F.2d 1323, 1326 (8th Cir.1986)). The burden is on the party seeking the attorney's deposition to establish that each of these three criteria is met. Id.

• Is Ms. McConnell "opposing counsel" for purposes of applying Simmons?

Before the Court determines whether the Simmons criteria have been met here, the Court must determine, as a threshold matter, that Ms. McConnell is in fact "opposing counsel." Plaintiffs contend that Ms. McConnell does not qualify as "opposing counsel" here because she often acted in an administrative role rather than as a legal advisor to Defendants. More specifically, Plaintiffs contend Ms. McConnell acted as a human resources manager at Genmar and made decisions with respect to the terminations of Mr. Pepper, Ms. O'Tool and Mr. O'Tool. In support of these contentions, Plaintiffs state as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.))

Page 3

1. Grant Oppegaard, Genmar's President and Chief Executive Officer, testified that, during the relevant time period, Genmar had "a policy" and "corporate compliance program" supported by Genmar's board of directors that was designed to "ensure fairness" for Genmar's employees, and that Ms. McConnell was the top officer charged with the responsibility to make sure that happened;

2. David Vigdal, Genmar's Senior Vice-President of Operations, testified that Ms. McConnell had human resources and personnel related responsibility at Genmar and "engaged in human resources counseling"; and

3. Ms. McConnell received a copy of the March 31, 2000 letter from Plaintiffs' counsel protesting Genmar's alleged unlawful employment practices and unfair commercial dealings and, less than one week after the March 31, 2000 letter was sent, Pepper, Cassandra O'Tool and John O'Tool were terminated.

Defendants, on the other hand, argue that Ms. McConnell should be deemed "opposing counsel." Defendants deny that Ms. McConnell had any part in the decision to terminate Plaintiffs or that she played an administrative, non-legal role in any course of conduct affecting Plaintiffs.

Upon consideration of the circumstances presented, the Court finds the evidence is insufficient to demonstrate that Ms. McConnell acted in an administrative, non-legal role here. Plaintiffs' assertion that Ms. McConnell played an administrative role in the decision to terminate Plaintiffs' employment is unsupported. At best, the deposition testimony cited by Plaintiffs indicates that (1) Ms. McConnell generally was charged with verifying that corporate EEO policy complied with applicable state and federal laws; and (2) Ms. McConnell addressed legal issues arising in the human resources arena. This testimony is unrelated to Plaintiffs' that Ms. McConnell may have had "administrative" input into Genmar's decision to terminate Plaintiffs' employment.

Based on the information before it, the Court can only conclude that Ms. McConnell acted as a legal advisor to Defendants in connection with the events underlying this litigation. The Court therefore holds that Ms. McConnell should be considered "opposing counsel" for purposes of applying the *Simmons* criteria. The Court will now proceed to apply the *Simmons* criteria to determine whether Plaintiffs have met their burden to show that they are entitled to depose Ms. McConnell.

B. Have Plaintiffs satisfied the *Simmons* criteria?

*4 As noted above, *Simmons* requires Plaintiffs to satisfy three criteria, the first of which is that "no other means exist to obtain the information except to depose opposing counsel."*Simmons, 191 F.R.D. at 630.* In other words, Plaintiffs must show that the information they seek through Ms. McConnell's deposition is not available from any other source. *Id.* at 631.

Plaintiffs state they seek to depose Ms. McConnell regarding her administrative and/or management duties related to human resources within Genmar, as well as her role in the decision to terminate Plaintiffs' employment. More specifically, Plaintiffs contend that "[e]ven after the depositions of almost all of Genmar's senior management team and production of thousands of documents, there has still been no consistent or complete answer to the questions of who made the decision to fire Mr. Pepper, Ms. O'Tool and Mr. O'Tool, when the decision was made, and why that decision was made." Plaintiffs' Memorandum in Opposition to Defendants' Motion to Quash at p. 5 (doc. 83). Based on the fact that Ms. McConnell reviewed the March 31, 2002 and the inconsistencies in testimony regarding who made the termination decision, Plaintiffs allege that "Ms. McConnell was a 'decision-maker' or at least part of the decision-making process with respect to the terminations of Plaintiffs."*Id.*

Even if what Plaintiffs allege is true, Plaintiffs have failed to demonstrate that the information they seek regarding identity of the individual(s) who made the decision to terminate their employment could not have been obtained from other sources. For example, Plaintiffs could have propounded an interrogatory-requiring a verified response from a corporate representative-seeking identification of all individuals who participated in the decision to terminate Plaintiffs' employment. In addition, the Court knows of no reason why the information Plaintiffs seek regarding persons who made the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF   Document 39-7   Filed 06/30/2008   Page 4 of 5

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.))

decision to terminate their employment cannot be obtained from individuals other than Ms. McConnell. A mere suspicion that she has such knowledge-based solely on the fact that Ms. McConnell reviewed their attorneys' demand letter-is insufficient to demonstrate that she is the only individual who possesses the information sought.[FN1] In sum, Plaintiffs have failed to carry their burden to establish that Ms. McConnell is the exclusive source of the information they seek.

> FN1. The evidence presented does not identify at what point in time Ms. McConnell reviewed the demand letter from Plaintiffs' attorney. Because Ms. McConnell did not respond to the demand letter until after Plaintiffs' were terminated from employment, the Court is unable to determine whether Ms. McConnell reviewed the letter before or after the decision to terminate was made.

