LEXSEE

⚠
Caution
As of: Jun 30, 2008

LEE F. KULAS, Plaintiff, -against- SABURO ADACHI, KK ADACHI, a corporation organized under the laws of Japan, and WESTERN MEDNICS, INC., a corporation organized under the laws of the State of California, Defendants.

96 Civ. 6674 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 6868

May 12, 1997, Decided
May 16, 1997, FILED

**DISPOSITION:** [*1] Defendants' motion to dismiss granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff domestic former employee brought an action against defendants, the foreign employer, its president, and its California subsidiary, for bad faith breach of contract, fraud, and tortious interference with contractual relationships. Defendants filed a motion to dismiss the action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a valid claim.

**OVERVIEW:** The employee contracted to locate medical instruments, supplies, and facilities for which the employer could negotiate exclusive Japanese distribution rights. The contract, which was terminable at will by either party, provided for a monthly salary plus a five percent commission on any products purchased by the employer under distribution agreements arranged by the employee's efforts. The commissions were payable for two years after the termination of the contract. The court held that it lacked jurisdiction over defendants. The employee was a Massachusetts citizen, but most of his contacts on behalf of the employer were within the state of New York. Except for the business carried on by the employee in New York, the employer did not conduct any business in New York, and did not have a New York address, office, telephone number, bank account, or other employees in New York. The court held that the employee's business relationships in New York and the fact that New York was a significant market for medical supplies were insufficient to confer jurisdiction over the Japanese employer. Further, the employer's subsidiary was located in California and did not conduct business in New York.

**OUTCOME:** The court granted defendants' motion to dismiss for lack of personal jurisdiction.

**CORE TERMS:** personal jurisdiction, breach of contract, fraud claims, telephone, customers, doing business', telephone calls, negotiation, tortious interference, contractual relations, confer jurisdiction, facsimile, sterilizer, tortious act, misrepresentation, transacted, salary, bad faith, transaction of business, transact business', continuous, commerce, principal place of business, non-domiciliary, recoverable, interstate, tortiously, unpaid, confer, entity

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1]Because a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction is

Page 1

inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion. Therefore, the facts are drawn from the complaint, affidavits and documentary exhibits submitted by both parties, and on are construed in the light most favorable to the non-movant.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2]For the purposes of the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), only the facts alleged in the complaint may be considered and such facts are to be accepted as true.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion*
[HN3]In a diversity case, personal jurisdiction is based on the law of the forum state. Although the plaintiff bears the ultimate burden of proof, until an evidentiary hearing is held, it need only make a prima facie showing by its pleadings and affidavits that jurisdiction exists. In addition, those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor. Thus, once a plaintiff has alleged facts, which if proved would support jurisdiction, a defendant cannot win a Fed. R. Civ. P. 12(b)(2) motion merely by denying plaintiff's allegations. Rather, the defendant's moving papers must entirely refute the plaintiff's allegations.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
[HN4]N.Y. C.P.L.R. § 301 confers on New York courts personal jurisdiction over any nonresident or foreign corporation engaged in such a continuous and systematic course of "doing business" in New York as to warrant a finding of its presence in the jurisdiction. A party doing business in New York may be sued in New York on any claim, whether or not the claim arose in New York or from the party's contacts with New York.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN5]A plaintiff asserting that a defendant does business in New York must show a continuous, permanent and substantial activity in New York. The traditional indicia which courts rely upon in deciding whether a foreign corporation is doing business in New York include: 1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees of the foreign defendant in New York. Accordingly, a defendant is doing business such that jurisdiction pursuant to N.Y. C.P.L.R. § 301 is appropriate if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity.

*Business & Corporate Law > Agency Relationships > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
[HN6]In a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent is relying on his own activities within the State, rather than on defendant's independent activities. Instead, a plaintiff must point to acts by the defendant, independent of the plaintiff-agent's acts, which are sufficient in themselves to confer jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN7]A business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that the company has become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN8]New York law provides two grounds for the attribution to a foreign corporation of the acts of another entity for the purposes of assessing personal jurisdiction over a foreign defendant. The first basis for attribution is that the other entity is a mere department of the foreign corporation. The second basis is that the other entity acts as an agent of the foreign corporation.

*Business & Corporate Law > Agency Relationships > Duties & Liabilities > Knowledge & Notice > General Overview*

*Business & Corporate Law > Agency Relationships > Establishment > Elements > Right to Control by Principal*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN9]An agency relationship exists where the alleged agent engages in purposeful activities in a state for the benefit of and with the knowledge and consent of the alleged principal, and the principal exercised some control over the agent.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN10]To prove personal jurisdiction over a defendant based on N.Y. C.P.L.R. § 302(a)(1), two conditions must be met: first, the nondomiciliary must "transact business" within the state; second, the claim against the nondomiciliary must arise out of that business activity. To "transact business," a nondomiciliary must purposefully avail itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. In addition, a claim arises out of defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN11]The New York courts that specifically encounter defendants whose sole contact with the state is by way of telephone and mail, refuse to exercise jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN12]New York courts consistently refuse to sustain N.Y. C.P.L.R. § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN13]Interstate telephone contacts do not generally have any great significance in N.Y. C.P.L.R. § 302(a)(1) analyses. Interstate negotiations by telephone, facsimile or mail are insufficient to impose personal jurisdiction in New York upon a non-resident defendant. Only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone.

