LEXSEE


Analysis
As of: Jun 30, 2008

RANDALL I. RACKSON, Plaintiff, -against- HOWARD B. SOSIN, Defendant.

95 Civ. 1105 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 20350

December 18, 1997, Decided
December 22, 1997, Filed

**DISPOSITION:** [*1] Plaintiff's motion to amend granted, except with respect to plaintiff's proposed Fifth, Sixth and Seventh Claims for Relief.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff and defendant were partners. After a dispute regarding management of the partnership, plaintiff filed a breach of contract suit to recover owed compensation. Plaintiff later moved to amend his complaint, pursuant to Fed. R. Civ. P. 15(a).

**OVERVIEW:** Plaintiff and defendant entered into a partnership that involved complicated financial transactions. A disagreement arose regarding management of the partnership and the types of transactions that it would involve itself in. Plaintiff left the partnership and filed suit to recover his deferred compensation. Then, he sought leave to amend his complaint to change the name of the fund from which he was to be paid his deferred compensation and to also add a fraudulent inducement count. The court found that he could amend his complaint as to the name of the fund because it was early in the litigation and he had not yet amended the complaint. However, he could not amend as to the fraudulent inducement claim because it would be futile under a Fed. R. Civ. P. 12(b)(6) standard, in that the claim could not survive a motion to dismiss.

**OUTCOME:** The court granted the motion to amend as to the name of the fund, but denied the amendment as to the fraudulent inducement claim.

**CORE TERMS:** joint venture, amend, pool, summary judgment, mediation, leave to amend, fraudulent, discovery, confidentiality, futility, confidential, disqualify, inducement, breach of contract, citations omitted, causes of action, anticipation, termination, disclosure, arbitration, proposed amendment, new claims, earned wages, legal duty, responsive pleading, opposing party, fraud claim, factual allegations, extraneous, forfeiture

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1]The Federal Rules of Civil Procedure permit a party to amend its pleadings once as a matter of right before a responsive pleading is served or, if no responsive pleading is permitted and the case has not yet been placed on the trial calendar, within twenty days after the pleading is served. After that point, absent consent from the opposing party, plaintiff must seek leave of the district court to amend. Fed. R. Civ. P. 15(a). Leave of the court shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). decision whether to grant such a motion rests within the discretion of the district court. However, outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion. Among the reasons that justify denying leave to amend are: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amend-

ments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN2]When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims, the court is free to deny leave to amend.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN3]Futility of the proposed amendment is a sound reason to deny leave to amend. If the proposed claims would be subject to dismissal under Fed. R. Civ. P. 12(b)(6), a court should refuse to grant leave to amend, rather than granting leave and then awaiting a motion to dismiss.

*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN4]To maintain a claim for fraud plaintiff must not only allege: (1) a material false representation made by defendant; (2) defendant's intent to defraud; (3) plaintiff's reasonable reliance on the representation; and (4) damages incurred by plaintiff as a result of such reliance, but plaintiff must also either: (i) demonstrate a legal duty separate from the duty to perform under the contract or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract.

**COUNSEL:** For RANDALL I. RACKSON, plaintiff: Jonathan L. Rosner, Rosner Bresler Goodman & Bucholz, New York, NY.

For HOWARD B. SOSIN, defendant: Frederick T. Davis, Shearman & Sterling, Ronald S. Rolfe, Cravath, Swaine & Moore, New York, NY.

**JUDGES:** LORETTA A. PRESKA, U.S.D.J.

**OPINION BY:** LORETTA A. PRESKA

**OPINION**

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, District Judge:

