LEXSEE


Positive
As of: Jun 30, 2008

**SOLAR TRAVEL CORP., Plaintiff, -against- MORRIS NACHTOMI, Defendant.**

00 Civ. 3564 (AGS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 7549

June 8, 2001, Decided
June 8, 2001, Filed

**DISPOSITION:** [*1] Defendant's motion to dismiss plaintiff's Amended Complaint in full granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporate officer moved to dismiss plaintiff travel agency's action alleging fraud, negligent misrepresentation, deceptive business practices, prima facie tort, and tortious interference with prospective business relations.

**OVERVIEW:** Plaintiff travel agency brought an action against defendant corporate officer alleging fraud, negligent misrepresentation, deceptive business practices, prima facie tort, and tortious interference with prospective business relations. Defendant moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), claiming that he was entitled to immunity under the corporate veil of his employer, and that plaintiff failed to sufficiently plead its claims. The court granted defendant's motion, holding that, although defendant was not entitled to immunity from plaintiff's claims of fraud and other tort-related wrongs, plaintiff failed to sufficiently plead its claims against defendant. The court concluded that plaintiff was unable to claim that defendant's alleged fraudulent inducement proximately resulted in its injuries to support its fraud and negligent misrepresentation claims, that plaintiff was unable to establish that the conduct complained was consumer oriented under N.Y. Gen. Bus. Law § 349, that plaintiff's prima facie tort claim was time-barred, and that plaintiff failed to allege the loss of any specific relationship to support its tortious interference claim.

**OUTCOME:** Motion to dismiss was granted.

**CORE TERMS:** amend, tortious interference, misrepresentation, fraud claim, deposit, prima facie, consumer, business relations, special damages, profitability, misleading, breach of contract, time-barred, profitable, discovery, causation, sector, cargo, negligent misrepresentation, prima facie tort, tort claims, statutes of limitations, passenger, contractual relationship, business opportunities, cause of action, citation omitted, deceptive, goodwill, common law fraud

**LexisNexis(R) Headnotes**

*International Law > Dispute Resolution > Conflicts of Laws > General Overview*
[HN1]If conflicting conduct-regulating laws are at issue between to countries, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN2]On a motion to dismiss, the court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the

non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Evidence > Judicial Notice > General Overview*
[HN3]In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may only consider facts alleged in the complaint or in documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Breach*
[HN4]Under New York law, immunity as a corporate employee extends to officers or employees who induce their corporation to breach a contract; it does not extend to employees who commit fraud or other torts.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN5]Piercing the corporate veil is only necessary in a breach of contract context.

*Commercial Law (UCC) > Sales (Article 2) > Form, Formation & Readjustment > General Overview*
*Contracts Law > Breach > General Overview*
*Contracts Law > Defenses > Fraud & Misrepresentation > General Overview*
[HN6]Under New York law, a claimant may allege a fraud claim arising out of a contractual relationship, in concert with a claim for breach of contract, without waiving the fraud claim.

*Torts > Business Torts > Fraud & Misrepresentation > Actual Fraud > General Overview*
[HN7]A New York common law fraud claim is defined as a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury. The claim requires a showing of loss causation, an analog of the tort concept of proximate causation, such that the alleged injury is the natural and probable consequence of the defrauder's misrepresentation or the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.

*Torts > Business Torts > Fraud & Misrepresentation > Negligent Misrepresentation > General Overview*
[HN8]In order to recover on a claim for negligent misrepresentation under New York law, a plaintiff must establish that the defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided to his detriment.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN9]N.Y. Gen. Bus. Law § 349 was designed to protect consumers from various forms of consumer fraud and deception. It outlaws, inter alia, deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York. N.Y. Gen. Bus. Law § 349(a).

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
[HN10]In order to establish a violation of N.Y. Gen. Bus. Law § 349, a plaintiff must prove that: (i) the conduct of the defendant is consumer-oriented; (ii) defendant is engaging in an act or practice that is deceptive or misleading in a material way; and (iii) plaintiff has been injured by reason thereof. A deceptive act or practice is defined as a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances.

*Torts > Business Torts > Fraud & Misrepresentation > General Overview*
*Torts > Transportation Torts > General Overview*
[HN11]A plaintiff must plead and prove injury to the public generally, rather than to itself alone under N.Y. Gen. Bus. Law § 349. The conduct need not be repetitive or recurring, but the defendant's acts or practices must have a broad impact on consumers at large. Moreover, private business disputes do not give rise to claims under N.Y. Gen. Bus. Law § 349.

*Banking Law > Bonds, Guarantees & Letters of Credit > General Overview*
*Civil Procedure > Remedies > Damages > Special Damages*
*Torts > Intentional Torts > Prima Facie Tort > Elements*
[HN12]Prima facie tort consists of (i) intentional infliction of harm (ii) causing special damages, (iii) without excuse or justification, (iv) by an act or series of acts that would otherwise be lawful. To state a claim for prima facie tort, the plaintiff must allege that the defendant's actions were taken out of disinterested malevolence, that is, with the sole intention to harm plaintiff. When there are other motives, such as profit, self-interest or business advantage, no recovery is permitted under a prima facie tort theory.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Intentional Torts > Prima Facie Tort > Defenses*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN13]The statute of limitations for prima facie tort claims under New York law is three years. N.Y. C.P.L.R. § 214.

*Torts > Procedure > Commencement & Prosecution > General Overview*
*Torts > Procedure > Statutes of Limitations > Accrual of Actions > Discovery Rule*
[HN14]It is a basic principle that a tort cause of action does not accrue under New York law until the last of the elements of the cause of action, typically injury, exists.

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN15]Fed. R. Civ. P. 8(a) requires a short and plain statement of the claim showing that the pleader is entitled to relief.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Civil Procedure > Remedies > Damages > Special Damages*
*Torts > Intentional Torts > Prima Facie Tort > Elements*
[HN16]Special damages must be plead with particularity, as is required under New York law.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Special Damages*
*Civil Procedure > Remedies > Damages > Punitive Damages*
*Civil Procedure > Remedies > Damages > Special Damages*
[HN17]General allegations of loss are insufficient to allege special damages.

