Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2006 WL 3054336 (S.D.N.Y.)
**(Cite as: 2006 WL 3054336 (S.D.N.Y.))**

**H**Trepel v. Dippold
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Martin TREPEL, Plaintiff,
v.
Karen DIPPOLD, an individual; Beldock Levine &
Hoffman LLP, a New York Co-Partnership,
Defendants/Third Party Plaintiffs.
v.
Hodgson Russ, a New York Co-Partnership, Aiden J.
McCormack, an individual; and P. David Palmiere, an
individual, Third-Party Defendants.
No. 04 Civ. 8310(DLC).

Oct. 27, 2006.

Andrew J. Maloney, III, Brian J. Alexander, Hilary B.
Taylor, Kreindler & Kreindler LLP, New York, NY,
For Plaintiff.
Ronald C. Minkoff, Madhu R. GoelFrankfurt Kurnit
Klein & Selz, P . C., New York, NY, For
Defendants/Third Party Plaintiffs.
Michael Brady, Buffalo, NY, For Third-Party
Defendants.

*OPINION AND ORDER*

DENISE COTE, District Judge.
**\*1** Plaintiff Martin Trepel ("Trepel") was the plaintiff
in a prior federal civil action for fraud in this district
brought against African art dealer Mourtala Diop
("Diop"). Trepel obtained a default judgment against
Diop, but has seen only a part of the total judgment
satisfied because Diop fled the district with most of his
possessions and has not been located. Trepel has now
filed suit against Diop's counsel Karen Dippold
("Dippold") and Dippold's law firm Beldock Levine &
Hoffman LLP ("Beldock Firm"), claiming that
Dippold assisted Diop in fleeing the jurisdiction with
his assets, thus violating a restraining order and
depriving Trepel of the opportunity to recover his
damages. The defendants Dippold and the Beldock
Firm brought third-party claims against the attorneys
who represented Trepel in the underlying action, P.
David Palmiere ("Palmiere"), Aidan McCormack
("McCormack"), and the law firm Hodgson Russ,
LLP ("Hodgson Firm"), for contribution based on

legal malpractice.

Dippold and the Beldock Firm have moved for
summary judgment against Trepel on all claims.
Trepel has moved for partial summary judgment
against the defendants on three of their defenses.
McCormack and the Hodgson Firm have moved for
summary judgment against the defendants on all
claims. For the following reasons, defendants' motion
is granted in part and denied in part, plaintiff's motion
is denied, and third-party defendants' motion is
denied.

*Background*

The following facts are not in dispute or are taken in
the light most favorable to the party opposing
summary judgment, unless otherwise noted. Plaintiff
Trepel, a resident and citizen of Florida,[FN1] filed suit
against Diop, a citizen of Senegal, on September 24,
2002 in the Southern District of New York for fraud
stemming from Diop's sale of African tribal artwork to
Trepel. Trepel alleged that reports assessing the
authenticity of the artwork had been altered to hide the
fact that the artwork was not as old as claimed, and
that had he been aware of the true age and condition of
the artwork, he would not have purchased it. Trepel
paid Diop approximately $240,000 for the artwork,
which Trepel alleged was essentially without value.
Trepel subsequently filed a criminal complaint with
the New York City Police Department, and Diop was
arrested and later released on bail. Dippold and the
Beldock Firm represented Diop in both the civil and
the criminal matters.

> FN1. Defendants do not admit Trepel's
> Florida citizenship in their 56.1 Statement,
> but point to no evidence to suggest otherwise.

In connection with the police investigation of the
criminal complaint, the police executed a search
warrant on Diop's cooperative apartment. Diop's art
collection was stored in the apartment. After Diop was
released on bail on October 23, 2002, he was
prevented from returning to his apartment by the
Assistant District Attorney assigned to the case,
Daniel Zambrano ("ADA Zambrano"). The police

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3054336 (S.D.N.Y.)
(Cite as: 2006 WL 3054336 (S.D.N.Y.))

department was going to execute another search warrant on the apartment, and they did not want Diop removing any of his possessions from the apartment. The following day, Dippold faxed a memo to ADA Zambrano asking for guidance regarding the cooperative apartment owned by Diop and another apartment rented by him, such as whether Diop could enter and occupy his apartments and "mov[e] household items during the course of performing the basic daily activities."Specifically, Dippold asked ADA Zambrano whether the "apartments and the contents therein are considered to be 'seized property.' " ADA Zambrano left a voicemail message on October 25, informing Dippold that the items were not considered seized.

