LEXSEE



Analysis
As of: Jun 30, 2008

MAC TRUONG and MARYSE MACTRUONG, Plaintiffs, -against- TRAN DINH TRUONG, Defendant. MAC TRUONG and MARYSE MACTRUONG, Plaintiffs, -against- DAVID M. LEVY, and LEVY, BOONSHOFT & SPINELLI, P.C., Defendants. MAC TRUONG and MARYSE MACTRUONG, Plaintiffs, -against- CHARLES SCHWAB & CO., LAYTON BROOKS & HECHT LLP, EAMONN F. FOLEY, AND SILLS, CUMMIS, RADIN, TISCHMAN, EPTSTEIN & GROSS, Defendants.

03 Civ. 3423 (PKC), 03 Civ. 3424 (PKC), 03 Civ. 3425 (PKC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 10973

February 5, 2007, Decided

**SUBSEQUENT HISTORY:** Motion denied by Truong v. Truong, 2007 U.S. Dist. LEXIS 71941 (S.D.N.Y., Sept. 27, 2007)

**PRIOR HISTORY:** Vitranschart, Inc. v. Levy, 2003 U.S. Dist. LEXIS 16156 (S.D.N.Y., Sept. 12, 2003)

**CORE TERMS:** causes of action, res judicata, collateral estoppel, privity, leave to amend, ownership, disputed, summary judgment, misrepresentation, injunction, personal accounts, preclusion, deposit, state case, preclusive effect, transferred, fraudulent, conspired, blocking, state action, false pretenses, interpleaded, wrongdoing, quotations, privies, fiduciary duty, final judgment, citations omitted, adjudicated, conspiracy

**COUNSEL:** [*1] For Dr. Mac Truong, Plaintiff, Pro se, Attorney at Law, New York, NY.

For Truong Dinh Tran, Defendant: David M. Levy, LEAD ATTORNEY, Levy & Boonshoft. P.C., NY, NY.

**JUDGES:** P. Kevin Castel, United States District Judge.

**OPINION BY:** P. Kevin Castel

**OPINION**

MEMORANDUM AND ORDER

P. KEVIN CASTEL, U.S.D.J.:

The three above-captioned cases, though interrelated, were separately filed by pro se plaintiffs Mac Truong and his wife, Maryse MacTruong, on October 29, 2002, in the United States District Court for the District of New Jersey.[1] The cases were subsequently transferred to this district pursuant to 28 U.S.C. § 1404(a). The first case, Truong v. Tran Dinh Truong (No. 03 Civ. 3423), is against an individual named Tran Dinh Truong ("Tran"), a businessman with whom Truong has had dealings dating back to the 1970's. The second case, Truong v. Levy (No. 03 Civ. 3424), is against a lawyer-- David M. Levy--and a law firm--Levy, Boonshoft & Spinelli, P.C. ("LBS")--that has represented Tran in various proceedings against Truong in New York and New Jersey. The third case, Truong v. Charles Schwab & Co. (No. 03 Civ. 3425), is against Charles Schwab & Co. [*2] ("Schwab") and two law firms--Layton Brooks & Hecht LLP ("LBH"), and Sills, Cummis, Radin, Tischman, Epstein & Gross ("Sills Cummis")--and one LBH lawyer, Eamonn F. Foley. Foley, LBH and Sills Cummis have represented Schwab in various proceedings against Truong in New York and New Jersey.[2]

1

Plaintiff Mac Truong was an attorney admitted to practice law in New York when the actions were commenced. He has since been disbarred. See In re Truong, 22 A.D.3d 62, 800 N.Y.S.2d 12 (App. Div. 1st Dep't 2005).

2   Schwab, Foley, LBH and Sills Cummis are referred to collectively in this opinion as the "Schwab defendants."

As the foregoing suggests, there is a long and tortured litigation history between and among these parties. What began as a relatively straightforward breach of fiduciary duty, tort and contract case in the New York Supreme Court, New York County, has spawned a dizzying web of litigations in the courts of New York State and the federal district and bankruptcy courts of New York and New [*3] Jersey.

The three instant cases relate to the ownership of funds on deposit in several accounts maintained at Schwab. The allegations in the complaints are that the Schwab defendants conspired with Tran and Levy to falsify bank records in order to ensure that Tran receive all of the funds and that Truong was denied his rightful share of the funds. The complaints further allege that the defendants conspired to file a fraudulent proof of claim in the amount of $ 4.5 million in plaintiffs' bankruptcy proceeding in New Jersey. Plaintiffs allege that the defendants' course of conduct was tortious, in breach of contract, and in violation of a host of provisions in the United States Code.

The Schwab defendants have answered the complaint, and have moved for a judgment on the pleadings pursuant to Rule 12(c) or alternatively Rule 56(b), Fed. R. Civ. P., on the grounds of res judicata and collateral estoppel. They also seek an injunction against Truong and those in privity with him from, inter alia, commencing legal or disciplinary actions against Schwab or its attorneys. In response, plaintiffs have moved for leave to amend the complaint in [*4] that action.

