IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>Defendant. | **CIVIL ACTION NO.**<br><br>**1:07-cv-05471-BSJ-KNF** |

# PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE HIS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

## Table of Contents

A. Introduction .................................................................................................. 1
B. Defendant's New Briefing on its Motion for Sanctions Conflicts with its Old Briefing 1
C. Defendant Has Not Shown that the Proposed Amendment is Futile ............................. 3
   1. Plaintiffs Are Allowed to Plead Circumstantial or Background Evidence ................. 3
   2. Defendant's Violation of 18 U.S.C. § 1001 is Relevant to Liability ......................... 4
   3. Defendant's Violation of 18 U.S.C. § 1001 is Relevant to Relief ............................ 5
   4. Plaintiff's Allegations Are Appropriate to Meet His Pleading Burden ..................... 7
   5. Defendant's New Authorities in Support of its Motion to Dismiss ........................... 8
     a. Defendant's New Authorities on Admissibility ................................................. 8
     b. Defendant's New Arguments on Rule 12(b)(6) ................................................ 9
D. Defendant Has Not Shown that the Proposed Amendment is in Bad Faith ................. 16
E. Defendant Inconsistently Claims Futility and Undermining of its Sanctions Motion .. 21
F. Defendant Has Not Shown that the Proposed Amendment Violates Rule 12(f) .......... 22
G. Defendant Has Not Shown Any Basis for an Award of Fees to It ............................... 23
H. Defendant's Amendment to its Motion for Partial Dismissal ..................................... 25
I. Conclusion .................................................................................................... 25

# Table of Authorities

## 1. Cases

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................7

*Abbatiello v. Monsanto Co.*,
   522 F. Supp. 2d 524 (S.D.N.Y. 2007)...........................................................14

*Alyeska Pipeline Service Co. v. Wilderness Society*,
   421 U.S. 240 (1975)........................................................................................24

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974)........................................................................................20

*Barnhart v. Federated Dept. Stores*,
   2005 WL 549712 (S.D.N.Y. March 8, 2005, No. 04 CIV 3668 (JGK))...............14

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007)......................................................................................7

*Binder v. Long Island Lighting Co.*,
   933 F.2d 187 (2d Cir. 1991).............................................................................23

*BMW of North America, Inc. v. Gore*,
   517 U.S. 559 (1996)..........................................................................................6

*Carofino v. Forester*,
   450 F. Supp. 2d 257 (S.D.N.Y. 2006)..............................................................16

*Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal
   Services Fund and Annuity Fund v. Lollo*,
   148 F.3d 194 (2d Cir. 1998).............................................................................14

*Chill v. General Electric Co.*,
   101 F.3d 263 (2d Cir. 1996).......................................................................10, 12

*Christiansburg Garment Co. v. Equal Employment Opportunity Commission*,
   434 U.S. 412 (1978)........................................................................................24

*Connecticut National Bank v. Fluor Corp.*,
   808 F.2d 957 (2d Cir.1987)..............................................................................12

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
   822 F.2d 1242 (2d Cir. 1987).......................................................................................7

*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 2002 WL 1822404 (D. Kan. June
   13, 2002) ................................................................................................................15

*In re United Brands Securities Litigation*,
   1990 U.S. Dist. LEXIS 1711 (S.D.N.Y. Feb. 16, 1990, No. 85 Civ 5445 (JFK) ...................23

*In re Worldcom, Inc. Securities Litigation*,
   308 F. Supp. 2d 214 (S.D.N.Y. 2004), *vacated*, 496 F.3d 245 (2d Cir. 2007) ......................20

*In re Worldcom, Inc. Securities Litigation*,
   496 F.3d 245 (2d Cir. 2007).......................................................................................20

*Jute v. Hamilton Sundstrand Corp.*,
   420 F.3d 166 (2d Cir. 2005), reversed ...........................................................................3

*Krieger v. Gold Bond Building Products, a Division of National Gypsum Co.*,
   863 F.2d 1091 (2d Cir. 1988).....................................................................................9

*Kulas v. Adachi*,
   1997 U.S. Dist. LEXIS 6868 ....................................................................................16

*Kuntz v. New York State Board of Elections*,
   924 F. Supp. 364 (N.D. N.Y. 1996), *aff'd*, 113 F.3d 326 (2d Cir. 1997)..............................23

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996) .........................................16

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986)..........................................................................................8

*Matsumura v. Benihana National Corp.*,
   542 F. Supp. 2d 245 (S.D.N.Y. 2008)..........................................................................10

*Morris v. Castle Rock Entertainment, Inc.*,
   246 F. Supp. 2d 290 (S.D.N.Y. 2003)...........................................................................15

*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)...................................................................................................3

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000)...................................................11

*Paolitto v. John Brown E. & C., Inc.*,
    151 F.3d 60 (2d Cir. 1998)..................................................................................23

*Pass v. National Broadcasting Co.*,
    1994 U.S. Dist. LEXIS 131, C.A. No. 92 Civ 9266 (RPP) ......................................8

*Ping v. Benihana National Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)..................................................................10

*Rackson v. Sosin*,
    1997 WL 786940 (S.D.N.Y. Dec. 22, 1997, No. 95 Civ. 1105 (LAP)) ............................21, 23

*Rappaport v. Buske*,
    2000 U.S. Dist. LEXIS 12325 (S.D.N.Y. Aug. 29, 2000, No. 98 Civ. 5255 (BSJ)) ..............16

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)..................................................................................4, 5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)............................................................................7

*Segal v. Gordon*,
    467 F.2d 602 (2d Cir. 1972)............................................................................7

*Solar Travel Corp. v. Nachtomi*,
    2001 U.S. Dist. LEXIS 7549 (S.D.N.Y. June 8, 2001, No. 00 Civ 3564 (AGS)) ..................16

*Sprint/United Management Co. v. Mendelsohn*,
    128 S. Ct. 1140 (2008)..................................................................................3

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
    538 U.S. 408 (2003)......................................................................................6

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
    921 F.2d 409 (2d Cir. 1990)............................................................................20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007)..................................................................................10

*Trepel v. Dippold*,
    2006 WL 3054336 (S.D.N.Y. Oct. 27, 2006, No. 04 CIV 8310 (DLC))................................14

*Vance v. Union Planters Corp.*,
    209 F.3d 438 (5th Cir. 2000) ..........................................................................9

*Vasile v. Dean Witter Reynolds Inc.*,
   20 F. Supp. 2d 465 (E.D. N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir 2000) ..............................8

*Vine v. Beneficial Finance Co.*,
   374 F.2d 627 (2d Cir. 1967), *cert. denied*, 389 U.S. 970 (1967)..............................................19

