IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>　　　　　　　Defendant. | **CIVIL ACTION NO.**<br><br>**1:07-cv-05471-BSJ-KNF** |

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S COMPLAINT AND TO STRIKE PORTIONS OF THE COMPLAINT

Richard T. Seymour (RS-8094)
Adele Rapport (AR-0991)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
　　　(202) 862-4320 – Telephone
　　　(202) 549-1454 – Cell
　　　(800) 805-1065 – Telecopier

Steven A. Berger (SB-2038)
Jonathan Rogin (JR-9800)
Thomas E. Hone (TH-7420)
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019
　　　(212) 319-1900 – Telephone
　　　(212) 319-2017 and -2018 – Telecopiers

Attorneys for Plaintiffs

Dated: July 18, 2007

**Table of Contents**

A.    Introduction.................................................................................................... 1
B.    Defendant's Motion to Strike Untimely Federal Claims is Frivolous ................. 2
C.    Plaintiff Has Adequately Pled ADEA and NYCHRL Retaliation Claims ......................... 7
D.    Plaintiff Has Adequately Pled an FLSA Retaliation Claim............................................. 13
        1. Plaintiff's Internal Complaint Was Protected Activity Under the ADEA ................... 13
        2. Retaliation in Violation of the ADEA Also Violates the FLSA................................. 16
        3. Defendant's Memorandum Ignores the Law ................................................... 17
E.    Plaintiff Has Adequately Pled a Fraudulent Concealment Claim as to His Bonus .......... 18
        1. Defendant Has Mischaracterized Plaintiff's Cause of Action ............................. 18
              a.    Plaintiff's Fraudulent Concealment Claim is Limited to His Bonus ................... 18
              b.    Defendant Mischaracterizes the Claim as Involving Plaintiff's Termination ...... 21
              c.    Defendant's Cases on "Reasonable Reliance" Do Not Help Defendant ............. 21
        2. Plaintiff's At-Will Status is Irrelevant Under New York Law .................................... 23
        3. Proof of a Fiduciary Relationship is Not Required........................................... 25
        4. Defendant's Cases Do Not Support its Motion............................................... 28
        5. Plaintiff Has Adequately Pled the Elements of a Fraudulent Concealment Claim....... 29
        6. Plaintiff Has Satisfied Rule 9(b), Fed. R. Civ. Pro. ........................................ 33
F.    Plaintiff Has Adequately Pled a Breach of the Duty of Good Faith and Fair Dealing as to His Bonus ............................................................................................. 36
G.    Defendant's Motion is Moot as to the New York City Human Rights Law.................... 40
H.    Defendant's Rule 12(f) Motion to Strike Should Be Denied............................................. 40
        1. Defendant's Motion to Strike is Inconsistent with Other Parts of Its Motion ............ 40
        2. Motions to Strike are Disfavored................................................................. 41
        3. Defendant's Motion is Premature ............................................................... 42
        4. Plaintiff's Allegations of a Cover-Up Are Relevant to Declaratory Relief................. 43
        5. An Employer's Representations to the EEOC Are Relevant to Liability.................... 43
        6. An Employer's Deceit is Relevant to Liability................................................ 44
        7. Deceit Shows Animus, and Animus is Relevant to Retaliation.................................... 46
        8. Deceit is Relevant to Credibility and Impleachment .................................... 46
        9. Deceit is Relevant to the Existence of a Long-Standing Scheme................................ 47
        10.    Deceit is Relevant to Plaintiff's Need for Injunctive Protections in the Event of Reinstatement........................................................................................ 49
        11.    Deceit is Relevant to Punitive Damages.................................................... 49
        12.    The Detailed Allegations of a Cover-Up Meet the Requirement of Alleging Sufficient Subsidiary Facts to Make Plaintiff's Claims Plausible................................ 52
        13.    Defendant's Cases Do Not Support Its Motion ........................................... 52
        14.    Defendant's Footnote Claim of Absolute Privilege............................................ 55
I.    Conclusion .................................................................................................... 56

## Table of Authorities

### 1. Cases

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
__ F.3d __, 2007 WL 1989336 (2d Cir. July 11, 2007, No. 05-5132-CV)............................34

*Aetna Casualty and Surety Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005)............................................................................27

*Arias v. Women in Need, Inc.*,
274 A.D.2d 353, 712 N.Y.S.2d 103 (N.Y. App. 1st Dept. 2000)............................................22

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*,
57 F.3d 146 (2d Cir. 1995).............................................................27, 28, 29, 30, 33

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007)...........................................................................................1, 52

*BMW of North America, Inc. v. Gore*,
517 U.S. 559 (1996)...........................................................................................51

*Brady v. Calyon Securities (USA)*,
406 F. Supp. 2d 307 (S.D.N.Y. 2005)...........................................................21

*Brogan v. United States*,
522 U.S. 398 (1998)...........................................................................................43

*Brown v. U.S. Postal Service*,
1996 U.S. Dist. LEXIS 19753 (S.D.N.Y. Oct. 28, 1996, No. 95 Civ. 1442) ........................18

*Budet v. Tiffany & Co.*,
155 A.D.2d 408, 547 N.Y.S.2d 81 (N.Y. App. 2d Dept. 1989)............................................29

*Burlington Northern and Santa Fe Railway Co. v. White*,
__ U.S. __, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)................................................9, 11, 12

*Butts v. New York City Dept. of Housing Preservation and Development*,
2007 WL 259937 (S.D.N.Y. Jan. 29, 2007, No. 00 CV 6307 (KMK))..................................11

*Chimarev v. TD Waterhouse Investor Services, Inc.*,
280 F. Supp. 2d 208 (S.D.N.Y. 2003)...........................................................21

*Clifton v. Vista Computer Services, LLC*,
(S.D.N.Y. July 16, 2002, No. 01 CIV. 10206 (JSM))........................................28, 29

*Cole v. Ruidoso Municipal Schools*,
43 F.3d 1373 (10th Cir. 1994) ...........................................................44

*Colgan v. Fisher Scientific Co.*,
935 F.2d 1407 (3d Cir.), *cert. denied*, 502 U.S. 941 (1991)........................................4

*Conners v. Miller Advertising Agency, Inc.*,
1997 WL 1102028 (S.D.N.Y. Dec. 18, 1997, No. 96 CIV. 6992 (PKL)) ............................39

*Desert Palace, Inc. v. Costa*,
539 U.S. 90 (2003)...........................................................................................45

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ...........................................................34

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
822 F.2d 1242 (2d Cir. 1987)...........................................................35

*Durley v. APAC, Inc.*,
236 F.3d 651 (11th Cir. 2000) ...........................................................44

*EEOC v. Sears, Roebuck & Co.*,
    243 F.3d 846 (4th Cir. 2001) ....................................................................43
*Ferguson v. Lion Holdings, Inc.*,
    312 F. Supp. 2d 484 (S.D. N.Y. 2004)......................................................30
*Flaherty v. Metromail Corp.*,
    235 F.3d 133 (2d Cir. 2000)........................................................................5
*Freedman v. Pearlman*,
    271 A.D.2d 301, 706 N.Y.S.2d 405 (N.Y. App. 1st Dept. 2000) ...............23, 24, 25
*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D. N.Y. 2002).......................................................52
*Galabya v. New York City Board of Education*,
    202 F.3d 636 (2d Cir. 2000).........................................................................2
*Giblin v. Murphy*,
    73 N.Y.2d 769, 532 N.E.2d 1282, 536 N.Y.S.2d 54 (N.Y. 1988) ............50
*Graff v. Enodis Corp.*,
    2003 WL 1702026 (S.D. N.Y. March 28, 2003, No. 02 CIV. 5922 (JSR)) ...........39
*Grasso v. Chase Manhattan Bank*,
    2002 WL 575667 (S.D. N.Y. April 17, 2002, No. 01 Civ. 4371 (AKH)) ................6
*Guillaume v. International Service System, Inc.*,
    2000 WL 45447, 2000 U.S. Dist. LEXIS 507
    (S.D. N.Y. Jan. 19, 2000, No. 99 CIV. 9403 (BSJ))......................................6
*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)...................................................................................16
*Hourahan v. Ecuadorian Line, Inc.*,
    1997 WL 2518 (S.D. N.Y. Jan. 3, 1997, No. 95 CIV. 10698 (AGS)) ..................6
*I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.*,
    2005 WL 2414762 (S.D. N.Y. Sept. 28, 2005, No. 04 Civ. 9251 RMB RLE).........38
*In re Initial Public Offering Securities Litigation, D.C.N.Y.2003*,
    241 F. Supp. 2d 281 (S.D. N.Y. 2003)......................................................34
*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    218 F.R.D. 76 (S.D. N.Y. 2003) ...............................................................52
*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994)................34
*Jelks v. Citibank N.A.*,
    2001 WL 50891 and 2001 U.S. Dist. LEXIS 381 (S.D. N.Y. Jan. 22, 2001,
    No. 99 CIV. 2955 (JSM)) ..........................................................................29
*Joseph v. Leavitt*,
    465 F.3d 87 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1855, 167 L. Ed. 2d 325 (2007) .............3
*Kendall v. Fisse*,
    2004 WL 1196811 (E.D. N.Y. May 25, 2004, No. 00 CV 5154SJ) ................38, 39
*Kent v. AVCO Corp.*,
    815 F. Supp. 67 (D. Conn. 1992)...............................................................53
*Kessler v. Westchester County Department of Social Services*,
    461 F.3d 199 (2d Cir. 2006)........................................................................10
*Kimel v. Florida Board of Regents*,
    528 U.S. 62 (2000)......................................................................................17

*Kolstad v. American Dental Association*,
   527 U.S. 526 (1999)........................................................................................49, 50
*Lam v. American Express Co.*,
   265 F. Supp. 2d 225 (S.D. N.Y. 2003)........................................................28
*Lambert v. Genesee Hospital*,
   10 F.3d 46 (2d Cir. 1993)........................................................................14, 18
*Ledford v. Rapid-American Corp.*,
   1988 WL 3428, 1988 U.S. Dist. LEXIS 79 (S.D. N.Y. Jan. 8, 1988,
   No.86 Civ. 9116 (JFK)) ..........................................................................54
*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)............................................................41, 43, 54
*Lorillard v. Pons*,
   434 U.S. 575 (1985)................................................................................16
*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986)......................................................................35
*Madera v. Metropolitan Life Ins. Co.*,
   2002 WL 1453827 (S.D. N.Y. July 3, 2002, No. 99 CIV. 4005 (MBM)) ...........39
*Mandell v. County of Suffolk*,
   316 F.3d 368 (2d Cir. 2003)....................................................................45
*Marino v. Oakwood Care Center*,
   5 A.D.3d 740, 774 N.Y.S.2d 562 (N.Y. App. 2d Dept. 2004)...........................22
*McKennon v. Nashville Banner Public Co.*,
   513 U.S. 352 (1995)................................................................................17
*Meyercord v. Curry*,
   38 A.D.3d 315, 832 N.Y.S.2d 29 (N.Y. App. 1st Dept. 2007).......................21, 22
*Miller-El v. Dretke*,
   545 U.S. 231 (2005)................................................................................46
*Mitchell v. Bendix Corp.*,
   603 F. Supp. 920 (N.D. Ind. 1985) ...........................................................54
*Moore v. Consolidated Edison Co. of New York, Inc.*,
   2007 WL 831807 (S.D. N.Y. March 20, 2007, No. 00 CIV.7384 (PAC)) .........12, 13
*Morse v. Weingarten*,
   777 F. Supp. 312 (S.D. N.Y. 1991)............................................................53
*Moss v. Port Authority of New York and New Jersey*,
   2006 WL 3392693 (S.D. N.Y. Nov. 20, 2006, No. 04 CIV 9631 (GEL)).........11, 12
*Murphy v. American Home Products Corp.*,
   58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (N.Y. 1983)........................20
*Nardelli v. Stamberg*,
   44 N.Y.2d 500, 377 N.E.2d 975, 406 N.Y.S.2d 443 (N.Y. 1978)......................50
*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)................................................................................5
*Nicholls v. Brookdale University Hospital Medical Center*,
   2004 U.S. Dist. LEXIS 12816 (E.D. N.Y. July 9, 2004, No. 03 Civ. 6233) ...........18
*Oncale v. Sundowner Offshore Services, Inc.*,
   523 U.S. 75 (1998)................................................................................9, 10

*Ossining Union Free School District v. Anderson LaRocca Anderson*,
 73 N.Y.2d 417, 539 N.E.2d 91, 541 N.Y.S.2d 335 (N.Y. 1989) ...................................26, 27
*Ouaknine v. MacFarlane*,
 897 F.2d 75 (2d Cir. 1990)....................................................................................33, 34, 36
*Patrolmen's Benevolent Association of New York v. City of New York*,
 310 F.3d 43 (2d Cir. 2002), *cert. denied*, 538 U.S. 1032 (2003) ...............................3
*Philip Morris USA v. Williams*,
 __ U.S. __, 127 S. Ct. 1057 (2007) ...........................................................................51
*Quinn v. Green Tree Credit Corp.*,
 159 F.3d 759 (2d Cir. 1998).........................................................................................6
*Reeves v. Sanderson Plumbing Products, Inc.*,
 530 U.S. 133 (2000)............................................................................................45, 46
*Ritzwoller v. Lurie*,
 225 N.Y. 464, 122 N.E. 634 (N.Y. 1919) ....................................................................20
*Rohlehr v. Brookdale University Hospital and Medical Center*,
 390 F. Supp. 2d 207 (E.D. N.Y. 2005) ......................................................................18
*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)........................................................................................34
*Rose v. Port Authority of New York and New Jersey*,
 13 F. Supp. 2d 516 (S.D. N.Y. 1998) ...................................................................14, 15
*Sabetay v. Sterling Drug, Inc.*,
 69 N.Y.2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 (N.Y. 1987) .........................20
*Sabo v. Delman*,
 3 N.Y.2d 155, 143 N.E.2d 906, 164 N.Y.S.2d 714 (N.Y. 1957) ...........................20
*Sargent v. Columbia Forest Products, Inc.*,
 75 F.3d 86 (2d Cir. 1996) ...........................................................................................38
*Segal v. Gordon*,
 467 F.2d 602 (2d Cir. 1972)........................................................................................35
*Serow v. Xerox Corp.*,
 166 A.D.2d 917, 560 N.Y.S.2d 575 (N.Y. App. 4th Dept. 1990)..............................29
*Smalley v. Dreyfus Corp.*,
 40 A.D.3d 99, 832 N.Y.S.2d 157 (N.Y. App. 1st Dept. 2007) ...........................23, 25
*Smith v. AVSC International, Inc.*,
 148 F. Supp. 2d 302 (S.D. N.Y. 2001)....................................................................52, 53
*Solomon v. Uniondale Union Free School Dist.*,
 2007 WL 608137 (E.D. N.Y. Feb. 16, 2007, No. 03-CV-2415 (SJF ETB)) ...........12
*State Farm Mutual Automobile Insurance Co. v. Campbell*,
 538 U.S. 408 (2003)....................................................................................................51
*Steigerwald v. Dean Witter Reynolds, Inc.*,
 107 A.D.2d 1026, 486 N.Y.S.2d 516 (N.Y. App. 4th Dept. 1985)....................24, 25
*Stewart v. Jackson & Nash*,
 976 F.2d 86 (2d Cir. 1992)................................................................24, 25, 27, 37
*TXO Production Corp. v. Alliance Resources Corp.*,
 509 U.S. 443 (1993)............................................................................................50, 51
*Terry v. Ashcroft*,
 336 F.3d 128 (2d Cir. 2003)..................................................................................9, 14

