# LAW OFFICE OF RICHARD T. SEYMOUR, P.L.L.C.

1150 CONNECTICUT AVENUE N.W. • SUITE 900 • WASHINGTON, DC 20036-4129
www.rickseymourlaw.com  FAX: (800) 805-1065 AND (202) 828-4130
RICHARD T. SEYMOUR, PRINCIPAL: (202) 862-4320, CELL: (202) 549-1454, Rick@RickSeymourLaw.net*
JULLION R. TAYLOR, SENIOR PARALEGAL: (202) 862-4370, CELL: (202) 531-4039, Jullion@RickSeymourLaw.net

May 20, 2008

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

    Re: **Graves v. Deutsche Bank: Deficiencies in Defendant's February 21, 2008, Document Production**

Dear Cliff and Joanne:

    This letter concerns deficiencies in defendant's February 21, 2008, document production.

    Plaintiff requests defendant to state, as to each of these separate deficiencies, whether it intends to remedy the deficiency by providing the information sought. If so, plaintiff requests defendant to state, as to each of these separate deficiencies that it is willing to correct, when it proposes to provide the information plaintiff has sought.

    In the absence of agreement, plaintiff proposes that defendant identify by May 28 each of these separate deficiencies that it will remedy in whole or in part, and that it provide the information in question by June 4, 2008. If defendant represents that it needs more time to evaluate this letter but that it thinks in good faith some agreement may be possible, plaintiff will be reasonable as to the timing. The most important thing is to get defendant to start responding to the discovery process so that this case can move forward.

    1. **Defendant's Redactions Destroy the Integrity of Documents, and Are Improper:**

        a. Defendant's assertedly privacy-based redactions in documents destroy their integrity and make them much less useful.

            i. My March 26 letter included a page-by-page table of the 69 redactions in Defense Document 28, Bates-numbered DB 358 to DB 374, a single 18-page document. I have attached a copy of

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 2 of 19 —

      Defense Document 28 as Attachment A for ease of reference.

  ii. Defense Document 13 is another useful example. This document is "Media Group 2004 Outlook and individual banker highlights, October 20, 2003." It is Bates-numbered DB 89 to DB 116. The date of the document obviously involves a critical time in this case. Yet the document is heavily redacted. There are 16 redactions on p. DB 94, 8 redactions on p. DB 98, and an entire page of text redacted on p. DB 101. I have attached a copy of Defense Document 13 as Attachment B for ease of reference.

  iii. While employees in Defense Document 13 are coded, such as "Employee B," defendant has provided no information on whether the same codes refer to the same persons across documents, or whether codes are assigned *ad hoc* within each document.

b. Such heavy redactions of content make it difficult to know even the types of information redacted, and deprive plaintiff of the ability to determine whether particular redactions do or do not fit within the parameters of any basis for redaction stated by defendant.

c. While plaintiff does not know the content of most of defendant's redactions, it seems plain that most redactions do not protect Social Security Numbers, private financial account numbers, information on minor children, information on other family members, or the like. Plaintiff is concerned with other information, and these frequently-accepted grounds for redaction are not at issue here.

d. Defense Document 83, Bates-numbered DB 1180 to DB 1192, is another good example of substantive redactions interfering with the core purpose of discovery. I have attached a copy of Defense Document 83 as Attachment C for ease of reference. This document purports to be a Year End 2003 evaluation for "Employee H."

  i. It has a redaction on the first page, DB 1180, in the space for demonstrating sound quantitative and analytic abilities.

  ii. It has a redaction on the bottom of p. 8, DB 1187, and plaintiff cannot possibly tell whether the redaction applies to the many gaps on the page or instead reflects the deletion of a block of text under the category of the evaluatee's most valuable qualities and skills.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 3 of 19 —

       iii. It has a redaction on the bottom of p. 9, DB 1188, and plaintiff cannot possibly tell whether the redaction applies to the many gaps on the page or instead reflects the deletion of a block of text under the evaluating manager's comments.

