LEXSEE 2007 U.S. DIST. LEXIS 72871



Analysis
As of: Jul 25, 2008

JAMES HODGE, Plaintiff, - against - CITY OF LONG BEACH, EUGENE CAMMARATO, in his individual and official capacity, and EDWARD EATON, in his individual and official capacity; and LAWRENCE WALLACE, also known as LARRY WALLACE, in his individual and official capacity, Defendants.

CV 02-5851 (TCP) (AKT)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 72871

September 28, 2007, Decided
September 28, 2007, Filed

**PRIOR HISTORY:** *Hodge v. City of Long Beach, 2006 U.S. Dist. LEXIS 28955 (E.D.N.Y., May 4, 2006)*

**COUNSEL:** [*1] For Joseph Ortego, Mediator: Joseph John Ortego, LEAD ATTORNEY, Nixon Peabody, Jericho, NY.

For Patrick M. McKenna, Mediator, Defendant: Patrick M. McKenna, LEAD ATTORNEY, McKenna & Schneier, Valley Stream, NY.

For Chitra Shenoy, MD, Movant: Brian E. Lee, Ivone, Devine & Jensen, Lake Success, NY.

For James Hodge, Plaintiff: Frederick K. Brewington, LEAD ATTORNEY, Law Offices of Frederick K. Brewington, Hempstead, NY.

For City of Long Beach, Defendant: Kenneth E. Aneser, Ronald J. Rosenberg, LEAD ATTORNEYS, Rosenberg Calica & Birney LLP, Garden City, NY.

For Eugene Cammarato, in his individual and official capacity, Edward Eaton, in his individual and official capacity, Lawrence Wallace, in his individual and official capacity also known as Larry Wallace, Defendants: Stanley A. Camhi, LEAD ATTORNEY, Jaspan, Schlesinger & Hoffman, LLP, Garden City, NY.

**JUDGES:** A. KATHLEEN TOMLINSON, U.S. Magistrate Judge.

**OPINION BY:** A. KATHLEEN TOMLINSON

**OPINION**

**MEMORANDUM OF DECISION AND ORDER**

A. KATHLEEN TOMLINSON, Magistrate Judge:

**I. PROCEDURAL SETTING**

In this civil rights action, Defendants seek reconsideration of my previous Order [*see* DE 91] which was directed to circumstances surrounding the *Rule 35* examination of Plaintiff. The [*2] issues were discussed at length at the August 22, 2006 proceeding from which the Order derived and familiarity with which is assumed here.

My August 22, 2006 Order set forth in the record that day five conditions on Plaintiff's *Rule 35* examination as a result of the August 22, 2006 argument:

> 1. Plaintiff's *Rule 35* examination would be conducted by an expert with no current or prior affiliation with the law firm of Jaspan, Schlesinger & Hoffman, LLP.
>
> 2. No third party would be permitted to be present at Plaintiff's *Rule 35* examination. Rather, the only people permitted to be at the examination would be the Plaintiff and the expert. If a third party drives Plaintiff to the examination, that third party must remain outside the physical offices of the examining doctor.
>
> 3. No one is permitted to record the examination in any manner. To ensure compliance with this directive and to avoid any confusion on this issue, I directed Plaintiff's counsel to personally inform the client that tape recording is not permitted at the *Rule 35* examination.
>
> 4. Any transportation costs required to bring Plaintiff to or from the examination site is to be borne by counsel for the Individual Defendants.
>
> 5. The expert's [*3] fees, including his time at deposition, is to be paid by counsel for the Individual Defendants. I also denied Plaintiff's motion seeking to have the Individual Defendants pay costs for the expert's deposition transcript.

On September 14, 2006, counsel for the individual Defendants filed a letter motion seeking reconsideration of that Order. *See* [DE 94]. Counsel for Defendant City of Long Beach also moved by letter motion for reconsideration. *See* [DE 89]. Both letter motions were denied on September 6, 2006 because they did not comply with *Local Civil Rule 6.3*, which requires motions for reconsideration to be made on notice of motion and accompanied by a memorandum of law. *See Local Civil Rule 6.3*. On September 14, 2006 Defendants filed a formal motion for reconsideration that properly complied with *Local Civil Rule 6.3*. Plaintiff has not submitted any opposition to this motion.[1] For the following reasons, Defendants' motion for reconsideration is granted in limited part with regard to the specific sanctions imposed, but is otherwise denied.

