LEXSEE 427 F.3D 1232



Caution
As of: Jul 25, 2008

WILLIAM J. QUIGLEY and DOROTHY QUIGLEY, Plaintiffs-Appellants, v.
SAUL F. ROSENTHAL, in his individual capacity and in his capacity as
representative of the Anti-Defamation League, and the ANTI-DEFAMATION
LEAGUE, Defendants-Appellees.

No. 04-1501

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

427 F.3d 1232; 2005 U.S. App. LEXIS 22327; 63 Fed. R. Serv. 3d (Callaghan) 289

October 17, 2005, Filed

**PRIOR HISTORY:** [**1] APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO. (D.C. No. 94-N-2782).
*Quigley v. Rosenthal, 327 F.3d 1044, 2003 U.S. App. LEXIS 7606 (10th Cir. Colo., 2003)*

**DISPOSITION:** AFFIRMED.

**COUNSEL:** Robert T. Fishman, Denver, Colorado (Jay S. Horowitz, Horowitz Wake & Forbes, Denver, Colorado, and Nancy Gegenheimer, Holme Roberts & Owen, LLP, Denver, Colorado, with him on the briefs), for plaintiffs-appellants.

Shelley B. Don, (Watson W. Galleher with her on the brief), Don, Hiller & Galleher, P.C., Denver, Colorado, for defendants-appellees.

**JUDGES:** Before BRISCOE, HARTZ, Circuit Judges, and HERRERA, District Judge. *

   * The Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, sitting by designation.

**OPINION BY:** BRISCOE

**OPINION**

[*1233] **BRISCOE**, Circuit Judge.

Plaintiffs William and Dorothy Quigley appeal from the district court's denial of their motion for attorneys' fees and non-taxable litigation costs. We exercise jurisdiction pursuant to *28 U.S.C. § 1291* and affirm.

I.

The underlying factual and procedural history of this civil action is detailed in *Quigley v. Rosenthal, 327 F.3d 1044 (10th Cir. 2003)*, and will not be repeated here. In sum, the Quigleys filed suit in federal court [**2] against defendants the Anti-Defamation League (ADL) and Saul Rosenthal, the director of the ADL's Denver office, asserting various claims under federal and state law. Six of the Quigleys' claims, including claims under the Federal Wiretap Act, *18 U.S.C. §§ 2511(1)(d)* and *2520(a)* (based on the defendants' interception and use of the Quigleys' cordless telephone conversations), proceeded to trial in April 2000 and were submitted to a jury following approximately sixteen days of trial. On April 28, 2000, the jury found in favor of the Quigleys on five of those claims, including the claims under the Federal Wiretap Act, and awarded them damages in excess of $ 10,000,000.00.

427 F.3d 1232, *1233; 2005 U.S. App. LEXIS 22327, **2;
63 Fed. R. Serv. 3d (Callaghan) 289

On May 12, 2000, the Quigleys filed a motion for attorneys' fees and non-taxable litigation costs pursuant to the Federal Wiretap Act, *18 U.S.C. § 2520(b)(3)*. On April 5, 2001, the district court issued an order denying the Quigleys' motion for fees without prejudice. In doing so, the district court stated as follows:

> Upon review of plaintiffs' motion and defendants' response thereto, the procedural posture of this case, and taking into account the parties' inability [**3] to agree on even the minutest of issues, I am of the opinion that the adjudication of plaintiffs' motion at this time would run counter to the principles of judicial economy. In light of an almost certain appeal by defendants (and possibly a cross-appeal by plaintiffs) of the jury's verdict, as well as my rulings before, during, and after trial, I find that it would be a waste of this court's limited resources to address the issue of attorney fees prior to an appellate decision or other final resolution of this case. By staying my decision on this issue, I do not mean to suggest that I doubt the outcome of my rulings or the jury's verdict on appeal. Rather, I am merely recognizing that, in the event the Tenth Circuit was to reverse the jury's verdict on plaintiffs' wiretap claim - the only claim under which plaintiffs' [sic] could conceivably recover attorney fees - any action taken on plaintiffs' motion for attorney fees would be for naught. Moreover, I am convinced that, despite plaintiffs' assurances to the contrary, the adjudication of attorney fees in this case will erupt into "second major litigation."
>
> For these reasons, and the additional reason that a ruling on plaintiffs' [**4] motion is unnecessary to perfect either party's right to appeal the substantive issues in this case, I conclude that plaintiffs' motion is not ripe for review at this time. [*1234] Accordingly, plaintiffs' motion for attorney fees and non-taxable costs is denied without prejudice. Plaintiffs may, consistent with this Order, renew their motion if future circumstances warrant. Furthermore, given plaintiffs' counsel's proclivity to view my rulings as an interactive process, whereby I rule on an issue and counsel submits subsequent commentary on that ruling in the form of a motion (or motions) to reconsider - much like the "Sentence First - Verdict Afterwards" type of procedure parodied in *Alice in Wonderland* - plaintiffs' counsel is hereby advised that any motion for reconsideration of this Order is denied prospectively.

