UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DANIEL A. GRAVES,                                :

        Plaintiff,                              :

    -against-                                   :

DEUTSCHE BANK SECURITIES, INC.,     :

        Defendant.                           :
------------------------------------------------------------ X

**MEMORANDUM and ORDER**

07 Civ. 5471 (BSJ)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Before the Court, in this action brought pursuant to the Age Discrimination in Employment Act of 1968, the Fair Labor Standards Act of 1938 and the New York City Human Rights Law, is the defendant's Fed. R. Civ. P. 11 sanctions motion. Also before the Court is a motion by the plaintiff, made pursuant to Fed. R. Civ. P. 15, for: (1) leave to amend and supplement his amended complaint; and (2) an order declaring that his reply to the defendant's opposition to his motion to amend was filed timely, or, alternatively, an order granting a "retroactive three-day extension" of the time for filing the reply. The motions are addressed below.

## BACKGROUND

Plaintiff David Graves ("Graves"), alleges the defendant, Deutsche Bank Securities, Inc. ("DBSI"), terminated his employment unlawfully because of his age; Graves is over 40 years of age. Graves contends DBSI: (i) hired four "young" vice-presidents -- who are approximately 34 years old; (ii) promoted them to the position of "Director"; (iii) transferred some of Graves'

clients to the younger Directors to prevent Graves from meeting his "revenue target"; and (iv) fired him, in 2004, because his "clients were 'needed for younger bankers.'" Graves maintains that, in response to an age discrimination and retaliation complaint he filed with the United States Equal Employment Opportunity Commission ("EEOC"), DBSI filed a "Position Statement"[1] with the EEOC, in which DBSI made false representations and provided "misleading extracts" from its "Franchise Revenue and Pipeline Reports"[2] ("the Reports"), in order to "cover-up" its discriminatory actions.

In July 2007, the defendant filed a motion to: (1) dismiss the plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(6); and (2) "strike prejudicial portions of the [c]omplaint under Fed. R. Civ. P. 12(f)." Specifically, DBSI sought to have allegations that it made misrepresentations to the EEOC, and the plaintiff's reference to 18 U.S.C. § 1001, which, inter alia, criminalizes knowingly and willfully concealing a material fact from, or making a materially false or fraudulent statement to, a government agency, removed from the complaint. That motion is still pending. In December 2007, the parties agreed that Graves could file an amended complaint ("the Amended Complaint"), which made minor changes to the original complaint.

In May 2008, DBSI filed the instant motion seeking sanctions against the plaintiff and his counsel, pursuant to Fed. R. Civ. P. 11(b)(3). According to DBSI, several of the allegations in Graves' amended complaint lacked evidentiary support and have harmed its reputation. Among

---

[1] A Position Statement is a document filed by a respondent in an EEOC administrative proceeding, explaining why, in the respondent's view, the EEOC should find a claimant's complaint of discrimination meritless.

[2] A "Franchise Revenue and Pipeline Report" also referred to as a "Franchise Pipeline Report" is a report compiled by DBSI of the actual and projected revenue each DBSI banker will, or is expected, to generate.

the allegations made by the plaintiff that prompted DBSI to make the sanctions motion are that DBSI: (a) backdated a report, to "minimize Graves pipeline [revenue] for 2003"[3] ("Backdating Claim"); (b) inflated the "pipeline revenue" of other bankers in its EEOC Position Statement, thereby creating a false impression of their performance; and (c) provided "'made up' Pipeline Revenue figures [in its EEOC Position Statement] to devalue Graves' deals and overvalue those of younger bankers."

The defendant contends sanctions against the plaintiff are warranted because "over the past ten months" Graves has refused to withdraw the above-noted allegations from the Amended Complaint "even after DBSI produced clear evidence" demonstrating these allegations are unfounded. The defendant maintains that charts, valuation data and calculations relied upon by Graves do not support his assertions. To refute that data, DBSI has submitted to the Court its own financial charts, tables and reports -- all of which were disclosed to the plaintiff through pretrial discovery activities -- to establish Graves' awareness that his misrepresentation allegations lack factual support. Furthermore, DBSI provided letters, from June and July 2007, it sent to Graves explaining DBSI's formula for calculating the revenue it attributed to each banker assigned to work on a particular "deal," and its "procedures and systems for recording booked and pipeline revenue," to demonstrate to Graves that the pipeline revenue documentation DBSI submitted to the EEOC was neither fabricated nor misleading.

