```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
DANIEL B. GRAVES                     :
                                     :
                    Plaintiff,       :
         v.                          :      07 Civ. 5471 (BSJ)
                                     :      Order
DEUTSCHE BANK SECURITIES INC.,       :
                                     :
                    Defendant.       :
                                     :
------------------------------------ X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Daniel B. Graves ("Graves" or "Plaintiff") filed this action alleging that Defendant Deutsche Bank Securities Inc. ("DBSI" or "Defendant") violated the Age Discrimination in Employment Act of 1968, the New York City Human Rights Law, and the Fair Labor Standards Act. Additionally, Graves accuses DBSI of fraudulent concealment and breach of the covenant of good faith and fair dealing. Before the Court is the motion of Defendant to dismiss portions of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Additionally, DBSI objects to a magistrate judge's order. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part, and the magistrate judge's order is AFFIRMED.

1

## BACKGROUND[1]

On March 31, 1999, when he was 37 years old, Graves was hired by Bankers Trust to work in its Media Investment Banking Group under the direction of Jeffrey Amling. (Sec. Am. Compl. ¶¶ 6, 25.) On June 14, 1999, as a result of the merger between Bankers Trust and Deutsche Bank, the Media Investment Banking Group became part of DBSI. (Id. ¶ 25.) Graves continued to report to Mr. Amling and was promoted to Managing Director at the end of 1999 or the beginning of 2000. (Id.)

According to Graves's Complaint, three years later, just as he turned 40, DBSI began to discriminate against him on the basis of his age. (Id. ¶ 27, passim.) Graves describes the following discriminatory actions:

The promotion of younger bankers. At the end of 2002, DBSI promoted four vice presidents to Director positions in the Media Investment Banking Group. (Id. ¶ 27.) Three of these vice presidents were 33 years old, and one was 34 years old. (Id.) Graves alleges that DBSI hired these younger bankers to eventually replaces Graves and take over his business.

Reassignment of clients. Graves's Complaint alleges that several of his accounts were reassigned to other bankers in anticipation of his firing. In the Spring of 2002, DBSI

---

[1] The following facts are taken from the allegations in Plaintiffs' Second Amended Complaint and are assumed to be true for the purposes of this decision only.

2

transferred the account of Cox Enterprises, a valuable, long-term client, to another employee, J.L. Malcolm Morris. (Id. ¶ 45.) On or before May 27, 2003, DBSI transferred Graves's Adelphia account to Dyan Triffo, who was 36 years old at the time; Graves was 41. (Id. ¶ 34.) During 2003, two employees, both 33 years old, approached Graves and informed him that Jeffrey Amling, his manager, had asked them to talk to Graves about transferring his clients over to them. (Id. ¶¶ 39-40.) Finally, in December 2003, DBSI transferred the Charter Communications account to Graves's co-worker Sun Yung. (Id. ¶ 47.) In each instance, Graves was told that the transfer was not performance-based.

Franchise revenue pipelines and lost credit. Graves also alleges a number of assignment and credit errors that worked to his detriment. In January 2003, DBSI treated the funds from a client as 2002 revenues, not 2003 revenues, taking that money out of Graves's franchise revenues pipeline for 2003. (Id. ¶¶ 52-54.) In June 2003, DBSI orally assigned Cox Radio as a client to Graves, but did not set up Graves as a Senior Investment Banker for the client for months after the assignment. (Id. ¶ 72.) DBSI failed to include certain of Graves's pipeline transactions in his 2003 and 2004 franchise revenue pipeline. (Id. ¶ 63.) DBSI also removed Gannett Corporation from the Client Management system thereby making it impossible for Graves

3

to receive credit for any transaction he brought into the firm involving Gannett. (Id. ¶ 67.) DBSI's internal controls barred Graves from being recognized for developing business with potential clients set up for him on DBSI's Client Management system. (Id. ¶ 71.)

Firing and bonus. On January 14, 2004, DBSI notified Graves that he was being fired effective January 31, 2004. (Id. ¶ 74.) On February 4, 2004, DBSI failed to pay Graves his 2003 bonus. (Id. ¶ 79.) Graves alleges that Defendant decided earlier to fire him, yet induced him to continue working with the promise of his sizable 2003 bonus, thereby foregoing other job opportunities, despite Defendant knowing that he would be fired before bonuses were given. (Id. ¶¶ 139-40.)

