

**SIDLEY AUSTIN LLP**

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON
LOS ANGELES

NEW YORK
PALO ALTO
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

jseltzer@sidley.com
(212) 839-5985

FOUNDED 1866





January 13, 2011

MEMO ENDORSE

**By Facsimile and by Federal Express Delivery**

Hon. Kevin N. Fox
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

Re: <u>Graves v. Deutsche Bank Securities Inc.</u>
Case No. 1:07-cv-05471-BSJ-KNF

Dear Judge Fox:

Deutsche Bank Securities Inc. ("DBSI") respectfully submits this letter to request permission to formally brief the Court on its objection to Plaintiff Daniel Graves's claim of privilege over four pages of handwritten notes produced by him to DBSI. Pursuant to Rule 26, we will submit these notes under seal with DBSI's brief.

As we explained in our letter dated December 7, 2010, on November 26, 2010, Mr. Graves produced over 120,000 pages of electronic documents to DBSI. Included within this production were handwritten notes documenting Mr. Graves's conversations with several individuals, including his supervisor, Jeffrey Amling, after DBSI's decision to terminate Mr. Graves's employment in January 2004.

In a letter dated December 20, 2010, Mr. Graves's attorney, Richard Seymour, claimed that the handwritten notes had been inadvertently produced and sought to claw the document back pursuant to Rule 26(b)(5)(B). Although DBSI immediately destroyed or sequestered all copies of the notes, as required by the rule, it sent Mr. Seymour a letter asking for additional information to support his privilege designation. Mr. Seymour responded that the basis for the privilege designation was that the notes in question were prepared for the purpose of communication "with prospective and future counsel" for use by such counsel "at some point after his initial consultation with the first set of counsel identified."

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

**SIDLEY AUSTIN LLP**
# SIDLEY

Hon. Kevin N. Fox
January 13, 2011
Page 2

      As background, Mr. Graves's claim of discrimination relies almost exclusively on a conversation he had with Mr. Amling, his former supervisor, on January 14, 2004, during which Mr. Amling informed Mr. Graves of his termination. In his original and amended complaints, and during his recent deposition on January 10, 2011, Mr. Graves quoted Mr. Amling as stating that one of the reasons for Mr. Graves's selection for termination was that Mr. Graves's clients "were needed for the younger bankers." The handwritten notes paint an entirely different picture. Initially, the entry for January 14, 2004 makes absolutely no reference to Mr. Amling's alleged statement – an odd omission of a critical comment in notes purportedly created to prepare Mr. Graves for a meeting with counsel he may retain in an age discrimination action. Moreover, in a later entry of January 20, 2004, when Mr. Graves purportedly met with Mr. Amling to discuss strategies for convincing Mr. DeNaut and Mr. Brand to extend Mr. Graves's time at the Bank, Mr. Graves noted that he could offer to help transfer accounts to younger people. This comment, if even made by Mr. Amling, has no bearing on the purported ageist reason for selecting Mr. Graves for termination and, in fact, fails to evidence any discriminatory animus at all.

      In addition, Mr. Graves's complaint makes much of a meeting he had with Mr. Amling's supervisors, Mr. Brand and Mr. DeNaut, in which he allegedly complained about Mr. Amling's purported January 14th ageist statement. Mr. Graves claims that this complaint led to retaliatory action by DBSI. Among the many entries of meetings and conversations documented in the notes, however, there is absolutely no record of this conversation, casting doubt on whether Mr. Graves raised any complaint of discriminatory treatment. The handwritten notes, therefore, put into doubt Mr. Graves's critical evidence of discrimination and retaliation and his veracity in general.

      For the following reasons, DBSI requests permission to formally brief its objection to Mr. Graves's attempt to claw back the notes on the ground of privilege.

      Initially as a threshold issue, Mr. Graves's notes contain only a factual recitation of the conversations that he had with a number of individuals with respect to his termination. The attorney-client privilege and the work product doctrine only protect those disclosures necessary to obtain informed legal advice, which might not have been made absent the privilege. See Fisher v. U.S., 441 F.3d 92, 94 (2d Cir. 2006). It does not appear that the notes consist of anything more than a verbatim recording of conversations, devoid of any observations by Mr. Graves, which would most likely have been made in the absence of counsel. As such, there is sufficient basis for DBSI to maintain that the notes should not be protected from disclosure in the first instance.

