IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>                              Plaintiff,<br><br>             v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>                              Defendant. | **CIVIL ACTION NO.**<br>**1:07-cv-05471-BSJ-KNF**<br><br>**(Electronically Filed)** |

# PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY THE LAW FIRMS OF SIDLEY AUSTIN LLP AND SEYFARTH SHAW LLP FROM REPRESENTING, AS TO THIS MATTER, WITNESSES HEREIN WHO ARE FORMER EMPLOYEES OF DEFENDANT

A.      <u>**This Reply is Timely**</u>

Local Civil Rule 6.1(a) provides, in pertinent part, that "any reply affidavits and reply

memoranda of law shall be served within two days after service of the answering papers.  <u>In

computing period of days, refer to Federal Rule of Civil Procedure 6 and Local Civil Rule 6.4.</u>"

(Emphasis in original.)

Defendant and the law firm of Seyfarth Shaw[1] both filed their Oppositions on February

10, 2011.  Local Civil Rule 6.4 says:

**Local Civil Rule 6.4. Computation of Time**
        In computing any period of time prescribed or allowed by the Local Civil Rules or the Local Admiralty and Maritime Rules, the provisions of Federal Rule of Civil Procedure [6(a) and 6(d)] **6** shall apply unless otherwise stated.  In these Local Rules, as in the Federal Rules as amended effective December 1, 2009, Saturdays, Sundays, and

---

[1] Seyfarth Shaw LLP filed its Opposition on behalf of Deutsche Bank Securities, Inc., the defendant herein, see Docket Entry 100, without ever having entered a Notice of Appearance for defendant.

legal holidays are no longer excluded in computing periods of time.  If the last day of the period is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.
[Effective December 1, 2009]

Federal Rule of Civil Procedure 6(d) states in pertinent part:

(d) ADDITIONAL TIME AFTER CERTAIN KINDS OF SERVICE.  When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), <u>3 days are added after the period would otherwise expire under Rule 6(a).</u>

(Emphasis supplied.)  Federal Rules of Civil Procedure 5(b)(2)(E) and 5(b)(3) say in pertinent

part:

(b) SERVICE: HOW MADE.
      *          *          *
(2) Service in General. A paper is served under this rule by:
      *          *          *
(E) sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or
      *          *          *
(3) Using Court Facilities. If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E).

Pursuant to Local Rules 6.1 and 6.4, and Federal Rules of Civil Procedure 6(d) and 5(b)(2)(E)

and 5(b)(3), plaintiff is allowed three days for service by electronic means, and two days for his

response, making a total of five days in all.  Accordingly, plaintiff's deadline for response is

today, February 12, 2011.

**B.**　　**<u>Plaintiff's Motion is Not Moot</u>**

The firm of Seyfarth Shaw LLP has suggested at p. 1, note 1 of its Opposition that the

motion is moot.  This is incorrect.

Plaintiff's Motion was filed to restore his right to interview fact witnesses *ex parte*, under

the decision in *Niesig v. Team I*, 76 N.Y.2d 363, 558 N.E.2d 1030, 559 N.Y.S.2d 493 (N.Y.

1990), and the right to engage in such interviews continues to exist after the conclusion of a

deposition.  The Motion was also filed to avoid any possible taint on the testimony of fact witnesses through the creation of an improper bond of affinity between the defendant and such witnesses, through the cooperation clauses in defendants' severance agreements, defendant's payment for counsel ostensibly to represent the witnesses, and the creation of a false impression in the minds of witnesses that they need counsel to protect them when no claims have been made against them.  This danger of taint continues through trial and any retrial, right up to the ultimate closing of this case.

Paragraph 11 of Jeffrey Amling's severance agreement, at pp. 4-5 of Exhibit M to the February 10, 2011 Affirmation of Joanne Seltzer (Doc. # 99), for example, requires that he "will cooperate with the Firm in connection with . . . the defense . . . of any claim that may be made against . . . the Firm . . . including any proceeding, civil or criminal, before any . . . judicial . . . body or agency, including testifying in . . . any proceeding . . . .  You further agree to perform all acts . . . that may be reasonably necessary to carry out the provisions of this Paragraph 11 of this Agreement.  Consistent with its bylaws and insurance coverage, the Firm will reimburse you for your reasonable and actual expenses incurred in providing such cooperation."  Nothing in the cooperation paragraph even refers to the possibility of the signer providing truthful testimony that would be against the interests of defendant.

Materially identical language appears in paragraph 10 of the severance agreement of Elizabeth Chang, a co-worker of plaintiff's during part of the time he was employed by defendant, with only the paragraph numbering different.  See Exhibit 6 to the Seymour declaration.

