UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

DANIEL B. GRAVES,
                              :

                Plaintiff,        07 Civ. 5471 (BSJ)
                              :

       - against -
                              :

DEUTSCHE BANK SECURITIES INC.,
                              :

              Defendant.
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Dated: New York, New York
       July 9, 2012

Cliff Fonstein
Nicholas H. De Baun
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
DEUTSCHE BANK SECURITIES INC.

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT .................................................................................................................................6

   I.  Standard of Review ................................................................................................6

   II.  Summary Judgment is not Appropriate on the Misrepresentation "Claim"
      Asserted Here. ........................................................................................................7

   III.  DBSI's Articulated Reasons for Graves's Termination are Consistent with
      Those Set Forth in the Position Statement. ............................................................9

CONCLUSION ............................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*American Int'l Group, Inc. v. London Am. Int'l Corp.*,
  664 F.2d 348 (2d Cir. 1981)..................................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................................6

*Aneja v. M.A. Angeliades, Inc.*,
  No. 05-9678, 2008 U.S. Dist. LEXIS 30602 (S.D.N.Y. Mar. 31, 2008) ................................10

*Bender v. Lowe*,
  No. 08-0334, 2011 U.S. Dist. LEXIS 99053 (S.D.N.Y. Aug. 30, 2011) (Jones, J.)..................7

*Citizens of Bank of Clearwater v. Hunt*,
  927 F.2d 707 (2d Cir. 1991)..................................................................................................8

*In re ICN/Viratek Sec. Litig.*,
  No. 87 Civ. 4296, 1996 WL 164732 (S.D.N.Y. April 9, 1996)..............................................8

*Kraft v. City of New York*,
  696 F.Supp.2d 403 (S.D.N.Y. 2010).....................................................................................7

*Leibowitz v. Cornell Univ.*,
  584 F.3d 487 (2d Cir. 2009)..........................................................................................10, 11

*McDowell v. T-Mobile USA, Inc.*,
  No. 04-2909, 2007 U.S. Dist. LEXIS 71591 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307
  Fed. Appx. 531 (2d Cir. 2009) ........................................................................................9, 10

*Mills v. Cottrell*,
  No. 04-5562, 2007 U.S. Dist. LEXIS 50250 (S.D.N.Y. July 5, 2007) ....................................8

*National Fire Ins. Co. of Pittsburgh v. Turtur*,
  892 F.2d 199 (2d Cir. 1989)..................................................................................................8

*Sarmiento v. Queens College CUNY*,
  386 F. Supp. 2d 93 (E.D.N.Y. 2005), *aff'd*, 153 Fed. Appx. 21 (2d Cir. 2005) .....................10

*Sista v. CDC Ixis North America, Inc.*,
  445 F.3d 161 (2d Cir. 2006)..................................................................................................7

*Weiss v. JPMorgan Chase & Co.*,
  No. 06 Civ. 4402(DLC), 2008 U.S. Dist. LEXIS 4970 (S.D.N.Y. Jan. 22, 2008) .................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ...................................................................................................................7

Fed. R. Civ. P. 56(c) ...................................................................................................................6

**PRELIMINARY STATEMENT**

In a last ditch effort to avoid summary dismissal of this action, plaintiff asks this Court to find, as a matter of undisputed fact, that Deutsche Bank Securities Inc. ("DBSI") intentionally misled the EEOC when it submitted a Position Statement in response to plaintiff's Charge. Presumably plaintiff seeks to establish that the reasons DBSI offered in the Position Statement for his dismissal were pretextual, and that the real reason was aged-based animus directed at plaintiff Daniel Graves, who at the time of his discharge was only 41 years old. In reality, as we explain below, there is absolutely no basis for plaintiff's brazen assertion that DBSI misled the EEOC and, in fact, the EEOC itself reached that conclusion after a day-long evidentiary hearing on the issue and plaintiff's submission of over 253 pages of documents. Indeed, the Position Statement identified the same reasons for selecting Graves to be laid off that the undisputed facts adduced in discovery and set forth in DBSI's motion for summary judgment have confirmed: (1) Graves had the lowest actual revenues in his group of any managing director; (2) the broadcasting space, which Graves has conceded he primarily covered, could not support two Managing Directors ("MD"), and the MD who was not laid off was four years older than Graves; and (3) Graves had the least seniority of any MD in the group.

