THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>           Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>           Defendant. | **CIVIL ACTION NO.**<br>**1:07-cv-05471-BSJ-KNF**<br><br>ECF Case |

# PLAINTIFF'S OPPOSITION TO
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Table of Contents

| | | |
|---|---|---|
| A. | Introduction……………………………………………………………………. | 1 |
| B. | Plaintiff's Statement of the Case……………………………………………… | 2 |
| C. | Defendant's Assertions of Fact in its Local Rule 56.1 Statement, That Are Unsupported by Its Citations, Should Be Struck……………………... | 6 |
| D. | Defendant's Assertions of Fact in its Memorandum, Unsupported by its Local Rule 56.1 Statement, and Unsupported by Citations to the Record, Should be Struck………………………………………………………….. | 9 |
| E. | In Considering Summary Judgment, No Weight Should Be Given to the Testimony of the Movant's Witnesses That a Jury is Not Required to Believe…. | 10 |
| F. | Defendant Should Not Be Allowed to Profit from its Refusals to Make Discovery…………………………………………………………………. | 11 |
| G. | Summary Judgment Should Not Be Granted Where the Defendant Has Been Dishonest About Material Facts………………………………………………. | 12 |
| H. | Summary Judgment Should Not Be Granted Where the Defendant Changes its Story, or Its Explanation Does Not Make Sense…………………………….. | 12 |
| I. | Plaintiff Has Presented Evidence of Age Discrimination and of Pretext………… | 13 |
| J. | Plaintiff Has Set Forth a Valid Retaliation Claim………………………………… | 15 |
| K. | Conclusion………………………………………………………………………... | 16 |

### Table of Authorities

#### 1.    Cases

*E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116 (2d Cir. 1994)……………………..     12

*Folio Impressions, Inc. v. Byer California*, 937 F.2d 759 (2d Cir. 1991)………. 10
*Guadagno v. Wallack Ader Levithan Associates*, 950 F.Supp. 1258 (S.D.N.Y. 1997), *aff'd*, 125 F.3d 844 (2nd Cir. 1997) (Table, text in WESTLAW, NO. 97-7184), *cert. denied*, 522 U.S. 1122 (1998)… 14
*Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 1602, 179 L.Ed.2d 516 (2011)…………………… 15
*Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62 (2d Cir. 2001)…………………… 8, 9
*In re Dana Corp. (Jasco Tools)*, 574 F.3d 129 (2d Cir. 2009)………………… 10
*Interstate Circuit v. United States*, 306 U.S. 208 (1939)…………………….... 14
*Johnson v. CH Energy Group*, Inc., 353 Fed.Appx. 543 (2d Cir. 2009)….....… 12
*Kaytor v. Electric Boat Corp.*, 609 F.3d 537 (2d Cir. 2010)…………………… 10
*Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126 (S.D.N.Y. 2007)………………………………………………………. 11
*Radentz v. Marion County*, 640 F.3d 754 (7th Cir. 2011)……………………… 13
*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)…………… 10, 12
*Schmitz v. St. Regis Paper Co.*, 811 F.2d 131 (2d Cir. 1987) (*per curiam*)…….. 12

### 2.  Statutes

Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*.…………. 2

### 3.  Rules

Rule 26(e), Fed. R. Civ. Pro.……………………………………………….. 12
Rule 37(b)(2)(A)(1) to (6), Fed. R. Civ. Pro.……………………………….. 11
Rule 37(c)(1), Fed. R. Civ. Pro.……………………………………………. 11
Rule 37(d)(1)(A)(ii), Fed. R. Civ. Pro.……………………………………… 11
Rule 56(c), Fed. R. Civ. Pro.……………………………………………….. 10
Rule 56(c)(1)(A), Fed. R. Civ. Pro.………………………………………… 6
Rule 602, Fed. R. Evid.…………………………………………………….. 10, 11
Rule 608(b), Fed. R. Evid.………………………………………………….. 13
Local Rule 56.1(d)…………………………………………………………. 6, 10

