IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL B. GRAVES,<br><br>       Plaintiff,<br><br>   v.<br><br>DEUTSCHE BANK SECURITIES, INC.,<br><br>       Defendant. | **CIVIL ACTION NO.**<br><br>**1:07-cv-05471-BSJ-KNF**<br><br>**ECF Case** |

# PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### Table of Contents

A. DBSI's Attempts to Downplay the Seriousness of Lying to the EEOC ............................. 1

B. DBSI Has Admitted Enough to Support a Grant of the Motion ...................................... 2

 1. DBSI Has Admitted Most of the Background Facts ..................................................... 2

  a. Part A of Plaintiff's Statement of Undisputed Facts................................................ 2

  b. Part B of Plaintiff's Statement of Undisputed Facts................................................ 3

  c. Part C(1) of Plaintiff's Statement of Undisputed Facts .......................................... 3

 2. DBSI Lied to the EEOC, and/or Actively Sought to Mislead the EEOC and Divert its Investigation: ................................................................................................................. 4

  a. In Representing that Graves' Accounts Were Never Reassigned............................. 4

  b. In Representing that Graves Complained in his EEOC Charge of the Transfer of Cox Radio, as Opposed to Cox Communications and Cox Enterprises ................... 5

  c. In Representing that Graves' Accounts, Which He Complained Had Been Reassigned, Produced No Revenue for DBSI and Were of Little Value.................. 6

  d. In Representing that Graves Never Complained to DBSI about Account Transfers 6

  e. In Representing that the Younger Bankers Did Not Need Graves' Accounts .......... 7

  f. In Representing that Graves Was Confined to the "Television Broadcasting Space, and Thus That Only Graves and Gregory Paul Could be Considered for Layoff..... 7

  g. In Representing that DBSI Had a Seniority System with a Substantial Effect on Which Bankers Were to be Laid Off ........................................................................ 8

  h. In Representing that Franchise Revenues and Pipelines Objectively Determined Relative Success as a Banker, and Were Used to Help Determine Whom to Fire, Whom to Lay Off, and Who Was a Better Banker.................................................. 8

C. The EEOC's Inability to Conclude Defendant Was Lying Should Not Be Given Weight 9

## Table of Authorities

### 1.      Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………...   3

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000),
      *cert. denied*, 533 U.S. 950 (2001)……………………………………………..  10

*Cook v. Deloitte & Touche, LLP*, 2005 WL 2429422 (S.D.N.Y. Sept. 30, 2005)
      (No. 03 CIV. 3926LAKFM), *aff'd*, 198 Fed.Appx. 107 (2d Cir. 2006)...............  10

*Crawford v. Metropolitan Government of Nashville and Davidson County*,
      555 U.S. 271 (2009)………………………………………………………....   5

*Cross v. New York City Transit Authority*, 417 F.3d 241 (2d Cir. 2005)………………  1, 4

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*,
      902 F.2d 174, 178 (2d Cir. 1990), *cert. denied*, 500 U.S. 928 (1991)……………   3

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)……………………………………………   1

*Dodson v. CBS Broadcasting Inc.*, 423 F.Supp.2d 331 (S.D.N.Y. 2006)…………………   9

*Ford v. Bernard Fineson Development Center*, 81 F.3d 304 (2d Cir. 1996)……………… 10

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999)…………………………………. 10

*Johnson v. CH Energy Group, Inc.*, 353 Fed.Appx. 543 (2d Cir. 2009)…………………..   1

*Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009)…………………………….   1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………………   3

*Medeiros v. Pratt & Whitney Power Systems, Inc.,* 272 Fed.Appx. 78 (2d Cir. 2008)…......   1

*Miller-El v. Dretke*, 545 U.S. 231 (2005)………………………………………………….   1

### 2.      Rules

Rule 56(c)(4), Fed. R., Civ. Pro. ……………………………………………………….   3

Local Rule 56.1(c)………………………………………………………………………. 3, 4

Local Rule 56.1(d)……………………………………………………………………….. 3, 4

A.      **DBSI's Attempts to Downplay the Seriousness of Lying to the EEOC**

DBSI attempts to downplay the importance of this Motion, suggesting it involves mere

factual errors or the mere lack of perfect consistency.  Def. Mem. at 9-10.  This is wrong.  In

addition to the authorities in Pltf. Opening Mem. at 1-2, the Supreme Court has time and again

emphasized the importance of proof that a party's explanation was false.  *Miller-El v. Dretke*,