In light of the above, the Court concludes Plaintiffs have failed to satisfy the first *Simmons* criterion, *i.e.,* that the information sought is not available through any source but opposing counsel. Having failed to satisfy this criterion, Plaintiffs are not entitled to take Ms. McConnell's deposition. The Court need not analyze the two remaining criteria, inasmuch as Plaintiffs must satisfy *all three* criteria in order to proceed with the deposition. See *Simmons,* 191 F.R.D. at 637 (holding defendants not entitled to depose opposing counsel where they failed to show that the information could be obtained only from opposing counsel, notwithstanding the fact that defendants had satisfied the other two criteria).

C. The Crime-Fraud Exception

*5 Plaintiffs next argue that any applicable privilege attaching to communications between Ms. McConnell and her client have been waived pursuant to the crime-fraud exception to such privilege. In support of their argument, Plaintiffs cite to contradictions between information submitted in Genmar's position statement to the EEOC and more recent deposition testimony regarding exactly who made the decision to terminate Plaintiffs' employment. Plaintiffs allege these contradictions are evidence that Genmar used its attorneys to perpetuate a fraud and that the allegedly false and misleading information submitted to the EEOC amounts to criminal conduct in violation of 18 U.S.C. § 1001.

The Tenth Circuit Court of Appeals has recognized an exception under federal law that "the attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud."*Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1371-72 (10th Cir.1997) (citing *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995), *cert. denied,*517 U.S. 1190 (1996)). Moreover, in Kansas, the statutory provision establishing the attorney-client privilege specifically provides that such privilege does not extend to a communication if there was sufficient evidence that the communication was sought to enable or aid the commission or planning "of a crime or a tort ...." K.S.A. 60-426(b); *see, also, Burton v. R.J. Reynolds Tobacco Co.,* 167 F.R.D. 134, 140-41 (D.Kan.1996); *In re A.H. Robins Co., Inc.,* 107 F.R.D. 2, 9 (D.Kan.1985).

• Fraud

In this case, Plaintiffs do not appear to argue, nor have they demonstrated, that a prima facie case for actionable fraud exists. Under Kansas law, "[a]ctionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with a disregard for the truth, where another party justifiably relies on the statement and acts to his injury."*K-B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1156 (10th Cir.1985) (quoting *Lentz Plumbing Co. v. Fee,* 235 Kan. 266, 270, 679 P.2d 736, 742 (1984)) (emphasis added). Plaintiffs have not alleged, much less demonstrated, any of the elements required to establish fraud. First, Plaintiffs have not established the information presented to the EEOC regarding identification of the person who made the decision to terminate their employment was false. The fact that there is contradictory testimony from the person identified as the decisionmaker does not establish the information presented was false. Moreover, there is no evidence that, even if such information was false, Defendants knew at the time they presented the information to the EEOC that the information was false. Moreover, there is no evidence that Plaintiffs justifiably relied on the truth of the statements in the position statement submitted to the EEOC. *See, e.g., Hall v. Martin,* Case No. 99-1092-JTM, 1999 WL 760216, at *2 (D.Kan. Aug. 20, 1999) (finding that a plaintiff who was seeking to invoke the crime-fraud exception failed to allege the justifiable reliance

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-05471-BSJ-KNF   Document 39-7   Filed 06/30/2008   Page 5 of 5

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)
(Cite as: Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.))

necessary to state a claim for actionable fraud under Kansas law). Plaintiffs fail to demonstrate fraud.

• Commission of a Crime

*6 Plaintiffs' next theory is that the assertions in the position statement amount to a crime-more specifically, making a false or misleading statement to a governmental administrative agency in violation of the United States criminal code:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-
>
> • falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> • makes any materially false, fictitious, or fraudulent statement or representation; or
>
> • makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry
>
> shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1001.

Again, however, Plaintiffs fail to present any evidence to establish Defendants knowingly and willfully made materially false statements to the EEOC. Plaintiffs have not established the information presented to the EEOC regarding identification of the person who made the decision to terminate their employment was false. Again, the fact that there is contradictory testimony from the person identified as the decisionmaker does not establish the information presented was false. And, there is no evidence that, even if such information was false, Defendants knew at the time they presented the information to the EEOC that the information was false.

Because Plaintiffs have failed to establish a crime or fraud, the crime-fraud exception to the attorney-client privilege is hereby deemed inapplicable.

• Production of Work Product Materials

Next, Plaintiffs argue Ms. McConnell should be required, at a minimum, to either provide a privilege log or answer questions to determine whether the claimed privilege exists. In support of this claim, Plaintiffs state Defendants have failed to provide a privilege log to properly advance their privilege assertion with respect to documents possessed by Ms. McConnell regarding Genmar's decision to terminate Plaintiffs.

The Court is unpersuaded by Plaintiffs' argument. The Notice of Deposition and Subpoena at issue did not command Ms. McConnell to produce documents during the deposition. Absent such a command, Ms. McConnell is not required to produce any documents or provide a privilege log.

• Conclusion

Based on the discussion above, Defendants' Motion to Quash Deposition Subpoena and for Entry of a Protective Order is hereby granted.

IT IS SO ORDERED.

D.Kan.,2002.
Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.
Not Reported in F.Supp.2d, 2002 WL 1822404 (D.Kan.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.