*Contracts Law > Breach > General Overview*
*International Trade Law > General Overview*
*Torts > Procedure > Commencement & Prosecution > General Overview*
[HN14]N.Y. C.P.L.R. § 302(a)(3) confers jurisdiction over non-domiciliaries who commit a tortious act outside New York, causing injury to persons or property within the state, provided that the tortfeasor either: 1) regularly does or solicits business, engages in persistent conduct, or derives substantial revenue from goods or services consumed in New York, or 2) expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce. The first requirement of § 302(a)(3) is that the defendant commit a tort; a breach of contract does not constitute a tortious act under N.Y. C.P.L.R. § 302(a)(3). By merely alleging a tortious act, a plaintiff may not convert a simple breach of contract case into a tort for jurisdictional purposes.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Contracts Law > Remedies > General Overview*
[HN15]Under New York law, mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement. Where a fraud claim arises out of the same facts as a breach of contract claim, with the addition only of an allegation that a defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract. A fraud claim may survive, however, where the plaintiff either: i) demonstrates a legal duty separate from the duty to perform under the contract; or ii) demonstrates a fraudulent misrepresentation collateral or extraneous to the contract; or iii) seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages.

*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview*
[HN16]Under New York law, to recover damages for fraud, a plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by a defendant, made for the purpose of inducing the other party to rely upon it, and justifiable reliance of the other party on the misrepresentation or material omission, and injury.

*Torts > Damages > Compensatory Damages > General Overview*
[HN17]The measure of damages for fraud is the actual pecuniary loss suffered as a result of the fraud, the so-called "out-of-pocket" rule. Under the "out-of-pocket" rule, a plaintiff's loss is the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain. Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained. Thus, there can be no recovery of profits which would have been realized in the absence of fraud.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Torts > Business Torts > Commercial Interference > General Overview*
*Torts > Damages > Compensatory Damages > General Overview*
[HN18]New York law is clear that where a plaintiff claims to have been injured by a tortious interference with its business, indirect financial loss resulting from the fact that the injured person resides or is domiciled in New York will not support jurisdiction under N.Y. C.P.L.R. § 302(a)(3). Rather, a plaintiff must also establish a significant economic injury in New York, such as the loss or threatened loss of important New York customers.

*Torts > Damages > Compensatory Damages > General Overview*
[HN19]In cases where courts have found that a defendant should reasonably have expected that a plaintiff would lose customers in New York, the defendant had more specific reason to be aware of the likely consequences of its tortious acts in New York than merely New York's status as a large market.

*Business & Corporate Law > Agency Relationships > Authority to Act > Contracts & Conveyances > Liability of Agent*
*Business & Corporate Law > Agency Relationships > Causes of Action & Remedies > Breach of Contract*
*Business & Corporate Law > Agency Relationships > Duties & Liabilities > Authorized Acts of Agents > Liability of Principal*
[HN20]An agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he or she is acting on behalf of his principal and within the scope of his authority.

**COUNSEL:** APPEARANCES:

For Plaintiff: RODERICK J. CASSIDY, ESQ., ESTHER S. WIDOWSKI, ESQ., Kessler & Widowski, New York, N.Y.

For Defendants: KEVIN O'ROURKE MOORE, ESQ., MARIANNE DIXON, ESQ., JONATHAN WATERS, ESQ., Ogihara & Moore, New York, N.Y.

**JUDGES:** Michael B. Mukasey, U.S. District Judge

**OPINION BY:** Michael B. Mukasey

**OPINION**

OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Lee F. Kulas sues Saburo Adachi, KK Adachi, and Western Mednics, Inc. alleging breach of contract and "bad faith breach of contract" against KK Adachi, fraud against all three defendants, and tortious interference with contractual relations against Western Mednics. Defendants move to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and move to dismiss the "bad faith breach of contract," fraud, and tortious interference with contractual relations claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims. For the reasons outlined below, defendants' motion to dismiss is granted.

I.

[HN1]Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is "inherently a matter requiring the resolution [*2] of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995). Therefore, the following facts are drawn from the complaint, affidavits and documentary exhibits submitted by both parties,

and on this motion are construed in the light most favorable to plaintiff non-movant. *CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)*. [HN2]For the purposes of the motion to dismiss pursuant to Rule 12(b)(6), only the facts alleged in the complaint may be considered and such facts are to be accepted as true.

On April 25, 1994, plaintiff, a Massachusetts citizen, contracted with defendant KK Adachi, a Japanese corporation with its principal place of business in Japan, to search within the United States for medical instruments, supplies and facilities for which KK Adachi could negotiate exclusive Japanese distribution rights. (Compl. PP 1, 2, 33-34) The contract, signed on behalf of KK Adachi by its president, Saburo Adachi, a Japanese citizen, provided that plaintiff would be paid a $ 10,000 monthly salary and [*3] a five percent commission on any products purchased by KK Adachi under distribution agreements arranged through plaintiff's efforts. These commissions were to be paid during the term of the contract and for two years after its termination. (*Id.* PP 16, 34) The contract was terminable at will by either party. (*Id.* P 35)

Plaintiff claims that he conducted many meetings and negotiations on behalf of defendants with American companies, including 31 meetings in this district. (*Id.* P 37) Through plaintiff's efforts, KK Adachi entered exclusive distribution agreements with three companies -- Everest Medical Corporation, American Hydro-Surgical Instruments, Inc. ("AHSI"), and Applied Medical Resources, Inc. ("AMR") -- none of which is located in New York. (*Id.* P 39; Adachi Aff. P 9) Plaintiff claims that he negotiated these contracts substantially in New York, and that each of these contracts contained forum selection clauses naming New York as the exclusive forum for litigation. (Compl. P 39)