This action arises out of an alleged breach of an oral agreement between plaintiff Randall I. Rackson ("Rackson") and defendant Howard B. Sosin ("Sosin") to share profits derived from a joint venture, AIG Financial Products, Inc. ("AIG-FP"), between American International Group ("AIG") and Sosin. Plaintiff originally commenced this action on February 6, 1995. Sosin answered on March 10, 1995. Sosin served a motion for summary judgment on May 3, 1995. Shortly thereafter, the parties negotiated a stipulation covering limited discovery related to the motion and establishing a briefing schedule. (Affidavit of Ronald S. Rolfe, sworn to on August 1, 1997 ("Rolfe Aff.") Ex. 3). Defendant then raised objections [*2] to plaintiff's counsel, Arkin, Schaffer & Supino, because one of the attorneys who had represented defendant in a previous arbitration proceeding between defendant and AIG had since joined the Arkin firm. The parties deferred further briefing of defendant's motion for summary judgment while exploring the possibility of settlement through mediation. (Rolfe Aff. P 5, Exs. 5, 6). The mediation did not culminate in a settlement. Defendant then moved to disqualify plaintiff's counsel pursuant to Canons 4 and 9 of the Code of Professional Responsibility. Plaintiff later changed counsel, and the disqualification motion was declared moot. Plaintiff's new counsel then moved to amend his complaint. Before me now is plaintiff's motion to amend his complaint and defendant's opposition. For the reasons that follow, plaintiff's motion to amend is granted, except with respect to plaintiff's proposed Fifth, Sixth and Seventh Claims for Relief.

*BACKGROUND*

In 1987, both Sosin and Rackson began working at a start-up company, AIG-FP, formed to engage in business relating to derivatives and other complex financial products. (Complaint ("Compl.") PP 1, 16). AIG-FP was a joint venture owned by [*3] Sosin and AIG, and the terms of the joint venture were documented in two agreements, a Joint Venture Agreement dated January 27, 1987 and an Amended and Restated Joint Venture Agreement dated May 31, 1990. (*Id.*). In forming the joint venture, Sosin was obligated to provide the employees and expertise necessary to run the business, and AIG was obligated to contribute a financial guaranty of AIG-FP's obligations. (*Id.* P 1). The senior management team for the joint venture was composed of Sosin, Rackson, and Barry Goldman, an associate of Sosin and head of derivative research at Drexel Burnham Lambert ("Drexel"). (*Id.* P 18). Sosin's share of the profits generated by the joint venture was paid in the form of an annual pool of funds referred to in the original complaint as "incentive compensation." (*Id.* PP 1, 19). This pool was to be allocated among the employees of AIG-FP according to Sosin's sole discretion. (*Id.* P 20). Such discretion allowed Sosin to compensate Rackson without any interference from AIG. (*Id.* P 20).

Plaintiff alleges that before either Sosin or Rackson began working together at AIG-FP, they had agreed orally that after the payment of incentive [*4] compensation to other AIG-FP employees, the remainder of the incentive compensation pool would be shared between Rackson and Sosin. (*Id.* PP 2, 21). According to this agreement, Rackson would receive a minimum of 20% of whatever amount Sosin retained for himself. (*Id.* PP 2, 22). The precise allocation above and beyond the 20% minimum was to be determined by assessing the contribution to the pool of areas of business managed by Rackson, as well as other non-financial contributions made by Rackson to the overall success of the business. (*Id.* P 22). In 1991, following a renegotiation of the joint venture between Sosin and AIG, Rackson agreed to accept additional responsibilities in exchange for an increased share of the incentive compensation pool. (*Id.* PP 2, 24). Rackson would now be entitled to at least 33% and as much as 50% of the amount retained by Sosin. (*Id.*).

In 1993, a dispute between Sosin and AIG arose over AIG's attempt to place restrictions on transactions into which AIG-FP could enter. (*Id.* P 30). Effective December 23, 1993, Sosin terminated his association with AIG-FP. (*Id.*). Simultaneously, Sosin commenced an arbitration proceeding against [*5] AIG seeking "an accounting of the amounts due to Sosin and others under the Agreement . . . ." (*Id.*). At this time Sosin also began recruiting employees for a new joint venture he intended to form. (*Id.* PP 3, 33).

While attempting to arbitrate, Sosin and AIG became embroiled in a dispute over the financial consequences of the termination, in particular over the amount of the 1993 incentive compensation pool. (*Id.* PP 3, 31). Rackson alleges that in an effort to induce Rackson to continue to work for AIG-FP during the 1993 year, to increase Sosin's leverage with AIG and to forego other employment opportunities, Sosin promised Rackson and others incentive compensation payments for the 1993 year on the same terms as the payments made during the year prior to the termination. (*Id.* PP 3, 33-35). Because of Rackson's alignment with Sosin and Rackson's rejection of AIG's offer of employment, Rackson alleges, AIG attempted to "punish" Rackson by forcing him to forfeit upwards of $ 11 million in deferred compensation previously earned but not yet paid (*Id.* P 35). Concerned over the consequences of Rackson's continued alignment with Sosin, Rackson sought legal advice from [*6] Ronald S. Rolfe ("Rolfe") of Cravath, Swaine & Moore, whom Sosin had previously retained in connection with the AIG dispute. (*Id.* P 36).