*Torts > Business Torts > Commercial Interference > Prospective Advantage > Elements*
[HN18]Under New York law, in order to state a claim for tortious interference with existing or prospective business relations, a plaintiff must allege: (i) business relations with a third party; (ii) the defendant's interference with those business relations; (iii) that defendant acted with the sole purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Business Torts > Commercial Interference > Prospective Advantage > General Overview*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN19]The statute of limitations for tortious interference claims under New York law is three years. N.Y. C.P.L.R. § 214 (McKinney's 1990).

*Contracts Law > Third Parties > General Overview*
*Torts > Business Torts > Commercial Interference > Business Relationships > Elements*
*Torts > Business Torts > Commercial Interference > Prospective Advantage > General Overview*
[HN20]It is well settled under New York law that a plaintiff must allege that he was actually and wrongfully prevented from entering into or continuing in a specific business relationship. Tortious interference with business relations applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*

*Criminal Law & Procedure > Accusatory Instruments > General Overview*
[HN21]Whether to grant leave to amend a complaint lies within the court's discretion, and a court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.

**COUNSEL:** For SOLAR TRAVEL CORP., plaintiff: Krishnan S. Chittur, New York, NY.

**JUDGES:** ALLEN G. SCHWARTZ, U.S.D.J.

**OPINION BY:** ALLEN G. SCHWARTZ

**OPINION**

*MEMORANDUM ORDER*

ALLEN G. SCHWARTZ, DISTRICT JUDGE:

This diversity action arises out of the termination of a contractual relationship between plaintiff and defendant's corporate employer. Plaintiff filed an action grounded in breach of contract against the corporation, but that action was stayed when the corporation entered into bankruptcy. Here, plaintiff asserts several claims against defendant under New York law based on the latter's individual actions, specifically for fraud, negligent misrepresentation, deceptive business practices, prima facie tort, and tortious interference with prospective business relations. Defendant moves to dismiss the Complaint in full pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the motion is granted.

**I. Factual Background** [1]

1   The following facts are derived from the Amended Complaint, and are accepted as true for the purposes of the instant motion.

[*2] Plaintiff Solar Travel Corp. ("plaintiff"), a travel agency, is a corporation organized and existing under the laws of India with its principal place of business in Mumbai, India. (First Amended Complaint ("Amend. Compl.") P 4.) Defendant Morris Nachtomi ("defendant"), who is purportedly a citizen of New York, was the principal stockholder, chairman, and chief executive officer ("CEO") of Tower Air, Inc. ("Tower"), a Delaware corporation with its principal place of business in New York. [2] (*Id.* PP 5, 6.) Before it entered into bankruptcy, Tower was active as an international airline carrier, transporting passengers and cargo domestically and internationally. (*Id.* P 5.)

2   Plaintiff alleges that defendant held 76 percent of Tower's equity, and was in charge of the corporation's day-to-day operations. (Amend. Compl. P 6.)

In April 1994, Tower commenced airline service to India and defendant announced that he had identified a profitable opportunity in that geographic sector. (*Id.* P 8.) Approximately [*3] one year later, in mid-1995, defendant and his representatives at Tower entered into discussions with plaintiff aimed at making plaintiff Tower's exclusive sales and marketing agent in India. (*Id.* PP 9-10.) In July 1995, plaintiff entered into a Cargo Agreement with Tower. [3] (*Id.* P 13.) On August 10, 1995, a meeting was held at the Taj Intercontinental Hotel in Mumbai in order to discuss additional contractual arrangements, and was attended by (i) plaintiff's representative, (ii) defendant, and (iii) two of defendant's representatives. (*Id.* P 10.) During this meeting, defendant stated that Tower had plans "to go in a big way in India," that Tower's India service was "growing rapidly" and theretofore had been "extremely profitable," that the market potential in India was "huge," and that he expected continued growth and profitability over the long term. (*Id.* P 11.) Later that month, plaintiff and Tower entered into a General Sales Agreement ("GSA"), [4] pursuant to which plaintiff agreed, *inter alia*, to (i) "meet all sales and service requirements of [Tower]'s India service," [5] (ii) "devote its efforts exclusively to its duties under the Agreement," (iii) maintain [*4] offices in five of India's major cities at its own expense and in accordance with specifications set by Tower for location, appearance, personnel, and equipment, and (iv) appoint "Passenger Sales Agents" in seven other cities, whose offices also had to meet certain specifications for location and appearance. (*Id.* PP 13-19.)

3   Plaintiff does not specify the terms of the Cargo Agreement.
4   The Cargo Agreement and GSA are, hereinafter, collectively referred to as the "Agreements."
5   Such requirements included soliciting and promoting traffic for the India service, supervising all sales agents in India, maintaining a passenger reservations facility, advising passengers and others of legal requirements of countries linked to the India service, and arranging for special sales, promotions, and other advertising campaigns. (Amend. Compl. P 14.)

As security for plaintiff's performance under the GSA, plaintiff agreed to provide, and did provide, (i) a bank guarantee of $ 500,000 in favor of Tower, and [*5] (ii) a cash deposit of $ 100,000, maintained in an account "under sole control of defendant through his corpora-

tion." (*Id.* P 20.) Plaintiff claims that in order to receive the guarantees, plaintiff's family pooled their entire resources, providing $ 1.5 million in collateral and personal guarantees signed by the entire family, in addition to paying certain "bank guarantee charges and margin money for execution of the guarantees." (*Id.* P 24.) As security for plaintiff's performance under the Cargo Agreement, plaintiff agreed to provide, and did provide, $ 23,600 in cash to be kept in an escrow account of Tower. (*Id.* P 21.) Plaintiff, in turn, was paid for its services by so-called "normal commissions," a three percent override commission on all ticket sales, and an additional two percent override commission in months averaging more than 150 passengers per flight. (*Id.* P 23.)