**\*2** In the meantime, on October 17, 2002, by an Order to Show Cause filed in this district, Trepel sought an order of attachment and restraining order on Diop's cooperative apartment and other assets. Dippold sought an adjournment of the hearing by letters dated October 18 and October 23, stating in both that Diop's apartment and assets had been seized by the police department. At a hearing held on October 28 before the Honorable Gerard E. Lynch, Dippold and her husband and colleague Myron Beldock ("Beldock") appeared on Diop's behalf. Dippold and Beldock opposed the attachment for various reasons, including the fact that there was "a seizure order from the criminal case which basically doesn't allow him to do anything."[FN2]Neither Dippold nor Beldock mentioned in the hearing or afterwards ADA Zambrano's directive that Diop's assets were not "seized." Judge Lynch found little prejudice to Diop from an attachment because "everything has been seized already," and ordered an attachment of Diop's apartment. As for the rest of the assets, Judge Lynch directed the attorneys to return with an appropriately worded order that would restrain Diop's assets other than those necessary for living expenses and legal fees. The parties ultimately could not agree on language, and on November 13, Judge Lynch signed an order of attachment of his own.

> FN2. Defendants suggest that statements made by Beldock during the hearing cannot be used against the defendants Dippold and the Beldock Firm, because Beldock is not an individual defendant in this case, and Trepel's attempt to add Beldock as a defendant has been expressly

disallowed.*Trepel v. Dippold,* 04 Civ. 8310(DLC), 2006 WL 1359964 (S.D.N.Y. May 18, 2006). Statements made by Beldock in the hearing, however, are relevant and admissible in the case against Dippold and the Beldock Firm. Dippold was present at the hearing, and Beldock was representing Diop with Dippold. Beldock's statements in Dippold's presence are Dippold's admissions by adoption. Rule 801(d)(2)(B), Fed.R.Evid.; *see also Patterson v. County of Oneida,* 375 F.3d 206, 229 (2d Cir.2004). Statements made by Beldock in his representation of Diop can be imputed to the Beldock Firm.Rule 801(d)(2)(C), (D), Fed.R.Evid.; *see also Niagara Mohawk Power Corp. v. Freed,* 719 N.Y.S.2d 789, 790 (App.Div.2000); *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro,* 590 N.Y.S.2d 201, 202 (App.Div.1992).

In addition, in late October 2002, Diop was prevented from scheduling a move-out date from his apartment by the building superintendent Rudy Bachraty ("Bachraty") based on Bachraty's understanding that the contents of Diop's apartment had been seized by the District Attorney's Office. On November 1, Dippold sent a letter to Bachraty assuring him that ADA Zambrano had told her that Diop's personal property was not being seized and that the "search warrant proceedings do not prevent Mr. Diop from removing such property as he wishes from his apartment."[FN3]The letter made no reference to the attachment hearing before Judge Lynch. Over several days in mid to late November, after Judge Lynch had signed the order of attachment, Diop moved all of his property out of the apartment.

> FN3. Bachraty asserts that Dippold also called him to discuss the matter before sending him the letter. Dippold claims to have no recollection of the telephone conversation.

Judge Lynch's order of attachment required Diop to provide an accounting of all sums expended for living expenses and attorney's fees by the 15th of each month. On December 6, Diop informed Dippold that he had shipped his three luxury vehicles to Africa, but that he would bring the proceeds back to the United States. It was later discovered that the vehicles had already been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3054336 (S.D.N.Y.)
**(Cite as: 2006 WL 3054336 (S.D.N.Y.))**

shipped out on November 29. Dippold did not inform Judge Lynch or Trepel's counsel that she had just learned that Diop had violated the November 13 attachment order, but did report the $15,000 shipping expenses Diop incurred in shipping the cars to Africa in the monthly accounting, which was provided on December 13. In the meantime, on December 4, Trepel amended his complaint in the Diop lawsuit to include other pieces of artwork previously purchased from Diop, for a total of over $700,000. Diop failed to appear for a scheduled court date on January 8, 2003. Trepel obtained a default judgment against Diop on February 19, in the amount of $940,694.53. The defendants opposed the default judgment by arguing that the sales between Diop and Trepel had been illegal contracts. Defendants did not dispute the amount of damages, however, and no inquest was conducted before default was entered.