Tran, Levy and LBS have also filed their answers (see Weintraub Supp. Aff. Ex. A), and have jointly moved for a judgment on the pleadings on the grounds of res judicata, collateral estoppel, and the Rooker-Feldman doctrine. They alternatively argue that the statutes cited by plaintiffs do not give rise to a private right of action and that there is no independent jurisdictional basis for plaintiffs' state law claims. In plaintiffs' opposition papers, they have requested leave to amend the complaint in the action against Tran (No. 03 Civ. 3423), although a formal motion has not been made.

Both sets of defendants have served the requisite Notice to Pro Se litigants opposing their motions. I have construed the pleadings in the light most favorable to the plaintiffs, the non-movants, but I am nonetheless constrained by principles of preclusion and finality to grant both motions for dismissal. Plaintiffs' motions for leave to amend the complaints are denied as futile. Schwab's motion for a broader injunction against Truong is denied, because Schwab and its attorneys are already protected by a litigation injunction against Truong and those in privity with him. [*5] Vishipco Line v. Charles Schwab & Co., No. 02 Civ. 7823 (SHS), 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229, at *10 (S.D.N.Y. Mar. 19, 2003).

I. BACKGROUND

A. History of the Controversy

The history of this controversy has been described in detail in several opinions of this Court and the New York Supreme Court, and so only those facts and prior proceedings which are relevant to the disposition of the instant motions warrant recitation here.³ The story begins with the fall of Saigon in 1975 and the subsequent nationalization of ten Vietnamese shipping corporations that were previously doing business collectively under the name Vishipco Lines ("Vishipco"). Following the communist takeover of their businesses, the ousted Vishipco corporations sought to recover their assets that were inside the United States, and defendant Tran, acting on behalf of Vishipco, enlisted Truong to assist in the recovery. Truong was granted powers of attorney in recovering the assets, and was to receive a commission for his efforts in the form of a percentage of the recovery.

3   See e.g., Vishipco Line v. Charles Schwab, No. 02 Civ. 7823 (SHS), 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229 (S.D.N.Y. Mar. 19, 2003); Vitranschart, Inc. v. Levy, No. 00 Civ. 3618 (SHS), 2000 U.S. Dist. LEXIS 12609, 2000 WL 1239081 (S.D.N.Y. Aug. 31, 2000); Truong v. Charles Schwab, No. 604650/97, slip op. (N.Y. Sup. Ct. Apr. 3, 2000) attached as Brooks Aff. Ex. F; Truong v. Charles Schwab, No. 604650/97, slip op. (N.Y. Sup. Ct. June 18, 1998) attached as Brooks Aff. Ex. D; Truong v. Charles Schwab, No. 604650/97, slip op. (N.Y. Sup. Ct. Nov. 17, 1997) attached as Brooks Aff. Ex. C. The factual background for the three instant actions, as set forth in Part I.A. of this opinion, is drawn from the consistent accounts of the facts in the prior opinions. See Ambase Corp v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003) (noting courts may take judicial notice of facts "shown by the court's own records").

[*6] Sometime in or around 1977, Truong recovered a bank account with Chase Manhattan Bank ("Chase") worth approximately $ 200,000.00. The Chase

account assets were subsequently transferred to three accounts at Merrill Lynch, where they remained until 1995. The assets at Chase and then Merrill Lynch could not be liquidated, however, due to a freeze on the accounts pursuant to the United States' Trading with the Enemy Act. See 50 U.S.C. app. §§ 1 et seq. In 1995, a treaty between the United States and Vietnam had the effect of unblocking the accounts. See 22 U.S.C. §§ 1645 et seq. With the accounts unblocked, Truong transferred the funds from Merrill Lynch to several accounts at Schwab. In so doing, Truong took his commission and other amounts that he thought belonged to him under his contract with Tran by transferring at least some portion of the funds into personal accounts that Truong and his family maintained at Schwab.

Following the 1995 transfers from Merrill Lynch to Schwab, Schwab maintained eight accounts of relevance to the subsequent wave of litigation initiated by Truong. Three were corporate accounts opened for the [*7] Vishipco entities; one was in the name of Vishipco Lines, one in the name of Vishipco Line, and one in the name of Dai Nam Hang Hai Congty Vishipco Line of Vietnam ("Dai Nam"). The remaining five accounts were personal accounts. Two accounts were in Truong's name; one was a joint account with his wife, the co-plaintiff, Maryse MacTruong; one account was a custodial account for one of their two children; and the final account was a custodial account for the other of their two children.

In 1997, Tran informed Schwab that he had not authorized the transfers from the Vishipco accounts to Truong's personal accounts, and that Truong's powers of attorney were revoked. Schwab, either at Tran's request or on its own initiative, responded by blocking all access to the Vishipco corporate accounts and Truong's personal accounts. It appears that in blocking Truong's access to the accounts, the funds in the three corporate accounts were transferred into two new corporate accounts, one in the name of Vishipco Lines, and the other in the name of Dai Nam, leaving seven disputed accounts. (See 03 Civ. 3425 Plaintiffs' Affirmation in Opposition to Motion and Support of Cross-Motion P 53) Truong [*8] responded by suing Schwab for interfering with his access to the funds.