*Williams v. McCausland*,
   791 F. Supp. 992 (S.D.N.Y. 1992)..............................................................................................9

*Wilson v. United States*,
   162 U.S. 613, 16 S. Ct. 895, 40 L. Ed. 1090 (1896)...................................................................4

*Wright v. West*,
   505 U.S. 277, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992).........................................................4

## 2. <u>Statutes</u>

18 U.S.C. § 1001 ......................................................................................................... *passim*

Sec. 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b) ...........................24

Sec. 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b)..................................................24

Private Securities Litigation Reform Act of 1995, 15 U.S.C.A. § 78u-4(b)(2) ......................10, 11

Title VII of the Civil Rights Act of 1964m 42 U.S.C. §§ 2000e *et seq.* ......................................24

## 3. <u>Rules</u>

Rile 9(b), Fed. R. Civ. Pro. ...........................................................................................8, 11, 14

Rule 11, Fed. R. Civ. Pro. ..............................................................................................4, 14, 24

Rule 11(c)(4), Fed. R. Civ. Pro. ..................................................................................................24

Rule 12(b)(6), Fed. R. Civ. Pro. ...............................................................................................9, 14

Rule 12(f), Fed R. Civ. Pro............................................................................................................22

Rule 15, Fed. R. Civ. Pro. ..........................................................................................................4\

Rule 401, Fed. R. Evid. ..................................................................................................................4

Rule 403, Fed R. Evid. ...................................................................................................................4

Rule 404(b), Fed. R. Evid. .............................................................................................................9

**4.  Treatises**

2 J. Wigmore, Evidence § 278(2) .....................................................................................4

Wright & Miller, Federal Practice and Procedure § 1486 (1990).................................24

6 Wright & Miller, Federal Practice and Procedure § 1486 (2008).............................25

A.    **Introduction**

Defendant has used the occasion of Plaintiff's Notice of Motion and Motion for Leave to File His Second Amended and Supplemental Complaint as an occasion to re-brief its already-submitted July 23, 2007, Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint[1] and to add to its briefing on its already-submitted May 30, 2008, Motion for Sanctions.[2]

Neither effort was necessary; defendant could simply have incorporated its own prior briefing by reference.  It is defendant that is forcing plaintiff to perform additional work, not the other way around.

B.    **Defendant's New Briefing on its Motion for Sanctions Conflicts with its Old Briefing**

Defendant's June 30 Memorandum of Law [in] Opposition to Plaintiff's Motion for Leave to File a Second Amended and Supplemental Complaint (Doc. # 39) changes the positions defendant took in its June 23, 2008, Reply Memorandum of Law in Further Support of Defendant's Motion for Sanctions (Doc. # 34).

In its June 23 Reply Memorandum on sanctions, defendant argued that "Graves and his counsel concede the merits of DBSI's motion," and stated that "they admit that their original fraud allegations may not be correct and have eliminated them in the Second Amended Complaint they filed with the Opposition Brief."  *Id.* at pp. 1-2.

---

[1] Defendant's Notice of Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint, Docs. ## 4, 5, and 7.  Plaintiff's opposition was filed on July 18, 2007.  Docs. ## 10 and 11.  Defendant's Reply was filed on July 25, 2007.  Doc. # 12.  Plaintiff mooted one aspect of defendant's Motion by filing on August 7, 2007, Plaintiff's Notice of Motion and Consented Motion for Leave to Amend and Supplement the Complaint.  Docs. ## 13-15.  On December 10, 2007, the Court approved the Stipulation and Order Granting Motion and Consented Motion for Leave to Amend and Supplement the Complaint.  Doc. # 23.

[2] Docs. ## 24, 27, and 28.  Plaintiff's opposition was filed on June 16, 2008.  Docs. ## 32 and 33.  Defendant filed its Reply on June 23, 2008.  Doc. # 34.

In its June 30 Memorandum of Law in Opposition, however, defendant argues to the contrary of its own June 23 Reply Memorandum on sanctions: "In his Amended Complaint, Graves re-packages the allegations that are the focus of DBSI's pending Motion for Rule11 Sanctions, i.e., that DBSI perpetrated a fraud on the EEOC in the submission of its position statement." *Id.* at p. 1. Defendant continued at p. 3, stating: "In fact, the Amended Complaint is nothing more than a subtle shift in Graves's criminal fraud theory," and adding that "these changes are cosmetic; they still accuse DBSI of criminal fraud without basis."

Defendant's positions cannot be reconciled. Perhaps the position defendant took in its Opposition to Plaintiff's Motion for Leave to File a Second Amended and Supplemental Complaint is intended to replace the position it took in its Reply Memorandum of Law in Further Support of Defendant's Motion for Sanctions, but defendant has not explicitly withdrawn the position it took in the latter document so both positions may be before the Court.

Defendant's Opposition to Plaintiff's Motion for Leave to File a Second Amended and Supplemental Complaint also asserted in connection with its Motion for Sanctions that plaintiff did not "explain what justification he had for raising and retaining the criminal fraud allegations in the Complaint," and cited plaintiff's Memorandum of Points and Authorities in Support of His Notice of Motion and Motion for Leave to File His Second Amended and Supplemental Complaint (Doc. # 31). Defendant failed to mention the documents containing such justifications, Plaintiff's June 16, 2008, Memorandum of Points and Authorities in Opposition to Defendant's Motion for Sanctions (Doc. # 32)[3] and Plaintiff's July 18, 2007, Memorandum of

---

[3] Plaintiff's Memorandum is set forth in Exhibit C to the Affirmation of Cliff Fonstein in Opposition to Plaintiff's Motion to File a Second Amended Complaint. (Doc. # 40.)

Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to

Strike Portions of the Complaint (Doc. # 11), at pp. 40-54.[4]

### C.    Defendant Has Not Shown that the Proposed Amendment is Futile

#### 1.    Plaintiffs Are Allowed to Plead Circumstantial or Background Evidence

The fundamental assumption underlying defendant's Opposition is that an allegation as to

its conduct is *per se* improper if it does not constitute a separately actionable claim.  This is

incorrect.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), explicitly allowed

employees to rely on time-barred acts as relevant background evidence in support of timely

claims.  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005), reversed the

grant of summary judgment to the Title VII defendant, holding that the lower court erred in

reusing to consider background evidence that was no longer independently actionable.  The court

stated: "Hence, relevant background evidence, such as statements by a decisionmaker or earlier

decisions typifying the retaliation involved, may be considered to assess liability on the timely

alleged act."

Similarly, the Supreme Court has held that background evidence of discrimination by

other supervisors against other employees, while not independently actionable in the plaintiff's

case, may still be relevant and admissible circumstantial evidence in proving discrimination.