*The Dweck Law Firm v. Mann*,
    2003 U.S. Dist. LEXIS 19535 (S.D. N.Y. Oct. 20, 2003, No. 02 Civ. 8481 (SAS)) ..............55
*Thomas v. Eastman Kodak Co.*,
    183 F.3d 38 (1st Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000) ...............................................4
*United Air Lines, Inc. v. Evans*,
    431 U.S. 553 (1977).............................................................................................................5
*V.J.V. Transport Corp. v. Santiago*,
    173 A.D.2d 537, 570 N.Y.S.2d 138 (N.Y. App. 2d Dept. 1991)............................................50
*Vernon v. Port Authority of New York and New Jersey*,
    154 F. Supp. 2d 844 (S.D. N.Y. 2001).................................................................................15
*Verone v. Catskill Regional Off-Track Betting Corp.*,
    10 F. Supp. 2d 372 (S.D. N.Y. 1998)...................................................................................15
*Wakefield v. Northern Telecom, Inc.*,
    769 F.2d 109 (2d Cir. 1985)................................................................................................37
*Walker v. Sheldon*,
    10 N.Y.2d 401, 179 N.E.2d 497, 223 N.Y.S.2d 488 (N.Y. 1961)........................................50
*Washington v. Illinois Department of Revenue*,
    420 F.3d 658 (7th Cir. 2005) ...........................................................................................9, 10
*West v. Nabors Drilling USA, Inc.*,
    330 F.3d 379 (5th Cir. 2003) ..............................................................................................45
*White v. Guarente*,
    43 N.Y.2d 356, 372 N.E.2d 315, 401 N.Y.S.2d 474 (N.Y. 1977)........................................26
*Wieder v. Skala*,
    80 N.Y.2d 628, 609 N.E.2d 105, 593 N.Y.S.2d 752 (N.Y. 1992)........................................37
*Williams v. Dictaphone Corp.*,
    112 F. Supp. 2d 267 (W.D. N.Y. 2000) ..............................................................................15
*Williams v. R.H. Donnelley Corp.*,
    368 F.3d 123 (2d Cir. 2004)..................................................................................................3
*Witchard v. Montefiore Medical Center*,
    2006 U.S. Dist. LEXIS 72811 (S.D. N.Y. July 19, 2006,
    No. 05 Civ. 5957 (JSR THK)) ...........................................................................................55
*Wynder v. McMahon*,
    360 F.3d 73 (2d Cir. 2004)............................................................................................47, 48
*Zaccagnini v. Charles Levy Circulating Co.*,
    338 F.3d 672 (7th Cir. 2003) ..............................................................................................44

## 2. <u>Statutes</u>

18 U.S.C. § 1001...................................................................................................................43
42 U.S.C. § 1981...................................................................................................................47
42 U.S.C. § 1983...................................................................................................................47
42 U.S.C. § 1985...................................................................................................................47
42 U.S.C. § 1986...................................................................................................................47
Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* .......................2, 10, 14, 15, 56
Age Discrimination in Employment Act, § 4, 29 U.S.C. § 623...................................................16
Age Discrimination in Employment Act, § 4(d), 29 U.S.C. § 623(d) ...............................13, 14, 15

Age Discrimination in Employment Act, § 7(a), 29 U.S.C. § 626(a)...........................................17
Age Discrimination in Employment Act, § 7(b), 29 U.S.C. § 626(b) ..............................13, 16, 17
Age Discrimination in Employment Act, § 7(c)(1), 29 U.S.C. § 626(c)(1) ................................17
Fair Labor Standards Act, § 15(a)(3), 15 U.S.C. § 215(a)(3) .............................................14, 17, 56
Fair Labor Standards Act, § 16(b), 15 U.S.C. § 216(b)............................................................17
Fair Labor Standards Act, § 16(c), 15 U.S.C. § 216(c) ............................................................17
New York City Human Rights Law, Title 8 of the Administrative Code of the City of
    New York, §§ 8–101 *et seq.*..............................................................................40, 45, 57
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*....................9, 10, 14, 44, 45
Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a)..................13, 14, 15

## 3. <u>Rules</u>

Rule 9(b), Fed. R. Civ. Pro. .....................................................33, 34, 35, 36, 37, 40, 57
Rule 12(b)(6), Fed. R. Civ. Pro.........................................................................................21, 52
Rule 12(f), Fed. R. Civ. Pro. .......................................................................................40, 52, 57
Rule 401, Fed. R. Evid...........................................................................................................54
Rule 402, Fed. R. Evid...........................................................................................................54
Rule 403, Fed. R. Evid...........................................................................................................54
Rule 404(b), Fed. R. Evid. ....................................................................................................46

## 4. <u>Treatises</u>

American Law Institute, Restatement (Second) of Agency § 217(C) .........................................49
American Law Institute, Restatement (Second) of Torts § 909..................................................49
Michael H. Graham, 1 Handbook of Federal Evidence, 5th Ed.
    (West Group, 2001), § 404.58 ............................................................................................46
Lee S. Kreindler, Blanca I. Rodriguez, David Beekman, and David C. Cook, 14 New
    York Practice Series—New York Law of Torts (2006) ........................................................15
Barbara T. Lindemann and David P. Kadue, Age Discrimination in Employment Law
    (BNA, Washington, D.C., 2003) ........................................................................................15
2 Moore's Federal Practice, 3rd Ed. § 9.03[1][g] (Matthew Bender, 2003) ...............................35
2 Moore's Federal Practice, 3rd Ed. § 12.37[1] (Matthew Bender, 2003) .................................41
Wright & Miller, 5A Federal Practice and Procedure § 1298 (West Group, 2007) ....................33
Wright & Miller, 5C Federal Practice and Procedure § 1382 (West Group, 2007) ....................41

A.    <u>Introduction</u>

Defendant's Motion was filed under Rule 12(b)(6), Fed. R. Civ. Pro.  Under this rule, the

factual allegations of the Complaint must be taken as true.  Taken as true, a Complaint will

survive a Rule 12(b)(6) motion if its allegations allow a plausible inference of liability.  A

court's belief as to the likelihood that a plaintiff will be able to prove the factual allegations is

not relevant to the inquiry; what counts is whether the allegations would if proven allow such an

inference.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), stated:

> Asking for plausible grounds to infer an agreement does not impose a probability
> requirement at the pleading stage; it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of illegal agreement.  And, of course, a
> well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of
> those facts is improbable, and "that a recovery is very remote and unlikely."

(Footnote omitted.)

Defendant's Motion is not well taken, and should be denied.  Allowing for the differences

that usually occur between the adversaries' views of the case, some parts of it still should not

have been brought.  Some parts are based on a mischaracterization or misunderstanding of

plaintiff's causes of action, or a confusion between background facts and causes of action.  To

the extent there was any confusion, it could have been cleared up by an informal contact to

plaintiff's counsel, and a stipulation could have made anything clear enough to satisfy both sides

without having to go through such an extensive motion.  Plaintiff had, at the outset of this case,

made an offer of just such informal consultation.

Defendant has failed to cite controlling authority, has cited decisions that do not support

its propositions, and has failed to cite opposing authority.  This has necessarily required plaintiff

to prepare a much more extensive Memorandum than should have been necessary.

**B.**    <u>**Defendant's Motion to Strike Untimely Federal Claims is Frivolous**</u>

One of the most surprising aspects of defendant's Motion is that it presents a series of factual allegations as if they were claims, and then moves to dismiss such unalleged claims in an apparent effort to bar consideration of facts arising before the period of limitations. For several reasons, this part of defendant's Motion is frivolous.

*First*, plaintiff has clearly limited his Federal claims to the tangible injuries he suffered in 2004: his termination, the denial of continued employment (under either a transfer or the customary arrangement under which he would continue working for six months at reduced or no pay to help him obtain a similar job elsewhere), and the January and February 2004 denial of his bonus for the work he performed in 2003. Complaint Prayer, ¶ 1 (declaratory relief); ¶ 2 (declaratory relief for defendant's false filing in November 2004); ¶¶ 3–5 (reinstatement to Managing Director position without mention of restoring specific accounts); ¶ 6 (back pay for bonus); ¶¶ 7–10 (back pay for termination, including loss of stock awards, loss of benefits, loss of appreciation of stock); ¶ 11 (liquidated damages equal to back pay); ¶ 12 (prejudgment interest on backpay); ¶ 13 (postjudgment interest); ¶ 14 (front pay and lost future earnings if reinstatement is denied or delayed); and ¶ 15 (punitive damages). Plaintiff has not requested any relief for any pre-2004 background fact. Defendant should not have been in any doubt about this fact but, if it had somehow been in doubt, it could simply have picked up the telephone and plaintiff would have been happy to stipulate the plain meaning of the Complaint.

*Second*, it is black-letter law that plaintiff could not have brought suit over mere background facts that did not have a tangible consequence on him, because such occurrences do not result in an adverse employment action. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000), an ADEA case, explained:

A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. . . . To be "materially adverse" a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." . . . "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." . . .

(Footnote and citations omitted.) The court held that a series of actions were not adverse employment actions: delay in reassignment, misassignment, rotation through classrooms, and transfers without significant adverse change of responsibilities. *Id.* at 640–41. *Accord*, *Patrolmen's Benevolent Association of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002), *cert. denied*, 538 U.S. 1032 (2003) (lateral transfer "that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way."); *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (denial of transfer request in which plaintiff sought demotion for personal reasons not adverse employment action); and *Joseph v. Leavitt*, 465 F.3d 87, 90–91 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1855, 167 L. Ed. 2d 325 (2007) (placement on paid administrative leave during pendency of criminal charges not an adverse employment action under Title VII).

*Third*, plaintiff has not alleged that he was injured at the time by defendant's reassignment of any of his accounts, its misreporting of his achievements, its misreporting of his pipeline of expected achievements, its misreporting of others' achievements, its misreporting of others' pipelines, or its abuse of the Client Management system. These are all allegations providing the background or context of his injuries in 2004. Such events could have continued for years to come and plaintiff would not have had a cause of action under antidiscrimination law until such time as it negatively and materially affected the terms and conditions of his

employment.  Put differently, the growing of teeth is not actionable; their use to bite is actionable.  *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 42 (1st Cir. 1999), *cert. denied*, 528 U.S. 1161 (2000), involved a similar situation.  There, plaintiff was laid off in 1993, and argued "that Kodak's layoff decision was discriminatory because it resulted from a ranking process that relied on racially biased performance appraisals prepared in 1990, 1991, and 1992."  Kodak argued that the claim was time-barred because the performance appraisals were all outside the Title VII charge-filing period.  The court disagreed: "We hold that the date of the notice of the layoff is the date from which the limitations period ran.  Because the evaluations caused no concrete harm until the layoff, we reject the employer's argument that, instead of the layoff date, the date of the evaluations should be used as the start of the limitations period."  The court held at 49 that "an employer action only triggers the running of the statute of limitations if that action has concrete, negative consequences for an employee, and the employee is aware or should have been aware of those consequences."  *Accord*, *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1419–20 (3d Cir.), *cert. denied*, 502 U.S. 941 (1991) (period of limitations did not start running until plaintiff received notice of layoff; "The performance evaluation had no immediate consequence on Colgan's employment, such as a loss of seniority, nor did it alert Colgan to the possibility that consequences would flow from it without an opportunity for him to improve his performance.").  *Thomas* cautioned that any rule allowing charges and lawsuits prior to any injury would create the risk of a multitude of unripe actions in which it would not be clear whether any injury would ever occur.  183 F.3d at 50.

The Second Circuit has stated in a different context (constructive discharge): "In discriminatory discharge cases, then, the illegal act is often the decision to terminate the employee, and the limitations period begins to run on the date that the employer gives definite

notice of that decision to the employee." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000). That is consistent with plaintiff's argument, and the more direct authorities in the First and Third Circuits. Defendant's Memorandum at 7 n.4 seems to agree.

Fourth, the Supreme Court has expressly approved the use of time-barred events as background evidence in discrimination cases. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."). Even where the prior discriminatory act was actionable and the period of limitations has run, it may still be background evidence. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977), held: "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences."

Moreover, a majority of Supreme Court Justices in *Morgan* spoke favorably of a discovery rule, although they did not decide the issue. "There may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered. But this case presents no occasion to resolve that issue." (Justice Thomas in Part II-A of the opinion, joined by Chief Justice Rehnquist and Justices Stevens, Souter, Ginsburg, Breyer, O'Connor, Scalia, and Kennedy, *id.* at 114 n.7); "I believe, however, that some version of the discovery rule applies to discrete-act claims." (Justice O'Connor, joined by Justice Breyer, *id.* at 123).

5

Defendant's unreported authorities do not support its position. Plaintiff has never disputed that filing a timely EEOC charge was a prerequisite to this lawsuit, and defendant's authorities have nothing further of relevance to say. *Grasso v. Chase Manhattan Bank*, 2002 WL 575667 (S.D. N.Y. April 17, 2002, No. 01 Civ. 4371 (AKH)),[1] struck time-barred causes of action at p. *3 cited by defendant, did not strike background facts, and is inapplicable. *Hourahan v. Ecuadorian Line, Inc.*, 1997 WL 2518 (S.D. N.Y. Jan. 3, 1997, No. 95 CIV. 10698 (AGS)),[2] a summary judgment decision, held at pp. *3 (cited by defendant) and *4 that an oral interview before the City Commission on Human Rights did not satisfy the charge-filing requirement where no written charge was filed with the EEOC until thirteen months after the last act of alleged discrimination. This decision is unrelated to the point at issue. *Guillaume v. International Service System, Inc.*, 2000 WL 45447, 2000 U.S. Dist. LEXIS 507 (S.D. N.Y. Jan. 19, 2000, No. 99 CIV. 9403 (BSJ)),[3] dismissed a claim where plaintiff did not file an EEOC charge until almost 33 months after the alleged discrimination. This decision is unrelated to the point at issue. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765–66 (2d Cir. 1998), held in the part of the opinion cited by defendant for a quotation that two periods of sexual harassment were discontinuous, and could not constitute a continuing violation. The court not only did not rule that background facts must be stricken, it relied on descriptions of facts prior to the limitations period. *Id.* at 763. This case does not support defendant's Motion.