       iv. There appears to be a redaction on p. 10, DB 1189, in the space for "Additional Manager." On pp. 11 and 12, DB 1190 and DB 1191, the form contains notations that the spaces for "Additional Manager" on those pages were not filled out. That makes us think that text was redacted for "Additional Manager" comments on p. 10.

   e. Defendant's redactions were also not made to protect any claim of privilege. This accepted ground for redaction is not at issue here.

   f. The confidentiality of documents is fully protected by the Stipulation of Confidentiality approved by the Court on November 16, 2007, and entered on November 19, 2007. Redactions of types of information other than those specified above are rarely appropriate where a protective order is in effect. *Envirosource, Inc. v. Horsehead Resource Development Co., Inc.*, 1996 WL 399823 (S.D. N.Y. July 17, 1996) (No. 95 CIV 5106 (AGS) (SEG)). *United States v. Davis*, 131 F.R.D. 391, 399-400 (S.D. N.Y. 1990), held that a confidentiality order was a useful alternative to redactions.

   g. As you will note by examining plaintiff's far larger and far more complete production, there are no redactions in any documents that plaintiff produced in response to defendant's discovery requests.

   h. Plaintiff set forth an extensive, good-faith explanation of the relevance and probative value of this information in Part F of my January 21, 2008, letter to you, citing controlling case law, at pp. 16-19. Defendant has never responded. Defendant's continued adherence to an untenable position is unfortunate, and can lead to adverse consequences. Please inform plaintiff by May 28 that defendant will produce by June 4 all documents that have been withheld based on this limitation.

2. **Defendant Has Failed to Produce Documents As They Are Kept in the Usual Course of Business, or to State the Requests to Which the Documents Produced Are Responsive:**

   a. Rule 34(b)(2)(E)(i) requires that defendant either produce documents as they are kept in the usual course of business, or identify the specific

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 4 of 19 —

      discovery requests to which each document produced is responsive. Defendant has not yet complied with either prong of the requirement, and plaintiff is very interested in ensuring defendant's future compliance when defendant finally produces the many documents requested.

  b. Defendant has apparently cherry-picked the particular documents it wanted to produce, as opposed to the full set of documents requested. A production of documents as they are kept in the usual course of business would be a production of the responsive file drawers *in toto*, labeled as they are in the file drawers, not one hand-picked document from Drawer A and two from Drawer B.

  c. Alternatively, plaintiff set forth an extensive, good-faith explanation of the necessity of linking documents produced to the requests for which defendant believes them responsive, in Part B of my January 21, 2008, letter to you, citing case law, at p. 3. Defendant has never responded. Defendant's continued adherence to an untenable position is unfortunate, and can lead to adverse consequences.

  d. The defendant has many thousands of employees, and Sidley & Austin has a supply of attorneys that is practically inexhaustible compared to plaintiff. It defies comprehension that defendant has labored so long to produce so little, when plaintiff has produced so much more.

  e. Please inform plaintiff by May 28 that defendant will produce by June 4 all documents responsive to the outstanding discovery requests, either as they are kept in the usual course of business, or properly catalogued in terms of the requests to which they are responsive.

   3. **Defendant Has Failed to Produce Objective Setting Forms, Which Are Part of the Evaluation Process:**

  a. Some evaluations do not include the setting of objectives, which is a part of the evaluation process. Instead, they say that the objectives have been put into a separate document, called the Objective Setting form, which the employee can access from his or her Personal File/Managers File or from his or her To Do list.

  b. One example is Defense Document 79, the Employee B Year End Evaluation for 2003, p. 12, DB 1139. I have attached a copy of Defense Document 79 as Attachment D for ease of reference.

  c. Please inform plaintiff by May 28 that defendant will produce, by June 4,

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 5 of 19 —

        all Objective Setting Forms, with any comments.