> [1] On October 25, 2006, Plaintiff's counsel moved for an extension of time in which to submit a response to Defendant's motion for reconsideration. [*4] *See* [DE 99]. However, by Order dated October 26, 2006, I denied Plaintiff counsel's request because of the "six-week delay in initially asking for the extension." [DE 100].

## II. STANDARD OF REVIEW

Motions for reconsideration under *Fed. R. Civ. P. 59(e)* are governed by *Local Civil Rule 6.3*, which states that the motion must "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." *Local Civil Rule 6.3*. A motion for reconsideration is within the sound discretion of the district court. *See Metro. Opera Assoc. v. Local 100*, No. 00-CV-3613, 2004 U.S. Dist. LEXIS 17093, 2004 WL 1943099, at *1 (S.D.N.Y. Aug. 27, 2004); *Bueno v. Gill*, 237 F. Supp. 2d 447, 449 (S.D.N.Y. 2002). In the Second Circuit, "the standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bell Sports, Inc. v. Sys. Software Assocs., Inc.*, 71 F. Supp. 2d 121, 126 (E.D.N.Y. 1999). This heightened burden [*5] imposed on the movant is "to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Comm'r of the D.O.T. of the City of New York*, 687 F. Supp. 888, 890 (S.D.N.Y. 1988), *modified on other grounds*, 934 F.2d 450 (2d Cir. 1991). The scope on a motion for reconsideration is, therefore, extremely narrow and has been described as an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000).

A decision to impose sanctions under *28 U.S.C. § 1927* or the court's inherent authority is reviewed for abuse of discretion. *See Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279 F.3d 148, 151 (2d Cir. 2002); *Revson v.*

*Cinque & Cinque, P.C.,* 221 F.3d 71, 78 (2d Cir. 2000) (citing *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 154 (2d Cir. 1997)). A court abuses its discretion if its conclusions are based on an erroneous determination of law or on clearly erroneous factual findings. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). Although a district court is better [*6] positioned to "marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted," it always must ensure that sanctions are imposed with "restraint and discretion." *Revson,* 221 F.3d at 78 (citing *Schlaifer Nance & Co. Inc. v. Estate of Warhol,* 194 F.3d 323, 334 (2d Cir. 1999)).

### III. DISCUSSION

Defendants offer several arguments in support of their motion for reconsideration. First, Defendants argue that because no adequate notice of sanctions was provided, as a matter of law, it was erroneous for the Court to impose them. Second, Defendants argue that even if a motion for sanctions was properly *sub judice,* the Court abused its discretion by imposing them. Because the Defendants do not point to controlling decisions or data that the Court overlooked, their motion for reconsideration must be denied. *See Metro. Opera Assoc.,* No. 00-CV-3613, 2004 U.S. Dist. LEXIS 17093, 2004 WL 1943099, at *2. Nonetheless, since the Second Circuit has cautioned that decisions concerning sanctions must be "made with restraint and discretion" each of Defendants' arguments will be addressed *seriatim. Eisemann v. Greene,* 204 F.3d 393, 396 (2d Cir. 2000) (citing [*7] *Schlaifer Nance & Co., Inc.,* 194 F.3d at 336).