App. at 547-48 (emphasis added). The district court's order ended with this verbiage: "Plaintiffs' motion for attorney fees and non-taxable costs . . . is DENIED without prejudice." Id. at 548.

Defendants subsequently filed an appeal. This court affirmed in part and reversed in part, leaving intact the Quigley's judgment against defendants on their Federal [**5] Wiretap Act claims. Defendants then filed a petition for writ of certiorari with the Supreme Court. On March 1, 2004, the Supreme Court denied the defendants' petition. *Anti-Defamation League v. Quigley*, 540 U.S. 1229, 158 L. Ed. 2d 172, 124 S. Ct. 1507 (2004).

On March 11, 2004, the parties filed pleadings with the district court advising there had been complete satisfaction of the judgment on the merits against the defendants. Those pleadings indicated, however, that the satisfactions filed did not address, satisfy or release the defendants from the Quigleys' asserted claim for attorneys' fees. On June 14, 2004, the district court, on its own initiative, entered an "amended final judgment." App. at 568-78. The stated purpose of the amendment was to comply "with the mandate of the United States Court of Appeals for the Tenth Circuit filed with the district court on September 22, 2003 . . . ." Id. at 568.

On July 29, 2004, the Quigleys filed a pleading entitled "Plaintiffs' Request For A Hearing Upon Their Motion for Attorneys Fees And Litigation Costs And Plaintiffs' Amendments To Their Motion." Id. at 579-612. The pleading requested the district court to schedule a hearing on their original motion for [**6] fees and costs (i.e., the motion filed on May 12, 2000), and purported to update and amend that original motion to include requests for fees and costs incurred since the filing of the original

motion. According to their proposed amendments, plaintiffs sought "a grand total of $ 6,377,945.20" in fees and "litigation costs in the amount of $ 133,431.10." Id. at 588.

On September 15, 2004, defendants filed a pleading entitled "Defendants' Motion To Dismiss Plaintiffs' Amendments To Their Motion For Attorney Fees And Litigation Costs." Id. at 618. Defendants' motion asserted, in pertinent part, that "plaintiffs failed to comply with the mandatory requirements of *F.R.C.P. 54(d)(2)(B)* by not filing their Fee Claims within fourteen days of [the district court's] Final Amended Judgment [on June 14, 2004] . . ." [1] Id. at 619.

> [1] Defendants also argued that (1) "plaintiffs failed to comply with *D.C.COLO.LCivR 54.3* which sets forth the required information that must be contained in a motion for fees," (2) approximately $ 3.8 million of plaintiffs' requested fees were based on the contingent fees earned by plaintiffs' counsel, (3) "plaintiffs waived their right to assert their Fee Claims by not presenting them to the jury at trial, and now were asserting their Fee Claims in a fashion that would violate Defendants' right to have a jury decide the issues that Plaintiffs were pressing," (4) "plaintiffs had already been 'made whole' by ADL's payment of the judgment," (5) "any additional recovery would . . . be an impermissible windfall to plaintiffs' counsel, who had already been paid more than $ 6 million in fees in this case," (6) "plaintiffs were seeking a fee award for an improper purpose - to further punish Defendants," (7) plaintiffs' fee claims were "unconscionably excessive," and (8) most of plaintiffs' "expenses had nothing to do with their wiretap claims." Id. at 619-20. The district court granted defendants' motion to dismiss without reaching these additional arguments. These additional arguments are therefore not the focus of this appeal.