The parties have also shared with the Court, through the submissions made in connection with the Fed. R. Civ. P. 11 motion, correspondence they exchanged, after DBSI provided the

---

[3]Pipeline revenue is the revenue projected to be generated from a transaction(s) that is expected to be completed in the future.

plaintiff with a draft of its sanctions motion. In a 33-page letter Graves sent to DBSI, he rebutted the assertions made by DBSI in its draft motion and provided facts he contends support his misrepresentation claim. Thereafter, the plaintiff sent an e-mail message to the defendant in which he made reference to a telephone call from the defendant and advised that he: (a) would "withdraw the backdating allegations and cross-references to backdating" from the amended complaint; and (b) was continuing to assess matters and would "get back further to you." The following day, the plaintiff sent another e-mail message to the defendant memorializing the substance of a telephone conversation the parties had. The following points were included in that e-mail message:

> First, [the plaintiff is] committing to review the allegations of the Complaint in light of the dropping of the backdating allegation, to determine whether further changes should be made in light of that change.
>
> Second, we are committing to review all the allegations in light of the very small amount of discovery produced by defendant.
>
> Third, I expect that there will be some changes, but cannot characterize today what those changes will be.
>
> Finally, we expect to finish these reviews and file a motion for leave to file a revised Complaint next week.

Graves urged DBSI not to seek sanctions. He explained to DBSI, <u>inter alia</u>, that some of the information respecting the method DBSI employed when calculating revenue was revealed to him, for the first time, in DBSI's proposed Fed. R. Civ. P. 11 motion. The plaintiff explained further that a second amended complaint, he intended to file, would not contain the Backdating Claim, and would provide additional factual details that he believed supported the misrepresentation claim. Furthermore, according to Graves, the backdating allegation he

proposes to withdraw had been pleaded appropriately, based upon the information available to him when the initial complaint was prepared and filed.

As noted above, in addition to the defendant's motion for sanctions, Graves has made a motion, pursuant to Fed. R. Civ. P. 15, for leave to file a second amended and supplemental complaint, "in order to take into account the result of the discovery produced to date by defendant." Thereafter, the plaintiff was permitted to supplant that pleading with a revised proposed second amended and supplemental complaint ("Revised Complaint"). The Revised Complaint omits the backdating allegation Graves asserted against DBSI, in his earlier pleadings, but retains the misrepresentation claim. The Revised Complaint also contains specific factual allegations explaining how, in the plaintiff's view, DBSI's EEOC Position Statement was designed to skew the EEOC's evaluation of the plaintiff's discrimination complaint. For example, to refute the assertion by DBSI that Graves' accounts were not reassigned to others, prior to Graves' termination, the plaintiff identifies his former clients, in the Revised Complaint, and indicates the DBSI personnel to whom they were reassigned. Moreover, the Revised Complaint explains why the Reports are a poor indicator of an individual banker's performance and how DBSI's use of redactions and excerpts from the Reports, in its EEOC Position Statement, was misleading. The 61-page Revised Complaint makes citation to 18 U.S.C. § 1001 and notes that the defendant was under a duty, imposed by that statute, to refrain from knowingly and willfully falsifying, concealing, or covering-up a material fact in its dealings with the EEOC.

The defendant opposes the plaintiff's motion to amend his complaint a second time. It maintains the plaintiff's proposed amendments are futile, because the plaintiff's Revised Complaint cannot withstand a Fed. R. Civ. P. 12(b)(6) motion. In addition, according to DBSI,

the plaintiff's motion was filed in bad faith to: (a) "rectify the sanctionable behavior," which prompted the defendant to file its Fed. R. Civ. P. 11 motion; and (b) "re-packag[e] his criminal fraud allegations."