On July 22, 2004, Graves filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which, after refusing to pursue Graves's claim on his behalf, issued a Notice of Right to Sue on March 10, 2007. Graves filed this action on June 8, 2007, and DBSI filed this motion for partial dismissal on April 22, 2009.

## LEGAL STANDARD

A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if a Plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On such a motion, the Court accepts as true all

factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. In re DDAVP Direct Purchaser Antitrust Litigation, 585 F.3d 677, 692 (2d Cir. 2009). The complaint's allegations, however, "must be enough to raise a right of relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Only a "plausible claim for relief survives a motion to dismiss." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 476 (2d Cir. 2009). Thus courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (internal quotation marks omitted).

**DISCUSSION**

A. Partial Motion to Dismiss

Defendant requests that various portions of Plaintiff's Complaint be dismissed. These requests are addressed as follows.

1. Timeliness of Plaintiff's Claims

Defendant claims that a number of the discriminatory acts Graves alleges are time-barred under the Age Discrimination in Employment Act of 1968, 29 U.S.C. §§ 621 et seq. ("ADEA"). The ADEA requires that a plaintiff file a charge with the EEOC as a prerequisite to the filing of a federal action. See McPherson v.

5

N.Y. City Dep't of Educ., 457 F.3d 211, 213 (2d Cir. 2006). Such a charge must be filed no more than 300 days from the date of the alleged discriminatory conduct. See 29 U.S.C. § 626(d).

"The filing deadlines for a charge of discrimination act as a 'statute of limitations' and a failure to timely file a charge acts as a bar to a plaintiff's action." Kubicek v. Westchester County, No. 08-CV-372, 2009 U.S. Dist. LEXIS 117061, at *15 (S.D.N.Y. Oct. 8, 2009) (citation omitted). Here, Plaintiff filed his EEOC charge on July 22, 2004. (Sec. Am. Compl. ¶ 5.) Accordingly, acts or events that occurred prior to September 26, 2003, are time-barred.

Plaintiff Graves does not dispute this. Rather, he states that each of the events detailed in the Complaint that occurred before September 26, 2003 were provided as background evidence. The Supreme Court has expressly approved the use of time-barred events as background evidence in discrimination cases. See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."). Plaintiff explicitly limits his federal claims to "the tangible injuries he suffered in 2004: his termination, the denial of continued employment (under either a transfer or the customary arrangement under which he would continue working for six months at reduced or no pay to help him obtain a similar job

elsewhere), and the January and February 2004 denial of his bonus for the work he performed in 2003." (Opp. Memo. at 2.) The Court will thus treat any references to time-barred events as merely "relevant background evidence." United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

2. Retaliation Claims

The anti-retaliation provision of the ADEA states: "It shall be unlawful for an employer to discriminate against any of its employees ... because such individual ... opposed any practice made unlawful by this section, or because such individual ... participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). In order to make out a prima facie case of retaliation under the ADEA, a plaintiff must demonstrate that (1) he engaged in protected participation under the ADEA, (2) the employer was aware of this activity, (3) the employer took an adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. See Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S.Ct. 846, 850 (2009); Sengillo v. Valeo Elec. Sys., Inc., 328 Fed. Appx. 39, 40-41 (2d Cir. 2009).

Graves argues that DBSI engaged in three "adverse actions." First, DBSI denied Graves's request to be given the allegedly customary benefit, in situations where there was no imminent

7

need to fire the employee immediately, of continuing working for six months at reduced or no pay, in order to enable him to obtain comparable employment and thereby have a "soft landing." Second, DBSI denied Graves's request for a transfer to another position within the company. Third, DBSI denied him a substantial bonus for his previous work. (Opp. Memo. at 7-8.)

In this case, Graves's retaliation claim survives dismissal. Graves was notified on January 14, 2004 that he would be terminated effective January 31, 2004. (Id. ¶ 88.) During this interim period while Graves was still an employee, Graves asked several managers to reconsider his termination date. (Sec. Am. Compl. ¶ 87.) Graves states that "Mr. [Jeffrey] Amling told plaintiff that he thought that was a reasonable request and would see if he could help make that happen." (Id. ¶ 88.) Two others did not respond to Graves's request "but promised to get back to him." (Id.) Graves also asked these managers whether they would assist him in finding another position within Deutsche Bank, and was to meet with Richard Byrne to discuss the matter. Before the meeting, Graves complained of age discrimination and the meeting was canceled. (Id. ¶ 91.) His earlier requests for a "soft landing" were subsequently denied, and DBSI refused to reconsider its decision to pay him his bonus.