      Second, even if the Court were to find the notes to be protected by the attorney/client privilege or work product doctrine, Mr. Graves has waived those protections.

NY1 7499382

# SIDLEY
### SIDLEY AUSTIN LLP

Hon. Kevin N. Fox
January 13, 2011
Page 3

Initially, the conflict between Mr. Graves's complaint and his handwritten notes has resulted in an "at issue" waiver of the privilege over the notes. An "at issue" waiver occurs in "certain circumstances [where] a party's assertion of factual claims can, out of consideration of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." Children First Foundation, Inc. v. Martinez, No. 1:04 Civ. 0927, 2007 WL 4344915, at *19 (N.D.N.Y. Dec. 10, 2007). Courts within the Second Circuit apply a three part test to assess claims of "at issue" waiver: 1) assertion of the privilege was a result of some affirmative act, such as filing suit; 2) through the affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and 3) the application of the privilege would have denied the opposing party access to information vital to the defense." Id.; Pall Corp. v. Cuno Inc., 268 F.R.D. 167, 168 (E.D.N.Y. 2010). When determining whether an "at issue" waiver has occurred, courts also focus upon considerations of fairness, namely, whether application of the privilege will deprive an adversary of crucial information. See Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & CIE, S.C.A., 258 F.R.D. 95, 106 (S.D.N.Y. 2009) ("Specifically, a court should determine whether, given the particular circumstances of a case, it would be unfair for a party asserting contentions to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."); Bowne v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993) ("[A] waiver may be found where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deny the adversary of vital information.")

Here, the three part "at issue" waiver test is satisfied: Mr. Graves's assertion of the privilege was the result of his affirmative act of filing suit, the protected information was made relevant by Mr. Graves's allegations of a discriminatory comment by Mr. Amling in their conversation of January 14, 2004, and application of the privilege will deny DBSI access to information vital to its defense, namely that the comment by Mr. Amling was either never made or was misconstrued. In the interest of fairness, therefore, DBSI should be allowed to use a document that could challenge a statement that forms the basis of Mr. Graves's discrimination claim.

Moreover, at his recent deposition of January 10, 2010, Mr. Graves admitted that he reviewed the notes in preparation for his deposition, although he dissembled as to whether the review had refreshed his recollection by stating that "I don't know if they did or if they didn't." Federal Rule of Evidence 612 provides that where a "witness uses a writing to refresh memory for the purpose of testifying . . . before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." Fed. R. Civ. P. 612. See also EEOC v. Johnson & Higgins, No. 93 Civ. 5481, 1998 WL 778369, at *9 (S.D.N.Y. Nov. 6, 1998); Thomas v. Euro RSCG Life, 264 F.R.D. 120, 122 (S.D.N.Y. 2010). The purpose of Mr.

NY1 7499382

**SIDLEY AUSTIN LLP**
**SIDLEY**

Hon. Kevin N. Fox
January 13, 2011
Page 4

Graves's review of his notes in preparation for his deposition had to be, at least in part, to refresh his recollection of the conversations occurring after he was informed of his termination. Mr. Graves did not deny this during his deposition. As such, Mr. Graves cannot use the privilege as both a "sword" and a "shield" by making use of his notes yet denying use to DBSI.

DBSI respectfully requests the Court's permission to formally brief this issue as soon as possible. We thank the Court for its consideration of this request.

Very truly yours,

*Joanne Seltzer*
Joanne Seltzer

cc: Cliff Fonstein, Esq.

1/21/11
On or before January 27, 2011, the defendant's motion shall be served and filed. The response to the motion, and any reply, shall be served and filed in accordance with Local Civil Rule 6.1 of this court.

SO ORDERED:

*Kevin Nathaniel Fox*
Hon. Kevin Nathaniel Fox
United States Magistrate Judge

NYI 7499382