C.      **Plaintiff's Superiors at the Time of His Discharge Are Not Party Witnesses**

Defendant suggests that former employees Jeffrey Amling and James DeNaut were party witnesses, and not "mere fact witnesses," and thus fell outside the decision in *Rivera v. Lutheran*

3

*Medical Center*, 866 N.Y.S.2d 520 (Sup. Ct. Kings County 2008), *aff'd*, 73 A.D.3d 891 (2nd

Dep't 2010).  To the contrary, *Niesig v. Team I*, 76 N.Y.2d 363, 374-75, 558 N.E.2d 1030, 559

N.Y.S.2d 493 (N.Y. 1990), made clear that the only employees who may not be contacted for *ex*

*parte* interviews by counsel representing a client opposed to their employer are those whose

current duties directly implicate the liability of the corporation:

> In practical application, the test we adopt thus would prohibit direct communication by
> adversary counsel "with those officials, but only those, who have the legal power to bind
> the corporation in the matter or who are responsible for implementing the advice of the
> corporation's lawyer, or any member of the organization whose own interests are directly
> at stake in a representation."  (Wolfram, *op. cit.*, § 11.6, at 613.)  This test would permit
> direct access to all other employees, and specifically—as in the present case—it would
> clearly permit direct access to employees who were merely witnesses to an event for
> which the corporate employer is sued.

> *Ex parte* contact with former employees is permissible under *Niesig*, including *ex parte*

contact with former officials as to whom *ex parte* contact would have been barred while they

were employed.  *Niesig* itself held that former "DR 7-104 (A) (1) applies only to current

employees, not to former employees."  76 N.Y.2d at 369.  *Accord*, *Arons v. Jutkowitz*, 9 N.Y.3d

393, 408, 880 N.E.2d 831, 850 N.Y.S.2d 345 (N.Y. 2007) ("For the same 'policy reasons

articulated in *Niesig* concerning the importance of informal discovery,' we held that 'so long as

measures are taken to steer clear of privileged or confidential information, adversary counsel

may conduct ex parte interviews of an opposing party's former employee' (*id.*)."); *Radder v. CSX*

*Transp., Inc.*, 893 N.Y.S.2d 725, 727-28 (N.Y.App. 4th Dept. 2009) ("We conclude that, at the

time of plaintiff's accident, Pauley was an employee deemed to be a party represented by the

attorneys for CSX (*see Niesig v. Team I*, 76 N.Y.2d 363, 374, 559 N.Y.S.2d 493, 558 N.E.2d

1030), but that at the time he was interviewed by K & G he was not.").

Defendant's contention that Amling and DeNaut are both "constituent representatives of

DBSI" does not change their status as former employees who are open to *ex parte* interviews but

4

for the fact that defense counsel purports to represent them individually and uses that position to

deny consent for such *ex parte* contacts.

> ## D. Defense Counsel and Seyfarth Shaw Have Blocked Discovery of the Facts of Their Representation, and Cannot Complain That Plaintiff Did Not Object Earlier, or that Plaintiff Has Not Shown Sufficient Facts

Defendant and the law firm of Seyfarth Shaw contend that there are insufficient facts

underling plaintiff's Motion, but each has taken all available steps to preclude plaintiff's

acquisition of further facts. Defendant and its counsel studiously avoided weeks of questions by

plaintiff's counsel as to how they came to represent so many former employees who were

potential witnesses in this action, and how they came to represent Elizabeth Chang as soon as

plaintiff located her. Seyfarth Shaw claimed privilege in refusing to respond to plaintiff's Rule

45 subpoena, although the subpoena was expressly limited to documents before the formation of

the asserted attorney-client relationship with the witness in question. Seyfarth Shaw even

claimed privilege for a "joint representation agreement." See Exhibit 16 to Seymour Declaration

in Support of Motion to Disqualify. (Doc. # 87-17).

Faced with the authority in Plaintiff's opening Memorandum that informed consent is

necessary to the validity of a joint representation agreement, *Excelsior 57th Corp. v. Lerner*, 553

N.Y.S.2d 763, 764 (N.Y.App. 1st Dept.1990), on February 10, 2011 Seyfarth Shaw changed its

objection to assert that it had an assertedly privileged "joint defense agreement." See Seymour

Dec., Exhibits 1 and 2, and Seyfarth Shaw Opposition (Doc. # 100), p. 3 note 4. This change

makes no material difference. *Fewer v. GFI Group Inc.*, 909 N.Y.S.2d 629, (N.Y.App. 1st Dept.

2010), held that such agreements in themselves are not protected from discovery because they do

not constitute attorney-client communications and do not constitute attorney work product.

Susan Hoffman was an assistant to Mr. Amling. She testified that Deutsche Bank, the

defendant herein, had offered to have the firm of Seyfarth Shaw LLP represent her, that she had never previously had any involvement with that law firm or with the attorney assigned to represent her, that she assumed Deutsche bank was paying the fees, and that she did not know of a joint representation agreement.  The attorney from Seyfarth Shaw purportedly representing her directed her not to respond to the question whether she had ever consented to such an agreement.  See the excerpts from her deposition, Tr. 15 line 16 to Tr. 19 line 4, Exhibit 3 to the Seymour declaration.

James DeNaut, previously one of plaintiff's supervisors, was solicited by Sidley Austin LLP to represent him in this case.  Seymour declaration, exhibit 4.  He testified to the solicitation in his deposition.  See the excerpts from his January 21, 2011 deposition, Tr. 96 line 18 to Tr. 97 line 14, Exhibit 5 to the Seymour declaration.