The real reason for plaintiff's motion is to distract the Court from DBSI's own motion for summary judgment and divert its attention by claiming that DBSI intentionally deceived the EEOC. Because he cannot address any of the undisputed facts cited in DBSI's motion without conceding the emptiness of his claims, plaintiff has instead submitted his own 200-point statement of undisputed "facts" in which he quibbles over such matters as word choices in the Position Statement and whether accounts were "taken away" from him or whether he merely stopped calling on certain accounts when their senior managers were arrested for fraud. Nowhere does Graves confront the real reasons for his being laid off. In addition, Graves

simply ignores hornbook law holding that intentional misrepresentation claims, such as Graves's assertion here that DBSI "intentionally misled" the EEOC, are rarely appropriate for summary judgment.

In an effort to distract the Court from the simple and uncontroverted reasons for his dismissal, Graves has pointed to an ocean of minutiae produced in discovery in the hope that the Court will throw up its hands and conclude that a disputed material fact must lurk somewhere. In fact, not one of the myriad "facts" plaintiff points to controverts DBSI's proffered and substantiated reasons for his dismissal. As explained in DBSI's motion for summary judgment, those reasons, which were first set out in DBSI's Position Statement more than seven years ago, have been corroborated by irrefutable evidence.

Accordingly, the Court should deny plaintiff's motion for partial summary judgment, and should instead grant DBSI's motion in its entirety.

## STATEMENT OF FACTS

In July 2004, six months after he was laid off from DBSI in a reduction in force, Graves filed a charge (the "Charge") with the EEOC asserting that his employment was terminated based on his age. (A copy of the Charge is attached to the Affirmation of Cliff Fonstein filed concurrently herewith (the "Fonstein Aff.") as Exhibit P.) In the Charge, Graves asserted, as he has throughout this case, that in 2002, the year he turned 40 years old, Deutsche Bank hatched a multi-year plot to orchestrate his termination due to age-based animus. Graves based his assertion on several substantive allegations. In particular, Graves alleged as follows:

- "I had taken away from me the Cox, Charter and Adelphia accounts (among others), all of which represented a very significant percentage of my business and potential 'wallet'." (Charge ¶ 9.)

- "Throughout this time frame, I repeatedly objected to Jim DeNaut, Jacques Brand (both of whom were the superiors of Mr. Amling), Mr. Amling and others as my

- accounts were transferred to other, less busy, and younger bankers.  These objections fell on deaf ears."  (Charge ¶ 10.)

- "Account transfers notwithstanding, I continued to bring in substantial revenues despite the general downward spiral of the market, and Mr. Amling cited and praised me for this achievement during performance reviews."  (Charge ¶ 11.)

Other than the conclusory allegation that Mr. Amling made a stray remark regarding "younger bankers", Graves did not offer any other substantive allegations in support of his claim of age discrimination in the Charge.[1]

On November 5, 2004, DBSI submitted its Position Statement in response to the Charge.  (A copy of the Position Statement and certain of its exhibits is attached to the Fonstein Aff. as Exhibit M.)  In the Position Statement, DBSI explained its legitimate business justifications for eliminating Graves's position and discharging him in connection with a reduction in force.  Specifically, with respect to the decision to eliminate Graves's position, DBSI explained that:

> Mr. Amling decided that Mr. Graves' employment should be terminated for three main reasons:  1) he did not meet DBSI's target in 2003 and his 2004 outlook was poor; 2) there was duplication in the television space at DBSI and thus, with the downturn in the market, the space could no longer support two MD's; and 3) he had 18 years less seniority than Mr. Paul [the other MD who primarily covered the broadcasting space].