### 4.  Other Authorities

JAMES H. CHADBOURN, II WIGMORE ON EVIDENCE (Little, Brown & Co., Boston, 1979), § 285……………………………………………. 14

### A.     Introduction

Defendant's Motion ignores much of the evidence supporting the claims in this case, including the evidence that Defendant's preference for the younger bankers that it promoted to Director in April 2003 was the fount of the Media Group's troubles, and ultimately cost Plaintiff his job.  It has ignored the massive evidence that Defendant set Plaintiff up to fail, and relies primarily on after-the-fact documents that show the result of its juggling of business arrangements to make this happen, as if these documents were prior independent assessments that led to the challenged decisions.  Defendant's Motion discusses the facts it wishes were in the record, not the facts that are in the record.

Plaintiff has set forth a brief explanation of his case in Part B of this Memorandum below.

Plaintiff's Response to Defendant's Rule 56.1 Statement consists of three parts.  Part A of the Response responds to Defendant's statements, points out where the Statements go beyond the record, and cross-reference the other parts of the Response.  Part B of the Response shows many of the issues on which there are triable issues of fact, and where there are facts creating reasonable inferences a jury could draw.  Some portions of Part B of the Response set forth why a jury would not be required to believe Amling, Brand, or DeNaut.  See the legal discussion in Part D of this Memorandum below.  Part C of the Response shows many of the issues on which the facts are both undisputed and directly contrary to the representations Defendant made to the EEOC and to this Court.

Defendant's Local Rule 56.1 Statement overstates the few factual materials it cites, ignores contrary evidence within its own cited materials, and includes statements going far beyond the materials cited in the Statement.  Much of it should be struck.  See Part C of this Memorandum below.

Defendant's Memorandum is even worse. Not only does it quote many of the most egregious parts of its Local Rule 56.1 Statement, but it makes unsupported assertions going beyond even the over-reachings of that Statement. These assertions should be struck. See Part D of this Memorandum below.

This case does not require analysis of the burden-shifting model, or whether mixed-motives analysis is available under all or any of the non-ADEA statutes pursuant to which this case was brought, or what standards should apply when the plaintiff has very little evidence. This case is the exact opposite: there are two evidentiary admissions of age discrimination, one inferential and made by James DeNaut, whom Defendant has judicially admitted was a decisionmaker, and one direct, forceful and strong, made by Defendant's official agent and designated spokesperson for Defendant as to Plaintiff's termination, there is ample evidence of pretext, and there is ample evidence of Defendant's mendacity in this case.

There is no need here to address cases dealing with barebones evidence.

**B.     Plaintiff's Statement of the Case**

Plaintiff was an investment banker with DBSI and its predecessor BT Alex Brown. He had broad experience, and contacts, in most of the major areas of the Media industry: Cable, satellite radio, cinema, TV broadcast, radio broadcast, content, and publishing. See Part C(7) of Plaintiff's Response to Defendant's Rule 56.1 Statement (hereinafter, "Plaintiff's Response").

Apart from documents created after the start of DBSI's internal discussions of firing Graves and therefore suspect, its own documents show that he was considered a valuable and well-performing employee. See Parts B(10), B(13), and B(15) of Plaintiff's Response.

Contradicting the impression Defendant has sought to create, Plaintiff was rated by DBSI more highly than some other Managing Directors who were not fired. See Part B(13) of

2

Plaintiff's Response.  This is one of a long list of factors indicating that Defendant's explanations are pretexts for age discrimination.

Defendant has apparently sought and found the one DBSI document with grossly erroneous earnings figures and has presented that to the Court as if it were accurate, without even mentioning the many other documents that show accurately that Graves far exceeded his 10 million Euro target in 2002.  See Part B(12) of Plaintiff's Response.  Defendant's proffer of information it had to know was false is, like its deliberate misrepresentations to the EEOC, a strong indication that it is attempting to conceal age discrimination.