545 U.S. 231, 241 (2005), a jury discrimination case, held that the proffer of a false reason to

explain a peremptory challenge is itself evidence of unlawful racial discrimination.  *Accord*,

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

*Cross v. New York City Transit Authority*, 417 F.3d 241, 249-50 (2d Cir. 2005), stated

that proof that defendant lied about "any factor" "could support a jury inference that the

defendants . . . made the deliberate decision to ensure that they failed . . . ."  *Id.* at 250-51.

*Accord*, *Johnson v. CH Energy Group, Inc.*, 353 Fed.Appx. 543, 546-47 (2d Cir. 2009);

*Medeiros v. Pratt & Whitney Power Systems, Inc.,* 272 Fed.Appx. 78, 80-81 (2d Cir. 2008).

More than seven and a half years after DBSI submitted its Position Statement to the

EEOC, DBSI has realized that some parts do not stand up to the light of day.  It has changed its

previous story that Graves was fired because he overlapped with Paul in the "TV broadcasting

space," Exh. 8, to an overlap in "broadcasting."  Most members of the Media Group would then

be within the newly-claimed overlap.  *Miller-El* disposed of such after-the-fact changes: "It

would be difficult to credit the State's new explanation, which reeks of afterthought."  545 U.S.

at 246.  This is not the kind of minor difference dismissed in *Leibowitz v. Cornell University*, 584

F.3d 487, 504 n. 6 (2d Cir. 2009), but the kind of radical re-shaping that reveals mendacity

before the EEOC and this Court.

Defendant asserts that questions of intent are unsuited for summary judgment, Def. Mem.

at 8, but has not withdrawn its own Motion for Summary Judgment going to its own intent as to

age discrimination and retaliation.

**B.      DBSI Has Admitted Enough to Support a Grant of the Motion**

DBSI has directly admitted many of Plaintiff's Statement of Material Facts as to Which

There Is No Genuine Issue To Be Tried (hereinafter, "Plaintiff's Statement").  DBSI has inserted

immaterial modifications to some, has quibbled about others in a way that does not prevent its

responses from constituting admissions, and has attempted to "spin" a number of responses to

distract attention from its admissions.  *See* DBSI's Counter-Statement.  DBSI has effectively

admitted enough to support a grant of the motion.

**1.      DBSI Has Admitted Most of the Background Facts**

**a.      Part A of Plaintiff's Statement of Undisputed Facts**

DBSI has admitted most of the statements in Part A (Introduction), ¶¶ 1-32 at pp. 1-5, of

Plaintiff's Statement.  See Counter-Statement, pp. 2-9.  DBSI's clarifications in its Responses to

Nos. 6, 8, 12, 13, 14, and 20 are not material.  Its clarification to No. 31 is a meaningless quibble.

DBSI's responses to Nos. 16 and 18 attempt to create an issue of material fact as to

whether Graves gave Amling his entitled "Dan Graves Merrill Lynch Account Universe," Exh.

38, and whether Graves actually had the experience listed on it.  Graves stated he gave this

statement to Amling, and that Graves had the experience listed on it.[1]  DBSI admits that Amling

testified it is plausible that Graves gave him the document, although he had no memory.  See

¶ 17.  DBSI relies on Amling's lack of memory, and Amling's expression of disbelief that

anyone could have had as broad experience as Graves listed on that document, to assert that there

are disputes of material fact.  However, Amling did not testify to any personal knowledge of any

inaccuracies in Graves' statement of experience, and relied only on speculation. Moreover, DBSI

---

[1] Graves testified that he gave Amling a list of his relationships and that these were in fact his relationships. Jan. 10, 2011 Deposition of Graves, Tr. 22 line 14 to Tr. 27 line 15; Tr. 30 line 6 to Tr. 31 line 10; Tr. 33, lines 6-16; Tr. 34 line 6 to Tr. 35 line 4, Attachment A hereto. *See also* the admissions in Counter-Statement ¶¶ 117-155.