Plaintiff alleges that KK Adachi stopped paying his salary and expenses after August 1, 1996. (*Id.* PP 53-54) In addition, he claims that KK Adachi owes him commissions for completed [*4] purchases from Everest, AHSI, and AMR -- $ 23,579.90 for KK Adachi's purchases from Everest, $ 23,002.50 for purchases from AHSI, and $ 5,700 for purchases from AMR -- and for five percent of any purchases from these companies for two years after the contract's termination. (*Id.* PP 40-42) He claims also that KK Adachi and Saburo Adachi undermined his efforts to negotiate other distribution agreements by failing to convey directions as to contract negotiations, and by refusing ultimately to consummate exclusive distribution agreements with some of the companies, or by entering non-exclusive distribution agreements with others, so as to avoid incurring commission obligations to plaintiff. (*Id.* PP 44-46, 55) Further, plaintiff asserts that KK Adachi eventually purchased Western Mednics, a California corporation, to conduct negotiations with companies initially contacted by plaintiff and to enter into distribution agreements with American companies on KK Adachi's behalf. (*Id.* PP 47-48) He claims that Western Mednics has taken his place in communicating with Everest and AMR in behalf of KK Adachi. (*Id.* P 49(g)-(h)) Defendants claim that they terminated the contract in June [*5] 1996 (Def. Mem. at 1; Adachi Aff. P 23); plaintiff claims that defendants terminated the contract in September 1996, after he commenced this action (Pl. Mem. at 1).

Plaintiff asserts five claims, including: 1) breach of contract against KK Adachi, seeking the unpaid salary, expenses, and commissions; 2) "bad faith breach of contract" against KK Adachi, alleging that KK Adachi "has in bad faith refused to advise or direct Mr. Kulas with regard to discussions and negotiations being conducted or to be conducted with companies . . . pursuant to the Contract, despite timely request for such information" (Compl. P 64); 3) fraud against all defendants, alleging that KK Adachi, at the time of contracting, did not intend to honor the contract, and that all defendants falsely represented during the term of the contract that KK Adachi intended to honor its obligations; 4) tortious interference with contractual relations against Western Mednics, alleging that Western Mednics induced KK Adachi to breach its contract with plaintiff; and 5) a request for a declaration that plaintiff's contract with KK Adachi is valid and continues in force until terminated, and that defendant is obligated to pay [*6] unpaid salary, expenses, and commissions due, as well as future commissions.

II.

KK Adachi moves to dismiss for lack of in personam jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). [HN3]In a diversity case such as this one, personal jurisdiction is based on the law of the forum state. *See, e.g., Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 108, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987); Savin v. Ranier, 898 F.2d 304, 305 (2d Cir. 1990)*. Although the plaintiff bears the ultimate burden of proof, "until an evidentiary hearing is held, it need only make a prima facie showing by its pleadings and affidavits that jurisdiction exists." *CutCo Indus., Inc., 806 F.2d at 365*. In addition, "those documents are construed in the light most favorable to plaintiff and all doubts are resolved in its favor." *Id.* Thus, once a plaintiff has alleged facts, which if proved would support jurisdiction, a defendant cannot win a Rule 12(b)(2) motion merely by denying plaintiff's allegations. Rather, the defendant's moving papers must "entirely refute the plaintiff's allegations." *Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25, 33 (S.D.N.Y. 1982)*.

A. *CPLR § 301* -- [*7] *Doing Business*

Plaintiff argues first that KK Adachi is subject to the jurisdiction of this court pursuant to § 301 of the New York Civil Practice Law and Rules ("C.P.L.R."). C.P.L.R. § 301 [HN4]confers on New York courts personal jurisdiction over any nonresident or foreign corporation "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its presence in this jurisdiction." *McGowan v. Smith, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981); ABKCO Indus., Inc. v. Lennon, 52 A.D.2d 435, 384 N.Y.S.2d 781, 784 (1st Dep't 1976); see also Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)*, and cases cited therein. A party doing business in New York may be sued in New York on any claim, whether or not the claim arose in New York or from the party's contacts with New York.

[HN5]A plaintiff asserting that a defendant does business in New York must "show a continuous, permanent and substantial activity in New York." *Landoil Resources Corp., 918 F.2d at 1043*. The traditional indicia which courts rely upon in deciding whether a foreign corporation is doing business [*8] in New York include: 1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees of the foreign defendant in New York. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)*. Accordingly, a defendant is doing business such that jurisdiction pursuant to § 301 is appropriate if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil, 918 F.2d at 1043*.

Here, plaintiff does not allege that KK Adachi itself shows any of the traditional indicia of doing business in New York. In fact, KK Adachi claims that it does business only in Japan and has no office, telephone listing, or bank account in New York. (Adachi Aff. PP 3, 6-8) Rather, plaintiff claims that KK Adachi does business in New York in several ways: 1) through plaintiff's own activities in New York as KK Adachi's agent; 2) through an agreement with a New York corporation, SonicStar; 3) through its involvement with the Olympus Corporation, a corporation with its principal place of business in New York; 4) through [*9] the actions of Western Mednics, its alleged agent, in New York; and 5) through KK Adachi's insistence that New York be designated in the distribution agreements and the SonicStar agreement as the exclusive venue for litigation. However, none of these contacts with New York is sufficient to confer personal jurisdiction over KK Adachi pursuant to C.P.L.R. § 301.