Sosin subsequently settled his dispute with AIG prior to the commencement of arbitration, allegedly receiving almost $ 200 million for the 1993 incentive compensation. (*Id.* PP 3, 37). Sosin purportedly honored his promises to other employees but retained the portion of the 1993 incentive compensation promised to Rackson. (*Id.* PP 4, 41). In his original complaint, Rackson asserted, upon this set of alleged facts, claims for, *inter alia*, breach of contract, breach of implied contract, fraudulent inducement and unjust enrichment in his original complaint.

In the motion for summary judgment served on Rackson in May of 1995, Sosin argued that he was entitled to summary judgment on all claims because there was no 1993 "incentive compensation." (Rolfe Aff. Ex. 1). "Incentive Compensation" is among the defined terms in the original Joint Venture Agreement. Section 3.3 of the original Joint Venture Agreement provided the manner in which the "Incentive Compensation" was to be calculated and paid to Sosin and other full-time employees. ( [*7] *Id.* at 5). This section also permitted Sosin "to retain for his own services such portions of Incentive Compensation as he shall in his sole discretion determine, which amounts prior to his receipt thereof may not be assigned by him to any third parties." (*Id.* at 5-6 (quoting § 3.3(a) of the Joint Venture Agreement)). That section further provided that Sosin "was entitled to select full-time employees . . . who will receive a portion of such Incentive Compensation and to determine the amount thereof any such employee shall receive." (*Id.* at 6).

Defendant's motion for summary judgment was premised upon plaintiff's use of the term "incentive compensation" to name the pool of funds from which the 20% was to be paid Rackson. While in the original complaint, plaintiff had called the pool from which this 20% derived the "incentive compensation pool," plaintiff supposedly did not intend to refer to the "incentive compensation" as defined by the Joint Venture Agreement but rather intended to refer to the pool of funds from which Rackson's 20% was to be paid. Plaintiff's amended complaint refers to the pool of funds from which Rackson was to be paid as the "Additional Compensation [*8] Pool," and plaintiff now submits that this term encompassed more than "Incentive Compensation," including more than profits for that year alone. (Reply Declaration of Marianne F. Murray ("Murray Reply Decl.") executed August 14, 1997, P 5). Plaintiff thus seeks to clarify the original pleadings with his amended complaint.

## DISCUSSION

### I. Plaintiff's Motion to Amend

[HN1]The Federal Rules of Civil Procedure permit a party to amend its pleadings once as a matter of right before a responsive pleading is served or, if no responsive pleading is permitted and the case has not yet been

placed on the trial calendar, within twenty days after the pleading is served. After that point, absent consent from the opposing party, plaintiff must seek leave of the district court to amend. Fed. R. Civ. P. 15(a). Leave of the court "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962); Rachman Bag Co. v. Liberty Mutual Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995). The decision whether to grant such a motion rests within the discretion of the district court. Foman, 371 U.S. at 182. However, "outright [*9] refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion." Id. Among the reasons that justify denying leave to amend are:

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment. . . .

Id.; Rachman Bag Co., 46 F.3d at 234; Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995) (citations omitted); Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend because "permitting the proposed amendment would have been especially prejudicial given the fact that . . . [the defendant] had already filed a motion for summary judgment"); Reisner v. General Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981), aff'd, 671 F.2d 91 (2d Cir.), cert. denied, 459 U.S. 858, 103 S. Ct. 130, 74 L. Ed. 2d 112 (1982); Bymoen v. Herzog, Heine, Geduld, Inc., 1991 U.S. Dist. LEXIS 7169, No. 88 Civ. 1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991); [*10] CL-Alexanders Laing & Cruickshank v. Goldfeld, 739 F. Supp. 158, 167 (S.D.N.Y. 1990). [HN2]"When it appears that leave to amend is sought in anticipation of an adverse ruling on the original claims, however, the court is free to deny leave to amend." PI, Inc. v. Quality Products, Inc., 907 F. Supp. 752, 764 (S.D.N.Y. 1995).