Although plaintiff "duly and diligently kept its commitment" under the Agreements, defendant allegedly failed to do so. On February 26, 1996, at an "abruptly" called meeting in New York, defendant informed plaintiff that he was canceling Tower's India services because they had become an "unprofitable [*6] venture." (*Id.* P 29.) According to plaintiff, "there appeared to be no reason for the cessation, since the defendant had consistently proclaimed tremendous profitability in his India sector." (*Id.* P 30.) Defendant ceased service to India on or about March 10, 1996. (*Id.* P 31.)

Shortly thereafter, plaintiff finalized its accounts, sent sales receipts, cargo receipts, unused tickets, and other transportation documents to defendant's representatives. Plaintiff's accounting revealed that it owed approximately $ 99,000 to Tower. It therefore agreed to render such funds upon defendant's prompt release of the bank guarantees and refund of the cash deposits. (*Id.* P 34.) However, plaintiff states, defendant failed to release the guarantees and deposits, even though he "knew that his termination was contrary to what he had represented to [plaintiff] and the Agreement, and that [plaintiff] was entitled to damages due to defendant's unilateral breach." (*Id.* P 35.) In particular, defendant allegedly sent 50 tickets to plaintiff to sell non-existent services in India, holding onto the bank guarantees on this ground. (*Id.* PP 35, 40-46.) At a certain point, plaintiff proposed [*7] that defendant, through Tower, retain the $ 100,000 cash deposit because plaintiff owed $ 99,000 to defendant in any event, and release the $ 500,000 in guarantees. (*Id.* P 43.) Instead of complying, defendant allegedly sought to invoke the guarantees by writing to the issuer, the Bank of Maharashtra, which act purportedly "slandered Solar's credit record." (*Id.* P 45.) In November 1996, more than seven months after the alleged breach of the Agreements, and when the guarantees were about to expire, defendant released the guarantees and deposits and accepted a payment from plaintiff in the amount of $ 99,303.12. (*Id.* PP 39, 47.)

In March 1997, plaintiff filed an action against Tower in the United States District Court for the Eastern District of New York, *Solar Travel Corp. v. Tower Air, Inc.*, No. 97 CV 1416, (the "Tower Action"), based on Tower's alleged breach of the Agreements. The Tower Complaint, referenced in the Amended Complaint in this action, largely mirrors the Amended Complaint and seeks damages for breach of contract, breach of the implied covenant of good faith and fair dealing, prima face tort, and tortious interference with prospective business relations. [*8] (Tower Compl., Ex. B to Def.'s Notice of Motion.) In June 1998, during the course of discovery in the Tower Action, plaintiff purportedly discovered the facts that later formed the basis for the instant action, namely, that Tower's India service had never been profitable and that defendant never intended for such service to be profitable. (Amend. Compl. PP 53-54.) In March 2000, the Tower Action was stayed, and remains stayed, on account of Tower's filing for bankruptcy protection on February 29, 2000. (Defendant's Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Def. Mem.") at 4; Court Docket for 97 CV 1416.)

Plaintiff filed the instant action on May 10, 2000, asserting, *inter alia*, that "by concealing the material fact of continuing, unrelenting losses in his India services from [plaintiff], the defendant wrongfully induced [plaintiff] to invest and waste huge resources -- time, money, and manpower -- into promoting, marketing, and selling his India services." (*Id.* P 58.) Defendant initially moved to dismiss plaintiff's original Complaint on July 17, 2000 under Rule 12(b)(6) on the ground that it failed to state a claim upon which relief can [*9] be granted and that it was barred in its entirety by the applicable statutes of limitations. In response to the motion, plaintiff served an Amended Complaint on August 14, 2000. In a letter to the Court on that same day, plaintiff requested that the Court deny defendant's motion to dismiss as moot on account of the amendments, a request that the Court declined. (Letter from Krishnan S. Chittur to the Court dated Aug. 14, 2000.)

## II. Discussion [6]

>  6  The parties each cite New York law in support of their respective positions. Accordingly, the parties, by implication, agree that there is no dispute on the choice-of-law question. In addition, the record reflects that defendant's alleged conduct occurred in New York, which would militate in favor of applying New York law, under the "interests approach" adopted by New York courts. See *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000) (stating that [HN1]"if conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred

will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders") (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)). The Court therefore applies New York law in ruling on the sufficiency of plaintiff's claims.

### [*10] A. Motion to Dismiss Standard

[HN2]On a motion to dismiss, the Court must accept the factual allegations contained in the Complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993) (noting that factual allegations in complaint must be accepted as true on motion to dismiss); *Press v. Quick & Reilly, Inc.*, 218 F.3d 121, 128 (2d Cir. 2000) (same). Moreover, [HN3]in considering a motion to dismiss pursuant to Rule 12(b)(6), the Court may only consider facts alleged in the complaint or in documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing [*11] suit. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). [7]

---

7   The Court considers the Tower Complaint in its adjudication of the instant motion, because it is referenced in the Amended Complaint and was clearly relied on by plaintiff in bringing this action. *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (stating that pleadings may constitute admissions of a party opponent and "are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party"); *Zitz v. Pereira*, 119 F. Supp. 2d 133, 140 (E.D.N.Y. 1999) (same); *see also Walaschek & Assocs. v. Crow*, 733 F.2d 51, 54 (7th Cir. 1984) (finding that plaintiff could not deny the validity of agreement because "the pleading in one proceeding is admissible and cognizable as an admission in another"); *Fuller v. King*, 204 F.2d 586, 590 (6th Cir. 1953) ("It is an accepted rule of evidence that, under certain conditions, statements contained in pleadings in another action, prepared by counsel employed to handle such action, are quasi-admissions, and while not conclusive are nevertheless admissible in evidence [].").