**\*3** Following entry of the default judgment, Judge Lynch ordered the sale of Diop's apartment at a public auction. The first sale was scheduled for July 2, 2003, and because it was a sale of personalty in the form of co-op shares rather than real estate, the Sheriff's office advised that it would not post notice of the sale and would only provide one day's notice by publication in one newspaper. The first sale was adjourned in order to allow Trepel and the apartment's co-op board to discuss the sale, because the co-op board took the position that the Sheriff's sale might be invalid if the co-op board did not approve it.[FN4]Trepel then directed his attorneys not to provide information about the rescheduled sale to other potential bidders.[FN5]

> FN4. Plaintiff has not responded to the evidence regarding the sheriff's sale except to claim that the facts are contested. Where the plaintiff has failed to provide any evidentiary support for a contrary finding, all of the facts set forth in defendants' 56.1 statements that are supported by admissible evidence are deemed admitted for purposes of this summary judgment motion. See Local Civil Rule 56.1; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir.2003).

> FN5. Trepel claims he has no recollection of instructing his attorneys to do so, but does not deny making the statement.

On August 1, 2003, Trepel entered into an agreement with the co-op board, which provided that if Trepel were the successful bidder at the Sheriff's sale, he would not reside in the apartment, but sell the apartment subject to approval by the coop board. A new Sheriff's sale was held on August 8, after one day's notice by publication. Trepel was the only bidder at the sale and purchased the apartment for $150,000, which was credited against the judgment. More than one year later, on October 1, 2004, Trepel resold the apartment for $650,000.[FN6]After expenses associated with the sale, Trepel kept approximately $585,000.

> FN6. Trepel suggests that he made "repairs" to the apartment before resale, but provides no evidentiary support for this statement.

*Procedural History*

Trepel filed this action against Dippold, the Beldock Firm, and his own former attorneys' law firm the Hodgson Firm, on October 21, 2004. Trepel claimed that Dippold had frustrated a restraining order by intentionally facilitating Diop's removal of his assets from the district and depriving Trepel of the opportunity to recover his damages. The Hodgson Firm was voluntarily dismissed from the action by stipulation on January 18, 2005. Defendants filed a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., which was denied. *Trepel v. Dippold,* 04 Civ. 8310(DLC), 2005 WL 1107010 (S.D.N.Y. May 9, 2005).

Subsequently, the defendants were permitted to file a third-party complaint pursuant to Rule 14(a), Fed.R.Civ.P., against the Hodgson Firm and two of Trepel's attorneys in the underlying action against Diop, McCormack and Palmiere. *Trepel v. Dippold,* 04 Civ. 8310(DLC), 2005 WL 2206800 (S.D.N.Y. Sept. 12, 2005). The defendants claimed that the Hodgson Firm, McCormack, and Palmiere were negligent in protecting Trepel against the risk that Diop would attempt to remove his assets from the jurisdiction, and that this gives rise to a claim for contribution. On October 27, 2005, Trepel filed an action against McCormack, but that action was voluntarily discontinued on August 14, 2006. After the close of fact discovery, Trepel sought to amend the complaint to add Beldock as a defendant, but his motion was denied. *Trepel, 2006 WL 1359964.*

Defendants have moved for summary judgment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3054336 (S.D.N.Y.)
**(Cite as: 2006 WL 3054336 (S.D.N.Y.))**

Page 4

against Trepel on all claims raised by Trepel in his complaint. Trepel has moved for partial summary judgment against the defendants on three of their defenses regarding the calculation of damages. Third-party defendants the Hodgson Firm and McCormack have moved for summary judgment against the defendants on all claims. At this time, no motions have been filed by third-party defendant Palmiere.