B. The New York State Litigation

Truong commenced his first action against Schwab in the New York Supreme Court, New York County, on September 10, 1997. Truong was the sole plaintiff, and Schwab was the sole defendant. The complaint alleged, inter alia, that Schwab converted plaintiff's property, unlawfully blocked plaintiff's account, conspired with Tran to falsify bank records and to make misrepresentations to the court, and violated plaintiff's right to privacy by providing Tran with information regarding Truong's accounts. See Truong v. Charles Schwab, No. 604650/97, slip op. at 6-12 (N.Y. Sup. Ct. June 18, 1998). Schwab interpleaded Tran, Vishipco and Dai Nam as competing claimants to the funds, and Truong and the third-party defendants asserted cross-claims against one another. Truong's cross-claims against the third-party defendants were identical to his claims against Schwab. See Truong v. Charles Schwab, No. 604650/97, slip op. at 12 (N.Y. Sup. Ct. Apr. 3, 2000). [4] Fairly early in the proceedings, Schwab obtained dismissal of all claims against it on summary judgment and was also discharged [*9] as stakeholder of the interpleaded accounts. See Truong v. Charles Schwab, No. 604650/97 (N.Y. Sup. Ct. June 18, 1998). Though discharged as stakeholder by order of the court, Schwab entered into a stipulation with the competing claimants in June 1999 whereby Schwab agreed to retain custody of the seven disputed accounts and restrain all access to the funds. See "Stipulation and Order Concerning Certain Restrained Accounts Held by Charles Schwab & Co. Inc.," attached as Brooks Aff. Ex. E. The stipulation was "so-ordered" by then Justice Cozier of the New York Supreme Court on June 14, 1999. Id.

   4   Specifically, the cross-claims alleged "causes of action for (1) conversion; (2) deceitful and fraudulent acts; (3) fraud, libel and slander; (4) breach of contract; (5) right to privacy; (6) material misrepresentation in the course of litigation; (7) abuse of power; (8) emotional distress; (9) conspiracy; and (10) loss of time and legal fees." Truong v. Charles Schwab, No. 604650/97, slip op. at 12 (N.Y. Sup. Ct. Apr. 3, 2000).

[*10] Subsequently, on April 3, 2000, the Supreme Court granted the third-party defendants' motion for summary judgment against Truong and dismissed all of Truong's remaining claims against those parties, and that decision was affirmed on appeal. See Truong v. Charles Schwab, No. 604650/97, slip op. at 24-25 (N.Y. Sup. Ct. Apr. 3, 2000), aff'd, 289 A.D.2d 98, 735 N.Y.S.2d 15 (App. Div. 1st Dep't 2001). Justice Cozier held that Truong's transfer of the funds breached his fiduciary duty to Tran and Vishipco, and further found that "[a]ll of the interpleaded funds on deposit in the various Schwab accounts are traceable to the original recovery proceeds, together with interest, dividends, and accretions." Id. at 20-21. Accordingly, Vishipco Lines and Dai Nam were declared the "lawful owners of the interpleaded assets." Id. at 24. However, Justice Cozier prohibited the release of the funds pending a hearing on a "long accounting" before a Special Referee pursuant to CPLR § 4317(b). Id. at 25-26. This long accounting never occurred. Instead, following the reassignment of the case to Justice Gammerman, the Court ordered Schwab to release [*11]  all of the funds to the

third-party defendants. (9/25/02 Tr. at 7-8, attached as Brooks Aff. Ex. G) The Order was entered over Truong's objection that the long accounting was required by Justice Cozier's earlier opinion, and Justice Gammerman "so-ordered" a copy of the transcript on September 26, 2002 ("September 26, 2002 Order"). (Brooks Aff. Ex. G) No appeal was ever taken from the September 26, 2002 Order in the New York State Courts. Subsequently, several contempt proceedings were held in the Supreme Court against Truong for his repeated attempts to transfer funds from the disputed personal accounts at Schwab to other financial institutions. (Brooks Aff. Exs. H, K, L)

C. The Six Southern District Actions

Within two weeks of the September 26, 2002 Order, Truong, in both his individual and representative capacities, commenced six separate actions in this district against Schwab, LBH and Foley (the "six Southern District actions"). The defendants were the same in each case, but the actions were all filed on behalf of different plaintiffs. One action was brought by Truong in his individual capacity, and another action was brought by Truong as a debtor-in-possession on behalf [*12] of his bankruptcy estate.[5] Truong also commenced an action as an attorney on behalf of his wife, and brought one action on behalf of each of their two children. The sixth action was brought on behalf of a score of Vietnamese individuals and corporations. In the complaints, Truong alleged "(1) improper handling of plaintiffs' accounts, (2) restricting plaintiffs' access to their property through misrepresentations or false pretenses and (3) conspiring to restrict plaintiffs' access to their property through misrepresentations and false pretenses." Vishipco Line v. Charles Schwab & Co., 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229, at *6 (S.D.N.Y. Mar. 19, 2003). On March 19, 2003, Judge Stein granted the defendants' motion to dismiss all six cases on the grounds that the actions were barred by the doctrines of res judicata and collateral estoppel, as the issue of ownership of the funds and the lawfulness of defendants' conduct had been adjudicated in the state court. Id. Judge Stein further enjoined Truong and his privies from commencing "any action, in any capacity, against Schwab or its attorneys," without prior leave of court. 2003 U.S. Dist. LEXIS 4082, [WL] at * 10. Finally, Truong was sanctioned by the [*13] Court pursuant to 28 U.S.C. § 1927 for vexatious litigation tactics, and he was ordered to pay the reasonable attorneys fees and costs incurred by Schwab and its lawyers in defending the various actions. 2003 U.S. Dist. LEXIS 4082, [WL] at * 10-11.[6]