*Sprint/United Management Co. v. Mendelsohn*, 128 S. Ct. 1140, 1147 (2008).  The Court

cautioned that such determinations of admissibility are context-specific and should be made in

light of a developed record.  It rejected a *per se* rule as an abuse of discretion: "Relevance and

---

[4] Plaintiff's July 18, 2007, Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 11) is attached as Exhibit 1 to the accompanying Declaration of Richard Seymour.

prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad per se rules."

Evidence that defendant attempted to manipulate, trick and deceive the EEOC is in the same category as time-barred evidence and other circumstantial or background evidence. While the plaintiff cannot seek direct relief for the conduct in question, that conduct helps plaintiff obtain the necessary inferences, establish liability, and obtain a more complete remedy. Moreover, both defendant's Motion for Partial Dismissal and defendant's Motion for Sanctions are based on a *per se* approach, prior to meaningful discovery, that is inappropriate.

### 2.      **Defendant's Violation of 18 U.S.C. § 1001 is Relevant to Liability**

See Plaintiff's July 18, 2007, Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 11) at pp. 40-48.[5]

It is black-letter law that an employer's attempts to deceive the plaintiff or others as to the real grounds for its actions allow the factfinder to infer that it was acting because of unlawful intent. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), held:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620-621, 16 S. Ct. 895, 40 L. Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979).

All of the allegations of deceit to which defendant objects are thus directly relevant to liability even though they do not create a separate cause of action for deceiving the EEOC.

---

[5] See Exhibit 1 to the accompanying Declaration of Richard Seymour.

*Reeves* made clear that the strength of the evidence of deceit matters a great deal in determining whether the inference "that the employer is dissembling to cover up a discriminatory purpose" is appropriate. The Court stated: "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148.

Unlike a charging party who must file a charge under oath or affirmation, a respondent before the EEOC is not required to make its response under oath. Therefore, the fact that the defendant was under a statutory duty to tell the truth in its filings, and to avoid using any "trick, scheme, or device" to conceal a material fact, is highly relevant to weighing the significance of any efforts to deceive the EEOC. The burden of cooperation imposed on the defendant by § 1001 thus goes beyond a simple duty to tell the truth, and it is reasonable for a factfinder to consider the scope of that duty, and the importance Congress placed upon it, in deciding whether to draw the inference of discrimination and retaliation from a breach of that duty.

### 3.    Defendant's Violation of 18 U.S.C. § 1001 is Relevant to Relief

See Plaintiff's July 18, 2007, Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 11) at pp. 43 (declaratory relief) and 49-51 (injunctive relief and punitive damages).[6]

The fact that the burden of telling the truth and cooperating imposed by § 1001 is contained in a criminal statute does not make it irrelevant, as defendant argues. It simply underscores the importance of the duty. Even where a lawsuit seeks recovery for the same conduct addressed by a penal statute, the penal statute can be relevant in determining the

---

[6] See Exhibit 1 to the accompanying Declaration of Richard Seymour.

5

seriousness of the challenged conduct and thus the availability of punitive damages. "The existence of a criminal penalty does have bearing on the seriousness with which a State views the wrongful action," although it has less utility in determining the amount of the award. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 (2003).

The availability of punitive damages and the permissible amount of the award are also closely tied to the reprehensibility of defendant's conduct. "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996) (footnote omitted). The Court made clear that the scope of the duty to be candid and to avoid trickery was very important:

> Finally, the record in this case discloses no deliberate false statements, acts of affirmative misconduct, or concealment of evidence of improper motive, such as were present in *Haslip* and *TXO. Haslip,* 499 U.S., at 5, 111 S. Ct., at 1036; *TXO,* 509 U.S., at 453, 113 S. Ct., at 2717-2718. We accept, of course, the jury's finding that BMW suppressed a material fact which Alabama law obligated it to communicate to prospective purchasers of repainted cars in that State. But the omission of a material fact may be less reprehensible than a deliberate false statement, particularly when there is a good-faith basis for believing that no duty to disclose exists.

*Id.* at 579-80. The scope of the duty imposed by § 1001, and the absence of a good-faith basis for negating a duty of disclosure, are thus central to plaintiff's case.

*State Farm v. Campbell* also emphasized the importance of these factors: "We have instructed courts to determine the reprehensibility of a defendant by considering whether: . . . the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." 538 U.S. at 419.

Similarly, the fact that defendant was willing to violate a criminal statute in order to defeat plaintiff's claim would support the need for a firmer injunction against future discrimination and retaliation.

### 4.    Plaintiff's Allegations Are Appropriate to Meet His Pleading Burden

See Plaintiff's July 18, 2007, Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 11) at pp. 1, 33-36, and 52.[7]

Plaintiff is required to plead sufficient facts to allow a plausible inference to be drawn from the facts.  Defendant's representations to the EEOC thus need to be laid out and compared with the other evidence of record, to allow a plausible inference that its representations were no mere accident, but were part of an intentional program of misleading the government by manipulation, misrepresentation, omission, trickery, and deceit.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), has recently stressed the importance of allegations sufficient to support an inference, even in the absence of a heightened pleading requirement.

The Second Circuit also requires the allegation of the facts making a fraud claim plausible, to the extent plaintiff can do so before discovery.  *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101-02 (2d Cir. 2007); *Rombach v. Chang*, 355 F.3d 164, 175 n.10 (2d Cir. 2004) (disapproved of requiring too much specificity where information was largely in the possession of defendants); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) ("While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded."  (Footnote omitted)).  *Accord*, *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("There is a recognized exception to this rule, however, that fraud allegations may be

---

[7] See Exhibit 1 to the accompanying Declaration of Richard Seymour.

so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based."), and cases there cited; *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir. 1986) ("Allegations of fraud cannot ordinarily be based "upon information and belief," except as to "matters peculiarly within the opposing party's knowledge." . . . To satisfy Rule 9(b) in the latter instance, the allegations must be accompanied by a statement of the facts upon which the belief is founded. . . ."), and cases there cited.

**5.     Defendant's New Authorities in Support of its Motion to Dismiss**

Defendant has cited a number of new authorities in support of its July 18, 2007, Notice of Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint and supporting papers.  (Docs. # 4, 5, and 7).  All of defendant's new authorities had been decided well before it filed its Motion, but none were cited in its papers and defendant has given no reason why they were not cited at the time.

**a.     Defendant's New Authorities on Admissibility**

Plaintiff has not asserted any civil cause of action under 18 U.S.C. § 1001, but has simply asserted that defendant's violation of § 1001 is relevant to the inferences that can permissibly be drawn as to both liability and relief.