This part of defendant's Motion should be denied.

---

[1] This decision can be found starting at unmarked p. 24 of defendant's Appendix 5, and is the third and last decision in that Appendix.

[2] This decision can be found starting at unmarked p. 11 of defendant's Appendix 6, and is the third of the four decisions in that Appendix.

[3] This decision can be found at the beginning of defendant's Appendix 6.

C.    **Plaintiff Has Adequately Pled ADEA and NYCHRL Retaliation Claims**

Defendant argues at pp. 8–12 of its Memorandum that plaintiff has not adequately alleged an adverse employment action subsequent to his January 20, 2004, internal complaint of age discrimination alleged in the Complaint, ¶ 77.  Defendant correctly points out that plaintiff's notice of termination occurred six days earlier, as plaintiff alleged in the Complaint, ¶ 74.  Unless discovery reveals that plaintiff mentioned age discrimination in connection with his 2003 complaints about the transfer of accounts and plaintiff amends his Complaint accordingly,[4] plaintiff's retaliation claim obviously does not cover his termination.[5]

Plaintiff has alleged the following post-January 20, 2004, actions as adverse employment actions:

(a)  Defendant's denial of substantial bonus compensation for plaintiff's work in 2003, in an amount that would have to be pinned down in discovery but which might be in the vicinity of $900,000.[6]  Complaint, ¶¶ 78–79.

(b)  Defendant's denial of plaintiff's request for a transfer to another position with defendant.  Complaint, ¶¶ 91(a) and (b).

(c)  Defendant's denial of plaintiff's request to be given the customary benefit, in situations where there was no imminent need to fire the employee immediately, of continuing working for six months at reduced or no pay, in order to enable him to obtain

---

[4] Because plaintiff does not now recall that he mentioned age discrimination or the age of any transferee in these earlier complaints, the Complaint makes no such allegation.

[5] Because this is a matter of common sense, plaintiff sees no need to respond to the four unreported decisions cited by defendant at p. 9 of its Memorandum.

[6] Plaintiff has pleaded alternative theories of recovery as to the bonus.  Complaint, ¶¶ 78–86 and 134–140.  The true date of the decision as to the bonus determines whether the retaliation theory is applicable, and this can only be determined through discovery, not on a Motion to Dismiss.

comparable employment and thereby have a "soft landing."  The denial of this request caused plaintiff great injury.  Complaint, ¶¶ 87–94.

Defendant's Memorandum at 10 misdescribes plaintiff's claims by omitting completely the denial of a very substantial bonus and trivializes them by wrongly asserting that plaintiff alleged the cancellation of a meeting as an adverse employment action.

Defendant's Memorandum at 12 is ambiguous, and could be read as suggesting that the three post-January 20, 2004, actions alleged by plaintiff were embodied in the termination decision and that only refusals to reconsider the decisions occurred after plaintiff made his internal age discrimination complaint.  Any such implication would be factual matter wholly inappropriate on a Motion to Dismiss where the allegations of the Complaint must be accepted as true.

The Complaint does not allege that any of these decisions was expressly communicated to plaintiff as part of his notice of termination.  Indeed, ¶ 88 of the Complaint expressly alleges that plaintiff's supervisor Jeffrey Amling stated that he supported the request, obviously considering it open, that Mr. Amling's supervisors, Mr. DeNaut and Mr. Brand, told him at the same meeting at which he complained of age discrimination that they would get back to him, indicating that the matter was still open, and that plaintiff was informed after his complaint that the request was denied without any stated reason.  The allegations of the Complaint must be accepted as true for purposes of defendant's Motion, so these must be taken as new decisions within days of plaintiff's complaint.

Defendant's Memorandum at 11–12 further seeks to trivialize the adverse employment actions cited by plaintiff as mere "perks" of no consequence.  On a Motion to Dismiss, plaintiff's plausible allegations of their importance are to be credited.  Defendant's effort to substitute its

own trivializing description is the equivalent of a motion for summary judgment based only on the arguments of counsel, without benefit of discovery or opportunity to respond with the fruits of discovery.  Such an effort is improper.

The three post-complaint actions of defendant alleged by plaintiff are adverse employment actions.  The Supreme Court redefined, in *Burlington Northern and Santa Fe Ry. Co. v. White*, __ U.S. __, 126 S. Ct. 2405, 2409, 165 L. Ed. 2d 345 (2006), the standards for actionable retaliation under Title VII:[7]

> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.  We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

The Court uttered an important caution that is of great relevance to the decision of defendant's Motion:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters.  "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Oncale, supra,* at 81–82, 118 S.Ct. 998.  A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children.  Cf., *e.g., Washington, supra,* at 662 (finding flex-time schedule critical to employee with disabled child).  A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.  See 2 EEOC 1998 Manual § 8, p. 8–14.  Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act

---

[7] *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003), a case involving retaliation under both Title VII and the ADEA, among other claims, referred to the Title VII standard and held: "The same standards and burdens apply to claims of retaliation in violation of the ADEA." Plaintiff does not quarrel with defendant's unreported decisions to the same effect and holding that the same standard applies in cases under the New York City Human Rights Law. Defendant's Memorandum at 10 n.5.

that would be immaterial in some situations is material in others." *Washington, supra,* at 661.

*Id.* at 2415–16 (citation omitted).[8]

Plaintiff's alleged retaliatory actions all meet this standard. The denial of an expected very substantial bonus for work already done would plainly dissuade most workers from making a claim. The denial of an opportunity to transfer to any available position, when the defendant's asserted reason for the termination is a lack of work in the position plaintiff held, and the denial of plaintiff's request for a customary "soft landing" that would have been virtually cost-free to defendant[9] but of enormous importance to plaintiff, cut plaintiff off from all income from defendant and threatened to foreclose comparable income in the future, as it eventually did. These would dissuade most reasonable workers from pursuing discrimination charges.

*Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199 (2d Cir. 2006),[10] involved a Commissioner who was transferred from White Plains to Yonkers after engaging in activity protected by Title VII and the ADEA. "The transfer did not affect Kessler's job title, job grade (which was 15), salary, benefits, or hours of work." *Id.* at 202. Kessler was thus left far better off than plaintiff. *Kessler* held that "a rational factfinder could permissibly infer that a reasonable employee in the position of DSS Assistant Commissioner could well be dissuaded from making a charge of discrimination if doing so would result in a transfer to an office in which, *inter alia,* he would not be allowed to perform the broad discretionary and managerial functions of that position, no one would report to him, and he would be forced to do work normally performed by clerical and lower-level personnel." *Id.* at 209–10.

---

[8] The full citations to the decisions mentioned in this passage are *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), and *Washington v. Illinois Dept. of Revenue,* 420 F.3d 658 (7th Cir. 2005).

[9] Plaintiff offered to work for reduced or no pay. Complaint, ¶ 87.

[10] Defendant did not cite to this controlling authority.

Defendant argues, without reported authority, that retaliation plaintiffs can only complain about the deprivation of benefits to which they would normally be entitled. Even under that standard, plaintiff should have a good claim as to his bonus, the normal ability of an employee to transfer to an available position, and the customary benefit of being allowed to work for a time at reduced or no pay to help line up comparable employment. Nevertheless, defendant's standard is plainly wrong. Few employees are entitled to a promotion, but no court to plaintiff's knowledge has ever found that the retaliatory denial of a promotion is not actionable. Defendant's standard is also clearly wrong under the language of *Burlington* quoted above.

Defendant's standard is not even supported by the unreported authorities it cites in support of the standard. *Butts v. New York City Dept. of Housing Preservation and Development*, 2007 WL 259937 (S.D. N.Y. Jan. 29, 2007, No. 00 CV 6307 (KMK)),[11] held at p. *16: "The failure to receive a discretionary salary increase can also constitute an adverse action." The court stated that plaintiff alleged that others received the increase and she did not, and held: "This type of activity could dissuade a reasonable worker from engaging in protected activity, and thus constitutes an adverse action." Defendant drew attention to the court's holding that the denial of plaintiff's request to re-allocate time was not actionable, but did not mention that the court's decision on that point was based on the untimeliness of plaintiff's request, and her failure to show that anyone was ever allowed to re-allocate time without a timely request. *Id.*

Defendant's other citations are no more helpful to its "entitlement" standard. *Moss v. Port Authority of New York and New Jersey*, 2006 WL 3392693 (S.D. N.Y. Nov. 20, 2006, No. 04 CIV. 9631 (GEL)),[12] at defendant-cited p. *5 had nothing to do with entitlement. It was not even clear that Moss intended to make a retaliation claim involving TransitCheks, but in any

---

[11] This decision can be found at the beginning of defendant's Appendix 3.

` [12] This decision can be found in defendant's Appendix 9, starting on unmarked p. 14.

event she obtained them in months in which she did not work and was not eligible, "[i]n light of her receipt of those unjustified subsidies, she was not provided with TransitCheks in January and February 2003, her first eligible months after returning to work," could not identify any "rule or practice that would have entitled her to the withheld TransitCheks despite her acknowledged receipt of unjustified TransitCheks in the past," and had TransitChecks "made available to her in April 2003, the only month during the period covered by the Complaint in which she was eligible to receive them; however, she failed to pick them up when provided."  Moreover, she was commuting by car, and did not need or qualify for a transit subsidy.  *Moss* does not support defendant's "entitlement" standard.  *Solomon v. Uniondale Union Free School Dist.*, 2007 WL 608137 (E.D. N.Y. Feb. 16, 2007, No. 03-CV-2415 (SJF ETB)),[13] stated at p. *6, immediately before the page cited by defendant, that "plaintiff does not dispute that he was permitted to attend any workshop he requested and has failed to demonstrate that not being chosen for attendance at workshops for which no request was made was an adverse employment action or that he was not chosen under circumstances raising an inference of discrimination."  *Solomon* does not support defendant's "entitlement" standard.  *Moore v. Consolidated Edison Co. of New York, Inc.*, 2007 WL 831807 (S.D. N.Y. March 20, 2007, No. 00 CIV.7384 (PAC)),[14] stated at defendant-cited p. *6, as to Moore's claims of "exclusion from meetings and opportunities for professional development and her assignment to set up the corporate apartment": "Unlike the allegations in *Burlington Northern,* these actions did not alter Moore's job responsibilities or prestige, or involve even a temporary deprivation of compensation.  No reasonable employee would refrain from complaining of discrimination if threatened with such exclusion, and so the

---

`     [13] This decision was not reproduced in defendant's Appendices.  Plaintiff is providing a copy as Attachment A to this Memorandum.
`     [14] This decision can be found at the beginning of in defendant's Appendix 9.

retaliation claims based on such exclusion are inadequate." *Moore* does not support defendant's "entitlement" standard.

This part of defendant's Motion is not well taken, and should be denied.

### D.    Plaintiff Has Adequately Pled an FLSA Retaliation Claim

#### 1.    Plaintiff's Internal Complaint Was Protected Activity Under the ADEA

Plaintiff has pleaded a violation of § 4(d) of the ADEA, 29 U.S.C. § 623(d), the anti-retaliation provision.[15]  Complaint, ¶¶ 1, 136.  This is a broad provision that bars retaliation against both employees who have opposed discrimination, and employees who have participated in enforcement steps short of filing an official complaint.  Its breadth is almost identical to that of the anti-retaliation provision in Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e–3(a).[16]  The anti-retaliation provision of the FLSA is worded more narrowly,[17] although the differences in language are immaterial for the reasons described in the section below.

---

[15] Sec. 7(b) of the ADEA, 29 U.S.C. § 626(b), states as follows:

(d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

[16] Sec. 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), provides:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency,

An internal complaint is protected activity under both the ADEA's and Title VII's anti-retaliation provisions. *Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003), a case involving retaliation under both Title VII and the ADEA, among other claims, held that an internal complaint to "the agency's Equal Employment Opportunity ("EEO") office," *id.* at 134, was "a protected activity known to his employer." *Id.* at 142. The court held: "The same standards and burdens apply to claims of retaliation in violation of the ADEA." *Id.* at 140. *Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993), an Equal Pay Act case subject exclusively to FLSA procedures, contrasted the broad anti-retaliation provision of Title VII with the narrower language of the FLSA. *Lambert* held that, because of these differences in language, internal complaints were protected against retaliation by Title VII but not by the FLSA.[18]

Reported district court cases within this Circuit holding that internal complaints of age discrimination are protected under § 4(d) of the ADEA, 29 U.S.C. § 623(d), include *Rose v. Port Authority of New York and New Jersey*, 13 F.Supp.2d 516, 522 (S.D. N.Y. 1998) ("For her retaliation claims, she complained of age and race discrimination to the Director of Human

---

or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

[17] Sec. 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), states that it is unlawful "(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

[18] Plaintiff recognizes that this Court is bound by *Lambert*'s holding that only the filing of an official complaint is directly protected by § 215(a)(3), but in light of the split among the Circuits recognized in *Lambert* respectfully preserves his right to argue before a higher court that this part of the *Lambert* decision was wrongly decided.

Resources at the Port Authority, which satisfied the requirement of participation in a protected

activity under 42 U.S.C. § 2000e–3(a) and 29 U.S.C. § 623(d).”); *Vernon v. Port Authority of*

*New York and New Jersey*, 154 F.Supp.2d 844 (S.D. N.Y. 2001) (plaintiff made internal

complaint to supervisors in March and August 1994, pursuant to which the Port Authority’s EEO

office commenced an investigation, *id.* at 848; plaintiff claiming retaliation required to show that

“he was engaged in a protected activity under Title VII and the ADEA,” *id.* at 858; “Vernon

engaged in a protected activity when he filed a discrimination complaint with the EEO.” *Id.*

(citation omitted)); *Williams v. Dictaphone Corp.*, 112 F. Supp. 2d 267, 277–78 (W.D. N.Y.