4. **Defendant Has Failed to Produce the Calling Activity Reports, Which Are An Essential Part of the Evaluation Process:**

    a. Defense Document 20, Bates-numbered DB 000281 to DB 000295, purports to be a record of plaintiff's Calling Activity from March 6, 2002 to December 8, 2002, and from January 1, 2003, to January 26, 2004. I have attached a copy of Defense Document 20 as Attachment E for ease of reference. Putting aside the unexplained gap, calling activity is one of the tasks reflected as important in performance evaluations.

    b. Defendant has not produced any record covering the gap for plaintiff, has not produced any record for calling activities earlier than March 6, 2002, and has not produced any record of calling activities for other Investment Bankers.

    c. Plaintiff explicitly requested this information. See Plaintiff's First Request for Production No. 49.

    d. Please inform plaintiff by May 28 that defendant will produce, by June 4, all Calling Activity reports, of any kind, for all Investment Bankers in the Media Investment Banking Group, in all time periods requested.

    e. Plaintiff also requested the following, which is critical to understanding the call reports:

        50. A copy of every policy on the inclusion, addition, or removal of clients, bankers, SIBs, or data in defendant's Client Manager system, access to the system, limitations on access to the system, or other information about the system.

        51. A copy of every policy on the inclusion, addition, or removal of contacts, clients, bankers, SIBs, or data in defendant's Call Report system, access to the system, limitations on access to the system, or other information about the system. Defendant has not provided this information.

Please inform plaintiff by May 28 that defendant will produce by June 4 all documents that have been withheld.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 6 of 19 —

5. **Defendant's Production of Two Memoranda on "Deal Logging and Conflict Resolution" Are Not an Adequate Response to Plaintiff's Discovery Requests:**

   a. Defendant produced Defense Document 34, a July 23, 2002 memorandum from Bruce Rigal to All Global Corporate Finance Officers on Deal Logging and Conflict Resolution, Bates-numbered DB 407 through DB 408, and Defense Document 35, an August 1, 2003, memorandum from Bruce Rigal to All Global Corporate Finance Officers on Deal Logging and Conflict Resolution, Bates-numbered DB 409 through DB 410. Copies of Defense Documents 34 and 35 are attached as Attachments F and G, respectively, for ease of reference.

   b. Part 9 ("Policies on Franchise Revenue Achievements, Targets, and Pipelines," requests 26-28), Part 10 ("Franchise Revenue Achievements, Targets, and Pipelines," requests 30-37 and 39), Part 12 ("Client Activities," requests 42-48), Part 13 ("Client Activity Databases," requests 49-51), and Part 19 ("Defendant's Position Statement to the EEOC," requests 72-73, 77-88, and 90-103) of plaintiff's First Request for Production of Documents had enquired about a variety of topics to which the deal logs are responsive.[1] These requests have been excerpted and attached as Attachment H, for ease of reference.

   c. A defendant attempting to comply in good faith with its discovery obligations would need to provide the information described above in connection with memoranda referring to deal logging. As it is, defendant has produced these references to deal logging without producing the actual deal logs, the input to the deal logs, any explanation of how deal logging is supposed to work, the distinctions if any between defendant's other managerial systems such as the Client Manager and Call Report systems, how these systems are supposed to interact, who has access to the deal logging system to make or correct entries, who has access to the system to read information, how the deal logging system is supposed to interact with the Weekly Change reports of the type of which a few exemplars were first produced on February 21, how the deal logging system is supposed to interact with the Franchise Revenue & Pipeline Summary reports, how the deal logging system is supposed to interact (if at all) with the submissions or "brag sheets" made by investment bankers, and the other requested types of documents as to which deal logging could shed important light.

---

[1] Please note that defendant's failure to provide the discovery sought in Part 19 is also of direct relevance to defendant's threatened and served Rule 11 Motion.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 7 of 19 —

    d. Defendant's virtually complete failure to provide the requested discovery and reliance on a memorandum's reference to an undisclosed system is typical of the inadequacy of defendant's approach to discovery. Please inform plaintiff by May 28 that defendant will produce, by June 4, all of these types of documents.