### A. Notice of Sanctions

On August 16, 2006, I issued a Scheduling Order which directed the parties "to appear on August 22, 2006 to discuss the issues raised in the filed letter motions concerning an extension of the discovery deadline and the Plaintiff's *Rule 35* examination." [DE 86] Defendants argue that before a court may impose sanctions it must first afford notice and an opportunity to be heard. *See* Deft.'s Mem. at 6. Defendants argue that it was "not on notice," "not prepared," nor could they "reasonable [*sic*] be expected to be prepared to argue or inform the Court of the proper legal standards to be applied and the factual findings which must be made before sanctions may be awarded." *See* Deft.'s Mem. at 6. Therefore, Defendants contend, since they did not have proper notice, the imposition of sanctions was erroneous and improper. *See id.*

Defendants were put on proper notice and were aware that sanctions were being sought by virtue of Plaintiff's papers seeking such relief. Local Civil Rule 5.2, entitled, "Electronic Service and Filing of Documents" states that "a paper served and filed by electronic means in accordance with procedures [*8] promulgated by the Court, is for purposes of *Federal Rule of Civil Procedure 5,* served and filed in compliance with the local civil rules of the Southern and Eastern Districts of New York." Local Civil Rule 5.2; *see also* Fed R. Civ. P. 5(e) ("A paper filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules"). Therefore, Defendants were properly on notice and aware, under the Federal and Local Civil Rules, once Plaintiff's counsel filed on ECF their July 27, 2006 letter seeking sanctions. My August 16, 2006 Order, also filed on ECF, specifically referenced Plaintiff's July 27, 2006 letter, and therefore put Defendants on further notice that the *Rule 35* examination and potential sanctions would be discussed at the August 22, 2006 hearing. Additionally, in my prefatory remarks at the August 22, 2006 conference, I stated that "I asked you to be prepared to come to discuss the pending issues with respect to the *Rule 35* exam, as well as any other outstanding discovery issues. We're going to obviously resolve the *Rule 35* issue while you're here this afternoon." *See* Transcript of August 22, 2006 Oral Argument, at 3. [2] Defendants' [*9] argument that they were somehow not on notice that sanctions were before the Court is dubious in light of these notices. *See Schlaifer Nance & Co., Inc.,* 194 F 3d at 336 (holding that defendants were afforded adequate notice when opposing party "set out in detail the conduct alleged to have been sanctionable").

> 2   All subsequent references to the transcript of the August 22, 2006 Oral Argument appear as "TR. at   ".

Moreover, the Second Circuit has held that "although formal warnings often precede the imposition of serious sanctions, this court has never considered warnings an absolute condition precedent." *Daval Steel Prod. v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir. 1991). The Second Circuit in *Daval Steel* based its analysis on the Supreme Court case, *Ins. Corp. v. Ireland,* 456 U.S. 694,

*707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)*, and noted that "nowhere was it stated, however, that warnings were a requirement in every case." *Id. at 707*. Rather, the Court simply indicated that the sanctions at issue were "justified on the record before it, without formulating any specific requirements to be applied in all cases." *Id.* Putting aside the actual notices to Defendants here, under the law of this circuit, courts are [*10] under no duty to formally apprise a party against whom sanctions are being brought.

Defendants next argue that they were denied a "fair opportunity to be heard" when the Court rejected their July 31, 2006 letter replying to Plaintiff's July 27, 2006 opposition papers seeking sanctions against Defendants. *See* Deft.'s Mem. at 6. Defendants argue that "if plaintiff's July 27<th> letter (Docket Entry 84) was a motion for sanctions, defendant would have been entitled as a matter of law and under the Court's rules to respond to the letter motion and have the Court consider its response." *See id.* This is an argument of convenience. Plaintiff's letter dated July 27, 2006 [DE 84], was filed as a "response" in opposition to Defendant's motion, not as a cross-motion. Therefore, Defendants' submission was rejected since my Individual Practice Rule III(A)(1) prohibits the filing of such replies on letter motions. Defendants never sought the Court's permission in advance to file a reply as they could have done.