[**7] [*1235] Plaintiffs filed a pleading in opposition to the defendants' motion to dismiss. In arguing that their June 29 pleading was timely filed, plaintiffs asserted that the district court "did not 'rule on' [their original motion] for fees" or "establish 'a new period for filing' [their] motion for fees," and thus "the logical construction of the [district court's] April 5, 2001 Order was that the [district court] . . . 'deferred' ruling on [their original] motion for fees, specifically authorizing [them] to further prosecute their Motion if 'future circumstances' warranted." Id. at 746, n.1. Alternatively, plaintiffs argued that, "were [the district court] to adopt [defendants'] unsupported position that a 'second filing' was required, the [plaintiffs'] failure to have effected such a filing at some still undesignated deadline . . . must be considered 'excusable neglect,' [and] not a basis for rejecting [their] fees application altogether." Id. at 748, n.5.

On November 24, 2004, the district court issued an order and memorandum of decision granting defendants' motion to dismiss plaintiffs' amendments to their motion for attorneys' fees and denying plaintiffs' [**8] motion for attorneys' fees. In doing so, the district court began by noting that it had expressly dismissed without prejudice plaintiffs' original motion for attorneys' fees and costs. In light of that ruling, the district court concluded, it was not appropriate for plaintiffs to "file a request for a hearing upon a motion that [the district court] resolved years earlier," and "such a request could neither renew plaintiffs' initial motion, []or relate back to plaintiffs' initial motion." Id. at 821. In other words, the district court emphasized, "the 'impression' from [its] order denying plaintiffs' initial motion for attorneys' fees was clear: if plaintiffs wished to receive attorneys' fees at the conclusion of the appeal, they would have to file a new motion in order to renew their request." Id. at 823. The district court further noted that it had entered an amended final judgment on June 14, 2004, in order to comply with the Tenth Circuit's mandate. Id. at 819. "In order for plaintiffs to bring before the court their request for fees," the district court concluded, they "were required to file a new motion for attorneys' fees within the statutory time period" set [**9] forth in *Federal Rule of Civil Procedure 54(d)(2)(B)*, i.e., within fourteen days after entry of the amended final judgment. Id. at 820. Because plaintiffs' motion was filed approximately forty-five days after the entry of the amended final judgment, the district court concluded plaintiffs' motion (to the extent it was construed as a new motion for fees and costs) was untimely and plaintiffs were "not entitled to attorneys' fees unless they [could] show excusable neglect." Id. at 821-22. Finally, the district court noted that plaintiffs "had not even filed a proper motion for attorneys' fees after the entry of the amended final judgment," and thus had failed to establish excusable neglect. Id. at 822.

427 F.3d 1232, *1235; 2005 U.S. App. LEXIS 22327, **9;
63 Fed. R. Serv. 3d (Callaghan) 289

II.

Plaintiffs assert two basic arguments on appeal. First, plaintiffs contend that "neither *F.R.Civ.P. 54(d)(2)*, nor the district court's April 5, 2001 Order, required that [they] file a second motion for attorneys' fees" within a certain time period "following the appeal of this case, or following [*1236] the district court's possible entry, years later, of an amended final judgment." Aplt. Br. [**10] at 8. Second, and alternatively, plaintiffs argue that even if we conclude their motion was untimely under *Rule 54(d)(2)*, "the district court erred by ruling that [their] failure was not the result of 'excusable neglect.'" Id. at 9.

*Timeliness of plaintiffs' motion*

The Quigleys first argue that the district court erred in concluding that their July 29, 2004 pleading, if construed as a second or renewed motion for attorneys' fees and costs, was untimely under *Federal Rule of Civil Procedure 54(d)(2)*. More specifically, the Quigleys contend the district court erred in construing *Rule 54(d)(2)* as requiring them to have filed their second or renewed motion for fees and costs within fourteen days following the district court's entry of the final amended judgment (on June 14, 2004).

Generally speaking, we review for abuse of discretion a district court's ruling on a motion for fees and/or costs under *Rule 54(d)(2)*. See *Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180, 1190 (10th Cir. 2004)*. To the extent, however, the issue raised by the Quigleys implicates the district court's interpretation of *Rule 54(d)(2)*, we apply [**11] a de novo standard of review. See *Esposito v. United States, 368 F.3d 1271, 1275 (10th Cir. 2004)* ("We review de novo the district court's interpretation of the Federal Rules of Civil Procedure.").

*Rule 54(d)(2)* provides, in pertinent part, as follows:

> (A) Claims for attorneys' fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.
>
> (B) Unless otherwise provided by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made.

*Fed. R. Civ. P. 54(d)(2)(A)-(B)*.