## DISCUSSION

*Application to File*
*Second Amended Complaint*

The standard to be applied when considering an application for leave to amend or supplement a pleading is the same. See Gittens v. Sullivan, 670 F. Supp. 119, 123-24 (S.D.N.Y. 1987). Leave to amend or supplement a complaint should be freely given by a court when justice so requires. See Fed. R. Civ. P. 15(a)(2); Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995). A court may permit a party to supplement a pleading when a transaction, occurrence or event happens after the date of the pleading to be supplemented. See Fed. R. Civ. P. 15(d). "[U]ndue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment" are reasons upon which a court may rely in determining to deny a request to amend a complaint. Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). The determination to grant or deny a motion to amend a complaint is within the discretion of the Court. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). In the case at bar, as noted above, DBSI opposes Graves' motion to amend his complaint, for a second time, on the grounds of futility and bad faith.

*Futility*

"An amendment to a pleading will be futile if a proposed claim could not withstand a

motion to dismiss pursuant to [Federal] Rule [of Civil Procedure] 12(b)(6)." Dougherty v. North Hempstead Board of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). The plaintiff seeks to amend his complaint for a second time "in order to take into account the results of the discovery produced to date by defendant," specifically, documents showing "that some allegations of the existing Complaint may not be correct, that other allegations need to be re-framed to conform to the results of discovery to date." In addition, Graves contends that in light of the documents produced by DBSI, "additional allegations are appropriate." The plaintiff acknowledges that "[s]ome, but not all, of the allegations defendant challenges [in its motion for sanctions pursuant to Fed. R. Civ. P. 11] would be effected by the changes in the proposed" second amended and supplemental complaint.

As noted above, Fed. R. Civ. P. 15(d) permits a court to allow a party "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Here, the plaintiff wishes to modify his amended complaint based upon changed circumstances, to wit, information provided to the plaintiff by the defendant, through pretrial discovery activities, that has enlightened the plaintiff and caused him to reassess the propriety of asserting some of the factual allegations made previously by him in this action. Seeking permission to modify a pleading, in such a circumstance, is in consonance with Fed. R. Civ. P. 15(d).

In any event, where an amended pleading can survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), that is to say, the amended pleading offers factual allegations that make a litigant's claim(s) for relief plausible, barring the amendment, on the ground of futility, is inappropriate. See Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). A court must refrain

from dismissing a complaint for failure to state a claim if the factual allegations "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

Looking to the Revised Complaint, solely, the Court finds the factual allegations made by Graves give background information about misconduct allegedly engaged in by DBSI before the EEOC, and explain the bases for the plaintiff's assertion that DBSI discriminated against him intentionally. Furthermore, the plaintiff's reference to 18 U.S.C. § 1001 is not an attempt to prosecute a criminal claim through this civil action since, as both parties concede, no private right of action exists under 18 U.S.C. § 1001; rather, it is an effort by Graves to give DBSI notice of the means through which he will attempt, at trial, to establish DBSI acted intentionally and not mistakenly or accidentally when, as the plaintiff maintains, it discriminated against him. Fed. R. Evid. 404 permits a party, at a trial, to make reference to bad acts committed by an adversary party to establish, among other things, that the adversary party acted as it did intentionally and not mistakenly or accidently. Therefore, the Court finds that, at this juncture, looking solely to the face of the Revised Complaint, it cannot conclude the factual allegations made by Graves fail to make a plausible claim for relief and that futility bars the plaintiff from proceeding with his Revised Complaint.

*Bad Faith*

Withdrawing a claim from a pleading, because events that transpire after the date of the pleading establish the claim cannot be supported with facts, does not demonstrate a litigant's bad faith. Seeking leave to supplement a pleading, in such a circumstance, is proper. See Flaherty v. Lang, 199 F.3d 607, 613-14 n.3 (2d Cir. 1999). Moreover, seeking such leave promotes the just,

speedy and economical resolution of an action. See Bornholdt v. Brady, 869 F.2d 57, 68-69 (2d Cir. 1989).