8

The Court finds such allegations to adequately state an ADEA and NYCHRL retaliation claim under Rule 12(b)(6). At this early stage of litigation, Plaintiff sufficiently alleges that he engaged in a protected activity (the complaint of age discrimination), the employer was aware of this activity, the employer took an adverse action against the plaintiff (canceled the meeting, did not grant customary assistance, and did not award him his bonus), and a causal connection exists between the protected activity and the adverse action.

3. FLSA Retaliation Claim

Defendant claims that Graves's Fair Labor Standards Act claim should be dismissed because Graves failed to make a formal complaint to the Department of Labor. In contrast to the ADEA which bars discrimination against an employee who "opposed any practice" of the employer, the FLSA bars discrimination only when the retaliation is in response to a formal complaint lodged with the Department of Labor. See 29 U.S.C. § 215(a)(3). "The plain language of [the FLSA provision] limits the cause of action to retaliation for filing formal complaints ... but does not encompass complaints made to a supervisor." Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993) (citations omitted). In this case, Graves alleges that the retaliation took place after Graves made an internal complaint of age discrimination. He does not allege that he raised a formal

9

complaint to the Department of Labor. As such, his FLSA retaliation claim should be dismissed.[2]

### 4. Fraudulent Concealment Claim

Graves's claim of fraudulent concealment is based on the contention that his supervisors knew they were going to terminate him but induced Graves to continue working through 2003 in reliance on receiving his 2003 bonus, due to be paid in early 2004. (Sec. Am. Compl. ¶ 139.) In reliance on this expectation, Graves alleges that he "did not pursue inquiries from those with potential jobs to offer, or follow up on leads with respect to such companies, because he expected to continue working for [DBSI] until he retired." (Id. ¶ 82.) DBSI contends that Graves sets forth no details in his Complaint relating to what fraudulent representations DBSI made and this claim should thus fail for lack of specificity.

Federal Rule of Civil Procedure 9(b) requires that circumstances constituting fraud or mistake shall be stated with specificity and particularity since general allegations of fraud are "thought to be too amorphous to provide a defendant with sufficient notice to permit a response." Abbad v. Amman, 285 F. Supp. 411, 414-15 (S.D.N.Y. 2003) (citing Shields v. Citytrust

---

[2] The Court rejects Plaintiff's argument that retaliation in violation of the ADEA automatically engenders a separate violation of the FLSA under Section 7(b) of the ADEA. (Opp. Memo. At 13-17.) Section 7(b) does not create an independent claim under the FLSA but merely makes specified remedies available. See Chambers v. Capital Cities/ABC, 851 F.Supp. 543 (S.D.N.Y. 1994).

10

Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). The Second Circuit commented in Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990) that "[t]o pass muster under rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." Id. at 79-80 (citations omitted). This specificity requirement serves to "provide a defendant with fair notice of a plaintiff's claim [and] to safeguard a defendant's reputation from 'improvident charges of wrongdoing....'" Harrell v. Primedia, Inc., 02 Civ. 2893, 2003 U.S. Dist. LEXIS 13595, at **2-3 (S.D.N.Y. Aug. 5, 2003) (quoting O'Brien v. Nat'l Property Analyst Partners, 936 F.2d 674, 676 (2d Cir. 1991)). "In sum, plaintiff's mere use of the word 'fraud' and 'fraudulent intent' to describe the defendants' conduct falls woefully short of satisfying the particularity requirements of Rule 9(b)." Id.

In his Second Amended Complaint, Graves merely sets forth business decisions taken from 2002 through 2004 upon which he says he can "reasonably ... infer" that DBSI was aware that it was going to fire him at some time "materially in advance" of notifying Graves of his termination. (Sec. Am. Compl. ¶ 80.) Nothing in any of these events suggests, as Graves alleges, that DBSI had a plan to fire him. Furthermore, nowhere in the Second Amended Complaint does Graves indicate the timing or the specifics of any statement that he could expect to receive a

bonus upon spending a definite amount of time at DBSI, or the identity of the individual managers or managers who purportedly made such statements, as minimally required under Rule 9(b).

In his opposition papers, Graves does provide an "exemplar" statement, a company-wide memorandum dated February 8, 2000, that he claims is typical of a "multitude of communications to employees" that supplied Graves the reasonable expectation that he would receive a bonus by working until 2004. (See Seymour Decl. Attach. A.) However, the Court finds that such a statement could not reasonably provide this expectation. The memorandum is addressed to "All Employees" describing the "Year End Compensation Process." (Id.) It states: "All employees are eligible to receive a cash bonus. Employees' total compensation packages will be reviewed and considered along with individual, divisional and Bank performance when determining the amount (if any) of an employee's cash bonus." (Id. (emphasis added.)) The memorandum also explicitly states that a bonus may, in fact, be equal to "zero." (Id.) Yet Graves alleges that such statements "induced plaintiff to continue working for it in reliance on receiving his 2003 incentive bonus" and are evidence of DBSI's "fraudulent concealment." (Sec. Am. Compl. ¶ 139.) Nothing in Graves's Complaint, nor this example statement given in his Opposition papers, provides the requisite specificity required

under Rule 9(b) for a fraud claim, and this claim is therefore dismissed.

5. Breach of Good Faith and Fair Dealing Claim

Graves claims that DBSI breached its duty of good faith and fair dealing by failing to inform him that he would be terminated prior to his receipt of his 2003 bonus. (Sec. Am. Compl. ¶ 140.) Under New York law, however, absent a contract, no duty of good faith and fair dealing can arise in an employment relationship.

"It is well settled [under New York law] that absent an agreement establishing employment of a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Gill v. Pathmark Stores, Inc., 237 A.D.2d 563, 655 N.Y.S.2d 623, 624 (2d Dep't 1997). Furthermore, New York law does not impose a duty of good faith and fair dealing with respect to termination of an at-will employment agreement. See Nunez v. A-T Fin'l Info., Inc., 957 F.Supp. 438, 443 (S.D.N.Y. 1997). However, New York courts and the Second Circuit have created an exception to an employer's right to terminate an employee at-will in some limited circumstances. In Wakefield v. N. Telecom, Inc., 769 F.2d 109 (2d Cir. 1985), the Second Circuit held that an at-will employee could recover under a breach of covenant of good faith and fair dealing theory if the employee could demonstrate that his

13

employment was terminated so that the employer could avoid paying him earned commissions on completed sales.

In the instant case, Graves contends that in bad faith DBSI "knowingly induced plaintiff to continue working" for the 2003 bonus despite deciding not to pay it to him in advance. (Sec. Am. Compl. ¶ 140.) However, the Court finds that this case does not fall within the limited exception to employment at-will recognized by the Second Circuit in Wakefield because "where no fixed amount was due at the time of termination, courts have refused to place a restriction on employer's unfettered discretion to fire an at-will employee at any time." Mirabella v. Turner Broadcasting Sys., Inc., No. 01 Civ. 5563, 2003 WL 21146657 (S.D.N.Y. May 19, 2003) (citation and quotation omitted). Here, Graves admits that he had an at-will employment contract, and that the 2003 bonus was entirely discretionary. (Opp. Memo. at 38-39.) As Graves does not allege that a valid contract existed between himself and DBSI, and because no fixed amount was due at the time of Graves's termination, his claim is not cognizable under New York law. Graves's breach of good faith and fair dealing claim is therefore dismissed.

### B. Objections to Magistrate's Ruling

#### 1. Background

On June 8, 2007, Graves filed his original Complaint. Paragraphs 95 to 124 of the Complaint alleged that DBSI engaged

14

in a deliberate "cover-up" of its discriminatory conduct by knowingly falsifying two Franchise Revenue and Pipeline Reports ("Reports") submitted to the EEOC in response to Graves's charge of discrimination. Graves alleges that the Reports were falsified in three ways. First, Graves alleged that DBSI fraudulently backdated one of the Reports to show false pipeline revenue to minimize Graves's pipeline for 2003. (Compl. ¶ 98.) Second, Graves alleged the reports falsely inflated other bankers' pipeline revenue by assigning the full pipeline revenue value for Graves's transactions to a number of other bankers working on the transactions. (Compl. ¶¶ 99, 109.) Third, Graves alleged that, in both Reports, DBSI "made up" figures for pipeline revenue numbers to devalue Graves's transactions and overvalue those of the younger bankers. (Compl. ¶¶ 100, 110.)

Over the course of a year after the Complaint was filed, DBSI repeatedly asked Graves to amend the Complaint to retract the three allegations that DBSI falsified the Reports. DBSI's counsel wrote to Graves's counsel to show him documents that DBSI claims clearly demonstrated that the three allegations that the Bank falsified the Reports were baseless and should be withdrawn. Graves's counsel repeatedly declined to withdraw the allegations.

On May 6, 2007, DBSI served Graves with a draft sanctions motion, thereby triggering Rule 11's twenty-one day safe harbor

period. During this safe harbor period, Graves made no offer to withdraw the fraud allegations at issue here. After the expiration of the safe harbor period, on May 29, 2009, DBSI's counsel telephoned Graves's counsel in a final attempt to have the allegations withdrawn. Graves's counsel proposed that if DBSI agreed not to file the sanctions motion he would withdraw the backdating allegation and commit to "review" the other allegations. DBSI's counsel pressed him for an agreement to withdraw all three allegations and Graves's counsel refused.

   DBSI moved for sanctions before Magistrate Judge Kevin Nathaniel Fox. In that motion, DBSI asked the Court to impose sanctions on the Plaintiff and his counsel for violating Rule 11 of the Federal Rules of Civil Procedure. Rule 11 requires parties to conduct a reasonable inquiry into the truth of a pleading, and DBSI argues that this standard applies when a party is confronted with facts disproving its allegations. In a Memorandum and Order dated March 20, 2009, Judge Fox declined to award sanctions. The Order found that notwithstanding the pretrial discovery disclosures of DBSI, Graves's refusal to withdraw his claims did not rise to a sanctionable level. DBSI now objects to Judge Fox's Order, arguing that Judge Fox "ignored the full import of the violation," and "failed to consider the full scope" of the issues. (Obj. Memo. at 2-3.)

16

## 2. Legal Standard

A district court "may reconsider" any non-dispositive ruling by a magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed. R. Civ. P. 72(a); Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007). Under the clearly erroneous standard of review, the magistrate judge's finding should not be rejected merely because the court would have decided the matter differently. Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985). Rather, such a decision is "clearly erroneous" if the district court is "left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (internal citations omitted). See also 12 Charles Alan Wright et al., Federal Practice and Procedure § 3069, at 350-51 (2d ed. 1997) ("[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

## 3. Discussion

Having reviewed the record herein, including among other things, Judge Fox's Order, Plaintiff's Objections and Reply Memorandum, Defendants' Opposition, and applicable legal authorities, the Court concludes that Judge Fox's Order was not clearly erroneous. See Fed. R. Civ. P. 72(a).

Defendant claims that Judge Fox "overlooks the sanctionable behavior at issue" and misconstrues Plaintiff's offer to amend. (Obj. Memo. at 10, 13.) In the Order, Judge Fox stated:

> The Court has considered the arguments urged by the parties in support of and in opposition to the defendant's application for Fed. R. Civ. P. 11 sanctions. Having done so, and being fully aware that such sanctions should issue 'only in extraordinary circumstances,' the Court finds that this case does not present 'extraordinary circumstances' warranting the imposition of Fed. R. Civ. P. 11 sanctions.

(Order, at 11 (citation omitted).) Judge Fox's Order explicitly stated that the Court considered Defendant's arguments and did not find such behavior to reach the "extraordinary circumstances" standard. A party violates Rule 11 "where it is patently clear that a claim has absolutely no chance of success under the existing precedents." Eastway Const. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985). The Court declines to find Plaintiff's actions as so clearly without merit as to justify reversal. Accordingly, Magistrate Judge Fox's Order is AFFIRMED.

Graves also seeks attorneys' fees and expenses from the Court for his defense of this sanctions motion and the previous sanctions motion before the magistrate. The Court does not comment on the merits of this argument and defers to the magistrate's authority to decide this issue.

18

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (Dkt. # 62) is GRANTED in part and DENIED in part, and Defendant's Motion to Vacate the March 20, 2009 Order of Magistrate Judge Kevin Fox (Dkt. # 57) is DENIED. Plaintiff also requests that the Court excuse the late filing of the Declaration of Richard T. Seymour dated April 18, 2009. Defendant does not oppose this motion. Plaintiff's Motion to Excuse a Late Filing (Dkt. # 65) is GRANTED.

**SO ORDERED:**

Barbara S. Jones
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         March 17, 2010