Elizabeth Chang, a co-worker with plaintiff during part of the time he was employed by defendant, admitted that Sidley Austin LLP had contacted her before she received her subpoena to testify in this action.  See the excerpts from her January 28, 2011 deposition, Tr. 25 lines 12-15, Exhibit 7 to the Seymour declaration.  Both Sidley Austin LLP and Seyfarth Shaw LLP instructed her not to answer whether Sidley Austin LLP had offered to represent her without charge.  *Id.*, Tr. 25 line 19 to Tr. 26 line 10.  She had never been represented by either firm in any capacity, understood that Deutsche Bank was paying the legal fees for her representation, had not approached Seyfarth Shaw LLP, and internal counsel for Deutsche Bank contacted her. *Id.,* Tr. 26 line 12 to Tr. 27 line 18.  Both law firms instructed Ms. Chang not to answer whether internal counsel from Deutsche Bank suggested that Seyfarth Shaw LLP represent her.  *Id.*, Tr. 27 line 19 to Tr. 28 line 7.  Seyfarth Shaw refused to let her answer whether anyone from either firm had ever suggested that she consent to their representation of other witnesses.  *Id.*, Tr. lines

5-9.   Seyfarth Shaw refused to let her answer whether anyone from either firm had ever

suggested that she consent to their entry into a joint representation agreement or had even

explained what a joint representation agreement is.  *Id.*, Tr. 29 line 10 to Tr. 32 line 18.  She had

not paid any fees to Seyfarth Shaw and did not expect to receive a bill.  *Id.*, Tr. 32 line 19 to Tr.

33 line 4.  She did not think she had any interest in the present lawsuit.  *Id.*, Tr. 33 lines 5-9.

A joint defense agreement requires some common interest.  *Lugosch v. Congel*, 219

F.R.D. 220, 241 (N.D.N.Y.  2003).  There is none between former employees and Deutsche

Bank, only an effort to create the impression of a shared interest by solicitation of representation.

There is no plausible claim that plaintiff could bring against any former employee who is

a potential witness in this action.  There is thus no room for a joint defense agreement.

### E.     Defense Counsel and Seyfarth Shaw Cannot Rely on the Defendant's Doing What They Cannot Do Themselves

Sidley Austin and Seyfarth Shaw both rely on internal counsel of defendant having

initiated some of the solicitations.  However, it is well-settled that counsel cannot rely on a client

to do what they cannot do themselves.

Defendant has simply used two law firms, one directly representing it, and a second one

representing it though not of record, to purport to "represent" former employees who need no

representation in this matter, in order to bar plaintiff's counsel from conducting *ex parte*

interviews and to create a false sense of affinity with defendant.

<div style="margin-left:40%">

Respectfully submitted,
Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
          (202) 862-4320 – Telephone
          (202) 549-1454 – Cell
          (800) 805-1065 – Telecopier

</div>

Steven A. Berger (SB-2038)
sberger@bergerwebb.com
Jonathan Rogin (JR-9800)
jrogin@bergerwebb.com
Berger & Webb, LLP
1633 Broadway, 46th Floor
New York, N.Y. 10019
  (212) 319-1900 – Telephone
  (212) 319-2017 and -2018 – Telecopiers
By: ____/s/ Richard T. Seymour_____
  Richard T. Seymour (RS 8094)
  Attorneys for Plaintiff

Dated: February 15, 2011

## Certificate of Service

I certify that I have, this 15th day of February, 2011, served a true and correct copy of Plaintiff's Reply Memorandum of Points and Authorities in Support of Motion to Disqualify the Law Firms of Sidley Austin LLP And Seyfarth Shaw LLP from Representing, as to this Matter, Witnesses Herein who are Former Employees of Defendant, on counsel of record for defendant by electronic service through the Court's ECF system, as follows:

> Cliff Fonstein, Esq.
> Joanne Seltzer, Esq.
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, NY 10019

(a) Counsel for defendant who have informed counsel for plaintiffs that they purport to represent, as to this matter, the former employees Jeffrey Amling and James DeNaut, by electronic service through the Court's ECF system, addressed to defendant as follows:

> Cliff Fonstein, Esq.
> Joanne Seltzer, Esq.
> Sidley Austin LLP
> 787 Seventh Avenue
> New York, NY 10019

and on counsel from Seyfarth Shaw LLP who have informed counsel for plaintiffs that they purport to represent, as to this matter, the former employees Blair Faulstich, Elizabeth Chang, Christopher Johnson, and Susan Hoffman, witnesses herein who were noticed for deposition, by e-mail addressed to them as follows:

> Jeremi L. Chylinski, Esq.
> Seyfarth Shaw LLP
> 620 Eighth Avenue
> New York, NY 10018-1405
> jchylinski@seyfarth.com

David M. Burns, Esq.
Seyfarth Shaw LLP
975 F Street, N.W.
Washington, D.C. 20004
dburns@seyfarth.com

Barry J. Miller, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
bmiller@seyfarth.com

/s/ Richard T. Seymour
Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
  (202) 862-4320 – Telephone
  (202) 549-1454 – Cell
  (800) 805-1065 – Telecopier