(Position Statement, p. 4.)

DBSI also offered significant evidence and legal argument that supported the decision to eliminate Graves's position and negated any possible inference of discrimination.  Among other things, DBSI pointed out that (1) Graves had the lowest revenues of any MD in the group for 2002 and 2003 (Position Statement, p. 3); (2) the other MD who covered similar areas

---

[1] That remark is not a subject of Plaintiff's Motion for Partial Summary Judgment, and is comprehensively addressed in DBSI's Motion for Summary Judgment.  (See Memorandum of Law in Support of DBSI's Motion for Summary Judgment (Dkt. No. 141) ("DBSI MSJ"), pp. 6, 14-17.)

and whose position was not eliminated was four years older than Graves, and had 18 years of seniority over him (Position Statement, p. 6); (3) Mr. Amling had hired Graves and was eight years older than Graves (Position Statement, p. 7); and (4) with one exception, all of the MDs in the group were either the same age as Graves or older.  (Position Statement, p. 2.)

DBSI also addressed the substantive allegations in the Charge, and demonstrated why those allegations were false or misleading.  In particular, DBSI explained that the Adelphia and Charter accounts were not "taken away" from Graves as he misleadingly implied in the Charge and as he now claims in the instant motion.  (See Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion"), p. 1.)  Instead, Graves stopped calling on both of those accounts after members of Charter's senior management resigned in connection with an SEC investigation, and members of Adelphia's senior management were arrested and charged with fraud.  (Position Statement, pp. 5, 8.)  DBSI freely admitted that after Graves stopped calling on those clients, other DBSI bankers began calling on them in the period before Graves's position was eliminated.  (Id.)  Similarly, DBSI demonstrated that the Adelphia and Charter accounts generated little or no revenue for DBSI in 2003 as a result of the resignations, arrests, and criminal investigations on-going at those entities.  (Position Statement, pp. 5, 8 and Exhibit F.)

Graves also misleadingly claims that DBSI attempted to deceive the EEOC by stating that Graves had ceased calling on a client named Cox.  (See Plaintiff's Motion, p. 1.)  In fact, Graves did not specify in the Charge whether he was alluding to DBSI clients Cox Communications, Cox Enterprise, or Cox Radio.  Assuming that he was referring to Cox Radio, DBSI accurately stated that Graves had ceased calling on the client, and that the client had not generated meaningful revenue.  (Id.)

Finally, DBSI did not state anywhere in its Position Statement that Graves never raised the issue of account transfers with his managers, as he now misleadingly suggests. (Plaintiff's Motion, p. 4.) DBSI did correctly note that Graves did not mention the account transfers in the place any objection would most logically be raised: his self-evaluation for 2003, in which he was called upon to describe his activities over the past year and justify his performance. (Position Statement, pp. 3-4 and Exhibit D.)[2] DBSI also correctly noted that Graves never complained to anyone that his accounts were being moved to "younger bankers" – an assertion for which he has offered no competent evidence.

Following a review of the parties' submissions, the EEOC concluded that it could not determine that a violation of Graves's rights had occurred, and issued him a Right to Sue Letter. Graves then commenced this action. In the discovery process, DBSI produced over 80,000 pages of documents. In addition, Graves took the depositions of five current and former DBSI personnel.

Discovery has confirmed the assertions contained in DBSI's Position Statement. As set forth in DBSI's motion for summary judgment, the undisputed record establishes that Graves's position was eliminated in a reduction in force because (1) Graves had the lowest actual and projected revenue of any MD in the group; and (2) Amling and his manager, Jacques Brand, believed that the broadcasting sector, which formed a part of the client bases of Graves and Mr.

---

[2] In his "motion", Graves also suggests that DBSI misled the EEOC by representing to it that there was a formal seniority system at DBSI, that Graves's accounts had little value to other bankers, that there was significant overlap between Graves and Mr. Paul, and that franchise revenues were used to make employment-related decisions. In fact, the Position Statement itself states that Mr. Amling considered Graves's relative seniority compared to other MDs in the group – an assertion that is not contradicted by Mr. Amling's own testimony. (Transcript of the deposition of Jeffrey Amling ("Amling Tr.") attached to the Fonstein Aff. as Ex. C, p. 133.) In addition, relevant testimony establishes that there was significant overlap between Graves's and Mr. Paul's account coverage, and Graves himself conceded that his accounts were predominantly in the broadcasting area. (Transcript of the deposition of Daniel Graves ("Graves Tr.") attached to the Fonstein Aff. as Ex. B, pp. 25-26.) Finally, the assertion that DBSI did not look to bankers' franchise revenue – the amount of profit they were responsible for generating – in addition to being patently absurd, is refuted by ample testimony. (Amling Tr. 27, 28, 76.)

Paul, was no longer able to support two MDs.  (See Memorandum of Law in Support of DBSI's Motion for Summary Judgment, p. 5.)  In addition, Amling testified that he may have taken into account the fact that Graves was the most recently hired MD in the group.  (Amling Tr., p. 133.)  Thus, discovery has corroborated the legitimate justification for the elimination of Graves's position contained in the Position Statement that Graves's employment was terminated "for three main reasons:  1) he did not meet DBSI's target in 2003 and his 2004 outlook was poor; 2) there was duplication in the broadcasting space at DBSI and thus, with the downturn in the market, the space could no longer support two MD's; and 3) he had 18 years less seniority than Mr. Paul."  (See Position Statement, p. 4.)

Finally, after filing the instant action, Graves returned to the EEOC and argued to it, as he does here, that DBSI had deliberately deceived the EEOC in the Position Statement.  In response, the EEOC invited the parties to make written submissions stating their positions, and then conducted a day-long fact-finding conference at which Graves was provided with the opportunity to elaborate on his complaints and DBSI was allowed to present witnesses.  Following the fact-finding conference and a review of more than 600 pages of written submissions by both parties (Fonstein Aff., ¶ 3), the EEOC concluded that it could not determine that DBSI had engaged in any misrepresentations.  (A copy of the EEOC's determination is attached as Exhibit Q to the Fonstein Aff.)

## ARGUMENT

### I.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A court should deny summary judgment if a

reasonable jury could return a verdict in favor of the non-moving party. *Kraft v. City of New York*, 696 F.Supp.2d 403, 412 (S.D.N.Y. 2010). In making this determination, a court must view all facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences against the moving party. *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006); *Bender v. Lowe*, No. 08-0334, 2011 U.S. Dist. LEXIS 99053, at *19-20 (S.D.N.Y. Aug. 30, 2011) (Jones, J.). As we explain below, Graves's motion is totally unsuited for summary adjudication.[3]

## II. Summary Judgment is not Appropriate on the Misrepresentation "Claim" Asserted Here.

Graves asks this Court to rule that there is no genuine issue of material fact that DBSI "lied to the EEOC, and/or actively sought to mislead the EEOC and divert its investigation," by falsifying and misrepresenting information in its Position Statement. (Plaintiff's Motion, pp. 1-3.) DBSI emphatically denies that it lied to or misled the EEOC. After Graves raised these baseless allegations to the Commission, the EEOC conducted its own fact-finding conference on May 28, 2009 regarding "alleged falsifications and misrepresentations made by [DBSI] to the Commission during the course of the Commission's initial investigation of [Graves's] charge." (Fonstein Aff., ¶ 3 and Ex. Q, p. 1.) At that conference, the Commission heard from DBSI's counsel and from several witnesses. In addition to the fact-finding conference, the parties submitted numerous letters in which they argued their positions and rebutted each other's arguments. The Commission found that the evidence submitted regarding Graves's allegations "did not make clear that [DBSI] falsified or misrepresented information

---

[3] Indeed, in reality, the circumstances plaintiff seeks to establish here – namely, that DBSI misled the EEOC – is neither an element of any of his claims nor a fact that has any bearing on them. Accordingly, DBSI submits that summary adjudication is not appropriate here for the simple reason that the matters on which plaintiff seeks summary judgment are neither "claims" nor "parts" of claims, as required by Fed. R. Civ. P. 56(a).

during the course of the Commission's initial investigation of [Grave's] charge," and the Commission took no further action. (Fonstein Aff., Ex. Q, p. 1.) It is Graves's characterization of this issue as undisputed that is misleading.

Whether DBSI lied to the EEOC and/or actively sought to mislead the EEOC is a material factual issue not properly resolved on summary judgment here. *See National Fire Ins. Co. of Pittsburgh v. Turtur*, 892 F.2d 199, 205 (2d Cir. 1989) (appellants claimed they were fraudulently induced into investing in the limited partnership and court found that summary judgment was unwarranted because "[q]uestions of intent…are usually inappropriate for disposition on summary judgment."). Courts in the Second Circuit have applied this general rule to deny summary judgment where purported inaccurate or misleading statements are at issue. *See Citizens of Bank of Clearwater v. Hunt*, 927 F.2d 707, 712 (2d Cir. 1991) (summary judgment improper on fraudulent conveyance claim given genuine issues of material fact as to the parties' intentions); *In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296, 1996 WL 164732, at *14 (S.D.N.Y. April 9, 1996) (in considering primary wrongdoer liability based on corporate officers' review and revision of statements made by third party, summary judgment "inappropriate" where plaintiffs contended that defendant's statement in a press release was "materially misleading"); *Mills v. Cottrell*, No. 04-5562, 2007 U.S. Dist. LEXIS 50250, at * 5-6 (S.D.N.Y. July 5, 2007) (holding in connection with in breach of fiduciary duty, common law misappropriation and copyright infringement claims that "[t]he question of subjective intent … is 'generally [an] inappropriate subject[] of summary judgment.'") (quoting *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 353 (2d Cir. 1981)).

DBSI emphatically denies that it lied to or actively attempted to mislead the Commission, and for the reasons set forth more fully in DBSI's motion for summary judgment,

discovery in this matter has only confirmed the legitimacy of the reasons for Graves's termination as set forth in DBSI's Position Statement. Because Graves has asked this Court to determine that there is no genuine issue or material fact that DBSI lied to or actively attempted to mislead the Commission, his motion should be denied.

### III. DBSI's Articulated Reasons for Graves's Termination are Consistent with Those Set Forth in the Position Statement.

For the reasons set forth in DBSI's motion for summary judgment, discovery has only corroborated the legitimate justifications for the elimination of Graves's position contained in the Position Statement and that Graves's employment was terminated because (1) Graves's actual and projected revenues were lower than any other MD in the group; (2) there was a downward trend in the media sector in 2003 and 2004 and DBSI was no longer able to support two MDs in the broadcasting space, which formed part of Graves's client base, and (3) Mr. Paul – the MD who was retained – also covered the broadcasting space, is older than Graves and had 18 years more seniority than Graves. (DBSI MSJ, pp. 11-18.) These reasons were presented to the EEOC in DBSI's Position Statement. (See Fonstein Aff., Ex. M, p. 4.)

Even if all these reasons had not been stated in DBSI's Position Statement (they were), Plaintiff's motion seeks to make DBSI liable under a standard that the law does not require, namely perfect consistency in the reasons first articulated for an adverse job action in an EEOC Position Statement and throughout the course of discovery. "To the extent that a defendant's communications with the EEOC statement contain factual errors, courts have, not surprisingly, taken a case-by-case approach in determining the impact of these errors." *McDowell v. T-Mobile USA, Inc.*, No. 04-2909, 2007 U.S. Dist. LEXIS 71591, at *54-55 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 Fed. Appx. 531 (2d Cir. 2009). In *McDowell*, the court explained that because the employer "did not completely backtrack in litigation from its original

rationale … and presented a generally consistent explanation for its actions" and even though "the defendant's statements to the EEOC do not align perfectly with defendant's proffered reasons or with all of the evidence in the record, these discrepancies and defendant's conflicting explanations [are] … insufficient to show pretext." *Id.*, at *55-56.

The law requires neither omniscience or perfection when drafting an EEOC position statement, particularly in a case where the plaintiff advances complex factual and legal contentions involving allegations of a long-standing and far-reaching conspiracy. *See Sarmiento v. Queens College CUNY*, 386 F. Supp. 2d 93, 105 (E.D.N.Y. 2005) (finding single inaccurate statement in letter to EEOC insufficient to establish pretext where letter "address[ed] complicated factual and legal issues underlying four separate hiring decisions"), *aff'd*, 153 Fed. Appx. 21 (2d Cir. 2005).  As courts in this Circuit have consistently found, the variety of explanations for terminating an employee may simply reflect the "polyphony of multiple decisionmakers and the assorted complaints lodged against the employee," *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402(DLC), 2008 U.S. Dist. LEXIS 4970, at *32 (S.D.N.Y. Jan. 22, 2008) or the "assorted reasons why Plaintiff's services were no longer needed." *Aneja v. M.A. Angeliades, Inc.*, No. 05-9678, 2008 U.S. Dist. LEXIS 30602, at * 23 (S.D.N.Y. Mar. 31, 2008).

The Second Circuit has explained that shifting rationales for an adverse job action must be "radically different" if they are to serve as evidence of pretext. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009).  DBSI's articulated reasons for Graves's employment termination were, despite Graves's mischaracterization, consistent with those set forth in its Position Statement.  This holds true even if DBSI has not articulated the reasons for Graves's termination in exactly the same language throughout the course of this litigation.  The articulated reasons for Graves's termination are certainly not so "radically different" as to constitute

undisputed evidence of pretext based on which Plaintiff should be granted summary judgment. *Id.* (explaining that defendant's arguments for not renewing plaintiff's contract at various stages of the litigation, while "not identical, all relate to the alleged financial burden of renewing plaintiff's contract; in contrast, in the cases where we have found that variations in the employers' professed reasons gave rise to an inference of pretext, those reasons were **radically different**.") (emphasis added).

## CONCLUSION

For the foregoing reasons, DBSI respectfully requests that the Court deny plaintiff's Motion for Partial Summary Judgment, and instead grant its motion to dismiss the Complaint in its entirety with prejudice, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 9, 2012

        SEYFARTH SHAW LLP

        By:  /s/ Cliff Fonstein
            Cliff Fonstein
            Nicholas H. De Baun
            620 Eighth Avenue
            New York, New York 10018
            (212) 218-5500

        Attorneys for Defendant
        Deutsche Bank Securities Inc.

**Certificate of Service**

I certify that I have, this 9th day of July, 2012, served a true and correct copy of DBSI's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment on counsel of record for plaintiff, as shown below, by service through the Court's ECF system:

>Richard T. Seymour
>Law Office of Richard T. Seymour, P.L.L.C.
>Suite 900, Brawner Building
>888 17th Street, N.W.
>Washington, DC 20006-3307
>rick@rickseymourlaw.net
>(202) 785-2145 – Telephone
>(202) 549-1454 – Cell
>(800) 805-1065 – Telecopier

Dated: New York, New York
July 9, 2012

>SEYFARTH SHAW LLP
>
>By: /s/ Cliff Fonstein
>    Cliff Fonstein
>    Nicholas H. De Baun
>    620 Eighth Avenue
>    New York, New York 10018
>    (212) 218-5500
>
>Attorneys for Defendant
>Deutsche Bank Securities Inc.

14572448v.2