Plaintiff was allowed to perform well from his hire in March 1999 through 2002, and was then set up by DBSI to fail.  It transferred several of Plaintiff's accounts with "wallet size," and with fee-paying clients, to younger bankers or to other Managing Directors.  These were valuable accounts, with potential transactions in the $5 billion range.  See Parts B(8) and C(2) through C(6) of Plaintiff's Response to Defendant's Rule 56.1 Statement.

DBSI refused to set Graves up as Senior Investment Banker ("SIB") on Gannet and other important accounts.  *Id.*, Parts B(9) and C(9)(e).

Defendant has sought to create the impression that the Media Group, above all the many other groups that James DeNaut and Jacques Brand supervised, was in a death spiral.  Its assertions are not supported by its own cited materials.  *Id.*, Parts B(4) and B(5).  Even more seriously, prior to firing Graves Defendant expected the business and fees of the Media Group to increase substantially.  *Id.*, Part B(17).  And even more telling, prior to firing Graves Defendant expected the business and fees of the broadcasting "space" in the Media Group to increase substantially.  *Id.*, Part B(18).

3

Defendant's mendacity in this case is further shown by its attempted reliance on "seniority" in firing Graves, when it had no such system and used no such standard. *Id.*, Part C(8). Similarly, Defendant's use of altered Franchise Revenue reports, and its claimed reliance on pipelines in choosing to fire Graves, have no support in the standard practices of Defendant. See Part C(9) of Plaintiff's Response.

Defendant repeatedly refers to the Media Group being top-heavy as if this required the firing of Managing Directors, but the evidence shows, to the extent the Media Group could actually be considered top-heavy, that it was the promotion of four young Vice Presidents to the rank of Director in April 2003 that made the Media Group top-heavy and created a general difficulty in making targets. *Id.*, Part B(7).

A remark by DeNaut is subject to more than one inference, but one of the inferences is that he admitted age discrimination in the personnel changes he and Brand made during their tenure overseeing many industry groups, including the Media Group. *Id.*, Part B(6). On summary judgment, the Court is required to draw inferences in favor of the non-movant, and is not allowed to draw inferences in favor of the movant.

Defendant has routinely ignored Plaintiff's discovery requests, and has then attempted to support its summary-judgment motion with cherry-picked exceptions. For example, Defendant provided this Court with a document it had to know was wrong, stating that Graves had impossibly low revenues in 2002-2002. See Defendant's Rule 56.1 Statement, ¶ 11, and Exhibit G to the De Baun Affirmation. Yet in discovery it failed to produce any documents that would show the 2001 franchise revenues of bankers in the Media Group. Defendant has also provided answers not saying there were no responsive documents, but that it was too burdensome to find them and produce them, and then asks the Court to draw an inference from the absence of a

4

particular type of document in the production.  These are abuses from which Defendant should not be allowed to profit.  See Plaintiff's Response to Defendant's Statement 2, 9, 20, 22, and 23, and Parts B(2), B(11), B(16), C(5), and C(8) of the Response.

Defendant has made three inconsistent sets of representations as to who its decisionmakers were, with respect to Plaintiff's termination.  *Id.,* Part B(21).  Plaintiff has shown that three of the persons various named in one set or another—Jeffrey Amling, Dames DeNaut, and Jacques Brand—have memories so poor, or such lack of knowledge, that no jury would be required to believe them.  *Id.*, Parts B(3), B(14), and B(19),  As such, their testimony must be considered, but no weight may be placed on their testimony, in deciding this Motion.

Contrary to the impressions Defendant has sought to create, Defendant's language limiting bonuses to those persons it chose to allow to continue working on the date the bonuses were declared is not dispositive.  Apart from its actions controlling the timing of Graves' termination, various arbitral awards Defendant failed to produce in discovery show that this language has frequently been held not to be dispositive.  *Id,*, Parts B(1) and B(2).

Again contrary to the impressions Defendant has sought to create, the absence of a reference to Amling's remark that Amling needed Graves' accounts for "younger bankers," in Graves' non-contemporaneous handwritten notes, does not give rise to an inference that Graves is not credible as to this remark.  While such an inference in favor of the movant is impermissible on summary judgment, there is a disputed issue of material fact as to whether defendant's proposed inference is more likely than an innocent inference, stemming from Graves' testimony that he made the notes after he had talked with his then lawyer, and that the notes were made in light of what had already been discussed.  Moreover, six days after the remarks were made, Graves complained internally to Brand and DeNaut, Amling's supervisor,

and saw their shock and dismay. And three weeks after the remarks were made, Graves sent a letter to Brand and DeNaut that recounted the notes and their reaction to the notes as he had observed it, and Defendant's response never corrected or even addressed his account. See Part B(20) of Plaintiff's Response.

Plaintiff has shown that he could have been transferred to another unit within DBSI, and Defendant has failed to show that he could not have been. *Id.*, Part B(16),

Finally, despite Defendant's failure to provide discovery, Plaintiff has shown a triable issue of fact on whether other bankers were given "soft landings," in the form of extended notice or sharply increased severance payments. See Plaintiff's Response to Defendant's Statement #23.

### C. Defendant's Assertions of Fact in its Local Rule 56.1 Statement, That Are Unsupported by Its Citations, Should Be Struck

Rule 56(c)(1)(A), Fed. R. Civ. Pro., requires that a movant for summary judgment support its motion by citing materials from the record. Local Rule 56.1(d) similarly requires the movant to cite admissible evidence in support of each assertion. Many parts of Defendant's Rule 56.1 Statement fail this fundamental requirement. It has made numerous statements in its Local Rule 56.1 Statement that are unsupported by its citations, including:

(a) the assertion in Defendant's Statement #8 that "Brand and DeNaut concluded that the group was . . . top-heavy."

(b) the assertion of a meeting in Defendant's Statement #9.

(c) the assertions in Defendant's Statement #10 that BPAD recognized that the Media Group had experienced a fee decline, and "one of the more severe fee declines", and a fee decline over three years, or a fee decline of 33% per year. See Parts (a), (b), and (c) of Plaintiff's Response to Defendant's Statement #10.

6

(d) the assertion in Defendant's Statement #10 that "The group listed as open issues . . . the need to reconsider the reassignment of underperforming accounts, including Gannett Corporation, to other bankers."  See Part (e) of Plaintiff's Response to Defendant's Statement #10.

(e) the assertion in Defendant's Statement #12 that Amling told Graves "that his 2002 revenue was substantially below the target set for MDs . . . ."  See Part (a) of Plaintiff's Response to Defendant's Statement #12.

(f) the assertion in Defendant's Statement #12 that "In 2003, Amling met with Graves to advise him that . . . Graves's job might be in jeopardy."  See Part (b) of Plaintiff's Response to Defendant's Statement #12.

(g) the assertion in Defendant's Statement #13 that in the referenced discussion with officials reporting to senior management, there was any mention of broadcasting clients or who worked on broadcasting clients.

(h) the assertions in Defendant's Statement #14.  See Plaintiff's Response.

(i) the assertions in Defendant's Statement #15 that there was a meeting, and that the Promotion and Performance Committee had anything to do with the topics stated, and that Exhibit J was anything more than a draft subject to change, and that Graves was sixth of the seven Media MDs in Exhibit K, and that Graves was ranked last in the Corporate Finance MD overall regional ranking because the redactions make it impossible to say, and that Graves was ranked second to lowest and lowest for quality, quantity and culture.

(j) the assertions in Defendant's Statement #16 that the referenced discussion occurred "Towards the end of 2003," and that the "broadcasting sector" was discussed as

7

opposed to what was really the TV broadcasting sector, and that there was any discussion of the sector being "no longer able to support two MDs."

(k) the assertions in Defendant's Statement #17 that Amling was to be laid off in January 2004. If the assertions are to be changed to refer to Graves, the assertions that the decision to fire him was made "In late December, early January 2004," and that Graves had "the lowest actual and projected revenue in the Media Group."

(l) the assertions in Defendant's Statement #20.

(m) the assertions in Defendant's Statement #21 about "other selected employees."

(n) the assertions in Defendant's Statement #22.

(o) the assertions in Defendant's Statement #23.

Plaintiff has excluded from this list statements simply cited the wrong Exhibit, or are plainly correct even if not supported by Defendant's citations.

Entirely apart from Plaintiff's citations of other evidence contradicting these statements, Defendant's failure to support its statements means that they should be struck. "Where, as here, the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (citation and footnote omitted). Similarly, a plaintiff who fails to support a Local Rule 56.1 response with citations to admissible evidence is subject to having his or her denials struck and the defendant's statement accepted. While *Holtz* recognized that the Court has broad authority to excuse compliance with its own rules, *id.* at 73, 74, it also recognized that the purpose of the rule is to streamline the processing of summary judgment motions. This goal would be frustrated by excusing Defendant from the longstanding

8

requirements of the rule. *Holtz* observed that "district courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that 'where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.'" *Id.* at 73 (citations omitted). So too, here.

      D.    <u>**Defendant's Assertions of Fact in its Memorandum, Unsupported by its Local Rule 56.1 Statement, and Unsupported by Citations to the Record, Should be Struck**</u>

Defendant's Memorandum of Law contains numerous factual statements that either are not supported by its Local Rule 56.1 Statement or that exceed what it said in that Statement. These include Defendant's assertions (a) that the "management structure" of the Media Group was top-heavy, as opposed to the Group being top-heavy, Brief at 1; (b) that Amling selected the banker to be terminated, *id.*; (c) that Graves "had had the lowest revenues for the group two years in a row," *id.*, (d) that Graves "had been given the lowest or second-lowest ratings possible by a committee of his peers in every attribute on which he was rated," *id.*, (e) that Graves "had received the lowest overall ranking for the entire group," *id.*, (f) that Amling had acted for these reasons, *id.*, (g) that Amling "less than a year before the layoff decision had spared Graves from a previous reduction in force," *id.*, (h) that "Graves objectively had the poorest performance in the group, *id.*, (i) that "Graves had been spared from another layoff less than a year beforehand," *id.*, (j) that Graves was one of the Managing Directors representing clients who had not paid a transactional fee in over three years, Brief at 2, (k) that "DBSI's share of that wallet was an indication of the effectiveness of the primary banker assigned to that client in the development of business," *id.* n,3, (l) that Amling's advocating that both Graves and Paul be retained was because he was "hoping that the revenue picture might appear brighter at the end of 2003," *id.*, p. 2), (m) that DeNaut had approached Ben Griswold about a transfer of Graves into the Large Cap Group, *id.*, p. 6, and (n) that Graves' handwritten notes were contemporaneous.

9

The above list excludes assertions in Defendant's Rule 56.1 Statement that are unsupported by its own citations, or that are contradicted by the record.

The purposes of Rule 56(c), Fed. R. Civ. Pro., and of Local Rule 56.1 would be utterly thwarted by allowing a movant for summary judgment to make factual assertions outside of its Rule 56.1 Statement, and that it does not even try to pin to the record. See the authorities cited in Part C above.

### E. In Considering Summary Judgment, No Weight Should Be Given to the Testimony of the Movant's Witnesses That a Jury is Not Required to Believe

The Supreme Court declared in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000), that in considering a Rule 50 motion for judgment as a matter of law, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." The Second Circuit has held that this requirement is equally applicable to the consideration of Rule 56 motions for summary judgment, and has emphasized the above quotation. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *In re Dana Corp. (Jasco Tools)*, 574 F.3d 129, 152 (2d Cir. 2009).

Plaintiff has shown ample reasons in his Response to Defendant's Rule 56.1 Statement why a jury would not be required to believe the testimony of Amling, Brand, and DeNaut, or the documents they generated after beginning to discuss Graves' termination.

Independently of the case law cited herein, FRE 602 limits testimony to those witnesses who have personal knowledge of a matter. The lapses in memory of Brand, DeNaut and Amling are vast, and in some instances appear to be tactical. See, for example, Amling's asserted failure to remember whether he signed a retainer with the Sidley Austin firm, or when he signed it, when he had signed it a matter of days previously. Taking the witnesses at their word, however, they knew astonishingly little. *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763-64

10

(2d Cir. 1991), made clear that Rule 602 is not violated where a witness with personal knowledge and a present recollection uses the word "believe" in describing her knowledge, there is a lack of personal knowledge or ability to recollect that will make testimony speculative and inadmissible.

Accordingly, for each of these reasons, their evidence should be disregarded on this Motion.

### F. Defendant Should Not Be Allowed to Profit from its Refusals to Make Discovery

Plaintiff has discussed above the fact that Defendant has failed or refused to make relevant discovery available to Plaintiff, and now seeks to capitalize on that failure by cherry-picking documents, by making assertions where the ability to make the most effective response is barred by Defendant's failures to make discovery, and by seeking to draw inferences from the absence in the record of the documents it refused or failed to produce.  Defendant never sought a protective order for the requests in question, and never supplemented its responses.

Plaintiff made a good-faith effort to persuade Defendant to comply with its discovery obligations.  See the Seymour Declaration, ¶¶ 56-57, Exhibits 52 and 53.

Rule 37(c)(1), Fed. R. Civ. Pro., states that a party failing to provide information may not then use that information to supply evidence on a motion or at trial, unless the failure was substantially justified or is harmless.  The rule allows the jury to be informed of the failure, and authorizes the court to order any of the sanctions in Rule 37(b)(2)(A)(1) to (6).  Rule 37(d)(1)(A)(ii), Fed. R. Civ. Pro., allows sanctions where a party "fails to serve its answers, objection or written response."  Just as the production of an unprepared corporate witness in a Rule 30(b)(6) deposition is tantamount to a failure to appear, *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007), attempting to sandbag the

11

Plaintiff by refusing to produce all of the relevant documents while cherry-picking a few documents and using them to support a dispositive motion effectively limits the non-movant's ability to respond.  The duty to supplement discovery under Rule 26(e) is a very important protection in this situation.  If a movant makes a belated decision to rely on a cherry-picked document, or relies on the absence of documents it failed to produce, a timely supplementation under Rule 26(e) can protect the non-movant's rights.  Here, however, Defendant's failures to provide discovery were tantamount to a complete failure to respond, there was no timely saving supplementation, and the cited rules operate in tandem to deny Defendant the benefit of its abusive tactics.

### G. Summary Judgment Should Not Be Granted Where the Defendant Has Been Dishonest About Material Facts

*Reeves* stated: "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  530 U.S. at 137 (citations omitted).  *Accord*, *Johnson v. CH Energy Group*, Inc., 353 Fed.Appx. 543, 546-47 (2d Cir. 2009).  The record herein is replete with Defendant's dishonesty about material facts.  See Part C to Plaintiff's Response.

### H. Summary Judgment Should Not Be Granted Where the Defendant Changes its Story, or Its Explanation Does Not Make Sense

The record here shows that Defendant has changed its story, and has even changed its story about who the decisionmakers were.  A jury can find pretext from such changes. *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994); *Schmitz v. St. Regis Paper Co.*, 811 F.2d 131, 132-33 (2d Cir. 1987) (*per curiam*).  Because a jury can find pretext and discrimination from these changes, summary judgment is not appropriate.

Similarly, actions or explanations that make no business sense preclude summary judgment because the employer's rationale is unworthy of credence. The record is replete with such actions here, including refusing to set Graves up as SIB on accounts where no one else was set up as SIB, refusing to assign new accounts to Graves and siphoning away his old accounts, and leaving accounts Graves desired uncovered by anyone, all without explanations, or without explanations that make sense. These decisions cost DBSI revenue, as well as costing Plaintiff his job. *Radentz v. Marion County*, 640 F.3d 754, 760-61 (7th Cir. 2011), held that it is proper to look at whether a defendant's business justifications make sense, because if they do not, that can be an indication that the proffered reasons were not the real reasons.

Defendant's admissions of tax fraud and mortgage fraud are relevant to show its *modus operandi* in dealing with agencies of the government. Defense witnesses can also be asked about these admissions on cross-examination, with the permission of the Court, to show that Defendant's and its officials' representations are not trustworthy. FRE 608(b).

**I.     Plaintiff Has Presented Evidence of Age Discrimination and of Pretext**

Defendant rests its attack on Plaintiff's age discrimination claim on the incorrect assumption that there is no evidence of pretext. Since proof of pretext abounds, it is unnecessary to address most of Defendant's discussion and cases.

Defendant incorrectly asserts that Plaintiff's only evidence of age discrimination is Amling's statement that he needed Graves' accounts for younger bankers. It is incorrect because evidence of Defendant's dishonesty before the EEOC and this Court — most notably captured by Defendant's use of Exhibit G to the De Baun Affirmation, a document it had to know was wildly wrong in its statements of Graves' franchise revenues earned for DBSI in the 2001-2002 period—amply supports the permissible inference that Defendant is attempting to conceal age

13

discrimination and retaliation.  In addition, Defendant's knowing proffer of pretextual explanations is itself evidence from which unlawful intent can be inferred.  See Part G above.

*Interstate Circuit v. United States*, 306 U.S. 208, 226, 59 S. Ct. 467, 83 L. Ed. 610 (1939), summed up the general inference to be drawn in this type of situation: "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. . . . Silence then becomes evidence of the most convincing character."  The principle is widely recognized.  JAMES H. CHADBOURN, II WIGMORE ON EVIDENCE (Little, Brown & Co., Boston, 1979), stated in § 285 at 192:  "The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause*."  (Emphasis in original).

Defendant also attempts to downplay the significance of Amling's remark.  Amling was not just speaking as a fellow employee: he was speaking as Defendant's authorized representative to explain to Graves why he was being terminated, at the time of the termination, and with respect to the termination.  When he spoke, it was DBSI speaking.  His statement was, at a minimum, an evidentiary admission binding the company unless contradicted or explained, and entitled to be presented to the jury for its consideration.  Amling denied making the statement, and did not offer any explanation about some non-age-discrimination basis for saying he was firing Graves because he needed Graves' accounts for other bankers.

The distinction between evidentiary admissions and judicial admissions is explained in *Guadagno v. Wallack Ader Levithan Associates*, 950 F.Supp. 1258, 1261 (S.D.N.Y. 1997), *aff'd*, 125 F.3d 844 (2nd Cir. 1997) (Table, text in WESTLAW, NO. 97-7184), *cert. denied*, 522 U.S. 1122 (1998).

There is no sense in which Amling's remark can fairly be called a "stray remark." It was made by a person Defendant has judicially admitted to be a decisionmaker, was made at the time of the termination, was made by a speaker authorized by Defendant to explain the termination, and was made about the termination. In *Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010), *cert. denied*, 131 S.Ct. 1602, 179 L.Ed.2d 516 (2011), the Second Circuit set forth the proper standards to be taken into account:

> The district courts in this circuit have developed a standardized approach for applying these concepts to individual cases. In determining whether a remark is probative, they have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process). . . . While we caution that none of these factors should be regarded as dispositive, we think this framework will often provide a useful approach to the admission or exclusion of remarks not directly related to the adverse action against the plaintiff, and employ it here.

(Citations omitted.) Under this standard, Amling's remark is strong evidence of age discrimination. It would be sufficient to withstand summary judgment if it were the only evidence in the case, but there is in fact a great deal of evidence of pretext.

Defendant tries to speculate about a nondiscriminatory "spin" to the statement, but it is the task of a jury to decide which inferences to draw. Similarly, Defendant attacks Plaintiffs credibility, but that is also a task for the jury.

### J.   Plaintiff Has Set Forth a Valid Retaliation Claim

Defendant's arguments as to Graves' retaliation claims, at pp. 19-23 of its brief, are largely based on confusion, and on failure to understand the record. Plaintiff asserts retaliation only as to those actions that took place after January 20, 2004, when Graves informed Brand and DeNaut about Amling's age discrimination. The actions in question obviously did not include retaliation, but did include the refusal to reconsider his termination, the refusal to allow him to

15

save his job by transferring to another part of DBSI, the refusal to pay him his bonus, the refusal to increase his severance, and the refusal to give him a "soft landing." Plaintiff's Second Amended Complaint, ¶¶ 12 and 13 at p. 5, De Baun Affirmation, Exh. A. See also Plaintiff's framing of his Third, Fourth and Fifth Causes of Action in the Complaint, pp. 55-56.

Contrary to Defendant's arguments, other employees received some or all of these benefits. The younger Chang was transferred to Leveraged Finance, as Plaintiff wanted. When she was laid off, she was allowed to negotiate an increase in her severance payment, as Plaintiff wanted. Other employees whose names Defendant redacted were given extended notice periods of 33 and 36 weeks. Chang and the younger Directors who were terminated in 2004 were allowed to work past the bonus announcement date, and received their bonuses for work done in 2003, as Plaintiff wanted. Moreover, Defendant's limiting language does not have the finality it has proclaimed in this litigation, because its limitation has been overturned in a number of arbitrations (which Defendant also did not produce).

The cases cited by Defendant are thus all inapposite.

**K.** **Conclusion**

For the reasons stated above, Plaintiff urges that Defendant's Motion be denied.

                Respectfully submitted,

                Richard T. Seymour (RS-8094)
                rick@rickseymourlaw.net
                Law Office of Richard T. Seymour, P.L.L.C.
                Suite 900, Brawner Building
                888 17th Street, N.W.
                Washington, DC 20006-3307
                    (202) 785-2145 – Telephone
                    (202) 549-1454 – Cell
                    (800) 805-1065 – Telecopier

        Steven A. Berger (SB-2038)
        sberger@bergerwebb.com
        Jonathan Rogin (JR-9800)
        jrogin@bergerwebb.com
        Berger & Webb, LLP
        7 Times Square, 27th Floor
        New York, NY 10036
            (212) 319-1900 – Telephone
            (212) 319-2017 and -2018 – Telecopiers

By: /s/ Richard T. Seymour
     Richard T. Seymour (RS 8094)
     Attorneys for Plaintiff

Dated: July 9, 2012

**Certificate of Service**

I certify that I have, this 9th day of July, 2012, served a true and correct copy of Plaintiff's Opposition to Defendant's Motion for Summary Judgment on counsel of record for defendant, as shown below, by service through the Court's ECF system:

>Cliff Fonstein, Esq.
>Nicholas H. De Baun, Esq.
>Tara Conroy, Esq.
>Seyfarth Shaw LLP
>620 Eighth Avenue
>New York, NY 10018

>/s/ Richard T. Seymour_____
>Richard T. Seymour (RS-8094)
>rick@rickseymourlaw.net
>Law Office of Richard T. Seymour, P.L.L.C.
>Suite 900, Brawner Building
>888 17th Street, N.W.
>Washington, DC 20006-3307
>    (202) 785-2145 – Telephone
>    (202) 549-1454 – Cell
>    (800) 805-1065 – Telecopier

2