admits in ¶ 19 that Amling and Drew Marcus looked over the names on "this list" where Graves had coverage that DBSI wanted.  Witnesses can only testify to matters of which they have personal knowledge, FRE 602, and the same is true in opposing summary judgment.  Rule 56(c)(4), Fed. R. Civ. Pro.  Speculation cannot create a material issue of fact.  "Conclusory allegations will not suffice to create a genuine issue. "There must be more than a 'scintilla of evidence,' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 . . . (1986), and more than 'some metaphysical doubt as to the material facts.'  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 . . . (1986)."  *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), *cert. denied*, 500 U.S. 928 (1991).  Nor can "now-you-see-it-now-you-don't" flashes of asserted memory problems.  Compare Counter-Statement ¶¶ 16-18 with its ¶ 19.  Under Local Rule 56.1(c) and (d), DBSI has admitted that Graves gave Amling the document in Exh. 38, and has admitted the genuineness of its statements of Graves' experience.

DBSI admits that Plaintiff sought discovery of documents on the assignments of clients to bankers, ¶ 21, and claims to dispute Plaintiff's statement that it never produced responsive documents but merely sets forth the identical response promising to produce responsive documents.  ¶ 22.  This pattern of attempted avoidance is also seen in DBSI's responses to Nos. 105-107 and 170-171.  In each, DBSI fails to identify a single document it produced.  Under Local Rule 56.1(c) and (d), this is an admission it did not produce any responsive documents.

### b.        Part B of Plaintiff's Statement of Undisputed Facts

Defendant has admitted all of the statements in Part B (EEOC Proceedings), ¶¶ 33-37 at p. 5, of Plaintiff's Statement.  DBSI's Responses are at pp. 9-10 of DBSI's Counter-Statement.

### c.        Part C(1) of Plaintiff's Statement of Undisputed Facts

Defendant has quibbled about the statements in Part C(1) (Caveat on Amling's Memory), ¶ 38 at p. 6, of Plaintiff's Statement.  DBSI's Counter-Statement, pp. 10-12, simply ignores part

of the cited testimony.  Under Local Rule 56.1(c) and (d), this paragraph is admitted.

### 2.   DBSI Lied to the EEOC, and/or Actively Sought to Mislead the EEOC and Divert its Investigation:

#### a.   In Representing that Graves' Accounts Were Never Reassigned

The re-assignment of Graves' accounts is an important part of his claim that DBSI set

him up to fail.  *Cf. Cross*, *supra*.  This part of the Motion was supported by Part C(2), ¶¶ 39-56 at

pp. 6-10, of Plaintiff's Statement.  DBSI's Counter-Statement contains numerous quibbles failing

to meet the substance fairly (*e.g.*, ¶¶ 43-44), attempts to deny Graves' raising the matter of

account transfers with Amling was a "complaint" (¶ 46), attempts to distract attention from

undisputed account transfers by referencing the ages of transferees, (*e.g.*, ¶¶ 46, 47, 48, 49, 50,

52, 53, and 54), attempts to deny evidence in DBSI's own documents that the Adelphia account

was transferred to the younger Dyan Triffo merely because Amling testified it probably

happened but he did not remember it (¶¶ 48, 49, 50), and attempts to deny the obvious complaint

about account transfers in ¶ 49 by claiming that Graves—who had not then seen the discovery

showing the transfer of the Adelphia account to Dyan Triffo—somehow made an admission it

was only transferred to Sun Yung.

DBSI's responses attempt to deflect attention away from the undisputed showings that

Graves' accounts were in fact re-assigned, that DBSI knew this, and that DBSI represented the

opposite to the EEOC.

Tellingly, DBSI has absolutely nothing admissible to say about Amling's round-robin

transfers of the Adelphia account initially from Graves to the younger Triffo, then to the

relatively older Sun the same day Graves complained of it, then surreptitiously back to the

younger Triffo again.  DBSI admits the second transfer to the younger Triffo, see ¶ 104, but

resolutely denies the initial documented transfer because Amling said he did not remember it and

4

claims instead that the Adelphia account was transferred to Yung, see ¶¶ 46-50, while

simultaneously saying that Amling did not remember transferring it to Yung, see ¶ 101, and

capping it all off by explaining that a transfer to Triffo made sense because she assertedly knew

someone on the restructuring team, see ¶¶ 74-79, 99, 101, 104, and 108.  On top of all this, DBSI

refused to provide discovery on this matter.  See *infra* at 7.  Playing ostrich does not create a

triable issue of material fact, and pretending some mysterious person besides Amling might have

made the decision for Amling, see ¶¶ 48 and 50, does no better.

   This part of Plaintiff's Motion is established.

**b.**  **<u>In Representing that Graves Complained in his EEOC</u>**
**<u>Charge of the Transfer of Cox Radio, as Opposed to Cox</u>**
**<u>Communications and Cox Enterprises</u>**

   This part of Plaintiff's Motion was supported by Part C(3), ¶¶ 57-62 at pp. 10-12, of

Plaintiff's Statement.  See the Counter-Statement at pp. 19-21.  DBSI's entire set of responses

seeks to blame Graves for being "ambiguous" in his EEOC charge, but it still admits positively

representing to the EEOC not that there was an ambiguity, but that Graves was referring to Cox

Radio (¶ 58), admits knowing that Amling transferred the Cox Communications account from

Graves to Malcolm Morris (¶ 60), and admits knowing that the Cox Enterprises account was

transferred from Graves to Morris (¶ 61).  DBSI's mentions of Morris's relative age are simply

another attempt at distraction (¶ 61).

   DBSI knew or should have known, and was charged with the knowledge, that Graves was

complaining that his Cox Communications and Cox Enterprises accounts had been taken away

from him and transferred to Malcolm Morris.

   DBSI's plea that all inferences should be drawn in favor of the non-movant is incorrect;

the standard is that all *reasonable* inferences should be drawn in favor of the non-movant,

*Crawford v. Metropolitan Government of Nashville and Davidson County*, 555 U.S. 271, 274

5

n.1, 277 n.2 (2009) (emphasis supplied).  No inference that in favor of DBSI on this issue would be reasonable.

### c.     In Representing that Graves' Accounts, Which He Complained Had Been Reassigned, Produced No Revenue for DBSI and Were of Little Value

This part of Plaintiff's Motion was supported by Part C(4), ¶¶ 63-94 at pp. 12-17, of Plaintiff's Statement.  See the Counter-Statement at pp. 21-32.  DBSI admitted all of the statements in ¶¶ 63-71.  It is a clear and necessary implication from these representations that the accounts Graves complained in his EEOC charge had been transferred from him and that were transferred to other bankers—Cox Communications, Cox Enterprises, Charter, and Adelphia— were of little value and that the transfers were therefore unimportant.

Having represented to the EEOC that pipeline was an objective determinant of the success of bankers, *infra* at 8, DBSI argues in its response to ¶ 73 that a pipeline of $6 million for Adelphia is meaningless.  DBSI cannot have it both ways.  It never provided discovery on whether these pipeline transactions, and those on which it relied before the EEOC, ever materialized, and to what extent.

DBSI's argument that the $6 million pipeline for Adelphia is meaningless also misquotes Amling's testimony.  He did not say the $6 million figure was "a banker's guess" based on the factors cited, but "a banker's *best* guess" based on those factors.  (Emphasis supplied.)

DBSI's responses to ¶¶ 74-94 agree with Plaintiffs' Statements, but attempt to distract from their import by introducing irrelevant matters having nothing to do with value.  This part of Plaintiff's Motion is established.

### d.     In Representing that Graves Never Complained to DBSI about Account Transfers

This part of Plaintiff's Motion was supported by Part C(5), ¶¶ 95-107 at pp. 17-21, of

Plaintiff's Statement.  See pp. 32-38 of the Counter-Statement.  DBSI's responses are mainly

quibbles, efforts to distract from the thrust of the statements by introducing irrelevances, and a

request that the inference be drawn that Graves simply wanted to discuss the accounts, and was

not complaining about the account transfers.  That would be an unreasonable inference.

Finally, DBSI effectively admits that it refused to provide discovery as to assignments of

clients to one or more bankers, and assignments and changes in assignments of the Adelphia

account.  Counter-Statement, ¶¶ 105-107, p. 6, *supra*.  This part of Plaintiff's Motion is

established.

**e.**      **In Representing that the Younger Bankers Did Not Need
Graves' Accounts**

This part of Plaintiff's Motion was supported by Part C(6), ¶¶ 108-116 at pp. 21-23, of

Plaintiff's Statement.  See pp. 38-42 of the Counter-Statement.  DBSI attempts to repeat its

assertions of no value in the transferred accounts, and these are dealt with above.  It admits the

documents on which Plaintiff relies.  This part of Plaintiff's Motion is established.

**f.**      **In Representing that Graves Was Confined to the
"Television Broadcasting Space, and Thus That Only
Graves and Gregory Paul Could be Considered for Layoff**

This part of Plaintiff's Motion was supported by Part C(7), ¶¶ 117-168 at pp. 23-32, of

Plaintiff's Statement.  See the Counter-Statement at pp. 42-56.  DBSI tries to erase the

distinction between "broadcasting," in which every banker in the Media Group was involved,

and "TV broadcasting," which is what it relied on as the critical distinction before the EEOC.

*E.g.*, ¶¶ 131-139, 166.

DBSI argues that the cited source, Exh. 42, does not identify the business in which the

stated companies were engaged.  *E.g.*, ¶¶ 136-139, 150.  To the contrary, the businesses are

identified for each company on the identified carry-over page, on the same numbered line of the

7

spreadsheet as the mention of the company's name.  DBSI even pretends not to know that XM

Satellite Radio is in satellite radio.  See ¶ 144.

DBSI argues throughout that "Graves admitted his clients were predominantly in the

broadcasting area."  *E.g.*, ¶¶ 131-139.  This mischaracterizes his testimony.  All Graves said was

that most of his clients were in the broadcasting industry.

DBSI argues that Amling did have an actual basis for his belief that Graves' experience

listed in Exh. 38 was not all genuine, but cited only conclusory statements by Amling.  That is

not admissible evidence, and its response to ¶ 147 is an admission.  DBSI admits that Amling

changed his story as to the asserted overlap between Graves and Amling.  See ¶ 164.  This part

of Plaintiff's Motion is established.

**g.      In Representing that DBSI Had a Seniority System with a
Substantial Effect on Which Bankers Were to be Laid Off**

This part of Plaintiff's Motion was supported by Part C(8), ¶¶ 169-178 at pp. 32-35, of

Plaintiff's Statement.  See the Counter-Statement at pp. 56-61.  DBSI effectively admits that it

refused or failed to produce discovery on its use of seniority as a standard for personnel actions.

See ¶¶ 170-171 and p. 6, *supra*.  DBSI attempts to use Amling's shaky memory to establish an

affirmative in ¶ 175, where it used virtually identical language to argue for the establishment of a

negative in ¶¶ 17-18, as to Exh. 38.  This part of Plaintiff's Motion is established.

**h.      In Representing that Franchise Revenues and Pipelines
Objectively Determined Relative Success as a Banker, and
Were Used to Help Determine Whom to Fire, Whom to
Lay Off, and Who Was a Better Banker**

This part of Plaintiff's Motion was supported by Part C(9), ¶¶ 179-200 at pp. 35-40, of

Plaintiff's Statement.  See the Counter-Statement at 61-70.  In ¶¶ 179-180, 183, DBSI seeks to

walk away from its Position Statement's repeated references to pipelines as an equal factor with

franchise revenues as a reason for Graves' termination.  Exh. 8, Defendant's  Position Statement

8

to the EEOC, stated at 4, Graves 25: "Mr. Amling and Mr. Graves discussed the fact that the

business Mr. Graves saw coming in - - *the business in his "pipeline"* - - did not meet the

guidelines.   In the next paragraph, it states: "Of the 6 MD's, Mr. Graves had the lowest franchise

revenue for 2003 *and the lowest 2004 franchise pipeline* (excluding Ms. Triffo who was still on

extended leave)."  The rest of the paragraph compares pipelines as well as revenues.  On p. 5,

Graves 26, the statement referred again to pipelines.  On p. 8, Graves 29, it stated: "DBSI chose

to terminate Mr. Graves over Mr. Paul because: (1) Mr. Paul had 18 years more seniority than

Mr. Graves, (2) Mr. Paul had additional experience in cinemas, which Mr. Graves did not have,

and (3) Mr. Graves had *both a lower 2003 franchise revenue and 2004 franchise pipeline* than

Mr. Paul. (See Exhibits B and F.)"    (Emphases supplied.)   This, too, is a radical change.

The statements that Graves had the lowest franchise revenues of all Managing Directors,

e.g., ¶¶ 180 and 183, are incorrect.[2]  DBSI's other quibbles and attempts to distract from the

statements with irrelevance do not create triable issues of   material fact.  This part of Plaintiff's

Motion is established.

### C. <u>The EEOC's Inability to Conclude Defendant Was Lying Should Not Be Given Weight</u>

DBSI seeks to draw undeserved comfort from the EEOC's failure to find that DBSI

attempted to deceive it.  The EEOC has long been plagued by a shortage of resources precluding

complete investigations, lack of training, and carelessness of some of its staff.  That is why

Congress has provided for trial *de novo* of claims of discrimination, trials in which the EEOC's

findings are of doubtful admissibility, particularly where they are as conclusory and unreasoned

as the determination at bar, or where the EEOC did not consider all of the evidence.  *Dodson v.*

*CBS Broadcasting Inc.*, 423 F.Supp.2d 331, 334-35 (S.D.N.Y. 2006) (low probative value where

---

[2] See Plaintiff's Responses to Defendant's Rule 56.1 Statements on DBSI's Motion for Summary Judgment, Nos. 11 at pp. 13-15, 14 at pp. 20-22, and 17 at pp. 26-28.

EEOC did not consider all the evidence that will be presented); *Coleman v. Quaker Oats Co.*,

232 F.3d 1271, 1284 (9th Cir. 2000), *cert. denied*, 533 U.S. 950 (2001), stated that "a conclusory

EEOC reasonable cause letter, at least by itself, does not create an issue of material fact."

*Accord*, *Cook v. Deloitte & Touche, LLP*, 2005 WL 2429422 (S.D.N.Y. Sept. 30, 2005) (No. 03

CIV. 3926LAKFM), *aff'd*, 198 Fed.Appx. 107 (2d Cir. 2006).

In addition to the authority cited in Plaintiff's Opening Memorandum, *Harris v. City of*

*New York*, 186 F.3d 243, 248 n.3 (2d Cir. 1999), stated: "Generally courts do not penalize

litigants for EEOC's mistakes and misinformation . . . ."  (Citations omitted.)  *Accord*, *Ford v.*

*Bernard Fineson Development Center*, 81 F.3d 304, 312 (2d Cir. 1996), and cases there cited.

WHEREFORE, plaintiff prays that his Motion be granted.

Respectfully submitted,

Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
Suite 900, Brawner Building
888 17th Street, N.W.
Washington, DC 20006-3307
     (202) 785-2145 – Telephone
     (202) 549-1454 – Cell
     (800) 805-1065 – Telecopier

Steven A. Berger (SB-2038)
sberger@bergerwebb.com
Jonathan Rogin (JR-9800)
jrogin@bergerwebb.com
Berger & Webb, LLP
7 Times Square, 27th Floor
New York, NY 10036
     (212) 319-1900 – Telephone
     (212) 319-2017 and -2018 – Telecopiers

By: /s/ Richard T. Seymour_____
     Richard T. Seymour (RS 8094)
     Attorneys for Plaintiff

Dated: July 30, 2012

**<u>Certificate of Service</u>**

I certify that I have, this 30th day of July, 2012, served a true and correct copy of

Plaintiff's Reply Memorandum in Support of his Motion for Partial Summary Judgment on

counsel of record for defendant, as shown below, by service through the Court's ECF system:

Cliff Fonstein, Esq.
Nicholas De Baun
Tara Conroy
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018


/s/ Richard T. Seymour_____
Richard T. Seymour (RS-8094)
rick@rickseymourlaw.net
Law Office of Richard T. Seymour, P.L.L.C.
Suite 900, Brawner Building
888 17th Street, N.W.
Washington, DC 20006-3307
(202) 785-2145 – Telephone
(202) 549-1454 – Cell
(800) 805-1065 – Telecopier

1