First, plaintiff argues that he performed many of his obligations under his contract with KK Adachi in New York, that his activities were sufficiently continuous as to constitute doing business, that he was acting as KK Adachi's agent in these activities, and therefore KK Adachi did business in New York. However, even if plaintiff acted as KK Adachi's agent in New York and even if his activities rose to the level of doing business under C.P.L.R. § 301, plaintiff's activities could not confer personal jurisdiction over KK Adachi in this action. [HN6]"In a suit between an agent and his out-of-state principal, there is no jurisdiction over the principal where the plaintiff-agent 'is relying on his own activities within the State, rather than on defendant's *independent* activities.'" *Metropolitan Air Serv., Inc. v. Penberthy* [*10] *Aircraft Leasing Co., 648 F. Supp. 1153, 1157 (S.D.N.Y. 1986)* (quoting *Haar v. Armendaris Corp., 40 A.D.2d 769, 770, 337 N.Y.S.2d 285, 288 (1st Dep't 1972), rev'd, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973)* (adopting Appellate Division dissenting opinion) (emphasis in original)). Instead, a plaintiff must point to acts by the defendant, independent of the plaintiff-agent's acts, which are sufficient in themselves to confer jurisdiction. *Id.* Here, plaintiff cannot rely on his own activities in New York on KK Adachi's behalf to confer personal jurisdiction over KK Adachi.

Second, KK Adachi's agreement with SonicStar is insufficient to constitute doing business in New York. SonicStar is a New York corporation with its principal place of business in Jamestown, New York. Under their July 14, 1995 agreement, KK Adachi agreed to fund SonicStar's development of a microwave sterilizer system in return for "the exclusive, world-wide right and license to distribute and market the Sterilizer." (Kulas Aff. PP 4-5, Ex. A) This agreement contains a forum selection clause with New York as the exclusive jurisdiction for litigation. (*Id.*, Ex. A) Plaintiff alleges that [*11] a prototype of the sterilizer was sent to and from New York at Saburo Adachi's request, and that SonicStar is performing some of the development of the sterilizer in New York with KK Adachi's knowledge. (*Id.* PP 7-8) KK Adachi denies that it has done anything in New York in relation to the SonicStar agreement, and claims that its only meeting with SonicStar relating to the agreement took place in Utah. It is undisputed that there have been no shipments or sales of the sterilizer yet. (Adachi Reply Aff. PP 2(n), 5; Kulas Aff. P 5) Because plaintiff has not alleged any actions by KK Adachi in New York in relation to the SonicStar agreement, it must be seeking to attribute to KK Adachi SonicStar's actions in New York pursuant to the agreement.

[HN7]"A business relationship with a New York entity does not provide a sufficient basis for jurisdiction at least in the absence of a showing that the company has

become an agent or division of the company over which the plaintiff seeks to exercise personal jurisdiction." *Landoil Resources Corp.*, 918 F.2d at 1046.

> [HN8]New York law provides two grounds for the attribution to a foreign corporation of the acts of another entity for the purposes [*12] of assessing personal jurisdiction over a foreign defendant. The first basis for attribution is that the other entity is a 'mere department' of the foreign corporation. . . . The second basis is that the other entity acts as an agent of the foreign corporation.

*H. Heller & Co. v. Novacor Chemicals Ltd.*, 726 F. Supp. 49, 54 (S.D.N.Y. 1988) (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 44, 227 N.E.2d 851, cert. denied, 389 U.S. 923, 19 L. Ed. 2d 266, 88 S. Ct. 241 (1967)); *see also Palmieri v. Estefan*, 793 F. Supp. 1182, 1187 (S.D.N.Y. 1992). Plaintiff does not allege that SonicStar is a mere department of KK Adachi and I therefore need not address that prong. [HN9]An agency relationship exists where the alleged agent "engage[s] in purposeful activities in this State . . . for the benefit of and with the knowledge and consent of" the alleged principal, and the principal exercised some control over the agent. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40 (1988).

Here, plaintiff does not allege any facts from which it can be inferred that SonicStar operates as KK Adachi's [*13] agent in New York. SonicStar's development of the sterilizer benefits both itself and KK Adachi. Further, plaintiff does not allege that KK Adachi controls SonicStar's activities in developing the sterilizer, only that it is aware of these activities. KK Adachi's relationship with SonicStar is best characterized as that of an investor and prospective licensee, not as a principal. Therefore, SonicStar's acts pursuant to the agreement cannot be attributed to KK Adachi, and their relationship does not establish that KK Adachi does business in New York.

Third, plaintiff argues that KK Adachi does business in New York through its relationship with the Olympus Corporation. He claims that Olympus has its principal place of business in Melville, New York, and that "upon information and belief," KK Adachi does business with and has a substantial investment in Olympus. (Compl. PP 5, 23) Plaintiff claims that Saburo Adachi told him that KK Adachi had an agreement with Olympus that prohibited KK Adachi from importing to Japan any medical devices that would compete with products already imported by Olympus. (Kulas Aff. PP 11-13) However, KK Adachi denies that any such relationship exists or that [*14] it does business through Olympus. It claims that Saburo Adachi is not a director of Olympus and that defendants collectively own only .2% of Olympus' stock. (Adachi Aff. P 20; Adachi Reply Aff. P 8) Therefore, plaintiff's only non-conclusory factual allegation relating to KK Adachi's relationship with Olympus is that the two companies have an agreement restricting some of KK Adachi's activities.

However, even if plaintiff's allegation is true and such an agreement exists, that would not prove that KK Adachi took any acts in New York in furtherance of this agreement, or that Olympus is KK Adachi's agent and therefore Olympus' actions in New York should be attributed to KK Adachi. Accordingly, any affiliation with Olympus is insufficient to demonstrate that KK Adachi does business in New York.

Fourth, plaintiff claims that KK Adachi does business in New York through its alleged subsidiary and agent, Western Mednics. (Compl. P 27) He claims, again "upon information and belief," that Western Mednics does business in New York. However, Western Mednics' president, James Wang, denies that Western Mednics, a California corporation, has any office or telephone listing in New York, and claims [*15] that the company has never done business in New York. (Wang Aff. PP 3-4; Wang Reply Aff. P 2) In response, plaintiff claims that Wang once told him in a conversation "while [they] were commiserating about airline travel and discussing the benefits of frequent flier mileage points" that Western Mednics does "a great deal of business" in New York. (Kulas Aff. P 29) However, this general, off-hand comment, and plaintiff's conclusory allegation based on information and belief, do not overcome Wang's testimony. Certainly Wang's alleged statement, even if credited, cannot establish that Western Mednics has a continuous and systematic presence in New York. In addition, plaintiff submits a facsimile from KK Adachi to AMR in which KK Adachi refers to Western Mednics as its "window in US." (Kulas Aff., Ex. R) However, this facsimile does not even demonstrate a transaction of business in New York. Because plaintiff has failed to allege any facts from which one can infer that Western Mednics does business in New York, its actions, even if it is KK Adachi's agent, cannot form the basis for personal jurisdiction over KK Adachi.

Finally, even if KK Adachi insisted that New York be designated the [*16] forum for litigation under agreements with Everest and SonicStar, which it denies, that would not demonstrate a continuous and systematic presence in New York. Plaintiff does not allege that either of these forum selection clauses has been exercised. Therefore, this court cannot exercise jurisdiction over KK Adachi pursuant to C.P.L.R. § 301.

### B. C.P.L.R. § 302(a)(1) -- *Transacting Business*

Plaintiff argues also that KK Adachi is subject to the jurisdiction of this court pursuant to C.P.L.R. § 302(a)(1), which permits a court to exercise jurisdiction over a nondomiciliary who, in person or through an agent "transacts any business within the state . . . ." N.Y. C.P.L.R. § 302(a)(1) (McKinney 1990). [HN10]To prove personal jurisdiction over a defendant based on § 302(a)(1), two conditions must be met: "first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity." CutCo Indus., 806 F.2d at 365. To "transact business," a nondomiciliary must "purposefully avail[] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its [*17] laws." McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37-38, 229 N.E.2d 604 (1967) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)). In addition, "A claim arises out of defendant's transaction of business in New York when there exists a substantial nexus between the business transacted and the cause of action sued upon." Agency Rent a Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 31 (2d Cir. 1996) (quotations and citations omitted).

Here, plaintiff alleges that KK Adachi transacted business in New York through: 1) plaintiff's activities in New York in performance of the contract; 2) KK Adachi's dealings with SonicStar; 3) KK Adachi's telephone calls and facsimile transmissions into New York; and 4) Western Mednics' activities in New York. However, none of these activities can serve as the predicate for personal jurisdiction under § 302(a)(1).

First, as noted above, plaintiff's activities in New York as KK Adachi's alleged agent cannot serve as the basis for the assertion of jurisdiction over KK Adachi, his alleged principal. See, e.g., Plaza Realty Investors v. Bailey, 484 [*18] F. Supp. 335, 347 n.10 (S.D.N.Y. 1979). In addition, although plaintiff alleges that he executed the contract with KK Adachi in New York -- KK Adachi claimed that its only meeting with SonicStar relating to the contract was in Utah -- this is insufficient to amount to a transaction of business by KK Adachi in New York. See, e.g., Galgay v. Bulletin Co., 504 F.2d 1062, 1065 (2d Cir. 1974). Second, in addition to the reasons noted above for rejecting the SonicStar relationship as a basis for finding that KK Adachi transacts business in New York, plaintiff has not alleged that its claims arise out of the SonicStar agreement. Plaintiff's claims relate to unpaid salary and expenses, unpaid commissions from sales to three companies, and KK Adachi's alleged actions undermining other prospective distribution agreements. No substantial nexus exists between the SonicStar agreement, to which plaintiff is not a party and in relation to which plaintiff alleges no wrongdoing, and plaintiff's breach of contract and fraud claims against KK Adachi.

Third, KK Adachi's use of telephone and facsimile to communicate with plaintiff when he was in New York is insufficient to demonstrate that KK [*19] Adachi transacted business in New York. [HN11]"The New York courts that specifically encounter defendants whose sole contact with the state is by way of telephone and mail, refuse to exercise jurisdiction." Metropolitan Air Serv., 648 F. Supp. at 1156 (citing Glassman v. Hyder, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968), L.F. Rothschild, Unterberg, Towbin v. McTamney, 89 A.D.2d 540, 452 N.Y.S.2d 630 (1982), aff'd, 59 N.Y.2d 651, 463 N.Y.S.2d 197, 449 N.E.2d 1275 (1983), and Delbello v. Japanese Steak House, 43 A.D.2d 455, 352 N.Y.S.2d 537 (1974)); see also Beacon Enters. Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983) [HN12]("New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."); Bachrach v. Keaty, 1991 U.S. Dist. LEXIS 4700 at *10, 1991 WL 60353, at *4 (S.D.N.Y. 1991). For instance, in Metropolitan Air Service, the out-of-state defendants retained the plaintiff, a New York broker, to obtain lessees or purchasers for their aircraft. The plaintiff performed the services under the contract -- providing potential customers [*20] to the defendants and negotiating terms of sales or leases -- in New York. The plaintiff and the defendants communicated regularly between New York and California by telex and telephone. 648 F. Supp. at 1154. The Court held that "defendant's contacts with New York in the instant case -- the exchange of telexes and telephone calls with a New York plaintiff -- although admittedly in furtherance of defendants' California business activities, fail to meet the level of contacts . . . necessary to sustain jurisdiction [pursuant to C.P.L.R. § 302(a)(1)]." Id. at 1156; see also Standard Enters., Inc. v. Bag-It, Inc., 673 F. Supp. 1216, 1220 (S.D.N.Y. 1987) [HN13]("Interstate telephone contacts do not generally have any great significance in § 302(a)(1) analyses."); Professional Personnel Management Corp. v. Southwest Med. Assoc., Inc., 216 A.D.2d 958, 958, 628 N.Y.S.2d 919, 919 (4th Dep't 1995) ("Interstate negotiations by telephone, facsimile or mail are insufficient to impose personal jurisdiction in New York upon a non-resident defendant.").

Only in cases where the telephone call or communication clearly shows that the defendant intends to project itself into ongoing [*21] New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on telephone calls or facsimile transmissions alone. See, e.g.,

*Picard v. Elbaum*, 707 F. Supp. 144, 148 (S.D.N.Y. 1989) (holding that maintenance of investment account in New York and telephone calls to New York ordering investment transactions were transactions of business in New York); *Ehrlich-Bober & Co. v. University of Houston*, 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726 (1980) (securities transactions executed over the telephone and visit by agent to New York were sufficient to confer jurisdiction). For example, in *Parke-Bernet Galleries Inc. v. Franklyn*, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506 (1970), the New York Court of Appeals held that participation in a New York auction by telephone conferred jurisdiction because the defendant had "projected himself" into New York commerce. *Id.*; *see also Premier Lending Servs., Inc. v. J.L.J. Assocs.*, 924 F. Supp. 13, 16 (S.D.N.Y. 1996).

Here, plaintiff's allegation that "KK Adachi instructed its employee(s) [*22] and/or agents and transacted business in New York through the making of telephone calls and through the transmission of facsimiles into New York" is insufficient to meet the transacting business standard. (Compl. P 10) Plaintiff does not allege that KK Adachi directly participated by telephone in negotiations in New York, let alone entered any distribution agreements executed or performed in New York. Rather, plaintiff alleges that KK Adachi called him while he was in New York, to discuss the business that plaintiff was conducting on its behalf. As noted, New York Courts have found that telephone calls confer jurisdiction only when the defendant projects himself into ongoing New York business through the telephone calls. However, if KK Adachi projected itself into New York commerce, it was through plaintiff's negotiations with companies, not through KK Adachi's calls to plaintiff in New York, and as noted, plaintiff's actions in New York do not confer jurisdiction over KK Adachi in this case. Indeed, were these telephone calls sufficient to confer jurisdiction, the rule forbidding attribution of an agent's actions to the principal for the purposes of litigation by the agent against [*23] the principal would be gutted; any showing that the principal had directed the agent's actions by telephone while the agent was in New York -- a likely scenario in every case -- would suffice the confer jurisdiction over the principal.

Fourth, as noted above, plaintiff has failed to allege facts showing that Western Mednics transacted business in New York. Moreover, even if Wang's alleged statement that Western Mednics did "a great deal of business" in New York is sufficient evidence of transaction of business (Kulas Aff. P 29), that statement would not prove that Western Mednics' business in New York is related to this action. Accordingly, plaintiff fails to establish jurisdiction over KK Adachi under C.P.L.R. § 302(a)(1).

C. *C.P.L.R. § 302(a)(3)* - Tortious Conduct Outside New York

Plaintiff alleges also that KK Adachi is subject to the jurisdiction of this court pursuant to C.P.L.R. § 302(a)(3). That section [HN14]confers jurisdiction over non-domiciliaries who commit a tortious act outside New York, causing injury to persons or property within the state, provided that the tortfeasor either: 1) regularly does or solicits business, engages in persistent conduct, or derives [*24] substantial revenue from goods or services consumed, in New York, or 2) expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3) (McKinney 1990). The first requirement of this section is that the defendant commit a tort; a breach of contract does not constitute a tortious act under C.P.L.R. § 302(a)(3). See *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581 (1976). "By merely alleging a tortious act, [a plaintiff] may not convert a simple breach of contract case into a tort for jurisdictional purposes." *Electro Magnetic (S) Ltd. v. Sea Cargo Int'l, Inc.*, 1991 U.S. Dist. LEXIS 10980 at *5, 1991 WL 156371, at *2 (S.D.N.Y. 1991). Therefore, I must evaluate whether plaintiff has properly alleged fraud against KK Adachi.

Plaintiff claims that KK Adachi breached the contract by refusing to pay his salary and expenses after August 1, 1996, by failing to pay commissions on purchases made under exclusive distribution agreements he arranged, and by undermining plaintiff's negotiation for further [*25] distribution agreements. Plaintiff alleges also that KK Adachi defrauded him by: 1) contracting with him with no intention of performing (Compl. P 69); and 2) by representing after entering the contract, through Saburo Adachi and other agents, that it intended to honor the contract when it had no such intention (*id.* PP 49(a)-(e), 70).

Plaintiff's fraud claim against KK Adachi and Saburo Adachi must be dismissed. First, it is well settled [HN15]under New York law that "mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement." *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 61-62 (S.D.N.Y. 1994) (citations omitted). "Where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Id.* at 62; *see also Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 123 (S.D.N.Y. 1996). A fraud claim may survive, however, where the plaintiff either: "i)

demonstrate[s] [*26] a legal duty separate from the duty to perform under the contract; or ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc, 98 F.3d 13, 19 (2d Cir. 1996)* (citations omitted); *see also Rolls-Royce Motor Cars, 929 F. Supp. at 123* (quotations and citations omitted).

Here, plaintiff's allegation that KK Adachi did not intend to honor the contract at its formation cannot transform a breach of contract claim into a fraud claim. *See, e.g., Sudul, 868 F. Supp. at 62*. Plaintiff alleges also that KK Adachi misrepresented its intention to honor the contract after entering the contract. However, as the Second Circuit stated in a similar circumstance, "these facts amount to little more than intentionally-false statements [by defendant] indicating his intent to perform under the contract. That is not sufficient to support a claim of fraud under New York law." *Bridgestone/Firestone, 98 F.3d at 19*; *see also Rolls-Royce Motor Cars, 929 F. Supp. at 124*; *McKernin [*27] v. Fanny Farmer Candy Shops, Inc., 176 A.D.2d 233, 234, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)*. Plaintiff's fraud claim does not rely on a separate legal duty or on any promises or representations collateral to the contract. In addition, plaintiff has alleged no special damages proximately caused by the alleged false representations which are not recoverable as contract damages. Therefore, the fraud claim must be dismissed.

Second, the fraud claim must be dismissed because plaintiff's allegation of the materiality of KK Adachi's statements is insufficient. [HN16]Under New York law,

> to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.

*Lama Holding v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80, 668 N.E.2d 1370 (1996)*. Here, plaintiff claims that the alleged misrepresentations were material because "Mr. Kulas would not have entered into the Contract if he had known that such representations [*28] were, in fact, false, untrue and inaccurate." (Compl P 71) However, the only alleged misrepresentations were made after plaintiff entered the contract, and therefore plaintiff cannot prove that KK Adachi's statements were material to his decision to enter the contract. Therefore, plaintiff has failed to plead facts showing the materiality of alleged misstatements.

Third, plaintiff's fraud claim must be dismissed because he has failed to allege any injury recoverable under a fraud claim. [HN17]The measure of damages for fraud is the actual pecuniary loss suffered as a result of the fraud, the so-called "out-of-pocket" rule. *See Lama Holding, 88 N.Y.2d at 421, 646 N.Y.S.2d at 80* (citing *Reno v. Bull, 226 N.Y. 546, 124 N.E. 144 (1919)*). Under the "out-of-pocket" rule, a plaintiff's loss is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Sager v. Friedman, 270 N.Y. 472, 481, 1 N.E.2d 971 (1936)*. "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." [*29] *Lama Holding, 88 N.Y.2d at 421, 646 N.Y.S.2d at 80*. Thus, "there can be no recovery of profits which would have been realized in the absence of fraud." *Id.* Here, plaintiff seeks damages for injury to his business reputation and loss of business and customers in New York, presumably customers which would have entered distribution agreements with KK Adachi absent the fraud. These are not out-of-pocket losses and plaintiff has failed to plead damages recoverable in a fraud action.

Therefore, plaintiff's only viable claims against KK Adachi are breach of contract claims, and a court cannot assert jurisdiction under § 302(a)(3) based on breach of contract. Therefore, this court lacks personal jurisdiction over KK Adachi and plaintiff's claims against it must be dismissed.[1]

> 1 Because I dismiss the claims against KK Adachi for lack of personal jurisdiction, I need not address other alleged deficiencies in these claims. I do note that the second claim, "bad faith breach of contract," duplicates the first claim, breach of contract. *See OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc., 952 F. Supp. 120, 124 (N.D.N.Y. 1997)*; *Prudential Ins. Co. of Amer. v. Hilton Hotels Corp., 1996 U.S. Dist. LEXIS 8499 at *8, 1996 WL 340002, at *9 (S.D.N.Y. 1996)*.

[*30] Plaintiff's fraud claim against Saburo Adachi, which is the only claim against him, must be dismissed as well because, as noted, plaintiff has failed to plead facts showing materiality of alleged misstatements and fraud damages.

IV.

Plaintiff's only remaining claims are his fraud and tortious interference with contractual relations claims against Western Mednics. Western Mednics moves to dismiss these claims, *inter alia*, for lack of in personam jurisdiction. Plaintiff asserts personal jurisdiction under C.P.L.R. §§ 301, 302(a)(1), and 302(a)(3). However, as noted above, plaintiff has failed to allege facts from which it can reasonably be inferred that Western Mednics does business or transacts business in New York. Therefore, Western Mednics is not subject to personal jurisdiction pursuant to C.P.L.R. §§ 301 or 302(a)(1).

As to C.P.L.R. § 302(a)(3), plaintiff claims that Western Mednics committed fraud by representing to plaintiff on September 1, 1996, that KK Adachi intended to honor its obligations under the contract. He claims also that Western Mednics tortiously interfered with his contractual relations with KK Adachi by usurping his role in the United States, and causing [*31] damage to his business reputation and loss of business and customers in New York. (Compl. PP 30, 89)

Under § 302(a)(3), as noted, plaintiff must allege tortious conduct, causing injury within New York.

> [HN18]New York law is clear that where a plaintiff claims to have been injured by a tortious interference with its business, indirect financial loss resulting from the fact that the injured person resides or is domiciled in New York will not support jurisdiction under section 302(a)(3). . . . Rather, plaintiff must also establish a significant economic injury in New York, such as the loss or threatened loss of important New York customers.

*ICC Primex Plastics Corp. v. LA/ES Laminati Estrusi Termo-Plastici S.P.A.*, 775 F. Supp. 650, 656 (S.D.N.Y. 1991). In addition, because Western Mednics does not transact business in New York, plaintiff must allege facts from which it can be inferred that Western Mednics expected or should reasonably have expected that its allegedly tortious acts would have consequences in New York and that Western Mednics derives substantial revenue from interstate or international commerce. N.Y. C.P.L.R. § 302(a)(3).

Plaintiff alleges that it lost [*32] customers in New York as a result of Western Mednics' actions. This is sufficient to satisfy the injury requirement. However, plaintiff fails to demonstrate that Western Mednics should reasonably have expected its actions to have consequences in New York. Plaintiff alleges that Western Mednics should have expected that plaintiff would lose customers in New York because "of [Western Mednics'] business activities in and relating to New York, its course of conduct in New York, and because, upon information and belief, New York is the world's center for trade relating to medical devices and associated distribution opportunities." (Compl. P 30) Because, as noted, Western Mednics has not transacted business in New York, plaintiff appears to rest its argument upon New York's role as the medical device center of the world. However, plaintiff is a Massachusetts resident, and he does not allege that Western Mednics was aware of his specific activities in New York in performance of the contract with KK Adachi, or of the quality or intensity of his contacts with New York companies. Nor is there any factual allegation that Western Mednics tortiously interfered with any New York corporation in [*33] its activities on behalf of KK Adachi. [HN19]In cases where courts have found that a defendant should reasonably have expected that a plaintiff would lose customers in New York, the defendant had more specific reason to be aware of the likely consequences of its tortious acts in New York than merely New York's status as a large market. *See, e.g., Hannex Corp. v. GMI, Inc.*, 1989 U.S. Dist. LEXIS 2504, at *16, 1989 WL 23960, at *6 (E.D.N.Y. 1989) (loss of customers foreseeable where defendant knew that plaintiff was selling some of its products in New York), *aff'd*, 880 F.2d 1318, 1989 U.S. App. LEXIS 10895 (2d Cir. 1989); *Cleopatra Kohlique, Inc. v. New High Glass, Inc.*, 652 F. Supp. 1254, 1257 (S.D.N.Y. 1987) (loss of customers foreseeable where goods producing injury were shipped by defendant to New York); *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 206, 413 N.Y.S.2d 127, 132, 385 N.E.2d 1055 (1978) (loss of customers in New York foreseeable where defendant had actively solicited one of plaintiff's largest New York customers). Plaintiff's loss of business in New York from KK Adachi's breach of contract is simply too remote for Western Mednics to have reasonably expected that KK Adachi's breach would result [*34] in injury to plaintiff in New York. Under plaintiff's logic, any plaintiff in a publishing or advertising case could get personal jurisdiction under C.P.L.R. § 302(a)(3) simply by asserting that New York is the center of the industry, without any other allegations supporting a defendant's reasonable expectation that injury from its actions would result in New York. New York would have jurisdiction over any tortious interference action relating to publishing, advertising or other industries in which New York is the recognized center. Western Mednics cannot be subjected to this court's jurisdiction pursuant to C.P.L.R. § 302(a)(3) based on such a tenuous showing.

Further, even if this court had jurisdiction over Western Mednics, both of plaintiff's claims must be dismissed as legally insufficient. Plaintiff's fraud claim must be dismissed because, as noted above, plaintiff has alleged no injury recoverable for a fraud claim. Plaintiff's

Page 11

tortious interference with contractual relations claim must be dismissed as well. An agent cannot tortiously interfere with its principal's contract unless the agent acts outside the scope of its authority. See *Catrone v. Cables & Chips, Inc.*, [*35] 1997 U.S. Dist. LEXIS 4308, at *6, 1997 WL 164283, at *2 (S.D.N.Y. 1997); *Nu-Life Const. Corp. v. Board of Educ.*, 204 A.D.2d 106, 107, 611 N.Y.S.2d 529, 530 (1st Dep't 1994) ("It is well settled that [HN20]an agent cannot be held liable for inducing his principal to breach a contract with a third person, at least where he [or she] is acting on behalf of his principal and within the scope of his authority.") (citations and quotations omitted; alterations in original); *Kosson v. "Algaze"*, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228 (1st Dep't 1994), *aff'd*, 84 N.Y.2d 1019, 622 N.Y.S.2d 674, 646 N.E.2d 1101 (1995). Plaintiff alleges that "Western Mednics acts as the agent of KK Adachi and/or defendant Saburo Adachi." (Compl. P 27) Further, plaintiff does not claim that Western Mednics was acting outside the scope of its authority when it allegedly tortiously interfered with plaintiff's contract with KK Adachi. In fact, plaintiff alleges that "defendant KK Adachi and defendant Saburo Adachi utilized and are utilizing defendant Western Mednics" to negotiate distribution arrangements. (Compl. P 48) Therefore, plaintiff's tortious interference with contractual relations claim must be [*36] dismissed.

* * *

For the above reasons, defendants' motion to dismiss is granted.

SO ORDERED:

Dated: New York, New York

May 12, 1997

Michael B. Mukasey,

U.S. District Judge