A. Anticipation of An Adverse Ruling

Defendant opposes plaintiff's motion on the ground that plaintiff seeks to amend in anticipation of an adverse ruling on defendant's motion for summary judgment. However, the cases upon which defendant relies, such as Ansam, involve markedly different sets of circumstances raising qualitatively different concerns of prejudice to defendant. For example, Ansam is easily distinguishable from the instant action because only limited discovery has been taken in this action. In Ansam, not only had discovery already closed, but the new claims that plaintiff sought to add covered a different period of time and were based on a different statute not previously mentioned in the complaint. Under such circumstances, the prejudice to defendant lies in the fact that defendant has no notice of the facts giving rise to the [*11] new claim and defendant will be forced to proceed to trial on a new complaint without the aid of discovery. See Ansam, 760 F.2d at 446.

Clearly, the amendments sought by plaintiff Rackson would not prejudice defendant in any comparable manner. In fact, in defendant's moving papers in support of his motion to disqualify plaintiff's previous counsel, defendant insisted that a change of counsel at that juncture would not prejudice defendant because the action was still in its incipient stages. (Reply Memorandum of Law in Support of Defendant's Motion to Disqualify at 20) ("Rackson will not suffer any extraordinary prejudice since this case is still in its infancy."). This action has remained at the same stage as it was when defendant moved to disqualify plaintiff's counsel. Thus, this matter is different from, for example, Ansam, 760 F.2d at 446, where amendment was sought after the close of discovery and filing of defendant's motion for summary judgment and where the amendment would have added a claim based on a new set of operative facts covering a different time period. Here, with only limited discovery having been taken, defendant cannot claim that the timing of plaintiff's [*12] motion to amend would unduly prejudice him.

In all of the cases relied upon by defendant, the plaintiffs had already amended their complaints at least once and thus had already been given an opportunity to cure any defects in their pleadings. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (denying leave to amend second amended complaint); Ansam, 760 F.2d at 446 (denying leave to amend first amended complaint); P.I., Inc., 907 F. Supp. at 764 (denying leave to amend first amended complaint); Reisner, 511 F. Supp. at 1172-73 (denying leave to amend second amended complaint); Bymoen, 1991 WL 95387, at *1 (denying leave to amend third amended complaint); see also DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 71-72 (2d Cir.) (holding that it is not an abuse of discretion to dismiss a complaint without leave to replead "when a party has been given ample prior opportunity to allege a claim"), cert. denied, 136 L. Ed. 2d 399, 117 S. Ct. 509 (1996); Armstrong v. McAlpin, 699 F.2d 79, 93-93 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiff's second amended complaint, the district [*13] court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead."); Luce v. Edel-

*stein*, 802 F.2d 49, 56 (2d Cir. 1986) (stating that in cases where leave has not been granted, plaintiffs have usually already had one opportunity to replead). Plaintiff in the instant action has not been given another opportunity to plead, much less the two or three opportunities granted plaintiffs in the cases cited by defendant.

Inasmuch as defendant argues that plaintiff's motion to amend is a transparent effort to "derail" defendant's motion for summary judgment, defendant undermines his own argument. Defendant argues on the one hand that plaintiff is seeking leave to amend to avoid an adverse ruling on defendant's motion for summary judgment. On the other hand, defendant argues that leave to amend should be denied on the ground of futility. Defendant cannot in good faith argue that futile amendments to the complaint would avert an adverse ruling on a motion for summary judgment. Nevertheless, I will address defendant's futility argument.

B. *Futility*

1. Plaintiff's Fifth and Sixth Claims for Relief

As stated *supra*, [HN3]futility of the proposed amendment [*14] is a sound reason to deny leave to amend. *John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). If the proposed claims would be subject to dismissal under Rule 12(b)(6), a court should refuse to grant leave to amend, rather than granting leave and then awaiting a motion to dismiss. *Bank of New York v. Sasson*, 786 F. Supp. 349, 352 (S.D.N.Y. 1992). Defendant argues that plaintiff's proposed Fifth and Sixth causes of action, like the previous Fifth and Sixth causes of action, fail to state a claim.

In plaintiff's original complaint, Counts Five and Six asserted claims for fraudulent inducement. In his motion to amend, plaintiff concedes that in light of *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996), *Grappo v. Alitalia Linee Aeree Italiane S.p.A.*, 56 F.3d 427 (2d Cir. 1995), and *Sudul v. Computer Outsourcing Services*, 868 F. Supp. 59 (S.D.N.Y. 1994), these counts cannot withstand a motion to dismiss. These cases stand for the proposition that [HN4]to maintain a claim for fraud plaintiff must not only allege: (1) a material [*15] false representation made by defendant; (2) defendant's intent to defraud; (3) plaintiff's reasonable reliance on the representation; and (4) damages incurred by plaintiff as a result of such reliance, but plaintiff must also either: "(i) demonstrate a legal duty separate from the duty to perform under the contract . . . or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (citing *Van Neil v. Berger*, 219 A.D.2d 811, 811, 632 N.Y.S.2d 48, 48 (4th Dep't 1995); *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996) (citing cases); and *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)); *see also Grappo*, 56 F.3d at 434 (stating that to maintain an action for fraud plaintiff must allege "that the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform") (citations omitted); *Sudul*, 868 F. Supp. at 62 ("Where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never [*16] intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.") (citations omitted). In plaintiff's proposed amended complaint, Counts Five and Six assert claims of fraudulent inducement. They do not differ in material respect from Counts Five and Six in the original complaint and differ only in that plaintiff now claims that his reliance was "reasonable." Having failed to allege a legal duty separate from the duty to perform under the contract, plaintiff has failed to state a claim for fraudulent inducement. Therefore, plaintiff's motion to amend his Fifth and Sixth Claims for relief must be denied as futile.

2. Plaintiff's Seventh Claim for Relief

In plaintiff's Seventh Claim for Relief, plaintiff attempts to assert a claim for forfeiture of earned wages. Plaintiff has not cited to any relevant case law suggesting that "forfeiture of earned wages" is a cognizable cause of action. Inasmuch as plaintiff restates his claim for breach of contract, I consider this claim redundant and strike it pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. *See Sudul*, [*17] 868 F. Supp. at 61.

II. Breach of Confidentiality

In opposing plaintiff's motion to amend, defendant argues that various changes from the original pleadings indicate that plaintiff has misused information acquired during the course of the parties' mediation. Defendant relies on *Bernard v. Galen Group, Inc.*, 901 F. Supp. 778 (S.D.N.Y. 1995) in which the court commented as follows with respect to the importance of maintaining mediation discussions in strict confidence:

> It is essential to the proper functioning of the Civil Appeals Management Plan that all matters discussed at these conferences remain confidential. The guarantee of confidentiality permits and encourages counsel to discuss matters in an uninhibited fashion. . . . If participants cannot rely

on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness [*18] of a program. . . .

*Id.* at 784 (quoting *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2d Cir. 1979), *cert. denied*, 444 U.S. 1076, 100 S. Ct. 1023, 62 L. Ed. 2d 758 (1980)). The changes in plaintiff's pleadings that defendant asserts suggest a misuse of information learned through mediation simply do not suggest any breach of confidentiality. Defendant points to the fact that in his amended complaint plaintiff no longer avers that he is the godfather of defendant's children and no longer avers that plaintiff was offered the presidency of AIG-FP were he to remain after defendant's termination. Contrary to defendant's argument, these amendments do not imply that plaintiff has disclosed any confidential matters discussed in mediation. Plaintiff has merely withdrawn factual allegations that had been included in his initial pleading. Had plaintiff included admissions or comments of defendant not previously included in the initial complaint, these additions might raise the inference of a disclosure of confidential information; however, the fact that plaintiff has chosen to delete certain extraneous information from a relatively prolix pleading [*19] does not carry the same significance. The instances in which courts have discerned a breach of the confidentiality expected in the mediation process have involved the disclosure to the court of information that could only have been gleaned during the course of mediation. Defendant does not point to a disclosure but rather to a deletion. Deletion of a factual allegation immaterial to any of the claims does not implicate any breach of confidentiality. In fact, the only way one could surmise that these allegations had been discussed in the course of mediation is through defendant's accusation of misuse of information gained in the course of mediation.

## CONCLUSION

For the reasons set forth above, plaintiff's motion to amend is granted, except with respect to plaintiff's proposed Fifth, Sixth and Seventh Claims for Relief.

SO ORDERED

December 18, 1997

LORETTA A. PRESKA, U.S.D.J.