---

### [*12] B. Corporate Form

Plaintiff brings this action against defendant in his capacity as principal stockholder, chairman, and CEO of Tower, and each of the claims arise out of actions that defendant allegedly performed in such capacity. (Amend. Compl. PP 5, 6; Plaintiff's Memorandum In Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 12-14.) Defendant moves to dismiss certain of the claims in this action, in particular plaintiff's fourth and fifth claims, on the ground that plaintiff has failed to allege facts sufficient to "pierce the corporate veil" of Tower. (Def. Mem. at 12-16; Defendant's Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Complaint ("Def. Rep.") at 7-8.) This contention is unavailing. [HN4]Under New York law, immunity as a corporate employee extends to officers or employees who induce their corporation to breach a contract; [8] it does not extend to employees who commit fraud or other torts. *See Grappo v. Alitalia Linee Aeree Italiane, S.p.A*, 56 F.3d 427, 434 (2d Cir. 1995) (citing *Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 808 F. Supp. 943, 946 (E.D.N.Y. 1992); *Bailey v. Diamond Int'l Corp.*, 47 A.D.2d 363, 367 N.Y.S.2d 107, 111 [*13] (3d Dep't 1975)); *cf. Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*, 808 F.2d 982, 986 (2d Cir. 1987) (stating that defendants "cannot be held individually liable for a breach of contract [if] they acted in their capacities as officers"); *Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 256 (S.D.N.Y. 1996) (dismissing contract claim against corporate officer where there was no evidence that he was acting in his personal, rather than official, capacity). Thus, defendant does not enjoy personal immunity against the claims of fraud and the other tort-related wrongs asserted against him in this action.

---

8   [HN5]Piercing the corporate veil is only necessary in such a contractual context. *See, e.g., Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (citing *Feigen v. Advance Capital Management*, 150 A.D.2d 281, 541 N.Y.S.2d 797, 798 (1st Dep't 1989) (stating that "the alter ego theory is simply insufficient to support claims for breach of contract against individuals in the absence of specific factual allegations . . .")).

---

### [*14] C. Common Law Fraud

Plaintiff's first claim, for common law fraud, alleges that it was fraudulently induced to enter into the Agreements based on misrepresentations by defendant as to the past and potential profitability of Tower's India services. Specifically, plaintiff states that Solar relied upon defendant's representations of such profitability in entering

into the Agreements. However, plaintiff later discovered, during discovery in the Tower action, that defendant's Tower services had never been profitable, and that defendant had never intended to make them profitable. (Amend. Compl. PP 53, 57-58). Defendant moves to dismiss the claim, *inter alia*, on the ground that plaintiff has failed to show loss causation or any injury arising out of the alleged misrepresentations. [9] (Def. Mem. at 7-8.)

> 9    Defendant's contention that (i) plaintiff's fraud, negligent misrepresentation, and deceptive business practices claims are invalid as untimely, and (ii) the fraud claim was waived as a result of plaintiff's pursuit of its contract claim against Tower are unavailing. (Def. Mem. at 5-7, 21-23; Def. Rep. at 2-3, 11-13.) The Amended Complaint alleges that, although Tower informed plaintiff that its India service was unprofitable as early as February 1996, plaintiff did not discover the fraud until June 1998, thus rendering the fraud claim, and the other two claims derived from it, timely under either Indian law, as asserted by defendant, or New York law. (Pl. Mem. at 18-19; Def. Mem. at 21-23 (stating that plaintiff's first, second, and third claims are barred by India's three-year statute of limitations); *see Hernandez v. Empire Mut. Ins. Co.*, 121 A.D.2d 259, 503 N.Y.S.2d 379, 380 (1st Dep't 1986) (stating that "an action for fraud must be brought within six years of the complained-of misrepresentations . . . or two years after the person claiming injuries has learned of the fraud, whichever is later") (citing N.Y. CPLR §§ 213[2,8], 203[f]). Further, [HN6]under New York law, a claimant may allege a fraud claim arising out of a contractual relationship, in concert with a claim for breach of contract, without waiving the fraud claim. See *Bridgestone/Firestone, Inc. v. Recovery Credit Serv., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (stating that a cause of action for common law fraud can arise out of a contractual relationship, on the basis of which a breach of contract claim has been alleged, where the "fraudulent misrepresentation [is] collateral or extraneous to the contract"). While it may have been more proper to amend its Complaint against Tower to assert its fraud and related claims against defendant, the Court cannot find that the assertion of fraud here is improper on waiver or estoppel grounds.

[*15] "[HN7]A New York common law fraud claim is defined as a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 2001 WL 487111, at *13 (2d Cir. (N.Y.) 2001) (citing *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969)); see also *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). The claim requires a showing of "loss causation," an analog of the tort concept of proximate causation, such that the alleged injury "is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud." *Suez*, 2001 WL 487111, at *13 (quoting *Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1044 (2d Cir. 1986)); see also *Citibank v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1986) [*16] ("This Court also requires the plaintiff to allege that the misrepresentation induced it to enter into the transaction and that the misrepresentation was the cause of the actual loss suffered."); *Bruce v. Martin*, Nos. 87 Civ. 7737, 90 Civ. 0870, 90 Civ. 4651, 1993 WL 148904, at *9 (S.D.N.Y. May 5, 1993) (stating that "fraud in the inducement of a contract under New York law requires allegations of special damages traceable to the material misrepresentation made at the time").

In this case, while plaintiff adequately alleges transaction causation, i.e., that the misrepresentation induced it to enter into the Agreements, plaintiff has failed to allege loss causation, because it has not alleged any injury traceable to its entry into the transaction. Plaintiff asserts in the Tower Complaint that it made $ 850,000 in profits from the time it entered into the Agreements to Tower's abrupt termination of those Agreements in February 1996. (Tower Compl. P 38.) For the reasons stated *supra*, the Court considers such statement here and finds it to be admissible in the instant action; moreover, plaintiff acknowledges in its motion papers that "the Agreement[s] were profitable [*17] while they lasted." (Pl. Mem. at 7.) As in the Tower Complaint, plaintiff here requests "compensatory and punitive damages in [a] sum not less than $ 20 million," for loss of profits and goodwill, lost business opportunities, and service charges on the bank guarantees. (Tower Compl. PP 38, 42, 51, 55-56, 60-61; Amend. Compl. PP 62, 65, 69, 74-75, 79-80.) [10] Each of such injuries was allegedly incurred as a result of Tower's breach of the Agreements and Tower's (or defendant's) actions following such breach. Plaintiff does not allege, nor would it be reasonable to infer, that it lost any profits, goodwill or business opportunities during the six-month period during which the Agreements were in effect. [11] The alleged lost profits were expectation damages, namely, those sums that defendant would have received over the remainder of the Agreements' terms, and the losses of goodwill and business opportunities allegedly arose directly out of defen-

dant's failure to release the bank guarantees. The service charges on the bank guarantees were presumably incurred as a result of the same conduct. Moreover, the most significant portion of plaintiff's damages, namely, its lost profits, goodwill [*18] and business opportunities cannot be recovered under a fraud theory under New York law. See *Saleemi v. Pencom Sys. Inc.*, 2000 U.S. Dist. LEXIS 6645, No. 99 Civ. 667, 2000 WL 640647, at *6-*7 (S.D.N.Y. May 17, 2000) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996) (stating that, under the "out-of-pocket" which governs recovery for fraud under New York law, there can be no recovery of profits or alternative bargains which would have been realized in the absence of fraud); *Kulas v. Adachi*, 1997 U.S. Dist. LEXIS 6868, No. 96 Civ. 6674, 1997 WL 256957 at *10 (S.D.N.Y. May 16, 1997) (stating that damaged reputation and lost business not compensable in fraud)). *But see Osofsky v. Zipf*, 645 F.2d 107, 113 (2d Cir. 1981) (stating, in the context of a securities fraud claim, that "the benefit-of-the-bargain measure of compensatory damages is recognized as the preferable measure in common law fraud actions"). Therefore, because plaintiff is unable to claim that defendant's alleged fraudulent inducement proximately resulted in its injuries, its fraud claim must be dismissed. See *Citibank*, 968 F.2d at 1495-96 [*19] (dismissing common law fraud claim on the ground that the plaintiff failed to prove a sufficient causal connection between the defendant's alleged wrongdoing and the plaintiff's harm); *cf. African Metals Corp. v. Nicomet, Inc.*, 1998 U.S. Dist. LEXIS 818, No. 96 Civ. 6579, 1998 WL 35116, at *3 (S.D.N.Y. Jan. 30, 1998) (dismissing fraud claim in part because plaintiff "does not seek damages for the fraud claim separate from those flowing from the breach of contract claim").

> 10   The paragraphs of the Amended Complaint are numbered 1 to 74 and 65 to 71. The Court construes the paragraphs labeled 65 to 71 as paragraphs 75 to 81.
> 11   To the extent the Amended Complaint alleges that plaintiff suffered damages by "investing and wasting huge resources - time, money, and manpower - into promoting, marketing and selling [defendant's] India services," (Amend. Compl. P 58), such damages are not cognizable given that plaintiff realized a sizable profit while the Agreements were in effect.

### D. Negligent Misrepresentation

[*20] Plaintiff's second claim, for negligent misrepresentation, arises out of the same facts as its fraud claim, namely, defendant's allegedly false statements relating to the past and potential profitability of Tower's India services, and plaintiff's reliance on such statements in entering into the Agreements. (Amend. Compl. PP 63-64.) [HN8]In order to recover on a claim for negligent misrepresentation under New York law, a plaintiff must establish that the "defendant had a duty to use reasonable care to impart correct information because of some special relationship between the parties, that the information was incorrect or false, and that the plaintiff reasonably relied upon the information provided" to his detriment. *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 96 (E.D.N.Y. 2000) (quoting *Grammer v. Turits*, 271 A.D.2d 644, 706 N.Y.S.2d 453 (2d Dep't 2000)). This claim fails because, as with plaintiff's fraud claim, plaintiff is unable to demonstrate loss causation, which is an essential element of a claim for negligent misrepresentation. See *Kwiatkowski v. Bear Stearns Co., Inc.*, 2000 U.S. Dist. LEXIS 5364, No. 96 Civ. 4798, 1997 WL 538819, at *8 (S.D. [*21] N.Y. Apr. 29, 1997) (dismissing negligent misrepresentation claim for failure to allege or show loss causation); *see also Revak v. SEC Realty Corp.*, 18 F.3d 81, 89-90 (2d Cir. 1994) (affirming dismissal of plaintiff's common law fraud and negligent misrepresentation claims where plaintiff failed to establish that "the loss complained of is a direct result of the defendant's wrongful actions and independent of other causes"). Accordingly, the Court dismisses plaintiff's negligent misrepresentation claim.

### E. Section 349

Plaintiff alleges that by "continually concealing the unprofitable nature of his India services," defendant misled plaintiff and others in violation of Section 349 of the New York General Business Law ("Section 349"), and consequently, plaintiff is entitled to treble damages. (Amend. Compl. PP 67-69.) [HN9]Section 349 "was designed to protect consumers from various forms of consumer fraud and deception." *Smith v. Triad Mfg. Group, Inc.*, 255 A.D.2d 962, 681 N.Y.S.2d 710, 712 (4th Dep't 1998) (citation omitted). The section outlaws, *inter alia*, "deceptive acts or practices in the conduct of any business, trade, or commerce or [*22] in the furnishing of any service in [New York]." Section 349(a). [HN10]In order to establish a violation of Section 349, a plaintiff must prove that: (i) the conduct of the defendant is consumer-oriented; (ii) defendant is engaging in an act or practice that is deceptive or misleading in a material way; and (iii) plaintiff has been injured by reason thereof. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). The New York Court of Appeals has defined a "deceptive act or practice" as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 26.

Plaintiff's claim is insufficient as a matter of law, because plaintiff is unable to establish that the conduct

2001 U.S. Dist. LEXIS 7549, \*

complained is "consumer oriented." [HN11]A plaintiff must plead and prove injury to the public generally, rather than to itself alone. *Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.*, 25 F. Supp. 2d 101, 114 (W.D.N.Y. 1998) (citation omitted). "The conduct need not be repetitive or recurring, but the defendant's acts or practices must have a broad impact [\*23] on consumers at large." *Id.* Moreover, private business disputes do not give rise to claims under Section 349. See *Smith*, 681 N.Y.S.2d at 712; *Int'l Sport Divers*, 25 F. Supp. 2d at 114 (stating that the statute is "inapplicable to "business-versus-business disputes," where the party asserting the claim is not acting in a consumer role). Here, the alleged deception centers on defendant's conduct with respect to plaintiff's agreement to provide sales and marketing services to Tower. (Amend. Compl. PP 8-13, 67.) The record reflects that such conduct could only trigger a private business dispute between the parties, which does not "have a broader impact on consumers at large," *Oswego*, 85 N.Y.2d at 25. Because plaintiff is unable to establish consumer injury arising out of defendant's alleged misrepresentations, plaintiff lacks standing to bring such a claim under Section 349. See *Obabueki v. IBM*, 137 F. Supp. 2d 320, 349 (S.D.N.Y. 2001) (dismissing Section 349 claim, in part because plaintiff was unable to establish that defendant's actions had any effect outside of the contractual relationships among the parties); *Asbeka Indus. v. Travelers Indemnity Co.*, 831 F. Supp. 74, 88 (E.D.N.Y. 1993) [\*24] ("It is well settled that section 349 does not apply to "[a] breach of a private contract affecting no one but the parties to the contract, whether that breach be negligent or intentional, [because that conduct] is not an act or practice affecting the public interest.") (citation and internal quotations omitted).

In an attempt to save its claim, plaintiff alleges that certain entities external to itself suffered injury, from "defendant's sustained fraudulent misleading of everyone." (Pl. Mem. at 10.) Plaintiff asserts that defendant made "repeated misleading statements to the public in press releases, advertisements, and at least twice to the [Securities and Exchange Commission] under penalty of perjury." (Pl. Mem. at 11; Comp. P 27.) Consequently, plaintiff contends that "all persons" were misled, namely, "suppliers, sales agents, travel agents, cargo agents, and all other persons providing goods and/or services to defendant's India services -- as well as the public investors of Tower." [12] (Amend. Compl. P 67.) Plaintiff also alleges "adverse effects upon transnational businesses based in India, upon frequent international travelers, and upon career development of personnel [\*25] in various aspects of the India sector who gave up their existing and/or other opportunities to assist defendant's India sector." (*Id.*) Such allegations are wholly conclusory, unsupported by the facts surrounding defendant's alleged misconduct, and inapposite to consumer injury. Two of the statements that plaintiff alleges were misleading merely express Tower's view of the nature of the India sector. In its 1994 10-K filing with the SEC, Tower allegedly stated that it was "optimistic about its growth potential in India and plans to increase its flight frequencies in 1995," and did not report any losses or state that its India sector was unprofitable. (Amend. Compl. PP 27, 57.) In an August 1995 press release, defendant allegedly Stated that "the Company continues to view India as a market with significant growth opportunities and plans to increase its frequency to Bombay . . ." (*Id.* P 27.) In fact, such statements were far from misleading, because, as plaintiff itself points out, Tower did increase the frequency of its flights in 1995, particularly to Bombay. Moreover, according to the Amended Complaint, Tower's 1994 10-K neither reported profitability nor unprofitability, [\*26] which is neither misleading nor surprising given the fact the filing came shortly after Tower's commencement of its India service. [13] Moreover, defendant's purported statement that Tower had increased passenger revenues from the India sector in the third quarter of 1995 likewise is not misleading, nor does plaintiff explain why it might be so. (*Id.*) The same is true for defendant's addition of service to New Delhi on Tower's Bombay route in February 1996. (*Id.*) Further, despite plaintiff's reliance on "defendant's consistent misrepresentations of profitability," (*Id.* PP 27-28 (heading title)), none of defendant's allegedly misleading statements indicate the success of the company in the India market, or its profitability in such market. Finally, plaintiff does not indicate, or even suggest, a causal link between any of defendant's particular representations and harm to the consuming public. Accordingly, the Court dismisses plaintiff's Section 349 claim.

---

12   The Court notes that the courts of this Circuit have held that Section 349(a) does not apply to claims of investors related to the sale of securities, e.g., securities fraud claims. See *In re Motel 6 Sec. Litig.*, 1995 U.S. Dist. LEXIS 9954, Nos. 93 Civ. 2183, 93 Civ. 2866, 1995 WL 431326, at \*6 (S.D.N.Y. July 5, 1995) (citing cases).

[\*27]

13   Depending on when Tower's fiscal year ended, its 10-K report encompassed a one-year period ending on a date between the commencement of the corporation's India services in April 1994 and December 31, 1994.

### E. Prima Facie Tort

In its fourth claim, plaintiff alleges that defendant's failure to release the bank guarantees and deposits was "wanton and reckless" conduct constituting a prima facie tort, entitling plaintiff to special damages. (Amend. Compl. PP 70-75.) [HN12]Prima facie tort consists of (i)

intentional infliction of harm (ii) causing special damages, (iii) without excuse or justification, (iv) by an act or series of acts that would otherwise be lawful. *Hennigan v. Taser Int'l, Inc.*, 2001 U.S. Dist. LEXIS 1857, No. 00 Civ. 2981, 2001 WL 185122, at *4 (S.D.N.Y. Feb. 26, 2001) (citing *Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)*). "To state a claim for prima facie tort, the plaintiff must allege that the defendant's actions were taken out of 'disinterested malevolence,'" that is, with the sole intention to harm plaintiff. *Id.; Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) [*28] (stating that the prima facie tort remedy is available "when the intention to harm, as distinguished from the intention merely to commit the act, is present, has motivated the action, and has caused the injury to plaintiff, all without excuse or justification"). When there are other motives, such as profit, self-interest or business advantage, no recovery is permitted under a prima facie tort theory. *Marcella*, 778 F.2d at 119.

[HN13]The statute of limitations for prima facie tort claims under New York law is three years. N.Y. CPLR § 214 (McKinney's 1990); *Montefusco v. Nassau County, 39 F. Supp. 2d 231, 238 n.4 (E.D.N.Y. 1999)* (citing *Bassim v. Hassett, 184 A.D.2d 908, 585 N.Y.S.2d 566, 567-68 (3d Dep't 1992)*). As noted *supra*, plaintiff filed the instant action on May 10, 2000. Thus, in order to fall within the limitations period, plaintiff's prima facie tort claim would have had to accrue on or after May 10, 1997. According to the Amended Complaint, plaintiff's claim arises solely out of defendant's alleged failure to release the bank guarantees and deposits over the seven month period between Tower's alleged breach of the Agreements [*29] and defendant's eventual release of the funds in November 1996. (Amend. Compl. PP 47, 70-75.) Thus, because plaintiff's prima facie tort claim accrued in November 1996 at the latest, the claim must be dismissed as time-barred.

Plaintiff contends that its prima facie claim is not time-barred because it only became aware of defendant's harmful intentions in 1998, in the course of discovery in the Tower Action. (Pl. Mem. at 21.) Plaintiff alleges that "it had no access to, and was unaware of the *contents of documents* revealing that the defendant was well aware that his withholding [plaintiff's] guarantees was untenable, and that every one of his own senior officers and his lawyers categorically and in writing recorded their objection to his misconduct." (*Id.*) (emphasis added). Plaintiff further states that it "didn't know that the defendant had no justification, and was willfully acting solely to harm Solar." (*Id.*) Such contention is unavailing. While [HN14]it is a basic principle that a tort cause of action does not accrue under New York law until the last of the elements of the cause of action, typically injury, exists, *see Johnson v. Nyack Hosp.*, 891 F. Supp. 155, 166 (S.D.N.Y. 1995) [*30] (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993); *Schmidt v. Merchants Despatch Transp. Co.*, 270 N.Y. 287, 300, 200 N.E. 824 (1936)), plaintiff confuses the existence of a claim with concrete evidence in support thereof. Here, plaintiff's claim accrued at the latest in November 1996, when plaintiff was injured from defendant's withholding of the guarantees and deposits to which plaintiff was clearly entitled over an extended period, allegedly without excuse or justification. Moreover, given the improper nature of defendant's alleged actions, plaintiff had more than enough facts to form a reasonable belief that defendant's actions may have been taken with the intention to harm plaintiff. The fact that plaintiff only later discovered certain documents supporting its theory concerning defendant's intent is immaterial. Adopting the type of "discovery rule" advanced by plaintiff, under which a claim only accrues when you have enough evidence to support it, would be contrary to basic notions of pleading embodied by [HN15]Fed. R. Civ. P. 8(a), which only requires "a short and plain statement of the claim showing that [*31] the pleader is entitled to relief." Fed. R. Civ. P. 8(a). [14]

> 14 This Court's finding of untimeliness on this claim and plaintiff's tortious interference claim, *infra*, is further supported by the fact that plaintiff asserted identical claims against Tower in the Tower Action, filed in March 1997. (Tower Compl. PP 25-34, 52-62.)

Even if the prima facie tort claim were not dismissed as time-barred, it would still be dismissed because the allegations in the Amended Complaint unquestionably reveal that defendant's withholding the bank guarantees and deposits was motivated, at least in part, by its own economic interest. The Amended Complaint cites, as a basis for defendant's malicious intent, a statement by Tower that, by withholding the guarantees, it hoped to "force [plaintiff] to be more reasonable in their claims which, hopefully, will lead to a settlement." (Amend. Compl. P 36.) Plaintiff also points to a corporate statement that expresses defendant's "desire for an amicable solution for the financial [*32] impact on [plaintiff]," which suggests that defendant's aim was not to harm plaintiff. (*Id.* P 37.) Moreover, Tower, which purportedly was in financial trouble on its India routes, sought to invoke the $ 500,000 in bank guarantees after abandoning its India service. (*Id.* P 44.) While such action may have resulted in harm to plaintiff, there were also clear economic advantages to defendant arising from access to such funds.

Finally, plaintiff has failed to allege [HN16]special damages with particularity, as is required under New

York law. *See Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985)* (noting that "[a] critical element of the prima facie tort cause of action is that plaintiff suffered *specific and measurable loss*") (emphasis added). Plaintiff's damages allegations consist entirely of round figures and lump sums, without any explanation of how plaintiff arrived at such figures. Plaintiff asserts that as a result of defendant's conduct, it suffered damages in the following amounts:

    a. $ 5 million, towards *loss of profits* for the 2 year term of the Agreement;

    b. $ 500,000 towards *loss of goodwill* [*33] ;

    c. $ 30,000 towards *margin money and other charges* of the Bank of Maharastra on the bank guarantees; and

    d. $ 5 million towards *lost business opportunities*.

(Amend. Compl. P 74) (emphasis added.) Plaintiff then concludes, without further addressing, or properly calculating, the above figures, that defendant "is liable to pay Solar compensatory and punitive damages in such sum, *not less than $ 20 million*, as may be determined after discovery and trial." (*Id.* P 75) (emphasis added). Such [HN17]general allegations of loss are insufficient to allege special damages. *See, e.g., DiSanto v. Forsyth, 258 A.D.2d 497, 684 N.Y.S.2d 628, 629 (2d Dep't 1999)* (stating that "general allegations of lost sales from unidentified lost customers are insufficient" to state a prima facie tort claim); *Nyack Hosp. v. Empire Blue Cross & Blue Shield, 253 A.D.2d 743, 677 N.Y.S.2d 485, 485-86 (2d Dep't 1998)* (finding general allegations of lost revenues insufficient to plead special damages with particularity); *Fine v. Gordon, Kushnick & Gordon, 238 A.D.2d 373, 656 N.Y.S.2d 327, 327 (2d Dep't 1997)* (stating that special damages must [*34] "identify actual losses . . . related causally to the alleged tortious acts") (citations omitted); *Agnant v. Shakur, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998)* ("Round figures, general allegations of a dollar amount or boilerplate allegations of some impairment to business reputation are insufficient."); *Microlan Sys., Inc. v. Omnitech Corp. Solutions, Inc., 1999 U.S. Dist. LEXIS 17599*, No. 99 Civ. 2850, 1999 WL 1034751, at *1 (S.D.N.Y. Nov. 15, 1999) ("Any claim that business was lost must be supported by an itemized list of customers and losses.") (citation omitted); *cf. Drug Research Corp. v. Curtis Publ. Co., 7 N.Y.2d 435, 440-41, 199 N.Y.S.2d 33, 166 N.E.2d 319 (1960)* (stating, in the context of a libel claim, that round damage claim of $ 5 million, with no attempt at itemization, is a representation of general damages, not special damages). Accordingly, plaintiff's prima facie tort claim must also be dismissed on this ground.

### G. Tortious Interference with Business Relations

In its fifth cause of action, plaintiff alleges that by refusing to release the bank guarantees and deposits after Tower terminated the Agreements, defendant tortiously interfered [*35] with plaintiff's existing and prospective business relations, in particular those existing with "several customers" and prospectively "with international airlines." (Amend. Compl. PP 46, 52, 76-79.) Defendant states that this claim should be dismissed as time-barred under the applicable statute of limitations, and for failure to adequately plead the required elements. (Def. Mem. at 18-20, 24.) The Court agrees.

[HN18]Under New York law, in order to state a claim for tortious interference with existing or prospective business relations, a plaintiff must allege: (i) business relations with a third party; (ii) the defendant's interference with those business relations; (iii) that defendant acted with the sole purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship. *See Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994)* (citation omitted); *Scholastic v. Stouffer, 124 F. Supp. 2d 836, 850 (S.D.N.Y. 2000)*. Further, as with causes of action asserted under a prima facie tort theory, [HN19]the statute of limitations for tortious interference claims under New York law is three years. *N.Y. CPLR* [*36] *§ 214* (McKinney's 1990); *Antonios A. Aleyizopoulos and Assocs., Inc. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 183 (S.D.N.Y. 2000)*. Thus, in order to fall within the applicable statute of limitations, plaintiff's tortious interference claim would have had to accrue on or after May 10, 1997. Plaintiff's tortious interference claim, like its claim for prima facie tort, arises solely out of defendant's alleged failure to release the bank guarantees and deposits over the seven month period between Tower's alleged breach of the Agreements and the eventual release of the funds in November 1996. (Amend. Compl. PP 47, 76-81.) Accordingly, because plaintiff's tortious interference claim accrued in November 1996 at the latest, the claim must be dismissed as time-barred.

Plaintiff contends that its tortious interference claim is not time-barred because it only became aware of defendant's improper or wrongful means in 1998, when it was taking discovery in the Tower Action. (Pl. Mem. at 21.) The Court rejects this contention for the same reasons it dismissed plaintiff's similar discovery-based argument on its prima facie tort claim. *See supra*. The mere fact that [*37] plaintiff discovered evidence concerning the alleged impropriety of defendant's actions

during discovery on identical claims in a parallel action does not warrant a tolling or recalculation of the limitations period here.

Even if plaintiff's tortious interference claim were not time-barred, it would still be dismissed because plaintiff has failed to sufficiently plead the necessary elements of such claim. In particular, [HN20]it is well settled under New York law that a plaintiff must allege that he was "actually and wrongfully prevented from entering into or continuing in a *specific* business relationship." *Korn v. Princz*, 226 A.D.2d 278, 641 N.Y.S.2d 283, 283 (1st Dep't 1996) (citing *McGill v. Parker*, 179 A.D.2d 98, 582 N.Y.S.2d 91 (1st Dep't 1992) (emphasis added)); *see also M.J. & K. Co. v. Matthew Bender and Co.*, 220 A.D.2d 488, 631 N.Y.S.2d 938, 940 (2d Dep't 1995) ("Tortious interference with business relations 'applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant.'") (quoting *WFB Telecommunications v. NYNEX Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460, 461 [*38] (1st Dep't 1992)). In this case, plaintiff fails to allege the loss of any specific relationship; it merely alleges that it "lost business from its customers . . . as well as lost prospective business from other international airlines." (Amend. Compl. PP 79; *see also id.* PP 40, 46.) Without any details as to the identity of third parties or plaintiff's dealings with them, plaintiff's conclusory allegation that defendant interfered with such dealings is not sufficient to apprise defendant of plaintiff's claims. *See Scholastic*, 124 F. Supp. 2d at 852; *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F. Supp. 2d 275, 293 (S.D.N.Y. 1998) (finding that conclusory allegation without any relevant supporting facts insufficient to state a cause of action for tortious interference) (citing cases).[15] Accordingly, the claim must be dismissed.

---

15   *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194 (2d Cir. 1998), cited by plaintiff in support of its tortious interference claim, is inapposite. (Pl. Mem. at 16-17.) In that case, unlike the instant one, defendant was alleged to have interfered with an ongoing business relationship with a specific third party, S & S Japan. The Second Circuit found that plaintiff stated a claim for tortious interference based on the presence of such defined, valuable, relationship. *Id.* at 205.

[*39] III. Conclusion

For the foregoing reasons, the Court grants defendant's motion to dismiss plaintiff's Amended Complaint in full. Construing the Amended Complaint liberally, the Court declines to grant plaintiff leave to replead via a Second Amended Complaint. [HN21]Whether to grant such leave lies within the Court's discretion, *see Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962) (stating that the Second Circuit Court of Appeals reviews the district court's dismissal of a complaint with prejudice for abuse of discretion), and "a court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Here, the Court finds that plaintiff's papers opposing the motion make clear that it does not have any other theory or allegations to put forward that might sustain its claims. Moreover, plaintiff has already amended its Complaint once in response to defendant's motion to dismiss, and previously asserted the same facts and some of the same claims in the Tower Action. Accordingly, [*40] the Court dismisses plaintiff's claims with prejudice. *See DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 71-72 (2d Cir.) *cert. denied*, 519 U.S. 1007, 136 L. Ed. 2d 399, 117 S. Ct. 509 (1996) (stating that it is not an abuse of discretion to dismiss a complaint without leave to replead "when a party has been given ample prior opportunity to allege a claim"); *cf. Armstrong v. McAlpin*, 699 F.2d 79, 93-93 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiff's second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead.").

SO ORDERED.

ALLEN G. SCHWARTZ, U.S.D.J.

Dated: New York, New York

June 8, 2001