### Discussion

**\*4** Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. Rule 56(e), Fed.R.Civ.P.; accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir.2006).

I. Dippold and the Beldock Firm's Motion for Summary Judgment Against Trepel

A. New York Judiciary Law § 487

Trepel brings a claim against Dippold and the Beldock Firm under Section 487 of the New York Judiciary Law,[FN7] claiming that Dippold assisted Diop in absconding from the jurisdiction with assets, thus violating a written attachment and restraining order issued by Judge Lynch and frustrating the enforcement of Trepel's judgment against Diop. Section 487 provides for criminal liability and a private civil action for treble damages against a lawyer who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."N.Y. Judiciary Law § 487. "A violation ... may be established either by the defendant's alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by the

defendant."Izko Sportswear Co. v. Flaum, 809 N.Y.S.2d 119, 122 (App.Div.2006) (citation omitted). While "one arguable misrepresentation" may not be sufficient to sustain a Section 487 claim, Solow Mgmt. Corp. v. Seltzer, 795 N.Y.S.2d 448, 448 (App.Div.2005), "[a] single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability."Trepel, 2005 WL 1107010, at \*4;see also Amalfitano v. Rosenberg, 428 F.Supp.2d 196, 207 (S.D.N.Y.2006). In addition, "the attorney's deceit must have caused the plaintiff's damages."Cresswell v. Sullivan & Cromwell, 771 F.Supp. 580, 587 (S.D.N.Y .1991); see also Amalfitano, 428 F.Supp.2d at 207.

> FN7. All parties have relied on New York law to defend their claims. The parties having consented, that consent is sufficient to end the choice of law inquiry. See 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir.1999).

Defendants claim that Trepel has failed to show deceit or collusion and causation sufficient to sustain a Section 487 claim. "[S]ummary judgment is generally inappropriate where questions of intent and state of mind are implicated."Gelb v. Bd. of Elections of N.Y., 224 F.3d 149, 157 (2d Cir.2000); see also Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir.2006) (noting that where contractual language is ambiguous, "intent becomes an issue of fact and summary judgment is inappropriate"). Dippold sent letters to Judge Lynch prior to the attachment hearing, indicating that Diop's assets had been seized by the District Attorney's office. Despite learning from ADA Zambrano on October 25 that the assets were not restrained, during the October 28 hearing, Dippold and her colleague Beldock continued to make representations that the assets were seized. Moreover, having made representations to Judge Lynch in her October 18 and October 23 letters, Dippold had a duty to correct the record. "It is well settled that when there is a duty to speak, silence may very well constitute fraudulent concealment, which is itself the equivalent of affirmative misrepresentations of fact. This is especially true where an officer of the court owes such an obligation to the tribunal."Schindler v. Issler & Schrage, 692 N.Y.S.2d 361, 363 (App.Div.1999) (citation omitted).

**\*5** Trepel offers further evidence of an intent to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deceive based on Dippold's early knowledge that Diop may flee,[FN8] and from Dippold's delay in notifying the court of the fact that Diop had shipped out his luxury vehicles. While "mere incantation of intent or state of mind" does not "operate as a talisman to defeat an otherwise valid motion,"*Nora Beverages, Inc. v. Perrier Group of Am., Inc.* 269 F.3d 114, 125 (2d Cir.2001), Trepel has presented evidence sufficient to create an issue of material fact on the issue of intent amounting to deceit or collusion.

> FN8. Trepel points to a conversation between a friend of Diop's and Dippold, where the friend suggests that once released on bail, Diop would flee the jurisdiction. Dippold does not recall the conversation and in any event disputes the characterization of Diop as a flight risk. For purposes of defendants' motion for summary judgment, the evidence is viewed in the light most favorable to the plaintiff.

Trepel has also offered evidence to support a finding of causation, a similarly fact-intensive issue. The evidence supports an inference that Judge Lynch would have issued an attachment order earlier and Trepel's attorneys may have acted differently had Dippold and Beldock not made misrepresentations during the attachment hearing or had Dippold not delayed in reporting Diop's car shipments. Viewed in the light most favorable to the party opposing this summary judgment motion, Trepel has presented more than sufficient evidence to create issues of fact to withstand summary judgment.

B. Intentional Misrepresentation

Defendants move for summary judgment on Trepel's claim of intentional misrepresentation. They assert that Trepel was not justified in relying on their statements to Judge Lynch, and that their statements to Bachraty cannot support a claim.

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury."*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 (2d Cir.2006) (citation omitted)."[J]ustifiable reliance will not be found in

cases in which plaintiff was placed on guard or practically faced with the facts."*Hyosung Am., Inc. v. Sumagh Textile Co.,* 137 F.3d 75, 78 (2d Cir.1998) (citation omitted). Whether Trepel was justified in relying upon Dippold's statements to the court at the attachment hearing is a fact question that cannot be resolved on summary judgment.

In New York, fraud "may ... exist where a false representation is made to a third party, resulting in injury to the plaintiff."*Buxton Mfg. Co. v. Valiant Moving & Storage, Inc.,* 657 N.Y.S.2d 450, 451 (App.Div.1997). In order to establish fraud based on misrepresentations directed at a third party, however, plaintiff must "establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him."*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 148 F.3d 194, 196 (2d Cir.1998); *see also Sec. Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 71-72 (2d Cir.2000). Trepel does not suggest that he was aware of the contents of Dippold's letter to the co-op board or acted in reliance upon that letter. Summary judgment is granted in favor of defendants on Trepel's intentional misrepresentation claim to the extent that it is based on the letter Dippold sent to Bachraty.

C. Negligent Misrepresentation

*6 Defendants move for summary judgment on the claim for negligent misrepresentation on the ground that they owed no duty to Trepel. Negligent misrepresentation requires, in addition to carelessness, reliance, causation, and damages, that "the declarant must express the words directly, with knowledge or notice that they will be acted upon, to one to whom the declarant is bound by some relation or duty of care."*Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 788 (2d Cir.2003). Whether such a "special relationship" exists is generally an issue of fact, *Kimmell v. Schaefer,* 675 N .E.2d 450, 454 (N.Y.1996), but the relationship generally needs to amount to "actual privity of contract between the parties or a relationship so close as to approach that of privity."*Parrott v. Coopers & Lybrand, L.L.P.,* 741 N.E.2d 506, 508 (N.Y.2000) (citation omitted). While "professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients,"*Murphy v. Kuhn,* 682 N.E.2d 972, 974

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(N.Y.1997) (citation omitted), "[a]n attorney does not owe a duty of care to his adversary."*Aglira v. Julien & Schlesinger, P.C.,* 631 N.Y.S.2d 816, 819 (App.Div.1995). Only in limited circumstances, such as those involving fraud, malicious acts, or where there is privity or something close to it, are attorneys liable to parties who are not their clients. *Pope v. Rice,* 04 Civ. 4171(DLC), 2005 WL 613085, at *10-11 (S.D.N.Y. Mar. 14, 2005).

As attorneys for Trepel's adversary, Dippold and the Beldock Firm cannot be held liable for negligent misrepresentation to Trepel. Summary judgment is granted in favor of defendants on Trepel's claim for negligent misrepresentation.

### D. Aiding and Abetting the Violation of a Court Order

Defendants assert that Trepel's claim of aiding and abetting the violation of Judge Lynch's court order is procedurally improper because it was not brought as part of a contempt proceeding before Judge Lynch. "Before a party can be found guilty of aiding and abetting civil contempt, the court must find: (1) that the party subject to the court's mandate committed contempt; and (2) that another party assisted the enjoined party."*Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir.2002). This inquiry is separate from the contempt proceeding itself, and claims for aiding and abetting a violation of court orders have been entertained in courts other than the original court issuing the order. *See id.* at 246 (considering an aiding and abetting claim filed in federal court arising from a violation of a consent order entered in state court).

Defendants also claim that because the order of attachment was not finalized in writing until November 13, their actions before November 13-such as the representations at the October 28 hearing and the November 1 letter to Bachraty-cannot constitute acts of aiding and abetting a contempt. Diop's ultimate violation of the court order-moving his possessions out of the jurisdiction-occurred on or after November 13. Trepel has presented sufficient evidence to support a finding that the defendants aided and abetted contempt of a court order.

### II. Trepel's Motion for Partial Summary Judgment Against Dippold and the Beldock Firm

### A. Judgment Offset for Purchase and Resale of Diop's

Apartment

*7 Trepel argues that the offset for any judgment he obtains against the defendants should be the amount he paid to purchase the apartment, $150,000, and not the $650,000 he received when he resold the apartment. Defendants claim that the offset must be the apartment's fair market value, or Trepel will have received double recovery.

New York courts recognize the "injustice of permitting a judgment creditor to reap a double or multiple recovery from his debtor."*Mikulec v. United States,* 705 F.2d 599, 602 (2d Cir.1983). Where the debtor's real property is executed against, judgments are offset by the "reasonable or fair market value of the property at the time of sale."*Yellow Creek Hunting Club, Inc. v. Todd Supply, Inc.,* 535 N.Y.S.2d 222, 223 (App.Div.1988); *see also Wandschneider v. Bekeny,* 346 N.Y.S.2d 925, 930-31 (Sup.Ct.1973). These same equitable principles apply to the defendants, even though they are not the judgment debtor. The defendants are being sued for the same economic loss, namely the deficiencies in collecting on the judgment entered against the debtor.

In addition, the judgment should be offset by the fair market value of the apartment shares because of the duty imposed on the plaintiff to mitigate damages. "As a general rule, a party who claims to have suffered damage by the tort of another is bound to use reasonable and proper efforts to make the damage as small as practicable."*De La Concha v. Fordham Univ.,* 814 N.Y.S.2d 320, 321 (App.Div.2006) (citation omitted). While it is true that the duty to mitigate does not apply to intentional injuries where there is malice and willful intent to injure, Den *Norske Amerikalinje Actiesselskabet v. Sum Printing & Publ'g Ass'n,* 122 N.E. 463, 465 (N.Y.1919); *see also Ridgeview Partners, LLC v. Entwistle,* 354 F.Supp.2d 395, 402-03 (S.D.N.Y.2005), it would be "equally unjust ... to allow and encourage the [judgment creditor] to intentionally increase his damages,"*Clark Operating Corp. v. Yokley,* 466 N.Y.S.2d 204, 205 (Civ.Ct.1983); *cf.*Restatement (Second) of Torts § 918(2). It is undisputed that Trepel instructed his attorneys to keep the date of the Sheriff's sale a secret, and the sale was not widely publicized. Moreover, the sale of the shares to Trepel was an accommodation and not an arms-length sale. Offsetting the judgment only by the amount Trepel paid in an unchallenged,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 3054336 (S.D.N.Y.)
**(Cite as: 2006 WL 3054336 (S.D.N.Y.))**

unpublicized bid would constitute an unfair windfall. Plaintiff's motion for summary judgment on the defendants' defense regarding the offset is denied.

**B. Merits and Value of Underlying Default Judgment Amount**

Trepel seeks summary judgment dismissing defendants' defenses [FN9] that seek to establish at trial the value of the property Diop sold to Trepel. Trepel claims the amount of his damages were determined through the default judgment entered against Diop, and the defendants are prevented from relitigating the issue by either res judicata or collateral estoppel.

> FN9. The defendants argue that their defenses are not "affirmative" defenses because they go to the element of damages, which is the plaintiff's burden to prove. *Cf. Nat'l Market Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 526-27 (2d Cir.2004) (finding that intervening cause is not an affirmative defense because causation is an element for which plaintiff has burden). Affirmative defenses "rais[e] new facts and arguments that, if true, [ ] defeat the plaintiff's ... claim, even if all allegations in the complaint are true."Black's Law Dictionary 430 (7th ed.1999). Defendants are not challenging the amount of the default judgment entered against Diop, but rather are challenging the amount of Trepel's economic loss. Thus, their challenge to the amount of damages is not an affirmative defense.

*8 Federal principles of collateral estoppel apply to prior federal judgments, and require that

(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir.2006) (citation omitted)."The law is well established that a default judgment is deemed as conclusive an adjudication of the merits of an action as a contested judgment."*Norex Petrol. Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 160 (2d Cir.2005). In

general, however, "collateral estoppel forecloses only those issues that have been actually litigated and determined in a prior action, and an issue is not actually litigated if there has been a default."*Yoon v. Fordham Univ. Faculty & Admin. Retirement Plan,* 263 F.3d 196, 202 n. 7 (2d Cir.2001) (citation omitted).

Even if collateral estoppel were available to determine the amount of Trepel's loss, collateral estoppel only applies to a party in a prior proceeding "and that party's privies." *Stichting Ter Behartiging v. Schreiber,* 327 F.3d 173, 184 (2d Cir.2003) (citation omitted). Privity is found if a "nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding."*Id.* at 185.

Although defendants conducted the prior litigation as attorneys for Diop, their interests were not represented by Diop in that proceeding and they did not exercise "actual control" over the positions Diop asserted in the litigation. Privity is not created here by the existence of an attorney-client relationship. Therefore, Trepel's motion for summary judgment striking the defendants' defenses on the value of the property purchased by Trepel is denied.

**III. McCormack and the Hodgson Firm's Motion for Summary Judgment Against Dippold and the Beldock Firm**

**A. Causation**

Third-party defendants McCormack and the Hodgson Firm seek summary judgment on the claims for contribution filed by the defendants based on the theory that McCormack and the Hodgson Firm engaged in malpractice. McCormack and the Hodgson Firm argue that there is no evidence that any malpractice on their part caused Trepel's loss. They argue that even if they had warned Bachraty or Diop's co-op board about the impending attachment order or sought an earlier order from Judge Lynch, it is too speculative as to whether Bachraty would have prevented Diop from moving out or Judge Lynch would have issued an earlier attachment order.

As discussed above, causation is a fact-intensive issue. The third-party defendants' motion for summary judgment on the causation issue is denied.

Slip Copy

Slip Copy, 2006 WL 3054336 (S.D.N.Y.)

**(Cite as: 2006 WL 3054336 (S.D.N.Y.))**

B. Contribution Under New York Judiciary Law § 487

Third-party defendants argue that defendants may not seek contribution for any damages awarded under Section 487 because the section provides for treble damages. Contribution is available in New York "even in favor of an intentional wrongdoer."*Durandette v. City of Syracuse Fire Dep't,* 661 N.Y.S.2d 117, 118 (App.Div.1997) (citation omitted); *see also Bd. of Educ. v. Sargent, Webster, Crenshaw & Folley,* 517 N.E.2d 1360, 1364 (N.Y.1987).*But see First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 489 (S.D.N.Y.1997). Punitive damages, however, "are in the nature of a penalty and contribution among tortfeasors is not permissible."*Felice v. Delporte,* 524 N.Y.S.2d 919, 920 (App.Div.1988); *see also Rodick v. City of Schenectady,* 1 F.3d 1341, 1349 (2d Cir.1993). Treble damages are often considered punitive; "[t]he very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers."*Vt. Agency of Natural Resources v. U.S. ex rel. Stevens,* 529 U.S. 765, 786 (2000) (citation omitted).Section 487 has its origins in a criminal statute, *Cox v. Microsoft Corp.,* 737 N.Y.S.2d 1, 3 (App .Div.2002), and thus its trebled damages provision is appropriately understood to be punitive and does not allow for a contribution claim.

*9 The initial amount of the Section 487 damages, however, before trebling, is compensatory. *See Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.,* 588 N.Y.S.2d 982, 985 (Sup.Ct.1992). Accordingly, the defendants may seek contribution for the initial award of Section 487 damages, before trebling.

*Conclusion*

For the above reasons, defendants' motion for summary judgment is granted on the issues of intentional misrepresentation based on Dippold's letter to Bachraty and negligent misrepresentation, and otherwise denied; plaintiff's motion for partial summary judgment is denied; and third party defendants' motion for summary judgment is denied.

SO ORDERED:

S.D.N.Y.,2006.

Trepel v. Dippold

Slip Copy, 2006 WL 3054336 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.