    5   Truong and his wife, the co-plaintiff, filed for bankruptcy under Chapter 13 in the Bankruptcy Court for the District of New Jersey in July 2000, shortly after Justice Cozier granted summary judgment in favor of the third-party defendants. The action was converted to a Chapter 11 proceeding in October 2000 by the bankruptcy court, and the action was dismissed in October 2002. (See 10/23/02 Tr. of Bankr. Proc, attached as Brooks Aff. Ex. M)

    6   An appeal from Judge Stein's dismissal in the six Southern District actions is currently pending before the Second Circuit. The appeal had been stayed pending a resolution of a second bankruptcy petition filed by Truong and his wife in New Jersey in 2004. The stay was recently lifted.

D. The Complaints

[*14] The instant complaints were filed in the United States District Court for the District of New Jersey on October 29, 2002--roughly one month after the entry of Justice Gammerman's September 26, 2002 Order, but several months prior to the entry of the litigation injunction against Truong. In the nearly verbatim complaints in these actions, plaintiffs do not materially contradict the history gleaned from the prior opinions of this and other courts described above. Plaintiffs allege that in 1995, pursuant to Truong's powers of attorney, he transferred assets on deposit in three Vishipco accounts from Merrill Lynch to Schwab. (03 Civ. 3423 Compl. PP 15-16; 03 Civ. 3423 Compl. PP 15-16; 03 Civ. 3425 Compl. PP 17-18) They further allege that as of May 2000, the approximate value of the assets on deposit in those accounts plus the value of the five personal accounts with Schwab totaled $ 4.5 million. (03 Civ. 3423 Compl. P 17; 03 Civ. 3423 Compl. P 17; 03 Civ. 3425 Compl. P 19) Plaintiffs state that on or about September 2, 1997, Schwab closed the three corporate Vishipco accounts and transferred the assets to new accounts to which Truong did not have access, and that Schwab blocked plaintiffs' [*15] access to the funds on deposit in their family's personal accounts. (03 Civ. 3423 Compl. PP 18-20; 03 Civ. 3423 Compl. PP 18-21; 03 Civ. 3425 Compl. PP 20-23) Plaintiffs' allegations of wrongful conduct in the course of blocking the accounts mirror the allegations of wrongdoing in Truong's prior claims in state and federal court.

The only novel aspect of the complaints in these actions is that they focus on the defendants' conduct leading up to, and during the course of, plaintiffs' Chapter 11 proceedings in New Jersey. In July 2000, shortly after Justice Cozier granted summary judgment in favor of Tran, Dai Nam and Vishipco and dismissed Truong's claims, plaintiffs filed for bankruptcy in New Jersey. In the instant cases, plaintiffs complain that the defendants conspired to have Tran file a "fraudulent" proof of claim with the bankruptcy court in the amount of $ 4.5 million, which was, according to plaintiffs, the approximate value

of the assets in the disputed accounts at the time. (03 Civ. 3423 Compl. P 22; 03 Civ. 3423 Compl. P 23; 03 Civ. 3425 Compl. P 25) In the words of the complaints, "[f]rom about September 2, 1997 to the present defendants . . . acted in concert with [*16] one another, and/or with other parties . . ., to file the said false bankruptcy claims against Plaintiff's bankruptcy estate, and to infringe plaintiffs' rights to own and/or possess, manage and enjoy their property deposited at Schwab . . . ." (03 Civ. 3423 Compl. P 24; 03 Civ. 3423 Compl. P 25; 03 Civ. 3425 Compl. P 27) The complaints list fifteen alleged "misrepresentations and/or false pretenses" made by the defendants which culminated in the "fraudulent claim" by Tran in the bankruptcy court. (See 03 Civ. 3423 Compl. P 26; 03 Civ. 3423 Compl. P 27; 03 Civ. 3425 Compl. P 29)

The complaints proceed with many theories of liability. All of the complaints assert claims for (1) conspiracy to commit, and the commission of, bankruptcy fraud and bank fraud, as well as the making of false bank records and entries (03 Civ. 3423 Compl. PP 27-35, 39-41 (first, second, third and fifth causes of action); 03 Civ. 3423 Compl. PP 28-36, 40-42 (first, second, third and fifth causes of action); 03 Civ. 3425 Compl. PP 30-38, 45-48 (first, second, third and sixth causes of action)); (2) the participation of the defendants in the fraudulent receipt of benefits (03 Civ. 3423 Compl. PP 36-38 (fourth [*17] cause of action); 03 Civ. 3423 Compl. PP 37-39 (fourth cause of action); 03 Civ. 3425 Compl. PP 42-44 (fifth cause of action)); (3) mail fraud (03 Civ. 3423 Compl. PP 42-44 (sixth cause of action); 03 Civ. 3423 Compl. PP 43-46 (sixth cause of action); 03 Civ. 3425 Compl. PP 49-51 (seventh cause of action)); and (4) wrongful attachment and trespass to chattels in connection with the defendants' efforts to release the disputed accounts to parties other than plaintiffs. (03 Civ. 3423 Compl. PP 45-50 (seventh and eighth causes of action); 03 Civ. 3423 Compl. 46-51 (seventh and eighth causes of action; 03 Civ. 3425 Compl. PP 52-57 (eighth and ninth causes of action)) In the Schwab action, plaintiffs make two additional claims that (1) the Schwab defendants acted in bad faith and breached fiduciary duties and duties of confidentiality to plaintiffs in divulging information regarding plaintiffs' accounts to Tran and his principals (03 Civ. 3425 Compl. PP 39-41 (fourth cause of action)), and (2) that the Schwab defendants violated 15 U.S.C. § 1692e by making false and misleading representations in the course of collecting an alleged debt. (Id. at PP 58-60 (tenth [*18] cause of action))

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(c) motion, the Court employs the same legal standard as applies to motions to dismiss under rule 12(b)(6), Fed. R. Civ. P. Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2005). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. "Dismissal is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Moreover, pro se pleadings are to be given liberal construction and are read to "raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). However, "when a defendant raises claim preclusion . . . as an affirmative defense and it is clear from the face of the complaint, and matters of which the [*19] court may take judicial notice, that the plaintiff's claims are barred as a matter of law," dismissal is proper. Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000). As the instant motions both arise under Rule 12(c), the same legal standard applies to both motions.

### B. Collateral Estoppel

Collateral estoppel, also called "issue preclusion," "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004) (internal quotations and citations omitted). Defendants contend that the plaintiffs' claims are barred by collateral estoppel because plaintiffs in this case seek to relitigate two core issues that were adjudicated in the New York Supreme Court: (1) the ownership of the disputed accounts, and (2) the defendants' conduct in the course of resolving the ownership issues. According to the defendants, both issues were conclusively decided against plaintiffs in the New York Supreme Court. Defendants argue that because [*20] the state court found that plaintiffs have no entitlement to the funds, and that defendants acted lawfully, the claims asserted in these cases fail as a matter of law. I agree with the defendants that plaintiffs are attempting to relitigate the previously decided issues relating to ownership of the funds, and that collateral estoppel mandates dismissal of the complaints.

When a federal court is called upon to determine whether a prior adjudication of an issue in a state court bars subsequent litigation in federal court, the preclusion question is answered under the collateral estoppel law of the state from which the earlier judgment was rendered.

See Hoblock v. Albany County Bd. of Elecs., 422 F.3d 77, 93 (2d Cir. 2005). Therefore, in considering the preclusive effect of the judgments in the New York Supreme Court in Truong's prior case against Schwab and Tran, New York preclusion law applies. Under New York law, collateral estoppel "may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate," and when "[(3)] the issue that was raised [*21] previously . . . [is] decisive of the present action." Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotations and citations omitted); see also Farrell v. Burke, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting Curry).

The New York Supreme Court adjudicated the issues of defendants' conduct and ownership of the funds that plaintiffs have raised in these actions. The Supreme Court conclusively determined: (1) that Schwab engaged in no wrongdoing when it blocked plaintiffs' access to the disputed accounts, Truong v. Charles Schwab, No. 604650/97, slip op. at 5-12 (N.Y. Sup. Ct. July 27, 1998) (granting summary judgment in favor of Schwab); (2) that Truong breached his fiduciary duties to Tran, Vishipco and Dai Nam, engaged in tortious conduct and breached his contractual obligations to those parties, and that Tran, Vishipco and Dai Nam engaged in no wrongdoing giving rise to liability, Truong v. Charles Schwab, No. 604650/97, slip op. at 14-23 (N.Y. Sup. Ct. Apr. 3, 2000) (granting summary judgment in favor of the third party defendants against Truong); (3) that the defendants did not conspire with one another against [*22] Truong, id at 12; (4) that Vishipco and Dai Nam--and not Truong--were the lawful owners of the funds in the disputed accounts, id. at 24 (declaring Vishipco and Dai Nam owners of the interpleaded assets); and (5) that Schwab was obligated to release the funds in the accounts to Tran's principals, Vishipco and Dai Nam. See September 26, 2002 Order, at 7-8.

As described above in Part I.D., the complaints in the three instant cases allege that Tran and his lawyer, and Schwab and its lawyers, engaged in unlawful activity and made misrepresentations in blocking plaintiffs' access to the disputed accounts, and that the defendants conspired to have Tran file a proof of claim for the value of the funds. However, the issue of the lawfulness of defendants' conduct in blocking plaintiffs' accounts was decided in favor of the defendants in the New York action. In addition, Tran's principals' ownership of the funds valued at $ 4.5 million--and Truong's lack thereof--was decided in favor of Tran, Vishipco and Dai Nam in the New York action. That plaintiffs now cast their allegations against the backdrop of a now-dismissed bankruptcy proceeding does not alter the fact that the basic [*23] underlying allegations are all the same. In the state case, the wrongdoing and conspiracy was allegedly aimed at depriving plaintiffs of their rights to own the funds; in these cases, the same wrongdoing and conspiracy was allegedly aimed at depriving plaintiffs of their rights to own the funds *and also* at filing a proof of claim to the assets in a bankruptcy proceeding. These claims raise identical issues of fact, and were adjudicated in the prior proceeding. The first prerequisite to collateral estoppel under New York law is therefore met.

In evaluating the second requirement to the application of collateral estoppel--whether the plaintiffs had a full and fair opportunity to litigate the issues in the prior proceeding--New York law dictates

> that "the various elements which make up the realities of litigation[]" should be explored, including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001) [*24] (quoting Schwartz v. Public Adm'r of Bronx County, 24 N.Y.2d 65, 246 N.E.2d 725, 729, 298 N.Y.S.2d 955 (N.Y. 1969)); see also Curry, 316 F.3d at 332 (quoting same). Plaintiff Truong was represented by various attorneys at different times in the state action, but at other times chose to represent himself. However, Truong was an attorney admitted to practice law in New York until he was disbarred in 2005, see In re Truong, 22 A.D.3d 62, 800 N.Y.S.2d 12 (App. Div. 1st Dep't 2005), and was a practicing attorney during the pendency of the state case. The New York litigation was extensive and protracted, and involved a staggering number of motions and attempts by Truong to pursue every conceivable avenue to obtain a judgment in his favor. Furthermore, Truong appealed the final summary judgment decision on liability against him to the Appellate Division, First Department, and was rebuffed in that Court. See Truong v. Charles Schwab, 289 A.D.2d 98, 735 N.Y.S.2d 15 (App. Div. 1st Dep't 2001). While Truong never appealed Justice Gammerman's September 26, 2002 Order releasing the account funds to the third-party defendants, neither the formal entry of a final judgment nor the presence [*25] of an appeal is necessary for a New York judgment to have preclusive effects. See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 268 (2d Cir. 1997) (citing New York authori-

ties). Thus, Truong had a full and fair opportunity to litigate these issues in the New York courts.

Finally, with respect to the third element, Vishipco and Dai Nam's lawful ownership of the funds on deposit in the accounts, and the propriety of the defendants' conduct, are decisive in the present action. Plaintiffs' multiple theories of liability are all predicated on the fact of defendants' "fraudulent" claims to, or blocking of, the funds in the disputed accounts. However, as previously explained, the New York courts conclusively determined that plaintiffs have no ownership interest in the accounts, that defendants acted lawfully, and that Tran's principals are the lawful owners of the accounts. The September 26, 2002 Order compelled Schwab to release the funds to Truong's adversaries. Thus, the decisive issues in the present actions--whether defendants wrongfully took, withheld, made claims to or conspired to steal funds that belonged to plaintiffs--were already decided in the New York [*26] State courts.

As the prerequisites to collateral estoppel under New York law are met, the only potential obstacle to its application in these cases is that plaintiff Maryse MacTruong was not a party to the state action. However, under New York law, "[c]ollateral estoppel binds not only the actual parties to a lawsuit, but also their privies." Conte v. Justice, 996 F.2d 1398, 1402 (2d Cir. 1993) (citing Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 265 N.E.2d 739, 743, 317 N.Y.S.2d 315 (N.Y. 1970)). While "privity does not have a technical and well defined meaning[,] . . . [i]t includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to that action, and possibly coparties to a prior action." Watts, 265 N.E.2d 739, 27 N.Y.2d at 277 (internal citations omitted). The Second Circuit has interpreted this language from Watts to permit a finding of privity when two actions are controlled by a single party and where the interests involved in the two proceedings are identical. Ferris v. Cuevas, 118 F.3d 122, 127-28 (2d Cir. 1997). In assessing whether the [*27] two actions are controlled by the same parties, the fact that the two actions are prosecuted by the same attorneys is of "singular significance," although it is not itself conclusive. Id. (quoting Watts, 265 N.E.2d at 744). The emphasis on control is intended "to prevent one controlling person or entity from bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows." Id. at 128.

The case of Ferris v. Cuevas is instructive on this point. In Ferris, Charles Juntikka, an attorney, had filed an action on behalf of himself and others in the New York Supreme Court, New York County, to compel the City Clerk to certify certain initiative petitions that the plaintiffs had assembled during a campaign finance reform effort. Id. at 124. The plaintiffs were denied the requested relief in the Supreme Court, and that result was affirmed on appeal. Id. at 125. Soon after the appeal was denied, two other individuals who were not parties to the state action, but were represented by Juntikka, filed an action in the Southern District of New York in which they sought the same relief as the state plaintiffs but [*28] proceeded on a different theory of liability. Id. In light of the existence of a prior relationship between Juntikka and the federal plaintiffs, and since Juntikka controlled the state action in both his individual and representative capacities, and controlled the federal action as an attorney, the Second Circuit had "no hesitation in finding that the aspect of 'control' referenced" by the New York courts was sufficiently present to support the finding of privity between the litigants. Id. at 128.

In Truong's cases, Truong brought the first action in the New York Supreme Court to recover the exact same property--funds on deposit in the corporate accounts and the accounts in his name and in his wife and children's names--at issue in these cases; therefore, the interests in the two proceedings are identical. In fact, the only account bearing Maryse MacTruong's name is a joint account with Truong. With respect to the identity of the attorneys in the two cases, Truong was at times represented by counsel in the state proceedings, but at other times he proceeded pro se. However, Truong was admitted to practice law in New York throughout the state court proceedings. Truong later [*29] brought, in both his individual and representative capacities, the six Southern District actions that were subsequently dismissed by Judge Stein. Truong represented Maryse MacTruong as an attorney in those proceedings (No. 02 Civ. 7928), which were also intended to recover the property that is at issue in these cases. When the three instant cases were first filed, Truong was not yet disbarred, and he alone drafted and signed the complaints. Therefore, as in Ferris, these state and federal cases feature litigants with a preexisting relationship, and it is apparent that one of them--namely, Mac Truong--is the driving force behind, and in control of, both actions. Truong has played the most prominent role in representing his and his family's interests in these cases, and it is therefore appropriate to bind Maryse MacTruong to the judgments in the New York Supreme Court, to which only Truong was a party. Therefore, the instant actions are barred in their entirety by collateral estoppel.

C. Res Judicata

Defendants argue that plaintiffs' claims are barred not only by collateral estoppel, but also by the doctrine of res judicata, or "claim preclusion." Defendants assert that [*30] all of the plaintiffs' claims in these cases were or should have been brought in the state action

and/or the six Southern District actions, and are consequently precluded. Federal courts "apply federal law in determining the preclusive effect of a federal judgment, and New York law in determining the preclusive effect of a New York State court judgment." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (internal citation omitted). However, as the basic contours of both New York and federal res judicata law are the same, it is not necessary to undertake two separate analyses. See id.; Pike v. Freeman, 266 F.3d 78, 90 n.14 (2d Cir. 2001). Under New York and federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." Marvel Characters, 310 F.3d at 286-87. In assessing whether a claim is barred, both New York and federal courts employ a "transactional" approach to res judicata, such "that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation [*31] . . . concerning the transaction, or series of connected transactions, out of which the action arose." Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (internal quotations omitted).

To determine whether two actions arose from the same transaction, courts "'look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Marvel Characters, 310 F.3d at 287 (quoting Pike, 266 F.3d at 91). "[D]ispositive to a finding of preclusive effect[] is whether an independent judgment of a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first." Id. (internal quotations omitted); see also Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 165 N.E. 456, 457, 250 N.Y. 304 (N.Y. 1929); Carrols Corp. v. Candy Candy, Inc., 241 A.D.2d 955, 661 N.Y.S.2d 324, 325 (App. Div. 3rd Dep't 1997) (citing Schuykill Fuel Corp.). However, the mere fact that "'both suits involved essentially the same [*32] course of wrongful conduct is not decisive.'" Marvel Characters, 310 F.3d at 287 (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 327, 75 S. Ct. 865, 99 L. Ed. 1122 (1955)). In addition, "a prior judgment cannot be given the effect of extinguishing claims which did not . . . then exist and which could not possibly have been sued upon in the previous case." Id. (internal quotations omitted).

These principles compel the conclusion that the judgments in the New York Supreme Court are res judicata to plaintiffs' first, third, fourth, fifth, sixth, seventh, and eighth causes of action in the complaints against Tran and Tran's attorneys. The state judgments are also res judicata to the first, third, fourth, fifth, sixth, seventh, eighth, and ninth causes of action raised in the complaint against the Schwab defendants.[7] The allegations supporting these causes of action arise from the same transactions or series of transactions that were at issue in the New York case, namely, the defendants' conduct in the course of determining the rightful owners of the accounts, and the ultimate issue of ownership. Moreover, in the instant cases, plaintiffs' submissions reveal [*33] an intention to directly challenge the September 26, 2002 Order entered by Justice Gammerman, which required Schwab to release the funds to Vishipco and Dai Nam. Therefore, plaintiffs are asking this Court to "destroy rights or interests established" by the New York courts, which is prohibited by the doctrine of res judicata.

[7] The remaining causes of action relate to conduct that occurred in the bankruptcy court in 2000, and post-date the adverse grant of summary judgment on liability in the state case. Though barred by collateral estoppel, res judicata does not bar these claims since they did not exist until after liability had been ruled on in the state case.

Neither Truong's failure to appeal the September 26, 2002 Order, nor the fact that Maryse MacTruong was not a party to the state case, prevents the application of res judicata to the cases at bar. Under New York law, orders and judgments are given preclusive effect even if they are not formally "final judgments" or if they were never [*34] appealed. See Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 268 (2d Cir. 1997) (citing New York authorities). In addition, res judicata may be applied to Maryse MacTruong, because, as discussed in Part II.B., she is in privity with Truong with respect to these litigations.

In the action against the Schwab defendants, plaintiffs' case is also barred in its entirety by the disposition in the six Southern District actions, to which both plaintiffs were parties. Those actions were filed nearly contemporaneously with these three cases, and there is no reason why plaintiffs could not have raised these claims against the Schwab defendants in those complaints.[8] Those cases, which alleged "(1) improper handling of plaintiffs' accounts, (2) restricting plaintiffs' access to their property through misrepresentations or false pretenses and (3) conspiring to restrict plaintiffs' access to their property through misrepresentations or false pretenses," Vishipco Line v. Charles Schwab & Co., 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229, at *6 (S.D.N.Y. Mar. 19, 2003), arose out of the same transaction or series of transactions as these cases. Despite the fact that the appeal remains [*35] pending in those cases, plaintiffs' present claims against the Schwab defendants are barred by res judicata. See American Med. Ass'n v. United Healthcare Corp., 00 Civ. 2800 (LMM),

2006 U.S. Dist. LEXIS 93864, 2006 WL 3833440, at *17 (S.D.N.Y. Dec. 29, 2006) (noting under federal law, pendency of appeal does not negate res judicata effects).

> 8   I note that in the six Southern District actions, the Schwab defendants requested an order "enjoin[ing] Mac Truong and his wife, Maryse Mac Truong, from proceeding in a virtually identical action in New Jersey and directing them to withdraw that complaint." Vishipco Line, 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229, at *1. Judge Stein declined to rule on that request.

Therefore, in sum, all but the second cause of action in the complaints against Tran and his attorneys are barred by res judicata.

D. Rooker-Feldman Doctrine

As noted, Truong never appealed Justice Gammerman's September 26, 2002 Order in the New York Courts. Instead, within one month of the entry of that Order, [*36] Truong filed nine separate actions in the federal courts of New York and New Jersey in hopes of obtaining relief. In this sense, the federal actions could be viewed as attempts to "appeal" a state judgment in the federal district courts of New York and New Jersey. Such actions are barred by the Rooker-Feldman doctrine. Since Rooker-Feldman is jurisdictional, see Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005), these cases thus present a significant question of whether this Court has subject matter jurisdiction over these claims.

The potential threshold bar to the application of the Rooker-Feldman doctrine is that Maryse MacTruong is a plaintiff in the federal cases, but was not a party in the state case. It is not clear, under the prevailing law of the Second Circuit and the Supreme Court, whether Rooker-Feldman can operate as a bar to claims brought by privies to underlying state judgments. See Hoblock v. Albany County Bd. of Elecs., 422 F.3d 77, 92 (2d Cir. 2005) (endorsing a limited concept of privity in the Rooker-Feldman doctrine). But see Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198, 1202, 163 L. Ed. 2d 1059 & n.2 (2006) [*37] (per curiam) (holding that "[t]he Rooker-Feldman doctrine does not bar actions by non-parties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to that judgment," but declining to "address whether there are *any* circumstances, however limited, in which Rooker-Feldman may be applied against a party not named in an earlier state proceeding . . . ." (emphasis in original)). It is not clear whether the narrow rule of privity espoused by the Second Circuit in Hoblock remains good law following Lance; however, as the instant claims are dismissed on the grounds of collateral estoppel and res judicata, I decline to reach that issue.

E. Plaintiffs' Motions for Leave to Amend

In the actions against Tran (No. 03 Civ. 3423) and the Schwab defendants (No. 03 Civ. 3425), plaintiffs seek leave to amend their complaints. Under Rule 15(a), Fed. R. Civ. P., "leave to amend a complaint should be 'freely given when justice so requires.'" Ellis v. Chao, 336 F.3d 114, 117 (2d Cir. 2003) (quoting Rule 15(a)). The Second Circuit has explained [*38] that

> "[w]here it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam). One appropriate basis for denying leave to amend is that the proposed amendment is futile. Nettis v. Levitt, 241 F.3d 186, 193 (2d Cir. 2001); see also Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Daugherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).

While the proposed amended complaints both seek to add new defendants and legal theories to the actions, they do not contribute any new allegations. (See 03 Civ. 3423 Docket No. 17, Plaintiffs' Affirmation Ex. 6; [*39] 03 Civ. 3425 Docket No. 19, Notice of Cross Motion Ex. 6) Rather, the proposed amended complaints make all of the same allegations of fraud and conversion of the Schwab accounts that have been repeatedly rejected by every court to which Mac Truong has brought these claims. Therefore, as the proposed amended complaints would not withstand a motion to dismiss for the same reasons the present complaints cannot withstand a motion to dismiss, plaintiffs' motions for leave to amend are denied.

F. The Schwab Defendants' Motion for a Broad Filing Injunction

The Schwab defendants have moved to broadly enjoin Truong and those in privity with him from (1) initi-

ating any actions or proceedings in any court, administrative body, or arbitration tribunal against Schwab or its affiliates, agents or employees; (2) communicating in any manner with Schwab; (3) serving any subpoena on Schwab or its attorneys; or (4) filing disciplinary complaints against Schwab or its attorneys. (See 03 Civ. 3425 Def. Mem. in Support of Motion for Judgment on the Pleadings, at 25) However, Schwab and its attorneys already enjoy protection from lawsuits by Truong and his privies pursuant to an injunction issued [*40] by Judge Stein on March 19, 2003. See Vishipco Line v. Charles Schwab & Co., 2003 U.S. Dist. LEXIS 4082, 2003 WL 1345229 (S.D.N.Y. Mar. 19, 2003). The Schwab defendants are now seeking a broader injunction that restricts Truong's extra-judicial activities. I am not persuaded that such an injunction is necessary to protect this Court's jurisdiction, and so I decline to grant the requested relief.

III. CONCLUSION

For the foregoing reasons, the defendants' motions for judgments on the pleadings dismissing the complaints in 03 Civ. 3423, 03 Civ. 3424 and 03 Civ. 3425 are granted, and plaintiffs' motions are denied. The Clerk of Court shall enter judgment in favor of the defendants in the three actions.

SO ORDERED.

P. Kevin Castel

    United States District Judge

    Dated: New York, New York

    February 5, 2007