Defendant's new authorities on admissibility, at pp. 5-6 of its Memorandum in Opposition, are inapposite.  *Pass v. National Broadcasting Co.*, 1994 U.S. Dist. LEXIS 131, C.A. No. 92 Civ. 9266 (RPP),[8] rejected a *pro se* "claim for defamation based on common law and 18 U.S.C. § 1001" because the one-year period of limitations had expired on common-law defamation and § 1001 does not create a private right of action.  *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 478 (E.D. N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir 2000) (table),

---

[8] Exhibit A, Part 9 to Defendant's Memorandum in Opposition.

merely held that there was no private right of action under § 1001 and that plaintiff did not argue

that one should be implied.  *Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992),

merely held that that there is no private right of action under § 1001.  None of these cases

involve the purposes for which defendant's § 1001 violations have been pled herein.

Defendant also argues for the first time that plaintiff is barred by F.R.E. 404(b) "from

introducing evidence of a wrong committed by DBSI against the EEOC" to "prove the character

of a party."  Defendant's Memorandum in Opposition at 6.  Defendant ignores the permissive

language of Rule 404(b), which states that evidence of other crimes, wrongs, or acts "may,

however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  *Krieger v. Gold*

*Bond Bldg. Products, a Div. of National Gypsum Co.*, 863 F.2d 1091, 1096-97 (2d Cir. 1988), a

Title VII case, relied on the permissive language of Rule 404(b) to hold that the lower court did

not abuse its discretion in allowing evidence that Logsdon, plaintiff's District Manager,

demanded that she file false expense-account claims and turn the money over to him, because it

was relevant to "Logsdon's inconsistent standards as applied to Krieger regarding paperwork and

company policies."  *Vance v. Union Planters Corp.*, 209 F.3d 438, 445 (5th Cir. 2000), relied on

the permissive language of Rule 404(b) to hold that evidence of a prior finding of sex

discrimination was properly admitted in a Title VII sex discrimination case.

### b.    Defendant's New Arguments on Rule 12(b)(6)

Part A(2) of defendant's Memorandum in Opposition, at pp. 6-13, is based on the

assumption that plaintiff has pleaded and is seeking relief for a fraud claim against defendant

because of its statements to the EEOC, and has nothing to do with the allegations of background

or circumstantial evidence that plaintiff actually makes.

9

### (1)    Defendant's New Argument on Materiality or Scienter

Defendant relies on *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007), a case under the Private Securities Litigation Reform Act of 1995, 15 U.S.C.A. § 78u-4(b)(2), which imposes a high pleading burden—a "strong inference that the defendant acted with the required state of mind"—for PSLRA plaintiffs.[9]  Defendant's Memorandum in Opposition at p. 7.  The quoted discussion from *Tellabs* is expressly linked to the statutory standard, *id.* at 2509-11, and is inapplicable here.

Defendant argues that the Second Circuit required a "strong inference" before *Tellabs*, even for common-law fraud claims, citing *Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  *Chill* was a securities fraud case and was governed by the 1995 "strong inference" requirement; there were no common-law fraud claims in the case.

Interestingly, even under the high statutory standard of the PSLRA, *Chill* held that "[a] plaintiff in a fraud action may also plead scienter 'by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  The court held that plaintiffs could not meet this standard simply by showing that a subsidiary's profit was larger than expected and the parent company did not conduct an investigation, or by showing that GAAP and SEC rules had not been followed.  Plaintiff here has done far more than the plaintiffs in *Chill*.

Defendant relies on a case, *Ping v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 255 (S.D.N.Y. 2008), but probably means *Matsumura v. Benihana Nat. Corp.***,** 542 F. Supp. 2d 245 (S.D.N.Y. 2008).  The court cited language in PSLRA cases, including *Tellabs*, but did not

---

[9] The statute states: "In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

advert to the statutory requirement the PSLRA cases were construing and may not have considered the difference between the standards of the PSLRA and the standards of Rule 9(b), Fed. R. Civ. Pro.        In any event, *Matsumura* cited a Second Circuit decision that explained how circumstantial evidence of recklessness can show a strong inference of scienter, *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir.), *cert. denied*, 531 U.S. 1012 (2000).  *Novak* explained:

> Although litigants and lower courts need and should not employ or rely on magic words such as "motive and opportunity," we believe that our prior case law may be helpful in providing guidance as to how the "strong inference" standard may be met. Therefore, in applying this standard, district courts should look to the cases and factors discussed in Section I.B.1 above to determine whether plaintiffs have pleaded facts giving rise to the requisite "strong inference." These cases suggest, in brief, that the inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, *see supra* at page 307; (2) engaged in deliberately illegal behavior, *see supra* at page 308; (3) knew facts or had access to information suggesting that their public statements were not accurate, *see supra* at page 308-09; or (4) failed to check information they had a duty to monitor, *see supra* at pages 308-09. We now turn to the complaint in this case to determine whether the plaintiffs have met their burden to plead scienter.

(Emphases added.)

In pp. 7-10 of its Memorandum in Opposition, defendant attempts to bypass the many particularized allegations that allow the inference that defendant intentionally tried to deceive the EEOC and manipulate its processes by arguing both that the *Tellabs* PSLRA standards apply and that plaintiff is required to show defendant's true intent directly.  That is not the law under the PSLRA or under Rule 9(b), and is directly contrary to the holdings that a "strong inference of scienter" can be established by circumstantial evidence of recklessness.  Indeed, *Novak v. Kasaks* found that plaintiffs met this requirement by alleging a number of filings after the class period from which an inference could be drawn as to what had occurred in the class period, 216 F.3d at 312-13, and by alleging that defendants made specific statements they knew were at variance

from the facts, *id.* at 315.  The court did not require the type of "smoking gun" for which defendant argues here.[10]

Defendant also quarrels with the merits of plaintiff's allegations.  It argues at p. 8 n. 7 that its Position Statement only said that the clients taken away from plaintiff produced no revenue for defendant in 2003, making the revenue these clients produced in 2004 irrelevant, but the Position Statement actually addressed 2004 revenues for a number of accounts taken away from plaintiff: "Cox Radio earned no revenue for DBSI in 2003 or 2004," *id.* at 5, defendant obtained "a small amount of revenue in 2004" from Adelphia, *id.*, "Tribune generated no revenue for DBSI in 2004," *id.*, "Salem generated 898 thousand euros in April 2004, much less than the amount claimed by Graves," *id.* at 6, "The little revenue Adelphia and Charter produced in 2004," *id.* at 8, and the broad conclusion unrestricted to 2003: "Thus, any claim by Graves that DBSI needed his accounts for younger bankers is belied by Mr. Graves' own admissions and the fact that the accounts did not produce any revenue."  *Id.* at 9.

Similarly, defendant denies that the Position Statement can fairly be read as saying or suggesting that plaintiff and Gregory Paul were the only two bankers in the "television space" or that they were the only two considered for layoff.  *Id.* at 9 carryover n. 7.  However, the Position Statement refers repeatedly to "duplication in the television space," and to there being two Managing Directors in that space, and to the space not being able to support two Managing Directors.  It even refers on p. 2 to the selection for layoff being limited to plaintiff and Mr. Paul.[11]

---

[10] One of defendant's cases expressly rejected such a requirement: "We apply the more general standard to scienter for the simple reason that "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)."  *Chill*, 101 F.3d at 267.

[11] The Position Statement, Exhibit 1 to the proposed Complaint,  states at p. 2: "What Mr. Graves fails to mention is that he was the younger of two Managing Directors ("MD's") who specialized in television broadcasting and when the industry was suffering, with no hope of a near term turnaround, DBSI terminated Mr. Graves' employment because the other MD had 18 years more seniority and some experience outside of television."

Defendant admits that it deleted pages from the reports it regularly compiled for other purposes, that the pages it deleted would have shown that it weighted pipelines by probability, that it did this for clients and products and not for comparisons among bankers, that it altered the remaining pages by adding totals for individual bankers, and argues that this could not possibly have influenced the EEOC because the EEOC wound up with additional information.  Defendant's Memorandum in Opposition at 8-9.  Here, too, defendant's representations in its May 30 Memorandum of Law in Support of its Motion for Sanctions is at irreconcilable loggerheads war with its June 30 representations.  Defendant's May 30 Memorandum stated at pp. 2-3:

> Second, because of the uncertain status of pipeline deals, DBSI accords a formulaic, round-number revenue value to pipeline deals based on projected size and multiplies that number by the percentage of probability of the deal's execution, calculated as 0%, 25%, 50% 75% or 100%.

(Footnote omitted.)  Defendant's May 30 Memorandum states that this practice, and the practice of crediting each banker assigned to a deal with credit for full value of the deal, was explained in its June 25, 2007, letter to counsel for plaintiffs, but this is incorrect and there is tension between the letter and the May 30 Memorandum.[12]  Defendant also represents that it never told the EEOC that Exhibits C and F to the Position Statement were its "'only' tool for evaluating the performance and prospects of bankers," June 30 Memorandum in Opposition to Plaintiff's Motion for Leave to File at 9.  Defendant produced in discovery Defense Documents 14 and 15, "Individual Banker Summary" documents for Managing Directors and for Directors.[13]  These show that bankers were ranked against each other based on GCF (presumably Global Corporate Finance) Revenue and on "P&S Revenue," not Franchise Revenue as reported to the EEOC, and that there are occasions in which some or all bankers on a deal are not credited with the full value of the deal.  A comparison of these documents

---

[12] The letter is Attachment D to the Affirmation of Cliff Fonstein in support of the Motion for Rule 11 Sanctions, but does not mention zero-weighting.  It does state at p. 2: "Indeed, had you investigated the issue, you would know that the Bank typically allocates the revenue of a transaction to each banker on the transaction, for performance purposes."  The Memorandum itself, however, says that this was done "in order to foster a sense of collaboration among bankers working on a single deal . . . ."

[13] Seymour Dec., Exhibits 2 and 3.

with Exhibits C and F to defendant's Position Statement show that pipeline deals are weighted for probability in these Individual Banker Summaries but not in the documents given to the EEOC.

The conflicts among defendant's own representations, and its arduous efforts to explain away the inexplicable, demonstrate anew the inappropriate nature of defendant's motion to strike and its motion for sanctions. Defendant is trying to get a decision on the merits through these motions, without providing adequate discovery and without filing a supported motion for summary judgment. This is not a proper use of Rules 9(b), 11 and 12(b)(6).

**(2)    Defendant's New Argument on Reasonable Reliance**

Defendant has not cited any authority holding that a plaintiff may not allege and rely upon background or circumstantial evidence without showing that he or she reasonably relied on that evidence by taking some detrimental action based on it.

Defendant's cases are inapposite. *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524 (S.D.N.Y. 2007), involved claims by present and former employees of General Electric, and by landowners, that they were injured by fraud in the defendants' failure to disclose to General Electric the dangers of PCB's. *Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998), involved claims by the plaintiff funds that they were injured by the failure of general contractors to make required contributions, because a corporate official lied to the contractors. *Trepel v. Dippold*, 2006 WL 3054336 (S.D.N.Y. Oct. 27, 2006, No. 04 CIV 8310 (DLC)), involved a fraud claim against counsel for a judgment debtor, alleging that false statements they made to a third party assisted the debtor in removing assets from the country. *Barnhart v. Federated Dept. Stores*, 2005 WL 549712 (S.D.N.Y. March 8, 2005, No. 04 CIV 3668 (JGK)), involved a claim against defendants who had allegedly fraudulently told the American Society of Composers, Authors and Publishers that they, and not plaintiff, were entitled to royalties for

14

songs plaintiff alleged he wrote by himself.  *Morris v. Castle Rock Entertainment, Inc.*, 246 F.

Supp. 2d 290 (S.D.N.Y. 2003), involved a dispute over who was entitled to royalties for the re-

writing of an original work, plaintiff lost in an arbitration, and then claimed fraud on the basis

that the re-writer had made misrepresentations to the arbitration panel and was aided and abetted

by the other defendants.  None of these cases have anything to do with the purposes for which

plaintiff has cited § 1001 herein.

Defendant urges that *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 2002 WL

1822404 (D. Kan. June 13, 2002), "is virtually identical to the present facts."  That case involved

plaintiff's attempt to take the deposition of defendants' former General Counsel and void

attorney-client privilege by relying on the crime-fraud exception.  The only similarity between

that case and this is that the plaintiffs there also cited § 1001.  Plaintiff here is relying on the fact

of the § 1001 violations to allow the drawing of inferences, to help establish liability, and to

support his claims for injunctive relief and for punitive damages.  The pending Motion does not

try to pierce attorney-client confidentiality.  In addition, the Magistrate Judge in *Horizon*

*Holdings* pointed out that there was no evidence that the defendants' submission to the EEOC

was false, and that plaintiffs were merely relying on a contradiction between a single deponent's

testimony and the submission.  Here, plaintiffs have set forth in detail, based mainly on

defendant's own documents, why the information in the submission was not only false, but must

have been known at the time to have been false.  Plaintiffs have met the standard of *Novak v.*

*Kasaks*, 216 F.3d 300, 312-13 and 315 (2d Cir. 2000).

### (3)    Defendant's New Argument on Pecuniary Loss

Defendant has not cited any authority holding that a plaintiff may not allege and rely upon background or circumstantial evidence without showing that he or she suffered a pecuniary loss.

Defendant's cases are inapposite. *Carofino v. Forester*, 450 F. Supp. 2d 257 (S.D.N.Y. 2006), involved fraudulent billing and other claims against a psychiatrist. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996), involved a claim by plaintiff that defendants' fraudulent and negligent misrepresentations caused them to surrender rights and approve a profitable stock sale subjecting them to substantial tax liability. *Rappaport v. Buske*, 2000 U.S. Dist. LEXIS 12325 (S.D.N.Y. Aug. 29, 2000, No. 98 Civ. 5255 (BSJ)), involved a claim for fraud in that a draft employment contract allegedly differed from the terms of an alleged oral contract, resulting in plaintiff's rejection of the draft and the loss of anticipated earnings. *Solar Travel Corp. v. Nachtomi*, 2001 U.S. Dist. LEXIS 7549 (S.D.N.Y. June 8, 2001, No. 00 Civ 3564 (AGS)), involved a claim against the principal stockholder, chairman of the board and CEO of the bankrupt Tower Air, claiming fraudulent inducement in persuading plaintiff to perform services on its behalf in India which, while profitable, were allegedly terminated because Tower Air was not as profitable as claimed. *Kulas v. Adachi*, 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 16, 1997, No. 96 Civ. 6674 (MBM)), involved a fraud claim that defendant never intended to perform its contract to pay plaintiff.

### D.    Defendant Has Not Shown that the Proposed Amendment is in Bad Faith

Defendant's representations to this Court are extraordinary. It represents at p.14 of its Opposition:

> After a year of effort, and only after DBSI submitted a motion for sanctions, has Graves
> acknowledged that his theory was wrong, that the documents DBSI sent to the EEOC

were, in fact, created in "good faith," and not out of whole cloth to deceive the EEOC. Motion for Sanctions Opposition Brief, p.3.)[8]

_____

8 Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Sanctions is attached as Exhibit C to the Fonstein Aff.

The cited statement bears little relation to defendant's description. What plaintiff actually stated was:

> The knowing presentation to the EEOC of documents that may have been created in good faith for other business purposes, for the stated purpose of supporting defendant's statements as to the comparative performance of individual bankers, can thus violate § 1001 where defendant knows the documents cannot accurately be used to compare the performance of individual bankers and fails to inform the EEOC they cannot be used for that purpose.

Plaintiffs also stated in their Opposition that defendant had altered and redacted the documents in question, redacting pages that made clear that defendant weighted potential pipeline deals by the probability of their occurring, adding totals to bankers' information on the remaining pages to make it appear that they could be used—and were in fact used—to compare the performance of bankers against each other, providing the altered pages under the same dates as the original unaltered documents—in effect, backdating them prior to the EEOC charge to make them appear more genuine—and pointing out that defendant's explanations of its practices was completely inconsistent with the impression it tried to foster on the EEOC. Plaintiff's theory of the case is unchanged.

Defendant's bad-faith argument ignores the fact that defendant had complained specifically to plaintiff about one specific allegation in ¶ 98 of the original Complaint, that the franchise pipeline valuation of a Salem Communications deal with an expected 2004 Franchise Pipeline of $1.8 million appeared to have been backdated. The basis for the allegation was set

forth in detail, and was sufficiently detailed to meet the standards of the Second Circuit.[14]  As shown above, defendant refused to provide any direct information on the valuation of any of the deals in question.  However, on February 21, 2008, defendant produced indirect information, Franchise Revenue Pipeline documents for a long enough period of time prior to plaintiff's termination that the reasoning underlying ¶ 98 was eroded.  Discovery will show whether there was in fact manipulation of the figures, but the basis for this particular allegation had been eroded and plaintiff informed defendant it would be withdrawn.[15]  Defendant then demanded that all of the fraud allegations be withdrawn that day.[16]  Plaintiff promised to review each allegation in light of all discovery produced to date, and file a revised Complaint.[17]  Defendant insisted that the fraud allegations be withdrawn that day, May 30, 2008, or it would file its Motion. Defendant went on to state: "We will file the motion today and, should you ultimately withdraw the offending allegations, will withdraw the motion." [18]

Contrary to the promise in defendant's May 30, 2008, e-mail, defendant did not withdraw that part of its Motion for Sanctions that complained of the Salem Communications backdating; later that same day, it made the prior existence of the Salem Communications allegation the leading focus of its motion.[19]  Now, defendant objects to the filing a Second Amended and Supplemental Complaint that fulfills plaintiff's promise to withdraw the Salem Communications

---

[14] Plaintiff's June 16, 2008, Memorandum of Points and Authorities in Opposition to Defendant's Motion for Sanctions (Doc. # 32), discussed this fully at pp.11-14.  The document is Exhibit C to the Affirmation of Mr. Fonstein (Doc. # 40).

[15] Seymour Dec., Exhibit 4, a May 29, 2008, e-mail from plaintiff's counsel to defense counsel.

[16] Seymour Dec., Exhibit 5, a May 30,2008, e-mail from defense counsel to plaintiff's counsel.

[17] Seymour Dec., Exhibit 6, a May 30, 2008, e-mail from plaintiff's counsel to defense counsel..

[18] Seymour Dec., Exhibit 7, a May 30,2008, e-mail from defense counsel to plaintiff's counsel.

[19] Defendant's May 30, 2008, Memorandum of Law in Support of its Motion on Sanctions stated at p. 2: "The thrust of the disputed allegations is that DBSI and its counsel: (1) fraudulently backdated one of the Reports to show false pipeline revenue to minimize Graves's pipeline for 2003 (Complaint, ¶ 98);".  The Memorandum stated at p. 5:  "Importantly, the Report dated January 8, 2004 was the same report as the one submitted to the EEOC as an exhibit, providing clear evidence that DBSI neither falsified nor backdated the Report it produced to the EEOC ten months later."

backdating allegation, and fulfills plaintiff's promise to revise the Complaint in light of all discovery to date.

If defendant had wanted the Salem Communications allegation withdrawn earlier, it could simply have provided information earlier, as plaintiffs had requested long before discovery started and through their so-far largely unsuccessful efforts to persuade defendant to comply with its discovery obligations.  Plaintiff's 32-page May 9, 2008, letter to defendant[20] recounted these efforts and set forth in detail how defendant's failures to meet its discovery obligations made it impossible for defendant to take the positions advanced in its April 2, 2008, letter and assert that it has shown there was no possible basis for plaintiff's allegations of a violation of § 1001.[21]

Defendant argues that plaintiff—an individual who lost his job and has not yet been able to obtain a comparable position—is trying to drive up defendant's costs with "needless motion practice."  Defendant has resources that far outstrip plaintiff's, which is the principal reason that plaintiff has so far tried every conceivable approach and argument to try to persuade the defendant to meet its discovery obligations without engaging in motion practice.  Defendant's own Memorandum in Opposition shows that it, not plaintiff, seems to be engaged in a war of attrition.

Defendant's authorities are inapposite.  *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 636-37 (2d Cir. 1967), *cert. denied*, 389 U.S. 970 (1967), involved an alternative holding that plaintiff knew the facts alleged in his second proposed amended complaint prior to the argument on the motion to dismiss his first amended complaint, and waited to see what would happen

---

[20] A copy of the letter was attached as Exhibit 10 to the June 16, 2008, Declaration of Richard T. Seymour in Opposition to Defendant's Motion for Sanctions (Doc. # 33).  Plaintiff sees no need to clutter the record with another copy of the same document, and accordingly incorporates that copy by reference.

[21] Just as defendant's Memorandum of Law in Support of its Motion on Sanctions ignored the promise defendant had made earlier that same day, it ignored this response and asserted in its Memorandum at p. 6 that plaintiff had never responded to its April 2, 2008, letter: "Graves has not responded to the April 2, 2008 letter."

before moving to amend. Here, it is <u>defendant's</u> timing from June 2007 to the present in failing to produce information bearing directly on the issue, and its refusal to produce information even indirectly shedding light on the issue until nearly the end of February 2008, that is the cause of the timing of withdrawal of the backdating allegation.

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990), could not possibly be less relevant to this action. There, the plaintiff filed suit under Connecticut law when a contractual choice-of-law provision specified that Norwegian or Panamanian law would apply. Plaintiff waited until eighteen months after the choice-of-law provision was raised, <u>and until after the entry of judgment against it</u>, to move to amend to add claims under Norwegian and Panamanian law. The decision not to move to amend earlier was apparently tactical, to avoid dismissal on forum-selection or *forum non conveniens* grounds. Moreover, no amended complaint was attached.

*In re Worldcom, Inc. Securities Litigation,* 308 F. Supp. 2d 214, 234 (S.D.N.Y. 2004), *vacated*, 496 F.3d 245 (2d Cir. 2007), did refuse to allow proposed amendments to complaints on the ground they were time-barred in light of the court's earlier ruling that plaintiffs who filed suit before class certification were not entitled to the benefit of tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and plaintiffs had waited too long in responding to the court's notice of such deficiencies. As a result, their claims were dismissed with prejudice. Defendant failed to mention that the Second Circuit found that *American Pipe* tolling did apply, vacated that decision, and remanded the cases for further proceedings. *In re Worldcom, Inc. Securities Litigation,* 496 F.3d at 252-56.

These cases have nothing to do with plaintiff's right to move for leave to amend the Complaint to take into account information produced in discovery. Plaintiff's new allegations

stemming from the February 21 production are timely. Plaintiff's May 20, 2008, letter to defendant set forth in detail the deficiencies in that production and reminded defendant that it had not responded to a number of prior letters on deficiencies.[22] It would not make sense to require plaintiffs to amend their Complaints after every small discovery response by defendants, and it is reasonable for plaintiffs to attempt to get fuller responses to a lot of outstanding discovery requests before moving to amend. None of defendant's cases hold to the contrary.

It is defendant that has significant timeliness issues. Nowhere in its re-argument of its July 23, 2007, Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint, and of its May 30, 2008, Motion for Sanctions, does defendant explain why it could not have made the same arguments earlier.

### E.    Defendant Inconsistently Claims Futility and Undermining of its Sanctions Motion

If the proposed amendments are futile, it is difficult to see how they could undermine or distract from the defendant's motion for sanctions, as defendant argues p. 13 of its Memorandum in Opposition. One of defendant's authorities, cited for another purpose, put it well:

> Inasmuch as defendant argues that plaintiff's motion to amend is a transparent effort to "derail" defendant's motion for summary judgment, defendant undermines his own argument. Defendant argues on the one hand that plaintiff is seeking leave to amend to avoid an adverse ruling on defendant's motion for summary judgment. On the other hand, defendant argues that leave to amend should be denied on the ground of futility. Defendant cannot in good faith argue that futile amendments to the complaint would avert an adverse ruling on a motion for summary judgment.

*Rackson v. Sosin*, 1997 WL 786940 (S.D.N.Y. Dec. 22, 1997, No. 95 Civ. 1105 (LAP)),[23] at p.

*5.

---

[22] A copy of the May 20, 2008, letter, without its attachments, is attached to the Seymour Dec. as Exhibit 8.
[23] Defendant used a LEXIS citation, but did not attach the case. Plaintiff believes this is the same case, and has attached it as Exhibit 1 to this Memorandum. The 2001 affirmance reported unofficially at 14 Fed. Appx. 23 (2d Cir. 2001), is not from this decision.

Defendant's motion for partial dismissal and to strike, and its motion for sanctions, can be as well decided if the proposed amended pleading is allowed.  Plaintiff has for this reason kept the original paragraph numbers, edited some of their content, and added and deleted only subparagraphs, so as not to cause any need to re-brief these matters.

As was true in *Rackson*, it is true here that this is plaintiff's first substantial proposed amendment of the Complaint, and that little discovery has yet taken place.  Defendant could not be prejudiced by allowing the amendments.

**F.**     **Defendant Has Not Shown that the Proposed Amendment Violates Rule 12(f)**

Defendant's Memorandum in Opposition has set forth at pp. 15-18 the same cases and arguments it already made to the Court at pp. 23-25 of its Memorandum in its July 3, 2007, Memorandum of Law in Support of Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 5).[24]  Indeed, most of the original language has been preserved.

What is surprising is that plaintiff responded fully to these citations at pp. 52-54 of his July 18, 2007, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint (Doc. # 11),[25] and defendant has simply recycled its year-old argument without responding at all to the points made by plaintiff.

Plaintiff incorporates by reference his discussion of a year ago.  However, it is worth adding that the Second Circuit has held that even EEOC and State fair-employment agency determinations on violations—while binding on no court and thus not at all preclusive—are admissible within the sound discretion of the trial court.  *Paolitto v. John Brown E. & C., Inc.*,

---

[24] A copy of the relevant portions of defendant's July 3, 2007, Memorandum is attached to the Seymour Dec. as Exhibit 9.
[25] See Exhibit 1 to the Seymour Dec.

151 F.3d 60, 64-65 (2d Cir. 1998).  Contrary to defendant's arguments, the court of appeals held

that there was less danger of prejudice in admitting a probable-cause finding than in admitting a

finding of a violation.  *Id.* at 65 n. 3.

The Second Circuit has also made clear that factual submissions made to the EEOC in an

age discrimination case are highly relevant and potentially admissible.  *Binder v. Long Island*

*Lighting Co.*, 933 F.2d 187, 193-94 (2d Cir. 1991), stated:

> Factual statements regarding past events are distinguishable from offers of
> compromise, and, if the principal objective of an EEOC proceeding is to ascertain what
> has occurred and, wherever possible, to resolve disputes without litigation, a rule that
> allows employers to give off-the-record accounts of relevant events will not necessarily
> advance that objective. Accordingly, based on both the ADEA's lack of an express analog
> to Section 706(b) of Title VII and our belief that EEOC proceedings will not be impaired
> by a rule allowing the admission in subsequent litigation of factual statements made
> during the course of EEOC proceedings, we hold that the district court erred when it
> refused to consider LILCO's EEOC statement.[FN3]
>
> FN3. LILCO's statement to the EEOC was a written explanation of the reasons for
> and timing of the challenged employment decision. It thus was a factual representation to
> an administrative tribunal. We express no view as to whether we would reach the same
> conclusion had the statement been made during settlement negotiations between the
> parties.

Defendant has cited three new cases: *In re United Brands Securities Litigation*, 1990 U.S.

Dist. LEXIS 1711 (S.D.N.Y. Feb. 16, 1990, No. 85 Civ 5445 (JFK)); *Rackson v. Sosin*, 1997 WL

786940 (S.D.N.Y. Dec. 22, 1997, No. 95 Civ. 1105 (LAP));[26] and *Kuntz v. New York State Bd. of*

*Elections*, 924 F. Supp. 364 (N.D. N.Y. 1996), *aff'd,* 113 F.3d 326 (2d Cir. 1997).  These merely

stand for the unexceptionable proposition that a court may allow some amendments and not

others.  None address the questions at bar.

### G.    Defendant Has Not Shown Any Basis for an Award of Fees to It

"In the United States, the prevailing litigant is ordinarily not entitled to collect a

reasonable attorneys' fee from the loser."  *Alyeska Pipeline Service Co. v. Wilderness Society*,

---

[26] A copy of *Rackson*, in WestLaw format, is attached to this Memorandum as Exhibit 1.

421 U.S. 240, 247 (1975).  Even where there is a fee-shifting statute allowing an award of

attorneys' fees to a "prevailing party," the Supreme Court has held that the important public

purposes of the civil rights laws require a dual standard under which a prevailing plaintiff will

ordinarily be allowed a fee award, but a prevailing defendant can be awarded fees only if "a

court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff

continued to litigate after it clearly became so."  *Christiansburg Garment Co. v. Equal*

*Employment Opportunity Commission*, 434 U.S. 412, 422 (1978).  Such a standard cannot be met

where a defendant has stonewalled the production of discovery.

The Age Discrimination in Employment Act is not subject to the "prevailing party"

language of Title VII's fee-award provision.  It is instead governed by the Fair Labor Standards

Act's fee-award provision.[27]  Sec. 16(b) of the FLSA, 29 U.S.C. § 216(b), states in pertinent part:

"The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

There is thus no statutory or common-law justification for an award of attorneys' fees to

an ADEA defendant that wins or loses a procedural motion.

The Federal Rules of Civil Procedure contain very limited provisions authorizing an

award of fees.[28]  Rule 15 is not among them.  Defendant cites to an eighteen-year-old edition of

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE (1990), § 1486, but plaintiff has no

access to such an old edition.  The current version of 6 FEDERAL PRACTICE AND PROCEDURE

§ 1486 highlights a case in which costs and fees were denied because the amendment was

---

[27] Sec. 7(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b), states in pertinent part: "(b) The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title [sections 11(b), 16 (except for subsection (a) thereof), and 17 of the Fair Labor Standards Act of 1938, as amended], and subsection (c) of this section.

[28] Even when a Rule 11 sanction is granted, Rule 11(c)(4) limits monetary sanctions.

relatively prompt, the amendment was in part based on events subsequent to the original Complaint, and discovery had not yet begun.  Here, defendant has produced only minimal discovery, and itself asserts that the proposed amendments present nothing really new.

Defendant's demand for fees, like its motion for sanctions with its demand for fees, is thus an *in terrorem* tactic designed to intimidate plaintiff.  It is inappropriate.

### H.    Defendant's Amendment to its Motion for Partial Dismissal

Defendant's Memorandum in Opposition at p. 18 seeks to amend its Motion for Partial Dismissal by seeking an award of attorneys' fees for litigating that Motion.

Defendant does not cite any authority for the proposition that Rule 12(b)(6) allows for the award of attorneys' fees against a party losing such a motion, does not explain why its July 3, 2007, Motion did not seek such relief, and does not even mention to the Court that this demand for relief is new, let alone try to provide a good-faith explanation for amending the prayer of the motion a year later to seek fees.

To the extent that there has been bad faith and multiplication of proceedings, defendant has been the author.  To the extent fees should be awarded for bad faith and multiplication of proceedings, plaintiff should be awarded fees against defendant.

### I.    Conclusion

Plaintiff prays that his Motion be granted and his proposed Second Amended and Supplemental Complaint be allowed.[29]

---

[29] Plaintiff has discovered some typographical and similar types of errors, and has inserted some additional subparagraphs of the same type to which defendant objects and raising no other issues, and has presented an alternative proposed Second Amended and Supplemental Complaint to defendant with a request for defendant's consent to a motion to substitute the corrected version to the Court in lieu of the present version.  No additional briefing of any now-pending motion would be required.  Plaintiff's July 8, 2008, letter to defendant, without attachments, is attached to the Seymour Declaration as Exhibit 10.  Defendant is still considering the matter.

WHEREFORE, plaintiff prays that his Motion be granted.

Respectfully submitted,

Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
        (202) 862-4320 – Telephone
        (202) 549-1454 – Cell
        (800) 805-1065 – Telecopier

Steven A. Berger (SB-2038)
sberger@bergerwebb.com
Jonathan Rogin (JR-9800)
jrogin@bergerwebb.com
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019
        (212) 319-1900 – Telephone
        (212) 319-2017 and -2018 – Telecopiers

By:  ___/s/ Richard T. Seymour_____
        Richard T. Seymour (RS 8094)
        Attorneys for Plaintiff

Dated: July 11, 2008

## <u>Certificate of Service</u>

I certify that I have, this 11th day of July, 2008, served a true and correct copy of

Plaintiff's Reply Memorandum of Points and Authorities in Support of his Notice of Motion and

Motion for Leave to File his Second Amended and Supplemental Complaint on counsel of record

for defendant by use of the Court's ECF system.

_____/s/ Richard T. Seymour_____
Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
  (202) 862-4320 – Telephone
  (202) 549-1454 – Cell
  (800) 805-1065 – Telecopier