2000) (“Williams alleges that Kamenir retaliated against him after Williams complained to him

about the discriminatory nature of the 1996 salary policy and after Williams told Kamenir that he

would be retaining an attorney and filing a complaint with the EEOC. . . . Thus, Williams

satisfies the first element of a prima facie case of retaliation because he has shown that he

engaged in protected activity that was known by Kamenir, the alleged retaliator.” (Footnote

omitted.)); and *Verone v. Catskill Regional Off-Track Betting Corp.*, 10 F.Supp.2d 372, 376

(S.D. N.Y. 1998) (ADEA and ADEA retaliation case stating: “Plaintiff's March 27, 1996 letter to

Catskill management complaining about discriminatory scheduling in favor of younger cashiers

clearly qualifies as a protected activity.”).

A leading treatise on age discrimination, BARBARA T. LINDEMANN AND DAVID P. KADUE,

AGE DISCRIMINATION IN EMPLOYMENT LAW (BNA, Washington, D.C., 2003), states at 92:

> The participation clause prohibits retaliation against a plaintiff for filing an administrative
> charge of age-related employment discrimination with the EEOC, and also protects those
> who have taken steps short of actually filing an EEOC charge. The participation clause
> has been held to protect an employee who . . .participates in an internal complaint or
> investigation procedure . . . . (Footnotes omitted.)

*Rose v. Port Authority of New York and New Jersey* was cited for this proposition. The treatise

continues at 93–94:

The opposition clause protects individuals who oppose illegal age discrimination in the workplace without filing a formal charge of discrimination. The opposition clause thus protects a variety of precharge and noncharge conduct ranging from the informal voicing of complaints to supervisors to the formal invocation of an employer's internal complaint or grievance procedures. The EEOC has stated that the opposition clause applies "if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity constitutes a form of employment discrimination that is covered by the ADEA.[47]

————

[47] *EEOC Guidance on Investigating, Analyzing Retaliation Claims*, 405 FEP MANUAL (BNA) 7583.

(Some footnotes omitted.)

### 2.       Retaliation in Violation of the ADEA Also Violates the FLSA

Sec. 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that violations of § 623 also violate

§ 215 of the Fair Labor Standards Act and entitle plaintiff to the remedies provided by § 216(b)

of the FLSA. It necessarily follows that retaliation in violation of § 623(d) violates the anti-

retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). Sec. 7(b) of the

ADEA states as follows:

> (b) Enforcement; prohibition of age discrimination under fair labor standards; unpaid minimum wages and unpaid overtime compensation; liquidated damages; judicial relief; conciliation, conference, and persuasion
>
> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under section 623 of this title shall be deemed to be a prohibited act under section 215 of this title. . . .

Construing this provision, the Supreme Court has repeatedly made clear that the ADEA

incorporates elements of the FLSA, and that ADEA violations are usually to be treated as FLSA

violations. *Lorillard v. Pons*, 434 U.S. 575, 578 (1985) ("Pursuant to § 7(b) of the Act, 29

U.S.C. § 626(b), violations of the ADEA generally are to be treated as violations of the FLSA.");

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989) ("Section 7(b) of the ADEA

incorporates enforcement provisions of the Fair Labor Standards Act of 1938 . . . and provides

that the ADEA shall be enforced using certain of the powers, remedies, and procedures of the FLSA."); *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995) ("Its remedial provisions incorporate by reference the provisions of the Fair Labor Standards Act of 1938.  29 U.S.C. § 626(b)."); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 74 (2000) ("The text of the ADEA forecloses respondents' argument.  Section 626(b) clearly states that the ADEA "shall be enforced in accordance with the powers, remedies, and procedures provided in [section 216(b)] and subsection (c) of this section." . . . In accord with that statutory language, we have explained repeatedly that § 626(b) incorporates the FLSA's enforcement provisions, and that those remedial options operate together with § 626(c)(1).").

### 3.    Defendant's Memorandum Ignores the Law

Defendant's Memorandum ignores this law, and argues that the only protected activity covered by § 215(a)(3), entitling a plaintiff to the remedies of § 216(b), is filing a complaint with the Secretary of Labor.  Defendant's Memorandum at 12.  Defendant ignores that the EEOC, not the Secretary of Labor, has jurisdiction over claims of discrimination and retaliation under the ADEA,[19] ignores the breadth of the anti-retaliation provision of the ADEA compared to that of the FLSA, ignores the above-cited case law holding that internal complaints are protected activities under the ADEA, and cites only cases subject exclusively to the anti-retaliation provision of the FLSA.

---

[19] Sec. 7(a) of the ADEA, 29 U.S.C. § 626(a), states:

(a) Attendance of witnesses; investigations, inspections, records, and homework regulations

The Equal Employment Opportunity Commission shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter in accordance with the powers and procedures provided in sections 209 and 211 of this title."

Defendant argues in particular that the FLSA does not protect internal complaints of discrimination, and relies principally on *Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993), an Equal Pay Act case subject exclusively to FLSA procedures. For the reasons stated above, this case supports plaintiff, not defendant.

Defendant's other citations do not support its argument. *Rohlehr v. Brookdale University Hosp. and Medical Center*, 390 F.Supp.2d 207, 211 (E.D. N.Y. 2005), held that a complaint to the NLRB that had nothing to do with the FLSA was not protected activity under the FLSA's anti-retaliation provision. *Nicholls v. Brookdale Univ. Hosp. Medical Center*, 2004 U.S. Dist. LEXIS 12816 (E.D. N.Y. July 9, 2004, No. 03 Civ. 6233)[20] at p. *28, and *Brown v. U.S. Postal Service*, 1996 U.S. Dist. LEXIS 19753 (S.D. N.Y. Oct. 28, 1996, No. 95 Civ. 1442)[21] at pp. *8–*9, did not involve the ADEA, but only the FLSA.

This part of defendant's Motion should be denied.

### E.  Plaintiff Has Adequately Pled a Fraudulent Concealment Claim as to His Bonus

#### 1.  Defendant Has Mischaracterized Plaintiff's Cause of Action

##### a.  Plaintiff's Fraudulent Concealment Claim is Limited to His Bonus

Plaintiff's alternative theory of recovery as to his bonus for work in 2003 is that defendant was engaged in a long-term plan to induce him fraudulently to work for it past the end of 2003, that the virtually certain prospect of a bonus was collateral to the indefinite-term employment contract but was nonetheless the primary inducement defendant held out to plaintiff, that part of its plan was to deprive him of his bonus for the work he did in 2003, that only defendant and its officials could have known of the plan, that defendant had a duty to reveal its

---

[20] The decision can be found at the end of defendant's unindexed Appendix 9.

[21] The decision can be found at the end of defendant's unindexed Appendix 2.

plan to deprive him of the bonus, that defendant did not do so, and that plaintiff reasonably relied

on defendant's representations.  Complaint, ¶¶ 78–86.  Specifically, plaintiff alleged: "Plaintiff

would not have continued working for defendant in 2003 if he had known he would be denied

his bonus, and would have sought comparable job opportunities while still employed and,

therefore, still readily employable."  Complaint, ¶ 81.  Plaintiff's description of his fraudulent

concealment claim is in ¶ 139 of the Complaint.  It incorporates by reference ¶¶ 78–96 of the

Complaint, and does not incorporate the paragraphs describing plaintiff's termination, ¶¶ 74–78.

It states:

> 139.    The actions of defendant Deutsche Bank Securities, Inc., described in ¶¶
> 78–86 at pp. 24–28 above, incorporated herein by reference, constituted the tort of
> <u>fraudulent concealment of its intent not to pay plaintiff his incentive bonus for 2003</u>,
> defendant knowingly induced plaintiff to continue working for it in reliance on receiving
> his 2003 incentive bonus, knew that plaintiff was continuing to work for defendant in
> reliance on the bonus, knew that plaintiff's expectation of the bonus was reasonable, had
> decided at some time materially before January 14, 2004, not to pay plaintiff's bonus to
> him, had a duty based on its special knowledge to communicate that change of position to
> plaintiff, and instead concealed and did not communicate this change of position to
> plaintiff before January 14, 2004, so that plaintiff would continue working for it until
> defendant was ready to fire him, and succeeded in that plaintiff continued working for
> defendant throughout 2003.

(Emphasis supplied.)

Plaintiff did not allege that defendant was under a tort duty to inform him it was planning

to fire him, just that defendant was under a tort duty to inform him it was planning to deprive

him of his bonus.  Plaintiff's claim of fraudulent concealment would be just as valid if defendant

had simply denied plaintiff's bonus and had never fired him.  It is based on defendant's pre-

termination failure to disclose the true state of affairs to plaintiff, not on any failure to carry out a

future promise.  While the defendant's choice of mechanism to complete its fraud was a

termination, Complaint, ¶ 80, its choice of mechanism is not a defense to the claim.

The New York Court of Appeals has relied on just such a distinction in upholding rescission-of-contract claims based on fraud. *Ritzwoller v. Lurie*, 225 N.Y. 464, 467–68, 122 N.E. 634, 635 (N.Y. 1919), stated, in a case in which the plaintiff was an at-will employee ("His contract with the corporation is not alleged to have been for any definite time, and therefore he could terminate it whenever he wanted to." 225 N.Y. at 468, 122 N.E. at 635):

> While the representations of the individual defendant through which plaintiff was induced to subscribe for stock and enter into the contract of employment related to something which was to occur in the future in the way of organization of the corporation and payment for its stock in full with property and cash, we think the allegations in the complaint describe a case where a defendant has fraudulently and positively as with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false. It is not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur, when the party making the affirmation knows perfectly well that no such thing is to occur.

*Accord*, *Sabo v. Delman*, 3 N.Y.2d 155, 143 N.E.2d 906, 164 N.Y.S.2d 714 (N.Y. 1957) ("it is settled that, if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of 'a material existing fact' upon which an action for rescission may be predicated.").

Plaintiff is not challenging his termination under a theory of fraudulent concealment; New York's at-will doctrine would preclude such a claim. *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 302, 448 N.E.2d 86, 90, 461 N.Y.S.2d 232, 236 (N.Y. 1983) (no cause of action for abusive discharge where accountant allegedly fired for reporting accounting irregularities to senior management); *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 506 N.E.2d 919, 514 N.Y.S.2d 209 (N.Y. 1987) (uncommunicated personnel manual would not be read as limiting the employer's right to fire employees at will). Plaintiff's fraudulent concealment claim is perfectly consistent with these decisions.

### b.     Defendant Mischaracterizes the Claim as Involving Plaintiff's Termination

Defendant's Motion does not discuss the claim plaintiff actually pled, and tries to pretend that plaintiff made a fraudulent concealment claim challenging his termination, so that it would be easier for defendant to attack.  See Defendant's Memorandum at 15–18.  However, Rule 12(b)(6), Fed. R. Civ. Pro., cannot be stretched to "dismiss" imaginary claims never pled.

### c.     Defendant's Cases on "Reasonable Reliance" Do Not Help Defendant

*Brady v. Calyon Securities (USA)*, 406 F.Supp.2d 307, 316–17 (S.D. N.Y. 2005), did not involve denial of compensation for work already done, but an allegation that plaintiff was fraudulently induced to remain on the job by a promise that defendant would observe the securities laws in the future.  "Because an at-will employee may be terminated at any time, any reliance on any representations of future intentions, such as job security or in this case, future changes, is deemed unreasonable as a matter of law."  (Citations omitted.)  This is not a damages claim, and it is difficult to envision the relief plaintiff would have been able to obtain if he had prevailed on such a claim; an "obey the securities laws" injunction would be unavailable for a number of reasons, including that plaintiff lacked standing to seek it because he would not benefit personally.  This is entirely dissimilar to the compensation claim in the case at bar.

*Chimarev v. TD Waterhouse Investor Services, Inc.*, 280 F.Supp.2d 208, 228 (S.D. N.Y. 2003), involved a claim that plaintiff reasonably relied on a fraudulent hiring inducement that he would remain employed, which the court found hard to understand given that plaintiff had signed a letter at the outset acknowledging that he was an at-will employee, and could not identify a fraudulent communication.

*Meyercord v. Curry*, 38 A.D.3d 315, 832 N.Y.S.2d 29 (N.Y. App. 1st Dept. 2007), does not stand for the proposition for which defendant cites it, Defendant's Memorandum at 17,

because plaintiff's fraudulent inducement claim had nothing to do with employment. It had only to do with plaintiff's objection to selling his shares in defendant back to defendant. "His claims relate not to his continuing employment under the employment agreement, but to his ownership interests under the amended operating agreement." *Id.* at 316. As to this provision, however, the new agreement was the same as the old agreement, so no loss was possible. *Id.* The court did state in *dictum* that "plaintiff was an employee at will, and as such, could be terminated at any time. In such circumstances, any reliance on representations of future intentions, such as job security or future changes, would be deemed unreasonable as a matter of law . . . ." *Id.* (citation omitted).

*Marino v. Oakwood Care Center*, 5 A.D.3d 740, 774 N.Y.S.2d 562 (N.Y. App. 2d Dept. 2004), rejected the at-will plaintiff's fraudulent inducement claim for the deferral of her starting date at a facility under construction when she was hired.

*Arias v. Women in Need, Inc.*, 274 A.D.2d 353, 712 N.Y.S.2d 103 (N.Y. App. 1st Dept. 2000), held that plaintiff could not set out a valid fraud claim when his supporting affidavits contradicted his complaint on a key element ("While the complaint may have set out the bare allegation that defendant had a present intent to deceive when it extended the employment offer to him, plaintiff's subsequent supporting affidavits contradicted that view"). The court never identified the fraud plaintiff alleged, but stated: "Plaintiff could not establish the reasonable reliance element since the offered employment was at-will . . . ." It is thus not clear what plaintiff was induced to do.

All of these cases are entirely dissimilar to the compensation claim in the case at bar. The proposition defendant seeks to advance through these vehicles is refuted in the following section.

22

2.    **Plaintiff's At-Will Status is Irrelevant Under New York Law**

Plaintiff has pleaded a claim of fraudulent concealment as to a matter outside his indefinite-term contract of employment: the fraudulent inducement of plaintiff to continue working for defendant past the end of 2003 by holding out the prospect of a virtually certain prospect of a bonus outside of its indefinite-term employment contract with plaintiff, while having special knowledge of its scheme to fire plaintiff, while in a special position of trust as plaintiff's employer, while concealing the information that it alone knew, and while aware that plaintiff was relying on the availability of the bonus and for that reason would not be likely to pursue other employment.

Defendant's position seems to be that at-will employees have no cause of action for fraud as to any matter outside their indefinite-term employment contracts even where the cause of action does not implicate New York's at-will doctrine.  That is not the law as to fraud involving compensation.  *Smalley v. Dreyfus Corp.*, 40 A.D.3d 99, 103–04, 832 N.Y.S.2d 157, 160 (N.Y. App. 1st Dept. 2007), stated: "However, employment-at-will does not bar a cause of action for fraudulent inducement so long as the misrepresentation involves an existing fact and is not a promise as to future or continued employment. . . . Thus, an action for fraud can exist so long as it concerns an injury and damages separate and apart from the employee's termination."

*Freedman v. Pearlman*, 271 A.D.2d 301, 304–05, 706 N.Y.S.2d 405, 408–09 (N.Y. App. 1st Dept. 2000), held that an at-will employee could maintain such a fraud claim:

> As to the cause of action for fraud, we find that Freedman has adequately stated a cause of action against the defendants that is sufficiently independent from his cause of action for breach of contract (*see, First Bank of the Americas v. Motor Car Funding*, 257 A.D.2d 287, 291–292, 690 N.Y.S.2d 17) based on his allegation that defendants deliberately concealed the amount of income received from Bally's so that the one-third share Freedman was allegedly entitled to by contract was undercounted.
>
> Additionally, even if Freedman were unable to prove any contractual entitlement to a percentage of all or part of any monies received by defendants from Bally, he has

23

> nevertheless stated a cause of action in fraud based on Pearlman's alleged deceit concerning Gemini II's income. Aside from his cause of action for breach of contract, Freedman has alleged that he relied to his detriment on the alleged misinformation concerning the amounts received by defendants in continuing his employment, as he was encouraged to do by Pearlman, in spite of the fact that he could have earned more elsewhere. Even assuming that defendants had no contractual obligation to share those monies with plaintiff, if they were encouraging plaintiff to remain in their employ based on the representation that he was receiving an appropriate bonus based on overall income, they had an obligation not to affirmatively deceive plaintiff concerning what percentage he was actually receiving, so that plaintiff could make an informed decision as to whether to remain in defendant's employ.

*Freedman* is quite close to plaintiff's claim.

*Steigerwald v. Dean Witter Reynolds, Inc.*, 107 A.D.2d 1026, 1026–27, 486 N.Y.S.2d 516, 517–18 (N.Y. App. 4th Dept. 1985), is another case similar to plaintiff's. The court held that it was an open question whether plaintiff was an at-will employee. Nevertheless, the court proceeded to plaintiff's claim that defendant made fraudulent misrepresentations to him, on which he relied to his detriment. The court stated: "Plaintiff alleges that Doolan, a former vice president of Dean Witter, represented that Dean Witter intended to open an office in Syracuse, that its executive committee had approved the opening of such office and the hiring of plaintiff, and that Doolan knew at the time he made those representations that they were not true. He claims that such representations were made for the purpose of inducing him to resign his position and that, in reliance on those representations, he resigned his position to his detriment." 107 A.D.2d at 1026, 486 N.Y.S.2d at 517–18. The court held: "A cause of action in fraud may be maintained where the allegations of wrongdoing are distinct from those giving rise to the breach of contract claim and relate to facts extraneous thereto." (Citation omitted.) The court reinstated plaintiff's claim for punitive damages. This, too, is strikingly similar to plaintiff's claim.

The Second Circuit agrees. *Stewart v. Jackson & Nash*, 976 F.2d 86, 88 (2d Cir. 1992), held that an at-will employee can pursue a fraud claim for injuries caused by fraudulent misrepresentation that are distinct from the injuries caused by her termination:

Stewart's alleged injuries, on the other hand, commenced well before her termination and were, in several important respects, unrelated to it. According to the complaint, Jackson & Nash's misrepresentations caused Stewart, a budding environmental lawyer, to leave a firm with an environmental practice and spend two years at one in which she was largely unable to work in her chosen specialty. The resulting damage to her career development was independent of her later termination from Jackson & Nash and began while she was still at the firm. As stated in her complaint, Stewart's "career objective—continuing to specialize in environmental law— was thwarted and grossly undermined *during* her employment with Jackson." (Emphasis added). Although *Murphy* precludes an award of damages for injuries caused by her termination, it does not prevent her from recovering for injuries that resulted from her reliance on the defendants' false statements.

Defendant did not cite *Stewart*, *Smalley*, *Freedman*, *Steigerwald*, or any similar decision.

Similarly, LEE S. KREINDLER, BLANCA I. RODRIGUEZ, DAVID BEEKMAN, AND DAVID C.

COOK, 14 NEW YORK PRACTICE SERIES—NEW YORK LAW OF TORTS (2006), states in § 1.72

(Fraud—Intent or fraudulent inducement in contract claims):

In the course of contract negotiations, however, a false representation of a present fact may give rise to a separate claim for fraudulent inducement. Generally speaking, if a promise is made with a preconceived and undisclosed intention of never performing it, it constitutes a misrepresentation of a material existing fact upon which a tort action for fraudulent inducement may be predicated. A cause of action for fraudulent inducement may thus be sustained on the basis of an allegation that defendant made a promise to undertake some action *separate* and *apart* from his or her obligations under the express terms of the contract, if it is also alleged that he or she made the promise with no intention of making good on the commitment.

(Emphases in original; footnotes omitted.)

New York law is clear: when the fraud relates to compensation, the plaintiff's at-will status does not matter. Defendant did not mention this law.

### 3.     Proof of a Fiduciary Relationship is Not Required

Defendant's Memorandum at p. 16 contends that plaintiff is required to show that defendant was in a fiduciary relationship with plaintiff. Some decisions have loosely and incorrectly said that a fiduciary relationship is an element of negligent misrepresentation claim under New York law. A fiduciary relationship is not, however, a required element of the

fraudulent concealment claim pleaded here. Under the pertinent case law, evidence of a duty of care, or a showing of privity or near-privity as defined in New York, are only examples of appropriate means of satisfying the requirement of a special relationship or duty to disclose required for a fraudulent concealment claim. Plaintiff has pleaded a well-recognized means of supporting a fraudulent concealment claim.

*White v. Guarente*, 43 N.Y.2d 356, 362–63, 372 N.E.2d 315, 319, 401 N.Y.S.2d 474, 478 (N.Y. 1977), stated: "As to duty imposed, generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage . . . but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all . . . ." (Citations omitted.) Privity or near-privity can be sufficient to satisfy this requirement. *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 424, 539 N.E.2d 91, 94, 541 N.Y.S.2d 335, 338 (N.Y. 1989), stated: "The long-standing rule is that recovery may be had for pecuniary loss arising from negligent representations where there is actual privity of contract between the parties or a relationship so close as to approach that of privity." The court rejected some broad contentions of liability for negligent misrepresentation: "We have declined to adopt a rule permitting recovery by any "foreseeable" plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen by the defendants . . . ." 73 N.Y.2d at 424–25, 539 N.E.2d at 95, 541 N.Y.S.2d at 339 (citation omitted). It continued:

> Instead, we have required something more, and we have articulated the
> requirement in various ways. In *Glanzer*, it was described as reliance by the plaintiff that

26

was "the end and aim of the transaction." (233 N.Y., at 238–239, 135 N.E. 275; *see also*, *White v. Guarente*, 43 N.Y.2d 356, 362, 401 N.Y.S.2d 474, 372 N.E.2d 315 ["one of the ends and aims of the transaction."].) In *Ultramares*, we spoke of a bond "so close as to approach that of privity". (255 N.Y. at 182-183, 174 N.E. 441.) Most recently, in *Credit Alliance*, we spelled out the following criteria for liability: (1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance (*Credit Alliance Corp. v. Andersen & Co.*, 65 N.Y.2d at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110).

Applying this test to the facts pled, the court stated: "Not unlike the bean weighers in *Glanzer*, defendants allegedly rendered their reports with the objective of thereby shaping this plaintiff's conduct, and thus they owed a duty of diligence established in our law at least since *Glanzer* not only to Anderson who ordered but also to the school district who relied." 73 N.Y.2d at 426, 539 N.E.2d at 95–96, 541 N.Y.S.2d at 340. Plaintiff's allegations clearly fit within this rubric, satisfying the "special relationship" or "duty to disclose" element of his fraudulent concealment claim.[22]

The Second Circuit decisions track these developments in New York courts. *Stewart v. Jackson & Nash*, 976 F.2d at 90, upheld plaintiff's allegation of fraudulent inducement but rejected plaintiff's allegation of negligent misrepresentation because she had not shown a fiduciary relationship. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 158 (2d Cir. 1995), held: "Under New York law, a plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 584 (2d Cir. 2005), reconciled these holdings with the New York case law cited above.

---

[22] *Ossining Union Free School District* held that its rule was general: "Nor does the rule apply only to accountants. We have never drawn that categorical distinction, and see no basis for establishing such an arbitrary limitation now." 73 N.Y.2d at 424, 539 N.E.2d at 94, 541 N.Y.S.2d at 338.

*Banque Arabe* also stated: "In business negotiations, an affirmative duty to disclose material information may arise from the need to complete or clarify one party's partial or ambiguous statement . . . or from a fiduciary or confidential relationship between the parties . . . . Such a duty may also arise—as claimed here by Banque Arabe—where: (1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Id.* at 155 (citations omitted). That is exactly what the Complaint pleads. Complaint, ¶¶ 78–84.

### 4.    Defendant's Cases Do Not Support its Motion

Defendant's cases not only do not support its argument; they support plaintiff's argument. *Lam v. American Express Co.*, 265 F. Supp. 2d 225, 230 (S.D. N.Y. 2003), involved an at-will employee and did state that at-will employees do not have a fiduciary relationship with their employers,[23] as defendant states in its Memorandum at 16 but which is irrelevant for the reasons stated immediately above. However, the case went on to hold that plaintiff could pursue a fraud claim with respect to fraudulent misrepresentations as to his bonus: "an at-will employee can maintain a fraud claim when the injuries and resulting damages alleged are distinct from the effects of termination or failure to perform the terms of the employment contract." *Id.* at 231. Defendant did not mention this holding. *Clifton v. Vista Computer Services, LLC*, 2002 WL 1585550 (S.D. N.Y. July 16, 2002, No. 01 CIV. 10206 (JSM)),[24] referred at defendant-cited p. *5 to the lack of a fiduciary duty, but the observation was made in connection with the claim for negligent misrepresentation, not in connection with the fraud claim. The court agreed that in some circumstances a plaintiff may claim fraud for deceit independent of the contract, for the

---

[23] See the next section of this Memorandum.

[24] The decision can be found starting at unmarked p. 26 of defendant's unindexed Appendix 3, and is the second of the two cases in the Appendix.

purpose of inducing plaintiff to enter into the contract.  *Id.* at pp. *3 and *4.  *Serow v. Xerox Corp.*, 166 A.D.2d 917, 560 N.Y.S.2d 575 (N.Y. App. 4th Dept. 1990), stated that defendant did not owe plaintiff a fiduciary duty, but held that the record made clear plaintiff was not misled. *Budet v. Tiffany & Co.*, 155 A.D.2d 408, 547 N.Y.S.2d 81 (N.Y. App. 2d Dept. 1989), involved a claim for breach of fiduciary duty, and in that context the court stated that an employer does not owe a fiduciary duty to an at-will employee.  *Jelks v. Citibank N.A.*, 2001 WL 50891 and 2001 U.S. Dist. LEXIS 381 (S.D. N.Y. Jan. 22, 2001, No. 99 CIV. 2955 (JSM)),[25] was a summary-judgment decision, not a decision on a motion to strike, and involved the erroneous use of a fraudulent concealment theory to challenge a termination.  This is not comparable to plaintiff's use of the theory to challenge denial of an inducement collateral to the indefinite-term employment contract.  Even so, the court recognized that at-will employees may bring claims for fraud: "Under very limited circumstances, however, at-will employees can recover for fraudulent statements that induce them into accepting positions of employment by showing: (1) a material false representation; (2) scienter; (3) reasonable reliance; (4) damages; and, relevant here, (5) that the fraudulent misrepresentation was collateral or extraneous to the employment agreement." *Id.*, WestLaw p. *3, LEXIS p. *9 (citations omitted).

Because plaintiff does not challenge the at-will status of his employment, the authorities in defendant's footnote 6 do not require discussion.

### 5.  Plaintiff Has Adequately Pled the Elements of a Fraudulent Concealment Claim

*Banque Arabe* set forth the elements of a fraudulent concealment claim under New York law:

---

[25] The decision can be found at the beginning of defendant's Appendix 7.  Defendant's use of the January 19, 2001 date is based on the date of decision, not the date of filing.

To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. . . . To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information. . . . Under New York law, each element of a fraud claim must be shown by clear and convincing evidence.

57 F.3d at 153 (citations omitted).[26]

Plaintiff adequately pled that "(1) the defendant made a material false representation" through its ongoing representations that the bulk of employee compensation will be in the form of a discretionary bonus awarded by management. Complaint, ¶¶ 78, 79, and 83. Paragraph 83 stated:

83.     Defendant was well aware that bonuses are very important to its Managing Directors, that the bonuses form the bulk of their compensation, and that they would not continue working for it if they were informed they would not receive a bonus. Defendant's officials well knew plaintiff's expectations of a bonus, well knew that these expectations were both reasonable and standard in the field, and encouraged them throughout 2003 and in 2004 prior to January 14, 2004.

A multitude of communications to employees contain such statements. There will not be any room for reasonable dispute about these ongoing assurances. To the extent that defendant demands lists of all such communications it provided to bankers, that calls for the products of discovery. Defendant—not plaintiff—has access to these communications and can compile its own listing whenever it wants. Plaintiff cannot do so now, without discovery. Plaintiff has a copy of an exemplar dated February 8, 2000,[27] and there is nothing materially unique about this exemplar. What made the stream of representations fraudulent as to plaintiff was defendant's intent to deceive plaintiff into continuing to work for it past the end of 2003. These allegations are sufficient to plead this element of fraudulent concealment.

---

[26] Defendant cites *Ferguson v. Lion Holdings, Inc.*, 312 F.Supp.2d 484, 496 (S.D. N.Y. 2004), to the same effect.

[27] A copy is attached to the Affidavit of Richard Seymour as Attachment A.

30

Plaintiff adequately pled that "(2) the defendant intended to defraud the plaintiff thereby," by pleading a course of action and a plan to undermine plaintiff's performance and the appearance of his performance. Complaint, ¶ 80, summarizes and incorporates a painstaking list of details alleged in ¶¶ 34–43, 45–51, 52–58, 59–62, 63–65, and 66–73, and adds the details in ¶ 80(c). In addition, the allegations in Part H of the Complaint (Defendant's Cover-Up), ¶¶ 95–124, specify false statements that must have originated within defendant during the run-up to the denial of the bonus, are part of the same course of fraudulent dealing, and provide further background allegations of fraud. They include numerous allegations of defendant's deceptive descriptions of events prior to the denial of the bonus, lending support to the allegations of ¶ 80. See ¶¶ 90(a), (b), (e), (g), (h), (i), (j), (n), (o), (p), (r), (t), (v), (w), (x), (y), (z), (aa), (bb), and (cc), ¶ 97, ¶¶ 99–102 (in the event that discovery shows that the basis for any of the defendant's representations originated prior to the denial of the bonus), ¶¶ 104–105 (in the event that discovery shows that the basis for any of the defendant's representations originated prior to the denial of the bonus), and ¶¶ 108–116. These highly specific allegations adequately plead matters from which an intent to deceive can be inferred. These allegations are sufficient to plead this element of fraudulent concealment.

Plaintiff adequately pled that "(3) the plaintiff reasonably relied upon the representation." The Complaint alleges that bankers customarily receive most of their compensation in the form of bonuses, that defendant encouraged the expectation of bonuses, and that plaintiff's expectations and reliance were reasonable. Complaint, ¶ 78. It alleges that "[i]t is usual and customary in the investment banking business to pay employees a bonus when they have worked the entire year." Complaint, ¶ 79. It alleges: "Plaintiff would not have continued working for defendant in 2003 if he had known he would be denied his bonus, and would have sought

31

comparable job opportunities while still employed and, therefore, still readily employable."

Complaint, ¶ 81. It alleges: "During 2003 and early January 2004, plaintiff did not pursue

inquiries from those with potential jobs to offer, or follow up on leads with respect to such

companies, because he expected to continue working for defendant until he retired." Complaint,

¶ 82. It alleges:

> 83.    Defendant was well aware that bonuses are very important to its Managing
> Directors, that the bonuses form the bulk of their compensation, and that they would not
> continue working for it if they were informed they would not receive a bonus.
> Defendant's officials well knew plaintiff's expectations of a bonus, well knew that these
> expectations were both reasonable and standard in the field, and encouraged them
> throughout 2003 and in 2004 prior to January 14, 2004.

Complaint, ¶ 83. It alleges that: "Plaintiff discussed his expectations of continued employment

for defendant with James DeNaut and Jacques Brand, and told them that he hoped to spend the

rest of his career there." Complaint, ¶ 84. It alleges, upon information and belief, that "all other

bankers in the Media Investment Banking Group who had worked for defendant through the bulk

of 2003 were paid bonuses in February 2004," Complaint, ¶ 85, even though defendant fired a

number of them after they received their bonuses. Complaint, ¶ 86. These allegations are

sufficient to plead this element of fraudulent concealment.

Plaintiff adequately pled that "(4) the plaintiff suffered damage as a result of such

reliance." Plaintiff continued to work for defendant, Complaint, ¶ 81, as defendant had hoped to

accomplish by its manipulation. Plaintiff had other opportunities that he did not pursue or follow

up, in reliance on his expectations of a bonus. Complaint, ¶¶ 81, 82. These allegations are

sufficient to plead this element of fraudulent concealment.

Plaintiff adequately pled that "(5) the defendant had a duty to disclose the material

information." Indeed, plaintiff has met the higher standard of showing a relationship of near-

privity. See the discussion in Part E(3) above, which is incorporated here by reference.

Plaintiff's allegations clearly satisfy the "special relationship" or "duty to disclose" element of his fraudulent concealment claim.

See also the discussion in Part E(3) above as to plaintiff's satisfaction of the alternative test described by *Banque Arabe*.

## 6.    Plaintiff Has Satisfied Rule 9(b), Fed. R. Civ. Pro.

Rule 9(b), Fed. R. Civ.Pro., states:

> (b) Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The Second Circuit's classic formulation of the requirement of the rule is:

> To pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation. . . . Although scienter need not be alleged with great specificity . . . there must be some factual basis for conclusory allegations of intent.  Allegations of scienter are sufficient if supported by facts giving rise to a "strong inference" of fraudulent intent. . . .

*Ouaknine v. MacFarlane*, 897 F.2d 75, 79–80 (2d Cir. 1990) (citations omitted).

This does not necessarily require a great deal of pleading.  WRIGHT & MILLER, 5A

FEDERAL PRACTICE AND PROCEDURE § 1298 (West Group, 2007), states:

> The proper balance to be struck between the pleading simplicity sought in Rule 8 and the particularity required by Rule 9 is demonstrated by the illustrative fraud claim set out in Official Form 13, which is expressly declared to be a sufficient pleading by Rule 84.  According to the language of the Form, it is proper merely to allege that the plaintiff seeks to have a conveyance set aside on the ground that "Defendant C.D. on or about … conveyed all his property, real and personal to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness evidenced by the note above referred to."  In most instances, however, the plaintiff's pleading will be significantly more elaborate.
>
> One court of appeals indicated, in upholding a simple allegation of this type a few years after the adoption of the federal rules, that the circumstances constituting the alleged fraud could not have been pleaded with greater particularity without pleading "evidence," a note sounded by a number of other courts.  More recently, Judge Scheindlin echoed this holding when she observed that a plaintiff can comply with Rule 9(b) in just one sentence,[11] besting even Judge Easterbrook's suggestion, speaking for the

Seventh Circuit, that Rule 9(b) requires the plaintiff to plead at most the "first paragraph of any newspaper story."[12]

_____

[11]    Judge Scheindlin's observation: *In re Initial Public Offering Secs. Litigation*, D.C.N.Y.2003, 241 F.Supp.2d 281, 327.

[12] Judge Easterbrook's observation: *DiLeo v. Ernst & Young*, C.A.7th, 1990, 901 F.2d 624, 627.

The Second Circuit has cited this section and agreed: "Rule 9(b), however, must be read together with rule 8(a) which requires only a 'short and plain statement' of the claims for relief." *Ouaknine v. MacFarlane*, 897 F.2d at 79, and cases there cited; *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994).

In a case decided after defendant filed its Motion, the Second Circuit has made clear that the specificity requirements of Rule 9(b) are relaxed where the cause of action involves a form of fraud in which the facts are peculiarly within defendants' possession.  *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, _ F.3d __, 2007 WL 1989336 (2d Cir. July 11, 2007, No. 05-5132-CV),[28] a securities fraud case, stated at pp. *8 and *9:

> Because a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b). . . . A claim of manipulation, however, can involve facts solely within the defendant's knowledge; therefore, at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim. . . .
>
>  Accordingly, a manipulation complaint must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants.

(Citations omitted.)

This is not new.  *Rombach v. Chang*, 355 F.3d 164, 175 n.10 (2d Cir. 2004), also disapproved of requiring too much specificity where information was largely in the possession of defendants: "The district court viewed these allegations as insufficient because plaintiffs failed to 'indicate when and where these statements were made.' . . . However, we agree with plaintiffs

_____

[28] A copy is attached hereto as Attachment A.

that the district court's approach would require them to specifically allege the method by which defendants conveyed the fraudulent information to the analysts; at least at this early stage in the litigation, that information is likely to be exclusively within the control of defendants and the analysts." 2 MOORE'S FEDERAL PRACTICE, 3D ED. § 9.03[1][g] at p. 9–24 (Matthew Bender, 2003), states: "However, when the facts constituting fraud are particularly within the adverse party's knowledge or are otherwise inaccessible to the pleader, Rule 9(b) may be satisfied by pleading fraud on information and belief, if the pleader identifies the available information on which the allegation of fraud is founded, as well as the efforts made to obtain additional information." (Footnote omitted.) The Second Circuit approved the version of this formulation in an earlier edition of the treatise: "While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) (footnote omitted). *Accord, DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("There is a recognized exception to this rule, however, that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based."), and cases there cited; *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir. 1986) ("Allegations of fraud cannot ordinarily be based "upon information and belief," except as to "matters peculiarly within the opposing party's knowledge." . . . To satisfy Rule 9(b) in the latter instance, the allegations must be accompanied by a statement of the facts upon which the belief is founded. . . ."), and cases there cited.

Plaintiff has alleged "the time, place, speaker, and . . . even the content of the alleged misrepresentation" in the paragraphs of the Complaint specified in the preceding section. The

law is clear that allegations of corporate speakers and corporate official speakers satisfy the requirements of Rule 9(b). These allegations are similar to the allegations as to the offering statement that the Second Circuit found adequate in *Ouaknine*: "We have held that reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation where, as here, defendants are insiders or affiliates participating in the offer of securities." *Id.* at 80 (citations omitted). Plaintiff has diligently pieced together a strong chain of allegations that do not readily lend themselves to innocent explanations. As *Ouaknine* stated in upholding the adequacy of similar allegations of a strong chain of circumstantial evidence: "It is difficult to imagine how such events could have occurred if the defendants who controlled them had not actually intended to defraud." *Id.* at 81.

Plaintiff has adequately met the requirements of Rule 9(b), and this part of defendant's Motion should be denied.

### F.    Plaintiff Has Adequately Pled a Breach of the Duty of Good Faith and Fair Dealing as to His Bonus

Plaintiff's claim of a breach of the duty of good faith and fair dealing applies only to the denial of his bonus, and is a cause of action complementary to his claim of fraudulent concealment as to the denial of his bonus. As with his claim of fraudulent concealment, this claim would be the same even if plaintiff had continued working. The termination was simply defendant's choice of mechanism for breaching the duty of good faith and fair dealing, and is not necessary for the claim. *Compare* Complaint, ¶¶ 139 and 140.

While defendant's bad-faith holding out of the bonus as an inducement to plaintiff to continue working past the end of 2003, while then knowing that it would never pay that bonus, may not be necessary to the claim, such facts make the claim far stronger.

36

As pleaded, this cause of action for the virtually-certain benefit that on information and belief was provided to all other bankers in his unit, shortly after its denial to him, is in aid of the indefinite-term contract of employment, and does not supplant its at-will nature.

Defendant's Motion as to this claim is similarly a mirror image of its Motion as to the fraudulent concealment claim, but without the rule 9(b) argument. Defendant pretends that this claim relates to plaintiff's termination, not the denial of plaintiff's bonus, similarly argues that at-will employees may not assert such a claim, and similarly presents inapposite cases. Defendant's Memorandum at 19–20.

To shorten the length of this necessarily long Memorandum, plaintiff incorporates the discussion in Part E above. The counterpart to *Stewart* with respect to this claim is *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109, 112 (2d Cir. 1985): "Wakefield may not, therefore, recover for his termination *per se*. However, the contract for payment of commissions creates rights distinct from the employment relation, and, whether or not Paragraph J is still effective, obligations derived from the covenant of good faith implicit in the commission contract may survive the termination of the employment relationship." *Wakefield* involved a salesman fired to avoid the payment of his commissions. The New York Court of Appeals has cited this part of the decision with approval: *Wieder v. Skala*, 80 N.Y.2d 628, 637, 609 N.E.2d 105, 109, 593 N.Y.S.2d 752, 757 (N.Y. 1992). *Wieder* involved extreme facts, and the obligation of an associate in a law firm to report unethical behavior. Nevertheless, the principle is plainly sound: where an employee works in the expectation of payment and the employer induces the employee to work for the payment while knowing of the employee's reliance and concealing its intent to deny the payment for past work, the right to payment should not depend on whether the

employee has a fixed term of employment. "At will" status has nothing to do with the underlying right.

Plaintiff does not dispute that a valid contract is necessary before there can be a claim for breach of the implied covenant of good faith and fair dealing. There is thus no need to discuss defendant's authorities at the bottom of p. 18 and the top of p. 19 of its Memorandum. Plaintiff had an at-will employment contract, with a collateral representation by defendant that a major part of his compensation would be in the form of his bonus. He had no contractual right to be allowed to work to December 31, 2003, the end of the year for which the bonus would be awarded.[29] Having worked for that period, however, he did have a contractual right to be considered for a bonus. The bonus representations state that the amount would be discretionary and could be zero. Having become entitled to consideration, he had a right to have that discretionary determination made in accordance with the implied covenant of good faith and fair dealing.

Defendant's authorities in the first full paragraph on p. 19 of its Memorandum are inapposite because none of them remotely approach the special circumstances pled here. *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86, 88 (2d Cir. 1996), was an appeal from the District of Vermont and was decided under Vermont law. *I.S. Sahni, Inc. v. Scirocco Financial Group, Inc.*, 2005 WL 2414762 (S.D. N.Y. Sept. 28, 2005, No. 04 Civ. 9251 RMB RLE),[30] did not involve an employment relationship, but a contract between two businesses for the placement of insurance terminable by either side at will, and the court merely held that there could be no good-faith/fair-dealing claim as to the end of the relationship where it was terminable at will. *Kendall*

---

[30] The decision can be found beginning at unmarked p. 18 of defendant's Appendix 6. It is the last of the four decisions in the Appendix.

*v. Fisse*, 2004 WL 1196811 (E.D. N.Y. May 25, 2004, No. 00 CV 5154SJ),[31] involved an

unsuccessful claim that the at-will plaintiff had a right to continued employment because of the

implied covenant of good faith and fair dealing.  *Graff v. Enodis Corp.*, 2003 WL 1702026 (S.D.

N.Y. March 28, 2003, No. 02 CIV. 5922 (JSR)),[32] stated at p. *1 n.2 cited by defendant:

"Plaintiff's fourth cause of action alleges a breach of the covenant of good faith and fair dealing,

which cannot lie where the defendant has faithfully complied with the terms of the contract. . . .

Additionally, no such duty of good faith and fair dealing is owed plaintiff as an at-will employee.

. . . "  (Citations omitted.)  *Madera v. Metropolitan Life Ins. Co.*, 2002 WL 1453827 (S.D. N.Y.

July 3, 2002, No. 99 CIV. 4005 (MBM)),[33] held at pp. *8 and *9 that plaintiff had valid

discrimination and retaliation claims but that his statutory rights could not be imported into an

implied contract to give him contractual rights.  The court found that plaintiff had a pure at-will

relationship, and that there was no contractual limitation on its actions.  The court's holding that

there was no implied covenant of good faith and fair dealing for at-will employees must be seen

in light of the fact that the only possible application of such a covenant at that point would have

been to give him a right of continued employment.  *Conners v. Miller Advertising Agency, Inc.*,

1997 WL 1102028 (S.D. N.Y. Dec. 18, 1997, No. 96 CIV. 6992 (PKL)),[34] at defendant-cited p.

*4 involved the at-will plaintiff's effort to challenge his termination by alleging a breach of the

implied covenant of good faith and fair dealing.

---

[31] The decision can be found beginning at unmarked p. 21 of defendant's unindexed Appendix 7.  It is the last of the three decisions in the Appendix.

[32] The decision can be found beginning at unmarked p. 20 of defendant's unindexed Appendix 5.  It is the last of the three decisions in the Appendix.

[33] The decision can be found beginning at unmarked p. 27 of defendant's unindexed Appendix 8.  It is the last of the three decisions in the Appendix.

[34] The decision can be found in the beginning of defendant's Appendix 4.

None of defendant's employment cases involve a claim independent of termination, none involve a lengthy course of bad faith, none involve intentional deceit by an employer, none involve a promise of consideration for a bonus in a discretionary amount, none involve the virtually certain prospect of a large bonus, and none involve peers whose own bonuses establish what the good faith and fair dealing would require. Defendant's authorities have nothing to do with this case.

### G.    Defendant's Motion is Moot as to the New York City Human Rights Law

Defendant's Motion contends at pp. 20–22 that plaintiff's discrimination and retaliation claims under the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, §§ 8–101 *et seq.*, should be dismissed because plaintiff did not allege he had received a Notice of Administrative Dismissal from the State Division of Human Rights.

Plaintiff received the dismissal on July 9, 2007, and is moving for leave to supplement his Complaint to allege its receipt. This part of defendant's Motion should be denied as moot.

### H.    Defendant's Rule 12(f) Motion to Strike Should Be Denied

#### 1.    Defendant's Motion to Strike is Inconsistent with Other Parts of Its Motion

Defendant has moved to strike, as irrelevant and inflammatory, the background facts in the Complaint, ¶¶ 14 and 95–124, that allege its cover-up of its actions in a false filing with the U.S. Equal Employment Opportunity Commission. Defendant's Memorandum at pp. 22–25. Simultaneously, defendant has moved to strike plaintiff's fraudulent concealment claim for an asserted failure to allege enough to show fraud, and has moved to strike all fraud allegations as insufficiently detailed to meet the requirements of Rule 9(b). Defendant is asserting inconsistent positions.

### 2.    <u>Motions to Strike are Disfavored</u>

Motions to strike are disfavored.  The law of this Circuit is as follows:

> In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible. . . . The Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone. Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing. . . .

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citations omitted).

The court added that "ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Id.* (citations omitted).

Treatises agree.  2 MOORE'S FEDERAL PRACTICE, § 12.37[1] states at p. 12–93 that motions to strike are disfavored.  It adds that allegations that are relevant and material to the issues in the litigation are not subject to being struck as impertinent or scandalous. *Id.*, §§ 12.37[3] at pp. 12–95, 12–97.  WRIGHT & MILLER, 5C FEDERAL PRACTICE AND PROCEDURE § 1382 (Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter) (West Group, 2007), states:

> The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter.  However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.

*                    *                    *

> Finally, "scandalous" matter is that which improperly casts a derogatory light on someone, most typically on a party to the action.  It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events

41

that are relevant to the action. Nonetheless, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations.

But there are several limitations on the court's willingness to strike scandalous allegations. For example, it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action. As a result, courts have permitted allegations to remain in the pleadings when they supported and were relevant to a claim for punitive damages. Moreover, if the party seeking the elimination of the scandalous matter was the "first to hurl epithets," the district judge will deny the motion to strike, presumably applying something in the nature of a "clean hands" notion. It should be noted that the motion to strike scandalous matter in Rule 12(f) largely is repetitious of the provision in Rule 11 permitting a pleading containing "scandalous or indecent matter" to be "stricken as sham and false."

The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available. Of course, if the complaint will not be submitted to the jury, or if the case will be tried to the court, or if the pleadings will be subject to continuing "judicial supervision," there is less need to strike scandalous allegations. The federal courts also consider the character of the matter in question. If it is highly objectionable, particularly when it is scurrilous or impugns the integrity of the court, the courts have been willing, in appropriate circumstances, to strike it from the record of the case as well as eliminate it from the pleading.

The remaining parts of this section of this Memorandum show the great relevance of the allegations in question.

### 3.    Defendant's Motion is Premature

In the event that discovery does not show an adequate factual basis for any of the allegations in ¶¶ 14 and 95–124 of the Complaint, plaintiff will seek leave to amend the Complaint and conform the allegations to what is shown in discovery. To the extent that defendant disagrees with plaintiff's assessment of what has been supported by discovery, defendant can move for summary judgment, or can move in limine to exclude this part of the Complaint from the jury, or to exclude whatever else it thinks may lawfully be excluded. There

would thus be no risk that the jury might be inflamed by unsupported allegations in the Complaint.

Such a course of action is preferable to ruling on questions of materiality and admissibility in advance of discovery. *Lipsky v. Commonwealth United Corp.*, 551 F.2d at 893.

### 4.    Plaintiff's Allegations of a Cover-Up Are Relevant to Declaratory Relief

Many of the representations alleged in ¶¶ 95–124 may have been used internally by defendant's officials to justify plaintiff's firing. If so, these damaging representations will have been disseminated within defendant, and plaintiff's peers who have remained there or who have gone elsewhere may have a tainted view of plaintiff. Credibility and reputation for productivity matter greatly within the investment banking field, and plaintiff may be harmed. Plaintiff has a right to explore such questions in discovery and show such a connection. He has requested declaratory relief, so that he will be protected from any adverse implications from these materials. For this purpose, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 5.    An Employer's Representations to the EEOC Are Relevant to Liability

Evidence that defendant lied to the government about the reasons for plaintiff's termination is not a small matter. The Supreme Court has held that even a simple false denial—an "exculpatory no"—is a criminal violation of 18 U.S.C. § 1001. *Brogan v. United States*, 522 U.S. 398, 400–06 (1998). Defendant's misrepresentations to the EEOC here went far beyond a mere denial of age discrimination or retaliation.

Misrepresentations to investigative agencies, and even simple discrepancies between employer's statements to investigative agencies and their later explanations, are highly probative of discrimination or retaliation. *EEOC v. Sears, Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir.

2001), reversed the grant of summary judgment to the Title VII defendant, noting that

defendant's latest explanation differed from its Operations Manager's representations to the

EEOC, and stating "as an operations manager, she must have known the importance of

responding truthfully and completely to an EEOC discrimination charge." *Id.* at 853.

*Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676–77 (7th Cir. 2003), reversed the

grant of summary judgment to the ADEA defendant, relying in part on a material discrepancy

between defendant's original explanation provided to the Illinois Department of Human Rights

and the defendant's current explanation. *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1382

(10th Cir. 1994), reversed the grant of summary judgment to the Title VII defendant, holding that

the discrepancy between defendant's explanation to the EEOC and its later explanation "does

tend to show pretext," but "we do not believe that the change itself constitutes an adverse

employment action."[35] *Durley v. APAC, Inc.*, 236 F.3d 651, 656–57 (11th Cir. 2000), reversed

the grant of summary judgment to the Title VII defendant, holding that the jury could reasonably

find discrimination from evidence of plaintiff's superior qualifications, evidence that the

defendant had falsely denied the existence of a job description prior to the EEOC's request for

the description, and evidence that it had provided the EEOC with a job description that boosted

the relative qualifications of the person selected.[36]

### 6.     An Employer's Deceit is Relevant to Liability

Evidence of deceit would automatically permit (but not require) the factfinder to draw the

inference that the lies were intended to cover up discrimination and retaliation, and would bar the

entry of summary judgment on the pretext issue as to plaintiff's discrimination and retaliation

---

[35] Defendant's Motion ignores the distinction between relevant background facts and causes of action drawn by the court in *Cole*.

`      [36] These cases from four Circuits are illustrative but not exhaustive.

claims.  All evidence of deceit is extremely valuable in proving claims involving intent.  *Reeves*

*v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147–48 (2000), an ADEA case, stated:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.   Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."  *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992); *see also Wilson v. United States*, 162 U.S. 613, 620–621, 16 S. Ct. 895, 40 L. Ed. 1090 (1896); 2 J. WIGMORE, EVIDENCE § 278(2), p. 133 (J. Chadbourn rev. ed. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

(Some citations omitted.)  The Court cited this discussion in a later case holding that

circumstantial evidence should be treated like direct evidence in meeting the "motivating factor"

requirement in "mixed motive" employment discrimination cases.  *Desert Palace, Inc. v. Costa*,

539 U.S. 90, 99–100 (2003), a Title VII case, stated:

> We have often acknowledged the utility of circumstantial evidence in discrimination cases. For instance, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), we recognized that evidence that a defendant's explanation for an employment practice is "unworthy of credence" is "one form of circumstantial evidence that is probative of intentional discrimination."  *Id.*, at 147, 120 S. Ct. 2097 (emphasis added).  The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." . . .

(Citation omitted.)  *Mandell v. County of Suffolk*, 316 F.3d 368, 380–81 (2d Cir. 2003), a Title

VII and New York Human Rights Act case, reversed the grant of summary judgment to the

defendant County because evidence of a cover-up helped show that the defendant's proffered

nondiscriminatory reason was a pretext for discrimination.  Similarly, *West v. Nabors Drilling*

*USA, Inc.*, 330 F.3d 379, 390 (5th Cir. 2003), held that a false affidavit helped show that the

defendant's proffered nondiscriminatory reason was a pretext for discrimination.  Under these standards, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 7.     Deceit Shows Animus, and Animus is Relevant to Retaliation

Evidence that defendant lied to the government about the reasons for plaintiff's termination would show the strength of defendant's determination to fight plaintiff's claim, and would make it more credible to the jury that defendant would engage in retaliation.  Under F.R.E. 404(b), "[e]vidence of other crimes, wrongs or acts . . . may, however, be admissible for . . . purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge . . . or absence of mistake or accident . . . ."  In *Miller-El v. Dretke*, 545 U.S. 231, 246 (2005), a case involving discriminatory peremptory challenges to jurors,[37] the Supreme Court emphasized the importance of evidence of deceit: "It would be difficult to credit the State's new explanation, which reeks of afterthought.  While the Court of Appeals tried to bolster it . . . the court's readiness to accept the State's substitute reason ignores not only its pretextual timing but the other reasons rendering it implausible."

Under these standards, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 8.     Deceit is Relevant to Credibility and Impeachment

Evidence that particular officials of defendant had knowingly participated in making a false filing with the government would impeach their testimony at trial and affect their credibility before the jury.  "Evidence of other crimes, wrongs, or acts has also been admitted to establish . . . consciousness of guilt, to corroborate crucial testimony . . . ."  MICHAEL H. GRAHAM, 1 HANDBOOK OF FEDERAL EVIDENCE, 5TH ED. (West Group, 2001), § 404.5 at p. 362.

---

[37] The Court cited *Reeves v. Sanderson Plumbing Products*, 545 U.S. at 241, underscoring the relevance of this decision to employment law.

Under this standard, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 9.    Deceit is Relevant to the Existence of a Long-Standing Scheme

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, would make it more credible to the factfinder that defendant had engaged in a lengthy plan to undermine plaintiff and deprive him of his bonus, after using the prospect of the bonus to induce him to work for defendant past the end of 2003, until defendant was ready to fire him.  This is directly relevant to plaintiff's claims for fraudulent concealment and for breach of the implied covenant of good faith and fair dealing, as well as to the discrimination and retaliation claims.

*Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004), a case brought under Title VII and 42 U.S.C. §§ 1981, 1983, 1985, and 1986, held that plaintiff's Second Amended Complaint "exceeds the Rule 8 floor."  The court set forth the Second Amended Complaint which included the allegations quoted below,[38] allegations going much farther than those defendant seeks to

---

[38] The Second Amended Complaint alleged at 81–87:

21. The interview was calculated to demean and impress upon plaintiff the racist nature of the interview

&ast;                    &ast;                    &ast;

30. During the period from January, 1997 through January 1998, without a reasonable belief of criminal activity, IAD conducted a criminal investigation into plaintiff's affairs. Commanded by McMahon, the criminal investigation involved surveillance of plaintiff in his neighborhood and contacting plaintiff's neighbors informing them that plaintiff was suspected of drug sales, money laundering and gun smuggling.

31. In furtherance of this investigation Capt Klusacek stated to Ms Brenda Bennie that plaintiff was living above his means and that IAD was investigating him for criminal charges.

strike herein.  Yet the Second Circuit approved this document, criticizing only its prolixity and the fact that it could have done more to specify which defendants engaged in which unlawful acts.  *Id.* at 80.

—————————————————————————————————————————

           *                  *                  *

      39. The taking of the sworn statement and the intentional deceit were part and parcel of NYSP policy and custom to deprive plaintiff of his constitutional rights in direct violation of 42 U.S.C. § 1983.

           *                  *                  *

      45. Upon information and belief, Spahl communicated with Masterson in IAD to repeatedly bring false charges against plaintiff. Both officers knew or should have known that there was no foundation for the charges. The bringing of false charges, administrative prosecution of the false charges, the bias nature of the Board that heard the charges and the conviction contrary to the evidence was part of a plan or scheme to terminate plaintiff's employment.

           *                  *                  *

      47. Upon information and belief, all defendants conspired to violate the constitutional rights and privileges of plaintiff by obtaining his private banking records using the private records to bring false charges and to deprive plaintiff of "due process" under the 5th and 14th Amendments.

           *                  *                  *

      52. Two hearings were conducted by NYSP utilizing three hearing officers at each hearing. Two officers at each hearing were hand picked by McMahon to decide false charges against plaintiff. Plaintiff was deprived of a fair hearing by a biased board. Plaintiff was denied discovery prior to the hearings in violation of his due process rights under the 5th and 14th Amendments. Plaintiff was denied copies of police records and reports contained in his personnel file which would have shown improper and unlawful police procedures. Plaintiff's constitutional right against being deprived of "property" without due process was violated through the use of a bias hearing board

      53. Defendants conspired to create a constructive discharge of plaintiff under Title VII of the Civil Rights Act by deliberately creating working conditions so difficult, hostile and unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. The powers exercised by McMahon and the other defendants in excess of the power granted to their positions, placed their acts and action under the purview of Title VII of the Civil Rights Act through violating the rights, privileges and immunities of plaintiff granted by the United States Constitution

(Omission of ending periods was as stated in the original.)

### 10.    Deceit is Relevant to Plaintiff's Need for Injunctive Protections in the Event of Reinstatement

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, are highly relevant to plaintiff's need for protections if he prevails on his claim for reinstatement.  For this purpose, the allegations challenged by defendant are extremely relevant to plaintiff's claims.

### 11.    Deceit is Relevant to Punitive Damages

Evidence of the false filing, the falsity of the underlying representations, and the strength of defendant's determination to fight plaintiff, are highly relevant to plaintiff's claim for punitive damages.

*Kolstad v. American Dental Association*, 527 U.S. 526 (1999), discussed the standards for awarding punitive damages on a Federal-law cause of action.  The Court set forth the standards under which corporations are vicariously liable for punitive damages for the actions of lower-level officials.  The Court quoted with approval the standards of § 217(C) of the RESTATEMENT (SECOND) OF AGENCY and § 909 of the RESTATEMENT (SECOND) OF TORTS, modifying only the "scope of employment" standard and establishing a "good faith defense":

> The Restatement of Agency places strict limits on the extent to which an agent's misconduct may be imputed to the principal for purposes of awarding punitive damages:
>
> > "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:
> >
> > > "(a) the principal authorized the doing and the manner of the act, or
> > >
> > > "(b) the agent was unfit and the principal was reckless in employing him, or
> > >
> > > "(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> > >
> > > "(d) the principal or a managerial agent of the principal ratified or approved the act."  Restatement (Second) of Agency, *supra*, § 217 C.

49

See also Restatement (Second) of Torts § 909 (same).

527 U.S. at 542–43. Defendant's Position Statement to the EEOC was a ratification or approval of the actions complained of, and its falsity demonstrated malice or reckless disregard of plaintiff's Federally-protected rights.

The same result obtains under the New York law of punitive damages. The New York Court of Appeals has stated: "Punitive or exemplary damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future." *Walker v. Sheldon*, 10 N.Y.2d 401, 404, 179 N.E.2d 497, 223 N.Y.S.2d 488 (N.Y. 1961). In a malicious-prosecution case, the Court of Appeals set forth the standard for conduct giving rise to punitive damages: "It has long been recognized in New York that punitive damages may be awarded in an action for malicious prosecution if the defendant was motivated by actual malice or acted in reckless disregard of the plaintiff's rights." *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503, 377 N.E.2d 975, 976, 406 N.Y.S.2d 443, 445 (N.Y. 1978). *Accord*, *Giblin v. Murphy*, 73 N.Y.2d 769, 772, 532 N.E.2d 1282, 1284, 536 N.Y.S.2d 54, 55 (N.Y. 1988) (fraud) ("'wanton or reckless disregard of plaintiff's rights'"); *V.J.V. Transport Corp. v. Santiago*, 173 A.D.2d 537, 570 N.Y.S.2d 138 (N.Y. App. 2d Dept. 1991) (fraud) ("Moreover, in cases such as this, it is not necessary to prove that the fraud was aimed at the public generally in order to justify an award of punitive damages . . . . Review of the record discloses that the defendants' acts were gross, wanton, deliberate, evinced a reckless disregard for the plaintiffs' rights, and, moreover, attained that high degree of moral culpability required to justify an award of punitive damages.") (citations omitted).

Plaintiff's allegations of a cover-up scheme in violation of a statutory prohibition of trickery and deceit are supported by Supreme Court punitive-damages cases. *TXO Production*

*Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993), stated: "The punitive damages award in this case is certainly large, but in light of the amount of money potentially at stake, the bad faith of petitioner, the fact that the scheme employed in this case was part of a larger pattern of fraud, trickery and deceit, and petitioner's wealth, we are not persuaded that the award was so 'grossly excessive' as to be beyond the power of the State to allow." *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 576 (1996), citing *TXO*, held that "'trickery and deceit' . . . are more reprehensible than negligence." *State Farm Mutual Auto Insurance Co. v. Campbell*, 538 U.S. 408, 419 (2003), stated: "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." (Citation omitted.) The Court's latest pronouncement, *Philip Morris USA v. Williams*, __ U.S. __, 127 S. Ct. 1057, 1064 (2007), held that a jury may properly take into account whether there was "a substantial risk of harm to the general public, and so was particularly reprehensible," but "a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties."

Defendant's cover-up made its actions more reprehensible, demonstrated a deeper malice, reckless indifference and moral depravity than if it had not lied to the EEOC, in so doing vastly complicated the task of a single individual challenging an entity with seemingly unlimited resources, and demonstrated a risk that defendant and comparable companies will repeat such actions in the future. Defendant's cover-up is directly relevant to punitive damages and their amount, under both New York and Federal law.

12.    **The Detailed Allegations of a Cover-Up Meet the Requirement of Alleging Sufficient Subsidiary Facts to Make Plaintiff's Claims Plausible**

Moreover, plaintiff is required to plead sufficient facts to allow a plausible inference of fraud. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), has recently tightened the pleading rules, stressing the importance of such allegations even in the absence of a heightened pleading requirement. The Second Circuit requires the allegation of the facts making a fraud claim plausible, to the extent plaintiff can do so before discovery. See the discussion at pp. 35–36 above. Plaintiff needs to allege a chain of circumstantial evidence strongly leading to the inference of fraud, and ¶¶ 14 and 95–124 of the Complaint are necessary and appropriate to that end.

13.    **Defendant's Cases Do Not Support Its Motion**

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D. N.Y. 2003), merely held that factually unsupported conclusions and irrelevant facts, such as allegations concerning conflicts of interest in stocks the defendant's fund never held, may be stricken. *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 554–55 (S.D. N.Y. 2002), involved the striking of scandalous allegations that the principals of a law firm used their secretaries and paralegals to seduce and "entertain" medical expert witnesses, where such allegations had nothing to do with any of the surviving claims. These are highly distinguishable from the allegations in question here.

*Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 317–18 (S.D. N.Y. 2001), involved the use of Rule 12(f) as a substitute for Rule 12(b)(6), to strike allegations for failure to state a claim, and its use to strike irrelevant allegations, such as allegations of financial irregularities and lack of internal controls, that the court said had nothing to do with plaintiff's discrimination claim. AVSC contended that plaintiff was fired for insubordination in reporting the irregularities to the

company's external auditor. Plaintiff's claim for retaliation under the City, State, and Federal

civil rights laws was dismissed. *Id.* at 310–11. The plaintiff accountant also claimed retaliation

for having made the report, but there was no State cause of action for such retaliation against an

accountant. *Id.* at 314–17. Under these circumstances, the allegations of financial irregularities

had nothing to do with any remaining claim. Plaintiff Graves' claims are highly distinguishable.

The only allegation in *Smith* involving assertedly scandalous matter—that plaintiff had

received a death threat—was allowed to remain. The court stated: "Paragraph 57, while clearly

inflammatory, may remain for the sole purpose of enabling Smith to gather proof of its relevance

to his retaliation claim. If he can do so, this allegation will be highly probative of retaliation.

Otherwise, it shall be struck upon proper motion after discovery." *Id.* at 318. Plaintiff has

suggested the same course of action herein.

*Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D. N.Y. 1991), stated: "The complaint's

reference to Milken's criminal conviction and his income level are immaterial and impertinent to

this case, and may be 'scandalous.' Neither Milken's income nor the outcome of his celebrated

criminal prosecution bears remotely on the merits of this case. Reference to those matters serves

no purpose except to inflame the reader." Plaintiff has not made any comparable allegations, and

his allegations bear directly on the merits of the case.

*Kent v. AVCO Corp.*, 815 F. Supp. 67, 71 (D. Conn. 1992), merely struck references to

other litigation in which defendant had been involved.

Defendant urges, in effect, that no allegation as to any administrative event can properly

be alleged if it did not result in a binding determination. Defendant's Memorandum at 24–25.

None of its cases involved allegations of an attempted cover-up by the making of a false filing in

the administrative process of the case at bar.

*Lipsky v. Commonwealth United Corp.*, 551 F.2d at 893, affirmed an order striking allegations of a consent decree between defendant and the Securities and Exchange Commission, because evidence of such a decree would be inadmissible, as would evidence of the complaint that led to the consent decree.  Evidence supporting plaintiff's allegations herein, by contrast, would be admissible.

*Ledford v. Rapid-American Corp.*, 1988 WL 3428, 1988 U.S. Dist. LEXIS 79 (S.D. N.Y. Jan. 8, 1988, No.86 Civ. 9116 (JFK)),[39] struck an allegation that the New York State Division of Human rights had made a probable-cause finding.  The court stated that "a determination by the Division of probable cause is an initial non-adjudicative step in the administrative process." WestLaw p. *1, LEXIS p. *3.  The court's decision to strike the paragraph was based on its potential to prejudice the jury; it even cited F.R.E. 401, 402, and 403.  WestLaw p. *2–3, LEXIS p. *5.  Apart from the court's failure to follow the rule in *Lipsky*, 551 F.2d at 893 ("Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings."), the procedure suggested by plaintiff avoids any possibility of jury prejudice.

*Mitchell v. Bendix Corp.*, 603 F. Supp. 920, 921 (N.D. Ind. 1985), merely struck an allegation about an unappealed decision of the Indiana Employment Security Division "that plaintiff had been discharged 'but not for proven just cause within the meaning of Chapter 15, Section 1 of the Indiana Employment Security Act.'"  The court struck the allegation because an unappealed determination would not have been preclusive in the case.

---

[39] The decision can be found at unmarked p. 23 in defendant's Appendix 8, and is the second of three decisions in the Appendix.

### 14.   Defendant's Footnote Claim of Absolute Privilege

Defendant's footnote 9 on p. 25 of its Memorandum makes the extraordinary claim that "[i]t is also well-settled under New York law that statements or submissions to the EEOC are protected by absolute privilege and cannot be the basis for imposing liability on a party."  It cites no New York law, regulation, or case, and does not cite any reported authority at all.  It cites only two unreported district court decisions having to do with defamation or libel, but does not limit its sweeping assertion accordingly.

*Witchard v. Montefiore Medical Center*, 2006 U.S. Dist. LEXIS 72811 (S.D. N.Y. July 19, 2006, No. 05 Civ. 5957 (JSR THK)),[40] at p. *31 cited by defendant and p. *32, is a decision of Magistrate Judge Katz.  The court stated that plaintiff seemed to be claiming defamation or libel because she claimed that the union's false statements to the EEOC caused her embarrassment and humiliation.  The court's actual holding was that statements to the EEOC are absolutely privileged with respect to a claim for defamation.  *The Dweck Law Firm v. Mann*, 2003 U.S. Dist. LEXIS 19535 (S.D. N.Y. Oct. 20, 2003, No. 02 Civ. 8481 (SAS)),[41] did not involve the EEOC at all; the court merely held that there is an absolute privilege under New York law with respect to libel claims involving comments made in the course of a judicial proceeding.

Defendant's offhand use of these authorities leaves its intent somewhat ambiguous.  Plaintiff has not alleged a defamation or libel claim with respect to defendant's false filing, so the footnote would seem to be irrelevant.  It is possible that the footnote reflects defendant's general treatment of background evidence as if they were causes of action, as with its effort to

---

[40] The decision can be found at unmarked p. 29 in defendant's unindexed Appendix 10, and is the third of three decisions in the Appendix.

[41] The decision can be found at unmarked p. 11 in defendant's unindexed Appendix 4, and is the second of three decisions in the Appendix.  The firm name as stated in the decision is Dweck, not Dwerk.

dismiss background evidence with respect to Federal claims before the charge-filing period.  If

so, neither of these unpublished decisions would support the proposition that false statements to

the EEOC cannot be used to help prove liability or show entitlement to relief.  Neither conflicts

with the authorities plaintiff has cited above, with respect to the admissibility and utility of false

or inconsistent statements made to the EEOC.

### I.    <u>Conclusion</u>

Defendant's Motion is not well taken, and should be denied in its entirety.

The part of its Motion seeking to strike untimely Federal claims is basically a motion to

strike background facts predating the charge-filing period, and is frivolous.

Plaintiff has adequately pled adverse employment actions occurring within a short time

after his internal complaint of age discrimination, including defendant's refusal to allow him to

continue working for six months at reduced or no pay to facilitate his obtaining a comparable job

elsewhere, the denial of a very substantial bonus, and defendant's refusal to transfer him.

Defendant's contention that these were all embodied in the original termination decision is

contrary to the allegations of plaintiff's Complaint, and would be a defense to be shown.

Defendant may raise the contention again in a motion for summary judgment, if it is by then

adequately supported by evidence.  To grant this part of defendant's motion now would be the

equivalent of granting a motion for summary judgment on he unsupported assertion of defense

counsel.

Defendant's contention that plaintiff has not adequately pled the protected activity

necessary to an FLSA retaliation claim is frivolous, inasmuch as plaintiff has clearly pled

protected activity under the ADEA, and the ADEA provides that violations of that statute shall

also be considered violations of the FLSA.

Plaintiff pled the New York common-law claims of fraudulent concealment and breach of the duty of good faith and fair dealing. These claims were pled only as to the denial of his bonus, and as such do not conflict with New York law governing at-will employment. Plaintiff's allegations meet the standards of Rule 9(b), Fed. R. Civ. Pro., and adequately set forth these common-law claims.

Because plaintiff has now received a Notice of Administrative Dismissal from the New York State Division of Human Rights, the part of defendant's Motion seeking dismissal of plaintiff's claims under the New York City Human Rights Law is moot.

Defendant's Rule 12(f) motion to strike ¶¶ 95–124 of the Complaint is frivolous, and is inconsistent with defendant's representations elsewhere in its Motion that the allegations of fraud are not adequately detailed. These paragraphs of the Complaint are allegations of background facts directly relevant to liability, to declaratory and injunctive relief, to punitive damages, and to the credibility and impeachment of defendant's officials. If discovery shows that any of the allegations are inadequately supported, they can be removed voluntarily or as a result of a motion for summary judgment. Defendant can also at the appropriate time file a motion in limine to prevent any inadequately supported allegations from being presented to the jury.

Defendant's suggestion of absolute privilege for its submissions to the EEOC is frivolous, because its authorities go only to a privilege from defamation and libel actions, and no such claim has been alleged here.

Respectfully submitted,

Richard T. Seymour (RS-8094)
Adele Rapport (AR-0991)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
(202) 862-4320 – Telephone
(202) 549-1454 – Cell
(800) 805-1065 – Telecopier

Steven A. Berger (SB-2038)
Jonathan Rogin (JR-9800)
Thomas E. Hone (TH-7420)
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019
(212) 319-1900 – Telephone
(212) 319-2017 and -2018 – Telecopiers

By: _____s/_____
         Richard T. Seymour (RS-8094)
         Attorneys for Plaintiff

Dated: July 18, 2007

### Certificate of Service

I certify that I have, this 18th day of July, 2007, caused a true and correct copy of Plaintiff's Memorandum of Law In Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Complaint and to Strike Portions of the Complaint and attachment on counsel for defendants by electronic service through the Court's ECF system and by hand shortly thereafter, addressed to defendants as follows:

> Cliff Fonstein, Esq.
> Joanne Seltzer, Esq.
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, NY 10019

>
> _____s/_____
> Richard T. Seymour (RS-8094)
> Law Office of Richard T. Seymour, P.L.L.C.
> 1150 Connecticut Avenue N.W., Suite 900
> Washington, D.C.  20036-4129
> (202) 862-4320 – Telephone
> (202) 549-1454 – Cell
> (800) 805-1065 – Telecopier