6. **Defendant Has Continued to Impose an Improper Restriction on the Period for Which It Has Provided its Partial Responses to Date:**

    a. Plaintiff set forth a reasonable period for most discovery requests: March 31, 1999, to the present. Defendant hired plaintiff to start working on March 31, 1999, making the start of the period eminently reasonable. Defendant fired plaintiff in 2004, and did not cease operations and go out of business at that time. Instead, it continued to employ Investment Bankers, and any variation between its treatment of plaintiff from 1999 through January 2004 and its treatment of other employees then and thereafter, or any change in between the asserted policies or application of asserted policies as to plaintiff and defendant's policies or applications of policies to younger employees then or thereafter can provide useful evidence that plaintiff was singled out for harsher treatment because of his age and because of his discrimination complaint.

    b. Defendant's own Position Statement to the EEOC contained information for a time period starting earlier than, and ending later than, than the limitation defendant has proclaimed as appropriate for discovery. See Attachments B through G of the attachments in my January 10, 2008, letter to you.

    c. Plaintiff set forth an extensive, good-faith explanation of the relevance and probative value of this information in Part I of my January 10, 2008, letter to you, citing controlling case law, at pp. 8-17. Defendant has never responded. Defendant's continued adherence to an untenable position is unfortunate, and can lead to adverse consequences.

    d. Please inform plaintiff by May 28 that defendant will produce by June 4 all documents that have been withheld based on this limitation.

7. **Defendant Has Continued to Impose an Improper Restriction on the Work Units for Which it is Providing Discovery:**

    a. Defendant has continued to limit its production of documents to the Media Investment Banking Group. This is improper. Defendant has admitted to the EEOC that its treatment of plaintiff was approved by

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 8 of 19 —

        Jacques Brand, James DeNaut, Mark Pfeffer and Tom Gahan. Defendant's Position Statement to the EEOC, on p. 4, Bates-numbered Graves 000025. See Attachment B to that letter. These officials were responsible for all of defendant's investment banking activities in North America; none of them had any responsibility that was limited to the Media Investment Banking Group headed by Jeffrey Amling.

   b.  Defendant's own Position Statement to the EEOC and its attachments contained information on Investment Bankers nationwide working outside the Media Investment Banking Group. See Attachments C through G to my January 10 letter.

   c.  Plaintiff set forth an extensive, good-faith explanation of the relevance and probative value of this information in Part J of my January 10, 2008, letter to you, citing controlling case law, at pp. 17-20. Defendant has never responded. Defendant's continued adherence to an untenable position is unfortunate, and can lead to adverse consequences.

   d.  Please inform plaintiff by May 28 that defendant will produce by June 4 all documents that have been withheld based on this limitation.

  8.  **Defendant Has Failed to Produce All Performance Evaluations Even Within the Limitations It Has Announced:**

   a.  Defendant has produced only a smattering of performance evaluations, even for defendant's self-proclaimed limitation to the Media Investment Banking Group, and even for defendant's self-proclaimed time period. Its extremely limited production appears to have been cherry-picked.

   b.  Jeffrey Amling is the Manager of the Media Investment Banking Group. Based on every piece of information provided by defendant to plaintiff during his employment, and based on the representations defendant made to the EEOC, Mr. Amling's evaluation was the one that matters for each banker in the Media Investment Banking Group. No other banker in that Group was described as able to exercise a manager's role in making evaluations. Yet the following heavily-redacted evaluations do not contain Mr. Amling's evaluation, and represent that some of plaintiff's peers were the "evaluating manager":

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 9 of 19 —

| **Defense Doc. No.** | **Bates Numbers** | **Employee Evaluated** | **"Evaluating Manager"** |
|---|---|---|---|
| D-Doc 00063 | DB 000915 to DB 000925 | Employee G Year End Evaluation 2003: Undated self- evaluation. | No manager evaluation; a few employee remarks |
| D- Doc 00064 | DB 000926 to DB 000939 | Employee I Year End Evaluation 2003 | Charles Carey |
| D- Doc 00065 | DB 000940 to DB 000953 | Employee I Evaluation 2002 | Charles Carey |
| D- Doc 00066 | DB 000954 to DB 000963 | Employee F Year End Evaluation 2003 | Charles Carey |
| D- Doc 00067 | DB 000964 to DB 000981 | Employee F Evaluation 2002 | Charles Carey |
| D- Doc 00069 | DB 000996 to DB 001009 | Employee K Evaluation 2002 | Dyan Triffo |
| D- Doc 00073 | DB 001057 to DB 001071 | Employee J Evaluation 2002 | Dyan Triffo |
| D- Doc 00075 | DB 001073 to DB 001089 | Employee L Evaluation 2002 | Gregory Paul |
| D- Doc 00082 | DB 001165 to DB 001179 | Employee H Evaluation 2002 | Gregory Paul<br><br>Additional manager: J.L. Malcolm Morris |
| D- Doc 00083 | DB 001180 to DB 001192 | Employee H Year End Evaluation 2003 | Gregory Paul |

The complete text of Defense Document 63, and the first pages of each of these other evaluations, are attached as Attachment I hereto, for ease of reference.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 10 of 19 —

    c.  Please note that defendant represented to the EEOC that Gregory Paul was a peer and comparator of plaintiff's, and represented that Paul's greater franchise revenues achievements and greater franchise revenue pipeline were the reason plaintiff was selected for layoff. Yet, defendant's discovery treats him as a manager. Defendant's revelation is very important to the case. Please inform plaintiff by May 28 that defendant will produce, by June 4, the personnel file for Gregory Paul, requested in Plaintiff's First Request for Production No. 5.

    d.  Defendant represented to the EEOC that Dyan Triffo, Charles Carey, and J.L. Malcolm Morris were peers and comparators of plaintiff, and is now treating them as managers. Defendant's revelations are very important to the case. Please inform plaintiff by May 28 that defendant will produce, by June 4, the personnel files for Dyan Triffo, Charles Carey, and J.L. Malcolm Morris, requested in Plaintiff's First Request for Production No. 5.

    e.  Defendant's revelation of information significantly altering the picture presented to the EEOC in its Position Statement underscores the need for defendant to produce all personnel files requested in Plaintiff's First Request for Production No. 5. Please inform plaintiff by May 28 that defendant will produce these personnel files, without redactions, by June 4.

    f.  Plaintiff is entitled to every requested performance evaluation, not just those that are cherry-picked. Please inform plaintiff by May 28 that defendant will produce by June 4 every unredacted performance evaluation, and every version of such evaluation, from March 31, 1999, to the present.

    g.  To the extent that persons other than Jeffrey Amling were authorized to make managers' evaluations of employees at any time from March 31, 1999, to the present, please inform plaintiff by May 28 that defendant will produce, by June 4, all of the following documents that have been withheld:

        i.  the documents assigning them to the positions or functions that entitled them to make these evaluations;

        ii.  all documents showing the explanations provided to these persons;

        iii.  all documents showing the explanations provided to the persons

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 11 of 19 —

        they evaluated; and

   iv.  all other documents involving the evaluations of Employees F, G, H, I, J, K, and L.

Please inform plaintiff by May 28 that defendant will produce, by June 4, all of the above-described categories of documents, or will do so within a reasonably short period.

   9.  **The Input of Evaluators:**  All of the limited number of performance appraisal forms produced have input from evaluators other than the manager.  Defendant has failed to produce the separate input of each evaluator as to each performance appraisal form.  Please inform plaintiff by May 28 that defendant will produce, by June 4, all of these input forms without redactions.

   10. **Variant Forms of Performance Evaluations:**

     a.  Defendant apparently maintains variant forms of performance evaluations.  *Compare* Defense Document 24, Bates-numbered DB 309 to DB 323, purporting to be a Performance Management Report for plaintiff, Year End Evaluation 2003, *with* plaintiff's Document 15, Bates-numbered Graves 78 to Graves 92 (Exhibit G to defendant's Position Statement to the EEOC), *and with* Defense Document 2, Bates-numbered DB 4 to DB 18, also purporting to be defendant's year-end evaluation of plaintiff.  They all purport to be the same document, yet evaluators' comments are in a different order.

     b.  For ease of reference, Defense Document 24 is attached hereto as Attachment J, defendant's Exhibit G to its Position Statement is attached hereto as Attachment K, and Defense Document 2 is attached hereto as Attachment L.

     c.  Plaintiff does not know what other variations may exist, and is entitled to all versions of each evaluation.  Please inform plaintiff by May 28 that defendant will produce, by June 4, all such variant forms of performance evaluations, for all employees for whom performance evaluations have been requested.

   11. **Areas of Focus:**

     a.  Defendant's February 21, 2008, supplementation of its discovery responses revealed that the Broadcasting area was an area of focus, and that references to spaces or focuses do not seem rigid.  Indeed, Investment Bankers were routinely spoken of as having an M&A focus or

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 12 of 19 —

a Tier 1A focus or a product focus, and there were no specific industry areas of focus mentioned for many. This stands in sharp contrast to defendant's representations to the EEOC that plaintiff specialized in the "TV space" and therefore he had to be selected for layoff.

b. Part 12 ("Client Activities," request 46) and Part 19(a) ("Defendant's Position Statement to the EEOC / Text of Position Statement," requests 77-79 and 82-84) of plaintiff's First Request for Production of Documents had enquired about the "space" in which investment bankers worked:

> 46. A copy of every document containing any information for any period of time, as to any banker or group of bankers who worked in the Media Investment Banking Group at any time from March 31, 1999, to the present, as to the assignment or re-assignment of bankers to particular Media sectors or subsectors, or as to any policy governing such assignments or re-assignments.
>
> \*      \*      \*
>
> 77. A copy of all documents containing information bearing on the question whether plaintiff had had experience outside of television. See the Position Statement, p. 2.
>
> 78. A copy of all documents containing information bearing on the question whether plaintiff "focused primarily on television." See the Position Statement, p. 2.
>
> 79. A copy of all documents containing information bearing on the question whether plaintiff lacked "cinema background." See the Position Statement, pp. 2 and 8.
>
> \*      \*      \*
>
> 82. A copy of every policy about the classification of bankers into any specific "space," , within the meaning of the Position Statement's use of the word "space."
>
> 83. Separately for each Media Banker, a copy of all documents containing information about any specific "space" in which the banker was classified, within the meaning of the Position Statement's use of the word "space" on pp. 4 and 6.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 13 of 19 —

        84. Separately for each Media Banker, a copy of all documents containing information about whether he or she duplicated with any other such Media Banker or banker for any specific "space" in which the banker was classified, within the meaning of the Position Statement's use of the words "space" and "duplication" on pp. 4 and 6.

  c. Defendant's February 21, 2008, supplementation involves only a small part of the documents that must exist, that are responsive to these requests.

  d. Please inform plaintiff by May 28 that defendant will produce by June 4 all documents that have been withheld based on this limitation.

12. **Account Assignments and Reassignments:**

  a. Defendant's February 21, 2008, supplementation of its discovery responses includes documents that raise again and again the question of account assignments and reassignments.

  b. Part 12 ("Client Activities," requests 47 and 48) of plaintiff's First Request for Production of Documents enquired about account assignments and reassignments:

        47. A copy of every document containing any information for any period of time, as to any banker or group of bankers who worked in the Media Investment Banking Group at any time from March 31, 1999, through March 31, 2005, as to any of the following:

    a. any policies on the assignment of clients to one or more bankers;

    b. any policies on changes in the assignments of clients to one or more bankers;

    c. the actual assignments of clients to one or more bankers;

    d. changes in the assignments of clients to one or more bankers;

    e. any assignment or change in the assignment of the Salem Communications client to any banker;

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 14 of 19 —

    f.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the Salem Communications client;

    g.   any assignment or change in the assignment of the Tribune Company client to any banker;

    h.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the Tribune Company client;

    i.   any assignment or change in the assignment of the Adelphia Communications client to any banker;

    j.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the Adelphia Communications client;

    k.   any assignment or change in the assignment of the Charter Communications client to any banker;

    l.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the Charter Communications client;

    m.   any assignment or change in the assignment of the XM Satellite Radio client to any banker;

    n.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the XM Satellite Radio client;

    o.   any assignment or change in the assignment of the Cox Communications client to any banker;

    p.   any experience of any Director or Managing Director other than plaintiff in any transaction involving the Cox Communications client;

    q.   any assignment or change in the assignment of the Cox Enterprises client, including but not limited to its subsidiaries and affiliates not listed above, to any banker; and

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 15 of 19 —

    r.  any experience of any Director or Managing Director other than plaintiff in any transaction involving the Cox Enterprises client, including but not limited to its subsidiaries and affiliates not listed above.

    48.  A copy of all documents containing information about the assignments or more than one banker to accounts, or about defendant's policy with respect thereto.

c. Defendant has not responded to these discovery requests other than by the few heavily-redacted performance appraisals produced on February 21.

d. A defendant trying to comply in good faith with its discovery obligations would have had to check and include in its responses all of the records reflecting or bearing information about the accounts, the initial assignments of accounts, or changes in assignments of accounts of any Investment Banker within the Media Investment Banking Group, during any part of the period from March 31, 1999, to date, and all of the records reflecting or bearing information about the accounts, the initial assignments of accounts, or changes in assignments of accounts of any Investment Banker outside the Media Investment Banking Group, but involved in any of the transactions on which the Media Investment Banking Group was working, during any part of the period from March 31, 1999, to date.

e. Please inform plaintiff by May 28 that defendant will produce, by June 4, all of the above-described categories of documents, or will do so within a reasonably short period.

13. **Information on Evaluating Managers:**

a. The revelation in defendant's February 21, 2008, supplementation of its discovery responses that every Managing Director but plaintiff was an evaluating manager of Directors and Managing Directors highlights other important discovery requests with which defendant has failed to comply.

b. Managing Directors who were responsible for evaluating Directors and Managing Directors seem fairly obviously to be people defendant had decided would be around for a longer term than plaintiff, and may have received promotions to that level to avoid their having to be considered for lay-off. In either event, this is plainly a legitimate area for discovery.

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 16 of 19 —

    c.  Part 1 ("Job Descriptions and Organizational Chart," requests 1-3), Part 2 ("Personnel Files and Other Information on Employees," requests 4-5), and Part 3 ("Banker Personnel and Staffing Levels," requests 6-10) of plaintiff's First Request for Production of Documents had enquired:

### 1. Job Descriptions and Organizational Chart

1. A copy of every job description used by defendant from March 31, 1999, to the present, for the positions of Vice President, Director, or Managing Director, or for any position filled by a Vice President, Director, or Managing Director.

2. A copy of every job description used by defendant from March 31, 1999, to the present, for employees in supervisory or managerial positions in the Media Investment Banking Group, or in supervisory or managerial positions in a direct reporting or managerial line above the Media Investment Banking Group.

3. A copy of every organizational chart showing defendant's units and reporting relationships within the United States.

### 2. Personnel Files and Other Information on Employees

4. A copy of every policy containing information about the contents of personnel files and other information to be maintained as to employees or former employees.

5. A copy of the complete personnel file, and of every other file of a type regularly maintained by defendant as to its employees, from March 31, 1999, through March 31, 2005, for each banker who worked in the Media Investment Banking Group at any time during that period. Documents relating to the health (other than dates and reasons for leaves), medical benefits, families, and investments (other than compensation information) of such bankers are excluded from this request.

Case 1:07-cv-05471-BSJ-KNF   Document 42-9   Filed 07/11/2008   Page 16 of 19

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 17 of 19 —

      **3.**    **Banker Personnel and Staffing Levels**

    6. A copy of every policy containing information about the recruitment, hiring, transfer, lay-off, termination, or retention of bankers.

    7. A copy of every policy limiting consideration for lay-off to persons in the same job category, so that only Managing Directors would be compared to each other for purposes of layoff, or only Directors would be compared to each other for purposes of layoff, or only Vice Presidents would be compared to each other for purposes of lay-off. See the Position Statement, p.2.

    8. A copy of all documents containing information about the role of Franchise Revenue Pipelines in selecting bankers for lay-off.

    9. A copy of all documents containing information about the planned or actual staffing levels, recruitment, hiring, transfer, lay-off, termination, or retention of bankers within the Media Investment Banking Group, from March 31, 1999, to the present.

    10. A copy of all documents containing information about the planned or actual staffing levels, recruitment, hiring, transfer, lay-off, termination, or retention of Media Bankers outside the Media Investment Banking Group, from March 31, 1999, to the present.

  d. Defendant has not responded to these discovery requests.

  e. Please inform plaintiff by May 28 that defendant will produce, by June 4, all of the above-described categories of documents, or will do so within a reasonably short period.

14. **Variant Forms of Franchise Revenue and Performance Summaries:**

  a. Defendant apparently creates and maintains different forms of its Franchise Revenue and Performance Summary reports. *Compare* Defense Document 48, Bates-numbered DB 619 to DB 632, containing Global Media information, *with* Defense Document 49, Bates-numbered DB 633 to DB 651, containing North America Media information. Copies of Defense Documents 48 and 49 are attached hereto for ease of

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 18 of 19 —

        reference as Attachments M and N.

  b. That is just one example. Plaintiff does not know what other variations may exist, and is entitled to all versions of each Franchise Revenue and Performance Summary report.

  c. Please inform plaintiff by May 28 that defendant will produce, by June 4, all such variant forms of Franchise Revenue and Performance Summary reports.

15. **Banker Pipeline Submissions:**

  a. Defendant's February 21 production of monthly Franchise Revenue and Performance Summary reports and exemplar Weekly Change Sheets, for a limited part of the period for which discovery was requested, shows varying valuations and probabilities for the same transactions without much explanation.

  b. Since these asserted numbers lie at the core of defendant's representations to the EEOC, this production highlights the need to obtain all of the information underlying such values and changes.

  c. Please inform plaintiff by May 28 that defendant will produce, by June 4, all of the above-described categories of documents, or will do so within a reasonably short period.

16. **"Weekly Change" Statements:**

  a. Defendant has produced a few, but not many, documents entitled "Global Media / Franchise Revenue in excess of 100k / Weekly Change . . . ," with the specific week stated. These documents purport to show changes from the prior week in deals, actual franchise revenues, franchise revenue pipelines by month and for the relevant quarter, and descriptions of the changes such as "Pipeline added," "Pipeline adjusted," "Pipeline removed," "Pipeline moved," and "Probability changed." See, for example, Defense Document 47, p. DB 596. A copy is attached as Attachment O for ease of reference.

  b. These documents are directly responsive to Part 10 ("Franchise Revenue Achievements, Targets, and Pipelines," requests 30-34) of plaintiff's First Request for Production 30, which asked for the following:

      30. A copy of all documents showing the Franchise

Cliff Fonstein, Esq.
Joanne Seltzer, Esq.
Sidley Austin LLP
May 20, 2008
Page 19 of 19 —

        Revenues received, targets, or pipeline goals of each Industry Group and of every unit employing Media Bankers, from March 31, 1999, to date.

        31.    A copy of all documents containing information about individual Directors' or Managing Directors' meeting or failing to meet their Franchise Revenue targets within the Media Investment Banking Group within the period of time from January 1, 2002, to the present.

        32.    A copy of all documents containing information about the recognition of Franchise Revenue received, or other measures of performance, or Franchise Revenue pipelines or prospects of any individual bankers, or group of bankers within the Media Investment Banking Group at any time from March 31, 1999, through March 31, 2005.

        33.    A copy of all documents containing information about the allocations of Franchise Revenue earnings, or other measures of performance, to any individual bankers, or group of bankers within the Media Investment Banking Group.

        34.    A copy of all documents containing information about the acknowledgment or allocations of Franchise Revenue pipelines to any individual bankers, or group of bankers, within the Media Investment Banking Group.

  c.  Please inform plaintiff by May 28 that defendant will produce, by June 4, copies of the Weekly Change reports for each week from March 31, 1999, to the present, for the Media Investment Banking Group and for all other Industry Groups and units employing Media Bankers.

    This letter only addresses deficiencies in defendant's production of documents on February 21, 2008, and particular categories of missing information highlighted by that production. Plaintiff still awaits defendant's production of the vast majority of documents requested.

                                                                              Very truly yours,

                                                                              Richard T. Seymour

Cc: Jonathan Rogin, Esq.