In contrast to practice before state courts in New York, there is no requirement, in the context of letter motion practice in federal court, that a moving party serve another party with a notice [*11] of cross-motion demanding relief. *See N.Y. C.P.L.R. § 2215* (McKinney 2006). Rather, *Local Civil Rule 37.3(c)*, permits the parties to raise any "discovery" or "non-dispositive pretrial dispute" to the Court "by letter not exceeding three pages in length outlining the nature of the dispute and attaching relevant materials." *Local Civil Rule 37.3(c)*. Several different courts, including this one, have heard sanction motions by letter. *See Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166, 2006 U.S. Dist. LEXIS 73035, 2006 WL 2882580, at *1 (E.D.N.Y. Oct. 6, 2006); *Kormendi v. Computer Assocs. Int'l, Inc.*, No. 02-CV-2996, 2003 WL 21108408, at *1 (S.D.N.Y. May 14, 2003); *Old Country Toyota Corp. v. Toyota Motor Distrib., Inc., 168 F.R.D. 134, 135 (E.D.N.Y. 1996)*. In the interest of judicial economy, I scheduled an in-person conference with the parties to discuss the unusual circumstances surrounding Plaintiff's Rule 35 examination and to address the issues raised in Defendants' letter motion and Plaintiff's response. *See* [DE 86]. At the August 22, 2006 oral argument, I informed the parties that "there are a couple of things that I want to state for the record that I am going to give you an opportunity to speak on if you [*12] choose to do so." TR. at 3. Further on during the August 22, 2006 oral argument, I inquired whether "there is anything further with respect to this issue that either of you wants to address before I go ahead and rule?" TR. at 5. Thereafter, Attorney Camhi discussed the issues raised in his previously rejected July 31, 2006 reply letter, which I permitted to be both part of the record of the oral argument and part of my consideration on these issues prior to ruling.

The Court is well aware that the subject of a motion for sanctions is entitled to an opportunity to be heard. *See Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997); Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir. 1997)*. The Court can properly exercise its discretion and choose to hear the parties' respective positions during oral argument rather than by a letter filing. The Second Circuit has stated that a

> hearing at which the subject of a sanctions motion speaks and argues vindicates a purpose that is *sui generis*. It is this latter purpose to which the phrase 'opportunity to be heard' aspires in our context... A district court will often exercise its discretion to provide someone facing this jeopardy the opportunity to [*13] speak to the very court that is about to pronounce judgment.

*Schlaifer Nance & Co., Inc., 194 F.3d at 335*. As the Supreme Court and Second Circuit have stated, a court should have the power to hear cases in a manner it sees fit "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); Revson, 221 F.3d 78*. Therefore, the Court's proper exercise of its discretion to hear Defendants' position orally in this instance, rather than by letter, did not deprive Defendants of their fair opportunity to be heard nor did it prejudice them in any way.

**B. The Imposition of Sanctions**

Defendants argue that it was an abuse of discretion for sanctions to be imposed. *See* Deft.'s Mem. At 6-12. In support of this proposition, they advance several arguments. First, Defendants assert that the Court did not specify the authority governing the imposition of sanctions. Second, they argue that the Court improperly imposed sanctions based on its inherent authority to do so since there was no finding of bad faith -- a prerequisite to the Court imposing sanctions under its inherent authority. *Schlaifer Nance & Co., Inc.*, 194 F.3d at 336. [*14] Third, Defendants argue that Attorney Camhi did nothing improper by appearing at the *Rule 35* examination because "only if plaintiff's counsel attempted to be in the *examining room* during the examination or tape record it would there be a dispute which required the Court's involvement." Deft.'s Mem. at 8. Finally, Defendants claim that the sanctions imposed are improper because they "have no relation to the alleged misconduct" since "no evidence was presented, and there is nothing in the record to support a conclusion that Dr. Solomon has been tainted by anything that occurred, such that he should not be permitted to act as the expert in this case." Deft.'s Mem. at 11. However, Defendants do not provide any "matters or controlling decisions" that the Court overlooked, which if considered, "would have mandated a different result." *Durant v. Traditional Inv., Ltd.*, No. 88-CV-9048, 1990 U.S. Dist. LEXIS 4768, 1990 WL 269854, at *1 (S.D.N.Y. Apr. 25, 1990).

### 1. Inherent Authority to Impose Sanctions

Federal courts have a "well-acknowledged inherent power to levy sanctions in response to abusive litigation practices." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 135-136 (2d Cir. 1998) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980)). [*15] The Second Circuit has held that a district court "may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed." *Mackler Prod., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998). Moreover, the fact that a Court does not refer to a specific statute or rule as the basis for the sanctions "does not limit a court's inherent power to fashion sanctions, even in situations similar or identical to those contemplated by statute or rule." *Id. at 136* (quoting *Chambers*, 501 U.S. at 45-46). Despite the foregoing broad powers, "because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 41.

An award of sanctions pursuant to a court's inherent authority requires both "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes, and a high degree of specificity in the factual findings of the [the] lower courts." *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986), cert. denied, 480 U.S. 918, 107 S. Ct. 1373, 94 L. Ed. 2d 689 (1987). [*16] Therefore, prior to imposing sanctions under the court's inherent authority, there must be "clear evidence that (1) the offending party's claims were entirely without color, and (2) the party acted in bad faith, that is "motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co., Inc.*, 194 F.3d at 336; *see also Agee v. Paramount Commc'n, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997).

### 2. Finding of Bad Faith

A review of the caselaw on sanctions demonstrates that bad faith is the "touchstone" for a sanctions award. *See United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991); *United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000). With this admonition in mind, an analysis of my finding of bad faith is required. At the August 22, 2006 oral argument, Attorney Camhi stated that "there was nothing untoward that was discussed or inappropriate as to what happened on that day. I was in the waiting room; I didn't go into the examination room while Mr. Hodge was being examined. As soon as he went into the back, I went outside to make a phone call." Tr. at 7-8. Attorney Camhi represented that the reason he appeared at the *Rule 35* examination was "to make certain [*17] that the examination went forward in a way that was appropriate, which is without someone from Mr. Brewington's office being in attendance in the examination room." Tr. at 7. The asserted reason Attorney Camhi appeared at the *Rule 35* examination was to prevent Plaintiff from tape recording the examination. *See* Tr. at 8 ("I just needed to be there to make certain that it didn't happen").

Attorney Camhi specifically stated,

> I think that in representing my client vigorously as I think I have an obligation to do, I just wanted to make certain that there was not going to be any undue interference with the session. I don't

believe that going and just appearing in the waiting room and having the benign - apparently benign conversation as described by her clients as to what happened that day that there was anything intimidating about my being there or inappropriate about my being there when Mr. Hodge was being represented at that session by Mr. Brewington's office.

Tr. at 10.

I disagree. The very thing which Attorney Camhi claims he sought to avoid - undue interference - was precisely what his presence at the examination caused. As I stated in the record on August 22, 2006, there is a marked difference [*18] between vigorous representation and sharp litigation practices. The course of events surrounding Attorney Camhi's presence at the *Rule 35* examination were well beyond the bounds of vigorous litigation practices. Plaintiff here was not "represented" by anyone at the *Rule 35* examination. Rather, Plaintiff was accompanied by Lougliste Joseph, a non-attorney employed by the Law Offices of Frederick K. Brewington, who ostensibly drove Plaintiff to the examination. It is clear from the history of suspicion and animosity which has permeated this case on both sides that the presence of Defendants' counsel reflects more than mere protection of a client's interests.

Courts agree that the "success of a given psychiatric exam relies on an unimpeded conversation between physician and patient." *Duncan v. UpJohn*, 155 F.R.D. 23, 26 (D. Conn. 1994) (citing *Tomlin v. Holecek*, 150 F.R.D. 628, 632 (D. Minn. 1993)); *see also Brandenburg v. El Al*, 79 F.R.D. 543, 546 (S.D.N.Y. 1978). As the court opined in *Hirschheimer v. Assoc. Minerals & Mineral Corp.*, No. 94-CV-6155, 1995 U.S. Dist. LEXIS 18378, 1995 WL 736901, at *3 (S.D.N.Y. Dec. 12, 1995), the presence of an attorney at a *Rule 35* examination "would tend to impair its effectiveness [*19] and render it adversarial... Second, an attorney who is present at an examination becomes a potential witness in the client's trial, thus raising conflict of interest problems." *Id. at *3*. I find that the conduct exhibited by Defendants' counsel in appearing at the *Rule 35* examination, in speaking with Plaintiff, and in attempting to control the environment of the examination, constitutes bad faith.

Defendants' counsel points out that the cases addressing this issue are directed only to the presence of the attorney representing the person to be examined, typically a Plaintiff. That reasoning completely overlooks an equally logical conclusion, namely, that the attorney who seeks to have the opposing party examined would not put himself in the position of showing up at such examination for the very purpose of avoiding the appearance of interference and intimidation. Further elaboration of the conduct referred to is required here. Attached as exhibits "B," "C," and "D" to Plaintiff's papers are letters between Attorney Camhi and Plaintiff's counsel where the parties trade barbs as to the reasons behind Plaintiff's rescheduling of the *Rule 35* examination. *See* [DE 84]. In his July 11, 2006 [*20] letter, defense counsel asks for the "nature of the emergency," which necessitated the rescheduling. *Id.* [3] In addition, a review of the transcripts of Plaintiff's deposition supports the characterization proffered by Plaintiff's counsel that defense counsel's interactions with Plaintiff were "aggressively adversarial." *Id.* For example, at several points during the deposition, Plaintiff's counsel interrupts Attorney Camhi's examination by stating "there's no need to beat him up" and "there's no need to yell." *Id.* Along with their letter, Plaintiff's counsel submitted two documents, both entitled, "IME Report" from Plaintiff and Mr. Joseph. [4] These averments are unsworn. Therefore, these reports are not evidence, but rather may more aptly be characterized merely as "statements." *See, e.g., Godineaux v. Laguardia Airport Marriot Hotel*, 460 F. Supp. 2d 413, 2006 WL 3190662, at *3 (E.D.N.Y. 2006). In rendering my decision, I have considered these statements nothing more than representations for the limited purpose of showing Plaintiff's state of mind in seeing Attorney Camhi appear at the *Rule 35* examination. Plaintiff states that upon seeing Camhi at the examination he "felt a little [*21] nervous most likely because of Mr. Camhi's behavior towards me at the end of the last deposition [sic] Mr. Camhi acted intimidating towards me." *See* Ex. F [DE 84]. Plaintiff further states that Attorney Camhi spoke, in private, with Dr. Solomon, the examining mental health professional. This assertion is corroborated by Mr. Joseph in his report. *See id.*

3   In a July 10, 2006 letter to defense counsel, Plaintiff's counsel states that "Plaintiff was unable to attend [the *Rule 35* examination] due to an emergency at his place of employment." *See* Ex. B to [DE 84].

4   Although both documents are dated July 17,

Case 1:07-cv-05471-BSJ-KNF   Document 46-6   Filed 07/25/2008   Page 7 of 9

Page 7
2007 U.S. Dist. LEXIS 72871, *21

2006 and entitled, "IME Report," they are in fact two separate statements from Lougliste Joseph and Plaintiff James Hodge concerning the events which transpired at the *Rule 35* examination. *See* Ex. F, G [DE 84].

Defendants' counsel further argues that the Court could not properly make a finding of bad faith based upon certain comments made in the record at the August 22, 2006 argument. *See* Deft.'s Mem. at 9. Defendants' counsel misinterprets the Court's response to his representation that he only attended the *Rule 35* examination "to object if Plaintiff wanted to tape record the examination." [*22] TR. at 19. I stated that "I accept that representation; I believe it is sincere. I don't question that Mr. Camhi, but I also believe that it is errant and a mistake in judgment." *See id.* However, defense counsel was not the only one present at that time and I am also considering the statements of those who were, particularly as to Plaintiff's state of mind in observing defense counsel's conduct at that time. Defendants argue that the Court cannot simultaneously accept defense counsel's representation and find that his actions gave rise to an inference of bad faith. *See* Deft.'s Mem. at 9. However, defense counsel's subjective assessment of his conduct as being proper does not mean that an objective assessment of the same circumstances yields the same result. Based upon the record in this litigation, I find that Defendants' counsel's actions give rise to an inference of bad faith, thereby warranting the imposition of sanctions.

### 3. Unauthorized Contact with Rule 35 Examining Physician

This Court has held that "the presence of attorneys at psychiatric examinations has been denied in the federal courts because of the special nature of such an examination 'which relied ... upon unimpeded one-on-one [*23] communication between doctor and patient.'" *Di Bari v. Incaica Cia Armadora, S.A., 126 F.R.D. 12 (E.D.N.Y. 1989)* (quoting *Brandenberg, 79 F.R.D. at 546*)). "Far from being adversarial in nature, these examinations should be divested as far as possible of any adversary character." *Id.* Despite the foregoing caution, Defendants argue that Attorney Camhi's presence at the *Rule 35* examination "did not violate any rule, order, statue or case law." *See* Deft.'s Mem. at 9. However, unauthorized contact with a *Rule 35* examining physician has been held to warrant the imposition of sanctions. *Ewing v. Ayres Corp., 129 F.R.D. 137 (N.D. Miss. 1989)* is one example. In *Ewing*, plaintiff's counsel made *ex parte* contact with the independent medical examiner by providing him with a copy of the medical deposition in the case. *Id.* The Court in *Ewing* held that "the contact of Dr. Kaplan by plaintiff's attorney warrants the imposition of sanctions." *Id. at 138*. The Court reasoned that the "independence of the *Rule 35* examining physician should be preserved at all times. Any contact by counsel for either party that even gives the appearance of tainting the independence of the physician cannot be sanctioned." [*24] *Id.*

Defendants final argument is that Dr. Solomon should be permitted to conduct the *Rule 35* exam in this case since "no evidence was presented, and there is nothing in the record to support a conclusion that Dr. Solomon has been tainted by anything that occurred, such that he should not be permitted to act as the expert in this case." *See* Deft.'s Mem. at 11. Because of the circumstances which occurred in Dr. Solomon's office on the date of the scheduled *Rule 35* examination, I find that Dr. Solomon's position has been tainted. This conclusion is further supported by the fact that Dr. Solomon has now provided an Affidavit, as part of Defendants' motion, regarding his observations of what took place in his office that day. The Court in *Ewing* fashioned a sanction with conditions similar to those outlined in my Order including using another untainted physician to conduct the examination and in making plaintiff's counsel pay the costs of the expert. *Ewing, 129 F.R.D. at 138*. Further, although Plaintiff has sought a more severe sanction in the form of preclusion of any *Rule 35* examination, I have rejected that option as stated in the record on August 22, 2006, I did not wish to "penalize [*25] and prejudice the clients of either of Defendants' counsel." TR. at 22. In addition, *Rule 35* confers on the moving party "no absolute right to choose the examiner" and "the Court has the authority to reject an examiner proposed by a party upon sufficient showing of bias or prejudice." *McKitis v. DeFazio, 187 F.R.D. 225, 227 (D. Md. 1999)*.

As stated in the record on August 22, 2006, Dr. Solomon is not permitted to conduct Plaintiff's *Rule 35* examination. The directives outlined in my August 22, 2006 Order ensure that the Plaintiff's *Rule 35* examination is conducted in a non-adversarial matter by an impartial neutral examiner. These prophylactic measures safeguard the spirit and intent with which the *Rule 35* examination should be conducted.

Case 1:07-cv-05471-BSJ-KNF   Document 46-6   Filed 07/25/2008   Page 8 of 9

Page 8
2007 U.S. Dist. LEXIS 72871, *25

## IV. CONCLUSION

As noted, Defendants' motion does not point to any controlling decisions or data that the court overlooked which might reasonably be expected to alter the conclusion reached in my August 22, 2006 Order. Nonetheless, taking into account all of the circumstances and argument presented here, I am modifying my August 22, 2006 Order to the following limited extent:

* As to Ruling No. 1 -- the law firm of Jaspan, Schlesinger & Hoffman LLP may [*26] use any expert, other than Dr. Solomon.

* As to Ruling No. 5, payment of expert's fee regarding time spent at the expert's deposition, the fee is to be divided equally with Plaintiff paying 50% and Defendants paying 50%.

In all other respects, the motion for reconsideration is DENIED.

**SO ORDERED.**

Dated: Central Islip, New York

September 28, 2007

/s/ A. KATHLEEN TOMLINSON

U.S. Magistrate Judge

# SLIP SHEET

# SLIP SHEET

# SLIP SHEET