The district court in this case effectively interpreted *Rule 54(d)(2)(B)*'s reference to "judgment" as encompassing the amended final judgment [**12] it filed on June 14, 2004. Thus, the district court concluded that *Rule 54(d)(2)(B)* required the Quigleys to file a second or renewed motion for costs and fees on or before June 28, 2004. The Quigleys, however, contend the "amended final judgment" filed in this case did not qualify as a "judgment" for purposes of *Rule 54(d)(2)(B)*, and therefore did not trigger the running of the fourteen-day time period for filing motions for costs and fees. More specifically, the Quigleys argue that because the amended final judgment "concerned only matters that had been fully and finally resolved and were, therefore, matters that were moot for purposes of appeal," *Rule 54* was not implicated and they were not required to file a new motion for fees and costs within fourteen days of the entry of the final amended judgment. Aplt. Br. at 13.

We reject the Quigleys' arguments. *Rule 54(a)* states: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." *Fed. R. Civ. P. 54(a)*. Speaking generically, it is beyond dispute that appeals can be taken from amended final judgments, including those entered following an appellate reversal [**13] or remand. Thus, although there was nothing in the amended final judgment [*1237] entered in this case that either party would have challenged, the amended final judgment nevertheless constituted a "judgment" for purposes of *Rule 54* (and the Federal Rules of Civil Procedure in general). E.g., *United States v. Colvin, 204 F.3d 1221, 1224 (9th Cir. 2000)* (concluding that appeal could have been taken from amended judgment entered following appellate remand); *United States v. Lineberger, 88 Fed. Appx. 655, 655 (4th Cir. 2004)* (entertaining appeal taken from amended judgment issued after appellate remand).

The Advisory Committee's Notes accompanying *Rule 54* bolster this conclusion. Those Notes explain, in pertinent part, how a district court may handle a request for costs and fees under *Rule 54(d)(2)(B)* and outline what happens if an amended judgment is entered following an appeal:

> If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under *subdivision (d)(2)(B)* a new period for filing after the appeal has been resolved. A notice [**14] of appeal does not extend the time for filing a fee claim based on the initial judgment, but the court under *subdivision (d)(2)(B)* may effectively extend the period by permitting claims to be filed after resolution of the appeal. A new period for filing will automatically begin if a new judgment is entered following a reversal or remand by the appellate court or the granting of a motion under *Rule 59*.

*Fed. R. Civ. P. 54*, Advisory Committee Notes, 1993 Amendments (emphasis added). Clearly, the Notes anticipate the filing of a new "judgment" following reversal on appeal, and expressly indicate that the entry of such a judgment triggers the running (for a second time) of the fourteen-day time period set forth in *Rule 54(d)(2)(B)*.

In sum, the district court correctly concluded that the amended final judgment it entered on June 14, 2004, constituted a "judgment" for purposes of *Rule 54* (and the Federal Rules of Civil Procedure in general), and thus triggered the running of a new fourteen-day period for the Quigleys to file a second or renewed motion for costs and fees. The district court was in turn correct in concluding that the Quigleys' [**15] motion, filed on July 29, 2004, was untimely under *Rule 54(d)(2)(B)*.

*Excusable neglect*

In their second and alternative argument, the Quigleys contend that even if we conclude their second or renewed motion for costs and fees was untimely under *Rule 54(d)(2)*, "the district court erred by ruling that [their] failure [to file within the fourteen day period set forth in *Rule 54(d)(2)(B)*] was not the result of 'excusable neglect.'" Aplt. Br. at 9. Under *Federal Rule of Civil Procedure 6(b)(2)*, a district court "for cause shown may at any time in its discretion" consider an untimely motion for costs and fees under *Rule 54(d)(2)* "where the failure to" timely file "was the result of excusable neglect . . . ." *Fed. R. Civ. P. 6(b)(2)*. We review for abuse of discretion a district court's decision whether or not to consider such an untimely motion. See *Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1288 (10th Cir. 2002)*.

In their response to the defendants' motion to dismiss their renewed or second motion for costs and fees, the Quigleys only briefly mentioned the issue of excusable [**16] neglect, arguing as follows:

> Were this Court to adopt [defendants'] unsupported position that a "second filing" was required, the Quigleys' failure to have effected such a filing at some [*1238] still undesignated deadline, which even [defendants] cannot now specify and which this Court never established, must be considered "excusable neglect," not a basis for rejecting the Quigleys' fees application altogether.

App. at 748, n.5. The district court rejected this argument, concluding the Quigleys "had set forth no valid reasons or arguments why an untimely motion for attorneys' fees was the result of excusable neglect." Id. at 822. "Indeed," in the district court's view, the Quigleys' "had not even filed a proper motion for attorneys' fees after the entry of the amended final judgment." Id.

After carefully examining the record on appeal, we conclude the district court did not abuse its discretion in rejecting the Quigleys' excusable neglect arguments. As the district court correctly noted, the Quigleys alleged no facts that we would recognize as constituting excusable neglect. See generally *United States v. Torres, 372 F.3d 1159, 1161-62 (10th Cir. 2004)* [**17] (discussing concept of excusable neglect). Instead, the sole reason for the Quigleys' delay in filing their motion for fees was their mistaken conclusion that the amended final judgment entered by the district court did not qualify as a "judgment" for purposes of *Rule 54(d)(2)(B)*. Because it is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of *Rule 6(b)*, the district

court acted well within its discretion in refusing to consider the Quigleys' untimely motion. See *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 392, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)*; *Torres, 372 F.3d at 1163-64* ("Counsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless the word excusable is to be read out of the rule.") (internal quotation omitted).

AFFIRMED.

SLIP SHEET

SLIP SHEET

SLIP SHEET

LEXSEE 947 F. SUPP. 654



Analysis
As of: Jul 25, 2008

VINCENT TREROTOLA, Plaintiff, -against- LOCAL 72 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS AND LOCAL 858 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendants.

96 Civ. 0555 (DNE)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*947 F. Supp. 654; 1996 U.S. Dist. LEXIS 20397*

**April 2, 1996, Decided**
**April 2, 1996, FILED**

**DISPOSITION:** [**1] Defendants' Rule 2(b) motion DENIED. Defendants' 6(b)(2) motion DENIED.

**COUNSEL:** For Plaintiff: PHILLIP C. LANDRIGAN (PL3023), White Plains, New York.

For Defendants: COHEN, WEISS AND SIMON, NEW YORK, N.Y.

**JUDGES:** David N. Edelstein, U.S.D.J.

**OPINION BY:** David N. Edelstein

**OPINION**

[*654] ORDER

*EDELSTEIN, District Judge*:

WHEREAS defendants Local 72 and Local 858 of the International Brotherhood of Teamsters ("defendants") move this Court to extend defendants' time to respond to plaintiff Vincent Trerotola's ("plaintiff") motion for summary judgement, pursuant to this Court's Individual Rule 2(b) ("Rule 2(b)"), or in the alternative, to accept a late response to plaintiff's motion for summary judgment, pursuant to *Federal Rule of Civil Procedure ("Rule") 6(b)(2)*; and

WHEREAS plaintiff filed the underlying motion for summary judgment on March 4, 1996; and

[*655] WHEREAS this motion for summary judgment was returnable on March 22, 1996; and

WHEREAS defendants' response to this motion was due prior to March 22, 1996; and

WHEREAS on March 15, 1996, the parties filed a stipulation for an extension of defendants' time to respond to plaintiff's motion for summary judgment; and

WHEREAS on March 19, 1996, [**2] this Court denied with prejudice the parties' stipulation for an extension of time because the stipulation violated this Court's Individual Rule 2(a), Memorandum Endorsement, *Trerotola v. Local 72 of the Int'l Bhd. of Teamsters*, 96 Cv. 0555 (Mar. 19, 1996); and

WHEREAS on March 22, 1996, defendants filed their response to plaintiff's motion for summary judgment; and

Page 2

947 F. Supp. 654, *655; 1996 U.S. Dist. LEXIS 20397, **2

WHEREAS on March 22, 1996, defendants also filed a motion for partial summary judgment with supporting documents and memorandum of law; and

WHEREAS defendants bring the instant motion pursuant to rule 2(b) or, in the alternative, pursuant to *Rule 6(b)(2)*, because defendants' response to plaintiff's underlying motion for summary judgment was not timely filed; and

WHEREAS under Rule 2(b), "all applications are due two days before the deadline for which the extension is sought," and

WHEREAS defendants filed the instant motion on March 22, 1996, the day of the deadline for which the extension was sought; and

WHEREAS defendants' Rule 2(b) motion is untimely; and

WHEREAS defendants' Rule 2(b) motion should be denied; and

WHEREAS under *Rule 6(b)(2)*, a court may grant an extension of time "upon [a] motion made after [**3] the expiration of the specified period" if "the failure to act was the result of excusable neglect"; and

WHEREAS in order to establish excusable neglect, "the moving party must show both good faith and a reasonable basis for not acting within the specified period[,]" *In re Del-Val Fin. Corp. Sec. Lit.*, 154 F.R.D. 95, 96 (S.D.N.Y. 1994) (citations omitted); *see also In re Prudential Sec. Inc.*, 158 F.R.D. 301, 303-04 (S.D.N.Y. 1994) ("'A finding of excusable neglect under *Rule 6(b)(2)* requires both a demonstration of good faith by the parties seeking the enlargement and a reasonable basis for not complying with the specified period.'") (quoting *Bruno v. Cook*, 1990 U.S. Dist. LEXIS 1497, at *5 (S.D.N.Y. 1990)); and

WHEREAS in the instant case, defense counsel explains that because of defense counsel's busy schedule, he contacted plaintiff's counsel seeking an extension of time to respond to plaintiff's motion for summary judgment, and plaintiff's counsel agreed to extend defense counsel's time to respond, and to defense counsel's drafting the aforementioned stipulation for an extension of time, (Affirmation in Support of Motion at 1-2, *Trerotola v. Local 72 of the* [**4] *Int'l Bhd. of Teamsters*, 96 Cv. 0555 (Mar. 21, 1996)); and

WHEREAS in a Memorandum Endorsement dated March 19, 1996, this Court denied with prejudice this stipulation because it violated this Court's Individual Rule 2(b), Memorandum Endorsement, *Trerotola v. Local 72 of the Int'l Bhd. of Teamsters*, 96 Cv. 0555 (Mar. 19, 1996); and

WHEREAS defense counsel attributes his failure to comply with this Court's Individual Rule 2(a) when drafting this stipulation to "an inadvertent misreading and misinterpretation of this Court's Individual Rule 2(a)," (Affirmation in Support of Motion at 3, *Trerotola v. Local 72 of the Int'l Bhd. of Teamsters*, 96 Cv. 0555 (Mar. 21, 1996)); and

WHEREAS defense counsel has submitted a memorandum in support of the instant *Rule 6(b)(2)* motion in which he states that "although the Supreme Court confirmed that the majority of decisions have held that 'inadvertence, ignorance of the rules, or mistakes construing the rules' do not usually constitute 'excusable' neglect,' the Court explained, 'it is clear that 'excusable neglect' under *Rule 6(b)* is a somewhat elastic concept and is not limited strictly to omissions cause by circumstances beyond control [**5] of the movant,'" (Defendant's Memorandum in [*656] Support of its Motion Pursuant to Rule 2(b) of the Court's Individual Rules or, in the Alternative, Pursuant to *Rule 6(b) of the Federal Rules of Civil Procedure* To Accept A Late Filing ("Defendants' Memo") 3 (quoting *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 381-82, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993))); and

WHEREAS defense counsel contends that "the Supreme Court pointed out that in the context of *Rule 6(b)* motions, 'the courts of appeals have generally recognized that "excusable neglect" may extend to inadvertent delays[,]'" *id.* at 2-3; and

WHEREAS defense counsel argues that inadvertent delay provides a sufficient basis for granting defendant's *Rule 6(b)(2)* motion, and provides this Court with substantial legal authority in support of this argument, *id.* at 7-9 (citing *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486 (10th Cir. 1995); *Allison v. Eco Tech/Ram-Q Indus.*, 1993 U.S. App. LEXIS 12493, No. 92-1056, No. 92-1126 (4th Cir. May 26, 1993); *Hill v. Marshall*, 861 F.2d 720, available in 861 F.2d 720, 1988 U.S. App. LEXIS 14742 (6th Cir. Nov. 4, 1988); *Traguth v. Zuck,*

Case 1:07-cv-05471-BSJ-KNF    Document 46-7    Filed 07/25/2008    Page 10 of 11

Page 3
947 F. Supp. 654, *656; 1996 U.S. Dist. LEXIS 20397, **5

710 F.2d 90 (2d Cir. 1983); [**6] *Ruiz v. Cady*, 660 F.2d 337 (7th Cir. 1981); *Saldanha v. Baidyarov*, 91 Civ. 6413, 1992 U.S. Dist. LEXIS 8391 (S.D.N.Y. June 15, 1992); *Koch Supplies v. Charles Needham Indus.*, NO. 86-1330- CV-W-6, 1991 U.S. Dist. LEXIS 724 (W.D. Mo. 1991); *Ungar v. New York State*, No. 88 CV 2822, 1989 U.S. Dist. LEXIS 2832 (E.D.N.Y. Mar. 3, 1989); *MBA/Creative Connections, Inc. v. Binder*, No. 84 Civ. 4469, 1986 WL 5382 (S.D.N.Y. 1986); *Roders v. Roulette Records, Inc.*, No. 84 Civ. 8626, LEXIS Slip Opinion (S.D.N.Y. 1985); *Torres v. Torres*, 603 F. Supp. 440 (E.D.N.Y. 1985); *Kleckner v. Glover Trucking Corp.*, 103 F.R.D. 553 (M.D. Pa. 1984); *Figueroa v. Heckler*, No. 83 Civ. 7627 (S.D.N.Y. 1984); *Montrose v. Heckler*, 579 F. Supp. 240 (D. Me. 1984); *Sassower v. Grzymalski*, 78 Civ. 4989, LEXIS Slip Opinion (S.D.N.Y. 1979); *United States v. 38.80 Acres of Land*, 441 F. Supp. 890 (E.D. Okla. 1977); *Anderson v. Stanco Sports Library, Inc.*, 52 F.R.D. 108 (D.S.C. 1971); *Hoffman v. Kennedy*, 30 F.R.D. 50, 52 (E.D. Pa. 1962)); and

WHEREAS defense counsel also argues that this Court should grant the instant *Rule 6(b)(2)* motion because defense counsel has acted [**7] in good faith, because there was no delay resulting from defense counsel's actions, and because plaintiff has not been prejudiced by defendants' failure to file a timely response, *id.* at 4-6; and

WHEREAS plaintiff opposes defendants' motion to file an untimely response, (Affirmation in Opposition to Defendants' Motion to File Papers Out of Time, *Trerotola v. Local 72 of the International Bhd. of Teamsters*, 96 Cv. 0555 (April 1, 1996)); and

WHEREAS this Court notes that in other litigation involving the International Brotherhood of Teamsters, defense counsel repeatedly has failed to comply with filing deadlines, and repeatedly has demonstrated an inability to interpret and apply this Court's Individual Rule 2(a) regarding extensions of time, *see Georgeopolous v. International Bhd. of Teamsters*, 95 Civ. 5145; and

WHEREAS defense counsel filed a *Rule 6(b)(2)* motion in *Georgeopolous* because defense counsel failed properly to request an extension of time to file an answer to plaintiff Georgeopolous's amended complaint and, subsequently, failed to file a timely answer to plaintiff's amended complaint (Defendant's Supplemental Memorandum in Support of Motion To Accept [**8] Late Filing of Answer ("Georgeopolous Memo") at 8-9, *Georgeopolous v. International Bhd. of Teamsters*, 95 Civ. 5145 (Sept. 5, 1995)); and

WHEREAS defense counsel in *Georgeopolous* attributed these failures to inadvertent delay caused by defense counsel's misunderstanding of this Court's Individual Rule 2(a) regarding extensions of time, *id.*; and

WHEREAS in an Order dated November 29, 1995 ("November 1995 Order"), this Court stated that "this Court strongly disfavors *Rule 6(b)(2)* motions that assert that counsel's mere inadvertence constitutes excusable neglect," Order, *Georgeopolous v. International Bhd. of Teamsters*, 95 Civ. 5145, at 3 (Nov. 29, 1995) (citing *Allstate v. Administratia* [*657] *Asigurarilor De Stat, et al.*, 163 F.R.D. 196 (S.D.N.Y. 1995)); and

WHEREAS this Court's November 1995 Order found that although "defense counsel had made a perilous error that was merely caused by defense counsel's inadvertence, the interests of justice," defense counsel's ability to cure this error quickly, defense counsel's good faith, and the lack of prejudice that plaintiff suffered as a result of defense counsel's error militated in favor of granting defense counsel's *Rule* [**9] *6(b)(2)* motion, *id.*, and

WHEREAS this Court's November 1995 Order cautioned, however, that "defense counsel should not view this Court's ruling on the [*Rule 6(b)(2)* motion] as a license to disregard the requirements imposed by the Federal Rules of Civil Procedure, the Local Rules, or this Court's Individual Rules," *id.*; and

WHEREAS despite this Court's admonition in *Georgeopolous*, defense counsel has made a "perilous error" in the instant case as a result of "an inadvertent misreading and misinterpretation" of the same rule that defense counsel misread and misapplied in *Georgeopolous*--this Court's Individual Rule 2(a); and

WHEREAS as a result of repeating this error, defense counsel currently faces the possibility of default, as counsel faced in *Georgeopolous*; and

WHEREAS defense counsel has not only made the same error and proffered the same excuse as defense counsel did in Georgeopolous, but defense counsel's memorandum of law in support of the instant *Rule*

Case 1:07-cv-05471-BSJ-KNF   Document 46-7   Filed 07/25/2008   Page 11 of 11

Page 4

947 F. Supp. 654, *657; 1996 U.S. Dist. LEXIS 20397, **9

6(b)(2) motion is largely copied from the memorandum of law that defense counsel submitted in support of Georgeopolous's *Rule 6(b)(2)* motion, *compare* Defendants' Memo at 2-4 *with* Georgeopolous [**10] Memo at 2-4 (containing the exact same discussion of the legal standard for granting a *Rule 6(b)(2)* motion); Defendants' Memo at 6-7 *with* Georgeopolous Memo at 8-9 (containing the exact same arguments regarding counsel's good faith and lack of willful noncompliance); Defendants' Memo at 7-14 *with* Georgeopolous Memo at 9-17 (repeating the exact same discussion of case law that supports counsel's *Rule 6(b)(2)* motions); Defendants' Memo at 14-16 *with* Georgeopolous Memo at 17-19 (providing the exact same discussion of the relationship between *Federal Rule of Procedure 55(c)* and *Rule 6(b)(2)*); and

WHEREAS defense counsel cannot continue to flaunt the deadlines imposed by the Federal Rules, Local Rules, and this Court's Individual Rules and then seek this Court's indulgence by proffering the excuse of "inadvertence" and by submitting essentially the same memorandum of law; and

WHEREAS the Supreme Court has noted that "the majority of decisions have held that 'inadvertence, ignorance of the rules, or mistakes construing the rules' do not usually constitute 'excusable' neglect," *Pioneer, 507 U.S. at 391-92*; and

WHEREAS the decision to grant a *Rule 6(b)(2)* motion rests with [**11] the district court, *see* Fed. R. Civ. P 6(b)(2) (a "court for cause shown may at any time in its discretion" order an extension of time); and

WHEREAS this Court reiterates that it "strongly disfavors *Rule 6(b)(2)* motions that assert that counsel's mere inadvertence constitutes excusable neglect," Order, *Georgeopolous* (Nov. 29, 1996); *Allstate, 163 F.R.D. at 196*; and

WHEREAS this Court finds that the instant *Rule 6(b)(2)* motion should be denied; and

WHEREAS this Court further finds that defendants will not be prejudiced by a denial of the instant *Rule 6(b)(2)* motion because defendants have filed a cross-motion for summary judgement which contains all of the exhibits that defendants sought to submit with their papers in opposition to plaintiff's motion for summary judgment; and

WHEREAS this Court finds that counsel's inability to understand the plain language of this Court's Individual Rules not only is careless, but also fails to constitute the "reasonable basis for not acting within the specified period[,]" *Del-Val Fin. Corp., 154 F.R.D. at 96*, which is required to establish excusable neglect; and

WHEREAS this Court is deeply disturbed by defense counsel's continuous [**12] disregard for [*658] the requirements imposed by the Federal Rules of Civil Procedure, the Local Rules, and, particularly, this Court's Individual Rules; and

WHEREAS this Court also finds that defense counsel's reliance on the same excuses and memorandum of law to support the instant *Rule 6(b)(2)* motion that defense counsel used to support the *Rule 6(b)(2)* motion in *Georgeopolous* is disingenuous; and

WHEREAS this Court finds that such disingenuity borders on bad faith; and

WHEREAS defense counsel is warned that future behavior of this kind is an invitation to sanctions; and

WHEREAS defense counsel once again is advised to review the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Rules;

IT IS HEREBY ORDERED THAT defendants' Rule 2(b) motion is DENIED.

IT IS FURTHER ORDERED THAT defendants' 6(b)(2) motion is DENIED.

SO ORDERED

Dated: New York, New York

April 2, 1996

David N. Edelstein

U.S.D.J.