Graves has explained, in his submissions to the Court, that his Revised Complaint does not include the Backdating Claim he asserted previously because information disclosed by the defendant, after the plaintiff filed his first amended complaint, caused him to reassess the factual allegations he had made. After doing so, Graves determined to seek leave to file a second amended complaint. Nothing in the record before the Court discredits that assertion. Fed. R. Civ. P. 15(d) contemplates the modification of a pleading when circumstances change, such as the receipt of new information, making the propriety of continuing to press a claim suspect. In the instant case, the record does not support a finding that Graves' request to file a second amended and supplemental complaint was made solely to thwart the defendant's motion for sanctions, as DBSI contends. The Court is persuaded, by the record, that Graves' application to amend his complaint, for a second time, was not made in bad faith.

*Application for Rule 11 Sanctions*

Fed. R. Civ. P. 11, in its most pertinent part, provides the following:

By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

\*   \*   \*

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(3).

In the case at bar, the defendant has asked the Court to impose sanctions on the plaintiff and his counsel for making factual assertions, in pleadings, that lack evidentiary support. When sanctions are sought, pursuant to Fed. R. Civ. P. 11, "based on the lack of evidentiary support for an attorney's factual contentions, the district court must direct its inquiry at ascertaining the attorney's knowledge and conduct at the time the pleading in question was signed." Savino v. Computer Credit, Inc., 164 F.3d 81, 88 (2d Cir. 1998). Furthermore, the Court must determine whether it was objectively reasonable for counsel to have made the disputed factual contentions, see Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), since a court should avoid imposing Fed. R. Civ. P. 11 sanctions "unless a particular allegation is utterly lacking in support." In re Highgate Equities, Ltd., 279 F.3d 148, 154 (2d Cir. 2002) (quotation and citation omitted).

The plaintiff proposes to withdraw the claim that DBSI backdated certain information it provided to the EEOC, because he learned, through the defendant's pretrial discovery disclosures, the Backdating Claim lacks factual support. In Graves' first amended complaint, his backdating assertion was supported with valuation data and calculations he and his counsel believed, based on the information then available to them, demonstrated that DBSI had backdated a report to minimize Graves' projected 2003 revenue. Graves and his counsel did not act arbitrarily in making the backdating assertion; they had reasons for doing so, including the valuation data referenced above. Therefore, the Court cannot conclude, on the record before it, that it was objectively unreasonable for the plaintiff and his counsel to have made the Backdating Claim Graves proposes to withdraw through his Revised Complaint.

The Court is not unmindful of the defendant's contention that Graves acted to amend his complaint, for a second time, after the 21-day "safe harbor" provision of Fed. R. Civ. P. 11(c)(2)

had elapsed. However, prior to the expiration of the safe-harbor period, the parties exchanged writings concerning Graves' backdating and misrepresentation claims. Through those exchanges, the defendant learned, prior to filing its motion for sanctions, that Graves intended to seek permission from the Court to file a second amended complaint. Graves explained to the defendant that his proposed second amended and supplemental complaint would not contain the Backdating Claim but would continue to have a misrepresentation claim because, in his view, a factual basis existed for that claim notwithstanding the pretrial discovery disclosures the defendant made to him.

The Court has considered the arguments urged by the parties in support of and in opposition to the defendant's application for Fed. R. Civ. P. 11 sanctions. Having done so and, being fully aware that such sanctions should issue "only in extraordinary circumstances," see E. Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 178 (S.D.N.Y. 2008), the Court finds that this case does not present "extraordinary circumstances" warranting the imposition of Fed. R. Civ. P. 11 sanctions.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for leave to file a second amended and supplemental complaint, Docket Entry No. 29, is granted. The defendant's motion for Fed. R. Civ. P. 11 sanctions, Docket Entry No. 24, is denied and the plaintiff's motion regarding the timeliness of his reply, Docket Entry No. 43, is denied, as moot.

Dated: New York, New York  
March 20, 2009

SO ORDERED:

_/s/ Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE